# EXHIBIT A

US009550052B2

(12) **United States Patent**
Ignon et al.

(10) Patent No.: **US 9,550,052 B2**
(45) Date of Patent: **Jan. 24, 2017**

(54) **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN**

(71) Applicant: **EDGE SYSTEMS LLC**, Signal Hill, CA (US)

(72) Inventors: **Roger Ignon**, Redondo Beach, CA (US); **Scott Mallett**, Coto De Caza, CA (US); **Abraham Solano**, Corona, CA (US); **William Cohen**, Los Alamitos, CA (US)

(73) Assignee: **Edge Systems LLC**, Signal Hill, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/698,673**

(22) Filed: **Apr. 28, 2015**

(65) **Prior Publication Data**

US 2015/0272623 A1     Oct. 1, 2015

**Related U.S. Application Data**

(63) Continuation of application No. 13/267,554, filed on Oct. 6, 2011, which is a continuation of application
(Continued)

(51) **Int. Cl.**
*A61M 35/00*     (2006.01)
*A61B 17/54*     (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ........ *A61M 35/003* (2013.01); *A61B 17/3205* (2013.01); *A61B 17/50* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .................. A61B 17/54; A61B 17/545; A61B 2017/00017; A61B 2017/00199; A61B 2017/00743; A61B 2017/00747; A61B 2017/00761; A61B 19/0248; A61B 2019/025; A61B 2217/005; A61B 2217/007; A61B 17/50; A61B 2017/320004; A61B 50/10; A61B 50/13; A61M 35/003; A61N 5/0616
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,608,032 A | 8/1952 | Garver |
| 2,631,583 A | 3/1953 | Lavergne |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 34 21 390 A1 | 12/1985 |
| DE | 234 608 | 4/1986 |

(Continued)

OTHER PUBLICATIONS

Cox III et al., *Decreased Splatter in Dermabrasion*, Arch Facial Plastic Surgery, Jan.-Mar. 2000, vol. 2, pp. 23-26.
(Continued)

*Primary Examiner* — Ryan J Severson
*Assistant Examiner* — Christian Knauss
(74) *Attorney, Agent, or Firm* — Knobbe, Martens, Olson & Bear, LLP

(57) **ABSTRACT**

An apparatus for treating skin has a console with a user input device and a handpiece assembly. The handpiece assembly is configured to treat skin. A fluid line provides fluid communication between the console and the handpiece assembly. A manifold system is coupled to the console and controlled by the user input device. The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

**17 Claims, 25 Drawing Sheets**



## US 9,550,052 B2

Page 2

### Related U.S. Application Data

No. 11/392,348, filed on Mar. 29, 2006, now Pat. No. 8,048,089.

(60) Provisional application No. 60/755,310, filed on Dec. 30, 2005, provisional application No. 60/764,668, filed on Feb. 2, 2006.

(51) **Int. Cl.**
| | |
|---|---|
| **A61M 1/00** | (2006.01) |
| **A61B 17/3205** | (2006.01) |
| **A61B 17/50** | (2006.01) |
| *A61B 17/00* | (2006.01) |
| *A61N 5/06* | (2006.01) |
| *A61B 17/32* | (2006.01) |

(52) **U.S. Cl.**
CPC ............ **A61B 17/54** (2013.01); **A61B 17/545** (2013.01); **A61B 50/10** (2016.02); **A61B 50/13** (2016.02); **A61M 1/009** (2014.02); *A61B 2017/00199* (2013.01); *A61B 2017/00761* (2013.01); *A61B 2017/320004* (2013.01); *A61B 2217/005* (2013.01); *A61N 5/0616* (2013.01)

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,701,559 | A | 2/1955 | Cooper |
| 2,712,823 | A | 7/1955 | Kurtin |
| 2,867,214 | A | 1/1959 | Wilson |
| 2,881,763 | A | 4/1959 | Robbins |
| 2,921,585 | A | 1/1960 | Schumann |
| 3,085,573 | A | 4/1963 | Meyer et al. |
| 3,214,869 | A | 11/1965 | Stryker |
| 3,476,112 | A | 11/1969 | Elstein |
| 3,574,239 | A | 4/1971 | Sollerud |
| 3,715,838 | A | 2/1973 | Young et al. |
| 3,865,352 | A * | 2/1975 | Nelson ........................ B01F 3/10 |
| | | | 138/42 |
| 3,948,265 | A | 4/1976 | Al Ami |
| 3,964,212 | A | 6/1976 | Karden |
| 3,977,084 | A | 8/1976 | Sloan |
| 4,121,388 | A | 10/1978 | Wilson |
| 4,155,721 | A | 5/1979 | Fletcher |
| 4,170,821 | A | 10/1979 | Booth |
| 4,182,329 | A | 1/1980 | Smith et al. |
| 4,203,431 | A | 5/1980 | Abura et al. |
| 4,216,233 | A | 8/1980 | Stein |
| 4,299,219 | A | 11/1981 | Norris, Jr. |
| 4,378,804 | A | 4/1983 | Cortese |
| 4,560,373 | A | 12/1985 | Sugino et al. |
| 4,646,480 | A | 3/1987 | Williams |
| 4,646,482 | A | 3/1987 | Chitjian |
| 4,655,743 | A | 4/1987 | Hyde |
| 4,676,749 | A | 6/1987 | Mabille |
| 4,706,676 | A | 11/1987 | Peck |
| 4,754,756 | A | 7/1988 | Shelanski |
| 4,757,814 | A | 7/1988 | Wang et al. |
| 4,764,362 | A | 8/1988 | Barchas |
| 4,795,421 | A | 1/1989 | Blasius, Jr. et al. |
| 4,875,287 | A | 10/1989 | Creasy et al. |
| 4,886,078 | A | 12/1989 | Shiffman |
| 4,887,994 | A | 12/1989 | Bedford |
| 4,900,316 | A | 2/1990 | Yamamoto |
| 4,917,086 | A | 4/1990 | Feltovich et al. |
| 4,925,450 | A | 5/1990 | Imonti et al. |
| 4,957,747 | A | 9/1990 | Stiefel |
| 5,006,004 | A | 4/1991 | Dirksing et al. |
| 5,006,339 | A | 4/1991 | Bargery et al. |
| 5,012,797 | A | 5/1991 | Liang et al. |
| 5,035,089 | A | 7/1991 | Tillman et al. |
| 5,037,431 | A | 8/1991 | Summers et al. |
| 5,037,432 | A | 8/1991 | Molinari |

| | | | |
|---|---|---|---|
| 5,100,412 | A | 3/1992 | Rosso |
| 5,100,424 | A | 3/1992 | Jang |
| 5,119,839 | A | 6/1992 | Rudolph |
| 5,122,153 | A | 6/1992 | Harrel |
| 5,207,234 | A | 5/1993 | Rosso |
| 5,222,956 | A | 6/1993 | Waldron |
| 5,242,433 | A | 9/1993 | Smith et al. |
| 5,254,109 | A | 10/1993 | Smith et al. |
| 5,368,581 | A | 11/1994 | Smith et al. |
| 5,391,151 | A | 2/1995 | Wilmot |
| 5,417,674 | A | 5/1995 | Smith et al. |
| 5,419,772 | A | 5/1995 | Teitz et al. |
| 5,460,620 | A | 10/1995 | Smith et al. |
| 5,470,323 | A | 11/1995 | Smith et al. |
| 5,484,427 | A | 1/1996 | Gibbons |
| 5,562,642 | A | 10/1996 | Smith et al. |
| 5,611,687 | A | 3/1997 | Wagner |
| 5,674,235 | A | 10/1997 | Parisi |
| 5,676,643 | A | 10/1997 | Cann et al. |
| 5,676,648 | A | 10/1997 | Henley |
| 5,683,971 | A | 11/1997 | Rose et al. |
| 5,697,920 | A | 12/1997 | Gibbons |
| 5,707,383 | A | 1/1998 | Bays |
| 5,713,785 | A | 2/1998 | Nishio |
| 5,735,833 | A | 4/1998 | Olson |
| 5,759,185 | A | 6/1998 | Grinberg |
| 5,779,519 | A | 7/1998 | Oliver |
| 5,800,446 | A | 9/1998 | Banuchi |
| 5,807,353 | A | 9/1998 | Schmitz |
| 5,810,842 | A | 9/1998 | Di Fiore et al. |
| 5,813,416 | A | 9/1998 | Rudolph |
| 5,817,050 | A | 10/1998 | Klein |
| 5,846,215 | A | 12/1998 | Zygmont |
| 5,848,998 | A | 12/1998 | Marasco, Jr. |
| 5,861,142 | A | 1/1999 | Schick |
| 5,873,881 | A | 2/1999 | McEwen et al. |
| 5,879,323 | A | 3/1999 | Henley |
| 5,882,201 | A | 3/1999 | Salem |
| 5,885,260 | A | 3/1999 | Mehl, Sr. et al. |
| 5,908,401 | A | 6/1999 | Henley |
| 5,919,152 | A | 7/1999 | Zygmont |
| 5,954,730 | A | 9/1999 | Bernabei |
| 5,971,999 | A | 10/1999 | Naldoni |
| 5,980,555 | A | 11/1999 | Barbut et al. |
| 6,019,749 | A | 2/2000 | Fields et al. |
| 6,024,733 | A | 2/2000 | Eggers et al. |
| 6,027,402 | A | 2/2000 | Oliver |
| 6,039,745 | A | 3/2000 | Di Fiore et al. |
| 6,042,552 | A | 3/2000 | Cornier |
| 6,080,165 | A | 6/2000 | DeJacma |
| 6,080,166 | A | 6/2000 | McEwen et al. |
| 6,090,085 | A | 7/2000 | Mehl, Sr. et al. |
| 6,120,512 | A | 9/2000 | Bernabei |
| 6,129,701 | A | 10/2000 | Cimino |
| 6,136,008 | A | 10/2000 | Becker et al. |
| 6,139,553 | A | 10/2000 | Dotan |
| 6,139,554 | A | 10/2000 | Karkar et al. |
| 6,142,155 | A | 11/2000 | Rudolph |
| 6,149,634 | A | 11/2000 | Bernabei |
| 6,159,226 | A | 12/2000 | Kim |
| 6,162,218 | A | 12/2000 | Elbrecht et al. |
| 6,162,232 | A | 12/2000 | Shadduck |
| 6,183,451 | B1 | 2/2001 | Mehl, Sr. et al. |
| 6,183,483 | B1 | 2/2001 | Chang |
| 6,193,589 | B1 | 2/2001 | Khalaj |
| 6,231,593 | B1 | 5/2001 | Meserol |
| 6,235,039 | B1 | 5/2001 | Parkin et al. |
| 6,238,275 | B1 | 5/2001 | Metcalf et al. |
| 6,241,739 | B1 | 6/2001 | Waldron |
| 6,264,666 | B1 | 7/2001 | Coleman et al. |
| 6,277,128 | B1 * | 8/2001 | Muldner ........................ 606/133 |
| 6,283,978 | B1 | 9/2001 | Cheski et al. |
| 6,299,620 | B1 | 10/2001 | Shadduck |
| 6,306,119 | B1 | 10/2001 | Weber et al. |
| 6,306,147 | B1 | 10/2001 | Bernabei et al. |
| 6,322,568 | B1 | 11/2001 | Bernabei et al. |
| 6,368,333 | B2 | 4/2002 | Bernabei et al. |
| 6,387,103 | B2 | 5/2002 | Shadduck |
| 6,409,736 | B1 | 6/2002 | Bernabei |

# US 9,550,052 B2

Page 3

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,410,599 B1 | 6/2002 | Johnson |
| RE37,796 E | 7/2002 | Henley |
| 6,414,032 B1 | 7/2002 | Johnson |
| 6,420,431 B1 | 7/2002 | Johnson |
| 6,423,078 B1 | 7/2002 | Bays et al. |
| 6,423,750 B1 | 7/2002 | Johnson |
| 6,432,113 B1 | 8/2002 | Parkin et al. |
| 6,432,114 B1 * | 8/2002 | Rosso ........................ 606/131 |
| 6,471,712 B2 | 10/2002 | Burres |
| 6,477,410 B1 | 11/2002 | Henley et al. |
| 6,482,212 B1 | 11/2002 | Bernabei et al. |
| 6,488,646 B1 | 12/2002 | Zygmont |
| 6,494,856 B1 | 12/2002 | Zygmont |
| 6,500,183 B1 | 12/2002 | Waldron |
| 6,503,256 B2 | 1/2003 | Parkin et al. |
| 6,511,486 B2 | 1/2003 | Mercier et al. |
| 6,514,262 B1 | 2/2003 | Di Fiore et al. |
| 6,527,783 B1 | 3/2003 | Ignon |
| 6,535,761 B2 | 3/2003 | Bernabei |
| 6,540,757 B1 | 4/2003 | Hruska et al. |
| 6,562,013 B1 | 5/2003 | Marasco, Jr. |
| 6,562,050 B1 | 5/2003 | Owen |
| 6,564,093 B1 | 5/2003 | Ostrow et al. |
| 6,565,535 B2 | 5/2003 | Zaias et al. |
| 6,582,442 B2 | 6/2003 | Simon et al. |
| 6,589,218 B2 | 7/2003 | Garcia |
| 6,592,595 B1 | 7/2003 | Mallett et al. |
| 6,629,983 B1 | 10/2003 | Ignon |
| 6,641,591 B1 | 11/2003 | Shadduck |
| 6,645,184 B1 | 11/2003 | Zelickson et al. |
| 6,652,888 B2 | 11/2003 | Rhoades |
| 6,673,081 B1 | 1/2004 | Tavger et al. |
| 6,673,082 B2 | 1/2004 | Mallett et al. |
| 6,685,853 B1 | 2/2004 | Angelopoulous et al. |
| 6,687,537 B2 | 2/2004 | Bernabei |
| 6,695,853 B2 * | 2/2004 | Karasiuk ..................... 606/131 |
| 6,735,470 B2 | 5/2004 | Henley et al. |
| 6,743,211 B1 | 6/2004 | Prausnitz et al. |
| 6,743,215 B2 | 6/2004 | Bernabei |
| 6,764,493 B1 | 7/2004 | Weber et al. |
| 6,869,611 B1 | 3/2005 | Kligman et al. |
| 6,905,487 B2 | 6/2005 | Zimmerman |
| 6,911,031 B2 | 6/2005 | Muldner |
| 6,924,649 B2 | 8/2005 | Knoedgen |
| 6,926,681 B1 | 8/2005 | Ramey et al. |
| 6,942,649 B2 | 9/2005 | Ignon et al. |
| 7,001,355 B2 | 2/2006 | Nunomura et al. |
| 7,004,933 B2 | 2/2006 | McDaniel |
| 7,044,938 B2 | 5/2006 | La Bianco et al. |
| 7,052,503 B2 | 5/2006 | Bernabei |
| 7,069,073 B2 | 6/2006 | Henley et al. |
| 7,070,488 B2 | 7/2006 | Suissa et al. |
| 7,083,580 B2 | 8/2006 | Bernabei |
| 7,087,063 B2 | 8/2006 | Carson et al. |
| 7,094,252 B2 | 8/2006 | Koop |
| 7,115,275 B2 | 10/2006 | Clarot et al. |
| 7,135,011 B2 | 11/2006 | Powers et al. |
| 7,153,311 B2 | 12/2006 | Chung |
| 7,197,359 B1 | 3/2007 | Tokudome et al. |
| 7,198,623 B2 | 4/2007 | Fischer et al. |
| 7,232,444 B2 * | 6/2007 | Chang ........................ 606/131 |
| 7,241,208 B2 | 7/2007 | Suissa et al. |
| 7,276,051 B2 | 10/2007 | Henley et al. |
| 7,314,326 B2 | 1/2008 | Rosenberg |
| 7,316,657 B2 | 1/2008 | Kleinhenz et al. |
| 7,318,828 B2 | 1/2008 | Revivo |
| 7,320,691 B2 | 1/2008 | Pilcher et al. |
| 7,320,801 B2 | 1/2008 | Kelly |
| 7,354,423 B2 | 4/2008 | Zelickson et al. |
| 7,364,565 B2 | 4/2008 | Freeman |
| 7,384,405 B2 | 6/2008 | Rhoades |
| 7,427,273 B2 | 9/2008 | Mitsui |
| 7,458,944 B2 | 12/2008 | Liste et al. |
| 7,476,205 B2 | 1/2009 | Erdmann |
| 7,477,938 B2 | 1/2009 | Sun et al. |

| | | | |
|---|---|---|---|
| 7,482,314 B2 | 1/2009 | Grimes et al. |
| 7,489,989 B2 | 2/2009 | Sukhanov et al. |
| 7,507,228 B2 | 3/2009 | Sun et al. |
| 7,582,067 B2 | 9/2009 | Van Acker |
| 7,597,900 B2 | 10/2009 | Zimmer et al. |
| 7,597,901 B2 | 10/2009 | Clarot et al. |
| 7,658,742 B2 | 2/2010 | Karasiuk |
| 7,678,120 B2 | 3/2010 | Shadduck |
| 7,744,582 B2 | 6/2010 | Sadowski et al. |
| 7,789,886 B2 | 9/2010 | Shadduck |
| 7,837,695 B2 | 11/2010 | Hart et al. |
| 7,901,373 B2 | 3/2011 | Tavger |
| 7,951,156 B2 | 5/2011 | Karasiuk |
| 8,025,669 B1 | 9/2011 | David et al. |
| RE42,960 E | 11/2011 | Waldron |
| 8,048,089 B2 | 11/2011 | Ignon et al. |
| 8,066,716 B2 | 11/2011 | Shadduck |
| 8,088,085 B2 | 1/2012 | Thiebaut et al. |
| 8,128,638 B2 | 3/2012 | Karasiuk et al. |
| 8,221,437 B2 | 7/2012 | Waldron et al. |
| 8,236,008 B2 | 8/2012 | Boone, III et al. |
| 8,277,287 B2 | 10/2012 | Hart |
| 8,337,513 B2 | 12/2012 | Shadduck |
| 8,343,116 B2 | 1/2013 | Ignon et al. |
| 8,814,836 B2 | 8/2014 | Ignon et al. |
| 9,056,193 B2 | 6/2015 | Ignon et al. |
| 2001/0023351 A1 | 9/2001 | Eilers |
| 2001/0037118 A1 | 11/2001 | Shadduck |
| 2001/0049511 A1 * | 12/2001 | Coleman .................. A61H 9/00 |
| | | | 604/290 |
| 2002/0016601 A1 | 2/2002 | Shadduck |
| 2002/0041891 A1 | 4/2002 | Cheski |
| 2002/0058952 A1 | 5/2002 | Weber et al. |
| 2002/0107527 A1 | 8/2002 | Burres |
| 2002/0133110 A1 | 9/2002 | Citow |
| 2002/0133176 A1 | 9/2002 | Parkin et al. |
| 2002/0151826 A1 | 10/2002 | Ramey et al. |
| 2002/0151908 A1 | 10/2002 | Mallett, Sr. et al. |
| 2002/0188261 A1 | 12/2002 | Hruska |
| 2003/0012415 A1 | 1/2003 | Cossel |
| 2003/0018252 A1 * | 1/2003 | Duchon .................. A61B 6/481 |
| | | | 600/432 |
| 2003/0060834 A1 | 3/2003 | Muldner |
| 2003/0093040 A1 | 5/2003 | Mikszta et al. |
| 2003/0093089 A1 * | 5/2003 | Greenberg ......... A61B 17/545 |
| | | | 606/131 |
| 2003/0097139 A1 | 5/2003 | Karasiuk |
| 2003/0167032 A1 | 9/2003 | Ignon |
| 2003/0187462 A1 | 10/2003 | Chang |
| 2003/0208159 A1 | 11/2003 | Ignon et al. |
| 2003/0212127 A1 | 11/2003 | Glassman et al. |
| 2003/0212415 A1 | 11/2003 | Karasiuk |
| 2004/0010222 A1 | 1/2004 | Nunomura et al. |
| 2004/0010269 A1 | 1/2004 | Grimes et al. |
| 2004/0087972 A1 | 5/2004 | Mulholland et al. |
| 2004/0092895 A1 | 5/2004 | Harmon |
| 2004/0092959 A1 | 5/2004 | Bernaz |
| 2004/0097967 A1 | 5/2004 | Ignon |
| 2004/0122447 A1 | 6/2004 | Harmon et al. |
| 2004/0143274 A1 | 7/2004 | Shadduck |
| 2004/0162565 A1 | 8/2004 | Carson et al. |
| 2004/0166172 A1 | 8/2004 | Rosati et al. |
| 2004/0219179 A1 | 11/2004 | McDaniel |
| 2004/0236291 A1 | 11/2004 | Zelickson et al. |
| 2004/0243149 A1 | 12/2004 | Lee, Jr. |
| 2004/0254587 A1 | 12/2004 | Park |
| 2004/0267285 A1 | 12/2004 | Chang |
| 2005/0037034 A1 | 2/2005 | Rhoades |
| 2005/0038448 A1 | 2/2005 | Chung |
| 2005/0059940 A1 | 3/2005 | Weber et al. |
| 2005/0084509 A1 | 4/2005 | Bernstein |
| 2005/0148958 A1 | 7/2005 | Rucinski |
| 2005/0203111 A1 | 9/2005 | David |
| 2005/0209611 A1 | 9/2005 | Greenberg |
| 2005/0283176 A1 | 12/2005 | Law |
| 2006/0002960 A1 | 1/2006 | Zoeteweij et al. |
| 2006/0116674 A1 * | 6/2006 | Goble et al. .................. 606/41 |
| 2006/0161178 A1 | 7/2006 | Lee |
| 2006/0189964 A1 | 8/2006 | Anderson |

# US 9,550,052 B2
Page 4

## (56) References Cited

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2006/0191562 A1 | 8/2006 | Numomura |
| 2006/0200099 A1 | 9/2006 | La Bianco et al. |
| 2006/0200172 A1 | 9/2006 | Shadduck |
| 2006/0200173 A1 | 9/2006 | Shadduck |
| 2006/0212029 A1 | 9/2006 | Arcusa Villacampa et al. |
| 2006/0253125 A1 | 11/2006 | Ignon |
| 2006/0264893 A1 | 11/2006 | Sage, Jr. et al. |
| 2007/0005078 A1 | 1/2007 | Hart et al. |
| 2007/0043382 A1 | 2/2007 | Cheney |
| 2007/0065515 A1 | 3/2007 | Key |
| 2007/0088371 A1 | 4/2007 | Karasiuk |
| 2007/0123808 A1 | 5/2007 | Rhoades |
| 2007/0154502 A1 | 7/2007 | Hattendorf et al. |
| 2007/0156124 A1 | 7/2007 | Ignon et al. |
| 2007/0178121 A1 | 8/2007 | First et al. |
| 2007/0198031 A1 | 8/2007 | Kellogg |
| 2007/0208353 A1 | 9/2007 | Shadduck |
| 2007/0239173 A1 | 10/2007 | Khalaj |
| 2008/0027328 A1 | 1/2008 | Klopotek et al. |
| 2008/0091179 A1 | 4/2008 | Durkin et al. |
| 2008/0103563 A1 | 5/2008 | Powell |
| 2008/0119781 A1 | 5/2008 | King |
| 2008/0132914 A1 | 6/2008 | Bossard et al. |
| 2008/0139974 A1 | 6/2008 | Da Silva |
| 2008/0154161 A1 | 6/2008 | Abbott |
| 2008/0193493 A1 | 8/2008 | Rhoades |
| 2008/0200861 A1 | 8/2008 | Shalev et al. |
| 2008/0208146 A1 | 8/2008 | Brandwein et al. |
| 2008/0214987 A1 | 9/2008 | Xu |
| 2008/0215068 A1 | 9/2008 | Hart et al. |
| 2008/0221548 A1 | 9/2008 | Danenberg et al. |
| 2008/0243039 A1 | 10/2008 | Rhoades |
| 2008/0287864 A1 | 11/2008 | Rosenberg |
| 2008/0300529 A1 | 12/2008 | Reinstein |
| 2008/0300552 A1 | 12/2008 | Cichocki et al. |
| 2009/0048557 A1 | 2/2009 | Yeshurun et al. |
| 2009/0053390 A1 | 2/2009 | Sakou et al. |
| 2009/0062815 A1 | 3/2009 | Karasiuk et al. |
| 2009/0099091 A1 | 4/2009 | Hantash |
| 2009/0099093 A1 | 4/2009 | Hantash |
| 2009/0124985 A1 | 5/2009 | Hasenoehrl et al. |
| 2009/0138026 A1 | 5/2009 | Wu |
| 2009/0177171 A1 | 7/2009 | Ignon et al. |
| 2009/0192442 A1 | 7/2009 | Ignon et al. |
| 2009/0222023 A1 | 9/2009 | Boone, III et al. |
| 2010/0045427 A1 | 2/2010 | Boone, III et al. |
| 2010/0049177 A1 | 2/2010 | Boone, III et al. |
| 2010/0049210 A1 | 2/2010 | Boone, III et al. |
| 2010/0217357 A1 | 8/2010 | Da Silva |
| 2011/0054490 A1 | 3/2011 | Hart |
| 2011/0066162 A1 | 3/2011 | Cohen |
| 2011/0082415 A1 | 4/2011 | Ignon et al. |
| 2012/0022435 A1 | 1/2012 | Ignon et al. |
| 2012/0041338 A1 | 2/2012 | Chickering, III et al. |
| 2012/0136374 A1 | 5/2012 | Karasiuk |
| 2013/0018317 A1 | 1/2013 | Bobroff et al. |
| 2013/0066336 A1 | 3/2013 | Boone, III et al. |
| 2013/0096577 A1 | 4/2013 | Shadduck |
| 2013/0102978 A1 | 4/2013 | Ignon et al. |
| 2013/0144280 A1 | 6/2013 | Eckhouse et al. |
| 2013/0158547 A1 | 6/2013 | David |
| 2014/0343481 A1 | 11/2014 | Ignon |
| 2014/0343574 A1 | 11/2014 | Ignon et al. |
| 2015/0032047 A1 | 1/2015 | Ignon et al. |
| 2015/0230824 A1 | 8/2015 | Shadduck |
| 2015/0230825 A1 | 8/2015 | Shadduck |
| 2015/0231379 A1 | 8/2015 | Ignon et al. |
| 2015/0265822 A1 | 9/2015 | Ignon et al. |
| 2015/0290442 A1 | 10/2015 | Ignon et al. |
| 2016/0038183 A1 | 2/2016 | Ignon et al. |

### FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 10 2004 015815 A1 | 11/2005 |
| EP | 0 258 901 | 9/1987 |
| EP | 0 564 392 | 3/1993 |
| IT | 553 076 | 12/1956 |
| IT | 118 49 22 | 3/1985 |
| JP | 1993-088552 | 12/1993 |
| JP | 09-294747 | 11/1997 |
| JP | 2003-339713 | 12/2003 |
| JP | 2006-503627 | 2/2006 |
| JP | 2006-204767 | 10/2006 |
| KR | 20-0280320 | 7/2002 |
| WO | WO 00/15300 | 3/2000 |
| WO | WO 01/93931 | 12/2001 |
| WO | WO 03/073917 | 9/2003 |
| WO | WO 2004/037098 | 5/2004 |
| WO | WO 2005/070313 | 8/2005 |
| WO | WO 2006/018731 | 2/2006 |
| WO | WO 2007/114904 | 10/2007 |
| WO | WO 2012/145667 | 10/2012 |

### OTHER PUBLICATIONS

Ditre et al., *Effect of α-hydroxy acids on photoaged skin: A pilot clinical, histologic, and ultrastructural study*, Journal of American Academy of Dermatology, Feb. 1996, vol. 34, No. 2, Part 1, pp. 187-195.

Harris et al., *Combining Manual Dermasanding with Low Strength Trichloroacetic Acid to Improve Antinically Injured Skin*, The Journal of Dermatologic Surgery and Oncology, Jul. 1994, vol. 20, No. 7, pp. 436-442.

* cited by examiner

Case 2:20-cv-06082-RGK-ST Document 69-34 Filed 06/21/20 Page 6 of 363 PageID #: 9499



*FIG. 1*

Case 2:20-cv-06082-PBT-ST Document 69-34 Filed 06/21/20 Page 7 of 363 PageID #: 9300



*FIG. 2A*

Case 2:20-cv-06082-GRB-ST Document 69-34 Filed 06/21/20 Page 8 of 363 PageID #: 9501



Case 2:20-cv-06082-PERST Document 69-34 Filed 06/21/20 Page 9 of 363 PageID #: 9502



*FIG. 3*

Case 2:20-cv-06082-GRB-ST Document 69-14 Filed 06/21/20 Page 10 of 363 PageID #: 9503



FIG. 4



Case 2:20-cv-06082-PGRST Document 69-4 Filed 06/24/20 Page 12 of 363 PageID #: 9805



Case 2:20-cv-06082-PGS-ST Document 60-14 Filed 06/21/20 Page 13 of 363 PageID #: 4906



Case 2:20-cv-00803-JRS-STD Document 61-31 Filed 06/21/20 Page 14 of 363 PageID #: 1507





Case 2:20-cv-06608-GRB-ST Document 61-34 Filed 06/21/22 Page 16 of 363 PageID #: 14509



Case 2:20-cv-00030-JRS-STD Document 91-34 Filed 06/21/20 Page 17 of 363 PageID #: 14510





FIG. 12

Case 2:20-cv-00083-JRS-STD Document 91-1 Filed 06/24/20 Page 19 of 363 PageID #: 1512



*FIG. 13A*

Case 2:20-cv-06003-JRS-STD Document 91-34 Filed 06/21/20 Page 20 of 363 PageID #: 1613



*FIG. 13B*

Case 2:20-cv-00083-JRS-STD Document 91-34 Filed 06/24/20 Page 21 of 363 PageID #: 14514



*FIG. 14A*

Case 2:20-cv-00603-JRS-STD Document 69-1 Filed 06/24/20 Page 22 of 363 PageID #: 1615



*FIG. 14B*

Case 2:20-cv-00083-JRS-DLP Document 91-34 Filed 06/24/20 Page 23 of 363 PageID #: 14916



*FIG. 15A*

Case 2:20-cv-06058-GRB-ST Document 1-34 Filed 06/21/20 Page 24 of 363 PageID #: 1517



*FIG. 15B*

Case 2:20-cv-00030-JRS-STD Document 91-34 Filed 06/21/20 Page 25 of 363 PageID #: 14518



*FIG. 15C*

Case 2:20-cv-06083-GRB-ST Document 91-34 Filed 06/21/22 Page 26 of 363 PageID #: 14519



*FIG. 15D*



*FIG. 15E*

Case 2:20-cv-06083-GRB-ST Document 91-34 Filed 06/24/22 Page 28 of 363 PageID #: 1521



*FIG. 16*

*FIG. 17*



FIG. 18

Case 2:20-cv-00083-JRS-STD Document 1-1 Filed 06/11/20 Page 30 of 363 PageID #: 153



*FIG. 19*

Case 2:20-cv-06005-DSF-RAO Document 91-1 Filed 06/21/22 Page 31 of 363 Page ID #:1524

1

# CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

## CROSS-REFERENCE TO RELATED APPLICATIONS

This is a continuation of U.S. patent application Ser. No. 13/267,554, filed Oct. 6, 2011, which is a continuation of U.S. patent application Ser. No. 11/392,348, filed Mar. 29, 2006, which claims the benefit of U.S. Provisional Application No. 60/755,310, filed Dec. 30, 2005 and U.S. Provisional Application No. 60/764,668, filed Feb. 2, 2006, the entireties of all of the aforementioned applications are hereby incorporated by reference herein.

## BACKGROUND

Field

The invention relates in general to the field of skin treatment, and more specifically to apparatuses and methods for treating a person's skin.

Description of the Related Art

Abrasion of the outer layer or epidermis of the skin is desirable to smooth or blend scars, blemishes, or other skin conditions that may be caused by, for example, acne, sun exposure, and aging. Standard techniques used to abrade the skin have generally been separated into two fields referred to as dermabrasion and microdermabrasion. Both techniques remove portions of the epidermis called the stratum corneum, which the body interprets as a mild injury. The body then replaces the lost skin cells, resulting in a new outer layer of skin. Additionally, despite the mild edema and erythema associated with the procedures, the skin looks and feels smoother because of the new outer layer of skin.

Dermabrasion refers to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece with an abrasive element that is often in the form of a burr, wheel, or disc. This process tends to be painful and messy. In fact, the procedure is sometimes painful enough to require a local anesthetic. Dermabrasion leaves the skin red and raw-looking. The removed skin can take several months to regrow and heal. Recent efforts have led to the use of lasers instead of abrasive elements, which have resulted in less bleeding, but the pain and mess remains.

Efforts have been made to decrease the mess caused by the process waste, such as removed skin and blood, by adding a suction element. As the process waste is drawn into the suction opening, skin that has not been removed is also pulled against the grit surrounding the suction opening, so the procedure remains fairly messy due to the abrasion that takes place outside of the handpiece by the grit.

Microdermabrasion refers generally to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece emitting a stream of sand or grit. For example, a handpiece can be used to direct an air flow containing tiny crystals of aluminum oxide, sodium chloride, or sodium bicarbonate. The momentum of the grit tends to wear away two to three cell layers of the skin with each pass of the handpiece. Alternatively, new "crystal-free" microdermabrasion techniques utilize a diamond-tipped handpiece without a stream of grit.

Efforts to add a suction element have been more successful in microdermabrasion than in dermabrasion because the handpiece applying the stream of grit is more controllable to a localized area. That is, as the removed skin is drawn into the suction opening, skin that has not been removed is also pulled towards the handpiece where it is treated with the grit stream, allowing for simultaneous local treatment and suction.

Microdermabrasion removes moisture from the skin, so the procedure is always followed by the application of moisturizing creams. However, similar to topical application of moisturizing creams prior to microdermabrasion, the moisturizing elements only work as deep as the active ingredients can passively migrate through the remaining epidermis.

## SUMMARY OF THE INVENTION

In some embodiments, an apparatus for treating skin has a console with a user input device and a handpiece assembly. The handpiece assembly is configured to treat skin. A fluid line provides fluid communication between the console and the handpiece assembly. A manifold system is coupled to the console and controlled by the user input device, such as a computer, touchscreen, keyboard, and the like. The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

In some embodiments, a tip comprising a skirt portion is configured to couple to a handpiece for treating a target area on a patient's skin. A central body portion is coupled to the skirt portion. A first passage extends through the central body portion and is configured to receive a fluid from the handpiece. At least one second passageway extending through the central body portion and is configured to convey the fluid back into the handpiece. An inner member extends in a generally spiral fashion across at least a portion of a distal face of the central body portion. The inner member defines a channel between the first passage and the at least one second passage. When the tip is place against the skin, a chamber can be formed by the channel and the person's skin.

In some embodiments, a method of treating a target region on a patient's skin comprises providing a tip including a first aperture and at least one second aperture. At least one inner member on the surface of the tip defines at least one channel between the first aperture and the at least one second aperture. An outer member is disposed on the surface of the tip. The outer member engages the target with the tip. A treatment fluid flows distally through the first aperture region and through the at least one channel. The treatment fluid flows proximally through the at least one second aperture.

In some embodiments, a tip comprises a skirt portion configured to couple to a handpiece for treating a target on a patient's skin. A central body portion is coupled to the skirt portion and includes a mounting region substantially opposite the skirt portion. The mounting region configured to receive a pad for treating the skin. A first aperture extends through the skirt portion and the central body portion and configured to receive a fluid from the handpiece. At least one second aperture extending through the skirt portion and the central body portion and configured to convey the fluid back into the handpiece.

In some embodiments, a method of treating a target region of a patient comprises providing a tip including a first aperture, at least one second aperture, and a distal end configured to receive a pad. In some variations, the first pad is attached to the distal end. The tip is engaged with the target region.

In some embodiments, a manifold system comprises a body portion configured to receive releasably at least two

3

bottles. The manifold is configured so that it can be coupled to a console. The console includes a handpiece for treating skin. At least one elongate member is in communication with a pump and configured to extract a fluid from one of the at least two bottles. At least one switch is configured to permit or inhibit a flow of the fluid from one of the at least two bottles through the pump. In some variations, the elongate member is dimensioned to fit within one of at least two bottles to draw fluid out of the bottle.

In some embodiments, a method of treating a target region on a patient's skin comprises engaging a tip with the patient's skin such that an effective amount of skin is removed by the tip. In some variations, the tip is a dry tip. After removing an effective amount of skin, another tip (e.g., a wet tip) engages the patient's skin such that an effective amount of skin is removed by the tip. In some variations, acid is delivered out of the wet tip to facilitate skin removal. In some variations, the wet tip includes a first aperture, at least one second aperture, at least one inner member on the surface of the tip defining at least one channel between the first aperture and the at least one second aperture, and an outer member on the surface of the tip. In some variations, treatment fluid flows outwardly along the channel. In some variations, treatment fluid flows inwardly along the channel. In some variations, the wet tip comprises an abrasive pad.

In some embodiments, a method of treating a target region on a patient's skin comprises engaging a first skin treatment tip with the patient's skin. A first material is delivered out of the first skin treatment tip to a target region. A second skin treatment tip engages the target region while the first material effectively facilitates exfoliation with the second skin treatment tip. In some variations, the first material comprises an acid, hydrator, and combination thereof. In some variations, the first skin treatment tip is configured to remove skin at a different rate than the second skin treatment tip. In some variations, the first skin treatment tip is configured to exfoliate at a higher rate than the second skin treatment tip. In some variations, material is delivered out of the second treatment tip to the target region of the patient's skin.

The apparatus for treating skin can dispense treatment material that is held in containers, such as bottles, bags, pouches, or other suitable structures for holding and storing material. These containers can be non-refillable or refillable. The treatment material can be delivered by gravity feed, pumps, or suction devices. The manifold system can be used to control fluid flow from a plurality of containers to one or more handpieces.

## BRIEF DESCRIPTION OF THE DRAWINGS

Having thus summarized the general nature of the invention, certain preferred embodiments and modifications thereof will become apparent to those skilled in the art from the detailed description herein having reference to the figures that follow.

FIG. 1 is a perspective view of one embodiment of a skin treatment system.

FIG. 2A is a perspective view of one embodiment of a handpiece assembly for use with the skin treatment system of FIG. 1.

FIG. 2B is a side elevational view of the handpiece assembly of FIG. 2A.

FIG. 3 is a longitudinal cross-sectional view of the handpiece assembly of FIG. 2B. The handpiece assembly is engaging a person's skin.

FIG. 4 is a perspective view of another embodiment of a handpiece assembly.

4

FIG. 5A is a perspective view of one embodiment of a tip that can be coupled to a main body of a handpiece assembly to treat a person's skin.

FIG. 5B is a top elevational view of the tip of FIG. 5A.

FIG. 5C illustrates a bottom elevational view of the tip of FIG. 5A.

FIG. 5D is a cross-sectional view of the tip of FIG. 5B taken along the line 5D-5D.

FIG. 6A is a perspective view of a tip in accordance with another embodiment.

FIG. 6B is a top elevational view of the tip of FIG. 6A.

FIG. 6C is a bottom elevational view of the tip of FIG. 6A.

FIG. 6D is a cross-sectional view of the tip of FIG. 6B taken along the line 6D-6D.

FIG. 7A is a perspective view of a tip in accordance with another embodiment.

FIG. 7B is a top elevational view of the tip of FIG. 7A.

FIG. 7C is a bottom elevational view of the tip of FIG. 7A.

FIG. 7D is a cross-sectional view of the tip of FIG. 7B taken along the line 7D-7D.

FIG. 8A is a perspective view of yet another embodiment of a tip for treating a person's skin.

FIG. 8B is a top elevational view of the tip of FIG. 8A.

FIG. 8C is a bottom elevational view of the tip of FIG. 8A.

FIG. 8D is a cross-sectional view of the tip of FIG. 8B taken along the line 8D-8D.

FIG. 9A is a perspective view of still another embodiment of a tip that can be coupled to a main body of a handpiece assembly.

FIG. 9B is a top elevational view of the tip of FIG. 9A.

FIG. 9C is a bottom elevational view of the tip of FIG. 9A.

FIG. 9D is a cross-sectional view of the tip of FIG. 9B taken along the line 9D-9D.

FIG. 10A is a perspective view of another embodiment of a tip for treating a person's skin.

FIG. 10B is top elevational view of the tip of FIG. 10A.

FIG. 10C is bottom elevational view of the tip of FIG. 10A.

FIG. 10D is a cross-sectional view of the tip of FIG. 10B taken along the line 10D-10D.

FIG. 10E is a perspective exploded view of the tip of FIG. 10A, wherein a pad is spaced from a tip main body.

FIGS. 11A-11E are cross-sectional views of inner members that can be used to exfoliate skin.

FIG. 12 is a perspective view of a bottle for use with the skin treatment system of FIG. 1.

FIG. 13A is a cross-sectional view of one embodiment of a bottle spaced from an insertion tip assembly.

FIG. 13B is a cross-sectional view of the bottle of FIG. 12A coupled with the insertion tip assembly.

FIG. 14A is a cross-sectional view of a closure and a bottle.

FIG. 14B is a cross-sectional view of the closure and bottle of FIG. 14A when assembled.

FIG. 15A is a perspective view of one embodiment of a manifold system holding a plurality of bottles.

FIG. 15B is a cross-sectional view of the manifold system of FIG. 15A taken along the line 15B-15B of FIG. 15A.

FIG. 15C is a cross-sectional view of the manifold system of FIG. 15A taken along the line 15C-15C of FIG. 15A.

FIG. 15D is a cross-sectional view of the manifold system of FIG. 15C wherein the bottle has been removed.

FIG. 15E is a cross-sectional elevational view of the manifold system.

FIG. 16 is a perspective view of another embodiment of a skin treatment system.

Case 2:20-cv-06083-BRS-ST Document 19-1 Filed 06/21/20 Page 33 of 363 PageID #: 452

5

FIG. **17** is a cross-sectional view of a fluid line of the skin treatment system of FIG. **16** taken along the line **17-17**.

FIG. **18** is a side elevational view of a handpiece assembly with a removable cartridge.

FIG. **19** is a side elevational view of the handpiece assembly and removable cartridge of FIG. **18**, the cartridge is shown removed from the handpiece assembly.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

FIG. **1** illustrates a skin treatment system **10** that can be used to perform one or more treatments on a person's skin. The illustrated skin treatment system **10** includes a console **12** and a handpiece assembly **18** connected to the console **12** via a line **20**. A manifold system **24** can control the flow of treatment material from containers **26** into and through the line **20**. The treatment material can be discharged out of the handpiece assembly **18** to treat a person's skin. The skin treatment system **10** can be used at a hospital, health care physicality, residences, or any other suitable location.

As explained in more detail below, the handpiece assembly **18** is applied to the target area of the patient to perform skin treatment(s). As used herein, the term "skin treatment" is a broad term and includes, but is not limited to, skin removal, skin abrasion (e.g., dermabrasion, microdermabrasion, etc.), ablating or slicing skin (preferably a thin layer of skin), stimulation (including thermal, mechanical, electrical, and/or chemical stimulation), mesotherapy, isophoresis, light therapy, vacuum therapy, and the like. Preferably, the handpiece assembly **18** administers a treatment material from at least one of the containers **26** through the line **20** to the target area of the skin while the handpiece assembly **18** engages the skin.

As used herein, the term "treatment material" is a broad term and includes, but is not limited to, medicament, a substance tending to flow or conform to the outline of its container such as fluid, gas, liquid (e.g., serums, water, saline, etc.), gel, fluidized material, additives, and/or a plurality of fine solids. The general term "fluid" is used throughout synonymously with the term "treatment material" and is to be given the same broad definition. The handpiece assembly **18** can preferably massage, abrade, ablate, or otherwise treat the target skin area while also applying a treatment material to the patient. In certain embodiments, the treatment material and tip of the handpiece **18** can work in combination for an effective and rapid skin treatment. Additionally, any number of "dry" and "wet" tips can be used alone or in combination for treatment flexibility.

With continued reference to FIG. **1** the line **20** is configured to provide fluid communication between the containers **26** and the handpiece assembly **18**. The line **20** can comprise one or more conduits extending between the console **12** and the handpiece assembly **18**. In certain embodiments, the line **20** includes a supply line and a waste line for delivering and returning material, respectively, as detailed below.

The distal end **22** of the line **20** is connected to the handpiece assembly **18**. Preferably, the line **20** includes a filter **28** that removes contaminants or impurities from the treatment material passing through the line **20**. In other embodiments, the filter **28** is located in the console **12** or the manifold system **24**. The console **12** can be connected to a power source such as an AC outlet. The power source can power the handpiece assembly **18** and/or other components of the skin treatment system **10**, such as, for example, pumps, valves, and the like.

6

In the illustrated embodiment, the console **12** comprises four casters **33** to allow for easy movement, for example, from one treatment room to another treatment room. In such an embodiment, the console **12** can be conveniently rolled on a support surface. Other means of transportation can also be employed or the console **12** can be stationary. In some embodiments, the console **12** is portable for convenient transport.

The illustrated containers **26** of FIG. **1** are preferably releasably coupled to the manifold system **24**. The manifold system **24** can deliver treatment material from the containers **26** to the line **20** as mentioned above. In certain embodiments, the console **12** has a user input device **32** for selecting a treatment material to be passed through the line **20** to the handpiece assembly **18**. During some skin treatment procedures, treatment materials from multiple containers **26** are sequentially or simultaneously applied to the patient's skin during a "wet" mode of operation. Alternatively, the skin treatment system **10** can be used to deliver a single treatment material to the patient's skin. In some embodiments, the console **12** can be used for a "dry" mode of operation. That is, the console **12** can be used to exfoliate skin, for example, without delivering little or substantially no treatment fluid. The skin treatment system **10** can thus provide flexibility in selecting a treatment plan.

Multiple handpieces assemblies **18** and/or tips **34** can be used during a single skin treatment procedure in a wet and/or dry mode of operation. For example, a first handpiece assembly **18** may be employed to treat a patient's face and neck while a second handpiece assembly **18** may be employed to treat other larger areas of the patient's body. Thus, different handpieces **18** can be used to treat different regions of a person's body. The configurations of the handpieces **18** and tips can be selected based on the treatment material to be applied, desired interaction with the patient's skin, size of treatment area, skin condition, and the like.

With reference to FIGS. **2**A and **2**B, the handpiece assembly **18** includes a main body **30** and a tip **34**. The handpiece assembly **18** can be conveniently held within the hand of a user so that the user can place the tip **34** in operative engagement with a person's skin. The user is typically an aesthetician (e.g., an aesthetician allowed to perform microdermabrasion), doctor, and other medical personnel, such as a physician assistant and nurse practitioner. In some cases, the user is the person whose skin is being treated.

The main body **30** has contoured portions **70** at its distal end **36** so that the user can comfortably grip the handpiece assembly **18** during use. The main body **30** can have other designs to provide a comfortable grip. FIG. **2**A illustrates an embodiment in which the main body **30** is substantially flat on two opposing sides. FIG. **4** illustrates an embodiment in which the main body **30** is generally cylindrical.

As noted above, the tip **34** can be pressed against a patient's skin to perform a skin treatment. The distal end **102** of the tip **34** may be angled with respect to the handpiece assembly **18** to increase the contact area with the patient's skin without enlarging the handpiece assembly **18** for an ergonomic and comfortable design. The angled tip **34** can lay flat on the skin while the main body **30** is angled to the skin. The angle between the face of the distal end **102** and the longitudinal axis of the handpiece assembly **18** can be selected based on the desired size of the face of the distal end **102**. In alternative embodiments, the face of the distal end **102** is generally perpendicular to the longitudinal axis of the main body **30**.

The tip **34** can be permanently or temporarily coupled to the distal end **36** of the main body **30**. In some embodiments,

Case 2:20-cv-06082-GRB-ST Document 69-1 Filed 06/22/20 Page 34 of 363 PageID #: 1527

7

the tip **34** is disposable. As used herein, the term "disposable," when applied to a system or component (or combination of components), such as a tip, container, or pad, is a broad term and means, without limitation, that the component in question is used a finite number of times and then discarded. Some disposable components are used only once and then discarded. Other disposable components are used more than once and then discarded. In some embodiments, the tip **34** is removably coupled to the main body **30** such that the tip may be removed from the main body **30** and thrown away to avoid cross-contamination. In other embodiments, the tip **34** is a reusable tip that can be cleaned, for example by autoclaving, after each use. The tip **34** can thus be used for any number of procedures as desired.

With reference to FIGS. 2A and 2B, the proximal end **40** of the main body **30** is operatively connected to the line **20**. In the embodiment illustrated, the line **20** includes an output line **50** for removing waste from the handpiece assembly **18** and an input line **52** for delivering treatment material to the handpiece assembly **18**. The proximal end **40** of the main body **30** includes a plurality of connectors **44**, **46**, each connected to one of the conduits **50**, **52**. The illustrated input line **52** is connected to the connector **46**, and the output line **50** is connected to the connector **44**.

The input line **52** delivers treatment material from at least one of the containers **26** to the connector **46**. The fluid then flows through the main body **30** and ultimately to the tip **34**. As shown in FIG. 3, the main body **30** comprises a plurality of lumens **90**, **92** in a fluid communication with the tip **34**. Fluid from the input line **52** can flow through the input lumen **92** to the tip **34**. The fluid then flows out of the tip **34** to a target skin area. The fluid is then trapped in the space **100** between the skin **80** and the tip **34**. To remove the fluid, the fluid flows proximally through the lumen **90** to the output line **50**. The fluid passes through the output line **50** and into the console **12**. As such, fluid can continuously or intermittently flow through the handpiece assembly **18**.

To treat the person's skin **80**, the handpiece assembly **18** can also be moved relative to the skin **80** such that the tip **34** maintains engagement with the skin **80**. The illustrated tip **34** is configured to massage the skin **80** while also providing fluid communication with the skin **80**. As detailed below in connection with FIGS. 5A through 10, the tip can include sharp planing blades, blades (e.g., razor blades), raised sharp areas, molded posts, grits, or other structures for treating skin, as detailed below.

When the tip **34** and treatment material are used in combination, the handpiece assembly **18** preferably exfoliates dead skin cells and extracts impurities by applying a vacuum while simultaneously bathing the healthy underlying skin with active treatment material. The active treatment material can facilitate cleansing, exfoliating, hydrating, and/or provide residual antioxidant protection. The treatment material and tip **34**, alone or in combination, can effectively and rapidly treat the target skin area. The waste material, including the used treatment material, removed skin, and/or grit, can then be drawn back through the tip **34**, the main body **30** via lumen **90**, and into the connector **44**. The waste then flows into the output line **50** for subsequent disposal, as detailed below in connection with FIG. 4.

In some embodiments, including the illustrated embodiment of FIG. 3, the tip **34** has a tip connector **98** (see FIGS. 5C and 5D) that mates with the lumen **92**. The tip **34** can provide fluid communication from the tip connector **98** to the space **100** via a through-hole **122**. One or more through-holes **114** define fluid passageways through the tip **34** between the space **100** and the intermediate chamber **116**.

8

The intermediate chamber **116** can be interposed between the through-holes **114** and the lumen **90**. The intermediate chamber **116** is preferably defined by the distal face **43** of the main body **30** and the proximal face **41** of the tip **34**. The intermediate chamber **116** can provide equalization of fluid between the tip **34** and the body **30**. As such, a generally equal vacuum is applied to both through-holes **114**. The fluid can flow through the through-holes **114**, into the intermediate chamber **116**, and then into the lumen **90**. In some embodiments, however, the fluid flows directly from the through-holes **114** to the lumen **90** without passing through an intermediate chamber **116**.

The tip **34** can have one or more sealing members to form a fluidic seal between the tip **34** and the main body **30**. The illustrated main body **30** includes a sealing member **47** that engages the inner surface of the skirt **64** of the tip **34**. The sealing member **47** can be a compliant member comprising rubber, polymer, plastic, or other suitable material for forming seals. In some embodiments, the sealing member **47** is an O-ring made of rubber.

With continued reference to FIG. 3, during use, treatment material can flow distally through the lumen **92** into the through-hole **122**. The treatment material then proceeds through and out of the through-hole **122** into the space **180**. Preferably, the treatment material spreads radially outward to the peripheral through-holes **114**. The material can then flow through the through-holes **114** into the lumen **90** for subsequent removal.

In alternative embodiments, the fluid flows in the opposite direction. That is, the line **50** delivers fluid through the lumen **90** into the tip **34**. The fluid flows through the intermediate chamber **116** and the through-holes **114**. The fluid then flows to the chamber **100** and inwardly through the tip connector **98** to the lumen **92**. The fluid proceeds proximally along the lumen **92** and ultimately into the line **52**.

In yet another embodiment, the handpiece assembly **18** comprises two or more input lumens **90**. Such a design allows mixing of two or more treatment materials within the handpiece assembly **18** or space **100**, which would be useful for treatments with fluids that react or are unstable or degrade when stored or mixed.

As depicted in FIG. 4, the handpiece assembly **18** can optionally include a controller **60** that is configured to control the fluid flow out of the tip **34**. The illustrated controller **60** can be operated to increase or decrease the flow rate of treatment fluid out of the tip **34**. Alternatively or additionally, the controller **60** may control the flow rate of waste fluid flowing through the handpiece assembly **18** to the output line **50**. When control of the waste treatment fluid and waste fluid is independent, the detention time of the fluid in the tip **34** may be adjusted as desired.

The illustrated controller **60** is a generally cylindrical body that is pivotally connected to the main body **30**. FIG. 4 illustrates an embodiment in which the controller **60** is recessed into and partially hidden by the main body **30**, although in other embodiments the controller **60** may encircle the main body **30**. The controller **60** may include textured grooves to provide for easier manipulation. In some embodiments, the controller **60** is located near the distal end **36** of the handpiece assembly **18** proximal or distal of the contoured portion **70**. The type and configuration of the controller **60** can be selected based on the design of the handpiece assembly **18**. The controller **60** can also be a rotatable knob or handle, digital controller, and the like.

The handpiece assembly **18** can also include one or more flow rate controllers within the main body **30** that cooperate

US 9,550,052 B2

9

with the controller **60** to adjust the fluid flow out of the tip **34**. For example, the controller **60** may comprise a flow control valve such as a globe valve, butterfly valve, needle valve, or variable orifice. Other types of flow rate controllers can also be used, such as an electrically controlled solenoid valve. In embodiments where the fluid flow is electronically controlled, the valve system may alternatively be located in the console **12** or manifold system **24**. Separate devices can also be used to control the flow of treatment material. For example, clamps, pinch valves, or other suitable devices can be used to control fluid flow through the lines **50**, **52**.

Various types of tips **34** can be used with the handpiece assemblies **18** illustrated in FIGS. **1** to **4**. FIGS. **5A** through **10E** illustrate embodiments, for example, of tips **34** that can be used with these handpiece assemblies **18**. These tips **34** can be interchangeable to provide maximum treatment flexibility.

As shown in FIGS. **5A** through **10E**, the tip **34** comprises the skirt **64** and a tip main body **66** extending outwardly therefrom. The skirt **64** is preferably configured to provide a gripping surface suitable for applying leverage or force sufficient to remove the tip **34** from the main body **30**. In some embodiments, the skirt **64** includes internal threads such that it can be mechanically coupled to external threads on the distal end **36** of the main body **30**. In some embodiments, the tip **34** can be press fit onto the main body **30**. Frictional forces can retain the tip **34** to the main body **30**.

With respect to FIGS. **5A** through **7**, the tip **34** comprises an outer member **120** and an inner member **124**. The outer member **120** preferably defines the periphery of the distal end **102** of the tip **34**. When the tip **34** is placed against skin, the outer member **120** can inhibit fluid flow between the tip **34** and the skin and define the outer portion of the space **100**.

The inner member **124** is preferably spaced from the outer member **120** to define one or more channels. The illustrated outer member **120** defines a continuous channel **140** that extends outwardly from the central through-hole **122** towards at least one of the outer through-holes **114**. The inner member **120** can form the sidewalls of the channel **140**. Any suitable configuration of channels **140** can be used to provide fluid flow along a flow path. The illustrated channels **140** have a somewhat U-shaped axial cross-sectional profile, as depicted in FIG. **8A**. The channel **140** can have a V-shaped, curved, or any other suitable cross sectional profile. A flow path between the through-holes in the tip **34** can be defined at least in part by the channels.

The spiral-like pattern of the inner members **124** in FIGS. **5** through **7** varies. For example, the inner member **124** in FIG. **5** extends about a longitudinal axis **143** of the tip **34** approximately one and a half times, the inner member **124** in FIG. **6** extends about the tip **34** approximately two and a half times, and the inner member **124** in FIG. **7** rotates about the tip **34** approximately one and three quarters times. In some embodiments, the inner member **124** subtends an angle of about 70°, 135°, 180°, 210°, 225°, 270°, 315°, 360°, and angles encompassing such ranges. In yet other embodiments, the inner member **124** subtends an angle of about 405°, 450°, or 495°. The tightness of the spiral in combination with the location and number of through-holes **114** affects the detention time of the fluid in the channel **140**. Generally, a tighter spiral results in a longer pathway (i.e., the length of the channel **140**) from delivery through-hole **122** to the return through-holes **114**. Fluid traveling down the longer pathway is in contact with the person's skin **80** for a longer period of time. Thus, tighter spirals lead to increased contact time between the fluid and the skin **80**. These longer contact times can increase the effectiveness of

10

the fluid because the skin can absorb an adequate amount of active ingredients of the treatment material. Fluid retention time on the patient's skin can be increased to increase hydration, serum retention, and the like. Shorter pathways can be used to reduce contact time between the fluid and the patient's skin. In some embodiments, for example, the tip **34** of FIGS. **5A** to **5D** has a relatively short pathway to limit absorption of fluids, achieve relatively high flow rates, and the like.

Additionally, the inner members **124** can be configured to remove tissue. The inner member **124** can be an abrasive member designed to remove tissue when the inner member **124** slides along a person's skin. The user may select a tip **34** based on the appropriate detention time and abrasiveness for the treatment being applied. For example, the tip **34** illustrated in FIG. **7** will provide less abrasion than the tip illustrated in FIG. **6**, but the tip **34** illustrated in FIG. **7** will provide a longer detention time than the tip **34** illustrated in FIG. **5**.

The illustrated tip **34** includes a generally continuous inner member **124** that extends from near the through-hole **122** towards at least one of the through-holes **114**. In other embodiments, the tip **34** can have a plurality of inner members **124**. For example, the inner members **124** can be linear, curved, and may be continuous or discontinuous.

The handpiece assembly **18** can be moved while the spiral-like inner member **124** engages the patient's skin. The movement of the handpiece assembly **18** can increase the effectiveness of the treatment material expelled out of the tip **34**. In some embodiments, for example, the tip **34** can be used with a lifting treatment material that facilitates extractions of, for example, sebum, blackheads, skin, or other substances (e.g., oils, dead skin, etc.). The lifting treatment extraction producer can unclog pores to improve the treated skin's overall appearance. To facilitate extractions, the handpiece assembly **18** can be twisted or rotated while the tip **34** is pressed against the patient's skin. The twisting action and the lifting treatment material can work in combination for effective extractions. In alternative embodiments, a handpiece assembly **18** can also be used without a lifting treatment material for extractions by employing the twisting motion.

In certain embodiments, the spiral-like tip **34** massages the skin **80**. In other embodiments, the spiral-like tip **34** ablates the skin **80**. For example, the inner members **124** may act as blades to cut thin layers from the skin **80** when the user twists the handpiece assembly **18**. Twisting the handpiece assembly **18** causes the tip **34** to rotate about the twisting axis, rotating the sharp inner members **124** against the skin **80**, which causes ablation. Thin layers of skin can thus be removed by the handpiece assembly **18**. Additionally or alternatively, the spiral-like tip **34** may plane along skin when a fluid is applied to the skin. The planing tip **34** can remove a thin layer of the skin (e.g., the stratum corneum, preferably hydrated stratum corneum). Accordingly, the user can use the handpiece assembly **18** to remove a particular amount of skin.

A vacuum can be applied by the handpiece assembly **18**. For example, the console **12** can have a pump that applies a vacuum via the output line **52**. The negative pressure draws waste material into the through-holes **114** and out of the handpiece assembly **18**. When the tip **34** engages the patient's skin, the vacuum can draw the skin against the tip **34** to enhance the effectiveness of the inner members **124**. The vacuum can be increased or decreased to increase or decrease, respectively, for example, frictional forces, depth of cutting, amount of abrasion, and the like. To rapidly

US 9,550,052 B2

11

remove skin, a strong vacuum can be applied to the person's skin so that the skin is pulled against the inner member **124**. The vacuum can also facilitated removal of the waste fluid captured between the tip **34** and the patient's skin. A vacuum can also be used in combination with the tips illustrated in FIGS. **1**-**10**E. The vacuum can also be varied based on the thickness, compliance, and other properties of the skin surface

The tip **34** can have any suitable number of through-holes **114**, **122** to achieve the desired fluid flow between the skin **80** and the tip **34**. For example, FIG. **5**A to **5**D illustrate an embodiment with two through-holes **114**. The number of through-holes **114**, **122** can be chosen based on the cross-sectional areas of the through-holes **114**, **122** and the expected flow rate of the fluid through the channel **100**. Preferably, one end of through-holes **114** is positioned between the inner member **124** and the outer member **120**. In some embodiments, including the embodiments illustrated in FIGS. **5**A through **7**, the through-holes **114** are positioned generally midway between the outer member **120** and inner member **124**.

The tips can also have one or more energy sources for delivering energy to the skin. Radiant energy, heat, and the like can be delivered to the skin by the tips. The tip **34** illustrated in FIGS. **6**A to **6**D has a pair of energy sources **151** in the form of LEDs. When the tip **34** is proximate the patient's skin, the LEDs **151** can deliver a desired amount of energy to the skin. The illustrated tip **34** has four LEDs; however, any number of LEDs can be employed.

In alternative embodiments, the tips can carry deployable material. The structure **151** can be in the form of a cavity or pocket that contain and carry material that is released when it engages the treatment fluid. The material in the cavities **151** can be made of any of the treatment materials disclosed herein, and can be in a solid form. For example, the cavities can hold lubricant or soap that is released when the tip is applied to skin.

FIGS. **8**A through **8**D illustrate another embodiment of a tip **34** when the inner member **124** includes a ring with perforations **140** that provide fluid communication between the through-hole **122** and through-holes **114**. A space **100** can be defined between the inner member **124**, perforations **140**, and outer member **120** when the tip **34** is in operative engagement with the skin **80**. FIG. **8**C illustrates an embodiment with eight through-holes **114**. In the embodiment illustrated in FIGS. **8**A through **8**D, the inner member **124** forms recessed regions **171**, allowing for a larger area of fluid contact with the skin **80** then the tips **34** illustrated in FIGS. **5** through **7**.

FIGS. **9**A through **9**D illustrate another embodiment of a tip **34** comprising an outer member **120** and an array of protruding inner members **124**. A recessed region **191** is defined between the inner members **124** and the outer member **120**. The inner members **124** of FIGS. **9**A to **9**D can be posts that are similar to the inner members described above. The post **124**, for example, can have relatively sharp edges. These edges can be used to remove skin. In some embodiments, the inner members **124** can have relatively sharp planing blades. The tip **34** illustrated in FIGS. **9**A through **9**D allows for more freedom of movement of the treatment fluid. The protruding inner members **124** preferably abrade the skin differently than the tips **34** illustrated in FIGS. **5**A through **8**. Rather than being able to ablate large sections of the skin **80** like a blade, as the tips **34** in FIGS. **5**A-**8** can do in certain embodiments, the plurality of protruding inner members **124** can ablate or roughen a plurality of smaller sections of the skin **80**.

12

The protruding member **124** can optionally contain treatment material. For example, the protruding members **124** can be generally cylindrical members having a passageway or chamber **127** that holds treatment material. Thus, fluid can be used in combination with treatment material coupled to the tip **34**.

With reference to FIGS. **5** through **9**, the inner member **124** preferably has a height from the distal surface that is generally less than the height of the outer member **120**. In some non-limiting embodiments, the height of the inner member **124** is less than 90%, 70%, 60%, 50%, and ranges encompassing such percentages of the height of the outer member **120**. However, in other embodiments, the inner member **124** has a height that is generally greater than the height of the outer member **120**. For example, the inner member **124** can have a height that is 10%, 20%, 30%, 40%, 50% greater than the height of the outer member **120**. The inner member **124** can thus protrude from the tip **34**. A skilled artisan can select a desired height of the inner member **124** and/or the outer member **120** to achieve the desired interaction with the person's skin **80**.

FIGS. **10**A through **10**E illustrate another embodiment of a tip **34** comprising an outer member **120** and a pad **128**. FIG. **10**E depicts the pad **128** removed from the tip **34**. The tip **34** preferably has a mounting surface **227** that is surrounded by the outer member **120**. The pad **128** can be permanently or temporarily coupled to the mounting surface **227**.

The pad **128** preferably has a distal surface **224** configured to treat a person's skin. In some embodiments, the pad **128** is a disposable pad that comprises treatment material attached thereto. For example, the pad **128** may comprise vitamins, moisturizers, antioxidants, and the like. Preferably, the pad **128** comprises an adhesive proximal side and a distal side **224** including an abrasive surface. The abrasive surface can have grit, a plurality of members (e.g., members similar to the inner members **124** described above), or the like. The pad **128** can be permanently coupled to the mating surface **227** so that the tip **34** can be used for an extended length of time, or for multiple treatments. In alternative embodiments, the tip **34** is removable for maximum flexibility in selecting pad abrasiveness, and also allows the user to make changes to the tip **34** without changing the tip **34** in its entirety. The grit rating of abrasive surface of the distal surface **224** can be selected based on the desired rate of skin removal.

The illustrated pad **128** is generally elliptical and planar. In alternative embodiments, the pad **128** can be polygonal, circular, or have any other shape as desired. The pad **128** can have cutouts **225** that can match the through-holes **114**, **122**. The cutouts **225** can be aligned with the through-holes **114**, **122** when the pad **128** is coupled to the mounting surface **227** of the tip **34**, as shown in FIGS. **10**A to **10**D. The illustrated mounting surface **227** defines a plurality of tip flow channels **229** extending between the through-holes **114**, **122**. When the tip **34** is assembled, fluid can flow along the channels **229** between the main body **66** and the pad **128**.

Various types of adhesives can be used to temporarily or permanently couple the pad **128** to the mounting surface **227**. As used herein, the term "adhesive" is a broad term and includes, but is not limited to, coupling agents, glues, bonding materials, or the like. In some embodiments, for example, waterproof pressure sensitive adhesives are used for releasably coupling the pad **128** to the mounting surface **227**. In some embodiments, the pad **128** can be permanently coupled to the mounting surface **227**. For example, the pad **128** can be bonded or fused to the main body **66**. Addition-

Case 2:20-cv-06083-JGB-SST Document 89-1 Filed 06/21/22 Page 37 of 363 Page ID #:12530

13

ally or alternatively, snap fittings, fasteners, or other coupling structures can be used to mount the pad 128.

The tip 34 described above can be used for wet or dry modes of operation. As such, the tip 34 can be used for wet exfoliation or dry exfoliation. In some embodiments, the tip 34 is used in a dry mode to remove a desired amount of skin. After removing a desired amount of skin, the tip 34 can be used in a wet mode on the same or different area of the patient's kin. During wet mode, fluid can be passed out of the tip 34 onto the patient's skin. The wet tip 34 can exfoliate, hydrate, and/or perform other types of treatments. Alternatively, the tip 34 can be used in a wet mode and than a dry mode. The sequence of wet and dry modes of operation can be selected based on the type of tip, treatment material, skin condition, and the like.

Although the handpiece assemblies are primarily discussed with respect to use with treatment material, the handpiece assemblies can be used without treatment material, i.e., the handpieces can be used in a dry procedure. Dry procedures can be used for non-hydration procedures and may require less post-procedure clean up.

Various fabrication techniques can be employed to make the tips 34 as mentioned above in connection with FIGS. 11A-11E. In some embodiments, the tips 34 are formed through a molding process, such as an injection or compression molding process. The tips 34 of FIGS. 5A to 5D, for example, can be monolithically formed through an injection molding process. Alternatively, the tip 34 of can have a multi-piece construction, if desired. The tips 34 can be made of polymers, rubbers, metals, or other suitable materials.

The tips 34 can also be fabricated in a multi-step process. For example, the main body 66 and skirt 64 can be formed in a single process. A textured surface (e.g., pad, inner members 124, etc.) can be applied to the main body 66 in a subsequent process. The textured surface can be formed by cutting, embossing, adding material (e.g., a pad, adhesive grit, etc.), a roughening implement, stamping process, or other suitable texturing means.

The tips can have associated treatment materials, including, for example, a medicament. As used herein, the term "medicament" is a broad term and includes, without limitation, growth agents, growth factors or hormones, growth inhibitors, serums, treatment material, cleaners, vitamins, exfoliators, lubricants, or other substances that can be used to treat a patient's skin. The medicament can be associated with the tip 34 by imbedding, overlaying, coating, impregnation, co-mixing, absorption, or other suitable means for associating the medicament with the tip 34. The medicament can be hardened so that it can further enhance massaging and/or abrasion. In some embodiments, the medicament forms hardened grit that can be imbedded on the surface of the tip 34. The grit can work in combination with the inner members 124 to treat a person's skin. If a fluid is used, the fluid can facilitate the release of the medicament from the tip 34. In some embodiments, the medicament comprises or more bioactive substances, such as antibiotics, substances for accelerating the healing of the wound, cell proliferation agents, and the like. Such bioactive substances may be desirable because they contribute to the healing of damaged or removed skin, as well as reducing the likelihood of infection.

FIGS. 11A to 11E illustrate different cross-sections of inner members that can be used with the tips illustrated in FIGS. 1-10E. The inner member 124 of FIG. 11A has generally sharp tip 253 for removing tissue. The tip 253 can have any suitable configuration for removing tissue from a patient. FIG. 11B illustrates an inner member 124 that has a

14

pair of cutting edges 253 and a generally trapezoidal shape. FIG. 11C illustrates an inner member 124 that has a surface treatment 255 for treating a person's skin. The surface treatment 255 can be serrations, grooves, grit, roughed surface, protrusions, and the like. The type of surface treatment 255 can be selected based on the procedure to be performed. FIG. 11D illustrates another inner member 124 having a pair of cutting edges 253. The cutting edges 253 are spaced from each other and protrude outwardly. The central portion 257 is generally V-shaped; however, the central portion 257 can have other configurations. For example, FIG. 11E illustrates a central portion 257 that has a curved, semi-circular profile. In alternative embodiments, the inner member 124 can have more than two cutting edges.

The inner members 124 of FIGS. 11A to 11E can be formed by a molding process, such as an injection molding process. Additionally or alternatively, the inner members 124 can be formed by a machining process. For example, at least a portion of the inner member 124 of FIGS. 11D to 11E can be formed through a machining process. In some embodiments, the central portion 257 can be formed by cutting material out of the inner member 124. The fabrication process (e.g., molding, injection molding, compression molding, machining, milling, etc.) can be selected based on the design of the inner members.

Referring again to FIG. 1, the console 12 includes a manifold system 24 that holds containers 26 containing treatment fluids and/or antimicrobial agents. In a preferred embodiment, the console 12 holds four containers 26, three containing different treatment fluids and one containing an antimicrobial agent. In the illustrated embodiment, the largest container 26 holds antimicrobial agent for cleaning and sanitizing the fluid lines of the console 12. The containers 26 can also hold other suitable substances, such as surfactants, disinfectants, sanitizers, and the like, for cleaning and/or sanitizing the skin treatment system 10.

As shown in FIGS. 12 and 12A, the container 26 can be a fluid source such as a bottle comprising a body 262, a neck 264, and a closure assembly 266. The neck 264 includes a threaded neck finish and the closure 266 includes a threaded interior surface, allowing it to screw onto the neck 264. The closure 266 can be permanently or temporarily coupled to the neck 264. The illustrated bottle 26 is a non-refillable, disposable bottle. As used herein, the term "non-refillable" is a broad term that includes, but is not limited to, components that cannot be easily refilled with a treatment material. For example, the illustrated non-refillable bottle 26 cannot be refilled without substantial difficulty.

Bodies 262 of the containers 26 may be formed by stretch blow molding a preform into the desired shape. In other embodiments, the body 262 and a neck 264 can be formed by extrusion blow molding. For example, the bottle of FIG. 13A can be formed by extrusion blow molding. The containers 26 can be made of polymers, thermosets, thermoplastic materials such as polyesters (e.g., polyethylene terephthalate (PET)), polyolefins, including polypropylene and polyethylene, polycarbonate, polyamides including nylons, epoxies, and/or acrylics. The material can be virgin or post-consumer/recycled. However, other suitable materials known in the art can also be used.

In some embodiments, including the illustrated embodiment of FIGS. 12 and 12B, the closure 266 is welded (e.g., induction welded) to an upper edge 269 of the neck 264. A sealing member 267 can be interposed between the upper edge of the neck 269 and the closure 266. In some embodiments, the sealing member 267 is made out of a conductive metal, such as aluminum, that preferably does not react with

Case 2:20-cv-06063-GRB-ST Document 69-1 Filed 06/21/22 Page 38 of 363 PageID #: 1231

15

the fluid in the bottle 26. In other embodiments, the seal 267 comprises plastic, such as cellophane, polypropylene, or other suitable material, preferably suitable for coupling to the closure 266 and upper edge 269. In some embodiments, the sealing member 267 comprises metal that is at least partially coated with a polymer, such as polypropylene. Induction welding can be used to couple the polypropylene to the closure 266 and neck 264, both of which can also comprise polypropylene.

FIG. 14A illustrates another embodiment of a bottle 26. The closure 266 includes locking members 268 that engage the neck 264, but do not allow removal of the closure 266 from the bottle 26 when assembled, as shown in FIG. 13B. The locking closure 266 may include a sealing member 267, for example as described above.

In either of the embodiments illustrated in FIGS. 12 through 14B, the closure 266 may then be sealed with a second closure (not shown), creating multi-piece closures. For example, a screw cap can be threaded onto the external threads 273 at the top end of the closure 266. In these embodiments, the treatment fluid inside the bottle 26 may be accessed by puncturing or otherwise breaking the seal 267, for example with an insertion tip assembly 59 (see FIG. 13A).

The insertion tip assembly 59 has an elongate member 161 that comprises a fluid pick up conduit 62 and lancing tip 64 extending from the distal end of the conduit 62. In the illustrated embodiment, the lancing tip 64 is a tubular member having a somewhat sharp distal end. To access treatment fluid in the bottle 26, the lancing tip 64 can be inserted into the closure passageway 73 of the closure 266. The lancing tip 64 can be advanced through the passageway 73 until it breaks the sealing member 267. The elongate member 161 can be sufficiently rigid such that it can break the sealing member 267 without buckling. The elongate member 161 can comprise metal, polymers, plastics, or any suitable material.

The fluid pick up conduit 62 and lancing tip 64 can be slid through the passageway 73 until the stop 91 is spaced from the upper edge of the closure 266. In alternative embodiments, the insertion tip assembly 59 can be slid through the passageway 73 until the stop 91 contacts the upper edge of the closure 266, as shown in FIG. 12B. After the insertion tip assembly 59 and bottle 26 are assembled, as shown in FIG. 12B, the treatment material can be draw upwardly through the lancing tip 64 and the fluid pick up conduit 62. The treatment material can flow through a passageway of the insertion tip assembly 59 and to the manifold assembly 24.

In certain embodiments, the treatment fluid applied from the containers 26 may be selected from the console 12 for a particular treatment or skin type. In one embodiment, the treatment fluid may comprise a skin rejuvenation serum. Skin rejuvenation serum cleans the skin 80 deeply while softening sebum and impurities to aid in extractions. Skin rejuvenation serum also assists in dislodging dead cells for extraction and exfoliation by the tip 34 as well as providing residual hydration that aids in firming and smoothing fine lines, resulting in clean, refined, and ultra-moisturized skin 80. Preferably, a skin rejuvenation treatment serum is active-4™, available from Edge Systems Corp., 2277 Redondo Ave., Signal Hill, Calif., 90755, (800) 603-4996. In another embodiment, the treatment fluid may comprise a salicylic acid serum. A salicylic acid serum cleans oily skin deeply while softening sebum and impurities to aid in extraction and exfoliation by the tip 34. Hydration additives in the salicylic acid serum create an ultra-moisturized skin surface, and is blended to remain on the face for the best possible

16

benefit. Preferably, a salicylic acid treatment fluid is Beta-Hd™ also available from Edge Systems Corp. In yet another embodiment, the treatment fluid may comprise antioxidants. The antioxidant serum is a hybrid that combats free radicals and environmental damage to the cells. The antioxidant serum is formulated with a blend of the most effective antioxidant ingredients. The antioxidant serum is an absorbable, leave-on service that improves the appearance of age signs as well as texture and clarity. Preferably, an antioxidant treatment fluid is antiox-6™, also available from Edge Systems Corp. The treatment fluids may comprise agents known to be beneficial to skin healing and/or hydration including but not limited to glucosamine, *laminaria digitata* extract, yeast extract, carbamide, lactic acid, sodium lactate, honey extract, pentylene glycol, *spirea ulmaria* extract, *camellia sinensis* leaf (white tea) extract, horse chestnut extract, stabilized vitamins A, B1, B6, B12, C, and E, tocopherol, inositol, calcium panthothenate, linoleic acid, *rosemarinus officinalis* extract, biotin, and aloins such as anthraquinone gycosides, polysaccharides, sterols, gelonins, and chromones.

A single treatment may comprise the serial use of several treatment fluids from the containers 26. For example, the treatment of acne prone skin may comprise salicylic treatment followed by antioxidant treatment, the treatment of aging skin may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of congestion (e.g., blackheads) may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of damaged skin (e.g., due to medication or smoking) may comprise skin rejuvenator treatment followed by antioxidant treatment, the treatment of skin may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of hyperpigmentation may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of melasma may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of sensitive skin may comprise skin rejuvenator treatment followed by antioxidant treatment, and the treatment of thin skin may comprise salicylic treatment followed by antioxidant treatment. Alternatively, a single treatment may comprise the parallel use of a combination of treatment fluids from the containers 26, for example using a handpiece with a plurality of input lumens 90 as described above. Treatment time with each treatment fluid is preferably about 2 to 20 minutes, but may be longer or shorter depending on the patient, the tip 34 used, and the treatment itself.

The treatment materials can be used for acne (e.g., by removing oils, bacteria, etc.), melasma, damaged skin (e.g., sun damaged skin, burns, free radical damage, etc.), extractions, skin lightening and/or brightening, skin lines (e.g., fine lines, wrinkles, creases, etc.), dry skin, and the like. The treatment materials can improve skin elasticity and overall health of the skin. For example, if the skin is damaged, antioxidants can be applied to damaged area. Accordingly, the skin treatment system 10 can be used to improve the health, appearance, and/or function of a person's skin.

Additionally, the line 20 may be periodically flushed with a fluid (e.g., a antimicrobial fluid, water, etc.) contained in one of the containers 26. Antimicrobial fluids can contain any disinfecting agent compatible with skin including, but not limited to, butylene glycol, phenoxyethanol, and methyl isothiazolinone. Preferably, an antimicrobial fluid is Rinseaway™, available from Edge Systems Corp. The line 20

US 9,550,052 B2

17

should be flushed with antimicrobial fluid at least at the end of each service day. Flushing with antimicrobial fluid is more important when the system is not used for consecutive days.

As illustrated in FIG. 1, the console 12 comprises the manifold system 24 designed to draw treatment fluid from at least one of the containers 26 based on user selection. The manifold system 24 may include switches 29, each corresponding to one of the bottles. The switches 29 can be used to control fluid flow from the containers 26. The illustrated switches 29 can be used to turn Off/On to permit or prevent fluid flow from the bottles 26. The illustrated manifold system 24 has a switch corresponding to each bottle 26. As such, the switches can be used to independently control fluid flow from each of the bottles 26. In other embodiments, a single switch can be used to control the flow of treatment fluid from more than one of the bottles 26.

With continued reference to FIG. 1, the button 246 can be operated to release a corresponding bottle 26 from the manifold system 24. FIG. 15A is front perspective view an embodiment in which the manifold system 24 contains quick-release locks connected to the button 246, wherein the quick-release locks capture the containers 26. As illustrated in FIGS. 14B and 14C, the quick-release locks 242 engage the closure 266 when the bottle 26 is inserted into the manifold system 24. When the quick-release lock 242 is manually engaged by a user, for example by pulling the button 246, a slide structure 249 surrounding the closure 266 releases, thereby releasing the bottle 26 from the manifold system 24.

FIG. 15E illustrates the slide structure 249 holding the neck 264 of the bottle 26 in an elongated slot 309. The button 246 can be pushed inwardly (indicated by the arrow 313) so that the neck 264 is positioned within the enlarged aperture 317. The bottle 26 can then slide downwardly out of the manifold system 24. The bottle 26 can be replaced with another bottle 26.

To couple the bottle 26 to the manifold system 24, the closure 266 can be inserted through the aperture 317 of the slide structure 249 when the button 246 is pushed in. Once the closure 266 engages the stop surface 333 (FIG. 15C), the spring 247 can push the slide structure 249 until the flange 335 of the bottle 26 rests on the slide structure 249, as shown in FIG. 15C. In such a position, the manifold system 24 securely holds the bottle 26. The illustrated slide structure 249 has a sloped portion 269 that can cam along the flange 335 as the button 246 moves outwardly. Accordingly, the slide member 249 can push the closure 266 upwardly until the closure 266 is locked with the manifold 24, as shown in FIG. 15C. The quick-release lock 242 is loaded with spring 247 such that the slide structure 249 is biased towards the button 246.

The manifold system 24 can have a modular design so that it can be removed from the console 12. In some embodiments, the manifold system 24 and associated containers 26 can be removed and transported away from the console 12. Accordingly, the modular manifold systems can be interchanged to provide treatment flexibility. Alternatively, the manifold system 24 can be permanently mounted to the console 12.

FIGS. 15B and 15C illustrate cross-sectional views of the manifold system 24 taken along lines 15B-15B and lines 15C-15C, respectively. Both FIGS. 15B and 15C show the fluid pick up conduit 62 in operative engagement with the bottle 26 through the seal 267. Suction device(s) is preferably in fluid communication with the fluid pick up conduit 62, and draws fluid out of the bottle 26 through the fluid pick

18

up conduit 62. The fluid can flow through a passageway 161 (see FIG. 15C) extending through the pick up conduit 62. The fluid can flow to and through the lumen 171 towards the line 20. If the switch 29 is off, the fluid from one or more of the upstream bottles can flow along the passage 173. The manifold system 24 then directs the fluid into the line 20.

In certain embodiments, including the embodiment of FIG. 1, the console 12 comprises a computer with display 32. In one embodiment, the display 32 is a user input device comprising a touch screen that controls the computer. In other embodiments, the computer may be controlled by input devices such as a keyboard, keypad, mouse, pointing device, or other input device. The computer controls a variety of functions in the console 12. For example, the computer may control the manifold system 24, and thereby the flow of treatment fluids from the containers 26. In one embodiment, the fluid flowing through the line 20 can be changed by pressing a single button on the touch screen display 32. In another embodiment, the computer contains teaching tutorials that are exhibited on the display 32. In yet another embodiment, the user may change program chips within the computer according to treatment and/or patient. In still another embodiment, the computer records patient and treatment data, for example data gathered during treatment.

The console 12 can also comprise a mechanical system for controlling fluid flow from the containers to the handpiece. One or more pumps, valves, fluid lines, and the like can cooperate to deliver fluid from the containers to the handpiece. The console 12 can be powered pneumatically, electrically, or by any other suitable powering means. The mechanically drive console 12 can have manual controls for controlling fluid flow to the handpiece.

The console 12 can also comprise additional handpieces suitable for other types of skin treatment. These additional handpieces can be used for pre-treatment or post-treatment in combination with other modalities. For example, the console 12 may include a handpiece for diamond tip abrasion, or "crystal-free" microdermabrasion, as described above. Such a handpiece may be useful for more aggressive treatments, in addition to treatment with the handpiece assembly 18. The diamond tips can range from fine to extra coarse.

In some embodiments, the console 12 comprises a handpiece including at least one light emitting diode (LED). Light therapy has been shown to improve skin. For example, red light between about 600 and about 700 nanometers and infrared LED light between about 700 and about 1,000 nanometers reduces the appearance of fine lines and superficial hyperpigmentation. For another example, blue LED light at about 430 nanometers improves the appearance of oily and acne-prone skin. Other benefits of light therapy include promotion of collagen production, increased circulation and moisture retention, smoothing of skin texture, and improvement of skin firmness and resilience.

The console 12 can comprise handpieces for vacuum therapy such as lymphatic drainage and cellulite massage. Vacuum therapy enhances the effects of treatment with the handpiece assembly 18 and LED light therapy. Preferably, the vacuum therapy handpieces are sized appropriately for facial massage and body massage. An example of a multi-modality protocol using a plurality of handpieces comprises diamond tip abrasion, treatment with handpiece assembly 18 and at least one treatment fluid from containers 26, vacuum therapy, red light therapy, and application of sunscreen, for example at a minimum skin protection factor (SPF) of 15.

Case 2:20-cv-00030-JRS-MJD Document 89-34 Filed 06/21/20 Page 40 of 363 PageID #: 1253

US 9,550,052 B2

19

The various modalities may be included and ordered by the user depending on the desired outcome of the overall treatment.

The console **12** optionally includes any of a plurality of additional features. For example, a digital camera may be used to take pictures of the patient before and after treatment, and the pictures may be stored on the computer. The computer may hold client medical and treatment records. The computer may be connected to a network. The console **12** may store disks. The console **12** may include an ultrasound unit. The console **12** may include a stimulator, such as an electrical stimulator. The console **12** may include an iontophoresis handpiece. The number of additional features is limitless when considering the range of features that a user may wish to incorporate with the treatment provided by the handpiece assembly **18**.

FIG. **16** depicts another embodiment of the skin treatment system **10**, which may be generally similar to the embodiment illustrated in FIG. **1**, except as further detailed below. Where possible, similar elements are identified with identical reference numerals in the depiction of the embodiment of FIG. **1**.

The line **20** includes an output line **50** for removing waste from the handpiece assembly **18** and an input line **52** for delivering treatment material to the handpiece assembly **18**. A valve **300** can be disposed along the input line **52** to inhibit backflow of treatment material. The console **12** can pump treatment material through the input line **52** to the handpiece assembly **18** when the handpiece assembly **18** is applied to the person's skin, as detailed above. The fluid flow through the input line **52** can be reduced or stopped so that the handpiece assembly **18** can be removed from the patient's skin. The valve **300** can inhibit the flow of fluid through the input line **52** towards the console **12**. A desired amount of treatment material can therefore be contained in the handpiece assembly **18** and the section **310** of the input tubing **52** extending between the valve **300** and the handpiece assembly **18**. When the handpiece assembly **18** is applied to a patient's skin, a vacuum can be applied to the output line **50**. The vacuum can draw the treatment material out of the handpiece assembly **18** without a substantial or noticeable delay.

In some embodiments, the valve **300** can be a one-way valve, such as a duckbill valve, check valve, or other type of valve for inhibiting fluid flow. In alternative embodiments, the valve **300** can comprises a plurality of valves (e.g., one-way valves, flow regulators, adjustable valves, etc.).

FIG. **17** is a cross-sectional view of the line **20**. The input and output lines **50**, **52** can have different or similar cross sectional flow areas. The illustrated output line **50** has a passageway **312** with a diameter that is less than the diameter of a passageway **314** of the input line **52**. Accordingly, a relatively large slug of treatment material can be stored in the section **310** extending distally from the valve **300** to the handpiece assembly **18**. The slug can be quickly delivered out of the handpiece assembly **18** once the handpiece assembly is applied to a patient's skin as detailed above.

In some embodiments, the section **310** of the output line **50** has a length L greater than 6 inches, 12 inches, 18 inches, 24 inches, and ranges encompassing such lengths. In some embodiments, the section **310** of the output line **50** has a length L greater than 24 inches, 30 inches, 36 inches, and ranges encompassing such lengths. The passageway **312** can have a cross-sectional area that is at least 10%, 30%, 50%, 75%, or 100% greater than the cross-sectional area of the passageway **314**. The length L and the diameters of the

20

passageways **312**, **314** can be selected based on the desired amount of treatment material to be stored in the line **20**, delivery and removal rates.

FIGS. **18** and **19** illustrate a modular handpiece assembly **360** having a cartridge **362** containing treatment material. The illustrated handpiece assembly **360** can be used to deliver treatment material from the cartridge **362**. The main body **30** can have a pump for pressuring the treatment material. In one embodiment, the fluid control device includes a power supply, such as a battery, which provides power to electrical components (e.g., pumps or valves) of the handpiece assembly **360**. The power supply can be a battery that is preferably disposed within the main body **30** of the handpiece assembly **360**. In one arrangement, the battery is a rechargeable battery that can be connected to and recharged by an AC power supply, such as a typical residential electrical outlet. Alternatively, the handpiece assembly **360** can be directly powered by an AC power supply. The power supply can provide power to several components of the handpiece assembly **360**. For example, the power supply can provide power to a plurality of fluid control devices **330** and/or a flow control unit. A control switch **371** can be used to turn the handpiece assembly **360** Off/On and/or control the output of the handpiece assembly **360**.

In operation, the cartridge **362** can be inserted into the main body **30**. The handpiece assembly **360** can be applied to a patient's skin to deliver treatment material from the cartridge **362** to the patient's skin. After delivering a desired amount of treatment material, the cartridge **362** can be separated from the main body **30**. The cartridge **362** can be a one-use or multi-use cartridge. For example, the cartridge can be a non-refillable disposable cartridge.

The tip **34** can also be used to remove hair or perform other skin treatments. For example, the tip **34** can include one or more razor blades and may be configured to apply a treatment material (e.g., antioxidants, vitamins, serums, growth agents, etc.) to the skin during the shaving process. In such embodiments, the main body **30** can be an elongated handle that is connected to a transversely extending elongate tip **34**. In some embodiments, the handpiece assembly can be in the form of a disposable handheld razor. The treatment material can reduce or substantially eliminate problems associated with wet or dry shaving systems. These treatment materials may be applied prior to, during, before, and/or after shaving.

The articles disclosed herein may be formed through any suitable means. The various methods and techniques described above provide a number of ways to carry out the invention. Of course, it is to be understood that not necessarily all objectives or advantages described may be achieved in accordance with any particular embodiment described herein. Thus, for example, those skilled in the art will recognize that the methods may be performed in a manner that achieves or optimizes one advantage or group of advantages as taught herein without necessarily achieving other objectives or advantages as may be taught or suggested herein.

Furthermore, the skilled artisan will recognize the interchangeability of various features from different embodiments disclosed herein. Similarly, the various features and steps discussed above, as well as other known equivalents for each such feature or step, can be mixed and matched by one of ordinary skill in this art to perform methods in accordance with principles described herein. Additionally, the methods which are described and illustrated herein are not limited to the exact sequence of acts described, nor are they necessarily limited to the practice of all of the acts set

US 9,550,052 B2

21

forth. Other sequences of events or acts, or less than all of the events, or simultaneous occurrence of the events, may be utilized in practicing the embodiments of the invention.

Although the invention has been disclosed in the context of certain embodiments and examples, it will be understood by those skilled in the art that the invention extends beyond the specifically disclosed embodiments to other alternative embodiments and/or uses and obvious modifications and equivalents thereof. Accordingly, it is not intended that the invention be limited, except as by the appended claims.

What is claimed is:

**1**. A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and

a vacuum source;

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and

wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.

**2**. The system of claim **1**, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the first fluid container or the at least a second fluid container to the handpiece assembly.

**3**. The system of claim **2**, wherein the user input device comprises a touch screen.

**4**. The system of claim **1**, wherein the first fluid container or the at least a second fluid container is releasably coupled to the manifold.

**5**. The system of claim **1**, wherein the manifold is configured to be placed in fluid communication with at least four fluid containers.

22

**6**. The system of claim **1**, wherein treatment materials from the first fluid container and at least the second fluid container are delivered to the supply conduit sequentially or simultaneously.

**7**. The system of claim **1**, wherein the console is movable.

**8**. The system of claim **1**, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

**9**. The system of claim **1**, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

**10**. The system of claim **1**, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

**11**. A system for performing a skin treatment procedure, the system comprising:

a manifold in fluid communication with at least two fluid containers, each of the at least two fluid containers being configured to contain a treatment material, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly;

a vacuum source; and

a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to the vacuum source;

wherein the manifold is configured to control a flow of treatment material from each of the at least two fluid containers through the supply conduit;

wherein the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit.

**12**. The system of claim **11**, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

**13**. The system of claim **11**, wherein the system comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least two fluid containers.

**14**. The system of claim **13**, wherein the user input device comprises a touch screen.

**15**. The system of claim **11**, wherein the at least two fluid containers is releasably coupled to the manifold.

**16**. The system of claim **11**, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

**17**. The system of claim **11**, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

* * * * *

# EXHIBIT B

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor 1** [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Roger | | Ignon | |

**Residence Information (Select One)** ⦿ US Residency ◯ Non US Residency ◯ Active US Military Service

| City | Redondo Beach | State/Province | CA | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 843 Avenue C | | |
|---|---|---|---|
| Address 2 | | | |
| City | Redondo Beach | State/Province | CA |
| Postal Code | 90277 | Country i | US |

**Inventor 2** [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Scott | | Mallett | |

**Residence Information (Select One)** ⦿ US Residency ◯ Non US Residency ◯ Active US Military Service

| City | Coto De Caza | State/Province | CA | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 31682 Via Patito | | |
|---|---|---|---|
| Address 2 | | | |
| City | Coto De Caza | State/Province | CA |
| Postal Code | 92679 | Country i | US |

**Inventor 3** [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Abraham | | Solano | |

**Residence Information (Select One)** ⦿ US Residency ◯ Non US Residency ◯ Active US Military Service

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | EDGE.005C2 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

| **City** | Corona | **State/Province** | CA | **Country of Residence** i | US |
|---|---|---|---|---|---|

| | |
|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 11 Summerwood Ct., #F | | |
|---|---|---|---|
| **Address 2** | | | |
| **City** | Corona | **State/Province** | CA |
| **Postal Code** | 92880 | **Country** i | US |

| **Inventor    4** | | Remove |
|---|---|---|
| **Legal Name** | | |

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | William | | Cohen | |

| **Residence Information (Select One)** ⦿ US Residency | ◯ Non US Residency | ◯ Active US Military Service | | | |
|---|---|---|---|---|---|

| **City** | Los Alamitos | **State/Province** | CA | **Country of Residence** i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| **Address 1** | 3922 Toland Circle | | |
|---|---|---|---|
| **Address 2** | | | |
| **City** | Los Alamitos | **State/Province** | CA |
| **Postal Code** | 90720 | **Country** i | US |

| All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. | Add |
|---|---|

## Correspondence Information:

| Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a). | | |
|---|---|---|
| ☐ **An Address is being provided for the correspondence Information of this application.** | | |
| **Customer Number** | 20995 | |
| **Email Address** | efiling@knobbe.com | Add Email   Remove Email |

## Application Information:

| **Title of the Invention** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN | | |
|---|---|---|---|
| **Attorney Docket Number** | EDGE.005C2 | **Small Entity Status Claimed** | ☒ |
| **Application Type** | Nonprovisional | | |
| **Subject Matter** | Utility | | |
| **Total Number of Drawing Sheets (if any)** | 25 | **Suggested Figure for Publication (if any)** | |

## Filing By Reference :

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a).  Do not complete this section if application papers including a specification and any drawings are being filed.  Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country i |
|---|---|---|
| | | |

## Publication Information:

| | |
|---|---|
| ☐ | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
| ☐ | **Request Not to Publish.**  I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify  that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a  multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32). Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ⦿  Customer Number | ◯  US Patent Practitioner | ◯  Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 20995 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application.  Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the application number blank.

| Prior Application Status | Pending | | | Remove | |
|---|---|---|---|---|---|
| Application Number | Continuity Type | | Prior Application Number | Filing Date (YYYY-MM-DD) | |
| | Continuation of | | 13/267554 | 2011-10-06 | |

| Prior Application Status | Patented | | | Remove | |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 13/267554 | Continuation of | 11/392348 | 2006-03-29 | 8048089 | 2011-11-01 |

| Prior Application Status | Expired | | Remove | |
|---|---|---|---|---|

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
|---|---|---|---|
| 11/392348 | Claims benefit of provisional | 60/755310 | 2005-12-30 |
| Prior Application Status | Expired | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| 11/392348 | Claims benefit of provisional | 60/764668 | 2006-02-02 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

Add

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX) [i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

Remove

| Application Number | Country [i] | Filing Date (YYYY-MM-DD) | Access Code [i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☐ Authorization to Permit Access to the Instant Application by the Participating Offices

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing this Authorization.

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Applicant    1**                                                    [Remove]

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

[Clear]

( • ) Assignee            ( ) Legal Representative under  35 U.S.C. 117            ( ) Joint Inventor

( ) Person to whom the inventor is obligated to assign.            ( ) Person who shows sufficient proprietary interest

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here.    [X]

| Organization Name | EDGE SYSTEMS LLC |
|---|---|

**Mailing Address Information:**

| Address 1 | 2277 Redondo Avenue | | |
|---|---|---|---|
| Address 2 | | | |
| City | Signal Hill | State/Province | CA |
| Country [i] | US | Postal Code | 90755 |
| Phone Number | | Fax Number | |

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

| Email Address | |
|---|---|

Additional Applicant Data may be generated within this form by selecting the Add button.    [ Add ]

# Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

## Assignee    1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

[ Remove ]

If the Assignee or Non-Applicant Assignee is an Organization check here.    [ ]

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| Address 1 | |
|---|---|
| Address 2 | |

| City | | State/Province | |
|---|---|---|---|
| Country  i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    [ Add ]

# Signature:    [ Remove ]

NOTE:  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4 for signature requirements and certifications

| Signature | /Theodore G. Papagiannis/ | | | Date  (YYYY-MM-DD) | 2015-04-28 |
|---|---|---|---|---|---|
| First Name | Theodore G. | Last Name | Papagiannis | Registration Number | 61546 |

Additional Signature may be generated within this form by selecting the Add button.    [ Add ]

PTO/AIA/14 (12-13)
Approved for use through 04/30/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EDGE.005C2                                                                PATENT

## CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

### Cross-reference to Related Applications

**[0001]**     This is a continuation of U.S. Patent Application No. 13/267,554, filed October 6, 2011, which is a continuation of U.S. Patent Application No. 11/392,348, filed March 29, 2006, which claims the benefit of U.S. Provisional Application No. 60/755,310, filed December 30, 2005 and U.S. Provisional Application No. 60/764,668, filed February 2, 2006, the entireties of all of the aforementioned applications are hereby incorporated by reference herein.

### Background

#### Field

**[0002]**     The invention relates in general to the field of skin treatment, and more specifically to apparatuses and methods for treating a person's skin.

#### Description of the Related Art

**[0003]**     Abrasion of the outer layer or epidermis of the skin is desirable to smooth or blend scars, blemishes, or other skin conditions that may be caused by, for example, acne, sun exposure, and aging.  Standard techniques used to abrade the skin have generally been separated into two fields referred to as dermabrasion and microdermabrasion.    Both techniques remove portions of the epidermis called the stratum corneum, which the body interprets as a mild injury.  The body then replaces the lost skin cells, resulting in a new outer layer of skin.    Additionally, despite the mild edema and erythema associated with the procedures, the skin looks and feels smoother because of the new outer layer of skin.

**[0004]**     Dermabrasion refers to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece with an abrasive element that is often in the form of a burr, wheel, or disc.  This process tends to be painful and messy.  In fact, the procedure is sometimes painful enough to require a local anesthetic.  Dermabrasion leaves the skin red and raw-looking.  The removed skin can take several months to regrow and heal. Recent efforts have led to the use of lasers instead of abrasive elements, which have resulted in less bleeding, but the pain and mess remains.

[0005]     Efforts have been made to decrease the mess caused by the process waste, such as removed skin and blood, by adding a suction element.  As the process waste is drawn into the suction opening, skin that has not been removed is also pulled against the grit surrounding the suction opening, so the procedure remains fairly messy due to the abrasion that takes place outside of the handpiece by the grit.

[0006]     Microdermabrasion refers generally to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece emitting a stream of sand or grit.  For example, a handpiece can be used to direct an air flow containing tiny crystals of aluminum oxide, sodium chloride, or sodium bicarbonate.  The momentum of the grit tends to wear away two to three cell layers of the skin with each pass of the handpiece.  Alternatively, new "crystal-free" microdermabrasion techniques utilize a diamond-tipped handpiece without a stream of grit.

[0007]     Efforts to add a suction element have been more successful in microdermabrasion than in dermabrasion because the handpiece applying the stream of grit is more controllable to a localized area.  That is, as the removed skin is drawn into the suction opening, skin that has not been removed is also pulled towards the handpiece where it is treated with the grit stream, allowing for simultaneous local treatment and suction.

[0008]     Microdermabrasion removes moisture from the skin, so the procedure is always followed by the application of moisturizing creams.  However, similar to topical application of moisturizing creams prior to microdermabrasion, the moisturizing elements only work as deep as the active ingredients can passively migrate through the remaining epidermis.

<u>Summary of the Invention</u>

[0009]     In some embodiments, an apparatus for treating skin has a console with a user input device and a handpiece assembly.  The handpiece assembly is configured to treat skin.  A fluid line provides fluid communication between the console and the handpiece assembly.  A manifold system is coupled to the console and controlled by the user input device, such as a computer, touchscreen, keyboard, and the like.  The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

[0010]     In some embodiments, a tip comprising a skirt portion is configured to couple to a handpiece for treating a target area on a patient's skin.  A central body portion is coupled to the skirt portion.  A first passage extends through the central body portion and is configured to receive a fluid from the handpiece.  At least one second passageway extending through the central body portion and is configured to convey the fluid back into the handpiece.  An inner member extends in a generally spiral fashion across at least a portion of a distal face of the central body portion.  The inner member defines a channel between the first passage and the at least one second passage.  When the tip is place against the skin, a chamber can be formed by the channel and the person's skin.

[0011]     In some embodiments, a method of treating a target region on a patient's skin comprises providing a tip including a first aperture and at least one second aperture.  At least one inner member on the surface of the tip defines at least one channel between the first aperture and the at least one second aperture.  An outer member is disposed on the surface of the tip.  The outer member engages the target with the tip.  A treatment fluid flows distally through the first aperture region and through the at least one channel.  The treatment fluid flows proximally through the at least one second aperture.

[0012]     In some embodiments, a tip comprises a skirt portion configured to couple to a handpiece for treating a target on a patient's skin.  A central body portion is coupled to the skirt portion and includes a mounting region substantially opposite the skirt portion.  The mounting region configured to receive a pad for treating the skin.  A first aperture extends through the skirt portion and the central body portion and configured to receive a fluid from the handpiece.  At least one second aperture extending through the skirt portion and the central body portion and configured to convey the fluid back into the handpiece.

[0013]     In some embodiments, a method of treating a target region of a patient comprises providing a tip including a first aperture, at least one second aperture, and a distal end configured to receive a pad. In some variations, the first pad is attached to the distal end. The tip is engaged with the target region.

[0014]     In some embodiments, a manifold system comprises a body portion configured to receive releasably at least two bottles.  The manifold is configured so that it can be coupled to a console.  The console includes a handpiece for treating skin.  At least one

elongate member is in communication with a pump and configured to extract a fluid from one of the at least two bottles.  At least one switch is configured to permit or inhibit a flow of the fluid from one of the at least two bottles through the pump.  In some variations, the elongate member is dimensioned to fit within one of at least two bottles to draw fluid out of the bottle.

[0015]    In some embodiments, a method of treating a target region on a patient's skin comprises engaging a tip with the patient's skin such that an effective amount of skin is removed by the tip.  In some variations, the tip is a dry tip.  After removing an effective amount of skin, another tip (e.g., a wet tip) engages the patient's skin such that an effective amount of skin is removed by the tip.  In some variations, acid is delivered out of the wet tip to facilitate skin removal.  In some variations, the wet tip includes a first aperture, at least one second aperture, at least one inner member on the surface of the tip defining at least one channel between the first aperture and the at least one second aperture, and an outer member on the surface of the tip.  In some variations, treatment fluid flows outwardly along the channel.  In some variations, treatment fluid flows inwardly along the channel.  In some variations, the wet tip comprises an abrasive pad.

[0016]    In some embodiments, a method of treating a target region on a patient's skin comprises engaging a first skin treatment tip with the patient's skin.  A first material is delivered out of the first skin treatment tip to a target region.  A second skin treatment tip engages the target region while the first material effectively facilitates exfoliation with the second skin treatment tip.  In some variations, the first material comprises an acid, hydrator, and combination thereof.  In some variations, the first skin treatment tip is configured to remove skin at a different rate than the second skin treatment tip.  In some variations, the first skin treatment tip is configured to exfoliate at a higher rate than the second skin treatment tip.  In some variations, material is delivered out of the second treatment tip to the target region of the patient's skin.

[0017]    The apparatus for treating skin can dispense treatment material that is held in containers, such as bottles, bags, pouches, or other suitable structures for holding and storing material.  These containers can be non-refillable or refillable.  The treatment material can be delivered by gravity feed, pumps, or suction devices.  The manifold system can be used to control fluid flow from a plurality of containers to one or more handpieces.

Brief Description of the Drawings

[0018]    Having thus summarized the general nature of the invention, certain preferred embodiments and modifications thereof will become apparent to those skilled in the art from the detailed description herein having reference to the figures that follow.

[0019]    Figure 1 is a perspective view of one embodiment of a skin treatment system.

[0020]    Figure 2A is a perspective view of one embodiment of a handpiece assembly for use with the skin treatment system of Figure 1.

[0021]    Figure 2B is a side elevational view of the handpiece assembly of Figure 2A.

[0022]    Figure 3 is a longitudinal cross-sectional view of the handpiece assembly of Figure 2B.  The handpiece assembly is engaging a person's skin.

[0023]    Figure 4 is a perspective view of another embodiment of a handpiece assembly.

[0024]    Figure 5A is a perspective view of one embodiment of a tip that can be coupled to a main body of a handpiece assembly to treat a person's skin.

[0025]    Figure 5B is a top elevational view of the tip of Figure 5A.

[0026]    Figure 5C illustrates a bottom elevational view of the tip of Figure 5A.

[0027]    Figure 5D is a cross-sectional view of the tip of Figure 5B taken along the line 5D-5D.

[0028]    Figure 6A is a perspective view of a tip in accordance with another embodiment.

[0029]    Figure 6B is a top elevational view of the tip of Figure 6A.

[0030]    Figure 6C is a bottom elevational view of the tip of Figure 6A.

[0031]    Figure 6D is a cross-sectional view of the tip of Figure 6B taken along the line 6D-6D.

[0032]    Figure 7A is a perspective view of a tip in accordance with another embodiment.

[0033]    Figure 7B is a top elevational view of the tip of Figure 7A.

[0034]    Figure 7C is a bottom elevational view of the tip of Figure 7A.

[0035]    Figure 7D is a cross-sectional view of the tip of Figure 7B taken along the line 7D-7D.

[0036]    Figure 8A is a perspective view of yet another embodiment of a tip for treating a person's skin.

[0037]    Figure 8B is a top elevational view of the tip of Figure 8A.

[0038]    Figure 8C is a bottom elevational view of the tip of Figure 8A.

[0039]    Figure 8D is a cross-sectional view of the tip of Figure 8B taken along the line 8D-8D.

[0040]    Figure 9A is a perspective view of still another embodiment of a tip that can be coupled to a main body of a handpiece assembly.

[0041]    Figure 9B is a top elevational view of the tip of Figure 9A.

[0042]    Figure 9C is a bottom elevational view of the tip of Figure 9A.

[0043]    Figure 9D is a cross-sectional view of the tip of Figure 9B taken along the line 9D-9D.

[0044]    Figure 10A is a perspective view of another embodiment of a tip for treating a person's skin.

[0045]    Figure 10B is top elevational view of the tip of Figure 10A.

[0046]    Figure 10C is bottom elevational view of the tip of Figure 10A.

[0047]    Figure 10D is a cross-sectional view of the tip of Figure 10B taken along the line 10D-10D.

[0048]    Figure 10E is a perspective exploded view of the tip of Figure 10A, wherein a pad is spaced from a tip main body.

[0049]    Figures 11A-11E are cross-sectional views of inner members that can be used to exfoliate skin.

[0050]    Figure 12 is a perspective view of a bottle for use with the skin treatment system of Figure 1.

[0051]    Figure 13A is a cross-sectional view of one embodiment of a bottle spaced from an insertion tip assembly.

[0052]    Figure 13B is a cross-sectional view of the bottle of Figure 12A coupled with the insertion tip assembly.

[0053]     Figure 14A is a cross-sectional view of a closure and a bottle.

[0054]     Figure 14B is a cross-sectional view of the closure and bottle of Figure 14A when assembled.

[0055]     Figure 15A is a perspective view of one embodiment of a manifold system holding a plurality of bottles.

[0056]     Figure 15B is a cross-sectional view of the manifold system of Figure 15A taken along the line 15B-15B of Figure 15A.

[0057]     Figure 15C is a cross-sectional view of the manifold system of Figure 15A taken along the line 15C-15C of Figure 15A.

[0058]     Figure 15D is a cross-sectional view of the manifold system of Figure 15C wherein the bottle has been removed.

[0059]     Figure 15E is a cross-sectional elevational view of the manifold system.

[0060]     Figure 16 is a perspective view of another embodiment of a skin treatment system.

[0061]     Figure 17 is a cross-sectional view of a fluid line of the skin treatment system of Figure 16 taken along the line 17-17.

[0062]     Figure 18 is a side elevational view of a handpiece assembly with a removable cartridge.

[0063]     Figure 19 is a side elevational view of the handpiece assembly and removable cartridge of Figure 18, the cartridge is shown removed from the handpiece assembly.

<u>Detailed Description of the Preferred Embodiment</u>

[0064]     Figure 1 illustrates a skin treatment system 10 that can be used to perform one or more treatments on a person's skin.  The illustrated skin treatment system 10 includes a console 12 and a handpiece assembly 18 connected to the console 12 via a line 20.  A manifold system 24 can control the flow of treatment material from containers 26 into and through the line 20.  The treatment material can be discharged out of the handpiece assembly 18 to treat a person's skin. The skin treatment system 10 can be used at a hospital, health care physicality, residences, or any other suitable location.

[0065]     As explained in more detail below, the handpiece assembly 18 is applied to the target area of the patient to perform skin treatment(s).  As used herein, the term "skin treatment" is a broad term and includes, but is not limited to, skin removal, skin abrasion (e.g., dermabrasion, microdermabrasion, etc.), ablating or slicing skin (preferably a thin layer of skin), stimulation (including thermal, mechanical, electrical, and/or chemical stimulation), mesotherapy, isophoresis, light therapy, vacuum therapy, and the like.  Preferably, the handpiece assembly 18 administers a treatment material from at least one of the containers 26 through the line 20 to the target area of the skin while the handpiece assembly 18 engages the skin.

[0066]     As used herein, the term "treatment material" is a broad term and includes, but is not limited to, medicament, a substance tending to flow or conform to the outline of its container such as fluid, gas, liquid (e.g., serums, water, saline, etc.), gel, fluidized material, additives, and/or a plurality of fine solids.  The general term "fluid" is used throughout synonymously with the term "treatment material" and is to be given the same broad definition.  The handpiece assembly 18 can preferably massage, abrade, ablate, or otherwise treat the target skin area while also applying a treatment material to the patient.  In certain embodiments, the treatment material and tip of the handpiece 18 can work in combination for an effective and rapid skin treatment.  Additionally, any number of "dry" and "wet" tips can be used alone or in combination for treatment flexibility.

[0067]     With continued reference to Figure 1 the line 20 is configured to provide fluid communication between the containers 26 and the handpiece assembly 18.  The line 20 can comprise one or more conduits extending between the console 12 and the handpiece assembly 18.  In certain embodiments, the line 20 includes a supply line and a waste line for delivering and returning material, respectively, as detailed below.

[0068]     The distal end 22 of the line 20 is connected to the handpiece assembly 18.  Preferably, the line 20 includes a filter 28 that removes contaminants or impurities from the treatment material passing through the line 20.  In other embodiments, the filter 28 is located in the console 12 or the manifold system 24.  The console 12 can be connected to a power source such as an AC outlet.  The power source can power the handpiece assembly 18 and/or

other components of the skin treatment system 10, such as, for example, pumps, valves, and the like.

[0069]     In the illustrated embodiment, the console 12 comprises four casters 33 to allow for easy movement, for example, from one treatment room to another treatment room. In such an embodiment, the console 12 can be conveniently rolled on a support surface.  Other means of transportation can also be employed or the console 12 can be stationary.  In some embodiments, the console 12 is portable for convenient transport.

[0070]     The illustrated containers 26 of Figure 1 are preferably releasably coupled to the manifold system 24.  The manifold system 24 can deliver treatment material from the containers 26 to the line 20 as mentioned above.  In certain embodiments, the console 12 has a user input device 32 for selecting a treatment material to be passed through the line 20 to the handpiece assembly 18.  During some skin treatment procedures, treatment materials from multiple containers 26 are sequentially or simultaneously applied to the patient's skin during a "wet" mode of operation.  Alternatively, the skin treatment system 10 can be used to deliver a single treatment material to the patient's skin.  In some embodiments, the console 12 can be used for a "dry" mode of operation.  That is, the console 12 can be used to exfoliate skin, for example, without delivering little or substantially no treatment fluid.  The skin treatment system 10 can thus provide flexibility in selecting a treatment plan.

[0071]     Multiple handpieces assemblies 18 and/or tips 34 can be used during a single skin treatment procedure in a wet and/or dry mode of operation.  For example, a first handpiece assembly 18 may be employed to treat a patient's face and neck while a second handpiece assembly 18 may be employed to treat other larger areas of the patient's body. Thus, different handpieces 18 can be used to treat different regions of a person's body.  The configurations of the handpieces 18 and tips can be selected based on the treatment material to be applied, desired interaction with the patient's skin, size of treatment area, skin condition, and the like.

[0072]     With reference to Figures 2A and 2B, the handpiece assembly 18 includes a main body 30 and a tip 34.  The handpiece assembly 18 can be conveniently held within the hand of a user so that the user can place the tip 34 in operative engagement with a person's skin.  The user is typically an aesthetician (e.g., an aesthetician allowed to perform

microdermabrasion), doctor, and other medical personnel, such as a physician assistant and nurse practitioner.  In some cases, the user is the person whose skin is being treated.

[0073]    The main body 30 has contoured portions 70 at its distal end 36 so that the user can comfortably grip the handpiece assembly 18 during use.  The main body 30 can have other designs to provide a comfortable grip.  Figure 2A illustrates an embodiment in which the main body 30 is substantially flat on two opposing sides.  Figure 4 illustrates an embodiment in which the main body 30 is generally cylindrical.

[0074]    As noted above, the tip 34 can be pressed against a patient's skin to perform a skin treatment.  The distal end 102 of the tip 34 may be angled with respect to the handpiece assembly 18 to increase the contact area with the patient's skin without enlarging the handpiece assembly 18 for an ergonomic and comfortable design.  The angled tip 34 can lay flat on the skin while the main body 30 is angled to the skin.  The angle between the face of the distal end 102 and the longitudinal axis of the handpiece assembly 18 can be selected based on the desired size of the face of the distal end 102.  In alternative embodiments, the face of the distal end 102 is generally perpendicular to the longitudinal axis of the main body 30.

[0075]    The tip 34 can be permanently or temporarily coupled to the distal end 36 of the main body 30.  In some embodiments, the tip 34 is disposable.  As used herein, the term "disposable," when applied to a system or component (or combination of components), such as a tip, container, or pad, is a broad term and means, without limitation, that the component in question is used a finite number of times and then discarded.  Some disposable components are used only once and then discarded.  Other disposable components are used more than once and then discarded.  In some embodiments, the tip 34 is removably coupled to the main body 30 such that the tip may be removed from the main body 30 and thrown away to avoid cross-contamination.  In other embodiments, the tip 34 is a reusable tip that can be cleaned, for example by autoclaving, after each use.  The tip 34 can thus be used for any number of procedures as desired.

[0076]    With reference to Figures 2A and 2B, the proximal end 40 of the main body 30 is operatively connected to the line 20.  In the embodiment illustrated, the line 20 includes an output line 50 for removing waste from the handpiece assembly 18 and an input

line 52 for delivering treatment material to the handpiece assembly 18.  The proximal end 40 of the main body 30 includes a plurality of connectors 44, 46, each connected to one of the conduits 50, 52.  The illustrated input line 52 is connected to the connector 46, and the output line 50 is connected to the connector 44.

[0077]    The input line 52 delivers treatment material from at least one of the containers 26 to the connector 46.  The fluid then flows through the main body 30 and ultimately to the tip 34.  As shown in Figure 3, the main body 30 comprises a plurality of lumens 90, 92 in a fluid communication with the tip 34.  Fluid from the input line 52 can flow through the input lumen 92 to the tip 34.  The fluid then flows out of the tip 34 to a target skin area.  The fluid is then trapped in the space 100 between the skin 80 and the tip 34.  To remove the fluid, the fluid flows proximally through the lumen 90 to the output line 50.  The fluid passes through the output line 50 and into the console 12.  As such, fluid can continuously or intermittently flow through the handpiece assembly 18.

[0078]    To treat the person's skin 80, the handpiece assembly 18 can also be moved relative to the skin 80 such that the tip 34 maintains engagement with the skin 80.  The illustrated tip 34 is configured to massage the skin 80 while also providing fluid communication with the skin 80.  As detailed below in connection with Figures 5A through 10, the tip can include sharp planing blades, blades (e.g., razor blades), raised sharp areas, molded posts, grits, or other structures for treating skin, as detailed below.

[0079]    When the tip 34 and treatment material are used in combination, the handpiece assembly 18 preferably exfoliates dead skin cells and extracts impurities by applying a vacuum while simultaneously bathing the healthy underlying skin with active treatment material.  The active treatment material can facilitate cleansing, exfoliating, hydrating, and/or provide residual antioxidant protection.  The treatment material and tip 34, alone or in combination, can effectively and rapidly treat the target skin area.  The waste material, including the used treatment material, removed skin, and/or grit, can then be drawn back through the tip 34, the main body 30 via lumen 90, and into the connector 44.  The waste then flows into the output line 50 for subsequent disposal, as detailed below in connection with Figure 4.

[0080]     In some embodiments, including the illustrated embodiment of Figure 3, the tip 34 has a tip connector 98 (see Figures 5C and 5D) that mates with the lumen 92. The tip 34 can provide fluid communication from the tip connector 98 to the space 100 via a through-hole 122. One or more through-holes 114 define fluid passageways through the tip 34 between the space 100 and the intermediate chamber 116.

[0081]     The intermediate chamber 116 can be interposed between the through-holes 114 and the lumen 90. The intermediate chamber 116 is preferably defined by the distal face 43 of the main body 30 and the proximal face 41 of the tip 34. The intermediate chamber 116 can provide equalization of fluid between the tip 34 and the body 30. As such, a generally equal vacuum is applied to both through-holes 114. The fluid can flow through the through-holes 114, into the intermediate chamber 116, and then into the lumen 90. In some embodiments, however, the fluid flows directly from the through-holes 114 to the lumen 90 without passing through an intermediate chamber 116.

[0082]     The tip 34 can have one or more sealing members to form a fluidic seal between the tip 34 and the main body 30. The illustrated main body 30 includes a sealing member 47 that engages the inner surface of the skirt 64 of the tip 34. The sealing member 47 can be a compliant member comprising rubber, polymer, plastic, or other suitable material for forming seals. In some embodiments, the sealing member 47 is an O-ring made of rubber.

[0083]     With continued reference to Figure 3, during use, treatment material can flow distally through the lumen 92 into the through-hole 122. The treatment material then proceeds through and out of the through-hole 122 into the space 180. Preferably, the treatment material spreads radially outward to the peripheral through-holes 114. The material can then flow through the through-holes 114 into the lumen 90 for subsequent removal.

[0084]     In alternative embodiments, the fluid flows in the opposite direction. That is, the line 50 delivers fluid through the lumen 90 into the tip 34. The fluid flows through the intermediate chamber 116 and the through-holes 114. The fluid then flows to the chamber 100 and inwardly through the tip connector 98 to the lumen 92. The fluid proceeds proximally along the lumen 92 and ultimately into the line 52.

[0085]     In yet another embodiment, the handpiece assembly 18 comprises two or more input lumens 90. Such a design allows mixing of two or more treatment materials within

the handpiece assembly 18 or space 100, which would be useful for treatments with fluids that react or are unstable or degrade when stored or mixed.

[0086]    As depicted in Figure 4, the handpiece assembly 18 can optionally include a controller 60 that is configured to control the fluid flow out of the tip 34.  The illustrated controller 60 can be operated to increase or decrease the flow rate of treatment fluid out of the tip 34.  Alternatively or additionally, the controller 60 may control the flow rate of waste fluid flowing through the handpiece assembly 18 to the output line 50.  When control of the waste treatment fluid and waste fluid is independent, the detention time of the fluid in the tip 34 may be adjusted as desired.

[0087]    The illustrated controller 60 is a generally cylindrical body that is pivotally connected to the main body 30.  Figure 4 illustrates an embodiment in which the controller 60 is recessed into and partially hidden by the main body 30, although in other embodiments the controller 60 may encircle the main body 30.  The controller 60 may include textured grooves to provide for easier manipulation.  In some embodiments, the controller 60 is located near the distal end 36 of the handpiece assembly 18 proximal or distal of the contoured portion 70.  The type and configuration of the controller 60 can be selected based on the design of the handpiece assembly 18.  The controller 60 can also be a rotatable knob or handle, digital controller, and the like.

[0088]    The handpiece assembly 18 can also include one or more flow rate controllers within the main body 30 that cooperate with the controller 60 to adjust the fluid flow out of the tip 34.  For example, the controller 60 may comprise a flow control valve such as a globe valve, butterfly valve, needle valve, or variable orifice.  Other types of flow rate controllers can also be used, such as an electrically controlled solenoid valve.  In embodiments where the fluid flow is electronically controlled, the valve system may alternatively be located in the console 12 or manifold system 24.  Separate devices can also be used to control the flow of treatment material.  For example, clamps, pinch valves, or other suitable devices can be used to control fluid flow through the lines 50, 52.

[0089]    Various types of tips 34 can be used with the handpiece assemblies 18 illustrated in Figures 1 to 4.  Figures 5A through 10E illustrate embodiments, for example, of

tips 34 that can be used with these handpiece assemblies 18.   These tips 34 can be interchangeable to provide maximum treatment flexibility.

[0090]      As shown in Figures 5A through 10E, the tip 34 comprises the skirt 64 and a tip main body 66 extending outwardly therefrom.   The skirt 64 is preferably configured to provide a gripping surface suitable for applying leverage or force sufficient to remove the tip 34 from the main body 30.   In some embodiments, the skirt 64 includes internal threads such that it can be mechanically coupled to external threads on the distal end 36 of the main body 30.   In some embodiments, the tip 34 can be press fit onto the main body 30.   Frictional forces can retain the tip 34 to the main body 30.

[0091]      With respect to Figures 5A through 7, the tip 34 comprises an outer member 120 and an inner member 124.   The outer member 120 preferably defines the periphery of the distal end 102 of the tip 34.   When the tip 34 is placed against skin, the outer member 120 can inhibit fluid flow between the tip 34 and the skin and define the outer portion of the space 100.

[0092]      The inner member 124 is preferably spaced from the outer member 120 to define one or more channels.   The illustrated outer member 120 defines a continuous channel 140 that extends outwardly from the central through-hole 122 towards at least one of the outer through-holes 114.   The inner member 120 can form the sidewalls of the channel 140.   Any suitable configuration of channels 140 can be used to provide fluid flow along a flow path.   The illustrated channels 140 have a somewhat U-shaped axial cross-sectional profile, as depicted in Fig. 8A.   The channel 140 can have a V-shaped, curved, or any other suitable cross sectional profile.   A flow path between the through-holes in the tip 34 can be defined at least in part by the channels.

[0093]      The spiral-like pattern of the inner members 124 in Figures 5 through 7 varies.   For example, the inner member 124 in Figure 5 extends about a longitudinal axis 143 of the tip 34 approximately one and a half times, the inner member 124 in Figure 6 extends about the tip 34 approximately two and a half times, and the inner member 124 in Figure 7 rotates about the tip 34 approximately one and three quarters times.   In some embodiments, the inner member 124 subtends an angle of about 70°, 135°, 180°, 210°, 225°, 270°, 315°, 360°, and angles encompassing such ranges.   In yet other embodiments, the inner member 124

subtends an angle of about 405°, 450°, or 495°. The tightness of the spiral in combination with the location and number of through-holes 114 affects the detention time of the fluid in the channel 140. Generally, a tighter spiral results in a longer the pathway (i.e., the length of the channel 140) from delivery through-hole 122 to the return through-holes 114. Fluid traveling down the longer pathway is in contact with the person's skin 80 for a longer period of time. Thus, tighter spirals lead to increased contact time between the fluid and the skin 80. These longer contact times can increase the effectiveness of the fluid because the skin can absorb an adequate amount of active ingredients of the treatment material. Fluid retention time on the patient's skin can be increased to increase hydration, serum retention, and the like. Shorter pathways can be used to reduce contact time between the fluid and the patient's skin. In some embodiments, for example, the tip 34 of Figures 5A to 5D has a relatively short pathway to limit absorption of fluids, achieve relatively high flow rates, and the like.

[0094] Additionally, the inner members 124 can be configured to remove tissue. The inner member 124 can be an abrasive member designed to remove tissue when the inner member 124 slides along a person's skin. The user may select a tip 34 based on the appropriate detention time and abrasiveness for the treatment being applied. For example, the tip 34 illustrated in Figure 7 will provide less abrasion than the tip illustrated in Figure 6, but the tip 34 illustrated in Figure 7 will provide a longer detention time than the tip 34 illustrated in Figure 5.

[0095] The illustrated tip 34 includes a generally continuous inner member 124 that extends from near the through-hole 122 towards at least one of the through-holes 114. In other embodiments, the tip 34 can have a plurality of inner members 124. For example, the inner members 124 can be linear, curved, and may be continuous or discontinuous.

[0096] The handpiece assembly 18 can be moved while the spiral-like inner member 124 engages the patient's skin. The movement of the handpiece assembly 18 can increase the effectiveness of the treatment material expelled out of the tip 34. In some embodiments, for example, the tip 34 can be used with a lifting treatment material that facilitates extractions of, for example, sebum, blackheads, skin, or other substances (e.g., oils, dead skin, etc.). The lifting treatment extraction producer can unclog pores to improve the treated skin's overall appearance. To facilitate extractions, the handpiece assembly 18 can be

twisted or rotated while the tip 34 is pressed against the patient's skin.  The twisting action and the lifting treatment material can work in combination for effective extractions.   In alternative embodiments, a handpiece assembly 18 can also be used without a lifting treatment material for extractions by employing the twisting motion.

[0097]    In certain embodiments, the spiral-like tip 34 massages the skin 80.  In other embodiments, the spiral-like tip 34 ablates the skin 80.  For example, the inner members 124 may act as blades to cut thin layers from the skin 80 when the user twists the handpiece assembly 18.   Twisting the handpiece assembly 18 causes the tip 34 to rotate about the twisting axis, rotating the sharp inner members 124 against the skin 80, which causes ablation. Thin layers of skin can thus be removed by the handpiece assembly 18.   Additionally or alternatively, the spiral-like tip 34 may plane along skin when a fluid is applied to the skin. The planing tip 34 can remove a thin layer of the skin (e.g., the stratum corneum, preferably hydrated stratum corneum).   Accordingly, the user can use the handpiece assembly 18 to remove a particular amount of skin.

[0098]    A vacuum can be applied by the handpiece assembly 18.  For example, the console 12 can have a pump that applies a vacuum via the output line 52.  The negative pressure draws waste material into the through-holes 114 and out of the handpiece assembly 18.  When the tip 34 engages the patient's skin, the vacuum can draw the skin against the tip 34 to enhance the effectiveness of the inner members 124.  The vacuum can be increased or decreased to increase or decrease, respectively, for example, frictional forces, depth of cutting, amount of abrasion, and the like.  To rapidly remove skin, a strong vacuum can be applied to the person's skin so that the skin is pulled against the inner member 124.  The vacuum can also facilitated removal of the waste fluid captured between the tip 34 and the patient's skin.  A vacuum can also be used in combination with the tips illustrated in Figures 1-10E.  The vacuum can also be varied based on the thickness, compliance, and other properties of the skin surface

[0099]    The tip 34 can have any suitable number of through-holes 114, 122 to achieve the desired fluid flow between the skin 80 and the tip 34.  For example, Figure 5A to 5D illustrate an embodiment with two through-holes 114.  The number of through-holes 114, 122 can be chosen based on the cross-sectional areas of the through-holes 114, 122 and the

expected flow rate of the fluid through the channel 100. Preferably, one end of through-holes 114 is positioned between the inner member 124 and the outer member 120. In some embodiments, including the embodiments illustrated in Figures 5A through 7, the through-holes 114 are positioned generally midway between the outer member 120 and inner member 124.

[0100]    The tips can also have one or more energy sources for delivering energy to the skin. Radiant energy, heat, and the like can be delivered to the skin by the tips. The tip 34 illustrated in Figures 6A to 6D has a pair of energy sources 151 in the form of LEDs. When the tip 34 is proximate the patient's skin, the LEDs 151 can deliver a desired amount of energy to the skin. The illustrated tip 34 has four LEDs; however, any number of LEDs can be employed.

[0101]    In alternative embodiments, the tips can carry deployable material. The structure 151 can be in the form of a cavity or pocket that contain and carry material that is released when it engages the treatment fluid. The material in the cavities 151 can be made of any of the treatment materials disclosed herein, and can be in a solid form. For example, the cavities can hold lubricant or soap that is released when the tip is applied to skin.

[0102]    Figures 8A through 8D illustrate another embodiment of a tip 34 when the inner member 124 includes a ring with perforations 140 that provide fluid communication between the through-hole 122 and through-holes 114. A space 100 can be defined between the inner member 124, perforations 140, and outer member 120 when the tip 34 is in operative engagement with the skin 80. Figure 8C illustrates an embodiment with eight through-holes 114. In the embodiment illustrated in Figures 8A through 8D, the inner member 124 forms recessed regions 171, allowing for a larger area of fluid contact with the skin 80 then the tips 34 illustrated in Figures 5 through 7.

[0103]    Figures 9A through 9D illustrate another embodiment of a tip 34 comprising an outer member 120 and an array of protruding inner members 124. A recessed region 191 is defined between the inner members 124 and the outer member 120. The inner members 124 of Figures 9A to 9D can be posts that are similar to the inner members described above. The post 124, for example, can have relatively sharp edges. These edges can be used to remove skin. In some embodiments, the inner members 124 can have relatively

sharp planing blades.   The tip 34 illustrated in Figures 9A through 9D allows for more freedom of movement of the treatment fluid.   The protruding inner members 124 preferably abrade the skin differently than the tips 34 illustrated in Figures 5A through 8.   Rather than being able to ablate large sections of the skin 80 like a blade, as the tips 34 in Figures 5A-8 can do in certain embodiments, the plurality of protruding inner members 124 can ablate or roughen a plurality of smaller sections of the skin 80.

[0104]     The protruding member 124 can optionally contain treatment material.   For example, the protruding members 124 can be generally cylindrical members having a passageway or chamber 127 that holds treatment material.   Thus, fluid can be used in combination with treatment material coupled to the tip 34.

[0105]     With reference to Figures 5A through 9, the inner member 124 preferably has a height from the distal surface that is generally less than the height of the outer member 120.   In some non-limiting embodiments, the height of the inner member 124 is less than 90%, 70%, 60%, 50%, and ranges encompassing such percentages of the height of the outer member 120.   However, in other embodiments, the inner member 124 has a height that is generally greater than the height of the outer member 120.   For example, the inner member 124 can have a height that is 10%, 20%, 30%, 40%, 50% greater than the height of the outer member 120.   The inner member 124 can thus protrude from the tip 34.   A skilled artisan can select a desired height of the inner member 124 and/or the outer member 120 to achieve the desired interaction with the person's skin 80.

[0106]     Figures 10A through 10E illustrate another embodiment of a tip 34 comprising an outer member 120 and a pad 128.   Figure 10E depicts the pad 128 removed from the tip 34.   The tip 34 preferably has a mounting surface 227 that is surrounded by the outer member 120.   The pad 128 can be permanently or temporarily coupled to the mounting surface 227.

[0107]     The pad 128 preferably has a distal surface 224 configured to treat a person's skin.   In some embodiments, the pad 128 is a disposable pad that comprises treatment material attached thereto.   For example, the pad 128 may comprise vitamins, moisturizers, antioxidants, and the like.   Preferably, the pad 128 comprises an adhesive proximal side and a distal side 224 including an abrasive surface.   The abrasive surface can

have grit, a plurality of members (e.g., members similar to the inner members 124 described above), or the like.  The pad 128 can be permanently coupled to the mating surface 227 so that the tip 34 can be used for an extended length of time, or for multiple treatments.  In alternative embodiments, the tip 34 is removable for maximum flexibility in selecting pad abrasiveness, and also allows the user to make changes to the tip 34 without changing the tip 34 in its entirety.  The grit rating of abrasive surface of the distal surface 224 can be selected based on the desired rate of skin removal.

[0108]     The illustrated pad 128 is generally elliptical and planar.  In alternative embodiments, the pad 128 can be polygonal, circular, or have any other shape as desired.  The pad 128 can have cutouts 225 that can match the through-holes 114, 122.  The cutouts 225 can be aligned with the through-holes 114, 122 when the pad 128 is coupled to the mounting surface 227 of the tip 34, as shown in Figures 10A to 10D.  The illustrated mounting surface 227 defines a plurality of tip flow channels 229 extending between the through-holes 114, 122.  When the tip 34 is assembled, fluid can flow along the channels 229 between the main body 66 and the pad 128.

[0109]     Various types of adhesives can be used to temporarily or permanently couple the pad 128 to the mounting surface 227.  As used herein, the term "adhesive" is a broad term and includes, but is not limited to, coupling agents, glues, bonding materials, or the like.  In some embodiments, for example, waterproof pressure sensitive adhesives are used for releasably coupling the pad 128 to the mounting surface 227.  In some embodiments, the pad 128 can be permanently coupled to the mounting surface 227.  For example, the pad 128 can be bonded or fused to the main body 66.  Additionally or alternatively, snap fittings, fasteners, or other coupling structures can be used to mount the pad 128.

[0110]     The tip 34 described above can be used for wet or dry modes of operation.  As such, the tip 34 can be used for wet exfoliation or dry exfoliation.  In some embodiments, the tip 34 is used in a dry mode to remove a desired amount of skin.  After removing a desired amount of skin, the tip 34 can be used in a wet mode on the same or different area of the patient's kin.  During wet mode, fluid can be passed out of the tip 34 onto the patient's skin.  The wet tip 34 can exfoliate, hydrate, and/or perform other types of treatments.  Alternatively, the tip 34 can be used in a wet mode and than a dry mode.  The sequence of wet and dry

modes of operation can be selected based on the type of tip, treatment material, skin condition, and the like.

[0111]   Although the handpiece assemblies are primarily discussed with respect to use with treatment material, the handpiece assemblies can be used without treatment material, i.e., the handpieces can be used in a dry procedure.  Dry procedures can be used for non-hydration procedures and may require less post-procedure clean up.

[0112]   Various fabrication techniques can be employed to make the tips 34 as mentioned above in connection with Figures 11A-11E.  In some embodiments, the tips 34 are formed through a molding process, such as an injection or compression molding process.  The tips 34 of Figures 5A to 5D, for example, can be monolithically formed through an injection molding process.  Alternatively, the tip 34 of can have a multi-piece construction, if desired. The tips 34 can be made of polymers, rubbers, metals, or other suitable materials.

[0113]   The tips 34 can also be fabricated in a multi-step process.  For example, the main body 66 and skirt 64 can be formed in a single process.  A textured surface (e.g., pad, inner members 124, etc.) can be applied to the main body 66 in a subsequent process.  The textured surface can be formed by cutting, embossing, adding material (e.g., a pad, adhesive grit, etc.), a roughening implement, stamping process, or other suitable texturing means.

[0114]   The tips can have associated treatment materials, including, for example, a medicament.  As used herein, the term "medicament" is a broad term and includes, without limitation, growth agents, growth factors or hormones, growth inhibitors, serums, treatment material, cleaners, vitamins, exfoliators, lubricants, or other substances that can be used to treat a patient's skin.  The medicament can be associated with the tip 34 by imbedding, overlaying, coating, impregnation, co-mixing, absorption, or other suitable means for associating the medicament with the tip 34.  The medicament can be hardened so that it can further enhance massaging and/or abrasion.  In some embodiments, the medicament forms hardened grit that can be imbedded on the surface of the tip 34.  The grit can work in combination with the inner members 124 to treat a person's skin.  If a fluid is used, the fluid can facilitate the release of the medicament from the tip 34.  In some embodiments, the medicament comprises or more bioactive substances, such as antibiotics, substances for accelerating the healing of the wound, cell proliferation agents, and the like. Such bioactive

substances may be desirable because they contribute to the healing of damaged or removed skin, as well as reducing the likelihood of infection.

[0115]     Figures 11A to 11E illustrate different cross-sections of inner members that can be used with the tips illustrated in Figures 1-10E.  The inner member 124 of Figure 11A has generally sharp tip 253 for removing tissue.     The tip 253 can have any suitable configuration for removing tissue from a patient.  Figure 11B illustrates an inner member 124 that has a pair of cutting edges 253 and a generally trapezoidal shape.  Figure 11C illustrates an inner member 124 that has a surface treatment 255 for treating a person's skin.   The surface treatment 255 can be serrations, grooves, grit, roughed surface, protrusions, and the like.   The type of surface treatment 255 can be selected based on the procedure to be performed.  Figure 11D illustrates another inner member 124 having a pair of cutting edges 253.  The cutting edges 253 are spaced from each other and protrude outwardly.  The central portion 257 is generally V-shaped; however, the central portion 257 can have other configurations.  For example, Figure 11E illustrates a central portion 257 that has a curved, semi-circular profile.  In alternative embodiments, the inner member 124 can have more than two cutting edges.

[0116]     The inner members 124 of Figures 11A to 11E can be formed by a molding process, such as an injection molding process.     Additionally or alternatively, the inner members 124 can be formed by a machining process.  For example, at least a portion of the inner member 124 of Figures 11D to 11E can be formed through a machining process.   In some embodiments, the central portion 257 can be formed by cutting material out of the inner member 124.  The fabrication process (e.g., molding, injection molding, compression molding, machining, milling, etc.) can be selected based on the design of the inner members.

[0117]     Referring again to Figure 1, the console 12 includes a manifold system 24 that holds containers 26 containing treatment fluids and/or antimicrobial agents.   In a preferred embodiment, the console 12 holds four containers 26, three containing different treatment fluids and one containing an antimicrobial agent.  In the illustrated embodiment, the largest container 26 holds antimicrobial agent for cleaning and sanitizing the fluid lines of the console 12.   The containers 26 can also hold other suitable substances, such as surfactants,

disinfectants, sanitizers, and the like, for cleaning and/or sanitizing the skin treatment system 10.

[0118]    As shown in Figures 12 and 12A, the container 26 can be a fluid source such as a bottle comprising a body 262, a neck 264, and a closure assembly 266.  The neck 264 includes a threaded neck finish and the closure 266 includes a threaded interior surface, allowing it to screw onto the neck 264.  The closure 266 can be permanently or temporarily coupled to the neck 264.  The illustrated bottle 26 is a non-refillable, disposable bottle.  As used herein, the term "non-refillable" is a broad term that includes, but is not limited to, components that cannot be easily refilled with a treatment material.  For example, the illustrated non-refillable bottle 26 cannot be refilled without substantial difficulty.

[0119]    Bodies 262 of the containers 26 may be formed by stretch blow molding a preform into the desired shape.  In other embodiments, the body 262 and a neck 264 can be formed by extrusion blow molding.  For example, the bottle of Figure 13A can be formed by extrusion blow molding.    The containers 26 can be made of polymers, thermosets, thermoplastic materials such as polyesters (e.g., polyethylene terephthalate (PET)), polyolefins, including polypropylene and polyethylene, polycarbonate, polyamides including nylons, epoxies, and/or acrylics.   The material can be virgin or post-consumer/recycled. However, other suitable materials known in the art can also be used.

[0120]    In some embodiments, including the illustrated embodiment of Figures 12 and 12B, the closure 266 is welded (e.g., induction welded) to an upper edge 269 of the neck 264.  A sealing member 267 can be interposed between the upper edge of the neck 269 and the closure 266.  In some embodiments, the sealing member 267 is made out of a conductive metal, such as aluminum, that preferably does not react with the fluid in the bottle 26.  In other embodiments, the seal 267 comprises plastic, such as cellophane, polypropylene, or other suitable material, preferably suitable for coupling to the closure 266 and upper edge 269. In some embodiments, the sealing member 267 comprises metal that is at least partially coated with a polymer, such as polypropylene.   Induction welding can be used to couple the polypropylene to the closure 266 and neck 264, both of which can also comprise polypropylene.

[0121]     Figure 14A illustrates another embodiment of a bottle 26. The closure 266 includes locking members 268 that engage the neck 264, but do not allow removal of the closure 266 from the bottle 26 when assembled, as shown in Figure 13B. The locking closure 266 may include a sealing member 267, for example as described above.

[0122]     In either of the embodiments illustrated in Figures 12 through 14B, the closure 266 may then be sealed with a second closure (not shown), creating multi-piece closures. For example, a screw cap can be threaded onto the external threads 273 at the top end of the closure 266. In these embodiments, the treatment fluid inside the bottle 26 may be accessed by puncturing or otherwise breaking the seal 267, for example with an insertion tip assembly 59 (see Figure 13A).

[0123]     The insertion tip assembly 59 has an elongate member 161 that comprises a fluid pick up conduit 62 and lancing tip 64 extending from the distal end of the conduit 62. In the illustrated embodiment, the lancing tip 64 is a tubular member having a somewhat sharp distal end. To access treatment fluid in the bottle 26, the lancing tip 64 can be inserted into the closure passageway 73 of the closure 266. The lancing tip 64 can be advanced through the passageway 73 until it breaks the sealing member 267. The elongate member 161 can be sufficiently rigid such that it can break the sealing member 267 without buckling. The elongate member 161 can comprise metal, polymers, plastics, or any suitable material.

[0124]     The fluid pick up conduit 62 and lancing tip 64 can be slid through the passageway 73 until the stop 91 is spaced from the upper edge of the closure 266. In alternative embodiments, the insertion tip assembly 59 can be slid through the passageway 73 until the stop 91 contacts the upper edge of the closure 266, as shown in Figure 12B. After the insertion tip assembly 59 and bottle 26 are assembled, as shown in Figure 12B, the treatment material can be draw upwardly through the lancing tip 64 and the fluid pick up conduit 62. The treatment material can flow through a passageway of the insertion tip assembly 59 and to the manifold assembly 24.

[0125]     In certain embodiments, the treatment fluid applied from the containers 26 may be selected from the console 12 for a particular treatment or skin type. In one embodiment, the treatment fluid may comprise a skin rejuvenation serum. Skin rejuvenation serum cleans the skin 80 deeply while softening sebum and impurities to aid in extractions.

Skin rejuvenation serum also assists in dislodging dead cells for extraction and exfoliation by the tip 34 as well as providing residual hydration that aids in firming and smoothing fine lines, resulting in clean, refined, and ultra-moisturized skin 80.   Preferably, a skin rejuvenation treatment serum is active-4™, available from Edge Systems Corp., 2277 Redondo Ave., Signal Hill, CA, 90755, (800) 603-4996.   In another embodiment, the treatment fluid may comprise a salicylic acid serum.   A salicylic acid serum cleans oily skin deeply while softening sebum and impurities to aid in extraction and exfoliation by the tip 34.   Hydration additives in the salicylic acid serum create an ultra-moisturized skin surface, and is blended to remain on the face for the best possible benefit.   Preferably, a salicylic acid treatment fluid is beta-hd™, also available from Edge Systems Corp.   In yet another embodiment, the treatment fluid may comprise antioxidants.   The antioxidant serum is a hybrid that combats free radicals and environmental damage to the cells.   The antioxidant serum is formulated with a blend of the most effective antioxidant ingredients.   The antioxidant serum is an absorbable, leave-on service that improves the appearance of age signs as well as texture and clarity.   Preferably, an antioxidant treatment fluid is antiox-6™, also available from Edge Systems Corp.   The treatment fluids may comprise agents known to be beneficial to skin healing and/or hydration including but not limited to glucosamine, laminaria digitata extract, yeast extract, carbamide, lactic acid, sodium lactate, honey extract, pentylene glycol, spirea ulmaria extract, camellia sinensis leaf (white tea) extract, horse chestnut extract, stabilized vitamins A, B1, B6, B12, C, and E, tocopherol, inositol, calcium panthothenate, linoleic acid, rosemarinus officinalis extract, biotin, and aloins such as anthraquinone gycosides, polysaccharides, sterols, gelonins, and chromones.

[0126]     A single treatment may comprise the serial use of several treatment fluids from the containers 26.   For example, the treatment of acne prone skin may comprise salicylic treatment followed by antioxidant treatment, the treatment of aging skin may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of congestion (e.g., blackheads) may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of damaged skin (e.g., due to medication or smoking) may comprise skin rejuvenator treatment followed by antioxidant treatment, the treatment of skin may comprise skin rejuvenator treatment followed

by salicylic treatment followed by antioxidant treatment, the treatment of hyperpigmentation may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of melasma may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of sensitive skin may comprise skin rejuvenator treatment followed by antioxidant treatment, and the treatment of thin skin may comprise salicylic treatment followed by antioxidant treatment. Alternatively, a single treatment may comprise the parallel use of a combination of treatment fluids from the containers 26, for example using a handpiece with a plurality of input lumens 90 as described above.  Treatment time with each treatment fluid is preferably about 2 to 20 minutes, but may be longer or shorter depending on the patient, the tip 34 used, and the treatment itself.

[0127]    The treatment materials can be used for acne (e.g., by removing oils, bacteria, etc.), melasma, damaged skin (e.g., sun damaged skin, burns, free radical damage, etc.), extractions, skin lightening and/or brightening, skin lines (e.g., fine lines, wrinkles, creases, etc.), dry skin, and the like.  The treatment materials can improve skin elasticity and overall health of the skin.  For example, if the skin is damaged, antioxidants can be applied to damaged area.  Accordingly, the skin treatment system 10 can be used to improve the health, appearance, and/or function of a person's skin.

[0128]    Additionally, the line 20 may be periodically flushed with a fluid (e.g., a antimicrobial fluid, water, etc.) contained in one of the containers 26.  Antimicrobial fluids can contain any disinfecting agent compatible with skin including, but not limited to, butylene glycol, phenoxyethanol, and methyl isothiazolinone.  Preferably, an antimicrobial fluid is rinseaway™, available from Edge Systems Corp.  The line 20 should be flushed with antimicrobial fluid at least at the end of each service day.  Flushing with antimicrobial fluid is more important when the system is not used for consecutive days.

[0129]    As illustrated in Figure 1, the console 12 comprises the manifold system 24 designed to draw treatment fluid from at least one of the containers 26 based on user selection.  The manifold system 24 may include switches 29, each corresponding to one of the bottles.  The switches 29 can be used to control fluid flow from the containers 26.  The illustrated switches 29 can be used to turn Off/On to permit or prevent fluid flow from the

bottles 26.  The illustrated manifold system 24 has a switch corresponding to each bottle 26.  As such, the switches can be used to independently control fluid flow from each of the bottles 26.  In other embodiments, a single switch can be used to control the flow of treatment fluid from more than one of the bottles 26.

[0130]    With continued reference to Figure 1, the button 246 can be operated to release a corresponding bottle 26 from the manifold system 24.  Figure 15A is front perspective view an embodiment in which the manifold system 24 contains quick-release locks connected to the button 246, wherein the quick-release locks capture the containers 26.  As illustrated in Figures 14B and 14C, the quick-release locks 242 engage the closure 266 when the bottle 26 is inserted into the manifold system 24.  When the quick-release lock 242 is manually engaged by a user, for example by pulling the button 246, a slide structure 249 surrounding the closure 266 releases, thereby releasing the bottle 26 from the manifold system 24.

[0131]    Figure 15E illustrates the slide structure 249 holding the neck 264 of the bottle 26 in an elongated slot 309.  The button 246 can be pushed inwardly (indicated by the arrow 313) so that the neck 264 is positioned within the enlarged aperture 317.  The bottle 26 can then slide downwardly out of the manifold system 24.  The bottle 26 can be replaced with another bottle 26.

[0132]    To couple the bottle 26 to the manifold system 24, the closure 266 can be inserted through the aperture 317 of the slide structure 249 when the button 246 is pushed in.  Once the closure 266 engages the stop surface 333 (Figure 15C), the spring 247 can push the slide structure 249 until the flange 335 of the bottle 26 rests on the slide structure 249, as shown in Figure 15C.  In such a position, the manifold system 24 securely holds the bottle 26.  The illustrated slide structure 249 has a sloped portion 269 that can cam along the flange 335 as the button 246 moves outwardly.  Accordingly, the slide member 249 can push the closure 266 upwardly until the closure 266 is locked with the manifold 24, as shown in Figure 15C.  The quick-release lock 242 is loaded with spring 247 such that the slide structure 249 is biased towards the button 246.

[0133]    The manifold system 24 can have a modular design so that it can be removed from the console 12.  In some embodiments, the manifold system 24 and associated

containers 26 can be removed and transported away from the console 12.   Accordingly, the modular manifold systems can be interchanged to provide treatment flexibility.   Alternatively, the manifold system 24 can be permanently mounted to the console 12.

[0134]    Figures 15B and 15C illustrate cross-sectional views of the manifold system 24 taken along lines 15B-15B and lines 15C-15C, respectively.   Both Figures 15B and 15C show the fluid pick up conduit 62 in operative engagement with the bottle 26 through the seal 267.   Suction device(s) is preferably in fluid communication with the fluid pick up conduit 62, and draws fluid out of the bottle 26 through the fluid pick up conduit 62.   The fluid can flow through a passageway 161 (see Figure 15C) extending through the pick up conduit 62.   The fluid can flow to and through the lumen 171 towards the line 20.   If the switch 29 is off, the fluid from one or more of the upstream bottles can flow along the passage 173.   The manifold system 24 then directs the fluid into the line 20.

[0135]    In certain embodiments, including the embodiment of Figure 1, the console 12 comprises a computer with display 32.   In one embodiment, the display 32 is a user input device comprising a touch screen that controls the computer.   In other embodiments, the computer may be controlled by input devices such as a keyboard, keypad, mouse, pointing device, or other input device.   The computer controls a variety of functions in the console 12.   For example, the computer may control the manifold system 24, and thereby the flow of treatment fluids from the containers 26.   In one embodiment, the fluid flowing through the line 20 can be changed by pressing a single button on the touch screen display 32.   In another embodiment, the computer contains teaching tutorials that are exhibited on the display 32.   In yet another embodiment, the user may change program chips within the computer according to treatment and/or patient.   In still another embodiment, the computer records patient and treatment data, for example data gathered during treatment.

[0136]    The console 12 can also comprise a mechanical system for controlling fluid flow from the containers to the handpiece.   One or more pumps, valves, fluid lines, and the like can cooperate to deliver fluid from the containers to the handpiece.   The console 12 can be powered pneumatically, electrically, or by any other suitable powering means.   The mechanically drive console 12 can have manual controls for controlling fluid flow to the handpiece.

[0137]    The console 12 can also comprise additional handpieces suitable for other types of skin treatment.  These additional handpieces can be used for pre-treatment or post-treatment in combination with other modalities.  For example, the console 12 may include a handpiece for diamond tip abrasion, or "crystal-free" microdermabrasion, as described above.  Such a handpiece may be useful for more aggressive treatments, in addition to treatment with the handpiece assembly 18.  The diamond tips can range from fine to extra coarse.

[0138]    In some embodiments, the console 12 comprises a handpiece including at least one light emitting diode (LED).  Light therapy has been shown to improve skin.  For example, red light between about 600 and about 700 nanometers and infrared LED light between about 700 and about 1,000 nanometers reduces the appearance of fine lines and superficial hyperpigmentation.  For another example, blue LED light at about 430 nanometers improves the appearance of oily and acne-prone skin.  Other benefits of light therapy include promotion of collagen production, increased circulation and moisture retention, smoothing of skin texture, and improvement of skin firmness and resilience.

[0139]    The console 12 can comprise handpieces for vacuum therapy such as lymphatic drainage and cellulite massage.  Vacuum therapy enhances the effects of treatment with the handpiece assembly 18 and LED light therapy.  Preferably, the vacuum therapy handpieces are sized appropriately for facial massage and body massage.  An example of a multi-modality protocol using a plurality of handpieces comprises diamond tip abrasion, treatment with handpiece assembly 18 and at least one treatment fluid from containers 26, vacuum therapy, red light therapy, and application of sunscreen, for example at a minimum skin protection factor (SPF) of 15.  The various modalities may be included and ordered by the user depending on the desired outcome of the overall treatment.

[0140]    The console 12 optionally includes any of a plurality of additional features.  For example, a digital camera may be used to take pictures of the patient before and after treatment, and the pictures may be stored on the computer.  The computer may hold client medical and treatment records.  The computer may be connected to a network.  The console 12 may store disks.  The console 12 may include an ultrasound unit.  The console 12 may include a stimulator, such as an electrical stimulator.  The console 12 may include an iontophoresis handpiece.  The number of additional features is limitless when considering the

range of features that a user may wish to incorporate with the treatment provided by the handpiece assembly 18.

[0141]   Figure 16 depicts another embodiment of the skin treatment system 10, which may be generally similar to the embodiment illustrated in Figure 1, except as further detailed below.   Where possible, similar elements are identified with identical reference numerals in the depiction of the embodiment of Figure 1.

[0142]   The line 20 includes an output line 50 for removing waste from the handpiece assembly 18 and an input line 52 for delivering treatment material to the handpiece assembly 18.   A valve 300 can be disposed along the input line 52 to inhibit backflow of treatment material.   The console 12 can pump treatment material through the input line 52 to the handpiece assembly 18 when the handpiece assembly 18 is applied to the person's skin, as detailed above.   The fluid flow through the input line 52 can be reduced or stopped so that the handpiece assembly 18 can be removed from the patient's skin.   The valve 300 can inhibit the flow of fluid through the input line 52 towards the console 12.   A desired amount of treatment material can therefore be contained in the handpiece assembly 18 and the section 310 of the input tubing 52 extending between the valve 300 and the handpiece assembly 18.   When the handpiece assembly 18 is applied to a patient's skin, a vacuum can be applied to the output line 50.   The vacuum can draw the treatment material out of the handpiece assembly 18 without a substantial or noticeable delay.

[0143]   In some embodiments, the valve 300 can be a one-way valve, such as a duckbill valve, check valve, or other type of valve for inhibiting fluid flow.   In alternative embodiments, the valve 300 can comprises a plurality of valves (e.g., one-way valves, flow regulators, adjustable valves, etc.).

[0144]   Figure 17 is a cross-sectional view of the line 20.   The input and output lines 50, 52 can have different or similar cross sectional flow areas.   The illustrated output line 50 has a passageway 312 with a diameter that that is less than the diameter of a passageway 314 of the input line 52.   Accordingly, a relatively large slug of treatment material can be stored in the section 310 extending distally from the valve 300 to the handpiece assembly 18. The slug can be quickly delivered out of the handpiece assembly 18 once the handpiece assembly is applied to a patient's skin as detailed above.

[0145]    In some embodiments, the section 310 of the output line 50 has a length L greater than 6 inches, 12 inches, 18 inches, 24 inches, and ranges encompassing such lengths. In some embodiments, the section 310 of the output line 50 has a length L greater than 24 inches, 30 inches, 36 inches, and ranges encompassing such lengths.  The passageway 312 can have a cross-sectional area that is at least 10%, 30%, 50%, 75%, or 100% greater than the cross-sectional area of the passageway 314.    The length L and the diameters of the passageways 312, 314 can be selected based on the desired amount of treatment material to be stored in the line 20, delivery and removal rates.

[0146]    Figures 18 and 19 illustrate a modular handpiece assembly 360 having a cartridge 362 containing treatment material.  The illustrated handpiece assembly 360 can be used to deliver treatment material from the cartridge 362.  The main body 30 can have a pump for pressuring the treatment material.  In one embodiment, the fluid control device includes a power supply, such as a battery, which provides power to electrical components (e.g., pumps or valves) of the handpiece assembly 360.   The power supply can be a battery that is preferably disposed within the main body 30 of the handpiece assembly 360. In one arrangement, the battery is a rechargeable battery that can be connected to and recharged by an AC power supply, such as a typical residential electrical outlet.   Alternatively, the handpiece assembly 360 can be directly powered by an AC power supply.  The power supply can provide power to several components of the handpiece assembly 360.  For example, the power supply can provide power to a plurality of fluid control devices 330 and/or a flow control unit.  A control switch 371 can be used to turn the handpiece assembly 360 Off/On and/or control the output of the handpiece assembly 360.

[0147]    In operation, the cartridge 362 can be inserted into the main body 30.  The handpiece assembly 360 can be applied to a patient's skin to deliver treatment material from the cartridge 362 to the patient's skin.   After delivering a desired amount of treatment material, the cartridge 362 can be separated from the main body 30.  The cartridge 362 can be a one-use or multi-use cartridge.  For example, the cartridge can be a non-refillable disposable cartridge.

[0148]    The tip 34 can also be used to remove hair or perform other skin treatments.  For example, the tip 34 can include one or more razor blades and may be

configured to apply a treatment material (e.g., antioxidents, vitamins, serums, growth agents, etc.) to the skin during the shaving process. In such embodiments, the main body 30 can be an elongated handle that is connected to a transversely extending elongate tip 34. In some embodiments, the handpiece assembly can be in the form of a disposable handheld razor. The treatment material can reduce or substantially eliminate problems associated with wet or dry shaving systems. These treatment materials may be applied prior to, during, before, and/or after shaving.

[0149]    The articles disclosed herein may be formed through any suitable means. The various methods and techniques described above provide a number of ways to carry out the invention. Of course, it is to be understood that not necessarily all objectives or advantages described may be achieved in accordance with any particular embodiment described herein. Thus, for example, those skilled in the art will recognize that the methods may be performed in a manner that achieves or optimizes one advantage or group of advantages as taught herein without necessarily achieving other objectives or advantages as may be taught or suggested herein.

[0150]    Furthermore, the skilled artisan will recognize the interchangeability of various features from different embodiments disclosed herein. Similarly, the various features and steps discussed above, as well as other known equivalents for each such feature or step, can be mixed and matched by one of ordinary skill in this art to perform methods in accordance with principles described herein. Additionally, the methods which are described and illustrated herein are not limited to the exact sequence of acts described, nor are they necessarily limited to the practice of all of the acts set forth. Other sequences of events or acts, or less than all of the events, or simultaneous occurrence of the events, may be utilized in practicing the embodiments of the invention.

[0151]    Although the invention has been disclosed in the context of certain embodiments and examples, it will be understood by those skilled in the art that the invention extends beyond the specifically disclosed embodiments to other alternative embodiments and/or uses and obvious modifications and equivalents thereof. Accordingly, it is not intended that the invention be limited, except as by the appended claims.

<u>WHAT IS CLAIMED IS</u>:

1.      An apparatus for treating skin, the apparatus comprising:

a console having a user input device and a handpiece assembly, which is configured to treat skin;

a fluid line providing fluid communication between the console and the handpiece assembly; and

a manifold system coupled to the console and controlled by the user input device, the manifold system being configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

# CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

Abstract of the Disclosure

An apparatus for treating skin has a console with a user input device and a handpiece assembly. The handpiece assembly is configured to treat skin. A fluid line provides fluid communication between the console and the handpiece assembly. A manifold system is coupled to the console and controlled by the user input device. The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

20467378

1/25



*FIG. 1*



FIG. 2A



*FIG. 2B*



*FIG. 3*

Case 2:20-cv-00082-GRB-ST   Document 69-3   Filed 06/21/22   Page 88 of 363 PageID #: 4381



*FIG. 4*





FIG. 6B

FIG. 6D

FIG. 6A

FIG. 6C



FIG. 7A

FIG. 7B

FIG. 7C

FIG. 7D

9/25





FIG. 9A

FIG. 9B

FIG. 9C

FIG. 9D



FIG. 10A

FIG. 10B

FIG. 10C

FIG. 10D

FIG. 10E

11/25



FIG. 11A

FIG. 11B

FIG. 11C

FIG. 11D

FIG. 11E



*FIG. 12*

14/25



FIG. 13A

15/25



*FIG. 13B*

16/25



273

266

267

268

26

264

262

FIG. 14A

17/25



*FIG. 14B*



*FIG. 15A*

19/25



FIG. 15B

20/25



FIG. 15C

21/25



FIG. 15D

22/25



*FIG. 15E*

23/25



*FIG. 16*

*FIG. 17*



*FIG. 18*

24/25



66    371    70    30    360    362

68    34    64    36

25/25

*FIG. 19*

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22195890 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Heide Young |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 28-APR-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 18:59:16 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | EDGE-005C2_ADS.PDF | 1561684<br>c7036734c11ff3ea9fb5dba36cef145cb4657208 | no | 8 |

| Warnings: |
|---|
| Information: |

| 2 | | EDGE-005C2_Specification.pdf | 1685621<br>33eae73c316933cebfdac8d33d99a631780cf379 | yes | 33 |

| **Multipart Description/PDF files in .zip description** | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Specification | 1 | 31 |
| Claims | 32 | 32 |
| Abstract | 33 | 33 |

| **Warnings:** |
|---|
| **Information:** |

| 3 | Drawings-only black and white line drawings | EDGE-005C2_Drawings.PDF | 667275<br>8967a45e619f0a5336c6be2c0acc3d1f4c94a74b | no | 25 |

| **Warnings:** |
|---|
| **Information:** |

| **Total Files Size (in bytes):** | 3914580 |
|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Doc code: PET.OP.AGE
Description : Petition to make special based on Age/Health

PTO/SB/130 (07-09)
Approved for use through 07/31/2012. OMB 0651- 0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## PETITION TO MAKE SPECIAL BASED ON AGE FOR ADVANCEMENT OF EXAMINATION UNDER 37 CFR 1.102(c)(1)

### Application Information

| Application Number | 14698673 | Confirmation Number | 7926 | Filing Date | 2015-04-28 |
|---|---|---|---|---|---|
| Attorney Docket Number (optional) | EDGE.005C2 | Art Unit | TBD | Examiner | Unknown |
| First Named Inventor | Roger Ignon | | | | |
| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN | | | | |

**Attention: Office of Petitions**

An application may be made special for advancement of examination upon filing of a petition showing that the applicant is 65 years of age, or more. No fee is required with such a petition. See 37 CFR 1.102(c)(1) and MPEP 708.02 (IV).

APPLICANT HEREBY PETITIONS TO MAKE SPECIAL FOR ADVANCEMENT OF EXAMINATION IN THIS APPLICATION UNDER 37 CFR 1.102(c)(1) and MPEP 708.02 (IV) ON THE BASIS OF THE APPLICANT'S AGE.

A grantable petition requires one of the following items:
(1) Statement by one named inventor in the application that he/she is 65 years of age, or more; or
(2) Certification by a registered attorney/agent having evidence such as a birth certificate, passport, driver's license, etc. showing one named inventor in the application is 65 years of age, or more.

### Name of Inventor who is 65 years of age, or older

| Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|
| Roger | | Ignon | |

A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 10.18.
Please see 37 CFR 1.4(d) for the format of the signature.

Select (1) or (2) :

○ (1) I am an inventor in this application and I am 65 years of age, or more.

◉ (2) I am an attorney or agent registered to practice before the Patent and Trademark Office, and I certify that I am in possession of evidence, and will retain such in the application file record, showing that the inventor listed above is 65 years of age, or more.

| Signature | /Theodore G. Papagiannis/ | Date (YYYY-MM-DD) | 2015-04-30 |
|---|---|---|---|
| Name | Theodore G. Papagiannis | Registration Number | 61546 |

Doc code: PET.OP.AGE
Description : Petition to make special based on Age/Health
Case 2:20-cv-06082-GRB-ST   Document 69-3   Filed 06/21/22   Page 112 of 363 PageID #: 4605

PTO/SB/130 (07-09)
Approved for use through 07/31/2012. OMB 0651- 0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Fr eedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about indivi duals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

## UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

In re Application of
Roger  Ignon

Application No.     14698673
Filed:

Attorney Docket No.    EDGE.005C2

:
:
:DECISION ON PETITION TO MAKE SPECIAL
:UNDER 37 CFR 1.102(c)(1)
:

This is a decision on the electronic petition under 37 CFR 1.102 (c)(1), filed    30-APR-2015        to make the above-identified application special based on applicant's age as set forth in MPEP § 708.02, Section IV.

The petition is **GRANTED**.

A grantable petition to make an application special under 37 CFR 1.102(c)(1), MPEP § 708.02, Section IV: Applicant's Age must include a statement by applicant or a registered practitioner having evidence that applicant is at least 65 years of age.  No fee is required.

Accordingly, the above-identified application has been accorded "special" status and will be taken up for action by the examiner upon the completion of all pre-examination processing.

Telephone inquiries concerning  this electronic decision should be  directed to the Electronic Business Center at 866-217-9197.

All other inquiries concerning either the examination or status of the application should be directed to the Technology Center.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22215429 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/janet teeters |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 30-APR-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 12:26:09 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Petition automatically granted by EFS | EDGE-005C2_Petition_make_special.PDF | 752159 58714e9958be9c6220224475590cad47ccb1d9ac | no | 2 |

| | |
|---|---|
| Warnings: | |
| Information: | |

Total Files Size (in bytes): 4608

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE.005C2                                                            PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Ignon et al. |
| App. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Unknown |
| Art Unit | : | Unknown |
| Conf No. | : | 7926 |

## <u>PRELIMINARY AMENDMENT</u>

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Prior to examination on the merits, please amend the above-referenced application as provided below.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

-1-

**Application No.:**      14/698,673
**Filing Date:**            April 28, 2015

## AMENDMENTS TO THE CLAIMS

*The following listing of claims replaces all prior versions and listings of claims in the application.   The listing of claims presents each claim with its respective status shown in parentheses.*

1.      (*Canceled*)

2.      (*New*)    A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with at least one fluid container, the at least one fluid container being configured to contain a treatment material for a skin treatment procedure;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the at least one fluid container through the supply conduit; and

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source.

3.      (*New*)   The system of Claim 2, further comprising a user input device, wherein the user input device is configured to receive instructions regarding the treatment material to be passed through the supply conduit to the handpiece assembly.

4.      (*New*)   The system of Claim 2, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

5.      (*New*)   The system of Claim 4, wherein the user input device comprises a touch screen.

6.      (*New*)   The system of Claim 2, wherein the at least one fluid container is releasably coupled to the manifold.

**Application No.:     14/698,673**
**Filing Date:            April 28, 2015**

7.       (*New*)  The system of Claim 2, wherein the at least one fluid container comprises at least two fluid containers.

8.       (*New*)  The system of Claim 2, wherein the at least one fluid container comprises at least four fluid containers.

9.       (*New*)  The system of Claim 7, wherein treatment materials from the at least two fluid containers are delivered to the supply conduit sequentially or simultaneously.

10.      (*New*)  The system of Claim 2, wherein the console is movable.

11.      (*New*)  The system of Claim 2, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece is moved relative to a skin surface of a subject.

12.      (*New*)  The system of Claim 2, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

13.      (*New*)  The system of Claim 2, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

14.      (*New*)   A system for performing a skin treatment procedure, the system comprising:

        a manifold in fluid communication with at least one fluid container, the at least one fluid container being configured to contain a treatment material;

        a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; and

        a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly;

        wherein the manifold is configured to control a flow of treatment material from the at least one fluid container through the supply conduit.

15.      (*New*)   The system of Claim 14, further comprising a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to a vacuum source.

16.      (*New*)   The system of Claim 14, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

**Application No.:**     **14/698,673**
**Filing Date:**          **April 28, 2015**

17.     (*New*)  The system of Claim 14, wherein console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container.

18.     (*New*)  The system of Claim 17, wherein the user input device comprises a touch screen.

19.     (*New*)   The system of Claim 14, wherein the at least one fluid container is releasably coupled to the manifold.

20.     (*New*)   The system of Claim 14, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece is moved relative to a skin surface of a subject.

21.     (*New*)  The system of Claim 14, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

**Application No.:** 14/698,673
**Filing Date:** April 28, 2015

## REMARKS

Applicant submits this Preliminary Amendment prior to examination. Claim 1 was pending in this application. Applicant is canceling without prejudice Claim 1 and adding new Claims 2 to 21 herein. No new matter is added by the foregoing amendments. Applicant reserves the right to pursue claims similar to the original claims and/or previously-pending versions of the claims in a continuing application.

## New Claims

As noted above and reflected in the listing of claims, new Claims 2 to 21 are added herein. Applicant submits that no new matter is added by the introduction of these claims.

## Table of U.S. Patents and Applications

Applicant provides the following table to aid the Examiner during prosecution. The following U.S. patents and/or patent applications are in the same patent family as the subject application.

| Attorney Docket No. | App. No. (*Pat. No., if appl.*) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348 (U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **14/698,673** (***present application***) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

**Application No.:**   14/698,673
**Filing Date:**       April 28, 2015

**No Disclaimers or Disavowals**

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

## CONCLUSION

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 1, 2015                    By: /Theodore G. Papagiannis/
                                          Theodore G. Papagiannis
                                          Registration No. 61,546
                                          Attorney of Record
                                          Customer No. 20995
                                          (949) 760-0404

20577793

-6-

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22233872 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Tony Do |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 01-MAY-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 17:26:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | EDGE-005C2_Prelim_Amend. pdf | 251862 <br> c76b7fe656bea512fb674051aca6b8e29788778a | yes | 6 |

Case 2:20-cv-06082-GRB-ST   Document 69-3   Filed 06/21/22   Page 123 of 363 PageID #: 4010

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Preliminary Amendment | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 6 |

| Warnings: | |
|---|---|
| Information: | |
| **Total Files Size (in bytes):** | 251862 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 14/698,673 | Filing Date 04/28/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE   ☒ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| AMENDMENT | **05/01/2015** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 20 | Minus ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus *** 3 | = 0 | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

|  |  | (Column 1) | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|
| AMENDMENT | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LDRC
/PRASAD JANDHYALA/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | | 0.00 | EDGE.005C2 | 20 | 2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**FILING RECEIPT**

*OC000000075079467*

Date Mailed: 05/11/2015

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

**Applicant(s)**

EDGE SYSTEMS LLC, Signal Hill, CA

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

This application is a CON of 13/267,554 10/06/2011
which is a CON of 11/392,348 03/29/2006 PAT 8048089
which claims benefit of 60/755,310 12/30/2005
and claims benefit of 60/764,668 02/02/2006

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**If Required, Foreign Filing License Granted:** 05/07/2015
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/698,673**
**Projected Publication Date:** To Be Determined - pending completion of Missing Parts
**Non-Publication Request:** No

page 1 of 3

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

       CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 14/698,673 |

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 70 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 300 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 360 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 | minus 20 = * | x 40 = | 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 | minus 3 = * | x 210 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 730 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

**AMENDMENT A**

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

**AMENDMENT B**

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**FORMALITIES LETTER**



*OC000000075079468*

Date Mailed: 05/11/2015

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

### FILED UNDER 37 CFR 1.53(b)

#### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
- The application search fee must be submitted.
- The application examination fee must be submitted.
- Surcharge as set forth in 37 CFR 1.16(f) must be submitted.
  The surcharge is due for any one of:
    - late submission of the basic filing fee, search fee, or examination fee,
    - late submission of inventor's oath or declaration,
    - filing an application that does not contain at least one claim on filing, or
    - submission of an application filed by reference to a previously filed application.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. Small entity discount is in effect. If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)
- $ **70** basic filing fee.
- $ **70** surcharge.
- $ **300** search fee.
- $ **360** examination fee.
- $( **0**) previous unapplied payment amount.
- $ **800** TOTAL FEE BALANCE DUE.

**Items Required To Avoid Processing Delays:**

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's

oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

• A properly executed inventor's oath or declaration has not been received for the following inventor(s):
    Roger Ignon
    Scott Mallett
    Abraham Solano
    William Cohen

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

        Replies should be mailed to:

           Mail Stop Missing Parts
           Commissioner for Patents
           P.O. Box 1450
           Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice". https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or visit our website at http://www.uspto.gov/ebc.

    If you are not using EFS-Web to submit your reply, you must include a copy of this notice.


    /tpetros/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

Docket No.:   EDGE.005C2

June 22, 2015
Page 1 of 1

Please Direct All Correspondence to Customer Number 20995

**RESPONSE TO FORMALITIES NOTICE**

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| App. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Art Unit | : | Unknown |
| Conf No. | : | 7926 |

**Mail Stop Missing Parts**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Formalities Notice that was mailed on May 11, 2015 for the above-captioned application, enclosed, in compliance with 37 CFR §1.53(f), are the following:

The present application qualifies for small entity status under 37 CFR §1.27.

(X)     Fees will be paid via EFS Web.  Any extension of time will be requested by payment of the appropriate extension fee.

(X)     An Information Disclosure Statement and PTO/SB/08 equivalent listing references for consideration:

      (X)     Listing 334 references.

The Commissioner is hereby authorized to charge any additional fees which may be required, now or in the future, or credit any overpayment, to Account No. 11-1410.

Date: June 22, 2015

By: /Theodore G. Papagiannis/
Theodore G. Papagiannis
Registration No. 61,546
Attorney of Record
Customer No. 20995
(949) 760-0404

20932049

Docket No.: EDGE.005C2                                    **Customer No. 20995**

---

### INFORMATION DISCLOSURE STATEMENT

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| App. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Unknown |
| Art Unit | : | Unknown |
| Conf. No. | : | 7926 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

Pursuant to 37 CFR §1.56, an Information Disclosure Statement listing references is provided herewith.  Listed references are of record in U.S. patent application No. 13/267,554, filed October 6, 2011, which is the parent of this continuation application, and is relied upon for an earlier filing date under 35 USC 120.  Copies of the references are not submitted pursuant to 37 CFR §1.98(d).  Any foreign references may also include English abstract(s) and/or machine translation(s), but no representation is made as to their accuracy.  Identification herein is not an admission that any of the references are prior art to the above captioned application.

If the Examiner would like additional information regarding these references or if anything is unclear, the Examiner is invited to contact the undersigned for assistance.

The claims of the present application are different and possibly broader in scope than the claims pursued in a parent application (e.g., U.S. Pat. Appl. No. 11/392,348).  To the extent any prior amendments or characterizations of the scope of any claim or referenced art could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant hereby rescinds and retracts such disclaimer.  Accordingly, the references previously considered in the parent application may need to be re-visited.

**Application No.:** 14/698,673
**Filing Date:** April 28, 2015

**Related Applications of Assignee**

Applicant wishes to draw the Examiner's attention to the following patents and/or applications in the same patent family as the present application.

| Attorney Docket | App. No.<br>(Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348<br>(U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **14/698,673**<br>***(present application)*** | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

**Timing of Disclosure**

This Information Disclosure Statement is being filed within three months of the filing date and no fee is believed to be required.

**Application No.:**   **14/698,673**
**Filing Date:**   **April 28, 2015**


The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: June 22, 2015

By:/Theodore G. Papagiannis/
Theodore G. Papagiannis
Registration No. 61,546
Attorney of Record
Customer No. 20995
(949) 760-0404


20778612

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 1 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,608,032 | 08-26-1952 | Garver | |
| | 2 | 2,701,559 | 02-05-1955 | Cooper | |
| | 3 | 2,712,823 | 07-12-1955 | Kurtin | |
| | 4 | 2,867,214 | 01-06-1959 | Wilson | |
| | 5 | 2,881,763 | 04-14-1959 | Robbins | |
| | 6 | 2,921,585 | 01-19-1960 | Schumann | |
| | 7 | 3,085,573 | 04-16-1963 | Meyer et al. | |
| | 8 | 3,214,869 | 11-02-1965 | Stryker | |
| | 9 | 3,476,112 | 11-04-1969 | Elstein | |
| | 10 | 3,574,239 | 04-13-1971 | Sollerud | |
| | 11 | 3,715,838 | 02-13-1973 | Young et al. | |
| | 12 | 3,948,265 | 04-06-1976 | Al Ami | |
| | 13 | 3,964,212 | 06-22-1976 | Karden | |
| | 14 | 3,977,084 | 08-31-1976 | Sloan | |
| | 15 | 4,121,388 | 10-24-1978 | Wilson | |
| | 16 | 4,155,721 | 05-22-1979 | Fletcher | |
| | 17 | 4,182,329 | 01-08-1980 | Smith et al. | |
| | 18 | 4,203,431 | 05-20-1980 | Abura et al. | |
| | 19 | 4,216,233 | 08-05-1980 | Stein | |
| | 20 | 4,299,219 | 11-10-1981 | Norris, Jr. | |
| | 21 | 4,378,804 | 04-05-1983 | Cortese | |
| | 22 | 4,560,373 | 12-24-1985 | Sugino et al. | |
| | 23 | 4,646,480 | 03-03-1987 | Williams | |
| | 24 | 4,646,482 | 03-03-1987 | Chitjian | |
| | 25 | 4,655,743 | 04-07-1987 | Hyde | |
| | 26 | 4,676,749 | 06-30-1987 | Mabille | |
| | 27 | 4,706,676 | 11-17-1987 | Peck | |
| | 28 | 4,754,756 | 07-05-1988 | Shelanski | |
| | 29 | 4,757,814 | 07-19-1988 | Wang et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 2 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 4,764,362 | 08-16-1988 | Barchas | |
| | 31 | 4,795,421 | 01-03-1989 | Blasius, Jr., et al. | |
| | 32 | 4,875,287 | 10-24-1989 | Creasy et al. | |
| | 33 | 4,886,078 | 12-12-1989 | Shiffman | |
| | 34 | 4,887,994 | 12-12-1989 | Shiffmann | |
| | 35 | 4,900,316 | 02-13-1990 | Yamamoto | |
| | 36 | 4,917,086 | 04-17-1990 | Feltovich et al. | |
| | 37 | 4,925,450 | 05-15-1990 | Imonti et al. | |
| | 38 | 4,957,747 | 09-18-1990 | Stiefel | |
| | 39 | 5,006,004 | 04-09-1991 | Dirksing et al. | |
| | 40 | 5,006,339 | 04-09-1991 | Bargery et al. | |
| | 41 | 5,012,797 | 05-07-1991 | Liang et al. | |
| | 42 | 5,035,089 | 07-30-1991 | Tillman et al. | |
| | 43 | 5,037,431 | 08-06-1991 | Summers et al. | |
| | 44 | 5,037,432 | 08-06-1991 | Molinari | |
| | 45 | 5,100,412 | 03-31-1992 | Rosso | |
| | 46 | 5,100,424 | 03-31-1992 | Jang | |
| | 47 | 5,119,839 | 06-09-1992 | Rudolph | |
| | 48 | 5,122,153 | 06-16-1992 | Harrel | |
| | 49 | 5,207,234 | 05-04-1993 | Rosso | |
| | 50 | 5,222,956 | 06-29-1993 | Waldron | |
| | 51 | 5,242,433 | 09-07-1993 | Smith et al. | |
| | 52 | 5,254,109 | 10-19-1993 | Smith et al. | |
| | 53 | 5,368,581 | 11-29-1994 | Smith et al. | |
| | 54 | 5,391,151 | 02-21-1995 | Wilmot | |
| | 55 | 5,417,674 | 05-23-1995 | Smith et al. | |
| | 56 | 5,419,772 | 05-30-1995 | Teitz et al. | |
| | 57 | 5,460,620 | 10-24-1995 | Smith et al. | |
| | 58 | 5,470,323 | 11-28-1995 | Smith et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 3 OF 13 | Attorney Docket No. | EDGE.005C2 |

## U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number *Number - Kind Code (if known)* Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 59 | 5,484,427 | 01-16-1996 | Gibbons | |
| | 60 | 5,562,642 | 10-08-1996 | Smith et al. | |
| | 61 | 5,611,687 | 03-18-1997 | Wagner | |
| | 62 | 5,612,797 | 03-18-1997 | Liang et al. | |
| | 63 | 5,674,235 | 10-07-1997 | Parisi | |
| | 64 | 5,676,643 | 10-14-1997 | Cann et al. | |
| | 65 | 5,676,648 | 10-14-1997 | Henley | |
| | 66 | 5,683,971 | 11-04-1997 | Rose et al. | |
| | 67 | 5,707,383 | 01-13-1998 | Bays | |
| | 68 | 5,713,785 | 02-03-1998 | Nishio | |
| | 69 | 5,759,185 | 06-02-1998 | Grinberg | |
| | 70 | 5,779,519 | 07-14-1998 | Oliver | |
| | 71 | 5,800,446 | 09-01-1998 | Banuchi | |
| | 72 | 5,807,353 | 09-15-1998 | Schmitz | |
| | 73 | 5,810,842 | 09-22-1998 | Di Fiore at al. | |
| | 74 | 5,813,416 | 09-29-1998 | Rudolph | |
| | 75 | 5,817,050 | 10-06-1998 | Klein | |
| | 76 | 5,846,215 | 12-08-1998 | Zygmont | |
| | 77 | 5,848,998 | 12-15-1998 | Marasco, Jr. | |
| | 78 | 5,861,142 | 01-19-1999 | Schick | |
| | 79 | 5,873,881 | 02-23-1999 | McEwen et al. | |
| | 80 | 5,879,323 | 03-09-1999 | Henley | |
| | 81 | 5,882,201 | 03-16-1999 | Salem | |
| | 82 | 5,885,260 | 03-23-1999 | Mehl, Sr., et al. | |
| | 83 | 5,908,401 | 06-01-1999 | Henley | |
| | 84 | 5,919,152 | 07-06-1999 | Zygmont | |
| | 85 | 5,954,730 | 09-21-1999 | Bernabei | |
| | 86 | 5,971,999 | 10-26-1999 | Naldoni | |
| | 87 | 5,980,555 | 11-09-1999 | Barbut et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T$^1$ - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 4 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 88 | 6,019,749 | 02-01-2000 | Fields et al. | |
| | 89 | 6,024,733 | 02-15-2000 | Eggers et al. | |
| | 90 | 6,027,402 | 02-22-2000 | Oliver | |
| | 91 | 6,039,745 | 03-21-2000 | Di Fiore et al. | |
| | 92 | 6,042,552 | 03-28-2000 | Cornier | |
| | 93 | 6,080,165 | 06-27-2000 | DeJacma | |
| | 94 | 6,080,166 | 06-27-2000 | McEwen et al. | |
| | 95 | 6,090,085 | 07-18-2000 | Mehl, Sr. Et al. | |
| | 96 | 6,120,512 | 09-19-2000 | Bernabei | |
| | 97 | 6,136,008 | 10-24-2000 | Becker et al. | |
| | 98 | 6,139,553 | 10-31-2000 | Dotan | |
| | 99 | 6,139,554 | 10-31-2000 | Karkar et al. | |
| | 100 | 6,142,155 | 11-07-2000 | Rudolph | |
| | 101 | 6,149,634 | 11-21-2000 | Bernabei | |
| | 102 | 6,159,226 | 12-12-2000 | Kim | |
| | 103 | 6,162,232 | 12-19-2000 | Shadduck | |
| | 104 | 6,183,451 | 02-06-2001 | Mehl, Sr., et al. | |
| | 105 | 6,183,483 | 02-06-2001 | Chang | |
| | 106 | 6,231,593 | 05-15-2001 | Meserol | |
| | 107 | 6,238,275 | 05-29-2001 | Metcalf et al. | |
| | 108 | 6,241,739 | 06-05-2001 | Waldron | |
| | 109 | 6,264,666 | 07-24-2001 | Coleman et al. | |
| | 110 | 6,277,128 | 08-21-2001 | Muldner | |
| | 111 | 6,283,978 | 09-04-2001 | Cheski et al. | |
| | 112 | 6,299,620 | 10-09-2001 | Shadduck | |
| | 113 | 6,306,119 | 10-23-2001 | Weber et al. | |
| | 114 | 6,306,147 | 10-23-2001 | Bernabei et al. | |
| | 115 | 6,322,568 | 11-27-2001 | Bernabei et al. | |
| | 116 | 6,368,333 | 04-09-2002 | Bernabei et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 5 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 117 | 6,387,103 | 05-14-2002 | Shadduck | |
| | 118 | 6,409,736 | 06-25-2002 | Bernabei | |
| | 119 | 6,410,599 | 06-25-2002 | Johnson | |
| | 120 | 6,414,032 | 07-02-2002 | Johnson | |
| | 121 | 6,420,431 | 07-16-2002 | Johnson | |
| | 122 | 6,423,078 | 07-23-2002 | Bays et al. | |
| | 123 | 6,423,750 | 07-23-2002 | Johnson | |
| | 124 | RE 37,796 | 07-23-2002 | Henley | |
| | 125 | 6,432,113 | 08-13-2002 | Parkin et al. | |
| | 126 | 6,471,712 | 10-29-2002 | Burres | |
| | 127 | 6,477,410 | 11-05-2002 | Henley et al. | |
| | 128 | 6,482,212 | 11-19-2002 | Bernabei et al. | |
| | 129 | 6,488,646 | 12-03-2002 | Zygmont | |
| | 130 | 6,494,856 | 12-17-2002 | Zygmont | |
| | 131 | 6,500,183 | 12-31-2002 | Waldron | |
| | 132 | 6,503,256 | 01-07-2003 | Parkin et al. | |
| | 133 | 6,511,486 | 01-28-2003 | Mercier et al. | |
| | 134 | 6,514,262 | 02-04-2003 | Di Fiore, et al. | |
| | 135 | 6,527,783 | 03-04-2003 | Ignon | |
| | 136 | 6,535,761 | 03-18-2003 | Bernabei | |
| | 137 | 6,540,757 | 04-01-2003 | Hruska et al. | |
| | 138 | 6,562,013 | 05-13-2003 | Marasco, Jr. | |
| | 139 | 6,562,050 | 05-13-2003 | Owen | |
| | 140 | 6,564,093 | 05-13-2003 | Ostrow et al. | |
| | 141 | 6,565,535 | 05-20-2003 | Zaias et al. | |
| | 142 | 6,582,442 | 06-24-2003 | Simon et al. | |
| | 143 | 6,592,595 | 07-15-2003 | Mallett et al. | |
| | 144 | 6,629,983 | 10-07-2003 | Ignon | |
| | 145 | 6,641,591 | 11-04-2003 | Shadduck | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T$^1$** - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 6 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:  1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 146 | 6,645,184 | 11-11-2003 | Zelickson et al. | |
| | 147 | 6,652,888 | 11-25-2003 | Rhoades | |
| | 148 | 6,673,081 | 01-06-2004 | Tavger et al. | |
| | 149 | 6,673,082 | 01-06-2004 | Mallett et al. | |
| | 150 | 6,685,853 | 02-03-2004 | Angelopoulous et al. | |
| | 151 | 6,687,537 | 02-03-2004 | Bernabei | |
| | 152 | 6,695,853 | 02-24-2004 | Karasiuk | |
| | 153 | 6,735,470 | 05-11-2004 | Henley et al. | |
| | 154 | 6,743,215 | 06-01-2004 | Bernabei | |
| | 155 | 6,764,493 | 07-20-2004 | Weber et al. | |
| | 156 | 6,869,611 | 03-22-2005 | Kligman et al. | |
| | 157 | 6,905,487 | 06-14-2005 | Zimmerman | |
| | 158 | 6,911,031 | 06-28-2005 | Muldner | |
| | 159 | 6,924,649 | 08-02-2005 | Knoedgen | |
| | 160 | 6,926,681 | 08-09-2005 | Ramey, et al. | |
| | 161 | 6,942,649 | 09-13-2005 | Ignon et al. | |
| | 162 | 7,001,355 | 02-21-2006 | Nunomura et al. | |
| | 163 | 7,004,933 | 02-28-2006 | McCaniel | |
| | 164 | 7,044,938 | 05-16-2006 | La Bianco et al. | |
| | 165 | 7,052,503 | 05-30-2006 | Bernabei | |
| | 166 | 7,069,073 | 06-27-2006 | Henley et al. | |
| | 167 | 7,070,488 | 07-04-2006 | Suissa et al. | |
| | 168 | 7083,580 | 08-01-2006 | Bernabei | |
| | 169 | 7,087,063 | 08-08-2006 | Carson et al. | |
| | 170 | 7,094,252 | 08-22-2006 | Koop | |
| | 171 | 7,115,275 | 10-03-2006 | Clarot et al. | |
| | 172 | 7,135,011 | 11-14-2006 | Powers et al. | |
| | 173 | 7,153,311 | 12-26-2006 | Chung | |
| | 174 | 7,197,359 | 03-27-2007 | Tokudome et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T$^1$ - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 7 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example:  1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 175 | 7,198,623 | 04-03-2007 | Fischer et al. | |
| | 176 | 7,241,208 | 07-10-2007 | Suissa et al. | |
| | 177 | 7,276,051 | 10-02-2007 | Henley et al. | |
| | 178 | 7,314,326 | 01-01-2008 | Rosenberg | |
| | 179 | 7,316,657 | 01-08-2008 | Kleinhenz et al. | |
| | 180 | 7,318,828 | 01-15-2008 | Revivo | |
| | 181 | 7,320,691 | 01-22-2008 | Pilcher et al. | |
| | 182 | 7,320,801 | 01-22-2008 | Kelly | |
| | 183 | 7,354,423 | 04-08-2008 | Zelickson et al. | |
| | 184 | 7,364,565 | 04-29-2008 | Freeman | |
| | 185 | 7,384,405 | 06-10-2008 | Rhoades | |
| | 186 | 7,427,273 | 09-23-2008 | Mitsui | |
| | 187 | 7,458,944 | 12-02-2008 | Liste et al. | |
| | 188 | 7,476,205 | 01-13-2009 | Erdmann | |
| | 189 | 7,477,938 | 01-13-2009 | Sun et al. | |
| | 190 | 7,482,314 | 01-27-2009 | Grimes et al. | |
| | 191 | 7,489,989 | 02-10-2009 | Sukhanov et al. | |
| | 192 | 7,507,228 | 03-24-2009 | Sun et al. | |
| | 193 | 7,582,067 | 09-01-2009 | Van Acker | |
| | 194 | 7,597,900 | 10-06-2009 | Zimmer et al. | |
| | 195 | 7,597,901 | 10-06-2009 | Clarot et al. | |
| | 196 | 7,658,742 | 02-09-2010 | Karasiuk | |
| | 197 | 7,678,120 | 03-16-2010 | Shadduck | |
| | 198 | 7,744,582 | 06-29-2010 | Sadowski et al. | |
| | 199 | 7,789,886 | 09-07-2010 | Shadduck | |
| | 200 | 7,837,695 | 11-23-2010 | Hart et al. | |
| | 201 | 7,901,373 | 03-08-2011 | Tavger | |
| | 202 | 7,951,156 | 05-31-2011 | Karasiuk | |
| | 203 | 8,025,669 | 09-27-2011 | David et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T¹** - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 8 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example:  1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 204 | 8,048,089 | 11-01-2011 | Ignon et al. | |
| | 205 | RE42960 | 11-22-2011 | Waldron | |
| | 206 | 8,066,716 | 11-29-2011 | Shadduck | |
| | 207 | 8,088,085 | 01-03-2012 | Thiebaut et al. | |
| | 208 | 8,128,638 | 03-06-2012 | Karasiuk et al. | |
| | 209 | 8,221,437 | 07-17-2012 | Waldron et al. | |
| | 210 | 8,236,008 | 08-07-2012 | Boone, III et al. | |
| | 211 | 8,277,287 | 10-02-2012 | Hart | |
| | 212 | 8,337,513 | 12-25-2012 | Shadduck | |
| | 213 | 8,343,116 | 01-01-2013 | Ignon et al. | |
| | 214 | 8,814,836 | 08-26-2014 | Ignon et al. | |
| | 215 | 2001/0023351 | 09-20-2001 | Eilers | |
| | 216 | 2001/0049511 | 12-06-2001 | Coleman et al. | |
| | 217 | 2002/0016601 | 02-07-2002 | Shadduck | |
| | 218 | 2002/0041891 | 04-11-2002 | Cheski | |
| | 219 | 2002/0058952 | 05-16-2002 | Weber et al. | |
| | 220 | 2002/0107527 | 08-08-2002 | Burres | |
| | 221 | 2002/0133110 | 09-19-2002 | Citow | |
| | 222 | 2002/0151826 | 10-17-2002 | Ramey et al | |
| | 223 | 2002/0188261 | 12-12-2002 | Hruska | |
| | 224 | 2003/0012415 | 01-16-2003 | Cossel | |
| | 225 | 2003/0060834 | 03-27-2003 | Muldner | |
| | 226 | 2003/0093040 | 05-15-2003 | Mikszta et al. | |
| | 227 | 2003/0093089 | 05-15-2003 | Greenberg | |
| | 228 | 2003/0097139 | 05-22-2003 | Karasiuk | |
| | 229 | 2003/0187462 | 10-14-2003 | Chang | |
| | 230 | 2003/0208159 | 11-06-2003 | Ignon, et al. | |
| | 231 | 2003/0212127 | 11-13-2003 | Glassman et al. | |
| | 232 | 2003/0212415 | 11-13-2003 | Karasiuk | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T$^1$** - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | |
|---|---|---|---|
| | Application No. | 14/698,673 | |
| | Filing Date | April 28, 2015 | |
| | First Named Inventor | Ignon et al. | |
| | Art Unit | Unknown | |
| (Multiple sheets used when necessary) | Examiner | Unknown | |
| SHEET 9 OF 13 | Attorney Docket No. | EDGE.005C2 | |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 233 | 2004/0010222 | 01-15-2004 | Nunomura et al. | |
| | 234 | 2004/0010269 | 01-15-2004 | Grimes et al. | |
| | 235 | 2004/0087972 | 05-06-2004 | Mulholland, et al. | |
| | 236 | 2004/0092895 | 05-13-2004 | Harmon | |
| | 237 | 2004/0097967 | 05-20-2004 | Ignon | |
| | 238 | 2004/0122447 | 06-24-2004 | Harmon et al. | |
| | 239 | 2004/0143274 | 07-22-2004 | Shadduck | |
| | 240 | 2004/0166172 | 08-26-2004 | Rosati et al. | |
| | 241 | 2004/0219179 | 11-04-2004 | McDaniel | |
| | 242 | 2004/0236291 | 11-25-2004 | Zelickson et al. | |
| | 243 | 2004/0243149 | 12-02-2004 | Lee, John B. JR. | |
| | 244 | 2004/0267285 | 12-30-2004 | Chang | |
| | 245 | 2005/0037034 | 02-17-2005 | Rhoades | |
| | 246 | 2005/0038448 | 02-17-2005 | Chung | |
| | 247 | 2005/0059940 | 03-17-2005 | Weber et al. | |
| | 248 | 2005/0084509 | 04-21-2005 | Bernstein | |
| | 249 | 2005/0148958 | 07-07-2005 | Rucinski | |
| | 250 | 2005/0203111 | 09-15-2005 | David | |
| | 251 | 2005/0209611 | 09-22-2005 | Greenberg | |
| | 252 | 2005/0283176 | 12-22-2005 | Law | |
| | 253 | 2006/0002960 | 01-05-2006 | Zoeteweij et al. | |
| | 254 | 2006/0191562 | 08-31-2006 | Numomura | |
| | 255 | 2006/0200099 | 09-07-2006 | La Bianco et al. | |
| | 256 | 2006/0200172 | 09-07-2006 | Shadduck | |
| | 257 | 2006/0200173 | 09-07-2006 | Shadduck | |
| | 258 | 2006/0212029 | 09-21-2006 | Arcusa Villacampa et al. | |
| | 259 | 2006/0253125 | 11-09-2006 | Ignon | |
| | 260 | 2006/0264893 | 11-23-2006 | Sage, Jr. et al. | |
| | 261 | 2007/0005078 | 01-04-2007 | Hart et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Multiple sheets used when necessary)*

SHEET 10 OF 13

| | |
|---|---|
| Application No. | 14/698,673 |
| Filing Date | April 28, 2015 |
| First Named Inventor | Ignon et al. |
| Art Unit | Unknown |
| Examiner | Unknown |
| Attorney Docket No. | EDGE.005C2 |

## U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 262 | 2007/0043382 | 02-22-2007 | Cheney | |
| | 263 | 2007/0065515 | 03-22-2007 | Key | |
| | 264 | 2007/0123808 | 03-31-2007 | Rhoades | |
| | 265 | 2007/0088371 | 04-19-2007 | Karasiuk | |
| | 266 | 2007/0154502 | 07-05-2007 | Hattendorf et al. | |
| | 267 | 2007/0156124 | 07-05-2007 | Ignon et al. | |
| | 268 | 2007/0178121 | 08-02-2007 | First et al. | |
| | 269 | 2007/0198031 | 08-23-2007 | Kellogg | |
| | 270 | 2007/0208353 | 09-06-2007 | Shadduck | |
| | 271 | 2007/0239173 | 10-11-2007 | Khalaj | |
| | 272 | 2008/0027328 | 01-31-2008 | Klopotek et al. | |
| | 273 | 2008/0091179 | 04-17-2008 | Durkin et al. | |
| | 274 | 2008/0119781 | 05-22-2008 | King | |
| | 275 | 2008/0132914 | 06-05-2008 | Bossard et al. | |
| | 276 | 2008/0139974 | 06-12-2008 | Da Silva | |
| | 277 | 2008/0193493 | 08-14-2008 | Rhoades | |
| | 278 | 2008/0200861 | 08-21-2008 | Shalev et al. | |
| | 279 | 2008/0214987 | 09-04-2008 | Xu | |
| | 280 | 2008/0215068 | 09-04-2008 | Hart et al. | |
| | 281 | 2008/0243039 | 10-02-2008 | Rhoades | |
| | 282 | 2008/0287864 | 11-20-2008 | Rosenberg | |
| | 283 | 2008/0300529 | 12-04-2008 | Reinstein | |
| | 284 | 2008/0300552 | 12-04-2008 | Cichocki et al. | |
| | 285 | 2009/0048557 | 02-19-2009 | Yeshurun et al. | |
| | 286 | 2009/0053390 | 02-26-2009 | Sakou et al. | |
| | 287 | 2009/0099091 | 04-16-2009 | Hantash | |
| | 288 | 2009/0099093 | 04-16-2009 | Hantash | |
| | 289 | 2009/0124985 | 05-14-2009 | Hasenoehrl et al. | |
| | 290 | 2009/0138026 | 05-28-2009 | Wu | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 11 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:  1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 291 | 2009/0177171 | 07-09-2009 | Ignon et al. | |
| | 292 | 2009/0192442 | 07-30-2009 | Ignon et al. | |
| | 293 | 2009/0222023 | 09-03-2009 | Boone, III et al. | |
| | 294 | 2010/0045427 | 02-25-2010 | Boone, III et al. | |
| | 295 | 2010/0049177 | 02-25-2010 | Boone, III et al. | |
| | 296 | 2010/0049210 | 02-25-2010 | Boone, III et al. | |
| | 297 | 2011/0054490 | 03-03-2011 | Hart | |
| | 298 | 2011/0066162 | 03-17-2011 | Cohen | |
| | 299 | 2011/0082415 | 04-07-2011 | Ignon et al. | |
| | 300 | 2012/0022435 | 01-26-2012 | Ignon et al. | |
| | 301 | 2012/0136374 | 03-31-2012 | Karasiuk | |
| | 302 | 2013/0018317 | 01-17-2013 | Bobroff et al. | |
| | 303 | 2013/0066336 | 03-14-2013 | Boone, III et al. | |
| | 304 | 2013/0096577 | 04-18-2013 | Shadduck | |
| | 305 | 2013/0102978 | 04-25-2013 | Ignon et al. | |
| | 306 | 2013/0144280 | 06-06-2013 | Eckhouse et al. | |
| | 307 | 2013/0158547 | 06-20-2013 | David | |
| | 308 | 2014/0343481 | 11-20-2014 | Ignon | |
| | 309 | 2014/0343574 | 11-20-2014 | Ignon et al. | |
| | 310 | 2015/0032047 | 01-29-2015 | Ignon et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example:   JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 311 | DD 234 608 | 04-09-1986 | Rath | | |
| | 312 | DE 34 21 390 A1 | 12-12-1985 | Schubert | | |
| | 313 | DE 10 2004 015815 A1 | 11-03-2005 | Bundersrepublik Deutschland | | |
| | 314 | EP 0 258 901 | 09-03-1987 | Tonokura Ika Kogyo Co. LTD | | |
| | 315 | EP 0 564 392 | 03-03-1993 | Fructuoso Martinez | | |
| | 316 | IT 553 076 | 12-01-1956 | Facconi | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 12 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example:  JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 317 | IT 118 49 22 | 03-22-1985 | Porqueddu | | |
| | 318 | JP1993-088552 | 12-03-1993 | Sumitomo Bakelite Co., Ltd. | | X |
| | 319 | JP09-294747 | 11-18-1997 | Fukutaro, Yamazaki | | X Abstract |
| | 320 | JP2003-339713 | 12-02-2003 | Twinbird Corp | | |
| | 321 | JP2006-503627 (English abstract of WO 2004/037098) | 02-02-2006 | Bionoface | | X Abstract |
| | 322 | JP2006-204767 | 10-08-2006 | Matsushita Electric Works | | X Abstract |
| | 323 | KR 20-0280320 (with English machine translation obtained from Korean Intellectual Property Office website, http://eng.kipris.or.kr/enghome/main.jsp) | 07-02-2002 | Lee | | X |
| | 324 | WO 2000/015300 | 03-23-2000 | Ultra Cure Ltd | | |
| | 325 | WO 2001/93931 | 12-13-2001 | Becton, Dickinson and Company | | |
| | 326 | WO 2003/073917 | 09-12-2003 | Edge Systems | | |
| | 327 | WO 2004/037098 | 05-06-2004 | Bionoface | | |
| | 328 | WO 2005/070313 | 08-04-2005 | Crystal Clear International Limited | | |
| | 329 | WO 2006/018731 | 02-23-2006 | Mc Anton Holding SA | | |
| | 330 | WO 2007/114904 | 10-11-2007 | Amcol International Corporation | | |
| | 331 | WO 2012/145667 | 10-26-2012 | Sun-Less, Inc. | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | 332 | Cox III et al., *Decreased Splatter in Dermabrasion*, Arch Facial Plastic Surgery, Jan-Mar 2000, Vol. 2, pp. 23-26. | |
| | 333 | Ditre et al., *Effect of α-hydroxy acids on photoaged skin: A pilot clinical, histologic, and ultrastructural study*, Journal of American Academy of Dermatology, February 1996, Vol. 34, No. 2, Part 1, pp. 187-195. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| | | | |

**\*Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 13 OF 13 | Attorney Docket No. | EDGE.005C2 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
| | 334 | Harris et al., *Combining Manual Dermasanding with Low Stregnth Trichloroacetic Acid to Improve Antinically Injured Skin*, The Journal of Dermatologic Surgery and Oncology, July 1994, Vol. 20, No. 7, pp. 436-442. | |

20778469

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| **\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. | | | |

**T**[1] - Place a check mark in this area when an English language Translation is attached.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14698673 |
| **Filing Date:** | 28-Apr-2015 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Filer:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 70 | 70 |
| Utility Search Fee | 2111 | 1 | 300 | 300 |
| Utility Examination Fee | 2311 | 1 | 360 | 360 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| Late Filing Fee for Oath or Declaration | 2051 | 1 | 70 | 70 |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **800** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22696586 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Gustavo Lopez |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 22-JUN-2015 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 13:40:34 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $ 800 |
| RAM confirmation Number | 10628 |
| Deposit Account | 111410 |
| Authorized User | KNOBBE MARTENS OLSON AND BEAR |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

**File Listing:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | EDGE-005C2_Response_MP_IDS.pdf | 717821<br><br>a606cbd674d51d492f39c5c0896f1fae97bceb72 | yes | 17 |

| Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|
| **Document Description** | | **Start** | **End** |
| Applicant Response to Pre-Exam Formalities Notice | | 1 | 1 |
| Transmittal Letter | | 2 | 4 |
| Information Disclosure Statement (IDS) Form (SB08) | | 5 | 17 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 37133<br><br>3bdbb03a6f0d99df6ec0b9bbe2b85df4e73fc656 | no | 2 |

**Warnings:**

**Information:**

| | | | Total Files Size (in bytes): | 754954 |
|---|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

## PATENT APPLICATION FEE DETERMINATION RECORD
### Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 14/698,673 |

### APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 70 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 300 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 360 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 | minus 20 = * | x 40 = | 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 | minus 3 = * | x 210 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 730 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**INFORMAL NOTICE**


*OC000000075952523*

Date Mailed: 06/26/2015

## INFORMATIONAL NOTICE TO APPLICANT

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

The item(s) indicated below are also required and should be submitted with any reply to this notice to avoid further processing delays.

• A properly executed inventor's oath or declaration has not been received for the following inventor(s):
Roger Ignon
Scott Mallett
Abraham Solano
William Cohen

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/nbekele/



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | | 800 | EDGE.005C2 | 20 | 2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**UPDATED FILING RECEIPT**

IIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIIII
OC000000075952522

Date Mailed: 06/26/2015

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

**Applicant(s)**

EDGE SYSTEMS LLC, Signal Hill, CA;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

This application is a CON of 13/267,554 10/06/2011
which is a CON of 11/392,348 03/29/2006 PAT 8048089
which claims benefit of 60/755,310 12/30/2005
and claims benefit of 60/764,668 02/02/2006

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**If Required, Foreign Filing License Granted:** 05/07/2015
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/698,673**
**Projected Publication Date:** 10/01/2015
**Non-Publication Request:** No

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

      CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        08/05/2015
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3734 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/05/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

| **Office Action Summary** | **Application No.** 14/698,673 | **Applicant(s)** IGNON ET AL. |
|---|---|---|
| | **Examiner** CHRISTIAN KNAUSS | **Art Unit** 3734 | **AIA (First Inventor to File) Status** No |

<table>
<tr><td colspan="2" align="center">-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --</td></tr>
</table>

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>5/1/15</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on \_\_\_\_\_.

2a) ☐ This action is **FINAL**.     2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on \_\_\_\_\_; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) <u>2-21</u> is/are pending in the application.
    5a) Of the above claim(s) \_\_\_\_\_ is/are withdrawn from consideration.

6) ☐ Claim(s) \_\_\_\_\_ is/are allowed.

7) ☒ Claim(s) <u>2-21</u> is/are rejected.

8) ☐ Claim(s) \_\_\_\_\_ is/are objected to.

9) ☐ Claim(s) \_\_\_\_\_ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on <u>4/28/15</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All b) ☐ Some** c) ☐ None of the:
    1. ☐ Certified copies of the priority documents have been received.
    2. ☐ Certified copies of the priority documents have been received in Application No. \_\_\_\_\_.
    3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date \_\_\_\_\_.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date \_\_\_\_\_.

4) ☐ Other: \_\_\_\_\_.

Application/Control Number: 14/698,673                                    Page 2
Art Unit: 3734

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application is being examined under the pre-AIA first to invent

provisions.

### *Specification*

2.      The lengthy specification has not been checked to the extent necessary to

determine the presence of all possible minor errors.  Applicant's cooperation is

requested in correcting any errors of which applicant may become aware in the

specification.

### *Claim Objections*

3.      Claim 11 is objected to because of the following informalities:  in line 2, "the

handpiece" should read --the handpiece assembly--.  Appropriate correction is required.

4.      Claim 20 is objected to because of the following informalities:  in line 2, "the

handpiece" should read --the handpiece assembly--.  Appropriate correction is required.


### *Claim Rejections - 35 USC § 102*

5.      The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C.

102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country
> or in public use or on sale in this country, more than one year prior to the date of application
> for patent in the United States.

6.      Claims 2, 3, 7-9, 11, 12, 14-16, and 20 rejected under pre-AIA 35 U.S.C. 102(b)

as being anticipated by Coleman et al. (US 2001/0049511 A1) ("Coleman").

Regarding claim 2, Coleman discloses (Figures 4-6) a system for performing a skin treatment procedure, the system comprising: a console (Figure 6) including a manifold (see Figure 6 below), the manifold being in fluid communication with at least one fluid container (60C), the at least one fluid container capable of containing a treatment material for a skin treatment procedure; a handpiece assembly (Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin surface of a subject; a supply conduit (51A) placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; wherein the manifold is capable of controlling a flow of treatment material from the at least one fluid container through the supply conduit; and a waste conduit (51B) in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source (64A).

Application/Control Number: 14/698,673                                  Page 4
Art Unit: 3734



FIG. 6

Regarding claim 3, Coleman discloses (Figures 5A and 5B) that the system further comprises a user input device (59A, 59B), wherein the user input device is capable of receiving instructions regarding the treatment material to be passed through the supply conduit to the handpiece assembly.

Regarding claim 7, Coleman discloses (Figure 6) that the at least one fluid container comprises at least two fluid containers (60B and 60C).

Regarding claim 8, Coleman discloses (Figure 6) that the at least one fluid container comprises at least four containers (60A, 60B, 60C, 61A).

Regarding claim 9, Coleman discloses that treatment materials from the at least two fluid containers are delivered to the supply conduit simultaneously (paragraph 0060).

Application/Control Number: 14/698,673                                    Page 5
Art Unit: 3734

Regarding claim 11, Coleman discloses that the tip of the handpiece assembly is capable of exfoliating skin tissue as the handpiece is moved relative to a skin surface of a subject (paragraphs 0009-0010).

Regarding claim 12, Coleman discloses (Figures 5A and 5B) that each of the supply conduit (51A) and the waste conduit (51B) connects to a corresponding connector along a proximal end of the handpiece assembly.

Regarding claim 14, Coleman discloses (Figures 4-6) a system for performing a skin treatment procedure, the system comprising: a manifold (see Figure 6 above) in fluid communication with at least one fluid container (60C), the at least one fluid container capable of containing a treatment material; a handpiece assembly (Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin surface of a subject; and a supply conduit (51A) placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is capable of securing to the handpiece assembly; wherein the manifold is capable of controlling a flow of treatment material from the at least one fluid container through the supply conduit.

Regarding claim 15, Coleman discloses (Figure 6) a waste conduit (51B) in fluid communication with the handpiece assembly capable of removing waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively couple to a vacuum source (65A).

Regarding claim 16, Coleman discloses (Figures 5A and 5B) a user input device (59A and 59B) for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

Application/Control Number: 14/698,673                                  Page 6
Art Unit: 3734

Regarding claim 20, Coleman discloses that the tip of the handpiece is capable of exfoliating skin tissue as the handpiece is moved relative to a skin surface of a subject (paragraphs 0009-0010).


7.      Claims 2, 4, 6, 10, 14, 17, and 19 are rejected under pre-AIA 35 U.S.C. 102(b) as being anticipated by Greenberg (US 2003/0093089 A1).

Regarding claim 2, Greenberg discloses (Figures 1 and 2) a system for performing a skin treatment procedure, the system comprising: a console (10) including a manifold (44), the manifold being in fluid communication with at least one fluid container (18), the at least one fluid container capable of containing a treatment material for a skin treatment procedure; a handpiece assembly (16) comprising a tip, the tip capable of contacting a skin surface of a subject; a supply conduit (20) placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is capable of coupling to the handpiece assembly; wherein the manifold is capable of controlling a flow of treatment material from the at least one fluid container through the supply conduit; and a waste conduit (20) in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source (12).

Regarding claim 4, Greenberg discloses (Figure 1) that the console comprises a display (front surface of console containing 52, 66), wherein the display comprises a

Application/Control Number: 14/698,673                                        Page 7
Art Unit: 3734

user input device (30, 32, 42, 48, 50) capable of facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

Regarding claim 6, Greenberg discloses (Figure 2) that the at least one fluid container (18) is releasably coupled to the manifold (42).

Regarding claim 10, the console disclosed by Coleman is capable of being moved.

Regarding claim 14, Greenberg discloses (Figures 1 and 2) a system for performing a skin treatment procedure, the system comprising: a manifold (42) in fluid communication with at least one fluid container (14), the at least one fluid container capable of containing a treatment material; a handpiece assembly (16) comprising a tip, the tip capable of contacting a skin surface of a subject; and a supply conduit (20) placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is capable of securing to the handpiece assembly; wherein the manifold is capable of controlling a flow of treatment material from the at least one fluid container through the supply conduit.

Regarding claim 17, Greenberg discloses (Figure 1) that the console comprises a display (front surface of console containing 52, 66), wherein the display comprises a user input device (30, 32, 42, 48, 50) capable of facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

Regarding claim 19, Greenberg discloses (Figure 2) that the at least one fluid container (18) is releasably coupled to the manifold (42).

Application/Control Number: 14/698,673                                    Page 8

Art Unit: 3734

### *Claim Rejections - 35 USC § 103*

8.      The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which
> said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.

9.      Claims 5 and 18 are rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Greenberg (US 2003/0093089 A1) in view of Duchon et al. (US

2003/0018252 A1) ("Duchon").

        Regarding claims 5 and 18, Greenberg discloses the invention substantially as

claimed.  However, Greenberg fails to disclose that the user input device comprises a

touch screen.

        Duchon teaches that it was well-known in the art at the time the invention was

made for a console to include a touch screen user input (432).  Duchon teaches that a

touch screen is an equivalent structure to a selector dial, keypad, button, etc. that can

be used by a user for console input.

        It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the user input device disclosed by Greenberg to be a

touch screen user input because Duchon teaches that a touch screen is an equivalent

structure to a input knob, button, keypad, dial, etc. that is known in the art for entering

input into a console system.

10.     Claims 13 and 21 rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Coleman et al. (US 2001/0049511 A1) ("Coleman") in view of Nelson

et al. (US 3,865,352) ("Nelson").

Regarding claims 13 and 21, Coleman discloses the invention substantially as

claimed.  However, Coleman fails to disclose that the manifold of the console is

configured to be placed in fluid communication with a container comprising an

antimicrobial fluid, or other disinfecting agent for periodic flushing of the manifold.

Nelson teaches a device for mixing and dispensing materials, comprising: a

manifold (25), the manifold in fluid communication with at least one fluid container (15,

16, 38), the at least one fluid container being configured to contain a fluid material; a

handpiece assembly (10); the manifold and the handpiece assembly in fluid

communication.  Nelson further teaches that the manifold of the console is in fluid

communication with a container (38) comprising a solvent for periodic flushing and

cleaning of the manifold.

It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the manifold to be placed in fluid communication with a

container comprising a solvent for periodic flushing of the manifold, as taught by Nelson.

This modification would clean the manifold and supply conduit of the materials from the

at least one fluid container (Column 2, lines 18-22).

Application/Control Number: 14/698,673                                        Page 10
Art Unit: 3734

### *Conclusion*

11.      The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure: Muldner (US 6,277,128 B1) (Figures 7 and 10), Rosso (US

6,432,114 B1) (Figures 1-3), Karasiuk (US 6,695,853 B2) (Figure 5), Chang (US

7,232,444 B2) (Figures 1-5), Goble et al. (US 2006/0116674 A1) (Figures 1-3).

12.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Christian Knauss whose telephone number is (571)272-

8641.  The examiner can normally be reached on M-F 8 am–5 pm.

         If attempts to reach the examiner by telephone are unsuccessful, ***please contact***

**the examiner's supervisor, Darwin Erezo, *at* (571) 272-4695**.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

         ***If there are any inquiries that are not being addressed by first contacting***

***the Examiner or the Supervisor, you may send an email inquiry to***

TC3700_Workgroup_D_Inquiries@uspto.gov.

Application/Control Number: 14/698,673                                Page 11
Art Unit: 3734

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/C. K./
Examiner, Art Unit 3734

/KATHERINE RODJOM/
Primary Examiner, Art Unit 3734

| *Notice of References Cited* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14/698,673 | IGNON ET AL. |
| | Examiner | Art Unit | |
| | CHRISTIAN KNAUSS | 3734 | Page 1 of 1 |

## U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-3,865,352 | 02-1975 | Nelson et al. | 366/336 |
| * | B | US-2003/0093089 | 05-2003 | Greenberg, Ronald Allan | 606/131 |
| * | C | US-2003/0018252 | 01-2003 | Duchon et al. | 600/432 |
| * | D | US-2001/0049511 | 12-2001 | COLEMAN et al. | 604/290 |
| * | E | US-6,277,128 | 08-2001 | Muldner, J. Scott | 606/133 |
| * | F | US-6,432,114 | 08-2002 | Rosso, Luciano | 606/131 |
| * | G | US-6,695,853 | 02-2004 | Karasiuk, Kenneth B. | 606/131 |
| * | H | US-2006/0116674 | 06-2006 | Goble et al. | 606/041 |
| * | I | US-7,232,444 | 06-2007 | Chang, Mei Yin | 606/131 |
| * | J | US-2006/0116674 | 06-2006 | Goble et al. | 606/041 |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

## FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

## NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)          **Notice of References Cited**          Part of Paper No. 20150722

Receipt date: 06/22/2015                                              14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 1 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,608,032 | 08-26-1952 | Garver | |
| | 2 | 2,701,559 | 02-05-1955 | Cooper | |
| | 3 | 2,712,823 | 07-12-1955 | Kurtin | |
| | 4 | 2,867,214 | 01-06-1959 | Wilson | |
| | 5 | 2,881,763 | 04-14-1959 | Robbins | |
| | 6 | 2,921,585 | 01-19-1960 | Schumann | |
| | 7 | 3,085,573 | 04-16-1963 | Meyer et al. | |
| | 8 | 3,214,869 | 11-02-1965 | Stryker | |
| | 9 | 3,476,112 | 11-04-1969 | Elstein | |
| | 10 | 3,574,239 | 04-13-1971 | Sollerud | |
| | 11 | 3,715,838 | 02-13-1973 | Young et al. | |
| | 12 | 3,948,265 | 04-06-1976 | Al Ami | |
| | 13 | 3,964,212 | 06-22-1976 | Karden | |
| | 14 | 3,977,084 | 08-31-1976 | Sloan | |
| | 15 | 4,121,388 | 10-24-1978 | Wilson | |
| | 16 | 4,155,721 | 05-22-1979 | Fletcher | |
| | 17 | 4,182,329 | 01-08-1980 | Smith et al. | |
| | 18 | 4,203,431 | 05-20-1980 | Abura et al. | |
| | 19 | 4,216,233 | 08-05-1980 | Stein | |
| | 20 | 4,299,219 | 11-10-1981 | Norris, Jr. | |
| | 21 | 4,378,804 | 04-05-1983 | Cortese | |
| | 22 | 4,560,373 | 12-24-1985 | Sugino et al. | |
| | 23 | 4,646,480 | 03-03-1987 | Williams | |
| | 24 | 4,646,482 | 03-03-1987 | Chitjian | |
| | 25 | 4,655,743 | 04-07-1987 | Hyde | |
| | 26 | 4,676,749 | 06-30-1987 | Mabille | |
| | 27 | 4,706,676 | 11-17-1987 | Peck | |
| | 28 | 4,754,756 | 07-05-1988 | Shelanski | |
| | 29 | 4,757,814 | 07-19-1988 | Wang et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Receipt date: 06/22/2015        14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | |
|---|---|
| Application No. | 14/698,673 |
| Filing Date | April 28, 2015 |
| First Named Inventor | Ignon et al. |
| Art Unit | Unknown |
| Examiner | Unknown |
| Attorney Docket No. | EDGE.005C2 |

*(Multiple sheets used when necessary)*

SHEET 2 OF 13

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 4,764,362 | 08-16-1988 | Barchas | |
| | 31 | 4,795,421 | 01-03-1989 | Blasius, Jr., et al. | |
| | 32 | 4,875,287 | 10-24-1989 | Creasy et al. | |
| | 33 | 4,886,078 | 12-12-1989 | Shiffman | |
| | 34 | 4,887,994 | 12-12-1989 | Shiffmann | |
| | 35 | 4,900,316 | 02-13-1990 | Yamamoto | |
| | 36 | 4,917,086 | 04-17-1990 | Feltovich et al. | |
| | 37 | 4,925,450 | 05-15-1990 | Imonti et al. | |
| | 38 | 4,957,747 | 09-18-1990 | Stiefel | |
| | 39 | 5,006,004 | 04-09-1991 | Dirksing et al. | |
| | 40 | 5,006,339 | 04-09-1991 | Bargery et al. | |
| | 41 | 5,012,797 | 05-07-1991 | Liang et al. | |
| | 42 | 5,035,089 | 07-30-1991 | Tillman et al. | |
| | 43 | 5,037,431 | 08-06-1991 | Summers et al. | |
| | 44 | 5,037,432 | 08-06-1991 | Molinari | |
| | 45 | 5,100,412 | 03-31-1992 | Rosso | |
| | 46 | 5,100,424 | 03-31-1992 | Jang | |
| | 47 | 5,119,839 | 06-09-1992 | Rudolph | |
| | 48 | 5,122,153 | 06-16-1992 | Harrel | |
| | 49 | 5,207,234 | 05-04-1993 | Rosso | |
| | 50 | 5,222,956 | 06-29-1993 | Waldron | |
| | 51 | 5,242,433 | 09-07-1993 | Smith et al. | |
| | 52 | 5,254,109 | 10-19-1993 | Smith et al. | |
| | 53 | 5,368,581 | 11-29-1994 | Smith et al. | |
| | 54 | 5,391,151 | 02-21-1995 | Wilmot | |
| | 55 | 5,417,674 | 05-23-1995 | Smith et al. | |
| | 56 | 5,419,772 | 05-30-1995 | Teitz et al. | |
| | 57 | 5,460,620 | 10-24-1995 | Smith et al. | |
| | 58 | 5,470,323 | 11-28-1995 | Smith et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Receipt date: 06/22/2015                                          14698673 - GAU: 3734

PTO/SB/08 Equivalent

| | | |
|---|---|---|
| | Application No. | 14/698,673 |
| **INFORMATION DISCLOSURE** | Filing Date | April 28, 2015 |
| **STATEMENT BY APPLICANT** | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 3 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 59 | 5,484,427 | 01-16-1996 | Gibbons | |
| | 60 | 5,562,642 | 10-08-1996 | Smith et al. | |
| | 61 | 5,611,687 | 03-18-1997 | Wagner | |
| | 62 | 5,612,797 | 03-18-1997 | Liang et al. | |
| | 63 | 5,674,235 | 10-07-1997 | Parisi | |
| | 64 | 5,676,643 | 10-14-1997 | Cann et al. | |
| | 65 | 5,676,648 | 10-14-1997 | Henley | |
| | 66 | 5,683,971 | 11-04-1997 | Rose et al. | |
| | 67 | 5,707,383 | 01-13-1998 | Bays | |
| | 68 | 5,713,785 | 02-03-1998 | Nishio | |
| | 69 | 5,759,185 | 06-02-1998 | Grinberg | |
| | 70 | 5,779,519 | 07-14-1998 | Oliver | |
| | 71 | 5,800,446 | 09-01-1998 | Banuchi | |
| | 72 | 5,807,353 | 09-15-1998 | Schmitz | |
| | 73 | 5,810,842 | 09-22-1998 | Di Fiore at al. | |
| | 74 | 5,813,416 | 09-29-1998 | Rudolph | |
| | 75 | 5,817,050 | 10-06-1998 | Klein | |
| | 76 | 5,846,215 | 12-08-1998 | Zygmont | |
| | 77 | 5,848,998 | 12-15-1998 | Marasco, Jr. | |
| | 78 | 5,861,142 | 01-19-1999 | Schick | |
| | 79 | 5,873,881 | 02-23-1999 | McEwen et al. | |
| | 80 | 5,879,323 | 03-09-1999 | Henley | |
| | 81 | 5,882,201 | 03-16-1999 | Salem | |
| | 82 | 5,885,260 | 03-23-1999 | Mehl, Sr., et al. | |
| | 83 | 5,908,401 | 06-01-1999 | Henley | |
| | 84 | 5,919,152 | 07-06-1999 | Zygmont | |
| | 85 | 5,954,730 | 09-21-1999 | Bernabei | |
| | 86 | 5,971,999 | 10-26-1999 | Naldoni | |
| | 87 | 5,980,555 | 11-09-1999 | Barbut et al. | |

| | | | |
|---|---|---|---|
| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Receipt date: 06/22/2015                                                 14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 4 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 88 | 6,019,749 | 02-01-2000 | Fields et al. | |
| | 89 | 6,024,733 | 02-15-2000 | Eggers et al. | |
| | 90 | 6,027,402 | 02-22-2000 | Oliver | |
| | 91 | 6,039,745 | 03-21-2000 | Di Fiore et al. | |
| | 92 | 6,042,552 | 03-28-2000 | Cornier | |
| | 93 | 6,080,165 | 06-27-2000 | DeJacma | |
| | 94 | 6,080,166 | 06-27-2000 | McEwen et al. | |
| | 95 | 6,090,085 | 07-18-2000 | Mehl, Sr. Et al. | |
| | 96 | 6,120,512 | 09-19-2000 | Bernabei | |
| | 97 | 6,136,008 | 10-24-2000 | Becker et al. | |
| | 98 | 6,139,553 | 10-31-2000 | Dotan | |
| | 99 | 6,139,554 | 10-31-2000 | Karkar et al. | |
| | 100 | 6,142,155 | 11-07-2000 | Rudolph | |
| | 101 | 6,149,634 | 11-21-2000 | Bernabei | |
| | 102 | 6,159,226 | 12-12-2000 | Kim | |
| | 103 | 6,162,232 | 12-19-2000 | Shadduck | |
| | 104 | 6,183,451 | 02-06-2001 | Mehl, Sr., et al. | |
| | 105 | 6,183,483 | 02-06-2001 | Chang | |
| | 106 | 6,231,593 | 05-15-2001 | Meserol | |
| | 107 | 6,238,275 | 05-29-2001 | Metcalf et al. | |
| | 108 | 6,241,739 | 06-05-2001 | Waldron | |
| | 109 | 6,264,666 | 07-24-2001 | Coleman et al. | |
| | 110 | 6,277,128 | 08-21-2001 | Muldner | |
| | 111 | 6,283,978 | 09-04-2001 | Cheski et al. | |
| | 112 | 6,299,620 | 10-09-2001 | Shadduck | |
| | 113 | 6,306,119 | 10-23-2001 | Weber et al. | |
| | 114 | 6,306,147 | 10-23-2001 | Bernabei et al. | |
| | 115 | 6,322,568 | 11-27-2001 | Bernabei et al. | |
| | 116 | 6,368,333 | 04-09-2002 | Bernabei et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /C.K./

Case 2:20-cv-06082-GRB-ST   Document 69-3   Filed 06/21/22   Page 174 of 363 PageID #: 4667

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 5 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 117 | 6,387,103 | 05-14-2002 | Shadduck | |
| | 118 | 6,409,736 | 06-25-2002 | Bernabei | |
| | 119 | 6,410,599 | 06-25-2002 | Johnson | |
| | 120 | 6,414,032 | 07-02-2002 | Johnson | |
| | 121 | 6,420,431 | 07-16-2002 | Johnson | |
| | 122 | 6,423,078 | 07-23-2002 | Bays et al. | |
| | 123 | 6,423,750 | 07-23-2002 | Johnson | |
| | 124 | RE 37,796 | 07-23-2002 | Henley | |
| | 125 | 6,432,113 | 08-13-2002 | Parkin et al. | |
| | 126 | 6,471,712 | 10-29-2002 | Burres | |
| | 127 | 6,477,410 | 11-05-2002 | Henley et al. | |
| | 128 | 6,482,212 | 11-19-2002 | Bernabei et al. | |
| | 129 | 6,488,646 | 12-03-2002 | Zygmont | |
| | 130 | 6,494,856 | 12-17-2002 | Zygmont | |
| | 131 | 6,500,183 | 12-31-2002 | Waldron | |
| | 132 | 6,503,256 | 01-07-2003 | Parkin et al. | |
| | 133 | 6,511,486 | 01-28-2003 | Mercier et al. | |
| | 134 | 6,514,262 | 02-04-2003 | Di Fiore, et al. | |
| | 135 | 6,527,783 | 03-04-2003 | Ignon | |
| | 136 | 6,535,761 | 03-18-2003 | Bernabei | |
| | 137 | 6,540,757 | 04-01-2003 | Hruska et al. | |
| | 138 | 6,562,013 | 05-13-2003 | Marasco, Jr. | |
| | 139 | 6,562,050 | 05-13-2003 | Owen | |
| | 140 | 6,564,093 | 05-13-2003 | Ostrow et al. | |
| | 141 | 6,565,535 | 05-20-2003 | Zaias et al. | |
| | 142 | 6,582,442 | 06-24-2003 | Simon et al. | |
| | 143 | 6,592,595 | 07-15-2003 | Mallett et al. | |
| | 144 | 6,629,983 | 10-07-2003 | Ignon | |
| | 145 | 6,641,591 | 11-04-2003 | Shadduck | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Receipt date: 06/22/2015                                                    14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | | Application No. | 14/698,673 |
|---|---|---|---|---|---|
| | | | | Filing Date | April 28, 2015 |
| | | | | First Named Inventor | Ignon et al. |
| | | | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | | | Examiner | Unknown |
| SHEET 6 OF 13 | | | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 146 | 6,645,184 | 11-11-2003 | Zelickson et al. | |
| | 147 | 6,652,888 | 11-25-2003 | Rhoades | |
| | 148 | 6,673,081 | 01-06-2004 | Tavger et al. | |
| | 149 | 6,673,082 | 01-06-2004 | Mallett et al. | |
| | 150 | 6,685,853 | 02-03-2004 | Angelopoulous et al. | |
| | 151 | 6,687,537 | 02-03-2004 | Bernabei | |
| | 152 | 6,695,853 | 02-24-2004 | Karasiuk | |
| | 153 | 6,735,470 | 05-11-2004 | Henley et al. | |
| | 154 | 6,743,215 | 06-01-2004 | Bernabei | |
| | 155 | 6,764,493 | 07-20-2004 | Weber et al. | |
| | 156 | 6,869,611 | 03-22-2005 | Kligman et al. | |
| | 157 | 6,905,487 | 06-14-2005 | Zimmerman | |
| | 158 | 6,911,031 | 06-28-2005 | Muldner | |
| | 159 | 6,924,649 | 08-02-2005 | Knoedgen | |
| | 160 | 6,926,681 | 08-09-2005 | Ramey, et al. | |
| | 161 | 6,942,649 | 09-13-2005 | Ignon et al. | |
| | 162 | 7,001,355 | 02-21-2006 | Nunomura et al. | |
| | 163 | 7,004,933 | 02-28-2006 | McCaniel | |
| | 164 | 7,044,938 | 05-16-2006 | La Bianco et al. | |
| | 165 | 7,052,503 | 05-30-2006 | Bernabei | |
| | 166 | 7,069,073 | 06-27-2006 | Henley et al. | |
| | 167 | 7,070,488 | 07-04-2006 | Suissa et al. | |
| | 168 | 7083,580 | 08-01-2006 | Bernabei | |
| | 169 | 7,087,063 | 08-08-2006 | Carson et al. | |
| | 170 | 7,094,252 | 08-22-2006 | Koop | |
| | 171 | 7,115,275 | 10-03-2006 | Clarot et al. | |
| | 172 | 7,135,011 | 11-14-2006 | Powers et al. | |
| | 173 | 7,153,311 | 12-26-2006 | Chung | |
| | 174 | 7,197,359 | 03-27-2007 | Tokudome et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /C.K./

Case 2:20-cv-06082-GRB-ST   Document 69-3   Filed 06/21/22   Page 176 of 363 PageID #: 4669

<table>
<tr><td rowspan="2"><h1>INFORMATION DISCLOSURE STATEMENT BY APPLICANT</h1>

<em>(Multiple sheets used when necessary)</em>

SHEET 7 OF 13</td><td>Application No.</td><td>14/698,673</td></tr>
</table>

| | |
|---|---|
| Application No. | 14/698,673 |
| Filing Date | April 28, 2015 |
| First Named Inventor | Ignon et al. |
| Art Unit | Unknown |
| Examiner | Unknown |
| Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>Number - Kind Code (if known)<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 175 | 7,198,623 | 04-03-2007 | Fischer et al. | |
| | 176 | 7,241,208 | 07-10-2007 | Suissa et al. | |
| | 177 | 7,276,051 | 10-02-2007 | Henley et al. | |
| | 178 | 7,314,326 | 01-01-2008 | Rosenberg | |
| | 179 | 7,316,657 | 01-08-2008 | Kleinhenz et al. | |
| | 180 | 7,318,828 | 01-15-2008 | Revivo | |
| | 181 | 7,320,691 | 01-22-2008 | Pilcher et al. | |
| | 182 | 7,320,801 | 01-22-2008 | Kelly | |
| | 183 | 7,354,423 | 04-08-2008 | Zelickson et al. | |
| | 184 | 7,364,565 | 04-29-2008 | Freeman | |
| | 185 | 7,384,405 | 06-10-2008 | Rhoades | |
| | 186 | 7,427,273 | 09-23-2008 | Mitsui | |
| | 187 | 7,458,944 | 12-02-2008 | Liste et al. | |
| | 188 | 7,476,205 | 01-13-2009 | Erdmann | |
| | 189 | 7,477,938 | 01-13-2009 | Sun et al. | |
| | 190 | 7,482,314 | 01-27-2009 | Grimes et al. | |
| | 191 | 7,489,989 | 02-10-2009 | Sukhanov et al. | |
| | 192 | 7,507,228 | 03-24-2009 | Sun et al. | |
| | 193 | 7,582,067 | 09-01-2009 | Van Acker | |
| | 194 | 7,597,900 | 10-06-2009 | Zimmer et al. | |
| | 195 | 7,597,901 | 10-06-2009 | Clarot et al. | |
| | 196 | 7,658,742 | 02-09-2010 | Karasiuk | |
| | 197 | 7,678,120 | 03-16-2010 | Shadduck | |
| | 198 | 7,744,582 | 06-29-2010 | Sadowski et al. | |
| | 199 | 7,789,886 | 09-07-2010 | Shadduck | |
| | 200 | 7,837,695 | 11-23-2010 | Hart et al. | |
| | 201 | 7,901,373 | 03-08-2011 | Tavger | |
| | 202 | 7,951,156 | 05-31-2011 | Karasiuk | |
| | 203 | 8,025,669 | 09-27-2011 | David et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T¹ - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Receipt date: 06/22/2015

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 8 OF 13 | Attorney Docket No. | EDGE.005C2 |

## U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 204 | 8,048,089 | 11-01-2011 | Ignon et al. | |
| | 205 | RE42960 | 11-22-2011 | Waldron | |
| | 206 | 8,066,716 | 11-29-2011 | Shadduck | |
| | 207 | 8,088,085 | 01-03-2012 | Thiebaut et al. | |
| | 208 | 8,128,638 | 03-06-2012 | Karasiuk et al. | |
| | 209 | 8,221,437 | 07-17-2012 | Waldron et al. | |
| | 210 | 8,236,008 | 08-07-2012 | Boone, III et al. | |
| | 211 | 8,277,287 | 10-02-2012 | Hart | |
| | 212 | 8,337,513 | 12-25-2012 | Shadduck | |
| | 213 | 8,343,116 | 01-01-2013 | Ignon et al. | |
| | 214 | 8,814,836 | 08-26-2014 | Ignon et al. | |
| | 215 | 2001/0023351 | 09-20-2001 | Eilers | |
| | 216 | 2001/0049511 | 12-06-2001 | Coleman et al. | |
| | 217 | 2002/0016601 | 02-07-2002 | Shadduck | |
| | 218 | 2002/0041891 | 04-11-2002 | Cheski | |
| | 219 | 2002/0058952 | 05-16-2002 | Weber et al. | |
| | 220 | 2002/0107527 | 08-08-2002 | Burres | |
| | 221 | 2002/0133110 | 09-19-2002 | Citow | |
| | 222 | 2002/0151826 | 10-17-2002 | Ramey et al | |
| | 223 | 2002/0188261 | 12-12-2002 | Hruska | |
| | 224 | 2003/0012415 | 01-16-2003 | Cossel | |
| | 225 | 2003/0060834 | 03-27-2003 | Muldner | |
| | 226 | 2003/0093040 | 05-15-2003 | Mikszta et al. | |
| | 227 | 2003/0093089 | 05-15-2003 | Greenberg | |
| | 228 | 2003/0097139 | 05-22-2003 | Karasiuk | |
| | 229 | 2003/0187462 | 10-14-2003 | Chang | |
| | 230 | 2003/0208159 | 11-06-2003 | Ignon, et al. | |
| | 231 | 2003/0212127 | 11-13-2003 | Glassman et al. | |
| | 232 | 2003/0212415 | 11-13-2003 | Karasiuk | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T¹ - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /C.K./

Receipt date: 06/22/2015        14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|

| | |
|---|---|
| Application No. | 14/698,673 |
| Filing Date | April 28, 2015 |
| First Named Inventor | Ignon et al. |
| Art Unit | Unknown |
| Examiner | Unknown |
| Attorney Docket No. | EDGE.005C2 |

*(Multiple sheets used when necessary)*

SHEET 9 OF 13

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 233 | 2004/0010222 | 01-15-2004 | Nunomura et al. | |
| | 234 | 2004/0010269 | 01-15-2004 | Grimes et al. | |
| | 235 | 2004/0087972 | 05-06-2004 | Mulholland, et al. | |
| | 236 | 2004/0092895 | 05-13-2004 | Harmon | |
| | 237 | 2004/0097967 | 05-20-2004 | Ignon | |
| | 238 | 2004/0122447 | 06-24-2004 | Harmon et al. | |
| | 239 | 2004/0143274 | 07-22-2004 | Shadduck | |
| | 240 | 2004/0166172 | 08-26-2004 | Rosati et al. | |
| | 241 | 2004/0219179 | 11-04-2004 | McDaniel | |
| | 242 | 2004/0236291 | 11-25-2004 | Zelickson et al. | |
| | 243 | 2004/0243149 | 12-02-2004 | Lee, John B. JR. | |
| | 244 | 2004/0267285 | 12-30-2004 | Chang | |
| | 245 | 2005/0037034 | 02-17-2005 | Rhoades | |
| | 246 | 2005/0038448 | 02-17-2005 | Chung | |
| | 247 | 2005/0059940 | 03-17-2005 | Weber et al. | |
| | 248 | 2005/0084509 | 04-21-2005 | Bernstein | |
| | 249 | 2005/0148958 | 07-07-2005 | Rucinski | |
| | 250 | 2005/0203111 | 09-15-2005 | David | |
| | 251 | 2005/0209611 | 09-22-2005 | Greenberg | |
| | 252 | 2005/0283176 | 12-22-2005 | Law | |
| | 253 | 2006/0002960 | 01-05-2006 | Zoeteweij et al. | |
| | 254 | 2006/0191562 | 08-31-2006 | Numomura | |
| | 255 | 2006/0200099 | 09-07-2006 | La Bianco et al. | |
| | 256 | 2006/0200172 | 09-07-2006 | Shadduck | |
| | 257 | 2006/0200173 | 09-07-2006 | Shadduck | |
| | 258 | 2006/0212029 | 09-21-2006 | Arcusa Villacampa et al. | |
| | 259 | 2006/0253125 | 11-09-2006 | Ignon | |
| | 260 | 2006/0264893 | 11-23-2006 | Sage, Jr. et al. | |
| | 261 | 2007/0005078 | 01-04-2007 | Hart et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Case 2:20-cv-06082-GRB-ST   Document 69-3   Filed 06/21/22   Page 179 of 363 PageID #: 4672

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 10 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 262 | 2007/0043382 | 02-22-2007 | Cheney | |
| | 263 | 2007/0065515 | 03-22-2007 | Key | |
| | 264 | 2007/0123808 | 03-31-2007 | Rhoades | |
| | 265 | 2007/0088371 | 04-19-2007 | Karasiuk | |
| | 266 | 2007/0154502 | 07-05-2007 | Hattendorf et al. | |
| | 267 | 2007/0156124 | 07-05-2007 | Ignon et al. | |
| | 268 | 2007/0178121 | 08-02-2007 | First et al. | |
| | 269 | 2007/0198031 | 08-23-2007 | Kellogg | |
| | 270 | 2007/0208353 | 09-06-2007 | Shadduck | |
| | 271 | 2007/0239173 | 10-11-2007 | Khalaj | |
| | 272 | 2008/0027328 | 01-31-2008 | Klopotek et al. | |
| | 273 | 2008/0091179 | 04-17-2008 | Durkin et al. | |
| | 274 | 2008/0119781 | 05-22-2008 | King | |
| | 275 | 2008/0132914 | 06-05-2008 | Bossard et al. | |
| | 276 | 2008/0139974 | 06-12-2008 | Da Silva | |
| | 277 | 2008/0193493 | 08-14-2008 | Rhoades | |
| | 278 | 2008/0200861 | 08-21-2008 | Shalev et al. | |
| | 279 | 2008/0214987 | 09-04-2008 | Xu | |
| | 280 | 2008/0215068 | 09-04-2008 | Hart et al. | |
| | 281 | 2008/0243039 | 10-02-2008 | Rhoades | |
| | 282 | 2008/0287864 | 11-20-2008 | Rosenberg | |
| | 283 | 2008/0300529 | 12-04-2008 | Reinstein | |
| | 284 | 2008/0300552 | 12-04-2008 | Cichocki et al. | |
| | 285 | 2009/0048557 | 02-19-2009 | Yeshurun et al. | |
| | 286 | 2009/0053390 | 02-26-2009 | Sakou et al. | |
| | 287 | 2009/0099091 | 04-16-2009 | Hantash | |
| | 288 | 2009/0099093 | 04-16-2009 | Hantash | |
| | 289 | 2009/0124985 | 05-14-2009 | Hasenoehrl et al. | |
| | 290 | 2009/0138026 | 05-28-2009 | Wu | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /C.K./

Receipt date: 06/22/2015                                              14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 11 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 291 | 2009/0177171 | 07-09-2009 | Ignon et al. | |
| | 292 | 2009/0192442 | 07-30-2009 | Ignon et al. | |
| | 293 | 2009/0222023 | 09-03-2009 | Boone, III et al. | |
| | 294 | 2010/0045427 | 02-25-2010 | Boone, III et al. | |
| | 295 | 2010/0049177 | 02-25-2010 | Boone, III et al. | |
| | 296 | 2010/0049210 | 02-25-2010 | Boone, III et al. | |
| | 297 | 2011/0054490 | 03-03-2011 | Hart | |
| | 298 | 2011/0066162 | 03-17-2011 | Cohen | |
| | 299 | 2011/0082415 | 04-07-2011 | Ignon et al. | |
| | 300 | 2012/0022435 | 01-26-2012 | Ignon et al. | |
| | 301 | 2012/0136374 | 03-31-2012 | Karasiuk | |
| | 302 | 2013/0018317 | 01-17-2013 | Bobroff et al. | |
| | 303 | 2013/0066336 | 03-14-2013 | Boone, III et al. | |
| | 304 | 2013/0096577 | 04-18-2013 | Shadduck | |
| | 305 | 2013/0102978 | 04-25-2013 | Ignon et al. | |
| | 306 | 2013/0144280 | 06-06-2013 | Eckhouse et al. | |
| | 307 | 2013/0158547 | 06-20-2013 | David | |
| | 308 | 2014/0343481 | 11-20-2014 | Ignon | |
| | 309 | 2014/0343574 | 11-20-2014 | Ignon et al. | |
| | 310 | 2015/0032047 | 01-29-2015 | Ignon et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 311 | DD 234 608 | 04-09-1986 | Rath | | |
| | 312 | DE 34 21 390 A1 | 12-12-1985 | Schubert | | |
| | 313 | DE 10 2004 015815 A1 | 11-03-2005 | Bundersrepublik Deutschland | | |
| | 314 | EP 0 258 901 | 09-03-1987 | Tonokura Ika Kogyo Co. LTD | | |
| | 315 | EP 0 564 392 | 03-03-1993 | Fructuoso Martinez | | |
| | 316 | IT 553 076 | 12-01-1956 | Facconi | | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /C.K./

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 12 OF 13 | | Attorney Docket No. | EDGE.005C2 |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 317 | IT 118 49 22 | 03-22-1985 | Porqueddu | | |
| | 318 | JP1993-088552 | 12-03-1993 | Sumitomo Bakelite Co., Ltd. | | X |
| | 319 | JP09-294747 | 11-18-1997 | Fukutaro, Yamazaki | | X Abstract |
| | 320 | JP2003-339713 | 12-02-2003 | Twinbird Corp | | |
| | 321 | JP2006-503627 (English abstract of WO 2004/037098) | 02-02-2006 | Bionoface | | X Abstract |
| | 322 | JP2006-204767 | 10-08-2006 | Matsushita Electric Works | | X Abstract |
| | 323 | KR 20-0280320 (with English machine translation obtained from Korean Intellectual Property Office website, http://eng.kipris.or.kr/enghome/main.jsp) | 07-02-2002 | Lee | | X |
| | 324 | WO 2000/015300 | 03-23-2000 | Ultra Cure Ltd | | |
| | 325 | WO 2001/93931 | 12-13-2001 | Becton, Dickinson and Company | | |
| | 326 | WO 2003/073917 | 09-12-2003 | Edge Systems | | |
| | 327 | WO 2004/037098 | 05-06-2004 | Bionoface | | |
| | 328 | WO 2005/070313 | 08-04-2005 | Crystal Clear International Limited | | |
| | 329 | WO 2006/018731 | 02-23-2006 | Mc Anton Holding SA | | |
| | 330 | WO 2007/114904 | 10-11-2007 | Amcol International Corporation | | |
| | 331 | WO 2012/145667 | 10-26-2012 | Sun-Less, Inc. | | |

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | 332 | Cox III et al., *Decreased Splatter in Dermabrasion*, Arch Facial Plastic Surgery, Jan-Mar 2000, Vol. 2, pp. 23-26. | |
| | 333 | Ditre et al., *Effect of α-hydroxy acids on photoaged skin: A pilot clinical, histologic, and ultrastructural study*, Journal of American Academy of Dermatology, February 1996, Vol. 34, No. 2, Part 1, pp. 187-195. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Receipt date: 06/22/2015

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| (Multiple sheets used when necessary) | Examiner | Unknown |
| SHEET 13 OF 13 | Attorney Docket No. | EDGE.005C2 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
| | 334 | Harris et al., *Combining Manual Dermasanding with Low Stregnth Trichloroacetic Acid to Improve Antinically Injured Skin*, The Journal of Dermatologic Surgery and Oncology, July 1994, Vol. 20, No. 7, pp. 436-442. | |

20778469

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/27/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 29 | (roger near2 ignon).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:00 |
| S2 | 101 | (scott near2 mallett).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:04 |
| S3 | 3 | (abraham near2 solano).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:06 |
| S4 | 100 | (william near2 cohen).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:07 |
| S5 | 24 | (edge near2 systems).as. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:09 |
| S6 | 310 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US- | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:14 |

5674235-$.DID. OR US-5676643-$.DID. OR
US-5676648-$.DID. OR US-5683971-$.DID.
OR US-5707383-$.DID. OR US-5713785-
$.DID. OR US-5759185-$.DID. OR US-
5779519-$.DID. OR US-5800446-$.DID. OR
US-5807353-$.DID. OR US-5810842-$.DID.
OR US-5813416-$.DID. OR US-5817050-
$.DID. OR US-5846215-$.DID. OR US-
5848998-$.DID. OR US-5861142-$.DID. OR
US-5873881-$.DID. OR US-5879323-$.DID.
OR US-5882201-$.DID. OR US-5885260-
$.DID. OR US-5908401-$.DID. OR US-
5919152-$.DID. OR US-5954730-$.DID. OR
US-5971999-$.DID. OR US-5980555-$.DID.
OR US-6019749-$.DID. OR US-6024733-
$.DID. OR US-6027402-$.DID. OR US-
6039745-$.DID. OR US-6042552-$.DID. OR
US-6080165-$.DID. OR US-6080166-$.DID.
OR US-6090085-$.DID. OR US-6120512-
$.DID. OR US-6136008-$.DID. OR US-
6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID.
OR US-6159226-$.DID. OR US-6162232-
$.DID. OR US-6183451-$.DID. OR US-
6183483-$.DID. OR US-6231593-$.DID. OR
US-6238275-$.DID. OR US-6241739-$.DID.
OR US-6264666-$.DID. OR US-6277128-
$.DID. OR US-6283978-$.DID. OR US-
6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID.
OR US-6368333-$.DID. OR US-6387103-
$.DID. OR US-6409736-$.DID. OR US-
6410599-$.DID. OR US-6414032-$.DID. OR
US-6420431-$.DID. OR US-6423078-$.DID.
OR US-6423750-$.DID. OR US-6432113-
$.DID. OR US-6471712-$.DID. OR US-
6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID.
OR US-6500183-$.DID. OR US-6503256-
$.DID. OR US-6511486-$.DID. OR US-
6514262-$.DID. OR US-6527783-$.DID. OR
US-6535761-$.DID. OR US-6540757-$.DID.
OR US-6562013-$.DID. OR US-6562050-
$.DID. OR US-6564093-$.DID. OR US-
6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID.
OR US-6641591-$.DID. OR US-6645184-
$.DID. OR US-6652888-$.DID. OR US-
6673081-$.DID. OR US-6673082-$.DID. OR
US-6685853-$.DID. OR US-6687537-$.DID.
OR US-6695853-$.DID. OR US-6735470-
$.DID. OR US-6743215-$.DID. OR US-
6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID.
OR US-6924649-$.DID. OR US-6926681-
$.DID. OR US-6942649-$.DID. OR US-
7001355-$.DID. OR US-7004933-$.DID. OR
US-7044938-$.DID. OR US-7052503-$.DID.
OR US-7069073-$.DID. OR US-7070488-
$.DID. OR US-7083580-$.DID. OR US-
7087063-$.DID. OR US-7094252-$.DID. OR
US-7115275-$.DID. OR US-7135011-$.DID.
OR US-7153311-$.DID. OR US-7197359-
$.DID. OR US-7198623-$.DID. OR US-

7241208-$.DID. OR US-7276051-$.DID. OR
US-7314326-$.DID. OR US-7316657-$.DID.
OR US-7318828-$.DID. OR US-7320691-
$.DID. OR US-7320801-$.DID. OR US-
7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID.
OR US-7458944-$.DID. OR US-7476205-
$.DID. OR US-7477938-$.DID. OR US-
7482314-$.DID. OR US-7489989-$.DID. OR
US-7507228-$.DID. OR US-7582067-$.DID.
OR US-7597900-$.DID. OR US-7597901-
$.DID. OR US-7658742-$.DID. OR US-
7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID.
OR US-7901373-$.DID. OR US-7951156-
$.DID. OR US-8025669-$.DID. OR US-
8048089-$.DID. OR US-8066716-$.DID. OR
US-8088085-$.DID. OR US-8128638-$.DID.
OR US-8221437-$.DID. OR US-8236008-
$.DID. OR US-8277287-$.DID. OR US-
8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-
20020188261-$.DID. OR US-20030012415-
$.DID. OR US-20030060834-$.DID. OR US-
20030093040-$.DID. OR US-20030093089-
$.DID. OR US-20030097139-$.DID. OR US-
20030187462-$.DID. OR US-20030208159-
$.DID. OR US-20030212127-$.DID. OR US-
20030212415-$.DID. OR US-20040010222-
$.DID. OR US-20040010269-$.DID. OR US-
20040087972-$.DID. OR US-20040092895-
$.DID. OR US-20040097967-$.DID. OR US-
20040122447-$.DID. OR US-20040143274-
$.DID. OR US-20040166172-$.DID. OR US-
20040219179-$.DID. OR US-20040236291-
$.DID. OR US-20040243149-$.DID. OR US-
20040267285-$.DID. OR US-20050037034-
$.DID. OR US-20050038448-$.DID. OR US-
20050059940-$.DID. OR US-20050084509-
$.DID. OR US-20050148958-$.DID. OR US-
20050203111-$.DID. OR US-20050209611-
$.DID. OR US-20050283176-$.DID. OR US-
20060002960-$.DID. OR US-20060191562-
$.DID. OR US-20060200099-$.DID. OR US-
20060200172-$.DID. OR US-20060200173-
$.DID. OR US-20060212029-$.DID. OR US-
20060253125-$.DID. OR US-20060264893-
$.DID. OR US-20070005078-$.DID. OR US-
20070043382-$.DID. OR US-20070065515-
$.DID. OR US-20070123808-$.DID. OR US-
20070088371-$.DID. OR US-20070154502-
$.DID. OR US-20070156124-$.DID. OR US-
20070178121-$.DID. OR US-20070198031-
$.DID. OR US-20070208353-$.DID. OR US-
20070239173-$.DID. OR US-20080027328-
$.DID. OR US-20080091179-$.DID. OR US-
20080119781-$.DID. OR US-20080132914-
$.DID. OR US-20080139974-$.DID. OR US-
20080193493-$.DID. OR US-20080200861-

$.DID. OR US-20080214987-$.DID. OR US-20080215068-$.DID. OR US-20080243039-$.DID. OR US-20080287864-$.DID. OR US-20080300529-$.DID. OR US-20080300552-$.DID. OR US-20090048557-$.DID. OR US-20090053390-$.DID. OR US-20090099091-$.DID. OR US-20090099093-$.DID. OR US-20090124985-$.DID. OR US-20090138026-$.DID. OR US-20090177171-$.DID. OR US-20090192442-$.DID. OR US-20090222023-$.DID. OR US-20100045427-$.DID. OR US-20100049177-$.DID. OR US-20100049210-$.DID. OR US-20110054490-$.DID. OR US-20110066162-$.DID. OR US-20110082415-$.DID. OR US-20120022435-$.DID. OR US-20120136374-$.DID. OR US-20130018317-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID. OR JP-12022003-$.DID. OR JP-2006503627-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID.

| S7 | 316 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:15 |

US-5470323-$.DID. OR US-5484427-$.DID.
OR US-5562642-$.DID. OR US-5611687-
$.DID. OR US-5612797-$.DID. OR US-
5674235-$.DID. OR US-5676643-$.DID. OR
US-5676648-$.DID. OR US-5683971-$.DID.
OR US-5707383-$.DID. OR US-5713785-
$.DID. OR US-5759185-$.DID. OR US-
5779519-$.DID. OR US-5800446-$.DID. OR
US-5807353-$.DID. OR US-5810842-$.DID.
OR US-5813416-$.DID. OR US-5817050-
$.DID. OR US-5846215-$.DID. OR US-
5848998-$.DID. OR US-5861142-$.DID. OR
US-5873881-$.DID. OR US-5879323-$.DID.
OR US-5882201-$.DID. OR US-5885260-
$.DID. OR US-5908401-$.DID. OR US-
5919152-$.DID. OR US-5954730-$.DID. OR
US-5971999-$.DID. OR US-5980555-$.DID.
OR US-6019749-$.DID. OR US-6024733-
$.DID. OR US-6027402-$.DID. OR US-
6039745-$.DID. OR US-6042552-$.DID. OR
US-6080165-$.DID. OR US-6080166-$.DID.
OR US-6090085-$.DID. OR US-6120512-
$.DID. OR US-6136008-$.DID. OR US-
6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID.
OR US-6159226-$.DID. OR US-6162232-
$.DID. OR US-6183451-$.DID. OR US-
6183483-$.DID. OR US-6231593-$.DID. OR
US-6238275-$.DID. OR US-6241739-$.DID.
OR US-6264666-$.DID. OR US-6277128-
$.DID. OR US-6283978-$.DID. OR US-
6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID.
OR US-6368333-$.DID. OR US-6387103-
$.DID. OR US-6409736-$.DID. OR US-
6410599-$.DID. OR US-6414032-$.DID. OR
US-6420431-$.DID. OR US-6423078-$.DID.
OR US-6423750-$.DID. OR US-6432113-
$.DID. OR US-6471712-$.DID. OR US-
6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID.
OR US-6500183-$.DID. OR US-6503256-
$.DID. OR US-6511486-$.DID. OR US-
6514262-$.DID. OR US-6527783-$.DID. OR
US-6535761-$.DID. OR US-6540757-$.DID.
OR US-6562013-$.DID. OR US-6562050-
$.DID. OR US-6564093-$.DID. OR US-
6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID.
OR US-6641591-$.DID. OR US-6645184-
$.DID. OR US-6652888-$.DID. OR US-
6673081-$.DID. OR US-6673082-$.DID. OR
US-6685853-$.DID. OR US-6687537-$.DID.
OR US-6695853-$.DID. OR US-6735470-
$.DID. OR US-6743215-$.DID. OR US-
6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID.
OR US-6924649-$.DID. OR US-6926681-
$.DID. OR US-6942649-$.DID. OR US-
7001355-$.DID. OR US-7004933-$.DID. OR
US-7044938-$.DID. OR US-7052503-$.DID.
OR US-7069073-$.DID. OR US-7070488-
$.DID. OR US-7083580-$.DID. OR US-
7087063-$.DID. OR US-7094252-$.DID. OR

US-7115275-$.DID. OR US-7135011-
$.DID. OR US-7153311-$.DID. OR US-7197359-
$.DID. OR US-7198623-$.DID. OR US-
7241208-$.DID. OR US-7276051-$.DID. OR
US-7314326-$.DID. OR US-7316657-$.DID.
OR US-7318828-$.DID. OR US-7320691-
$.DID. OR US-7320801-$.DID. OR US-
7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID.
OR US-7458944-$.DID. OR US-7476205-
$.DID. OR US-7477938-$.DID. OR US-
7482314-$.DID. OR US-7489989-$.DID. OR
US-7507228-$.DID. OR US-7582067-$.DID.
OR US-7597900-$.DID. OR US-7597901-
$.DID. OR US-7658742-$.DID. OR US-
7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID.
OR US-7901373-$.DID. OR US-7951156-
$.DID. OR US-8025669-$.DID. OR US-
8048089-$.DID. OR US-8066716-$.DID. OR
US-8088085-$.DID. OR US-8128638-$.DID.
OR US-8221437-$.DID. OR US-8236008-
$.DID. OR US-8277287-$.DID. OR US-
8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-
20020188261-$.DID. OR US-20030012415-
$.DID. OR US-20030060834-$.DID. OR US-
20030093040-$.DID. OR US-20030093089-
$.DID. OR US-20030097139-$.DID. OR US-
20030187462-$.DID. OR US-20030208159-
$.DID. OR US-20030212127-$.DID. OR US-
20030212415-$.DID. OR US-20040010222-
$.DID. OR US-20040010269-$.DID. OR US-
20040087972-$.DID. OR US-20040092895-
$.DID. OR US-20040097967-$.DID. OR US-
20040122447-$.DID. OR US-20040143274-
$.DID. OR US-20040166172-$.DID. OR US-
20040219179-$.DID. OR US-20040236291-
$.DID. OR US-20040243149-$.DID. OR US-
20040267285-$.DID. OR US-20050037034-
$.DID. OR US-20050038448-$.DID. OR US-
20050059940-$.DID. OR US-20050084509-
$.DID. OR US-20050148958-$.DID. OR US-
20050203111-$.DID. OR US-20050209611-
$.DID. OR US-20050283176-$.DID. OR US-
20060002960-$.DID. OR US-20060191562-
$.DID. OR US-20060200099-$.DID. OR US-
20060200172-$.DID. OR US-20060200173-
$.DID. OR US-20060212029-$.DID. OR US-
20060253125-$.DID. OR US-20060264893-
$.DID. OR US-20070005078-$.DID. OR US-
20070043382-$.DID. OR US-20070065515-
$.DID. OR US-20070123808-$.DID. OR US-
20070088371-$.DID. OR US-20070154502-
$.DID. OR US-20070156124-$.DID. OR US-
20070178121-$.DID. OR US-20070198031-
$.DID. OR US-20070208353-$.DID. OR US-
20070239173-$.DID. OR US-20080027328-
$.DID. OR US-20080091179-$.DID. OR US-

20080119781-$.DID. OR US-20080133974-
$.DID. OR US-20080139974-$.DID. OR US-
20080193493-$.DID. OR US-20080200861-
$.DID. OR US-20080214987-$.DID. OR US-
20080215068-$.DID. OR US-20080243039-
$.DID. OR US-20080287864-$.DID. OR US-
20080300529-$.DID. OR US-20080300552-
$.DID. OR US-20090048557-$.DID. OR US-
20090053390-$.DID. OR US-20090099091-
$.DID. OR US-20090099093-$.DID. OR US-
20090124985-$.DID. OR US-20090138026-
$.DID. OR US-20090177171-$.DID. OR US-
20090192442-$.DID. OR US-20090222023-
$.DID. OR US-20100045427-$.DID. OR US-
20100049177-$.DID. OR US-20100049210-
$.DID. OR US-20110054490-$.DID. OR US-
20110066162-$.DID. OR US-20110082415-
$.DID. OR US-20120022435-$.DID. OR US-
20120136374-$.DID. OR US-20130018317-
$.DID. OR US-20130066336-$.DID. OR US-
20130096577-$.DID. OR US-20130102978-
$.DID. OR US-20130144280-$.DID. OR US-
20130158547-$.DID. OR US-20140343481-
$.DID. OR US-20140343574-$.DID. OR US-
20150032047-$.DID. OR JP-1234567-$.DID.
OR DE-3421390-$.DID. OR EP-0258901-
$.DID. OR EP-0564392-$.DID. OR US-
1184922-$.DID. OR JP-1993088552-$.DID. OR
JP-12031993-$.DID. OR JP-09294747-$.DID.
OR JP-11181997-$.DID. OR JP-2003339713-
$.DID. OR JP-12022003-$.DID. OR JP-
2006503627-$.DID. OR WO-02022006-$.DID.
OR JP-2006204767-$.DID. OR JP-10082006-
$.DID. OR KR-200280320-$.DID.

| | | | | | | |
|---|---|---|---|---|---|---|
| S8 | 0 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:57 |
| S9 | 484 | (console and manifold and fluid and container and hand$7 and (conduit tube) and vacuum) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 11:04 |
| S10 | 498 | A61B17/54.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:13 |
| S11 | 136 | A61B17/545.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:29 |
| S12 | 583 | A61B19/0248.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:43 |
| S13 | 511 | A61B2019/025.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:50 |
| S14 | 1159 | A61B2017/00199.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:59 |
| S15 | 955 | A61B2017/00017.cpc. | US-PGPUB; | OR | ON | 2015/07/21 13:15 |

| S16 | 2160 | A61B2217/005.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
|-----|------|-------------------|-----------------|-----|-----|------------------|
| S17 | 1269 | A61B2217/007.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S18 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/21 16:03 |
| S19 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 08:38 |
| S20 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:07 |
| S21 | 51 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6238275" \| "6303119").PN. OR ("6527783").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S22 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S23 | 42 | ("20010023351" \| "4572187" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5354307" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6162232" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6299620" \| "6319211" \| "6391034" \| "6423078" \| "6432113" \| "6629983" \| "6652888").PN. OR ("6942649").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:16 |
| S24 | 38 | ("5037432" \| "5100412" \| "5810842" \| "5971999").PN. OR ("6080165").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:17 |
| S25 | 43 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "6319211").PN. OR ("6592595").URPN. | | | | |
| S26 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S27 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:37 |
| S28 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:38 |
| S29 | 38 | ("2608032" \| "2921585" \| "3574239" \| "3715838" \| "4375740" \| "4482322" \| "4560373" \| "4646480" \| "4671867" \| "4676749" \| "4757814" \| "4765099" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5309683" \| "5460604" \| "5547376" \| "5765759" \| "5810587" \| "5810842" \| "6039745").PN. OR ("6277128").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:39 |
| S30 | 14 | ("3815286" \| "5037431" \| "6183148" \| "6193589" \| "6235039" \| "6238275" \| "6322568").PN. OR ("6503256").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:41 |
| S31 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:44 |
| S32 | 82 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:46 |
| S33 | 107 | ("2608032" \| "2921585" \| "3085573" \| "3574239" \| "3715838" \| "4560373" \| "4646480" \| "4676749" \| "4757814").PN. OR ("5037432").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:53 |
| S34 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:55 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | | | | |
| S35 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 14:45 |
| S36 | 6 | (manifold same container same (antimicrobial disenfect$)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:29 |
| S37 | 140 | (manifold same container same (antimicrobial disenfect$4 surfactant sanitiz$5)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:32 |
| S38 | 378 | (manifold with (clean$4 sanitiz$4) with container) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:44 |
| S39 | 12 | (manifold with (clean$4 sanitiz$4) with container) and (abrasion or microabrasion) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:45 |
| S40 | 17 | ("2894732" \| "3378234" \| "3468637").PN. OR ("3865352").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 09:24 |
| S41 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:06 |
| S42 | 15 | ("20010023351" \| "20030093089" \| "20060116674" \| "20070156124" \| "6250996" \| "7232444" \| "7651508" \| "D286920" \| "D286921" \| "D321340" \| "D326920" \| "D489816" \| "D548326").PN. OR ("D627876").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:12 |
| S43 | 15 | ("5037432" \| "5971999").PN. OR ("6250996").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:13 |
| S44 | 8 | ("20010023351" \| "20030093089" \| "20030212415" \| "6250996" \| "D450842").PN. OR ("D503979").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:14 |
| S45 | 16 | ("20010023351" \| "20030093089" \| | US- | OR | ON | 2015/07/23 |

| | | "20070156124" \| "4653474" \| "6256006" \| "7232444" \| "D192841" \| "D224070" \| "D249550" \| "D326920" \| "D475463" \| "D489816" \| "D627876").PN. OR ("D682414").URPN. | | PGPUB; USPAT; USOCR | | | | 10:15 |

**EAST Search History (Interference)**

< This search history is empty>

**7/23/2015 10:37:47 AM**
**C:\Users\cknauss\Documents\EAST\Workspaces\14698673.wsp**



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 7926**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | 606 | 3734 | EDGE.005C2 |
| | RULE | | | |

**APPLICANTS**
EDGE SYSTEMS LLC, Signal Hill, CA;

**INVENTORS**
Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

**\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** OK /CK/
This application is a CON of 13/267,554 10/06/2011
    which is a CON of 11/392,348 03/29/2006 PAT 8048089
    which claims benefit of 60/755,310 12/30/2005
    and claims benefit of 60/764,668 02/02/2006

**\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*** none /CK/

**\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\***
    05/07/2015

| | | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|
| Foreign Priority claimed ☐ Yes ☑ No | | ☐ Met after Allowance | | | | |
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | | | CA | 25 | 20 | 2 |
| Verified and Acknowledged | /CHRISTIAN D KNAUSS/ Examiner's Signature | Initials | | | | |

**ADDRESS**

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

**TITLE**

CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| FILING FEE RECEIVED | FEES: Authority has been given in Paper | |
|---|---|---|
| 800 | No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTIAN KNAUSS | 3734 |

### CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| A61B17/54, 545 | 7/23/15 | CDK |
| A61B2017/00017, 00199, 00743, 00747, 00761 | 7/23/15 | CDK |
| A61B19/0248 | 7/23/15 | CDK |
| A61B2019/025 | 7/23/15 | CDK |
| A61B2217/005, 007 | 7/23/15 | CDK |

### CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

### US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

### SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Performed inventor and assignee searches in PALM and EAST | 7/23/15 | CDK |
| Performed EAST search (see attached EAST search history) | 7/23/15 | CDK |
| Performed  forward/backward searches in EAST | 7/23/15 | CDK |
| Performed class/text searchs and combinations in EAST | 7/23/15 | CDK |

### INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

/C.K./
Examiner.Art Unit 3734

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        08/07/2015
**KNOBBE MARTENS OLSON & BEAR LLP**
**2040 MAIN STREET**
**FOURTEENTH FLOOR**
**IRVINE, CA 92614**

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3734 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/07/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

PTOL-90A (Rev. 04/07)

| *Applicant-Initiated Interview Summary* | Application No. | Applicant(s) | |
|---|---|---|---|
| | 14/698,673 | IGNON ET AL. | |
| | Examiner | Art Unit | |
| | CHRISTIAN KNAUSS | 3734 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *CHRISTIAN KNAUSS*.                    (3) *KATHERINE RODJOM*.

(2) *THEODORE PAPAGIANNIS*.            (4) _____.

Date of Interview: *30 July 2015*.

Type:    ☐ Telephonic   ☐ Video Conference
         ☒ Personal [copy given to: ☐ applicant    ☐ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes    ☒ No.
    If Yes, brief description: _____.

Issues Discussed   ☐101  ☐112  ☐102  ☐103  ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _____.

Identification of prior art discussed: _____.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*The Applicant's representative gave the Examiner an overview of the case.  The Examiner presented two prior art references that were used in the non-final rejection (Greenberg US 2003/0093089 A1 and Coleman et al. (US 2001/0049511 A1).  The Examiner also suggested that focusing on the ability to individually select a treatment material of the multiple fluid containers would overcome the Coleman reference.*

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☒ Attachment

| /KATHERINE RODJOM/ | /CHRISTIAN KNAUSS/ |
|---|---|
| Primary Examiner, Art Unit 3734 | Examiner, Art Unit 3734 |

# Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant.  An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2  Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing.  The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary.  The action of the Patent and Trademark Office will be based exclusively on the written record in the Office.  No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

_____

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so.  It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks.  Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below.  Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper.  In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview.  In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable).  Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
(The identification of arguments need not be lengthy or elaborate.  A verbatim or highly detailed description of the arguments is not required.  The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file.  Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.
Examiners are expected to carefully review the applicant's record of the substance of an interview.  If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her.  If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

Case 2:20-cv-06082-GRB-ST   Document 69-3   Filed 06/21/22   Page 199 of 363 PageID #:
4603

## Recipient Information

**To:   Examiner Christian Knauss**
**Company: USPTO**
**Fax #: 5712738641**

**faxZERO**.com
*send a fax for free*

## Sender Information

**From: Theodore Papagiannis**
**Company: Knobbe Martens**
**Email address: theodore.papagiannis@knobbe.com (from 173.227.19.10)**
**Phone #: 9497600404**
**Sent on: Thursday, July 30 2015 at 5:33 AM EDT**

Dear Examiner Knauss,

Please find the attached agenda for the interview.  If you have any questions before our scheduled interview, do not hesitate to contact me via email (theodore.papagiannis@knobbe.com) or mobile phone (626-429-7249).  Thank you.

-Ted Papagiannis

This fax was sent using the FaxZero.com free fax service. FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #15120012. We will add your fax number to the block list.

## Agenda for Interview for U.S. Pat. Appl. Nos. 14/698,673, 14/698,713 & 14/700,789
### (For Discussion Purposes Only)

1. Details of Scheduled Interview:
   a. The personal interview will be conducted between Examiner Christian Knauss and attorney for Applicant, Theodore Papagiannis.
   b. Date/Time: Thursday, July 30, 2015 at 11 am Eastern

2. Discussion of the claimed subject matter to which each application is directed
   a. 14/698,673: systems having, e.g., a console, fluid container(s), a delivery conduit and a waste conduit
      i. See, *inter alia*, Figures 1-4 and 15A-17 and related portions of the specification as filed
   b. 14/698,713: methods for extraction of substances (e.g., blackheads) using, e.g., application of vacuum/suction and treatment materials
      i. See, e.g., Paragraph [0096] of the specification as filed
   c. 14/700,789: tips having, e.g., treatment materials configured to be released when fluid is delivered to the tip via, e.g., the application of vacuum/suction
      i. See, e.g., Paragraph [0101] of the specification as filed

3. Possible additional discussion of claims and related strategy
   a. 14/700,789: discussion of references cited in Pre-Interview Communication of related application, U.S. Pat. Appl. No. 13/267,554 (currently under examination)
      i. For example, certain disclosure of U.S. Publ. No. 2002/0016601 to Shadduck and U.S. Publ. No. 2003/0093040 Mikszta et al. may be discussed in view of the pending claims.

21248454

- 1 -



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**PUBLICATION NOTICE**

*OC000000077785885*

**Title:** CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

**Publication No.** US-2015-0272623-A1
**Publication Date:** 10/01/2015

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|

| | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | 3734 |
| *(Multiple sheets used when necessary)* | Examiner | Christian D. Knauss |
| SHEET 1 OF 2 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,631,583 | 03-17-1953 | Lavergne | |
| | 2 | 4,170,821 | 10-16-1979 | Booth | |
| | 3 | 5,697,920 | 12-16-1997 | Gibbons | |
| | 4 | 5,735,833 | 04-07-1998 | Olson | |
| | 5 | 6,129,701 | 10-10-2000 | Cimino | |
| | 6 | 6,162,218 | 12-19-2000 | Elbrecht et al. | |
| | 7 | 6,193,589 | 02-27-2001 | Khalaj | |
| | 8 | 6,235,039 | 05-22-2001 | Parkin et al. | |
| | 9 | 6,589,218 | 07-08-2003 | Garcia | |
| | 10 | 6,743,211 | 06-01-2004 | Prausnitz et al. | |
| | 11 | 9,056,193 | 06-16-2015 | Ignon et al. | |
| | 12 | 2001/0037118 | 11-01-2001 | Shadduck | |
| | 13 | 2002/0133176 | 09-19-2002 | Parkin et al. | |
| | 14 | 2002/0151908 | 10-17-2002 | Mallett Sr. et al. | |
| | 15 | 2003/0167032 | 09-04-2003 | Ignon | |
| | 16 | 2004/0092959 | 05-13-2004 | Bernaz | |
| | 17 | 2004/0162565 | 08-19-2004 | Carson et al. | |
| | 18 | 2004/0254587 | 12-16-2004 | Park | |
| | 19 | 2006/0161178 | 07-20-2006 | Lee | |
| | 20 | 2006/0189964 | 08-24-2006 | Anderson | |
| | 21 | 2008/0103563 | 05-01-2008 | Powell | |
| | 22 | 2008/0221548 | 09-11-2008 | Danenberg et al. | |
| | 23 | 2009/0062815 | 03-05-2009 | Karasiuk et al. | |
| | 24 | 2010/0217357 | 08-26-2010 | Da Silva | |
| | 25 | 2012/0041338 | 02-16-2012 | Chickering III et al. | |
| | 26 | 2015/0230824 | 08-20-2015 | Shadduck | |
| | 27 | 2015/0230825 | 08-20-2015 | Shadduck | |
| | 28 | 2015/0231379 | 08-20-2015 | Ignon et al. | |
| | 29 | 2015/0265822 | 09-24-2015 | Ignon et al. | |
| | 30 | 2015/0290442 | 10-15-2015 | Ignon et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | 3734 |
| (Multiple sheets used when necessary) | | Examiner | Christian D. Knauss |
| SHEET 2 OF 2 | | Attorney Docket No. | EDGE.005C2 |

| FOREIGN PATENT DOCUMENTS | | | | | | |
|---|---|---|---|---|---|---|
| Examiner Initials | Cite No. | Foreign Patent Document *Country Code-Number-Kind Code* Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |

22505364

| Examiner Signature | | Date Considered | |
|---|---|---|---|
| **\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. | | | |

**T[1]** - Place a check mark in this area when an English language Translation is attached.

EDGE.005C2                                                          PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Ignon et al. |
| App. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3734 |
| Conf No. | : | 7926 |

## <u>RESPONSE TO OFFICE ACTION</u>

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

This response is being filed following the Office Action mailed on August 5, 2015 for the above-captioned application (the "Office Action") and the Personal Interview of July 30, 2015.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Summary of Interview** begins on page 5 of this paper.

**Remarks** begin on page 6 of this paper.

-1-

**Application No.:**     **14/698,673**
**Filing Date:**          **April 28, 2015**

## AMENDMENTS TO THE CLAIMS

*The following listing of claims replaces all prior versions and listings of claims in the application. The listing of claims presents each claim with its respective status shown in parentheses.*

1.      (*Canceled*)

2.      (*Currently Amended*)  A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second at least one fluid container, the first fluid container and the at least the second one fluid container being configured to contain a treatment material for a skin treatment procedure;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second one fluid container through the supply conduit; and

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source[[.]]; and

a user input device for receiving instructions from a user;

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly.

3.      (*Canceled*)

4.      (*Previously Presented*)  The system of Claim 2, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

**Application No.:**     **14/698,673**
**Filing Date:**          **April 28, 2015**

5.     (*Previously Presented*)   The system of Claim 4, wherein the user input device comprises a touch screen.

6.     (*Previously Presented*)   The system of Claim 2, wherein the at least one fluid container is releasably coupled to the manifold.

7.     (*Canceled*)

8.     (*Currently Amended*)   The system of Claim 2, wherein <u>the manifold is configured to be placed in fluid communication with</u> ~~at least one fluid container comprises~~ at least four fluid containers.

9.     (*Currently Amended*)   The system of Claim <u>1</u>[[7]], wherein treatment materials from <u>the first fluid container and at least the second fluid container</u> ~~the at least two fluid containers~~ are delivered to the supply conduit sequentially or simultaneously.

10.    (*Previously Presented*)   The system of Claim 2, wherein the console is movable.

11.    (*Currently Amended*)   The system of Claim 2, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece <u>assembly</u> is moved relative to a skin surface of a subject.

12.    (*Previously Presented*)   The system of Claim 2, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

13.    (*Previously Presented*)   The system of Claim 2, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

14.    (*Currently Amended*)   A system for performing a skin treatment procedure, the system comprising:

a manifold in fluid communication with at least <u>two</u> ~~one~~ fluid container<u>s</u>, <u>each of</u> the at least <u>two</u> ~~one~~ fluid container<u>s</u> being configured to contain a treatment material;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; and

a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly;

**Application No.:**     14/698,673
**Filing Date:**        April 28, 2015

wherein the manifold is configured to control a flow of treatment material from each of the at least two ~~one~~ fluid containers through the supply conduit[[.]];

wherein the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit.

15.     (*Previously Presented*)  The system of Claim 14, further comprising a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to a vacuum source.

16.     (*Previously Presented*)  The system of Claim 14, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

17.     (*Previously Presented*)  The system of Claim 14, wherein console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container.

18.     (*Previously Presented*)  The system of Claim 17, wherein the user input device comprises a touch screen.

19.     (*Previously Presented*)  The system of Claim 14, wherein the at least one fluid container is releasably coupled to the manifold.

20.     (*Currently Amended*)  The system of Claim 14, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

21.     (*Previously Presented*)  The system of Claim 14, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

**Application No.:** **14/698,673**
**Filing Date:** **April 28, 2015**

## SUMMARY OF INTERVIEW

Applicant thanks Examiners Rodjom and Knauss for their time and the courtesies extended during the Interview of July 30, 2015.

Attendees, Date and Type of Interview

The Interview was conducted in person on July 30, 2015, and was attended by Examiners Christian Knauss and Katherine Rodjom, and attorney for Applicant, Theodore G. Papagiannis.

Exhibits and/or Demonstrations

None.

Identification of Claims Discussed

The pending claims, including independent Claims 2 and 14.

Identification of References Discussed

U.S. Patent Publication No. 2003/0093089 to Greenberg ("Greenberg"), and U.S. Patent Publication No. 2001/0049511 to Coleman et al. ("Coleman").

Proposed Amendments, Principal Arguments, Other Matters and Results of Interview

The Applicant's representative discussed the claims with the Examiners, who were prepared to discuss Greenberg and Coleman with Applicant's representative. These references were briefly discussed in view of the pending claims. Examiners suggested that presenting clarifying amendments related to the system's ability to permit for the selection of treatment materials from specific containers in fluid communication with a manifold would overcome any rejection over Coleman. Accordingly, as discussed in greater detail herein, Applicant is incorporated certain clarifying amendments to the claims in an effort to advance prosecution and further distinguish the present claims from the cited art, pursuant to the Interview of July 30, 2015.

**Application No.:**   **14/698,673**
**Filing Date:**          **April 28, 2015**

## REMARKS

The foregoing amendments and the following remarks are responsive to the Office Action.   Claims 2 to 21 are currently pending in this application.   In order to advance prosecution, clarifying amendments are presented herein to independent Claims 2 and 14 in accordance with the Interview of July 30, 2015.   Clarifying amendments are also presented to dependent Claims 8, 9, 11 and 20.   Further, Claims 3 and 7 are canceled without prejudice herein.   Applicant submits that no new matter is added by the foregoing clarifying claim amendments.   Applicant reserves the right to pursue claims similar to the original claims or previously-pending versions of the claims in a continuing application.   Accordingly, Claims 2, 4 to 6 and 8 to 21 are presented for further consideration.

**Claim Objections**

In the Office Action, Claims 11 and 20 are objected to due to certain informalities, which are believed to have been either corrected or mooted by the foregoing amendments.

**Claim Rejections under 35 U.S.C. §102 & §103**

According to the Office Action, Claims 2, 3, 7 to 9, 11, 12, 14 to 16 and 20 stand rejected under 35 U.S.C. §102(b) as being anticipated by U.S. Publication No. 2001/0049511 to Coleman et al. ("Coleman").   Claims 2, 4, 6, 10, 14, 17, and 19 stand rejected under 35 U.S.C. §102(b) as being anticipated by U.S. Publication No. 2003/0093089 to Greenberg ("Greenberg").   Further, Claims 5 and 18 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Greenberg in view of U.S. Publication No. 2003/0018252 to Duchon et al.   In addition, Claims 13 and 21 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Coleman in view of U.S. Patent No. 3,865,352 in view of Nelson et al.

Applicant respectfully disagrees with and traverses the anticipation and obviousness rejections presented in the Office Action.   However, as noted above and pursuant to the Interview of July 30, 2105, Applicant is incorporating certain clarifying amendments to the claims to expedite prosecution and to further distinguish the claims from the cited references.

As discussed during the Interview, Applicant submits that the cited references, either alone or in combination, fail to teach or suggest the elements of the claims, as presented herein. For example, with specific reference to Claim 2, the cited references do not disclose, *inter alia*, a

-6-

**Application No.:**      **14/698,673**
**Filing Date:**          **April 28, 2015**

system for performing a skin treatment procedure comprising a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second one fluid container being configured to contain a treatment material for a skin treatment procedure, a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject, a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly, wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second one fluid container through the supply conduit, and a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source, and a user input device for receiving instructions from a user, wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly.

For at least the foregoing reasons, Applicant submits that the pending claims are patentable over the cited references, either alone or in combination with one another.  In addition, the dependent claims are distinguished over the cited references in view of additional language included therein.  Accordingly, Applicant requests that the obviousness rejections presented in the Office Action be withdrawn.


**No Disclaimers or Disavowals**

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.  Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not

**Application No.:**   14/698,673
**Filing Date:**        April 28, 2015

reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

## Table of U.S. Patents and Applications

Applicant provides the following table to aid the Examiner during prosecution. The following U.S. patents and/or patent applications are in the same patent family as the present application.

| Attorney Docket | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348 (U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

**Application No.:** **14/698,673**
**Filing Date:** **April 28, 2015**

## CONCLUSION

In view of the foregoing amendments and remarks, Applicant respectfully submits that the claims are now in condition for allowance. Accordingly, Applicant respectfully requests reconsideration of the claims in light of the foregoing amendments and remarks.

Applicant has made a good faith effort to place the application in condition for immediate allowance. Nevertheless, if any issues remain or otherwise require clarification, the Examiner is respectfully requested to contact Applicant's attorney at the below-listed telephone number to promptly resolve such issues.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: February 5, 2016

By: /Theodore G. Papagiannis/
Theodore G. Papagiannis
Registration No. 61,546
Attorney of Record
Customer No. 20995
(949) 760-0404

21321587

-9-

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14698673 |
| **Filing Date:** | 28-Apr-2015 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Filer:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 3 months with $0 paid | 2253 | 1 | 700 | 700 |
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 2806 | 1 | 90 | 90 |
| **Total in USD ($)** | | | | **790** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24843170 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Tony Do |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 05-FEB-2016 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 19:59:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $790 |
| RAM confirmation Number | 6556 |
| Deposit Account | 111410 |
| Authorized User | KNOBBE MARTENS OLSON AND BEAR |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 CFR 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 CFR 1.17 (Patent application and reexamination processing fees) | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | EDGE005C2_IDS.pdf | 52973 <br> 4e92b524fd9aaa82902eb24d4eb85b2bf694fd24 | yes | 4 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | **Document Description** | **Start** | **End** | |
| | Transmittal Letter | 1 | 2 | |
| | Information Disclosure Statement (IDS) Form (SB08) | 3 | 4 | |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | EDGE005C2_OAR.pdf | 61906 <br> 850ef86c4b2bfc59cba7246b2250a3479a74f526 | yes | 9 |

| | Multipart Description/PDF files in .zip description | | | |
|---|---|---|---|---|
| | **Document Description** | **Start** | **End** | |
| | Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 | |
| | Claims | 2 | 4 | |
| | Applicant summary of interview with examiner | 5 | 5 | |
| | Applicant Arguments/Remarks Made in an Amendment | 6 | 9 | |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 32581 <br> c3309c7d767f6772e3babdfacfe5fa839928cd44 | no | 2 |

**Warnings:**

**Information:**

| | | **Total Files Size (in bytes):** | 147460 |
|---|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Docket No.: EDGE.005C2                                    **Customer No. 20995**

---

## INFORMATION DISCLOSURE STATEMENT

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| App. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3734 |
| Conf. No. | : | 7926 |

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith.  Copies of any listed foreign and non-patent literature references are being submitted.  Identification herein is not an admission that any of the references are prior art to the above captioned application.

**Related Applications of Assignee**

Applicant wishes to draw the Examiner's attention to the following patents and/or applications in the same patent family as the present application.

| Attorney Docket | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348 (U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

**Application No.:**     **14/698,673**
**Filing Date:**            **April 28, 2015**

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

**Timing of Disclosure**

This Information Disclosure Statement is being filed after receipt of a First Office Action, but before the mailing date of a Final Action and before the mailing date of a Notice of Allowance. This Statement is accompanied by the fees set forth in 37 CFR 1.17(p). The Commissioner is hereby authorized to charge any additional fees which may be required or to credit any overpayment to Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>February 5, 2016</u>                    By:<u>/Theodore G. Papagiannis/</u>
                                                        Theodore G. Papagiannis
                                                        Registration No. 61,546
                                                        Attorney of Record
                                                        Customer No. 20995
                                                        (949) 760-0404

22509896

-2-

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| **PATENT APPLICATION FEE DETERMINATION RECORD**<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/698,673 | Filing Date<br>04/28/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:**  ☐ LARGE   ☒ SMALL   ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☒ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | **140** |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 20 minus 20 = | * 0 | x $40 = | **0** |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 2 minus 3 = | * 0 | x $210 = | **0** |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | **140** |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| **AMENDMENT** | **02/05/2016** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/JESSICA GAYNOR/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        03/07/2016
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/07/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

| **Office Action Summary** | **Application No.** 14/698,673 | **Applicant(s)** IGNON ET AL. |
|---|---|---|
| | **Examiner** CHRISTIAN KNAUSS | **Art Unit** 3731 | **AIA (First Inventor to File) Status** No |

| -- The MAILING DATE of this communication appears on the cover sheet with the correspondence address -- |
|---|

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) months from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on *2/5/16*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☒ This action is **FINAL**.  2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☒ Claim(s) *2,4-6 and 8-21* is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) *2,4-6 and 8-21* is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All  b) ☐ Some**  c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____.
   3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

Application/Control Number: 14/698,673                                            Page 2
Art Unit: 3731

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application is being examined under the pre-AIA first to invent

provisions.

### *Response to Amendment*

2.      Claims 2, 4-6, and 8-21 are pending in the application.  Claims 1, 3, and 7 have

been canceled.  Claims 2, 8, 9, 11, 14, and 20 have been amended.

### *Claim Objections*

3.      Claim 9 is objected to because of the following informalities:  Claim 9 is

dependent on claim 1, which is canceled.  For examination purposes, the Examiner has

assumed that claim 9 is dependent on claim 2.  Appropriate correction is required.

### *Claim Rejections - 35 USC § 112*

4.      The following is a quotation of 35 U.S.C. 112(b):
        (b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
        pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
        regards as the invention.


        The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
        The specification shall conclude with one or more claims particularly pointing out and distinctly
        claiming the subject matter which the applicant regards as his invention.

5.      Claims 4-6 and 17-19 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-

AIA), second paragraph, as being indefinite for failing to particularly point out and

distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA

the applicant regards as the invention.

6.      Claim 4 recites the limitation "the at least one fluid container" in line 3.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

7.      Claim 4 recites that the console comprises a display, which comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.  It is unclear if this user input device is the same user input device from claim 1, or a different user input device.  Appropriate correction is required.

8.      Claim 5 is dependent on rejected claim 4, thus is also rendered indefinite. Appropriate correction is required.

9.      Claim 6 recites the limitation "the at least one fluid container" in lines 1-2.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

10.      Claim 17 recites the limitation "the at least one fluid container" in line 3.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

11.      Claim 17 recites the limitation "console" in line 1.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

12.      Claim 18 is dependent on rejected claim 17, thus is also rendered indefinite. Appropriate correction is required.

Application/Control Number: 14/698,673                                    Page 4
Art Unit: 3731

13.     Claim 19 recites the limitation "the at least one fluid container" in lines 1-2.  There

is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is

required.


### *Claim Rejections - 35 USC § 103*

14.     The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which
> said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.


15.     Claims 2, 4, 6, 8-12, 14-17, 19, and 20 are rejected under pre-AIA 35 U.S.C.

102(b) as anticipated by Coleman et al. (US 2001/0049511 A1) ("Coleman") or, in the

alternative, under pre-AIA 35 U.S.C. 103(a) as obvious over Coleman et al. (US

2001/0049511 A1) ("Coleman") in view of Greenberg (US 2003/0093089 A1).

        Regarding claim 2, Coleman discloses (Figures 4-6) a system for performing a

skin treatment procedure, the system comprising: a console (Figure 6) including a

manifold (see Figure 6 below), the manifold being in fluid communication with a first fluid

container (60C) and at least a second fluid container (60B), the first fluid container and

the at least second fluid container capable of containing a treatment material for a skin

treatment procedure; a handpiece assembly (Figures 5A and 5B) comprising a tip, the

tip capable of contacting a skin surface of a subject; a supply conduit (51A) placing the

manifold of the console in fluid communication with the handpiece assembly, wherein a

distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is capable of controlling a flow of treatment material from the first

fluid container and at least the second fluid container through the supply conduit; a

waste conduit (51B) in fluid communication with the tip of the handpiece assembly to

remove waste away from a skin surface of a subject during a skin treatment procedure,

wherein the waste conduit is operatively coupled to a vacuum source (64A); and a user

input device (59A, 59B) capable of receiving instructions from a user; wherein the

system is capable of permitting a user to select a treatment material from the first fluid

container or the at least second fluid container to be delivered through the supply

conduit to the handpiece assembly.



FIG. 6

Application/Control Number: 14/698,673                                    Page 6
Art Unit: 3731

Regarding claim 8, Coleman discloses (Figure 6) that the manifold is configured to be placed in fluid communication with at least four fluid containers (60A, 60B, 60C, 61A).

Regarding claim 9, Coleman discloses that treatment materials from the first fluid container and the at least second fluid container are delivered to the supply conduit simultaneously (paragraph 0060).

Regarding claim 10, the console disclosed by Coleman is capable of being moved.

Regarding claim 11, Coleman discloses that the tip of the handpiece assembly is capable of exfoliating skin tissue as the handpiece assembly is moved relative to a skin surface of a subject (paragraphs 0009-0010).

Regarding claim 12, Coleman discloses (Figures 5A and 5B) that each of the supply conduit (51A) and the waste conduit (51B) connects to a corresponding connector along a proximal end of the handpiece assembly.

Regarding claim 14, Coleman discloses (Figures 4-6) a system for performing a skin treatment procedure, the system comprising: a manifold (see Figure 6 above) in fluid communication with at least two fluid containers (60B, 60C), each of the at least two fluid containers capable of containing a treatment material; a handpiece assembly (Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin surface of a subject; and a supply conduit (51A) placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is capable of securing to the handpiece assembly; wherein the manifold is capable of controlling a flow of

treatment material from each of the fluid containers through the supply conduit; wherein

the system is capable of permitting a user to select the fluid container from which

treatment material is delivered to the supply conduit.

Regarding claim 15, Coleman discloses (Figure 6) a waste conduit (51B) in fluid

communication with the handpiece assembly capable of removing waste from a skin

surface of a subject during a procedure, wherein the waste conduit is operatively couple

to a vacuum source (65A).

Regarding claim 16, Coleman discloses (Figures 5A and 5B) a user input device

(59A and 59B) for selecting a treatment material to be passed through the supply

conduit to the handpiece assembly.

Regarding claim 20, Coleman discloses that the tip of the handpiece assembly is

capable of exfoliating skin tissue as the handpiece assembly is moved relative to a skin

surface of a subject (paragraphs 0009-0010).


In the alternative, regarding claims 2, 4, and 6, Coleman discloses (Figures 4-6)

a system for performing a skin treatment procedure, the system comprising: a console

(Figure 6) including a manifold (see Figure 6 below), the manifold being in fluid

communication with a first fluid container (60C) and at least a second fluid container

(60B), the first fluid container and the at least second fluid container capable of

containing a treatment material for a skin treatment procedure; a handpiece assembly

(Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin surface of a

subject; a supply conduit (51A) placing the manifold of the console in fluid

communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; wherein the manifold is capable of controlling a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; a waste conduit (51B) in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source (64A); and a user input device (59A, 59B) capable of receiving instructions from a user; wherein the system is capable of permitting a user to select a treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly.  However, Coleman fails to disclose that the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly. Coleman further fails to disclose that the at least one fluid container is releasably coupled to the manifold.

Greenberg discloses (Figures 1 and 2) a system for performing a skin treatment procedure, the system comprising: a console (10) including a manifold, a fluid container (18), a handpiece assembly (16), a supply conduit (20), a waste conduit (20), a display (front surface of console containing 52, 56), wherein the display comprises a user input device (30, 32, 42, 48, 50) capable of facilitating controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.  Greenberg discloses (Figure 2) that the fluid container is releasably coupled to the manifold.

Application/Control Number: 14/698,673                                    Page 9
Art Unit: 3731

It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the console to include a display, wherein the display

comprises a user input device to facilitate controlling a flow of treatment materials from

the at least one fluid container to the handpiece assembly, as taught by Greenberg.

This modification would provide advantages such as a display including a timer to assist

the operator in keeping track of time that the machine has been used for (paragraph

0063) and would allow the operator to make adjustments to features such as vacuum

suction (paragraph 0059).  It would have been obvious to one having ordinary skill in the

art at the time the invention was made to modify the at least one fluid container to be

releasably coupled to the manifold, as taught by Greenberg.  This modification would

allow the operator to attach containers of different medical treatment materials to the

manifold to be applied to the skin.

Regarding claims 14, 17, and 19, Coleman discloses (Figures 4-6) a system for

performing a skin treatment procedure, the system comprising: a manifold (see Figure 6

above) in fluid communication with at least two fluid containers (60B, 60C), each of the

at least two fluid containers capable of containing a treatment material; a handpiece

assembly (Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin

surface of a subject; and a supply conduit (51A) placing the manifold in fluid

communication with the handpiece assembly, wherein a distal end of the supply conduit

is capable of securing to the handpiece assembly; wherein the manifold is capable of

controlling a flow of treatment material from each of the fluid containers through the

Application/Control Number: 14/698,673                                      Page 10
Art Unit: 3731

supply conduit; wherein the system is capable of permitting a user to select the fluid

container from which treatment material is delivered to the supply conduit.

However, Coleman fails to disclose that the console comprises a display,

wherein the display comprises a user input device to facilitate controlling a flow of

treatment materials from the at least one fluid container to the handpiece assembly.

Coleman further fails to disclose that the at least one fluid container is releasably

coupled to the manifold.

Greenberg discloses (Figures 1 and 2) a system for performing a skin treatment

procedure, the system comprising: a console (10) including a manifold, a fluid container

(18), a handpiece assembly (16), a supply conduit (20), a waste conduit (20), a display

(front surface of console containing 52, 56), wherein the display comprises a user input

device (30, 32, 42, 48, 50) capable of facilitating controlling a flow of treatment materials

from the at least one fluid container to the handpiece assembly.  Greenberg discloses

(Figure 2) that the fluid container is releasably coupled to the manifold.

It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the console to include a display, wherein the display

comprises a user input device to facilitate controlling a flow of treatment materials from

the at least one fluid container to the handpiece assembly, as taught by Greenberg.

This modification would provide advantages such as a display including a timer to assist

the operator in keeping track of time that the machine has been used for (paragraph

0063) and would allow the operator to make adjustments to features such as vacuum

suction (paragraph 0059).  It would have been obvious to one having ordinary skill in the

Application/Control Number: 14/698,673                                            Page 11
Art Unit: 3731

art at the time the invention was made to modify the at least one fluid container to be

releasably coupled to the manifold, as taught by Greenberg.  This modification would

allow the operator to attach containers of different medical treatment materials to the

manifold to be applied to the skin.


16.      Claims 5 and 18 are rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Coleman et al. (US 2001/0049511 A1) ("Coleman") in view of

Greenberg (US 2003/0093089 A1) as applied to claims 4 and 17, respectively, above,

and further in view of Duchon et al. (US 2003/0018252 A1) ("Duchon").

       Regarding claims 5 and 18, Coleman as modified by Greenberg teaches the

invention substantially as claimed.  However, the combined teaching fails to teach that

the user input device comprises a touch screen.

       Duchon teaches that it was well-known in the art at the time the invention was

made for a console to include a touch screen user input (432).  Duchon teaches that a

touch screen is an equivalent structure to a selector dial, keypad, button, etc. that can

be used by a user for console input.

       It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the user input device taught by Coleman in view of

Greenberg to be a touch screen user input because Duchon teaches that a touch

screen is an equivalent structure to a input knob, button, keypad, dial, etc. that is known

in the art for entering input into a console system.

Application/Control Number: 14/698,673                                    Page 12
Art Unit: 3731

17.     Claims 13 and 21 rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Coleman et al. (US 2001/0049511 A1) ("Coleman") in view of Nelson

et al. (US 3,865,352) ("Nelson") or in the alternative over Coleman et al. (US

2001/0049511 A1) ("Coleman") in view Greenberg (US 2003/0093089 A1) as applied to

claims 2 and 14, respectively, above, and in further view of Nelson et al. (US 3,865,352)

("Nelson").

        Regarding claims 13 and 21, Coleman discloses the invention substantially as

highlighted in the rejections above.  However, Coleman fails to disclose that the

manifold of the console is configured to be placed in fluid communication with a

container comprising an antimicrobial fluid, or other disinfecting agent for periodic

flushing of the manifold.

        Nelson teaches a device for mixing and dispensing materials, comprising: a

manifold (25), the manifold in fluid communication with at least one fluid container (15,

16, 38), the at least one fluid container being configured to contain a fluid material; a

handpiece assembly (10); the manifold and the handpiece assembly in fluid

communication.  Nelson further teaches that the manifold of the console is in fluid

communication with a container (38) comprising a solvent for periodic flushing and

cleaning of the manifold.

        It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the manifold to be placed in fluid communication with a

container comprising a solvent for periodic flushing of the manifold, as taught by Nelson.

Application/Control Number: 14/698,673                                    Page 13
Art Unit: 3731

This modification would clean the manifold and supply conduit of the materials from the

at least one fluid container (Column 2, lines 18-22).


### Response to Arguments

18.     Applicant's arguments filed 2/5/16 have been fully considered but they are not

persuasive.  During the interview held on 8/7/15, the Examiner provided a suggested

strategy as to how to amend the claims to overcome the previous rejections.  However,

specific claim language was not agreed upon.  After further review of the specification,

the Examiner suggests that the Applicant amend the claims to recite that the system is

configured to permit a user to *individually/independently* select the treatment material

from the first fluid container or the at least second fluid container to be delivered through

the supply conduit to the handpiece assembly, as disclosed in paragraph 0129.


### Conclusion

19.     **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

         A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

Application/Control Number: 14/698,673                                    Page 14
Art Unit: 3731

the advisory action.  In no event, however, will the statutory period for reply expire later

than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the

examiner should be directed to CHRISTIAN KNAUSS whose telephone number is

(571)272-8641.  The examiner can normally be reached on Monday-Friday 8:00 am - 5

pm EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Corrine McDermott can be reached on (571)272-4754.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/C. K./                                            /RYAN J. SEVERSON/
Examiner, Art Unit 3731                             Primary Examiner, Art Unit 3731

| | | Application/Control No. | | Applicant(s)/Patent Under Reexamination | |
|---|---|---|---|---|---|
| ***Notice of References Cited*** | | 14/698,673 | | IGNON ET AL. | |
| | | Examiner | | Art Unit | |
| | | CHRISTIAN KNAUSS | | 3731 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2001/0049511 A1 | 12-2001 | COLEMAN, WILLIAM P. | A61H9/00 | 604/290 |
| * | B | US-3,865,352 A | 02-1975 | Nelson; Charles Edward | B01F3/10 | 138/42 |
| * | C | US-2003/0018252 A1 | 01-2003 | Duchon, Douglas J. | A61B6/481 | 600/432 |
| * | D | US-2003/0093089 A1 | 05-2003 | Greenberg, Ronald Allan | A61B17/545 | 606/131 |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)
20160224

**Notice of References Cited**

Part of Paper No.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | 3734 |
| *(Multiple sheets used when necessary)* | Examiner | Christian D. Knauss |
| SHEET 1 OF 2 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,631,583 | 03-17-1953 | Lavergne | |
| | 2 | 4,170,821 | 10-16-1979 | Booth | |
| | 3 | 5,697,920 | 12-16-1997 | Gibbons | |
| | 4 | 5,735,833 | 04-07-1998 | Olson | |
| | 5 | 6,129,701 | 10-10-2000 | Cimino | |
| | 6 | 6,162,218 | 12-19-2000 | Elbrecht et al. | |
| | 7 | 6,193,589 | 02-27-2001 | Khalaj | |
| | 8 | 6,235,039 | 05-22-2001 | Parkin et al. | |
| | 9 | 6,589,218 | 07-08-2003 | Garcia | |
| | 10 | 6,743,211 | 06-01-2004 | Prausnitz et al. | |
| | 11 | 9,056,193 | 06-16-2015 | Ignon et al. | |
| | 12 | 2001/0037118 | 11-01-2001 | Shadduck | |
| | 13 | 2002/0133176 | 09-19-2002 | Parkin et al. | |
| | 14 | 2002/0151908 | 10-17-2002 | Mallett Sr. et al. | |
| | 15 | 2003/0167032 | 09-04-2003 | Ignon | |
| | 16 | 2004/0092959 | 05-13-2004 | Bernaz | |
| | 17 | 2004/0162565 | 08-19-2004 | Carson et al. | |
| | 18 | 2004/0254587 | 12-16-2004 | Park | |
| | 19 | 2006/0161178 | 07-20-2006 | Lee | |
| | 20 | 2006/0189964 | 08-24-2006 | Anderson | |
| | 21 | 2008/0103563 | 05-01-2008 | Powell | |
| | 22 | 2008/0221548 | 09-11-2008 | Danenberg et al. | |
| | 23 | 2009/0062815 | 03-05-2009 | Karasiuk et al. | |
| | 24 | 2010/0217357 | 08-26-2010 | Da Silva | |
| | 25 | 2012/0041338 | 02-16-2012 | Chickering III et al. | |
| | 26 | 2015/0230824 | 08-20-2015 | Shadduck | |
| | 27 | 2015/0230825 | 08-20-2015 | Shadduck | |
| | 28 | 2015/0231379 | 08-20-2015 | Ignon et al. | |
| | 29 | 2015/0265822 | 09-24-2015 | Ignon et al. | |
| | 30 | 2015/0290442 | 10-15-2015 | Ignon et al. | |

| Examiner Signature | /CHRISTIAN D KNAUSS/ | Date Considered | 02/25/2016 |
|---|---|---|---|

***Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T¹** - Place a check mark in this area when an English language Translation is attached.
ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.D.K/

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | 3734 |
| *(Multiple sheets used when necessary)* | Examiner | Christian D. Knauss |
| SHEET 2 OF 2 | Attorney Docket No. | EDGE.005C2 |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document<br>*Country Code-Number-Kind Code*<br>Example: JP 1234567 A1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | $T^1$ |
|---|---|---|---|---|---|---|
| | | | | | | |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | $T^1$ |
|---|---|---|---|
| | | | |

22505364

| Examiner Signature | /CHRISTIAN D KNAUSS/ | Date Considered | 02/25/2016 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

$T^1$ - Place a check mark in this area when an English language Translation is attached.
ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.D.K/

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTIAN KNAUSS | 3734 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| A61B17/54, 545 | 7/23/15 | CDK |
| A61B2017/00017, 00199, 00743, 00747, 00761 | 7/23/15 | CDK |
| A61B19/0248 | 7/23/15 | CDK |
| A61B2019/025 | 7/23/15 | CDK |
| A61B2217/005, 007 | 7/23/15 | CDK |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Performed inventor and assignee searches in PALM and EAST | 7/23/15 | CDK |
| Performed EAST search (see attached EAST search history) | 7/23/15 | CDK |
| Performed  forward/backward searches in EAST | 7/23/15 | CDK |
| Performed class/text searchs and combinations in EAST | 7/23/15 | CDK |
| Updated EAST search (see attached EAST search history) | 2/25/16 | CDK |
| Consulted Ryan Severson | 2/25/16 | CDK |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| /C.K./ Examiner.Art Unit 3731 | |
|---|---|
| | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 29 | (roger near2 ignon).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:00 |
| S2 | 101 | (scott near2 mallett).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:04 |
| S3 | 3 | (abraham near2 solano).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:06 |
| S4 | 100 | (william near2 cohen).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:07 |
| S5 | 24 | (edge near2 systems).as. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:09 |
| S6 | 310 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US- | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:14 |

5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR US-5807353-$.DID. OR US-5810842-$.DID. OR US-5813416-$.DID. OR US-5817050-$.DID. OR US-5846215-$.DID. OR US-5848998-$.DID. OR US-5861142-$.DID. OR US-5873881-$.DID. OR US-5879323-$.DID. OR US-5882201-$.DID. OR US-5885260-$.DID. OR US-5908401-$.DID. OR US-5919152-$.DID. OR US-5954730-$.DID. OR US-5971999-$.DID. OR US-5980555-$.DID. OR US-6019749-$.DID. OR US-6024733-$.DID. OR US-6027402-$.DID. OR US-6039745-$.DID. OR US-6042552-$.DID. OR US-6080165-$.DID. OR US-6080166-$.DID. OR US-6090085-$.DID. OR US-6120512-$.DID. OR US-6136008-$.DID. OR US-6139553-$.DID. OR US-6139554-$.DID. OR US-6142155-$.DID. OR US-6149634-$.DID. OR US-6159226-$.DID. OR US-6162232-$.DID. OR US-6183451-$.DID. OR US-6183483-$.DID. OR US-6231593-$.DID. OR US-6238275-$.DID. OR US-6241739-$.DID. OR US-6264666-$.DID. OR US-6277128-$.DID. OR US-6283978-$.DID. OR US-6299620-$.DID. OR US-6306119-$.DID. OR US-6306147-$.DID. OR US-6322568-$.DID. OR US-6368333-$.DID. OR US-6387103-$.DID. OR US-6409736-$.DID. OR US-6410599-$.DID. OR US-6414032-$.DID. OR US-6420431-$.DID. OR US-6423078-$.DID. OR US-6423750-$.DID. OR US-6432113-$.DID. OR US-6471712-$.DID. OR US-6477410-$.DID. OR US-6482212-$.DID. OR US-6488646-$.DID. OR US-6494856-$.DID. OR US-6500183-$.DID. OR US-6503256-$.DID. OR US-6511486-$.DID. OR US-6514262-$.DID. OR US-6527783-$.DID. OR US-6535761-$.DID. OR US-6540757-$.DID. OR US-6562013-$.DID. OR US-6562050-$.DID. OR US-6564093-$.DID. OR US-6565535-$.DID. OR US-6582442-$.DID. OR US-6592595-$.DID. OR US-6629983-$.DID. OR US-6641591-$.DID. OR US-6645184-$.DID. OR US-6652888-$.DID. OR US-6673081-$.DID. OR US-6673082-$.DID. OR US-6685853-$.DID. OR US-6687537-$.DID. OR US-6695853-$.DID. OR US-6735470-$.DID. OR US-6743215-$.DID. OR US-6764493-$.DID. OR US-6869611-$.DID. OR US-6905487-$.DID. OR US-6911031-$.DID. OR US-6924649-$.DID. OR US-6926681-$.DID. OR US-6942649-$.DID. OR US-7001355-$.DID. OR US-7004933-$.DID. OR US-7044938-$.DID. OR US-7052503-$.DID. OR US-7069073-$.DID. OR US-7070488-$.DID. OR US-7083580-$.DID. OR US-7087063-$.DID. OR US-7094252-$.DID. OR US-7115275-$.DID. OR US-7135011-$.DID. OR US-7153311-$.DID. OR US-7197359-$.DID. OR US-7198623-$.DID. OR US-

7241208-$.DID. OR US-7276051-$.DID. OR US-7314326-$.DID. OR US-7316657-$.DID. OR US-7318828-$.DID. OR US-7320691-$.DID. OR US-7320801-$.DID. OR US-7354423-$.DID. OR US-7364565-$.DID. OR US-7384405-$.DID. OR US-7427273-$.DID. OR US-7458944-$.DID. OR US-7476205-$.DID. OR US-7477938-$.DID. OR US-7482314-$.DID. OR US-7489989-$.DID. OR US-7507228-$.DID. OR US-7582067-$.DID. OR US-7597900-$.DID. OR US-7597901-$.DID. OR US-7658742-$.DID. OR US-7678120-$.DID. OR US-7744582-$.DID. OR US-7789886-$.DID. OR US-7837695-$.DID. OR US-7901373-$.DID. OR US-7951156-$.DID. OR US-8025669-$.DID. OR US-8048089-$.DID. OR US-8066716-$.DID. OR US-8088085-$.DID. OR US-8128638-$.DID. OR US-8221437-$.DID. OR US-8236008-$.DID. OR US-8277287-$.DID. OR US-8337513-$.DID. OR US-8343116-$.DID. OR US-8814836-$.DID. OR US-20010023351-$.DID. OR US-20010049511-$.DID. OR US-20020016601-$.DID. OR US-20020041891-$.DID. OR US-20020058952-$.DID. OR US-20020107527-$.DID. OR US-20020133110-$.DID. OR US-20020151826-$.DID. OR US-20020188261-$.DID. OR US-20030012415-$.DID. OR US-20030060834-$.DID. OR US-20030093040-$.DID. OR US-20030093089-$.DID. OR US-20030097139-$.DID. OR US-20030187462-$.DID. OR US-20030208159-$.DID. OR US-20030212127-$.DID. OR US-20030212415-$.DID. OR US-20040010222-$.DID. OR US-20040010269-$.DID. OR US-20040087972-$.DID. OR US-20040092895-$.DID. OR US-20040097967-$.DID. OR US-20040122447-$.DID. OR US-20040143274-$.DID. OR US-20040166172-$.DID. OR US-20040219179-$.DID. OR US-20040236291-$.DID. OR US-20040243149-$.DID. OR US-20040267285-$.DID. OR US-20050037034-$.DID. OR US-20050038448-$.DID. OR US-20050059940-$.DID. OR US-20050084509-$.DID. OR US-20050148958-$.DID. OR US-20050203111-$.DID. OR US-20050209611-$.DID. OR US-20050283176-$.DID. OR US-20060002960-$.DID. OR US-20060191562-$.DID. OR US-20060200099-$.DID. OR US-20060200172-$.DID. OR US-20060200173-$.DID. OR US-20060212029-$.DID. OR US-20060253125-$.DID. OR US-20060264893-$.DID. OR US-20070005078-$.DID. OR US-20070043382-$.DID. OR US-20070065515-$.DID. OR US-20070088371-$.DID. OR US-20070154502-$.DID. OR US-20070156124-$.DID. OR US-20070178121-$.DID. OR US-20070198031-$.DID. OR US-20070208353-$.DID. OR US-20070239173-$.DID. OR US-20080027328-$.DID. OR US-20080091179-$.DID. OR US-20080119781-$.DID. OR US-20080132914-$.DID. OR US-20080139974-$.DID. OR US-20080193493-$.DID. OR US-20080200861-

.DID. OR US-20080214987-$.DID. OR US-
20080215068-$.DID. OR US-20080243039-
$.DID. OR US-20080287864-$.DID. OR US-
20080300529-$.DID. OR US-20080300552-
$.DID. OR US-20090048557-$.DID. OR US-
20090053390-$.DID. OR US-20090099091-
$.DID. OR US-20090099093-$.DID. OR US-
20090124985-$.DID. OR US-20090138026-
$.DID. OR US-20090177171-$.DID. OR US-
20090192442-$.DID. OR US-20090222023-
$.DID. OR US-20100045427-$.DID. OR US-
20100049177-$.DID. OR US-20100049210-
$.DID. OR US-20110054490-$.DID. OR US-
20110066162-$.DID. OR US-20110082415-
$.DID. OR US-20120022435-$.DID. OR US-
20120136374-$.DID. OR US-20130018317-
$.DID. OR US-20130066336-$.DID. OR US-
20130096577-$.DID. OR US-20130102978-
$.DID. OR US-20130144280-$.DID. OR US-
20130158547-$.DID. OR US-20140343481-
$.DID. OR US-20140343574-$.DID. OR US-
20150032047-$.DID. OR JP-1234567-$.DID.
OR DE-3421390-$.DID. OR EP-0258901-
$.DID. OR EP-0564392-$.DID. OR US-
1184922-$.DID. OR JP-1993088552-$.DID. OR
JP-12031993-$.DID. OR JP-09294747-$.DID.
OR JP-11181997-$.DID. OR JP-2003339713-
$.DID. OR JP-12022003-$.DID. OR JP-
2006503627-$.DID. OR WO-02022006-$.DID.
OR JP-2006204767-$.DID. OR JP-10082006-
$.DID. OR KR-200280320-$.DID.

| S7 | 316 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:15 |

US-5470323-$.DID. OR US-5484427-$.DID.
OR US-5562642-$.DID. OR US-5611687-
$.DID. OR US-5612797-$.DID. OR US-
5674235-$.DID. OR US-5676643-$.DID. OR
US-5676648-$.DID. OR US-5683971-$.DID.
OR US-5707383-$.DID. OR US-5713785-
$.DID. OR US-5759185-$.DID. OR US-
5779519-$.DID. OR US-5800446-$.DID. OR
US-5807353-$.DID. OR US-5810842-$.DID.
OR US-5813416-$.DID. OR US-5817050-
$.DID. OR US-5846215-$.DID. OR US-
5848998-$.DID. OR US-5861142-$.DID. OR
US-5873881-$.DID. OR US-5879323-$.DID.
OR US-5882201-$.DID. OR US-5885260-
$.DID. OR US-5908401-$.DID. OR US-
5919152-$.DID. OR US-5954730-$.DID. OR
US-5971999-$.DID. OR US-5980555-$.DID.
OR US-6019749-$.DID. OR US-6024733-
$.DID. OR US-6027402-$.DID. OR US-
6039745-$.DID. OR US-6042552-$.DID. OR
US-6080165-$.DID. OR US-6080166-$.DID.
OR US-6090085-$.DID. OR US-6120512-
$.DID. OR US-6136008-$.DID. OR US-
6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID.
OR US-6159226-$.DID. OR US-6162232-
$.DID. OR US-6183451-$.DID. OR US-
6183483-$.DID. OR US-6231593-$.DID. OR
US-6238275-$.DID. OR US-6241739-$.DID.
OR US-6264666-$.DID. OR US-6277128-
$.DID. OR US-6283978-$.DID. OR US-
6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID.
OR US-6368333-$.DID. OR US-6387103-
$.DID. OR US-6409736-$.DID. OR US-
6410599-$.DID. OR US-6414032-$.DID. OR
US-6420431-$.DID. OR US-6423078-$.DID.
OR US-6423750-$.DID. OR US-6432113-
$.DID. OR US-6471712-$.DID. OR US-
6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID.
OR US-6500183-$.DID. OR US-6503256-
$.DID. OR US-6511486-$.DID. OR US-
6514262-$.DID. OR US-6527783-$.DID. OR
US-6535761-$.DID. OR US-6540757-$.DID.
OR US-6562013-$.DID. OR US-6562050-
$.DID. OR US-6564093-$.DID. OR US-
6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID.
OR US-6641591-$.DID. OR US-6645184-
$.DID. OR US-6652888-$.DID. OR US-
6673081-$.DID. OR US-6673082-$.DID. OR
US-6685853-$.DID. OR US-6687537-$.DID.
OR US-6695853-$.DID. OR US-6735470-
$.DID. OR US-6743215-$.DID. OR US-
6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID.
OR US-6924649-$.DID. OR US-6926681-
$.DID. OR US-6942649-$.DID. OR US-
7001355-$.DID. OR US-7004933-$.DID. OR
US-7044938-$.DID. OR US-7052503-$.DID.
OR US-7069073-$.DID. OR US-7070488-
$.DID. OR US-7083580-$.DID. OR US-
7087063-$.DID. OR US-7094252-$.DID. OR

US-7115275-$.DID. OR US-7135011-$.DID.
OR US-7153311-$.DID. OR US-7197359-
$.DID. OR US-7198623-$.DID. OR US-
7241208-$.DID. OR US-7276051-$.DID. OR
US-7314326-$.DID. OR US-7316657-$.DID.
OR US-7318828-$.DID. OR US-7320691-
$.DID. OR US-7320801-$.DID. OR US-
7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID.
OR US-7458944-$.DID. OR US-7476205-
$.DID. OR US-7477938-$.DID. OR US-
7482314-$.DID. OR US-7489989-$.DID. OR
US-7507228-$.DID. OR US-7582067-$.DID.
OR US-7597900-$.DID. OR US-7597901-
$.DID. OR US-7658742-$.DID. OR US-
7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID.
OR US-7901373-$.DID. OR US-7951156-
$.DID. OR US-8025669-$.DID. OR US-
8048089-$.DID. OR US-8066716-$.DID. OR
US-8088085-$.DID. OR US-8128638-$.DID.
OR US-8221437-$.DID. OR US-8236008-
$.DID. OR US-8277287-$.DID. OR US-
8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-
20020188261-$.DID. OR US-20030012415-
$.DID. OR US-20030060834-$.DID. OR US-
20030093040-$.DID. OR US-20030093089-
$.DID. OR US-20030097139-$.DID. OR US-
20030187462-$.DID. OR US-20030208159-
$.DID. OR US-20030212127-$.DID. OR US-
20030212415-$.DID. OR US-20040010222-
$.DID. OR US-20040010269-$.DID. OR US-
20040087972-$.DID. OR US-20040092895-
$.DID. OR US-20040097967-$.DID. OR US-
20040122447-$.DID. OR US-20040143274-
$.DID. OR US-20040166172-$.DID. OR US-
20040219179-$.DID. OR US-20040236291-
$.DID. OR US-20040243149-$.DID. OR US-
20040267285-$.DID. OR US-20050037034-
$.DID. OR US-20050038448-$.DID. OR US-
20050059940-$.DID. OR US-20050084509-
$.DID. OR US-20050148958-$.DID. OR US-
20050203111-$.DID. OR US-20050209611-
$.DID. OR US-20050283176-$.DID. OR US-
20060002960-$.DID. OR US-20060191562-
$.DID. OR US-20060200099-$.DID. OR US-
20060200172-$.DID. OR US-20060200173-
$.DID. OR US-20060212029-$.DID. OR US-
20060253125-$.DID. OR US-20060264893-
$.DID. OR US-20070005078-$.DID. OR US-
20070043382-$.DID. OR US-20070065515-
$.DID. OR US-20070123808-$.DID. OR US-
20070088371-$.DID. OR US-20070154502-
$.DID. OR US-20070156124-$.DID. OR US-
20070178121-$.DID. OR US-20070198031-
$.DID. OR US-20070208353-$.DID. OR US-
20070239173-$.DID. OR US-20080027328-
$.DID. OR US-20080091179-$.DID. OR US-

20080119781-$.DID. OR US-20080142394-
$.DID. OR US-20080139974-$.DID. OR US-
20080193493-$.DID. OR US-20080200861-
$.DID. OR US-20080214987-$.DID. OR US-
20080215068-$.DID. OR US-20080243039-
$.DID. OR US-20080287864-$.DID. OR US-
20080300529-$.DID. OR US-20080300552-
$.DID. OR US-20090048557-$.DID. OR US-
20090053390-$.DID. OR US-20090099091-
$.DID. OR US-20090099093-$.DID. OR US-
20090124985-$.DID. OR US-20090138026-
$.DID. OR US-20090177171-$.DID. OR US-
20090192442-$.DID. OR US-20090222023-
$.DID. OR US-20100045427-$.DID. OR US-
20100049177-$.DID. OR US-20100049210-
$.DID. OR US-20110054490-$.DID. OR US-
20110066162-$.DID. OR US-20110082415-
$.DID. OR US-20120022435-$.DID. OR US-
20120136374-$.DID. OR US-20130018317-
$.DID. OR US-20130066336-$.DID. OR US-
20130096577-$.DID. OR US-20130102978-
$.DID. OR US-20130144280-$.DID. OR US-
20130158547-$.DID. OR US-20140343481-
$.DID. OR US-20140343574-$.DID. OR US-
20150032047-$.DID. OR JP-1234567-$.DID.
OR DE-3421390-$.DID. OR EP-0258901-
$.DID. OR EP-0564392-$.DID. OR US-
1184922-$.DID. OR JP-1993088552-$.DID. OR
JP-12031993-$.DID. OR JP-09294747-$.DID.
OR JP-11181997-$.DID. OR JP-2003339713-
$.DID. OR JP-12022003-$.DID. OR JP-
2006503627-$.DID. OR WO-02022006-$.DID.
OR JP-2006204767-$.DID. OR JP-10082006-
$.DID. OR KR-200280320-$.DID.

| | | | | | | |
|---|---|---|---|---|---|---|
| S8 | 0 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:57 |
| S9 | 484 | (console and manifold and fluid and container and hand$7 and (conduit tube) and vacuum) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 11:04 |
| S10 | 498 | A61B17/54.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:13 |
| S11 | 136 | A61B17/545.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:29 |
| S12 | 583 | A61B19/0248.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:43 |
| S13 | 511 | A61B2019/025.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:50 |
| S14 | 1159 | A61B2017/00199.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:59 |
| S15 | 955 | A61B2017/00017.cpc. | US-PGPUB; | OR | ON | 2015/07/21 13:15 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S16 | 2160 | A61B2217/005.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S17 | 1269 | A61B2217/007.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S18 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/21 16:03 |
| S19 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT | OR | ON | 2015/07/22 08:38 |
| S20 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:07 |
| S21 | 51 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6238275" \| "6303119").PN. OR ("6527783").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S22 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S23 | 42 | ("20010023351" \| "4572187" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5354307" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6162232" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6299620" \| "6319211" \| "6391034" \| "6423078" \| "6432113" \| "6629983" \| "6652888").PN. OR ("6942649").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:16 |
| S24 | 38 | ("5037432" \| "5100412" \| "5810842" \| "5971999").PN. OR ("6080165").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:17 |
| S25 | 43 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "6319211").PN. OR ("6592595").URPN. | | | | |
| S26 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S27 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:37 |
| S28 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:38 |
| S29 | 38 | ("2608032" \| "2921585" \| "3574239" \| "3715838" \| "4375740" \| "4482322" \| "4560373" \| "4646480" \| "4671867" \| "4676749" \| "4757814" \| "4765099" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5309683" \| "5460604" \| "5547376" \| "5765759" \| "5810587" \| "5810842" \| "6039745").PN. OR ("6277128").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:39 |
| S30 | 14 | ("3815286" \| "5037431" \| "6183148" \| "6193589" \| "6235039" \| "6238275" \| "6322568").PN. OR ("6503256").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:41 |
| S31 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:44 |
| S32 | 82 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:46 |
| S33 | 107 | ("2608032" \| "2921585" \| "3085573" \| "3574239" \| "3715838" \| "4560373" \| "4646480" \| "4676749" \| "4757814").PN. OR ("5037432").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:53 |
| S34 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:55 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | | | | |
| S35 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 14:45 |
| S36 | 6 | (manifold same container same (antimicrobial disenfect$)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:29 |
| S37 | 140 | (manifold same container same (antimicrobial disenfect$4 surfactant sanitiz$5)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:32 |
| S38 | 378 | (manifold with (clean$4 sanitiz$4) with container) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:44 |
| S39 | 12 | (manifold with (clean$4 sanitiz$4) with container) and (abrasion or microabrasion) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:45 |
| S40 | 17 | ("2894732" \| "3378234" \| "3468637").PN. OR ("3865352").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 09:24 |
| S41 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:06 |
| S42 | 15 | ("20010023351" \| "20030093089" \| "20060116674" \| "20070156124" \| "6250996" \| "7232444" \| "7651508" \| "D286920" \| "D286921" \| "D321340" \| "D326920" \| "D489816" \| "D548326").PN. OR ("D627876").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:12 |
| S43 | 15 | ("5037432" \| "5971999").PN. OR ("6250996").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:13 |
| S44 | 8 | ("20010023351" \| "20030093089" \| "20030212415" \| "6250996" \| "D450842").PN. OR ("D503979").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:14 |
| S45 | 16 | ("20010023351" \| "20030093089" \| | US- | OR | ON | 2015/07/23 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | "20070156124" \| "4653474" \| "6250996" \| "7232444" \| "D192841" \| "D224070" \| "D249550" \| "D326920" \| "D475463" \| "D489816" \| "D627876").PN. OR ("D682414").URPN. | PGPUB; USPAT; USOCR | | | 10:15 |
| S46 | 47 | ("7083580" \| "7087063" \| "7094252" \| "7115275" \| "7135011" \| "7153311" \| "7197359" \| "7198623" \| "7241208" \| "7276051" \| "7314326" \| "7316657" \| "7318828" \| "7320691" \| "7352801" \| "7354423" \| "7364565" \| "7384405" \| "7427273" \| "7458944" \| "7476205" \| "7477938" \| "7482314" \| "7489989" \| "7507067" \| "7579900" \| "7597901" \| "7658742" \| "7678120" \| "7744582" \| "7789886" \| "7837695" \| "7901373" \| "7951156" \| "8025669" \| "8048089" \| "8066716" \| "8088085" \| "8128638" \| "8221437" \| "8236008" \| "8277287" \| "8337513" \| "8343116" \| "8814836" \| "RE37796" \| "RE42960").PN. | US-PGPUB; USPAT | OR | ON | 2016/02/23 12:32 |

**EAST Search History (Interference)**

< This search history is empty>

**2/25/2016 12:31:46 PM**
**C:\ Users\ cknauss\ Documents\ EAST\ Workspaces\ 14698673.wsp**

Ｕｎｉｔｅｄ Ｓｔａｔｅｓ Ｐａｔｅｎｔ ａｎｄ Ｔｒａｄｅｍａｒｋ Ｏｆｆｉｃｅ

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        05/10/2016
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/10/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

PTOL-90A (Rev. 04/07)

| **Applicant-Initiated Interview Summary** | Application No. | Applicant(s) | |
|---|---|---|---|
| | 14/698,673 | IGNON ET AL. | |
| | Examiner | Art Unit | |
| | CHRISTIAN KNAUSS | 3731 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _CHRISTIAN KNAUSS_.                          (3) _MASON MARKS_.

(2) _THEODORE PAPAGIANNIS_.                  (4) _RYAN SEVERSON_.

Date of Interview: _03 May 2016_.

Type:   ☒ Telephonic   ☐ Video Conference
        ☐ Personal [copy given to: ☐ applicant   ☐ applicant's representative]

Exhibit shown or demonstration conducted:   ☐ Yes   ☒ No.
   If Yes, brief description: _____.

Issues Discussed   ☐101  ☐112  ☒102  ☒103  ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _2 and 14_.

Identification of prior art discussed: _Coleman et al. (US 2001/0049511 A1)_.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

_The Examiner and the Applicant's representatives agreed that the proposed amendment from the agenda (attached) would overcome the rejections from the previous Office Action.  The Applicant stated that the proposed amendment (attached) would be made to both independent claims 2 and 14. The amendment will require an updated search by the Examiner.  No allowable subject matter was agreed upon _.

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☒ Attachment

| /RYAN J. SEVERSON/<br>Primary Examiner, Art Unit 3731 | /C. K./<br>Examiner, Art Unit 3731 |
|---|---|

# Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
– An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
(The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.
Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.



# Knobbe Martens

INTELLECTUAL PROPERTY LAW

KNOBBE, MARTENS, OLSON & BEAR, LLP                                        2040 Main St., 14th Fl., Irvine, CA 92614
                                                                                      T (949) 760-0404

                                                                                 Theodore G. Papagiannis
                                                                           Theodore.Papagiannis@knobbe.com

## FACSIMILE TRANSMITTAL SHEET

### CONFIRMATION COPY WILL FOLLOW VIA:

o   MAIL                                        ■ WILL NOT FOLLOW
o   INTERNATIONAL AIRMAIL                        o HAND DELIVERY
o   COURIER                                      o WITH ENCLOSURES
o   E-MAIL                                       o WITHOUT ENCLOSURES

#### Confidentiality Notice:

The documents accompanying this facsimile transmission contain confidential information which may be legally
privileged. The information is intended only for the use of the recipient named below. If you have received this facsimile
in error, please immediately notify us by telephone to arrange for return of the original documents to us; and any
disclosure, copying, distribution or the taking of any action in reliance on the contents of this faxed information is strictly
prohibited.

| | |
|---|---|
| To: | Examiners Christian Knauss & Ryan Severson |
| FIRM: | U.S. Patent and Trademark Office |
| FACSIMILE NO.: | 571 273-8641 |
| OUR REF.: | EDGE.005C2 & EDGE.005C4 |
| APPLICATION NO. | 14/698,673 & 14/700789 |

| | | | |
|---|---|---|---|
| FROM: | Ted G. Papagiannis | | |
| OPERATOR: | Janet Teeters | NO. OF PAGES: 3 | (incl. cover sheet) |
| DATE: | May 3, 2016 | | TIME: 7:40 AM PST |

**IF YOU DID NOT RECEIVE ALL OF THE PAGES PLEASE CALL BACK IMMEDIATELY**
OPERATOR PHONE NO.: (949) 760-0404              FACSIMILE NO.: (949) 760-9502

**MESSAGE:** Dear Examiner Knauss,

Please find the attached agenda to facilitate our upcoming Interview for U.S. Pat. Appl. No.
14/698,673. My colleague, Mason Marks, and I will call you at 2 pm Eastern. Please note
that, in view of the progress made during the previous Interview, we do not plan to discuss
any new issues related to U.S. Pat. Appl. No. 14/700,789 – we plan to briefly reiterate the
agreed-to strategy that will advance the case and overcome the rejections in the pending
Office Action. We look forward to talking to you again. Thank you.

-Ted Papagiannis

Orange County    San Diego    San Francisco    Silicon Valley    Los Angeles    Seattle    Washington DC    knobbe.com

## Interview Agenda for U.S. Appl. No. 14/698,673

*(for discussion purposes only)*

General Details
- **Date/Time**: Tuesday, May 3, 2016 at 2 pm Eastern (11 am Pacific)
- **Participants**: Examiners Christian D. Knauss & Ryan Severson, and representatives for Applicant, Theodore G. Papagiannis & Mason M. Marks.
- **Method/Details**: the Interview will be conducted telephonically (Applicant's representatives will call Examiner Knauss at his direct line (571-272-8641)

Comments
Applicant's representative would like to discuss the various rejections raised in the Office Action mailed on March 7, 2016 (the "Office Action"), including:
- The claim objections and rejections
- The anticipation/obviousness rejections of the claims
- The references cited in the Office Action, including U.S. Publ. No. 2001/0049511 to Coleman et al. and U.S. Publ. No. 2003/0093089 to Greenberg.

Applicant's representative would like to discuss the 35 USC §103 rejections presented in the Office Action. For example, although Applicant does not acquiesce to the rejections in the Office Action, one option for overcoming the rejections includes one or more of the amendments provided below (to Claim 2). The contemplated clarifying amendments to Claim 2 are provided simply for discussion purposes to facilitate the Interview, at the Examiner's request, and are not intended to limit the scope of the subject matter disclosed and/or claimed within the present application.

2.      *(Possible Amendment)* A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

-1-

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and

a vacuum source;

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the [[a ]]vacuum source; and

a user input device for receiving instructions from a user;

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly[[.]]; and

wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.

23251982

-2-

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (07-14)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 14698673 | Filing Date | 2015-04-28 | Docket Number (if applicable) | EDGE.005C2 | Art Unit | 3731 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Roger Ignon et al. | | | Examiner Name | Christian D. Knauss | | |

This is a **Request for Continued Examination (RCE)** under 37 CFR 1.114 of the above-identified application.

Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, to any international application that does not comply with the requirements of 35 U.S.C. 371, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV.

## SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

    ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

    ☐ Other _____

☒ Enclosed

    ☒ Amendment/Reply

    ☒ Information Disclosure Statement (IDS)

    ☐ Affidavit(s)/ Declaration(s)

    ☐ Other _____

## MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required) _____

☐ Other _____

## FEES

☒ **The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No  111410

## SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

| ☒ | Patent Practitioner Signature |
|---|---|
| | Applicant Signature |

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (07-14)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | |
|---|---|---|
| Signature | /Theodore G. Papagiannis/ | Date (YYYY-MM-DD)  2016-08-08 |
| Name | Theodore G. Papagiannis | Registration Number  61546 |

This collection of information is required by 37 CFR 1.114.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EDGE.005C2                                                                    PATENT

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Ignon et al. |
| App. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3731 |
| Conf No. | : | 7926 |

### AMENDMENT ACCOMPANYING REQUEST FOR CONTINUED EXAMINATION

**Mail Stop RCE**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

This response is being filed after the Office Action mailed on March 7, 2016 (the "Office Action") and is accompanied by a Request for Continued Examination ("RCE").

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Summary of Interview** begins on page 6 of this paper.

**Remarks** begin on page 7 of this paper.

-1-

**Application No.:**     **14/698,673**
**Filing Date:**          **April 28, 2015**

## AMENDMENTS TO THE CLAIMS

*The following listing of claims replaces all prior versions and listings of claims in the application.  The listing of claims presents each claim with its respective status shown in parentheses.*

1.      (*Canceled*)

2.      (*Currently Amended*)   A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and

a vacuum source;

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the [[a ]]vacuum source; and

~~a user input device for receiving instructions from a user;~~

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly[[.]]; and

wherein, when the vacuum source is activated and the tip contact the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.

**Application No.:** 14/698,673
**Filing Date:** April 28, 2015

3.      (*Canceled*)

4.      (*Currently Amended*)  The system of Claim 2, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the first fluid container or the at least a second fluid container at least one fluid container to the handpiece assembly.

5.      (*Previously Presented*)  The system of Claim 4, wherein the user input device comprises a touch screen.

6.      (*Currently Amended*)  The system of Claim 2, wherein the first fluid container or the at least a second fluid container at least one fluid container is releasably coupled to the manifold.

7.      (*Canceled*)

8.      (*Previously Presented*)  The system of Claim 2, wherein the manifold is configured to be placed in fluid communication with at least four fluid containers.

9.      (*Currently Amended*)  The system of Claim 2[[1]], wherein treatment materials from the first fluid container and at least the second fluid container are delivered to the supply conduit sequentially or simultaneously.

10.      (*Previously Presented*)  The system of Claim 2, wherein the console is movable.

11.      (*Previously Presented*)  The system of Claim 2, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

12.      (*Previously Presented*)  The system of Claim 2, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

13.      (*Previously Presented*)  The system of Claim 2, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

**Application No.:**      **14/698,673**
**Filing Date:**          **April 28, 2015**

14.      (*Currently Amended*)   A system for performing a skin treatment procedure, the system comprising:

a manifold in fluid communication with at least two fluid containers, each of the at least two fluid containers being configured to contain a treatment material, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; and

a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly; and

a vacuum source; and

a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to the vacuum source;

wherein the manifold is configured to control a flow of treatment material from each of the at least two fluid containers through the supply conduit;

wherein the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit.

15.      (*Canceled*)

16.      (*Previously Presented*)   The system of Claim 14, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

17.      (*Currently Amended*)   The system of Claim 14, wherein the system console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least two fluid containers at least one fluid container.

18.      (*Previously Presented*)   The system of Claim 17, wherein the user input device comprises a touch screen.

19.      (*Currently Amended*)   The system of Claim 14, wherein the at least two fluid containers at least one fluid container is releasably coupled to the manifold.

-4-

**Application No.:**   **14/698,673**
**Filing Date:**         **April 28, 2015**

20.      (*Previously Presented*)  The system of Claim 14, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

21.      (*Previously Presented*)   The system of Claim 14, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

**Application No.:**    **14/698,673**
**Filing Date:**       **April 28, 2015**

## SUMMARY OF INTERVIEW

Applicant thanks Examiners Knauss and Severson for their time and the courtesies extended during the Interview of May 3, 2016.

Attendees, Date and Type of Interview

The Interview was conducted telephonically on May 3, 2016, and was attended by Examiners Christian Knauss and Ryan Severson, and attorneys for Applicant, Theodore G. Papagiannis and Mason Marks.

Exhibits and/or Demonstrations

None.

Identification of Claims Discussed

The pending claims, including independent Claims 2 and 14.

Identification of References Discussed

U.S. Patent Publication No. 2001/0049511 to Coleman et al. ("Coleman").

Proposed Amendments, Principal Arguments, Other Matters and Results of Interview

The Examiners and applicant's attorneys discussed the rejections presented in the Office Action in view of Coleman and the pending claims. Agreement was reached that clarifying amendments similar or identical to those presented herein would overcome the present rejections. The Examiners indicated that an updated search would be required.

**Application No.:** 14/698,673
**Filing Date:** April 28, 2015

## REMARKS

The foregoing amendments and the following remarks are responsive to the Office Action and pursuant to the Interview of May 3, 2016. Claims 2, 4 to 6 and 8 to 21 are currently pending in this application. As indicated in the foregoing listing of claims and discussed in greater detail below, Applicant is presenting clarifying amendments herein to independent Claims 2 and 14, as well as to certain dependent claims. Further, Claim 15 is canceled without prejudice herein. These amendments are presented pursuant to the Interview of May 3, 2016 and are being made to advance prosecution and to further clarify the present claims from the cited art. Applicant does not acquiesce to the rejections included in the Office Action as a result of the amendments to the claims herein. Applicant submits that no new matter is added by the foregoing clarifying claim amendments. Accordingly, Claims 2, 4 to 6, 8 to 14 and 16 to 21 are presented for further consideration. As noted above, this amendment and response is accompanied by a RCE.

**Claim Objections**

In the Office Action, Claim 9 is objected to due to certain informalities. Specifically, Claim 9 was inadvertently dependent on Claim 1. In the view of the clarifying amendment to Claim 9 presented herein, Applicant submits that this objection is now moot and should be withdrawn.

**Claim Rejections under 35 U.S.C. §112**

According to the Office Action, Claims 4 to 6 and 17 to 19 stand rejected under 35 U.S.C. §112, second paragraph as being indefinite. Applicant respectfully disagrees with and traverses this rejection. However, in order to advance prosecution and to expedite the allowance of the present application, Applicant is incorporating certain clarifying amendments herein to Claims 4, 6, 17 and 19 to address this rejection. In view of the foregoing clarifying amendments, Applicant submits that these rejections are now moot and should be withdrawn.

**Claim Rejections under 35 U.S.C. §102 & §103**

In addition, Claims 2, 4, 6, 8 to 12, 14 to 17, 19 and 20 stand rejected under 35 U.S.C. §102(b) as being anticipated by U.S. Publication No. 2001/0049511 to Coleman et al. ("Coleman") in view of U.S. Publication No. 2003/0093089 to Greenberg ("Greenberg").

**Application No.:**     14/698,673
**Filing Date:**          April 28, 2015

Further, Claims 5 and 18 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Coleman in view of Greenberg and U.S. Publication No. 2003/0018252 to Duchon et al.  Finally, Claims 13 and 21 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Coleman in view of U.S. Patent No. 3,865,352 in view of Nelson et al. or Coleman  and Greenberg.

Applicant respectfully disagrees with and traverses the anticipation and obviousness rejections presented in the Office Action.  As discussed during the Interview of May 3, 2016, Applicant submits that the cited references fail to teach or suggest each and every limitation of the claims, as amended herein.  Pursuant to the Interview, Applicant submits that the pending claims are novel, non-obvious and otherwise patentable over Coleman, Greenberg and other references of record, either alone or in combination with one another or any other reference.  In addition, the dependent claims are distinguished over the cited art in view of additional language included therein.  Accordingly, Applicant requests that the anticipation and obviousness rejections presented in the Office Action be withdrawn.

*Applicant respectfully asserts that the present application is in condition for allowance. If any issues remain, the Examiner is respectfully requested to contact the undersigned.*

## No Disclaimers or Disavowals

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application.  Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

Application No.:     14/698,673
Filing Date:         April 28, 2015

## Table of U.S. Patents and Applications

Applicant provides the following table to aid the Examiner during prosecution. The following U.S. patents and/or patent applications are in the same patent family as the present application.

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.004A | US | 09/648,025 (Pat. No. 6,641,591) | Aug. 25, 2000 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1 | US | 10/699,747 (Pat. No. 7,789,886) | Nov. 3, 2003 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1DV1 | US | 11/739,615 (Pat. No. 8,337,513) | Apr. 24, 2007 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C2 | US | 11/417,709 (Pat. No. 8,066,716) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C3 | US | 11/417,396 (Pat. No. 7,678,120) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C4 | US | 13/620,164 | Sep. 14, 2012 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C5 | US | 14/702,509 | May 1, 2015 | DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM |
| EDGE.004C6 | US | 14/702,486 | May 1, 2015 | METHODS FOR TREATING THE SKIN USING VACUUM |
| EDGE.005A | US | 11/392,348 (Pat. No. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | US | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **US** | **14/698,673 (present application)** | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | US | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | US | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |
| EDGE.006A | US | 09/294,254 (Pat. No. 6,162,232) | Apr. 19, 1999 | INSTRUMENTS AND TECHNIQUES FOR HIGH-VELOCITY FLUID ABRASION OF EPIDERMAL LAYERS WITH SKIN COOLING |
| EDGE.007A | US | 09/475480 (Pat. No. 6,299,620) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.008A | US | 09/475479 (Pat. No. 6,387,103) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.022A | US | 11/370,200 | Mar. 7, 2006 | MICRODERMABRASION METHOD AND APPARATUS |
| EDGE.044A | US | 12/362,353 (Pat. No. 9,056,193) | Jan. 29, 2009 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.044C1 | US | 14/734,995 | Jun. 9, 2015 | DEVICES AND SYSTEMS FOR TREATING SKIN SURFACES |
| EDGE.044CP1 | US | 12/832,663 (Pat. No. 8,814,836) | Jul 8, 2010 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN USING TIME-RELEASE SUBSTANCES |
| EDGE.044P1C1 | US | 14/455,762 | Aug. 8, 2014 | DEVICES FOR TREATING SKIN USING TREATMENT MATERIALS LOCATED ALONG A TIP |
| EDGE.047A | US | 12/346,582 (Pat. No. 8,343,116) | Dec. 30, 2008 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.047C1 | US | 13/620,376 | Sep. 14, 2012 | MICRODERMABRASION APPARATUS AND METHOD |

**Application No.:**      14/698,673
**Filing Date:**      April 28, 2015

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.050A | US | 09/540,945 (Pat. No. 6,592,595) | Mar. 31, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050C1 | US | 09/698,409 (Pat. No. 6,527,783) | Oct. 27, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050DV1 | US | 10/177,173 (Pat. No. 6,673,082) | Jun. 20, 2002 | MICRODERMABRASION HANDPIECE WITH SUPPLY AND RETURN LUMENS |
| EDGE.051A | US | 10/315,478 (Pat. No. 6,942,649) | Dec. 10, 2002 | MICRODERMABRASION FLUID APPLICATION SYSTEM AND METHOD |
| EDGE.052A | US | 09/699,220 (Pat. No. 6,629,983) | Oct. 27, 2000 | APPARATUS AND METHOD FOR SKIN/SURFACE ABRASION |
| EDGE.065A | US | 14/211,089 | Mar. 14, 2014 | SKIN TREATMENT SYSTEMS AND METHODS USING NEEDLES |
| EDGE.077A | US | 14/211,290 | Mar. 14, 2014 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.077NP | US | 14/774641 | Sep. 10, 2015 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.090A | US | 14/998,375 | Dec. 23, 2015 | DEVICES AND METHODS FOR TREATING THE SKIN USING A ROLLERBALL OR A WICKING MEMBER |
| EDGE.091A | US | 15/204,939 | Jul. 7, 2016 | DEVICES, SYSTEMS AND METHODS FOR PROMOTING HAIR GROWTH |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

**Application No.:** 14/698,673
**Filing Date:** April 28, 2015

## CONCLUSION

In view of the foregoing amendments and remarks, Applicant respectfully submits that the claims are now in condition for allowance. Accordingly, Applicant respectfully requests reconsideration of the claims in light of the foregoing amendments and remarks. As noted above, this response is accompanied by a Request for Continued Examination.

Applicant has made a good faith effort to place the application in condition for immediate allowance. Nevertheless, if any issues remain or otherwise require clarification, the Examiner is respectfully requested to contact Applicant's attorney at the below-listed telephone number to promptly resolve such issues.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>August 5, 2016</u>

By:<u>/Theodore G. Papagiannis/</u>
 Theodore G. Papagiannis
 Registration No. 61,546
 Attorney of Record
 Customer No. 20995
 (949) 760-0404

23476930

Doc Code: PA..
Document Description:  Power of Attorney
PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | 14/698,673 |
| Filing Date | April 28, 2015 |
| First Named Inventor | Roger Ignon et al. |
| Title | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Art Unit | 3731 |
| Examiner Name | Christian D. Knauss |
| Attorney Docket Number | EDGE.005C2 |

### SIGNATURE of Applicant or Patent Practitioner

| | | | |
|---|---|---|---|
| Signature | /Theodore G. Papagiannis/ | Date (Optional) | |
| Name | Theodore G. Papagiannis | Registration Number | 61,546 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

**NOTE:**  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☑ *Total of  1  forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

**OR** | 20995

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✓] The address associated with the above-mentioned Customer Number
**OR**
[ ] The address associated with Customer Number:
**OR**

| Firm or Individual Name |  |
|---|---|
| Address |  |
| City |  | State |  | Zip |  |
| Country |  |
| Telephone |  | Email |  |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

## Edge Systems LLC

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✓] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | *William Cohen* | Date (Optional) | 4.6.16 |
|---|---|---|---|
| Name | William Cohen |  |  |
| Title | President |  |  |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] Total of   1   forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Docket No.: EDGE.005C2                                    **Customer No. 20995**

## INFORMATION DISCLOSURE STATEMENT

Inventor    :   Ignon et al.

Appl. No.   :   14/698,673

Filed       :   April 28, 2015

For         :   CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

Examiner    :   Christian D. Knauss

Art Unit    :   3731

Conf. No.   :   7926

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith.  Copies of any listed foreign and non-patent literature references are being submitted.  Identification herein is not an admission that any of the references are prior art to the above captioned application.

**Related Applications of Assignee**

Applicant wishes to draw the Examiner's attention to the following patents and/or applications in the same patent family as the present application.

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.004A | US | 09/648,025 (Pat. No. 6,641,591) | Aug. 25, 2000 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1 | US | 10/699,747 (Pat. No. 7,789,886) | Nov. 3, 2003 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1DV1 | US | 11/739,615 (Pat. No. 8,337,513) | Apr. 24, 2007 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C2 | US | 11/417,709 (Pat. No. 8,066,716) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C3 | US | 11/417,396 (Pat. No. 7,678,120) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C4 | US | 13/620,164 | Sep. 14, 2012 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |

**Application No.:** 14/698,673
**Filing Date:** April 28, 2015

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.004C5 | US | 14/702,509 | May 1, 2015 | DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM |
| EDGE.004C6 | US | 14/702,486 | May 1, 2015 | METHODS FOR TREATING THE SKIN USING VACUUM |
| EDGE.005A | US | 11/392,348 (Pat. No. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | US | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **US** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | US | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | US | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |
| EDGE.006A | US | 09/294,254 (Pat. No. 6,162,232) | Apr. 19, 1999 | INSTRUMENTS AND TECHNIQUES FOR HIGH-VELOCITY FLUID ABRASION OF EPIDERMAL LAYERS WITH SKIN COOLING |
| EDGE.007A | US | 09/475480 (Pat. No. 6,299,620) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.008A | US | 09/475479 (Pat. No. 6,387,103) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.022A | US | 11/370,200 | Mar. 7, 2006 | MICRODERMABRASION METHOD AND APPARATUS |
| EDGE.044A | US | 12/362,353 (Pat. No. 9,056,193) | Jan. 29, 2009 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.044C1 | US | 14/734,995 | Jun. 9, 2015 | DEVICES AND SYSTEMS FOR TREATING SKIN SURFACES |
| EDGE.044CP1 | US | 12/832,663 (Pat. No. 8,814,836) | Jul 8, 2010 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN USING TIME-RELEASE SUBSTANCES |
| EDGE.044P1C1 | US | 14/455,762 | Aug. 8, 2014 | DEVICES FOR TREATING SKIN USING TREATMENT MATERIALS LOCATED ALONG A TIP |
| EDGE.047A | US | 12/346,582 (Pat. No. 8,343,116) | Dec. 30, 2008 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.047C1 | US | 13/620,376 | Sep. 14, 2012 | MICRODERMABRASION APPARATUS AND METHOD |
| EDGE.050A | US | 09/540,945 (Pat. No. 6,592,595) | Mar. 31, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050C1 | US | 09/698,409 (Pat. No. 6,527,783) | Oct. 27, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050DV1 | US | 10/177,173 (Pat. No. 6,673,082) | Jun. 20, 2002 | MICRODERMABRASION HANDPIECE WITH SUPPLY AND RETURN LUMENS |
| EDGE.051A | US | 10/315,478 (Pat. No. 6,942,649) | Dec. 10, 2002 | MICRODERMABRASION FLUID APPLICATION SYSTEM AND METHOD |
| EDGE.052A | US | 09/699,220 (Pat. No. 6,629,983) | Oct. 27, 2000 | APPARATUS AND METHOD FOR SKIN/SURFACE ABRASION |
| EDGE.065A | US | 14/211,089 | Mar. 14, 2014 | SKIN TREATMENT SYSTEMS AND METHODS USING NEEDLES |
| EDGE.077A | US | 14/211,290 | Mar. 14, 2014 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.077NP | US | 14/774641 | Sep. 10, 2015 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.090A | US | 14/998,375 | Dec. 23, 2015 | DEVICES AND METHODS FOR TREATING THE SKIN USING A ROLLERBALL OR A WICKING MEMBER |
| EDGE.091A | US | 15/204,939 | Jul. 7, 2016 | DEVICES, SYSTEMS AND METHODS FOR PROMOTING HAIR GROWTH |

**Application No.:**     **14/698,673**
**Filing Date:**          **April 28, 2015**

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

**Timing of Disclosure**

This Information Disclosure Statement is being filed with an RCE and no fee is required. However, the Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>August 8, 2016</u>          By:<u>/Theodore G. Papagiannis/</u>
                                               Theodore G. Papagiannis
                                               Registration No. 61,546
                                               Attorney of Record
                                               Customer No. 20995
                                               (949) 760-0404

23960308

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Roger Ignon |
| | | Art Unit | 3731 |
| *(Multiple sheets used when necessary)* | | Examiner | Christian D. Knauss |
| SHEET 1 OF 1 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | **1** | 2008/0154161 | 06-26-2008 | Abbott | |
| | **2** | 2008/0208146 | 08-28-2008 | Brandwein et al. | |
| | **3** | 2016/0038183 | 02-11-2016 | Ignon et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document<br>*Country Code-Number-Kind Code*<br>Example: JP 1234567 A1 | Publication Date<br>MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | | | |

23960355

| Examiner Signature | Date Considered |
|---|---|
| | |

***Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14698673 |
| **Filing Date:** | 28-Apr-2015 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Filer:** | Theodore G. Papagiannis/janet teeters |
| **Attorney Docket Number:** | EDGE.005C2 |

Filed as Small Entity

**Filing Fees for  Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 2 months with $0 paid | 2252 | 1 | 300 | 300 |
| **Miscellaneous:** | | | | |
| Request for Continued Examination | 2801 | 1 | 600 | 600 |
| **Total in USD ($)** | | | | **900** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 26580096 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/ThuyQuyen Nguyen |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 08-AUG-2016 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 17:47:21 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $ 900 |
| RAM confirmation Number | 080916INTEFSW17475500 |
| Deposit Account | 2598 |
| Authorized User | ThuyQuyen Nguyen |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     37 CFR 1.16 (National application filing, search, and examination fees) | |
|     37 CFR 1.17 (Patent application and reexamination processing fees) | |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | EDGE-005C2_RCE.pdf | 1349922 <br><br> 7fd64e3fdaad6bb38962da96d1126513389c7e32 | no | 3 |

**Warnings:**

**Information:**

| 2 | | EDGE005C2_OAR.pdf | 71587 <br><br> 68bc8c4e449910837a8ecdede071a1c4d101c5 | yes | 11 |

| | **Multipart Description/PDF files in .zip description** | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | End | |
| | Amendment Submitted/Entered with Filing of CPA/RCE | | 1 | 1 | |
| | Claims | | 2 | 5 | |
| | Applicant summary of interview with examiner | | 6 | 6 | |
| | Applicant Arguments/Remarks Made in an Amendment | | 7 | 11 | |

**Warnings:**

**Information:**

| 3 | Power of Attorney | EDGE-005C2_POA.PDF | 268311 <br><br> 8e9d8d4195fac7f81fc84eeed8206fdb8f355e85 | no | 3 |

**Warnings:**

**Information:**

| 4 | | EDGE-005C2_IDS.pdf | 72248 <br><br> 932b573eef74c8431b72d1bca79c57e1d5821f48 | yes | 4 |

| | **Multipart Description/PDF files in .zip description** | | | | |
|---|---|---|---|---|---|
| | Document Description | | Start | End | |

| | Transmittal Letter | | 1 | 3 |
|---|---|---|---|---|
| | Information Disclosure Statement (IDS) Form (SB08) | | 4 | 4 |

**Warnings:**

**Information:**

| 5 | Fee Worksheet (SB06) | fee-info.pdf | 32572<br><br>f6391892e9b7fd20704fd91e34d638bc2be7f69c | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | **Total Files Size (in bytes):** | 1794640 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/698,673 | Filing Date<br>04/28/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☒ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☐ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| **AMENDMENT** | **08/08/2016** | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| | | (Column 1) | (Column 2) | (Column 3) | | |
|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
THUY TA

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia  22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**POA ACCEPTANCE LETTER**

*OC000000085219068*

Date Mailed: 08/19/2016

## NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 08/08/2016.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/agizaw/



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 20995 | 7590 | 09/14/2016 |

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

DATE MAILED: 09/14/2016

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

TITLE OF INVENTION: CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/14/2016 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT.  SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   <u>THIS STATUTORY PERIOD CANNOT BE EXTENDED.</u>  SEE 35 U.S.C. 151.  THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.  IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>

Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**or** <u>Fax</u>   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

20995          7590          09/14/2016

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

|  |  |
|--|--|
|  | (Depositor's name) |
|  | (Signature) |
|  | (Date) |

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

TITLE OF INVENTION: CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/14/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KNAUSS, CHRISTIAN D | 3731 | 606-131000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____

2 _____

3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:

☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.          OMB 0651-0033          U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



U<small>NITED</small> S<small>TATES</small> P<small>ATENT AND</small> T<small>RADEMARK</small> O<small>FFICE</small>

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        09/14/2016

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

DATE MAILED: 09/14/2016

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

| *Notice Requiring Inventor's Oath or Declaration* | Application No.<br>14/698,673 | Applicant(s)<br>Roger Ignon | |
|---|---|---|---|
| | Examiner<br>KNAUSS, CHRISTIAN D | Art Unit<br>3731 | |

This notice is an attachment to the Notice of Allowability (PTOL-37), or the Notice of Allowability For A Design Application (PTOL-37D).

An inventor's oath or declaration in compliance with 37 CFR 1.63 or 1.64 executed by or with respect to each inventor has not yet been submitted.

An oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each inventor (for any inventor for which a compliant oath, declaration, or substitute statement has not yet been submitted) MUST be filed <u>no later than the date on which the issue fee is paid.</u> See 35 U.S.C. 115(f). Failure to timely comply will result in ABANDONMENT of this application.

A properly executed inventor's oath to declaration has not been received for the following inventor(s):

If applicant previously filed one or more oaths, declarations, or substitute statements, applicant may have received an informational notice regarding deficiencies therein.

The following deficiencies are noted:

INFORMAL ACTION PROBLEMS
  • A properly executed inventor's oath or declaration has not been received for the following inventor(s): **Roger Ignon**, **Scott Mallett**, **Abraham Solano**, and **William Cohen**.
    Applicant may submit the inventor's oath or declaration at any time before the Notice of Allowance and Fee(s) Due, PTOL-85, is mailed.

Questions relating to this Notice should be directed to the Application Assistance Unit at 571-272-4200.

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| *Notice of Allowability* | Application No. 14/698,673 | | Applicant(s) IGNON ET AL. | |
| --- | --- | --- | --- | --- |
| | Examiner CHRISTIAN KNAUSS | | Art Unit 3731 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *See Continuation Sheet*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are 2,4-6,8-14 and 16-21. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All   b) ☐ Some  *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
    Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08),
    Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☒ Interview Summary (PTO-413),
    Paper No./Mail Date 20160818 .

5. ☒ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

| /RYAN J. SEVERSON/ Primary Examiner, Art Unit 3731 | /C. K./ Examiner, Art Unit 3731 |
| --- | --- |

**Continuation Sheet (PTOL-37)**                                    **Application No.  14/698,673**

Continuation of Item 1. This communication is responsive to :  the Request for Continued Examination filed 8/8/16 and the Examiner's Amendment of 8/30/16.

Application/Control Number: 14/698,673                                    Page 2
Art Unit: 3731

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application is being examined under the pre-AIA first to invent

provisions.

### EXAMINER'S AMENDMENT

2.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

        Authorization for this examiner's amendment was given in an interview with

Theodore Papagiannis on 8/30/16.

        The application has been amended as follows:


**IN THE CLAIMS**


In claim 2, line 23, deleted "contact" and inserted --contacts-- in its place


In claim 14, line 10, deleted "and"


### *Allowable Subject Matter*

3.      Claims 2, 4-6, 8-14, and 16-21 allowed.

4.      The following is an examiner's statement of reasons for allowance: Claim 2 was amended to recite that the treatment material comprises a liquid and that when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.  These limitations, in combination with the other limitations in the claim are not disclosed or made obvious by the prior art of record.  Claims 4-6 and 8-13 are all dependent on claim 2, and thus are also allowable over the prior art of record.

5.      Specifically, the previously cited Coleman reference fails to disclose or teach that when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.  Instead, Coleman teaches that motor 66 activates valves 62A-62D to draw treatment material from the first fluid container or the second fluid container.  Coleman does not disclose or teach that the vacuum source draws treatment material from the fluid containers.

6.      Claim 14 was amended to require a system for performing a skin treatment procedure, the system comprising, inter alia, a manifold in fluid communication with at least two fluid containers, each of the at least two fluid containers configured to contain a treatment material, wherein the treatment material comprises a liquid, a handpiece assembly comprising a tip, a supply conduit secured to the handpiece assembly, a

vacuum source, and a waste conduit in fluid communication with the handpiece and operatively connected to the vacuum source. Claim 14 further requires that the manifold is configured to control a flow of treatment material from each of the at least two fluid containers through the supply conduit, and that the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit. These limitations, in combination with the other limitations in the claim, are not disclosed or made obvious in the prior art of record. Claims 16-21 are all dependent on claim 14, and thus are also allowable over the prior art of record.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

7.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHRISTIAN KNAUSS whose telephone number is (571)272-8641. The examiner can normally be reached on Monday-Friday 8:00 am - 5 pm EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Corrine McDermott can be reached on (571)272-4754. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Application/Control Number: 14/698,673                                        Page 5
Art Unit: 3731

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/C. K./
Examiner, Art Unit 3731

/RYAN J. SEVERSON/
Primary Examiner, Art Unit 3731

| ***Examiner-Initiated Interview Summary*** | Application No. | Applicant(s) |
| | 14/698,673 | IGNON ET AL. |
| | Examiner | Art Unit | |
| | CHRISTIAN KNAUSS | 3731 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) *CHRISTIAN KNAUSS*.                   (3)_____.

(2) *THEODORE PAPAGIANNIS*.           (4)_____.

Date of Interview: *30 August 2016*.

Type:    ☒ Telephonic    ☐ Video Conference
         ☐ Personal [copy given to: ☐ applicant    ☐ applicant's representative]

Exhibit shown or demonstration conducted:    ☐ Yes    ☒ No.
    If Yes, brief description: _____.

Issues Discussed    ☐101 ☐112 ☐102 ☐103 ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *2 and 14*.

Identification of prior art discussed: *none*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*The Examiner contacted the Applicant's representative to propose Examiner's amendments.  The Applicant's representative authorized the Examiner to enter the Examiner's amendments*.

**Applicant recordation instructions**:  It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /RYAN J. SEVERSON/<br>Primary Examiner, Art Unit 3731 | /C. K./<br>Examiner, Art Unit 3731 |

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Roger Ignon |
| | | Art Unit | 3731 |
| *(Multiple sheets used when necessary)* | | Examiner | Christian D. Knauss |
| SHEET 1 OF 1 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2008/0154161 | 06-26-2008 | Abbott | |
| | 2 | 2008/0208146 | 08-28-2008 | Brandwein et al. | |
| | 3 | 2016/0038183 | 02-11-2016 | Ignon et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document<br>*Country Code-Number-Kind Code*<br>Example: JP 1234567 A1 | Publication Date<br>MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | | | |

23960355

| Examiner Signature | /CHRISTIAN D KNAUSS/ | Date Considered | 08/18/2016 |
|---|---|---|---|

***Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.D.K/



**UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 7926**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 **RULE** | 606 | 3731 | EDGE.005C2 |

**APPLICANTS**
EDGE SYSTEMS LLC, Signal Hill, CA;

**INVENTORS**
Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

\*\* CONTINUING DATA \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* OK /CK/
This application is a CON of 13/267,554 10/06/2011
which is a CON of 11/392,348 03/29/2006 PAT 8048089
which claims benefit of 60/755,310 12/30/2005
and claims benefit of 60/764,668 02/02/2006

\*\* FOREIGN APPLICATIONS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* none /CK/

\*\* IF REQUIRED, FOREIGN FILING LICENSE GRANTED \*\* \*\* SMALL ENTITY \*\*
05/07/2015

| Foreign Priority claimed | ☐ Yes ☑ No | | ☐ Met after Allowance | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met | ☐ Yes ☑ No | | | | | | |
| Verified and Acknowledged | /CHRISTIAN D KNAUSS/ Examiner's Signature | Initials | | CA | 25 | 20 | 2 |

**ADDRESS**

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

**TITLE**

CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| | | |
|---|---|---|
| **FILING FEE RECEIVED** 800 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other _____<br>☐ Credit |

BIB (Rev. 05/07).

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | Examiner | Art Unit |
| | CHRISTIAN KNAUSS | 3731 |

| CPC | | | | | |
|---|---|---|---|---|---|
| Symbol | | | | Type | Version |
| A61M | 35 | 003 | | F | 2013-01-01 |
| A61B | 17 | 545 | | I | 2013-01-01 |
| A61B | 2017 | 00199 | | A | 2013-01-01 |
| A61B | 2017 | 00761 | | A | 2013-01-01 |
| A61N | 5 | 0616 | | A | 2013-01-01 |
| A61B | 2217 | 005 | | A | 2013-01-01 |
| A61M | 1 | 009 | | I | 2014-02-04 |
| A61B | 17 | 3205 | | I | 2013-01-01 |
| A61B | 17 | 50 | | I | 2013-01-01 |
| A61B | 2017 | 320004 | | A | 2013-01-01 |
| A61B | 50 | 10 | | I | 2016-02-01 |
| A61B | 50 | 13 | | I | 2016-02-01 |
| A61B | 17 | 54 | | I | 2013-01-01 |
| | | | | | |
| | | | | | |

| CPC Combination Sets | | | | | | |
|---|---|---|---|---|---|---|
| Symbol | | | Type | Set | Ranking | Version |
| | | | | | | |
| | | | | | | |

| /C.K./ Examiner.Art Unit 3731 | 08/18/2016 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /RYAN J SEVERSON/ Primary Examiner.Art Unit 3731 | 09/01/2016 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | Examiner | Art Unit |
| | CHRISTIAN KNAUSS | 3731 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLAIMED | | | | | | NON-CLAIMED | | | | | |
| | | A | 6 | 1 | M | 35 / 00 (2006.01.01) | | | | | | | |

| CROSS REFERENCE(S) | |
|---|---|
| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

| | | | |
|---|---|---|---|
| /C.K./ Examiner.Art Unit 3731 | 08/18/2016 | **Total Claims Allowed:** | |
| (Assistant Examiner) | (Date) | 17 | |
| /RYAN J SEVERSON/ Primary Examiner.Art Unit 3731 | 09/01/2016 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | Examiner | Art Unit |
| | CHRISTIAN KNAUSS | 3731 |

☐ **Claims renumbered in the same order as presented by applicant**    ☐ CPA    ☐ T.D.    ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1 | 13 | 17 | | | | | | | | | | | | |
| 1 | 2 | 14 | 18 | | | | | | | | | | | | |
|  | 3 | 15 | 19 | | | | | | | | | | | | |
| 2 | 4 | 16 | 20 | | | | | | | | | | | | |
| 3 | 5 | 17 | 21 | | | | | | | | | | | | |
| 4 | 6 | | | | | | | | | | | | | | |
|  | 7 | | | | | | | | | | | | | | |
| 5 | 8 | | | | | | | | | | | | | | |
| 6 | 9 | | | | | | | | | | | | | | |
| 7 | 10 | | | | | | | | | | | | | | |
| 8 | 11 | | | | | | | | | | | | | | |
| 9 | 12 | | | | | | | | | | | | | | |
| 10 | 13 | | | | | | | | | | | | | | |
| 11 | 14 | | | | | | | | | | | | | | |
|  | 15 | | | | | | | | | | | | | | |
| 12 | 16 | | | | | | | | | | | | | | |

| /C.K./ Examiner.Art Unit 3731 | 08/18/2016 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /RYAN J SEVERSON/ Primary Examiner.Art Unit 3731 | 09/01/2016 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|-------|------|--------------|-----|------------------|---------|------------|
| S1 | 29 | (roger near2 ignon).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:00 |
| S2 | 101 | (scott near2 mallett).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:04 |
| S3 | 3 | (abraham near2 solano).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:06 |
| S4 | 100 | (william near2 cohen).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:07 |
| S5 | 24 | (edge near2 systems).as. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:09 |
| S6 | 310 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US-5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:14 |

EAST Search History

```
US-5807353-$.DID. OR US-5810842-$.DID. OR
US-5813416-$.DID. OR US-5817050-$.DID. OR
US-5846215-$.DID. OR US-5848998-$.DID. OR
US-5861142-$.DID. OR US-5873881-$.DID. OR
US-5879323-$.DID. OR US-5882201-$.DID. OR
US-5885260-$.DID. OR US-5908401-$.DID. OR
US-5919152-$.DID. OR US-5954730-$.DID. OR
US-5971999-$.DID. OR US-5980555-$.DID. OR
US-6019749-$.DID. OR US-6024733-$.DID. OR
US-6027402-$.DID. OR US-6039745-$.DID. OR
US-6042552-$.DID. OR US-6080165-$.DID. OR
US-6080166-$.DID. OR US-6090085-$.DID. OR
US-6120512-$.DID. OR US-6136008-$.DID. OR
US-6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID. OR
US-6159226-$.DID. OR US-6162232-$.DID. OR
US-6183451-$.DID. OR US-6183483-$.DID. OR
US-6231593-$.DID. OR US-6238275-$.DID. OR
US-6241739-$.DID. OR US-6264666-$.DID. OR
US-6277128-$.DID. OR US-6283978-$.DID. OR
US-6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID. OR
US-6368333-$.DID. OR US-6387103-$.DID. OR
US-6409736-$.DID. OR US-6410599-$.DID. OR
US-6414032-$.DID. OR US-6420431-$.DID. OR
US-6423078-$.DID. OR US-6423750-$.DID. OR
US-6432113-$.DID. OR US-6471712-$.DID. OR
US-6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID. OR
US-6500183-$.DID. OR US-6503256-$.DID. OR
US-6511486-$.DID. OR US-6514262-$.DID. OR
US-6527783-$.DID. OR US-6535761-$.DID. OR
US-6540757-$.DID. OR US-6562013-$.DID. OR
US-6562050-$.DID. OR US-6564093-$.DID. OR
US-6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID. OR
US-6641591-$.DID. OR US-6645184-$.DID. OR
US-6652888-$.DID. OR US-6673081-$.DID. OR
US-6673082-$.DID. OR US-6685853-$.DID. OR
US-6687537-$.DID. OR US-6695853-$.DID. OR
US-6735470-$.DID. OR US-6743215-$.DID. OR
US-6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID. OR
US-6924649-$.DID. OR US-6926681-$.DID. OR
US-6942649-$.DID. OR US-7001355-$.DID. OR
US-7004933-$.DID. OR US-7044938-$.DID. OR
US-7052503-$.DID. OR US-7069073-$.DID. OR
US-7070488-$.DID. OR US-7083580-$.DID. OR
US-7087063-$.DID. OR US-7094252-$.DID. OR
US-7115275-$.DID. OR US-7135011-$.DID. OR
US-7153311-$.DID. OR US-7197359-$.DID. OR
US-7198623-$.DID. OR US-7241208-$.DID. OR
US-7276051-$.DID. OR US-7314326-$.DID. OR
US-7316657-$.DID. OR US-7318828-$.DID. OR
US-7320691-$.DID. OR US-7320801-$.DID. OR
US-7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID. OR
US-7458944-$.DID. OR US-7476205-$.DID. OR
US-7477938-$.DID. OR US-7482314-$.DID. OR
US-7489989-$.DID. OR US-7507228-$.DID. OR
US-7582067-$.DID. OR US-7597900-$.DID. OR
US-7597901-$.DID. OR US-7658742-$.DID. OR
US-7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID. OR
```

US-7901373-$.DID. OR US-7951156-$.DID. OR
US-8025669-$.DID. OR US-8048089-$.DID. OR
US-8066716-$.DID. OR US-8088085-$.DID. OR
US-8128638-$.DID. OR US-8221437-$.DID. OR
US-8236008-$.DID. OR US-8277287-$.DID. OR
US-8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-
20020188261-$.DID. OR US-20030012415-
$.DID. OR US-20030060834-$.DID. OR US-
20030093040-$.DID. OR US-20030093089-
$.DID. OR US-20030097139-$.DID. OR US-
20030187462-$.DID. OR US-20030208159-
$.DID. OR US-20030212127-$.DID. OR US-
20030212415-$.DID. OR US-20040010222-
$.DID. OR US-20040010269-$.DID. OR US-
20040087972-$.DID. OR US-20040092895-
$.DID. OR US-20040097967-$.DID. OR US-
20040122447-$.DID. OR US-20040143274-
$.DID. OR US-20040166172-$.DID. OR US-
20040219179-$.DID. OR US-20040236291-
$.DID. OR US-20040243149-$.DID. OR US-
20040267285-$.DID. OR US-20050037034-
$.DID. OR US-20050038448-$.DID. OR US-
20050059940-$.DID. OR US-20050084509-
$.DID. OR US-20050148958-$.DID. OR US-
20050203111-$.DID. OR US-20050209611-
$.DID. OR US-20050283176-$.DID. OR US-
20060002960-$.DID. OR US-20060191562-
$.DID. OR US-20060200099-$.DID. OR US-
20060200172-$.DID. OR US-20060200173-
$.DID. OR US-20060212029-$.DID. OR US-
20060253125-$.DID. OR US-20060264893-
$.DID. OR US-20070005078-$.DID. OR US-
20070043382-$.DID. OR US-20070065515-
$.DID. OR US-20070123808-$.DID. OR US-
20070088371-$.DID. OR US-20070154502-
$.DID. OR US-20070156124-$.DID. OR US-
20070178121-$.DID. OR US-20070198031-
$.DID. OR US-20070208353-$.DID. OR US-
20070239173-$.DID. OR US-20080027328-
$.DID. OR US-20080091179-$.DID. OR US-
20080119781-$.DID. OR US-20080132914-
$.DID. OR US-20080139974-$.DID. OR US-
20080193493-$.DID. OR US-20080200861-
$.DID. OR US-20080214987-$.DID. OR US-
20080215068-$.DID. OR US-20080243039-
$.DID. OR US-20080287864-$.DID. OR US-
20080300529-$.DID. OR US-20080300552-
$.DID. OR US-20090048557-$.DID. OR US-
20090053390-$.DID. OR US-20090099091-
$.DID. OR US-20090099093-$.DID. OR US-
20090124985-$.DID. OR US-20090138026-
$.DID. OR US-20090177171-$.DID. OR US-
20090192442-$.DID. OR US-20090222023-
$.DID. OR US-20100045427-$.DID. OR US-
20100049177-$.DID. OR US-20100049210-
$.DID. OR US-20110054490-$.DID. OR US-
20110066162-$.DID. OR US-20110082415-
$.DID. OR US-20120022435-$.DID. OR US-

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 20120136374-$.DID. OR US-20130046347-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID. OR JP-12022003-$.DID. OR JP-2006503627-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID. | | | | |
| S7 | 316 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US-5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR US-5807353-$.DID. OR US-5810842-$.DID. OR US-5813416-$.DID. OR US-5817050-$.DID. OR US-5846215-$.DID. OR US-5848998-$.DID. OR US-5861142-$.DID. OR US-5873881-$.DID. OR US-5879323-$.DID. OR US-5882201-$.DID. OR US-5885260-$.DID. OR US-5908401-$.DID. OR US-5919152-$.DID. OR US-5954730-$.DID. OR US-5971999-$.DID. OR US-5980555-$.DID. OR US-6019749-$.DID. OR US-6024733-$.DID. OR US-6027402-$.DID. OR US-6039745-$.DID. OR US-6042552-$.DID. OR US-6080165-$.DID. OR US-6080166-$.DID. OR US-6090085-$.DID. OR | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:15 |

US-6120512-$.DID. OR US-6136000-$.DID. OR
US-6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID. OR
US-6159226-$.DID. OR US-6162232-$.DID. OR
US-6183451-$.DID. OR US-6183483-$.DID. OR
US-6231593-$.DID. OR US-6238275-$.DID. OR
US-6241739-$.DID. OR US-6264666-$.DID. OR
US-6277128-$.DID. OR US-6283978-$.DID. OR
US-6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID. OR
US-6368333-$.DID. OR US-6387103-$.DID. OR
US-6409736-$.DID. OR US-6410599-$.DID. OR
US-6414032-$.DID. OR US-6420431-$.DID. OR
US-6423078-$.DID. OR US-6423750-$.DID. OR
US-6432113-$.DID. OR US-6471712-$.DID. OR
US-6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID. OR
US-6500183-$.DID. OR US-6503256-$.DID. OR
US-6511486-$.DID. OR US-6514262-$.DID. OR
US-6527783-$.DID. OR US-6535761-$.DID. OR
US-6540757-$.DID. OR US-6562013-$.DID. OR
US-6562050-$.DID. OR US-6564093-$.DID. OR
US-6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID. OR
US-6641591-$.DID. OR US-6645184-$.DID. OR
US-6652888-$.DID. OR US-6673081-$.DID. OR
US-6673082-$.DID. OR US-6685853-$.DID. OR
US-6687537-$.DID. OR US-6695853-$.DID. OR
US-6735470-$.DID. OR US-6743215-$.DID. OR
US-6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID. OR
US-6924649-$.DID. OR US-6926681-$.DID. OR
US-6942649-$.DID. OR US-7001355-$.DID. OR
US-7004933-$.DID. OR US-7044938-$.DID. OR
US-7052503-$.DID. OR US-7069073-$.DID. OR
US-7070488-$.DID. OR US-7083580-$.DID. OR
US-7087063-$.DID. OR US-7094252-$.DID. OR
US-7115275-$.DID. OR US-7135011-$.DID. OR
US-7153311-$.DID. OR US-7197359-$.DID. OR
US-7198623-$.DID. OR US-7241208-$.DID. OR
US-7276051-$.DID. OR US-7314326-$.DID. OR
US-7316657-$.DID. OR US-7318828-$.DID. OR
US-7320691-$.DID. OR US-7320801-$.DID. OR
US-7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID. OR
US-7458944-$.DID. OR US-7476205-$.DID. OR
US-7477938-$.DID. OR US-7482314-$.DID. OR
US-7489989-$.DID. OR US-7507228-$.DID. OR
US-7582067-$.DID. OR US-7597900-$.DID. OR
US-7597901-$.DID. OR US-7658742-$.DID. OR
US-7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID. OR
US-7901373-$.DID. OR US-7951156-$.DID. OR
US-8025669-$.DID. OR US-8048089-$.DID. OR
US-8066716-$.DID. OR US-8088085-$.DID. OR
US-8128638-$.DID. OR US-8221437-$.DID. OR
US-8236008-$.DID. OR US-8277287-$.DID. OR
US-8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-

20020188261-$.DID. OR US-20030094206-
$.DID. OR US-20030060834-$.DID. OR US-
20030093040-$.DID. OR US-20030093089-
$.DID. OR US-20030097139-$.DID. OR US-
20030187462-$.DID. OR US-20030208159-
$.DID. OR US-20030212127-$.DID. OR US-
20030212415-$.DID. OR US-20040010222-
$.DID. OR US-20040010269-$.DID. OR US-
20040087972-$.DID. OR US-20040092895-
$.DID. OR US-20040097967-$.DID. OR US-
20040122447-$.DID. OR US-20040143274-
$.DID. OR US-20040166172-$.DID. OR US-
20040219179-$.DID. OR US-20040236291-
$.DID. OR US-20040243149-$.DID. OR US-
20040267285-$.DID. OR US-20050037034-
$.DID. OR US-20050038448-$.DID. OR US-
20050059940-$.DID. OR US-20050084509-
$.DID. OR US-20050148958-$.DID. OR US-
20050203111-$.DID. OR US-20050209611-
$.DID. OR US-20050283176-$.DID. OR US-
20060002960-$.DID. OR US-20060191562-
$.DID. OR US-20060200099-$.DID. OR US-
20060200172-$.DID. OR US-20060200173-
$.DID. OR US-20060212029-$.DID. OR US-
20060253125-$.DID. OR US-20060264893-
$.DID. OR US-20070005078-$.DID. OR US-
20070043382-$.DID. OR US-20070065515-
$.DID. OR US-20070123808-$.DID. OR US-
20070088371-$.DID. OR US-20070154502-
$.DID. OR US-20070156124-$.DID. OR US-
20070178121-$.DID. OR US-20070198031-
$.DID. OR US-20070208353-$.DID. OR US-
20070239173-$.DID. OR US-20080027328-
$.DID. OR US-20080091179-$.DID. OR US-
20080119781-$.DID. OR US-20080132914-
$.DID. OR US-20080139974-$.DID. OR US-
20080193493-$.DID. OR US-20080200861-
$.DID. OR US-20080214987-$.DID. OR US-
20080215068-$.DID. OR US-20080243039-
$.DID. OR US-20080287864-$.DID. OR US-
20080300529-$.DID. OR US-20080300552-
$.DID. OR US-20090048557-$.DID. OR US-
20090053390-$.DID. OR US-20090099091-
$.DID. OR US-20090099093-$.DID. OR US-
20090124985-$.DID. OR US-20090138026-
$.DID. OR US-20090177171-$.DID. OR US-
20090192442-$.DID. OR US-20090222023-
$.DID. OR US-20100045427-$.DID. OR US-
20100049177-$.DID. OR US-20100049210-
$.DID. OR US-20110054490-$.DID. OR US-
20110066162-$.DID. OR US-20110082415-
$.DID. OR US-20120022435-$.DID. OR US-
20120136374-$.DID. OR US-20130018317-
$.DID. OR US-20130066336-$.DID. OR US-
20130096577-$.DID. OR US-20130102978-
$.DID. OR US-20130144280-$.DID. OR US-
20130158547-$.DID. OR US-20140343481-
$.DID. OR US-20140343574-$.DID. OR US-
20150032047-$.DID. OR JP-1234567-$.DID.
OR DE-3421390-$.DID. OR EP-0258901-$.DID.
OR EP-0564392-$.DID. OR US-1184922-$.DID.
OR JP-1993088552-$.DID. OR JP-12031993-
$.DID. OR JP-09294747-$.DID. OR JP-
11181997-$.DID. OR JP-2003339713-$.DID.

| | | OR JP-12022003-$.DID. OR JP-2006-$00527-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID. | | | | |
|---|---|---|---|---|---|---|
| S8 | 0 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:57 |
| S9 | 484 | (console and manifold and fluid and container and hand$7 and (conduit tube) and vacuum) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 11:04 |
| S10 | 498 | A61B17/54.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:13 |
| S11 | 136 | A61B17/545.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:29 |
| S12 | 583 | A61B19/0248.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:43 |
| S13 | 511 | A61B2019/025.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:50 |
| S14 | 1159 | A61B2017/00199.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:59 |
| S15 | 955 | A61B2017/00017.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:15 |
| S16 | 2160 | A61B2217/005.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S17 | 1269 | A61B2217/007.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S18 | 38 | ("4183470" | "5186625" | "5240842" | "5350299" | "5362494" | "5441174" | "5547376" | "5591184" | "5634791" | "5657760" | "5752829" | "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | | 2015/07/21 16:03 |
| S19 | 59 | ("1772545" | "2109259" | "2453080" | "2547823" | "2618410" | "2711268" | "2962193" | "3217887" | "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | | 2015/07/22 08:38 |
| S20 | 19 | ("3815286" | "5037432" | "5207234" | "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:07 |
| S21 | 51 | ("20010023351" | "2701559" | "2712823" | "2867214" | "2881763" | "2921585" | "3964212" | "4378804" | "4957747" | "5012797" | "5037431" | "5037432" | "5100412" | "5207034" | "5207234" | "5620414" | "5800446" | "5810842" | "5954730" | "5971999" | "6019749" | "6039745" | "6042552" | "6080165" | | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | ("6120512" \| "6238275" \| "6303119").PN. OR ("6527783").URPN. | | | | |
| S22 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S23 | 42 | ("20010023351" \| "4572187" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5354307" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6162232" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6299620" \| "6319211" \| "6391034" \| "6423078" \| "6432113" \| "6629983" \| "6652888").PN. OR ("6942649").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:16 |
| S24 | 38 | ("5037432" \| "5100412" \| "5810842" \| "5971999").PN. OR ("6080165").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:17 |
| S25 | 43 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6319211").PN. OR ("6592595").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S26 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S27 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:37 |
| S28 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:38 |
| S29 | 38 | ("2608032" \| "2921585" \| "3574239" \| "3715838" \| "4375740" \| "4482322" \| "4560373" \| "4646480" \| "4671867" \| "4676749" \| "4757814" \| "4765099" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5309683" \| "5460604" \| "5547376" \| "5765759" \| "5810587" \| "5810842" \| "6039745").PN. OR ("6277128").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:39 |
| S30 | 14 | ("3815286" \| "5037431" \| "6183148" \| "6193589" \| "6235039" \| "6238275" \| | US-PGPUB; | | | 2015/07/22 10:41 |

| | | "6322568").PN. OR ("6503256").URPN. | USPAT; USOCR | | | |
|---|---|---|---|---|---|---|
| S31 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:44 |
| S32 | 82 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:46 |
| S33 | 107 | ("2608032" \| "2921585" \| "3085573" \| "3574239" \| "3715838" \| "4560373" \| "4646480" \| "4676749" \| "4757814").PN. OR ("5037432").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:53 |
| S34 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:55 |
| S35 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 14:45 |
| S36 | 6 | (manifold same container same (antimicrobial disenfect$4)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:29 |
| S37 | 140 | (manifold same container same (antimicrobial disenfect$4 surfactant sanitiz$5)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:32 |
| S38 | 378 | (manifold with (clean$4 sanitiz$4) with container) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:44 |
| S39 | 12 | (manifold with (clean$4 sanitiz$4) with container) and (abrasion or microabrasion) | US-PGPUB; USPAT; | OR | ON | 2015/07/23 08:45 |

| | | | EPO; JPO | | | |
|---|---|---|---|---|---|---|
| S40 | 17 | ("2894732" \| "3378234" \| "3468637").PN. OR ("3865352").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 09:24 |
| S41 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:06 |
| S42 | 15 | ("20010023351" \| "20030093089" \| "20060116674" \| "20070156124" \| "6250996" \| "7232444" \| "7651508" \| "D286920" \| "D286921" \| "D321340" \| "D326920" \| "D489816" \| "D548326").PN. OR ("D627876").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:12 |
| S43 | 15 | ("5037432" \| "5971999").PN. OR ("6250996").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:13 |
| S44 | 8 | ("20010023351" \| "20030093089" \| "20030212415" \| "6250996" \| "D450842").PN. OR ("D503979").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:14 |
| S45 | 16 | ("20010023351" \| "20030093089" \| "20070156124" \| "4653474" \| "6250996" \| "7232444" \| "D192841" \| "D224070" \| "D249550" \| "D326920" \| "D475463" \| "D489816" \| "D627876").PN. OR ("D682414").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:15 |
| S46 | 47 | ("7083580" \| "7087063" \| "7094252" \| "7115275" \| "7135011" \| "7153311" \| "7197359" \| "7198623" \| "7241208" \| "7276051" \| "7314326" \| "7316657" \| "7318828" \| "7320691" \| "7352801" \| "7354423" \| "7364565" \| "7384405" \| "7427273" \| "7458944" \| "7476205" \| "7477938" \| "7482314" \| "7489989" \| "7507067" \| "7579900" \| "7597901" \| "7658742" \| "7678120" \| "7744582" \| "7789886" \| "7837695" \| "7901373" \| "7951156" \| "8025669" \| "8048089" \| "8066716" \| "8088085" \| "8128638" \| "8221437" \| "8236008" \| "8277287" \| "8337513" \| "8343116" \| "8814836" \| "RE37796" \| "RE42960").PN. | US-PGPUB; USPAT | OR | ON | 2016/02/23 12:32 |
| S47 | 3 | ("20080154161" \| "20080208146" \| "20160038183").PN. | US-PGPUB; USPAT | OR | ON | 2016/08/17 10:17 |
| S48 | 5577 | A61B17/54,545.cpc. or A61B19/0248.cpc. or A61B2019/025.cpc. or A61B2017/00199.cpc. or A61B2017/00017.cpc. or A61B2217/005,007.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 10:39 |
| S49 | 442 | S48 and (manifold) | US- | OR | ON | 2016/08/17 |

| | | | PGPUB; USPAT | | | 10:39 |
|---|---|---|---|---|---|---|
| S50 | 250 | S48 and (manifold) and liquid | US-PGPUB; USPAT | OR | ON | 2016/08/17 10:42 |
| S51 | 11 | ("5037431" \| "5037432" \| "5100412" \| "5810842").PN. OR ("6562050").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 10:45 |
| S52 | 40 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:14 |
| S53 | 83 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:15 |
| S54 | 13 | ("20010023351" \| "20020133176" \| "20020169461" \| "20020183702" \| "20030097139" \| "20050277950" \| "20060086634" \| "20060129140" \| "20060161178" \| "20070156124" \| "20070265586" \| "20100030132" \| "6846218").PN. OR ("8986323").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:19 |
| S55 | 7 | ("20030208159" \| "6322568" \| "8236008" \| "20020151908" \| "20090125023" \| "20110009882" \| "20120136374").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:55 |
| S56 | 879 | microdermabrasion | US-PGPUB; USPAT | OR | ON | 2016/08/17 12:14 |
| S57 | 0 | 14/698,67. | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/17 14:22 |
| S58 | 1 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/17 14:22 |
| S59 | 406 | A61B17/50.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 14:25 |
| S60 | 1002 | A61M35/003.cpc. | US- | OR | ON | 2016/08/17 |

| S61 | 453 | A61B2017/00761.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 15:04 |
| S62 | 1533 | A61N5/0616.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 15:05 |
| S63 | 952 | A61B2017/320004.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 15:05 |
| S64 | 641 | A61B50/10.cpc. | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 13:47 |
| S65 | 16 | A61B50/10.cpc. and (microdermabra$5 or abra$5) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 14:00 |
| S66 | 622 | A61B50/13.cpc. | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 14:02 |
| S67 | 252 | S66 not S64 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 14:02 |
| S68 | 17 | 11/392,348 | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:12 |
| S77 | 400 | A61B17/3205.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/18 15:19 |

## EAST Search History (Interference)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
| --- | --- | --- | --- | --- | --- | --- |
| S69 | 0 | (console and manifold and contain$4 and skin and liquid and (handpiece handle) and tip and (vacuum suction) and (conduit tube) and treat$4).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:08 |
| S70 | 0 | (console and manifold and skin and liquid and (handpiece handle) and tip and (vacuum suction) and (conduit tube) and treat$4).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |
| S71 | 0 | (console and manifold and skin and liquid and (handpiece handle) and tip and (vacuum suction) and (conduit tube)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |
| S72 | 2 | (console and manifold and skin and (handpiece handle) and tip and (vacuum suction) and (conduit tube)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |
| S73 | 3 | (manifold and skin and (handpiece handle) and tip and (vacuum suction) and (conduit tube)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |

| S74 | 17 | 11/392,348 | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:12 |
|---|---|---|---|---|---|---|
| S75 | 38 | (manifold and (handpiece handle) and tip and (vacuum suction) and (conduit tub$4)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:13 |
| S76 | 286 | ("20010023351" \| "20010049511" \| "20020016601" \| "20020041891" \| "20020058952" \| "20020107527" \| "20020133110" \| "20020188261" \| "20030012415" \| "20030060834" \| "20030093089" \| "20030097139" \| "20030187462" \| "20030208159" \| "20030212127" \| "20030212415" \| "20040087972" \| "20040092895" \| "20040097967" \| "20040143274" \| "20040166172" \| "20040219179" \| "20040236291" \| "20040243149" \| "20040267285" \| "20050037034" \| "20050038448" \| "20050059940" \| "20050084509" \| "20050148958" \| "20050203111" \| "20050209611" \| "20050283176" \| "20060002960" \| "20060200099" \| "20060200172" \| "20060200173" \| "20060212029" \| "20060253125" \| "20060264893" \| "20070005078" \| "20070043382" \| "20070065515" \| "20070088371" \| "20070114904" \| "20070123808" \| "20070154502" \| "20070156124" \| "20070178121" \| "20070198031" \| "20070208353" \| "20070239173" \| "20080027328" \| "20080091179" \| "20080119781" \| "20080132914" \| "20080139974" \| "20080193493" \| "20080200861" \| "20080214987" \| "20080215068" \| "20080243039" \| "20080287864" \| "20080300529" \| "20090048557" \| "20090053390" \| "20090099091" \| "20090099093" \| "20090124985" \| "20090138026" \| "20090177171" \| "20090192442" \| "20090222023" \| "20100045427" \| "20100049177" \| "20100049210" \| "20110054490" \| "20110066162" \| "20110082415" \| "20120022435" \| "20120136374" \| "20130066336" \| "20130096577" \| "20130144280" \| "20130158547" \| "2608032" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3085573" \| "3214869" \| "3476112" \| "3574239" \| "3715838").PN. OR ("3948265" \| "3964212" \| "3977084" \| "4121388" \| "4155721" \| "4182329" \| "4203431" \| "4216233" \| "4378804" \| "4560373" \| "4646480" \| "4646482" \| "4676749" \| "4706676" \| "4754756" \| "4757814" \| "4764362" \| "4795421" \| "4875287" \| "4886078" \| "4887994" \| "4900316" \| "4917086" \| "4925450" \| "4957747" \| "5006004" \| "5006339" \| "5012797" \| "5035089" \| "5037431" \| "5037432" \| "5100412" \| "5119839" \| "5122153" \| "5207234" \| "5222956" \| | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:16 |

| | | |
|---|---|---|
| "5242433" | "5254109" | "5368581" |
| "5417674" | "5419772" | "5460620" |
| "5470323" | "5484427" | "5562642" |
| "5611687" | "5674235" | "5676643" |
| "5676648" | "5683971" | "5713785" |
| "5759185" | "5779519" | "5800446" |
| "5810842" | "5813416" | "5846215" |
| "5861142" | "5873881" | "5879323" |
| "5882201" | "5885260" | "5908401" |
| "5919152" | "5954730" | "5971999" |
| "5980555" | "6019749" | "6024733" |
| "6027402" | "6039745" | "6042552" |
| "6080165" | "6080166" | "6090085" |
| "6120512" | "6136008" | "6139553" |
| "6139554" | "6142155" | "6149634" |
| "6162232" | "6183451" | "6183483" |
| "6231593" | "6238275" | "6241739" |
| "6264666" | "6277128" | "6283978" |
| "6299620" | "6306119" | "6306147" |
| "6322568" | "6368333" | "6387103" |
| "6410599" | "6414032" | "6420431" |
| "6423078" | "6423750" | "6432113" |
| "6471712" | "6477410" | "6482212" |
| "6488646" | "6494856" | "6500183" |
| "6503256" | "6511486" | "6514262" |
| "6527783" | "6535761" | "6540757" |
| "6562013" | "6562050" | "6564093" |
| "6565535" | "6582442" | "6592595" |
| "6629983" | "6641591" | "6645184" |
| "6652888" | "6673081").PN. OR ("6673082" | |
| "6685853" | "6687537" | "6695853" |
| "6735470" | "6743215" | "6764493" |
| "6869611" | "6905487" | "6911031" |
| "6924649" | "6926681" | "6942649" |
| "7001355" | "7004933" | "7044938" |
| "7052503" | "7069073" | "7070488" |
| "7083580" | "7087063" | "7094252" |
| "7115275" | "7135011" | "7153311" |
| "7197359" | "7198623" | "7241208" |
| "7276051" | "7314326" | "7316657" |
| "7318828" | "7320691" | "7320801" |
| "7354423" | "7364565" | "7384405" |
| "7427273" | "7458944" | "7476205" |
| "7477938" | "7482314" | "7489989" |
| "7507228" | "7582067" | "7597900" |
| "7597901" | "7658742" | "7678120" |
| "7789886" | "7837695" | "7901373" |
| "7951156" | "8025669" | "8048089" |
| "8066716" | "8080085" | "8128638" |
| "8221437" | "8236008" | "8277287" |
| "8337513" | "8343116" | "RE37796").PN. OR |
| ("8814836").URPN. | | |

8/ 18/ 2016 5:45:08 PM
C:\ Users\ cknauss\ Documents\ EAST\ Workspaces\ 14698673.wsp

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTIAN KNAUSS | 3734 |

| CPC- SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| A61B17/54, 545 | 7/23/15 | CDK |
| A61B2017/00017, 00199, 00743, 00747, 00761 | 7/23/15 | CDK |
| A61B19/0248 | 7/23/15 | CDK |
| A61B2019/025 | 7/23/15 | CDK |
| A61B2217/005, 007 | 7/23/15 | CDK |
| A61B17/50 | 8/18/16 | CDK |
| A61M35/003 | 8/18/16 | CDK |
| A61N5/0616 | 8/18/16 | CDK |
| A61B2017/320004 | 8/18/16 | CDK |
| A61B50/10, 13 | 8/18/16 | CDK |

| CPC COMBINATION SETS  - SEARCHED | | |
|---|---|---|
| **Symbol** | **Date** | **Examiner** |
| | | |

| US CLASSIFICATION SEARCHED | | | |
|---|---|---|---|
| **Class** | **Subclass** | **Date** | **Examiner** |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| **Search Notes** | **Date** | **Examiner** |
| Performed inventor and assignee searches in PALM and EAST | 7/23/15 | CDK |
| Performed EAST search (see attached EAST search history) | 7/23/15 | CDK |
| Performed  forward/backward searches in EAST | 7/23/15 | CDK |
| Performed class/text searches and combinations in EAST | 7/23/15 | CDK |
| Updated EAST search (see attached EAST search history) | 2/25/16 | CDK |
| Consulted Ryan Severson | 2/25/16 | CDK |
| Updated EAST search (see attached EAST search history) | 8/18/16 | CDK |
| Consulted Ryan Severson regarding allowable subject matter | 8/18/16 | CDK |
| Performed Interference search | 8/18/16 | CDK |

| /C.K./ Examiner.Art Unit 3731 | |
|---|---|
| | |

| INTERFERENCE SEARCH | | | |
|---|---|---|---|
| **US Class/ CPC Symbol** | **US Subclass / CPC Group** | **Date** | **Examiner** |
| text search | US-PGPUB; USPAT | 8/18/16 | CDK |

| | |
|---|---|
| /C.K./ Examiner.Art Unit 3731 | |

PART B - FEE(S) TRANSMITTAL

Complete and send this form, together with applicable fee(s), to: **Mail**   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

26995      7590      09/14/2016
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

TITLE OF INVENTION: CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/14/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KNAUSS, CHRISTIAN D | 3731 | 606-131000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1. Knobbe, Martens,
2. Olson & Bear, LLP
3. _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                          (B) RESIDENCE: (CITY and STATE or COUNTRY)

Edge Systems LLC                               Signal Hill, California

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual  ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:

☒ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (Please first reapply any previously paid issue fee shown above)

☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The director is hereby authorized to charge ~~the required fee(s)~~, any deficiency, or credits any overpayment, to Deposit Account Number   11-1410   (enclose an extra copy of this form).

5. Change in Entity Status (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____      Date   2016-12-09

Typed or printed name   Theodore G. Papagiannis      Registration No.   61,546

Page 2 of 3

PTOL-85 Part B (10-13) Approved for use through 10/31/2013.      OMB 0651-0033      U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

EDGE.005C2                                                                          PATENT

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| Appl. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3731 |
| Conf. No. | : | 7926 |

### COMMENTS ON STATEMENT OF REASONS FOR ALLOWANCE

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

To the extent that there is any implication that the patentability of the claims rests on the recitation of a single feature, Applicant respectfully disagrees with the Examiner's Statement of Reasons for Allowance, because it is the combination of features that makes the claims patentable.  Further, to the extent that any features recited in the reasons for allowance are not present in any or all of the claims due to paraphrasing or because the features are in one claim but not in others, Applicant reserves the right to disagree with the Examiner's statements.  In addition, Applicant does not necessarily agree with the Examiner's characterization of any references, such as, for example, U.S. Publ. No. 2001/0049511 to Coleman et al., and/or the state of the art generally mentioned in the Reasons for Allowance.

Applicant respectfully submits that the pending claims, including the dependent claims, may also be allowable for reasons different from, or in addition to, those stated in the Reasons for Allowance.  Accordingly, Applicant reserves the right to argue that the claims of the present application are allowable because each of the claims recites a combination of features that are not taught or suggested by the references of record and/or any other art.

-1-

**Appl. No.** : **14/698,673**
**Filed** : **April 28, 2015**


   If the Examiner disagrees with any of the comments made herein, the Examiner is respectfully invited to promptly contact the undersigned.

          Respectfully submitted,

          KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: <u>December 9, 2016</u>     By: <u>/Theodore G. Papagiannis/</u>
              Theodore G. Papagiannis
              Registration No. 61,546
              Attorney of Record
              Customer No. 20,995
              (949) 760-0404


24215082

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☒ United States application or PCT international application number 14/698,673

filed on April 28, 2015.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

## WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Roger Ignon

Date (Optional): 10/11/16

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☑ United States application or PCT international application number 14/698,673

filed on April 28, 2015

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Scott Mallett          Date (Optional): 9·23·16

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☒ United States application or PCT international application number 14/698,673

filed on April 28, 2015

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft.  Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application.  If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO.  Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent.  Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14).  Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor:  Abraham Solano

Signature:

Date (Optional) :

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☑ United States application or PCT international application number __14/698,673__

filed on __April 28, 2015__.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: __William Cohen__ Date (Optional): __10.7.16__

Signature: _William Cohen_

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant ( *i.e.*, GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14698673 |
| **Filing Date:** | 28-Apr-2015 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Filer:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 2501 | 1 | 480 | 480 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | | **Total in USD ($)** | **480** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27752165 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Christina Graul |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 09-DEC-2016 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 17:30:39 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $480 |
| RAM confirmation Number | 121216INTEFSW17320900 |
| Deposit Account | 111410 |
| Authorized User | Christina Graul |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

 37 CFR 1.16 (National application filing, search, and examination fees)

 37 CFR 1.17 (Patent application and reexamination processing fees)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal Letter | EDGE005C2_Transmittal.pdf | 15826 <br><br> d879df39d53e2e1ceeb1c313db888f13937b7a25 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Issue Fee Payment (PTO-85B) | EDGE-005C2_Issue_Fee.pdf | 943846 <br><br> 2f42755c5c80336cb7670a1ee99ca2e581a669aa | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Miscellaneous Incoming Letter | EDGE005C2_Comments.pdf | 20692 <br><br> 50b761b33ac8bca33ed6b8434c16fa89935fbdb7 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| 4 | Oath or Declaration filed | EDGE-005C2_Declarations.pdf | 5542205 <br><br> c0bc5ecced0dac20d45fe9d9b18fb303f4a6b411 | no | 5 |
| Warnings: | | | | | |
| Information: | | | | | |
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 30443 <br><br> 64b8e60aa359895f8ad8e9d4e7a3b8316195011b | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | **Total Files Size (in bytes):** | 6553012 | | |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

<u>New Applications Under 35 U.S.C. 111</u>
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

<u>National Stage of an International Application under 35 U.S.C. 371</u>
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

<u>New International Application Filed with the USPTO as a Receiving Office</u>
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

Docket No.: EDGE.005C2

December 9, 2016
Page 1 of 1

## Please Direct All Correspondence to Customer Number 20995

### TRANSMITTAL

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| Appl. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3731 |
| Conf. No. | : | 7926 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In reference to the above-identified application, please find the following:

(X)   Declarations of inventors, namely Roger Ignon, Scott Mallett, Abraham Solano and William Cohen;

(X)   Issue Fee Transmittal; and

(X)   Comments on Statement of Reasons for Allowance.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>December 9, 2016</u>

By: <u>/Theodore G. Papagiannis/</u>
Theodore G. Papagiannis
Registration No. 61,546
Attorney of Record
Customer No. 20995
(949) 760-0404

24451431

Receipt date: 06/22/2015                                                14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 6 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:  1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 146 | 6,645,184 | 11-11-2003 | Zelickson et al. | |
| | 147 | 6,652,888 | 11-25-2003 | Rhoades | |
| | 148 | 6,673,081 | 01-06-2004 | Tavger et al. | |
| | 149 | 6,673,082 | 01-06-2004 | Mallett et al. | |
| | 150 | 6,685,853 | 02-03-2004 | Angelopoulous et al. | |
| | 151 | 6,687,537 | 02-03-2004 | Bernabei | |
| | 152 | 6,695,853 | 02-24-2004 | Karasiuk | |
| | 153 | 6,735,470 | 05-11-2004 | Henley et al. | |
| | 154 | 6,743,215 | 06-01-2004 | Bernabei | |
| | 155 | 6,764,493 | 07-20-2004 | Weber et al. | |
| | 156 | 6,869,611 | 03-22-2005 | Kligman et al. | |
| | 157 | 6,905,487 | 06-14-2005 | Zimmerman | |
| | 158 | 6,911,031 | 06-28-2005 | Muldner | |
| | 159 | 6,924,649 | 08-02-2005 | Knoedgen | |
| | 160 | 6,926,681 | 08-09-2005 | Ramey, et al. | |
| | 161 | 6,942,649 | 09-13-2005 | Ignon et al. | |
| | 162 | 7,001,355 | 02-21-2006 | Nunomura et al. | |
| | 163 | 7,004,933 | 02-28-2006 | ~~McDaniel~~ McDaniel | |
| | 164 | 7,044,938 | 05-16-2006 | La Bianco et al. | |
| | 165 | 7,052,503 | 05-30-2006 | Bernabei | |
| | 166 | 7,069,073 | 06-27-2006 | Henley et al. | |
| | 167 | 7,070,488 | 07-04-2006 | Suissa et al. | |
| | 168 | 7083,580 | 08-01-2006 | Bernabei | |
| | 169 | 7,087,063 | 08-08-2006 | Carson et al. | |
| | 170 | 7,094,252 | 08-22-2006 | Koop | |
| | 171 | 7,115,275 | 10-03-2006 | Clarot et al. | |
| | 172 | 7,135,011 | 11-14-2006 | Powers et al. | |
| | 173 | 7,153,311 | 12-26-2006 | Chung | |
| | 174 | 7,197,359 | 03-27-2007 | Tokudome et al. | |

Change(s) applied to document, /D.D./ 9/24/2016

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /C.K./

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 3 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 59 | 5,484,427 | 01-16-1996 | Gibbons | |
| | 60 | 5,562,642 | 10-08-1996 | Smith et al. | |
| | 61 | 5,611,687 | 03-18-1997 | Wagner | |
| | 62 | ~~5,012,797~~ 5,012,797 | ~~03-18-1997~~ 05-1991 | Liang et al. | |
| | 63 | 5,674,235 | 10-07-1997 | Parisi | |
| | 64 | 5,676,643 | 10-14-1997 | Cann et al. | |
| | 65 | 5,676,648 | 10-14-1997 | Henley | |
| | 66 | 5,683,971 | 11-04-1997 | Rose et al. | |
| | 67 | 5,707,383 | 01-13-1998 | Bays | |
| | 68 | 5,713,785 | 02-03-1998 | Nishio | |
| | 69 | 5,759,185 | 06-02-1998 | Grinberg | |
| | 70 | 5,779,519 | 07-14-1998 | Oliver | |
| | 71 | 5,800,446 | 09-01-1998 | Banuchi | |
| | 72 | 5,807,353 | 09-15-1998 | Schmitz | |
| | 73 | 5,810,842 | 09-22-1998 | Di Fiore at al. | |
| | 74 | 5,813,416 | 09-29-1998 | Rudolph | |
| | 75 | 5,817,050 | 10-06-1998 | Klein | |
| | 76 | 5,846,215 | 12-08-1998 | Zygmont | |
| | 77 | 5,848,998 | 12-15-1998 | Marasco, Jr. | |
| | 78 | 5,861,142 | 01-19-1999 | Schick | |
| | 79 | 5,873,881 | 02-23-1999 | McEwen et al. | |
| | 80 | 5,879,323 | 03-09-1999 | Henley | |
| | 81 | 5,882,201 | 03-16-1999 | Salem | |
| | 82 | 5,885,260 | 03-23-1999 | Mehl, Sr., et al. | |
| | 83 | 5,908,401 | 06-01-1999 | Henley | |
| | 84 | 5,919,152 | 07-06-1999 | Zygmont | |
| | 85 | 5,954,730 | 09-21-1999 | Bernabei | |
| | 86 | 5,971,999 | 10-26-1999 | Naldoni | |
| | 87 | 5,980,555 | 11-09-1999 | Barbut et al. | |

Change(s) applied to document,
/D.D./
9/24/2016

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Case 2:20-cv-06082-GRB-ST   Document 69-3   Filed 06/21/22   Page 334 of 363 PageID #: 4827

Receipt date: 06/22/2015                                                                14698673 - GAU: 3734

| INFORMATION DISCLOSURE | Application No. | 14/698,673 |
|---|---|---|
| STATEMENT BY APPLICANT | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 2 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 4,764,362 | 08-16-1988 | Barchas | |
| | 31 | 4,795,421 | 01-03-1989 | Blasius, Jr., et al. | |
| | 32 | 4,875,287 | 10-24-1989 | Creasy et al. | |
| | 33 | 4,886,078 | 12-12-1989 | Shiffman | |
| | 34 | 4,887,994 | 12-12-1989 | ~~Shiffmann~~ Bedford | |
| | 35 | 4,900,316 | 02-13-1990 | Yamamoto | |
| | 36 | 4,917,086 | 04-17-1990 | Feltovich et al. | |
| | 37 | 4,925,450 | 05-15-1990 | Imonti et al. | |
| | 38 | 4,957,747 | 09-18-1990 | Stiefel | |
| | 39 | 5,006,004 | 04-09-1991 | Dirksing et al. | |
| | 40 | 5,006,339 | 04-09-1991 | Bargery et al. | |
| | 41 | 5,012,797 | 05-07-1991 | Liang et al. | |
| | 42 | 5,035,089 | 07-30-1991 | Tillman et al. | |
| | 43 | 5,037,431 | 08-06-1991 | Summers et al. | |
| | 44 | 5,037,432 | 08-06-1991 | Molinari | |
| | 45 | 5,100,412 | 03-31-1992 | Rosso | |
| | 46 | 5,100,424 | 03-31-1992 | Jang | |
| | 47 | 5,119,839 | 06-09-1992 | Rudolph | |
| | 48 | 5,122,153 | 06-16-1992 | Harrel | |
| | 49 | 5,207,234 | 05-04-1993 | Rosso | |
| | 50 | 5,222,956 | 06-29-1993 | Waldron | |
| | 51 | 5,242,433 | 09-07-1993 | Smith et al. | |
| | 52 | 5,254,109 | 10-19-1993 | Smith et al. | |
| | 53 | 5,368,581 | 11-29-1994 | Smith et al. | |
| | 54 | 5,391,151 | 02-21-1995 | Wilmot | |
| | 55 | 5,417,674 | 05-23-1995 | Smith et al. | |
| | 56 | 5,419,772 | 05-30-1995 | Teitz et al. | |
| | 57 | 5,460,620 | 10-24-1995 | Smith et al. | |
| | 58 | 5,470,323 | 11-28-1995 | Smith et al. | |

Change(s) applied to document, /D.D./ 9/24/2016

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T¹ - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 01/24/2017 | 9550052 | EDGE.005C2 | 7926 |

20995        7590        01/04/2017

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Roger Ignon, Redondo Beach, CA;
EDGE SYSTEMS LLC, Signal Hill, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court **CENTRAL DISTRICT OF CALIFORNIA** on the following

☐ Trademarks or ☑ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>2:17-cv-8699 | DATE FILED<br>12/1/2017 | U.S. DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA |
|---|---|---|
| PLAINTIFF<br><br>EDGE SYSTEMS LLC, a California limited liability company, and AXIA MEDSCIENCES, LLC, a Delaware limited liability company | | DEFENDANT<br><br>IMAGE MICRODERM INC., a Nevada corporation |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 6,641,591 | 11/4/2003 | Axia MedSciences, LLC |
| 2 | 7,789,886 | 9/7/2010 | Axia MedSciences, LLC |
| 3 | 8,066,716 | 11/29/2011 | Axia MedSciences, LLC |
| 4 | 8,337,513 | 12/25/2012 | Axia MedSciences, LLC |
| 5 | 9,468,464 | 10/18/2016 | Axia MedSciences, LLC |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY |  |  |
|---|---|---|---|
| | ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | | |
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| see attached Final Consent Judgment |

| CLERK<br>KIRY K. GRAY | (BY) DEPUTY CLERK | DATE<br>5/23/19 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

Case 2:20-cv-06082-SBR-ST    Document 69-3  Filed 06/21/22   Page 337 of 363  PageID #:
Case 2:19-cv-09954-SB-AGR    Document 62-3  Filed 05/23/19   Page 10 of 10   Page ID #:23
4830

**IT IS SO STIPULATED AND AGREED**

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 20, 2019          By: */s/ Paul A. Stewart*
                             Paul A. Stewart
                             paul.stewart@knobbe.com
                             Ali S. Razai
                             ali.razai@knobbe.com

                             Attorneys for Plaintiffs
                             EDGE SYSTEMS LLC and
                             AXIA MEDSCIENCES, LLC

                             HANKIN PATENT LAW, APC

Dated: May 20, 2019          By: */Marc E. Hankin/ (with permission)*
                             Marc E. Hankin
                             marc@hankinpatentlaw.com
                             Anooj Patel
                             anooj@hankinpatentlaw.com

                             Attorneys for Defendant,
                             IMAGE MICRODERM, INC.

**IT IS SO ORDERED AND DECREED, AND FINAL JUDGMENT IS
HEREBY ENTERED**

Dated:  5/23/19          _____
                             Honorable Philip S. Gutierrez
                             United States District Judge

30557834

**REPORT ON THE FILING OR DETERMINATION OF AN**
**ACTION REGARDING A PATENT OR TRADEMARK**
**(Continued)**

| Docket No.<br>2:17-cv-8699 | | Date Filed<br>12/1/2017 | U.S. District Court<br>For the Central District of California |
|---|---|---|---|
| PATENT NO. | | DATE OF<br>PATENT | HOLDER OF PATENT |
| 6 | 9,550,052 | 1/24/2017 | Edge Systems LLC |
| 7 | 9,775,646 | 10/3/2017 | Axia MedSciences, LLC |

1  Paul Stewart (SBN 153,467)
   paul.Stewart@knobbe.com
2  Ali S. Razai (SBN 246,922)
   ali.razai@knobbe.com
3  KNOBBE, MARTENS, OLSON & BEAR, LLP
   2040 Main Street, Fourteenth Floor
4  Irvine, CA 92614
   Telephone: (949) 760-0404
5  Facsimile: (949) 760-9502

6  Attorneys for Plaintiffs EDGE SYSTEMS LLC and
   AXIA MEDSCIENCES, LLC
7
8  Marc E. Hankin (SBN 170,505)
   marc@hankinpatentlaw.com
9  Anooj Patel (SBN 300.297)
   anooj@hankinpatentlaw.com
10 HANKIN PATENT LAW, APC
   12400 Wilshire Boulevard, Suite 1265
11 Los Angeles, CA 90025
   Telephone: (310) 979-3600
12 Facsimile: (310) 979-3603

13 Attorneys for Defendant IMAGE MICRODERM, INC.

14
                 IN THE UNITED STATES DISTRICT COURT
15
             FOR THE CENTRAL DISTRICT OF CALIFORNIA
16
                          WESTERN DIVISION
17

18 EDGE SYSTEMS LLC, a California       ) Civil Action No.
   limited liability company, and AXIA  ) 2:17-CV-08699-PSG-AGR
19 MEDSCIENCES, LLC, a Delaware         )
   limited liability company,           )
20                                       )
              Plaintiffs,                ) [PROPOSED]
21                                       )
          v.                             ) FINAL CONSENT JUDGMENT
22                                       ) OF WILLFUL INFRINGEMENT
   IMAGE MICRODERM, INC., a Nevada      ) AND PERMANENT
23 corporation,                          ) INJUNCTION
                                         )
24            Defendant.                 )
                                         )
25 AND RELATED COUNTERCLAIMS           )
   AND COUNTERCLAIMS-IN-REPLY           )
26                                       )

27

28

Plaintiffs Edge Systems LLC ("Edge") and Axia Medsciences, LLC (collectively, "Plaintiffs") and Defendant Image Microderm, Inc. ("Defendant") hereby stipulate and jointly move for entry of final judgment as follows:

1. That this Court has subject matter jurisdiction over this action as well as personal jurisdiction over Plaintiffs and Defendant.

2. That venue is proper in this judicial district.

3. That Edge owns each of U.S. Patent Nos. 6,641,591 ("the 591 Patent"), 7,789,886 ("the '886 Patent"), 8,066,716 ("the '716 Patent"), 8,337,513 ("the '513 Patent"), 9,468,464 ("the '464 Patent"), 9,775,646 ("the '646 Patent") and 9,550,052 ("the '052 Patent") (collectively, the "patents-in-suit").

4. That each of the patents-in-suit is valid and enforceable, and that Defendant shall not challenge the validity or enforceability of any of the patents-in-suit in any judicial, administrative, or other proceeding.

5. That Defendant has manufactured, used, sold, offered for sale, and/or imported into the United States the BioXFusion MD product shown in Exhibit A.

6. That Defendant has manufactured, used, sold, offered for sale, and/or imported into the United States the BioXFusion Mini product shown in Exhibit B.

7. That the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion MD product shown in Exhibit A infringes each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, the '646 Patent, and the '052 Patent.

8. That the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion Mini product shown in Exhibit B infringes each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent.

/ / /

- 1 -

9.     That through the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion MD product shown in Exhibit A, Defendant has infringed each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, the '646 Patent, and the '052 Patent.

10.    That through the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion Mini product shown in Exhibit B, Defendant has infringed each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent.

11.    That Defendant induced its customers to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent, by using the BioXFusion MD product shown in Exhibit A because Defendant had knowledge of each of these patents-in-suit, Defendant knew that its customers would infringe each of these patents by using the BioXFusion MD product shown in Exhibit A, and Defendant had the specific intent to induce and did induce its customers to infringe each of these patents-in-suit by using the BioXFusion MD product shown in Exhibit A.

12.    That Defendant induced distributors to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent, by selling and/or offering for sale the BioXFusion MD product shown in Exhibit A, because Defendant had knowledge of each of these patents-in-suit, Defendant knew that distributors would infringe each of these patents by selling and/or offering for sale the BioXFusion MD product shown in Exhibit A, and Defendant had the specific intent to induce and did induce distributors to infringe each of these patents-in-suit by selling and/or offering for sale the BioXFusion MD product shown in Exhibit A.

13.    That Defendant induced its customers to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by using the BioXFusion Mini product shown in Exhibit B because

Defendant had knowledge of each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent, Defendant knew that its customers would infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by using the BioXFusion Mini product shown in Exhibit B, and Defendant had the specific intent to induce and did induce its customers to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by using the BioXFusion Mini product shown in Exhibit B.

14.     That Defendant induced distributors to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by selling and/or offering for sale the BioXFusion Mini product shown in Exhibit B because Defendant had knowledge of each of the patents-in-suit, Defendant knew that distributors would infringe each of the patents by selling and/or offering for sale the BioXFusion Mini product shown in Exhibit B, and Defendant had the specific intent to induce and did induce distributors to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent by selling and/or offering for sale the BioXFusion Mini product shown in Exhibit B.

15.     That Defendant's infringement of each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent was willful.

16.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of

- 3 -

the '591 Patent during the life of the '591 Patent.

17.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '886 Patent during the life of the '886 Patent.

18.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '716 Patent during the life of the '716 Patent.

19.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '513 Patent during the life of the '513 Patent.

20.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting

- 4 -

to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in <u>Exhibit A,</u> the BioXFusion Mini product shown in <u>Exhibit B,</u> or any other goods that are infringements of the '464 Patent during the life of the '464 Patent.

21.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in <u>Exhibit A,</u> the BioXFusion Mini product shown in <u>Exhibit B,</u> or any other goods that are infringements of the '646 Patent during the life of the '646 Patent.

22.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in <u>Exhibit A</u> or any other goods that are infringements of the '052 Patent during the life of the '052 Patent.

23.     That Defendant is enjoined from inducing others from undertaking any of the actions prohibited by any of Paragraphs 16-22 of this Final Consent Judgment and Permanent Injunction.

24.     That Defendant has breached Paragraph 5 of the Parties' August 2014 Settlement Agreement attached as <u>Exhibit C</u> ("2014 Agreement").

25.     That the covenant not to sue granted to Defendant by Plaintiffs in Paragraph 5 of the 2014 Agreement is null and void, but that all other provisions of the 2014 Agreement remain in effect.

26.     That Final Judgment be entered in favor of Plaintiffs and against Defendant on all claims, counterclaims, and defenses in this action.

27.     That Defendant has not paid any compensation for the infringing acts described herein.

28.     That no other or further relief, monetary or otherwise, be granted to Plaintiffs or Defendant with respect to each other, and that Plaintiffs will not seek any further relief, monetary or otherwise, from Defendant and/or from any of Defendant's officers, directors, agents, servants, employees and affiliates, representatives and attorneys, and/or any and all other persons and/or entities acting and/or attempting to act in concert and/or participation with them, including but not limited to, any and all of Defendant's distributors and/or customers, for any acts and/or omissions relating to the allegations of the Complaint in this matter.  Plaintiff's agreement not to seek further relief from Defendant's distributors and/or customers shall be void against any distributor or customer who files an action for declaratory relief against Plaintiff relating to any of the patents in suit.  For the avoidance of doubt, no license or release is hereby created in favor of Defendant's distributors or customers, who are receiving only a conditional personal immunity from suit.

29.     That Defendant affirmatively waives any and all rights to appeal this Final Consent Judgment and Permanent Injunction.

30.     That this Court retain jurisdiction over this matter to enforce compliance with the Permanent Injunction.

31.     That each party will bear its own costs and attorneys' fees for this action.

/ / /

/ / /

/ / /

/ / /

AO 120 (Rev. 08/10)

| TO: | **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court     Eastern District of New York     on the following

☐ Trademarks or    ☑ Patents.    ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>20cv6082(GRB)(ST) | DATE FILED<br>12/14/2020 | U.S. DISTRICT COURT<br>Eastern District of New York |
|---|---|---|
| PLAINTIFF<br><br>Edge Systems LLC | | DEFENDANT<br><br>Cartessa Aesthetics, LLC |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1   6,641,591 B1 | 11/4/2003 | John H. Shadduck |
| 2   8,066,716 B2 | 11/29/2011 | Axia MedSciences, LL |
| 3   8,337,513 B2 | 12/25/2012 | Axia MedSciences, LLC |
| 4   9,550,052 B2 | 1/24/2017 | Edge Systems LLC |
| 5   9,775,646 B2 | 10/3/2017 | Axia MedSciences, LLC |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY |  |
|---|---|---|
|  | ☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>DOUGLAS C. PALMER | (BY) DEPUTY CLERK<br>Deanna Rodin | DATE<br>12/15/2020 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director**    **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director**    **Copy 4—Case file copy**

# EXHIBIT E

**FILED**
**CLERK**

3:22 pm, Nov 29, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

EDGE SYSTEMS LLC,

                Plaintiff,

        -against-

CARTESSA AESTHETICS, LLC,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**

20-CV-6082 (GRB)(ST)

**APPEARANCES:**

Sean Michael Murray
*Attorney for Plaintiff*
Knobbe Martens
2040 Main St., 14th Floor
Irvine, CA 92614

Steven P. Tepera
*Attorney for Defendant*
Pillsbury Winthrop Shaw Pittman LLP
401 Congress, Ste. 1700
Austin, TX 78701

David George Keyko
*Attorney for Defendant*
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019

**GARY R. BROWN, United States District Judge:**

      In this action, plaintiff Edge Systems LLC ("Edge") seeks recovery for purported

infringement of several U.S. Patents[1] against defendant Cartessa Aesthetics, LLC ("Cartessa"), all

relating to claimed inventions and improvements in hydradermabrasion systems for treating skin.

Both plaintiff and defendant produce and market skincare treatment machines. Upon request of

---

[1] At issue are U.S. Patent Nos. 6,641,591; 8,066,716; and 8,337,513 (collectively the "Asserted Patents"). The parties resolved construction disputes related to U.S. Patent Nos. 9,550,052 and 9,775,646 prior to the hearing.

the parties, the Court conducted an expedited *Markman* hearing to resolve claim construction issues as to certain disputed terms. Additionally, the Court heard argument regarding a motion to strike Cartessa's affirmative defense of unclean hands. This opinion follows.

*Procedural History*

Plaintiff commenced this action for patent infringement under 35 U.S.C. §§ 271, 284, and 285 against defendant via the filing of a complaint in December 2020. Docket Entry ("DE") 1. In February 2021, defendant filed its answer followed by an amended answer. DE 17, 19. In an oral decision on April 14, 2021, the Court granted a motion to strike the affirmative defense of unclean hands. DE 25. In response, defendant filed a second amended answer. DE 29. In so doing, the defendant supplemented its unclean hands defense, adding several pages of supporting facts. *Id*. Plaintiff then refiled the motion to strike. DE 32. While the motion to strike was outstanding, the parties filed a stipulation setting forth a joint disputed claims term chart, DE 35, and submitted claim construction briefs. DE 38-42. On October 19, 2021, the Court held a *Markman* claim construction hearing. Neither side produced testimony.

*Claim Construction Standards*

Several years ago, then-district court Judge Joseph Bianco penned a cogent, thorough description of the applicable standard for a *Markman* hearing:

> Claim construction is "exclusively within the province of the court." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). Such construction "begins and ends" with the claim language itself, *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998), but the court may consult extrinsic evidence "if needed to assist in determining the meaning or scope of technical terms in the claims," *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995); *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) (explaining that the court may rely on extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treaties).

> In construing the claim language, the court must begin with the principle that "the words of a claim 'are generally given their ordinary and customary meaning.'"

(*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics*, 90 F.3d at 1582)). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "In such circumstances general purpose dictionaries may be helpful." *Id.* In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id.* In those cases, "the court looks to those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." *Id.* (internal quotation marks and citation omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

When the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, the inventor's lexicography governs. *Id.* at 1316. Nevertheless, it is improper to read limitations from the specification into the claim. *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("'[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.'" (alteration in original) (quoting *Phillips*, 415 F.3d at 1312)). Thus, the court "do[es] not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed.Cir.2005) (internal citations omitted).

*Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-CV-4550 (JFB), 2016 WL 1253674, at *5

(E.D.N.Y. Mar. 30, 2016)*, aff'd*, 689 F. App'x 969 (Fed. Cir. 2017); *Soter Technologies, LLC, v.*

*IP Video Corp.*, No. 20 CV 2989 (GRB), 2021 WL 4553188, at *1-2 (E.D.N.Y. Oct. 5, 2021)

(same); *Seoul Semiconductor Co., Ltd. v. Satco Prods., Inc.*, No. 19-CV-4951 (GRB), 2021 WL

4810165, at *1-2 (E.D.N.Y Oct. 15, 2021) (same).  The Federal Circuit has further held:

> Claim construction seeks to ascribe the meaning to claim terms as a person of ordinary skill in the art at the time of invention would have understood them. *Phillips v. AWH Corp*., 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  In an IPR proceeding, claims are given their broadest reasonable interpretation in light of the specification. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279 (Fed. Cir. 2015), *cert. granted sub nom. Cuozzo Speed Techs., LLC v. Lee*, —— U.S. ——, 136 S.Ct. 890, 193 L.Ed.2d 783 (2015).  In construing terms, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313.  Indeed, the specification is "the single best guide to the meaning of a disputed term" and "[u]sually, it is dispositive." *Id.*  Thus, "claims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc), aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)).

*SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341, 1347 (Fed. Cir. 2016), *rev'd and*

*remanded on other grounds sub nom. SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018).  With this

standard in mind, the Court turns to the disputed claim terms.

> *Discussion*

> *1. Markman Hearing*

Before the hearing, counsel appropriately met and conferred, significantly reducing the

number of disputed claim terms, resulting in conservation of judicial resources and substantial cost

savings for the litigants.  Counsel identified eleven disputes, but, in reality, these disputes revolved

around three terms: abrade, sharp, and "sharp edge configured to abrade skin."  As such, the Court

will focus on the principal disputes.  *See Interactive Wearables, LLC v. Polar Electro Oy*, 501 F.

Supp. 3d 162, 171 (E.D.N.Y. 2020) ("Addressing every claim of a challenged patent individually

is not necessary where multiple claims are substantially similar and linked to the same abstract

idea. Thus, where the claims asserted in the patent contain only minor differences in terminology

[but] require performance of the same basic process, they should rise or fall together.") (citation

omitted).[2]  These disputes are identified and defined by the parties as follows:

| Disputed Term | Edge's Proposed Construction | Cartessa's Proposed Construction |
|---|---|---|
| Abrade/abrading/abraded | remove a portion of the skin surface by friction. Note that "a portion" means more than a de minimis amount of skin | These terms are indefinite.<br><br>In the alternative, they should [be] construed to mean: scape/scraping/scaped |
| sharp | "edges sufficiently sharp to abrade skin, but not necessarily sharp enough to cut the skin" | edge[s] shaped for cutting |
| Sharp edge configured to abrade skin | The parties consent to the following construction:<br><br>"sharp edges that are positioned such that the sharp edge abrades tissue," *see infra* Section 1(B) | |

DE. 35, Ex. A.  The Court hereby construes the claims as follows:

> A.  *"Abrade" and "Sharp."*

The Federal Circuit has upheld *Markman* determinations that "declined to further construe

[a] term because it was a 'straightforward term' that required no construction."  *Summit 6, LLC v.*

*Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).   Claim construction "is not an

obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568

(Fed. Cir. 1997).  Two of the disputed terms – "abrade" and "sharp" – fall squarely in this category.

Despite etymological sparring by the parties, common meanings prove satisfactory at this juncture.

Such a holding is consistent with courts which have reviewed these terms in the same or

similar patents.  One district judge reviewed these terms in each of the Asserted Patents and found:

> The Court finds the terms "abrade," "abrasive," "abrading," and their other
> variations as used in the Asserted Patents are easily understood in the surrounding

---

[2] Variations of the disputed terms abrade and sharp appear in each of the Asserted Patents – '591, '716, and '513 – in several claims.  For simplicity, the definitions articulated in this opinion apply to all claims involving these concepts.

context of the claim language and specification.  The Court finds no construction necessary for the term "abrade" and its variations in the context of the Asserted Patents.

. . .

The Court declines to construe the overall claim phrases that include the terms "sharp edge[s]" and/or "sharp element[s]."  Although the Court is not particularly persuaded that these claim phrases need construction at all, it adopts Plaintiffs' proposal and construes the smaller terms "sharp edge[s]" / "sharp element[s]" as "edge[s]/element[s] sufficiently sharp to abrade skin."

*Edge Sys. LLC v. Aesthetic Skin Sys. LLC*, No. 17-cv-4597 (PSG) (AFM), DE 79 at 12, 16 (C.D. Cal Jan. 8, 2019).  Another district judge similarly reviewed these terms, and though settling upon negotiated definitions, noted:

In the end, the Court concludes that ordinary jurors will have little difficulty determining whether or not an "edge" is "sharp"—or, to be more precise, whether something does, or does not, constitute a "sharp edge."

*Edge Sys., LLC v. Venus Concept USA Inc*., No. 18-cv-62588, 2019 WL 3936379, at *6 (S.D. Fla. Aug. 20, 2019).  "Abrade" is commonly understood in many contexts, including in relation to skin. As to "sharp," anyone who has shaved with a razor, eaten with a knife, or trimmed a fingernail should readily understand this term.  The definitions urged by the parties fail to provide further enlightenment.  Given the relative simplicity of the terms abrade and sharp, the Court declines to construe them and instead assigns the terms their plain and ordinary meanings.  *Summit 6, LLC*, 802 F.3d at 1291 ("'straightforward term' . . . required no construction").

### B.  *Sharp edge configured to abrade skin.*

During the hearing, the parties, working with the Court, came to a compromise on the meaning of the term "sharp edge configured to abrade skin."  DE 47 at 56.  This term shall, upon consent of the parties, be construed to mean "sharp edges that are positioned such that the sharp edge abrades tissue."  *Id.* at 57-59.  This stipulated construction helps clarify that the

"configuration" of the edge refers to its physical positioning rather than, for example, something inherent in its design.

### 2. *Motion to Strike*

Under Fed. R. Civ. P. 12(f), the Court may strike any "insufficient defense." A motion to strike an affirmative defense is not favored and will not be granted unless "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp*., 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). "'If sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted.'" *Entergy Nuclear Fitzpatrick, LLC v. United States*, 93 Fed. Cl. 739, 742 (2010), *adhered to on denial of reconsideration*, 101 Fed. Cl. 464 (2011), *aff'd*, 711 F.3d 1382 (Fed. Cir. 2013) (quoting *System Fuels, Inc. v. United States*, 73 Fed.Cl. 206, 216 (2006)). The standard for striking an affirmative defense is three-pronged: (1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 97-99 (2d Cir. 2019) (clarifying the three-prong test established in *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)). "[T]he plausibility standard of *Twombly* applies to determining the sufficiency of . . . an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task." *Id.* at 98. "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Id.*

The Second Circuit has held that "[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy." *Shechter v. Comptroller of New York*, 79 F.3d 265, 270 (2d Cir.1996) (quoting *Nat'l Acceptance Co. of Am. v. Regal Prods., Inc*., 155 F.R.D. 631, 634 (E.D.Wis.1994) ("affirmative defenses are pleadings, and therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure")) (internal quotation marks and citations omitted).

Unclean hands may be found "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation," *i.e.*, "for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The unclean hands defense is an "ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co*., 324 U.S. 806, 814 (1945). "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor." *Id.* at 815. A defense of unclean hands may be based on fraudulent conduct, but it does not require such a showing. *See, e.g.*, *Gilead Sciences, Inc. v. Merck & Co*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (unclean hands premised on business and litigation misconduct); *see also Abbvie Inc. v. Boehringer Ingelhelm Int'l GmbH*, No. 17-CV-01065-MS, 2018 WL 2604825, at *1 (D. Del. June 4, 2018) (unclean hands does not require a showing of fraud); *Personalized Media Commc'ns, LLC v. Apple, Inc*., No. 2:15-CV-01366-JRG, 2021 WL 357495, at *6 (E.D. Tex. Feb. 2, 2021), *adopted by*, 2021 WL 2697610 (E.D. Tex. Feb. 13, 2021) ("unclean hands does not require a showing of fraud.").

To establish a defense of inequitable conduct, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). "[T]he inequitable conduct doctrine evolved from . . . unclean hands cases, [and] it came to embrace a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the PTO and the courts but also the mere nondisclosure of information to the PTO." *Id.* at 1287.

Claims of unclean hands, absent allegations of fraud, are pled under the plausibility standard of Fed. R. Civ. P. 8. By contrast, claims of inequitable conduct must be plead under the heightened Fed. R. Civ. P. 9(b) standard, which requires that "the circumstances constituting fraud or mistake . . . be stated with particularity." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009); *see also Ferguson Beauregard,/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (stating that "inequitable conduct, while a broader concept than fraud, must be pled with particularity" under Federal Rule of Civil Procedure 9(b)).

Cartessa's unclean hands defense encompasses three component parts: Edge allegedly acted with unclean hands by (1) "trying to create a public appearance that additional art had been considered by the USPTO when in fact it had not, by repeatedly filing letters referencing other applications and other prosecutions, where the examiner does not in fact review the documents referred to by reference;" (2) creating "mass patent assertions, . . . large draft pleadings, and . . . short windows in which to conduct a reasoned analysis . . . to shift the cost of legal analysis to the Defendant over the perfunctory analysis performed by Plaintiff, and to overwhelm Cartessa and

obscure the weakness and falsity of the individual allegation;" and (3) asserting positions in prosecution and litigation that "are inconsistent with [the] meanings of terms as expressed within the patent specification, inconsistent with their plain and ordinary meaning, and inconsistent with the meaning as understood by an ordinarily skilled artisan."  DE 29 at 10, 13, 14 ("Second Amended Answer").

Plaintiff claims that given the Patent Office's role, Cartessa's defense is actually an "inequitable conduct" defense in disguise "that must comply with the Federal Circuit's heightened pleading standard."  DE 32-1 at 12.  The Federal Circuit has cautioned against "the potential for misuse" of the unclean hands doctrine, and the need to "ensure that [it] operates in harmony with, and does not override" inequitable conduct. [3]  *Id.* at 16 (quoting *Gilead*, 888 F.3d at 1240 at n.3). But in *Gilead* the Federal Circuit affirmed a district court's finding that business and litigation misconduct other than fraud could establish a defense of unclean hands.  *Id.*  Cartessa disavows any claim of inequitable conduct, and explicitly disclaims any notion that Edge committed fraud on the USPTO.  DE 32-2 at 12.  Instead, defendant characterizes its defense as encompassing a pattern of aggressive and deceptive acts.  *Id.* at 9.

On this motion, Edge has not established that the defense will fail, nor has it shown any material prejudice it will suffer as a result of its inclusion.  On balance, drawing all reasonable inferences in favor of the non-movant, the Court finds the defense is sufficiently pled at this juncture.

*Conclusion*

Based on the foregoing, the Court declines to construe the terms "abrade" and "sharp" and

---

[3] The cases relied upon by plaintiff, DE 32-4 at 12, are not factually analogous to the position asserted here.  Those cases all involved duplicative pleadings, which were struck in part on that ground.  *See Saye v. Old Hill Partners, Inc*., 478 F.Supp.2d 248, 278 (D. Conn. 2007); *Fonsell v. New York Dock Ry*., 198 F. Supp. 332, 337 (E.D.N.Y. 1961); *Haggerty v. Burkey Mills, Inc*., 211 F. Supp. 835, 837 (E.D.N.Y. 1962).  No such allegation is made here.

instead assigns them their plain and ordinary meanings and adopts the agreed upon construction of "sharp edge configured to abrade skin."  The Court further DENIES the motion to strike defendant's affirmative defense of unclean hands.

**SO ORDERED.**

Dated:  November 29, 2021
          Central Islip, New York

                                        /s/ Gary R. Brown
                                        _____
                                        GARY R. BROWN
                                        UNITED STATES DISTRICT JUDGE

# EXHIBIT J

Parker F series solenoid valve

Exhibit 7

Parker K series solenoid valve



Parker Z series
solenoid valve



Parker G series solenoid valve