# EXHIBIT M

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ———————————————— ) | |
| EDGE SYSTEMS LLC, ) | Civil Action No. 1:20-cv-6082 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT FOR** |
| ) | **PATENT INFRINGEMENT** |
| CARTESSA AESTHETICS, LLC, ) | |
| ) | |
| Defendant. ) | **DEMAND FOR JURY TRIAL** |
| ———————————————— ) | |

Plaintiff Edge Systems LLC ("Edge" or "Plaintiff") hereby complains of Defendant Cartessa Aesthetics, LLC ("Defendant" or "Cartessa") and alleges as follows:

## I.   THE PARTIES

1.      Edge is a California limited liability company having a principal place of business at 2277 Redondo Avenue, Signal Hill, California, 90755.

2.      Plaintiff is informed and believes, and thereon alleges, that Defendant Cartessa Aesthetics, LLC is a New York limited liability company having a principal place of business at 175 Broadhollow Road, Suite 185 Melville, NY 11747.

## II.   JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 100, *et seq*.

4.      This Court has original subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendant because Defendant has a continuous, systematic, and substantial presence within New York and this judicial district.  For example, Defendant has a principal place of business in this judicial district at 175 Broadhollow

Road, Melville, NY 11747. Plaintiff is informed and believes, and thereon alleges, that Defendant also sells and/or offers for sale infringing products in this judicial district and/or sells such products into the stream of commerce knowing they will be sold in New York and this judicial district.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because Defendant has a regular and established place of business in this judicial district and because Defendant has committed acts of infringement by selling and/or offering to sell infringing products in this judicial district. Venue is also proper because Defendant resides in this district.

### III. <u>GENERAL ALLEGATIONS</u>

**A.      <u>The Edge Patents and Technology</u>**

7.      Edge is a worldwide leader in the design, development, manufacture and sale of high-quality skin resurfacing and rejuvenation systems, including microdermabrasion and hydradermabrasion systems. These systems rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with a therapeutic solution, called a "serum," that moisturizes and protects the treated skin surface. Edge markets and sells these systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians and aestheticians at medical spas.

8.      Edge's flagship system is its revolutionary HydraFacial MD® system, which is the premier hydradermabrasion system sold in the United States. Edge's revolutionary HydraFacial MD® system is protected by numerous United States patents. In addition to the HydraFacial MD® system, Edge designs, develops, manufactures and sells other patented hydradermabrasion systems, including the HydraFacial® Tower™, the HydraFacial® Allegro™, the HydraFacial® Wave™, the HydraFacial® Elite™, HydraFacial® Nectre™ and the

HydraFacial® Core™ systems. These Edge hydradermabrasion systems are referred to herein collectively as "the HydraFacial® Systems."

9. On November 4, 2003, the USPTO duly and lawfully issued U.S. Patent No. 6,641,591 ("the '591 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '591 Patent is attached hereto as **Exhibit 1**.

10. On November 29, 2011, the USPTO duly and lawfully issued U.S. Patent No. 8,066,716 ("the '716 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '716 Patent is attached hereto as **Exhibit 2**.

11. On December 25, 2012, the USPTO duly and lawfully issued U.S. Patent No. 8,337,513 ("the '513 Patent"), titled "INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS." A true and correct copy of the '513 Patent is attached hereto as **Exhibit 3**.

12. On January 24, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,550,052 ("the '052 Patent"), titled "CONSOLE SYSTEM FOR THE TREATMENT OF SKIN." A true and correct copy of the '052 Patent is attached hereto as **Exhibit 4.**

13. On October 3, 2017, the USPTO duly and lawfully issued U.S. Patent No. 9,775,646 ("the '646 Patent"), titled "DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM." A true and correct copy of the '646 Patent is attached hereto as **Exhibit 5**.

14. Edge is the owner of all right, title, and interest in the '591 Patent, the '716 Patent, the '513 Patent, the '052 Patent and the '646 Patent (collectively, the "Asserted Patents").

15.     The '591 Patent, the '716 Patent, the '513 Patent and the '646 Patent (collectively "the Shadduck Patents") expired in August 2020.  Defendant introduced its infringing Skinwave system in 2019 and therefore infringed the Shadduck Patents while those patents were in effect.

**B.     Defendant's Infringing Skinwave System and Aqua Scaling Tips**

16.     Defendant is in the business of sourcing aesthetic medical devices manufactured by others, including hydradermabrasion devices that compete with Edge's HydraFacial® Systems.  Defendant markets and sells these medical devices throughout the United States to end users, such as dermatologists, plastic surgeons, cosmetic physicians and aestheticians at medical spas.

17.     One of the competing hydradermabrasion devices used, sold, offered for sale, and/or imported into the United States by Defendant is known as the Skinwave system. Defendant has offered the Skinwave system for sale on its website.  An example of one of Defendant's advertisements for the Skinwave system is attached hereto as **Exhibit 6**,

18.     Defendant promotes and offers to sell the Skinwave system on its website.  *See* https://www.cartessaaesthetics.com/skinwave (last visited December 11, 2020) (**Exhibit 6**). Defendant's website states that it "teamed up with Eunsung Global manufacturer to exclusively bring Skinwave to the US."  The Skinwave system sold by Defendant is manufactured by Eunsung Global ("Eunsung") and is structurally and functionally the same as a hydradermabrasion system sold by Eunsung under the name "Hydra Touch H2."  *See* http://esglobal.co.kr/en/products-intro/facial-care/hydra_touch_h2/ (last visited December 11, 2020) (**Exhibit 7**). Defendant's Skinwave system and the Hydra Touch H2 are collectively referred to as the "Skinwave System."

19.     The Skinwave System is a hydradermabrasion device for treating the skin surface of a patient.  The Skinwave System, shown in the image below, includes a handpiece that is configured to receive a replaceable tip at the end of the handpiece.  Defendants refer to this tip as the "Aqua Scaling Tip."



**Fig. 1**

20.     The Aqua Scaling Tip includes several openings.  Fluid may be delivered, and waste may be suctioned away, through these openings.



**Fig. 2:** Aqua Scaling Tip (small)

21.     The Aqua Scaling Tip is made of hard plastic and includes a working surface with a pattern of raised surfaces and ports.  The raised surfaces include edges that are sharp enough to abrade and exfoliate skin.  *See* **Exhibit 7** (the Skinwave System "exfoliat[es]").



**Fig. 3:** Aqua Scaling Tip (small) (black highlights added).

22.     The Skinwave System includes a manifold and a console that allows a user to control the selection of solutions, flow of solutions and vacuum suction.  *See* **Exhibit 7** ("4 different solution selection," "Solution emission in 3 different levels," and "Level adjustable Vacuum.").  The Skinwave System also includes a vacuum source that creates suction for drawing the patient's skin against the Aqua Scaling Tip.  Eunsung's website explains that, "by sucking waste materials, it is possible to remove wastes from the pores without scratching or scratching [sic] the skin."  *Id*.



**Fig. 4:** Skinwave System (Exhibit 7).

23.     The Skinwave System delivers fluid from treatment media containers to the skin.  Defendants sells skin treatment media including "solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2)."  **Exhibit 6**.

24.     Defendant's Aqua Scaling Tips can be attached and detached to the handpiece of the Skinwave System.  Exemplary Aqua Scaling Tips are shown below.




**Fig. 6:** Skinwave Handpiece (Ex. 6) (left);  **Fig. 5** (Aqua Scaling Tip) (Ex. 6) (right).

25.     Defendant either had actual knowledge of the Asserted Patents (or their respective applications) when it began offering for sale and selling the infringing Eunsung-manufactured products, or it acted with willful blindness to its infringement.  Defendant's supplier Eunsung had actual knowledge of Plaintiff's patent portfolio – and the '591, '513, and '716 patents specifically – at least as early as April 25, 2014 and February 1, 2017, when Edge sent a letter and emails to Eunsung concerning sales of Eunsung hydradermabrasion products in the United States.  **Exhibits 8** and **9**.  Plaintiff is informed and believes, and thereon alleges, that when Defendant "teamed up with [Eunsung] to exclusively bring Skinwave to the US," it conducted due diligence concerning Eunsung and any allegations of patent infringement made against its hydradermabrasion products.  In conducting such due diligence, Defendant would

have been made aware of Edge's allegations concerning the '591, '513, and '716 patents. The applicability of these patents to the Skinwave System is apparent from the face of the patents.

26.     In addition, Defendant was a competitor in the aesthetic skin resurfacing equipment industry when it launched its Skinwave System. Defendant therefore knew that Plaintiff was an industry leader.

27.     Further, Plaintiff and Defendant are members of some of the same trade organizations and attend some of the same trade shows. For example, Plaintiff and Defendant both had booths at "The Aesthetic Show" held in Las Vegas July 11-14, 2019. *See* **Exhibit 10** at 46, 60. The conference program included a summary which identified Plaintiff as having 68 issued or pending patents and provided a link to Plaintiff's website. *Id*. at 60. The conference map indicates that Plaintiff's and Defendant's trade show booths were located within 100 feet of each other. *Id*. at 38.

28.     Defendant was therefore familiar with Plaintiff and its aesthetic skin-resurfacing products when it launched its Skinwave System for aesthetic skin resurfacing.

29.     Given this familiarity, Defendant necessarily would have researched Plaintiff and its patent portfolio before introducing the infringing Skinwave System. As part of that research, Defendant would have visited Plaintiff's website, where at least the '591,'513, and '716 Patents were, and remain, prominently listed. *See* https://hydrafacialco.com/patents/ (last visited December 14, 2020) (**Exhibit 11**).

30.     At a minimum, Defendant had actual knowledge of the Asserted Patents no later than about September 16, 2020, when it received a letter from Plaintiff informing Defendant of the Asserted Patents and its infringement thereof.

31.     Defendant has infringed and infringes the '052 Patent, and it infringed each of the Shadduck Patents before the patents expired.

32.     Plaintiff has never authorized Defendant's offer for sale, importation or sale of the Skinwave System, associated serums or associated tips.

33.     Defendant's acts of infringement were willful, intentional, and deliberate. Defendant has infringed each of the Asserted Patents with reckless disregard for Plaintiff's patent rights.  Defendant knew, or should have known, that its actions constituted infringement of the Asserted Patents.

## IV.  COUNT I

## INFRINGEMENT OF THE '591 PATENT

34.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-33 above.

35.     Defendant knowingly and intentionally infringed the '591 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '591 Patent.

36.     For example, as set forth in the claim chart below, the Skinwave System infringed at least Claim 1 of the '591 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 1. A system for treating the skin surface of a patient, comprising: | The Skinwave System is a system for treating the skin surface of a patient. For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |
| (a) an instrument body with a distal working end that defines a skin interface portion for contacting the skin; | <br><br>**Fig. 6**<br><br>The Skinwave System has a handpiece that includes an instrument body and a distal working end with a tip (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See e.g.* https://www.facebook.com/cartessaaesthetics/videos/361807448055124/ https://www.facebook.com/cartessaaesthetics/videos/311527229734983/ and https://www.youtube.com/watch?v=nFwmtIaJ0U&feature=youtu.be (all last visited December 11, 2020) (collectively, "the Skinwave Videos"). |

| | |
|---|---|
| (b) a first aperture arrangement in said skin interface consisting of at least one port in communication with a treatment media source; | First Aperture Arrangement  Port<br><br>**Fig. 3**<br><br>The Skinwave System has a first aperture arrangement that delivers treatment media from a treatment media source to the skin through a port (i.e. the port is "in communication" with the treatment media source). *See* Figs. 1 & 3.<br><br>Treatment Media Sources<br><br>**Fig. 1** |

(c) a second aperture arrangement in said skin interface consisting of at least one port in communication with a vacuum source for removing treatment media and removed tissue from the skin interface; and



Second Aperture Arrangement

Exemplary Ports

**Fig. 3**

The Skinwave System has a second aperture arrangement with eight ports located near the periphery. These ports are connected to a vacuum source. *See* Figs. 1 & 3.

When activated, the vacuum source creates a vacuum that suctions used treatment media and abraded skin particles through the ports and deposits them in a debris receptacle located on the back of the device. *See* **Exhibit 6** & **Exhibit 7**. The vacuum source is located inside the device casing.



**Fig. 1**

| (d) wherein the skin interface comprises an abrading structure with substantially sharp edges for abrading tissue. | The tip is made of hard plastic and comprises a configuration with substantially sharp edges that abrade skin when the tip is translated across the skin. *See* Fig. 3.  **Fig. 3** |

37.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages.  Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

38.     Defendant's infringement was willful.  Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

39.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

## V.   COUNT II

### INFRINGEMENT OF THE '513 PATENT

40.      Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-39 above.

41.      Defendant knowingly and intentionally infringed the '513 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '513 Patent.

42.      For example, as set forth in the claim chart below, the Skinwave System infringed at least Claim 1 of the '513 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 1. A system for treating skin, comprising: | The Skinwave System is a system for treating the skin surface of a patient.  For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| a handheld device comprising a main body and a working end along a distal end of the main body; | The Skinwave System includes a handheld device having a distal working end with a tip (e.g., the Aqua Scaling Tip). *See* **Exhibit 6**. <br><br>  |
| --- | --- |
| an outer periphery extending along the distal end of the handheld device; | |

**Fig. 6**

**Fig. 3**

| | |
|---|---|
| at least one surface element extending distally from the working end of the handheld device, said at least one surface element being positioned within an interior area circumscribed by the outer periphery; | <br>**Fig. 3** |
| | As shown, surface elements extend distally from the working end, and are positioned within the outer periphery. *See* Fig. 3. |
| wherein the at least one surface element comprises at least one sharp edge configured to abrade skin when said handheld device is moved relative to a skin surface; and | The surface elements are made of hard plastic and comprise a configuration with sharp edges that abrade skin when the tip is translated across the skin surface. *See* Fig. 3. |
| at least one opening along the working end of the handheld device; | The Skinwave System has eight openings located near the periphery of the working end of the handheld device. *See* Fig. 3.<br><br><br>**Fig. 3** |

wherein the at least one opening is configured to be placed in fluid communication with a vacuum source via a passageway, said passageway being configured to convey debris away from the working end when said vacuum source is activated; and

The Skinwave System includes a vacuum source. *See* **Exhibit 6** and **Exhibit 7**. When activated, the vacuum source creates a vacuum that suctions used treatment media and removed skin particles through the openings and deposits them in a debris receptacle located on the back of the device. *Id.* When in use the vacuum will draw the skin against the outer periphery.



**Fig. 1**



**Fig. 4**

The vacuum source is located inside the device casing.

| wherein substantially an entire circumference of the outer periphery is configured to contact a skin surface during a treatment procedure. | As shown below, in **Fig. 7** (an imprint of the Aqua Scaling Tip (small) purchased from Cartessa) the entire outer periphery contacts the skin surface when used during a treatment procedure.  **Fig. 7** The entire circumference of the outer periphery contacts the skin during use. *See e.g.,* Fig. 7, the Skinwave Videos**.** |

43.    As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages. Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

44.    Defendant's infringement was willful. Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

45.    This is an exceptional case. Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

## VI.  COUNT III

## INFRINGEMENT OF THE '716 PATENT

46.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-45 above.

47.     Defendant knowingly and intentionally infringed the '716 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '716 Patent.

48.     For example, the Skinwave System infringed at least Claim 11 of the '716 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 11. A system for treating a skin surface of a patient, comprising: | The Skinwave System is a system for treating the skin surface of a patient.   For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| | |
|---|---|
| a handheld device comprising a main body and a working end attached to a distal end of the main body, said main body defining a longitudinal axis, said working end comprising an abrading structure, wherein said abrading structure comprises a plurality of abrading elements configured to abrade skin, wherein each abrading element comprises a sharp edge; and | The Skinwave System has a handheld device having a distal working end with a tip (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See* **Exhibit 6**.  **Fig. 6** The tip is made of hard plastic and comprises a configuration with a plurality of elements with sharp edges that abrade skin when the tip is translated across the skin surface (the abrading elements). *See* Fig. 3.  |

| at least one aperture along the working end, said at least one aperture being in fluid communication with a vacuum source adapted to apply suction to all of the at least one aperture in order to draw abraded skin away from the working end, | The Skinwave System has at least one aperture located along the working end. *See* Fig. 3. These apertures are connected to a vacuum source. *See* **Exhibit 6** and **Exhibit 7**. <br><br> Exemplary Apertures <br><br>  <br><br> **Fig. 3** <br><br> When activated, the vacuum source creates a vacuum that suctions used treatment media and abraded skin particles through the apertures and deposits them in a debris receptacle located on the back of the device. <br><br> Passageway <br><br>  <br><br> **Fig. 1** |



**Fig. 4**

The vacuum source is located inside the device casing.

| wherein the at least one aperture and the abrading elements are located completely within a raised outer periphery of the working end. | |

**Fig. 3**

As can be seen in the image, an outer periphery encircles the abrading elements and apertures. *See* Fig. 3.

49.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages.   Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

50.     Defendant's infringement was willful.  Pursuant to 35 U.S.C. § 284, Plaintiff is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

51.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

## VII.COUNT IV

## INFRINGEMENT OF THE '646 PATENT

52.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-51 above.

53.     Defendant infringed the '646 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System during the term of the '646 Patent.

54.     For example, as set forth in the claim chart below, the Skinwave System infringed at least Claim 1 of the '646 Patent during the term of the patent.

| Claim Language | Accused Product |
|---|---|
| 1.  A handheld device for treating a skin surface, comprising: | The Skinwave System is a system for treating the skin surface of a patient using a handheld device.  For example, Defendant's website describes the Skinwave System as: The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| a body comprising a housing; |  |
| | **Fig. 6** |
| a working end portion positioned along a first end of the body, the working end portion comprising a distal end configured to contact a skin surface, wherein the working end portion comprises a perimeter along the distal end configured to contact the skin surface, a skin interface positioned along the interior of the perimeter, wherein the skin interface is configured to contact the skin surface during use; |  |
| | **Fig. 6** |
| | The Skinwave System has a working end with a tip (e.g., the Aqua Scaling Tip) at the distal end. *See* **Exhibit 6**. The distal end of the working end (the tip) contacts the skin during use. *See e.g.,* **Exhibit 6**, the Skinwave Videos. |
| | As shown below, the tip has a perimeter encircling a skin interface. *See* Fig. 3. |



**Fig. 6**  |  **Fig. 3**

| | |
|---|---|
| a first aperture arrangement comprising at least one first port located along or near the working end portion, the at least one first port being in fluid communication with a vacuum source via at least one waste passageway extending through the housing; and | The Skinwave System has a first aperture arrangement with eight ports positioned near the perimeter along the working end portion.  *See* Fig. 3.  These ports are connected to a vacuum source.  *See* **Exhibit 6** & **Exhibit 7**. <br><br>  <br> **Fig. 3** <br><br> When activated, the vacuum suctions used treatment media and abraded skin particles through the first ports and deposits them in a debris receptacle located on the back of the device.  *See* **Exhibit 6** & **Exhibit 7**.  The vacuum source is located inside the device casing. |

-25-

Passageway



**Fig. 1**

Waste



**Fig. 4**

| | |
|---|---|
| a second aperture arrangement comprising at least one second port located along or near the working end portion, the at least one second port being in fluid communication with a hydration treatment media source; | The Skinwave System has a second aperture arrangement that delivers treatment media from a treatment media source to the skin through a port positioned in the center of the working end (i.e. the port is "in fluid communication" with the treatment media source). *See* Fig. 3, **Exhibit 6** & **Exhibit 7**. |



Second Port

**Fig. 3**

Treatment Media

**Fig. 4**

Passageway

Treatment Media Sources

**Fig. 1**

| | |
|---|---|
| wherein the vacuum source is configured to create a vacuum within the at least one waste passageway and the working end portion, and wherein the vacuum source is configured to simultaneously deliver a treatment media from the hydration treatment media source to the working end portion and remove spent treatment media away from the working end portion via the at least one waste passageway; | The vacuum source of the Skinwave System creates a vacuum within the waste passageway and the working end portion. This vacuum source delivers a treatment media from the hydration treatment media source (i.e., the solution bottle) to the working end portion. Simultaneously, the vacuum source also removes spent (i.e., used) treatment media away from the working end portion through the waste passageway. |
| wherein, when the vacuum source is activated and the working end portion of the device is positioned along a skin surface, hydration treatment media is delivered to the skin surface through the at least one passageway and the at least one second port due to the vacuum generated along the working end portion by the vacuum source, and spent treatment media is, at least partially, simultaneously aspirated away from the working end portion through the at least one first port by the same suction force generated by the vacuum source. | When the vacuum source is activated and the working end portion is positioned along a skin surface, treatment media is delivered to the skin surface through the second port due to the vacuum generated along the working end portion by the vacuum source. At the same time, spent (i.e., used) treatment media is aspirated away from the working end portion through the first ports by the same suction force generated by the vacuum source. |

55.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages.  Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

56.     This is an exceptional case.  Pursuant to 35 U.S.C. § 285, Plaintiff is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

## VIII.   COUNT V

## INFRINGEMENT OF THE '052 PATENT

57.     Plaintiff incorporates by reference and realleges each of the allegations set forth in Paragraphs 1-56 above.

58.     Defendant knowingly and intentionally infringes the '052 Patent through, for example, the use, sale, offer for sale, and/or importation into the United States of the Skinwave System.

59.     For example, as set forth in the claim chart below, the Skinwave System infringes at least Claim 1 of the '052 Patent.

| Claim Language | Accused Product |
|---|---|
| 1.   A   system   for performing   a   skin treatment procedure, the system comprising: | The Skinwave System is a system for treating the skin surface of a patient.  For example, Defendant's website describes the Skinwave System as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. |

| a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid; | <br>**Fig. 1**<br><br>The Skinwave System includes a manifold to which at least a first and second fluid container are attached, placing them in fluid communication therewith. *See* **Exhibit 6** & **Exhibit 7**. The Skinwave System has a console which controls the manifold, allowing users to select "Solution emission in 3 different levels," and control "4 different solution selection[s]." *See* **Exhibit 7**. |
|---|---|
| a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | The Skinwave System has a handpiece with a tip (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See e.g.,* **Exhibit 6**, the Skinwave Videos.<br><br><br>**Fig. 6** |

| a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; | <br>Supply Conduit<br>Distal End Coupled to Handpiece<br><br>**Fig. 1**<br><br>The Skinwave System has a supply conduit, coupled to the handpiece, which connects the handpiece to the manifold, placing the two in fluid communication. *See* **Exhibit 6** & **Exhibit 7**. |
|---|---|
| wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and | The Skinwave System has a manifold which is configured to control the flow of treatment material from the fluid containers through the supply conduit. *See* **Exhibit 6** & **Exhibit 7**.<br><br><br>Manifold<br><br>**Fig. 1** |
| a vacuum source; | The Skinwave System has a vacuum source. *See* **Exhibit 6** & **Exhibit 7**. The vacuum is located inside the device casing. |
| a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject | The Skinwave System has a waste conduit connected to the handpiece and a vacuum source. *See* **Exhibit 6** & **Exhibit 7**. When activated, the vaccum source suctions used treatment media and abraded skin particles (waste) through the waste conduit and deposits them in a waste receptacle located on the back of the device. *Id.* |

during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and



**Fig. 1**



**Fig. 4**

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and

The Skinwave System delivers treatment media from a fluid containers, through the supply conduit, to the skin. *See* **Exhibit 6** & **Exhibit 7**.



**Fig. 1**



Fluid Delivery

**Fig. 4**

The user can select fluids for delivery through the supply conduit. *Id*. For example Defendant's website explains:

> Three nutrient-rich solutions optimize skin revitalization. Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid to address top skincare needs: exfoliating, oil control and moisturization. Dial-up the volume of one of these solutions to offer a more customizable treatment.

| | |
|---|---|
| wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. | In use, the vacuum source of the Skinwave System creates a vacuum within the waste passageway and the tip. This vacuum source delivers a treatment media from the fluid containers to the tip. Simultaneously, the vacuum source also removes spent treatment media (i.e., waste) away from the working end portion through the waste passageway. |

60.     As a direct and proximate result of Defendant's acts of infringement, Defendant has derived and received gains, profits, and advantages. Plaintiff has been damaged by Defendant's activities, in an amount to be determined at trial, but in no event less than a reasonable royalty.

61.     Defendant's infringement is willful. Pursuant to 35 U.S.C. § 284, Edge is entitled to damages for Defendant's infringing acts and treble damages together with interests and costs as fixed by this Court.

62.     This is an exceptional case. Pursuant to 35 U.S.C. § 285, Edge is entitled to reasonable attorneys' fees for the necessity of bringing this claim.

63.     Due to the aforesaid infringing acts, Plaintiff has suffered irreparable injury, for which Plaintiff has no adequate remedy at law.

64.     Unless enjoined by this Court, Defendant will continue to infringe Plaintiff's patent rights and cause Plaintiff further irreparable injury.

## IX.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for the following relief:

A.     A judgment in favor of Plaintiff and against Defendant on all claims alleged herein;

B.     A judgment that Defendant has infringed the Shadduck Patents under 35 U.S.C. § 271 during the term of the Shadduck Patents;

C.     A judgment that Defendant has infringed the '052 Patent under 35 U.S.C. § 271;

D.     A preliminary and permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant, from (1) making, using, selling, offering to sell, and/or importing into the

United States the Skinwave System, and (2) infringing the '052 Patent in violation of 35 U.S.C. § 271;

  E. An accounting of all Defendant's gains, profits, and advantages derived from its infringement of the Asserted Patents in violation of 35 U.S.C. § 271, and an Order that Defendant pay to Plaintiff actual damages in the form of lost profits, or in the alternative, other damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant, in accordance with 35 U.S.C. § 284;

  F. An order trebling or otherwise increasing damages pursuant to 35 U.S.C. § 284 because of Defendant's willful infringement;

  G. An order finding this case exceptional under 35 U.S.C. § 285 and ordering Defendant to pay Plaintiff its reasonable attorney fees incurred in this action;

  H. Pre-judgment and post-judgement interest and costs as fixed by the Court; and

  I. Such other and further relief as this Court may deem just and proper.

## X.  DEMAND FOR JURY TRIAL

Plaintiff Edge Systems, LLC hereby demands a trial by jury of all issues so triable.

Dated:   December 14, 2020          By: _/s/ Karen M. Cassidy_

Craig S. Summers (*pro hac vice pending*)
Email: craig.summers@knobbe.com
Ali S. Razai (*pro hac vice pending*)
Email: ali.razai@knobbe.com
Sean M. Murray (*pro hac vice pending*)
Email: sean.murray@knobbe.com
Karen M. Cassidy (*pro hac vice pending*)
Email: karen.cassidy@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff*,
EDGE SYSTEMS LLC

# EXHIBIT O

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ──────────────────────────── ) | |
| EDGE SYSTEMS LLC, ) | Civil Action No. 1:20-cv-06082 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CARTESSA AESTHETICS, LLC, ) | |
| ) | |
| Defendant. ) | |
| ──────────────────────────── ) | |

## <u>JOINT CLAIM CONSTRUCTION CHART</u>

Pursuant to Local Patent Rule 11 of the Local Patent Rules for the United States District Court for the Eastern District of New York and the Scheduling Order in this case (Dkt. 21), Plaintiff Edge Systems LLC ("Edge") and Defendant Cartessa Aesthetics, LLC ("Cartessa"), by and through their respective counsel, hereby submit their Joint Disputed Claim Terms Chart (attached as Exhibit A) with respect to the construction of claim terms recited in the asserted claims of U.S. Patent Nos. 6,641,591 ("the '591 Patent"), 8,066,716 ("the '716 Patent"), 8,337,513 ("the '513 Patent"), 9,550,052 ("the '052 Patent"), and 9,775,646 ("the '646 Patent") (collectively, the "Asserted Patents")

For those claims having terms currently disputed by the parties, the charts set forth in Exhibit A provides the claim language of the disputed claim term or phrase, the claim(s) in which they appear, and each side's proposed construction. As required by Local Patent Rule 11, the charts also include cross-references to the parties' infringement and invalidity contention disclosures under Local Patent Rules 6 and 7, respectively.

1

Exhibit A also sets forth a separate chart listing the claim terms for which the parties have agreed upon a construction, including, for each such claim term, the claim language, the claim(s) in which it appears, and the parties' joint proposed construction.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  July 2, 2021          By: /s/ Karen M. Cassidy
                              Craig S. Summers (*Admitted pro hac vice*)
                              Email: craig.summers@knobbe.com
                              Ali S. Razai (*Admitted pro hac vice*)
                              Email:  ali.razai@knobbe.com
                              Karen M. Cassidy (*Admitted pro hac vice*)
                              Email: karen.cassidy@knobbe.com
                              Sean M. Murray (*Admitted pro hac vice*)
                              Email: sean.murray@knobbe.com
                              Ashley C. Morales (*Admitted pro hac vice*)
                              Email: ashley.morales@knobbe.com
                              **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                              2040 Main Street, Fourteenth Floor
                              Irvine, CA  92614
                              Telephone: (949) 760-0404
                              Facsimile: (949) 760-9502

                              *Attorneys for Plaintiff*
                              EDGE SYSTEMS LLC


                              PILLSBURY WINTHROP SHAW PITTMAN LLP


Dated:  July 2, 2021          By: /s/ Steven P. Tepera (with permission)
                              David G. Keyko
                              david.keyko@pillsburylaw.com
                              **PILLSBURY WINTHROP SHAW PITTMAN LLP**
                              31 West 52nd Street
                              New York, NY 10019-6131
                              Tel.: 212-858-1604
                              Fax: 212-858-1500

                              Steven P. Tepera (*Admitted Pro hac Vice*)
                              steven.tepera@pillsburylaw.com
                              401 Congress Avenue, Suite 1700

Austin, TX 78701
Tel.: 512-580-9651
Facsimile: 512-580-9601

*Attorneys for Defendant*
CARTESSA AESTHETICS, LLC

# EXHIBIT A

**EXHIBIT A**
**JOINT DISPUTED CLAIM TERMS CHART PURSUANT TO LOCAL PATENT RULE 11**


**TERMS PROPOSED FOR CONSTRUCTION BY EDGE**


| Claim Term or Phrase | Patent | Edge's Proposed Construction | Cartessa's Proposed Construction |
|---|---|---|---|
| "abrade" / "abrading" / "abraded"[1] | '716 Patent claims 1, 4, 10, 11, 15<br><br>'513 Patent: 1, 10<br><br>'591 Patent claim 1 | "remove a portion of the skin surface by friction" Note that 'a portion' means more than a de minimis amount of skin.<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at pp. 3, 5 Exhibit A to Appendix A at pp. 9-11, 14, 16-19, 21-23, 26, 31 | These terms are indefinite. In the alternative, they should construed to mean:<br><br>scrape / scraping / scraped<br><br>**Cross Reference(s):**<br>Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claims 1, 4, 11, 15; '513 Patent Invalidity Chart claims 1, 10; '591 Patent Invalidity Chart claim 1. |
| "sharp edge[s]" | '591 Patent claim 1<br><br>'513 Patent claim 1 | "edge[s] sufficiently sharp to abrade skin, but not necessarily sharp enough to cut the skin"<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Exhibit A to Appendix A at pp. 10-11, 18, 21, 26. | edge[s] shaped for cutting<br><br>**Cross Reference(s):**<br>'591 Patent Invalidity Chart Claim 1; '513 Patent Invalidity Chart claim 1 |

---

[1] To the extent the Court provides constructions and considers for indefiniteness these terms, Defendant agrees that the first five terms of the following chart (the shorting "abrading" terms) need not be separately construed.

**EXHIBIT A**
**JOINT DISPUTED CLAIM TERMS CHART PURSUANT TO LOCAL PATENT RULE 11**

**TERMS PROPOSED FOR CONSTRUCTION BY CARTESSA**

| Claim Term or Phrase | Patent | Cartessa's Proposed Construction | Edge's Proposed Construction |
|---|---|---|---|
| abrading structure[2] | '591 Patent claim 1<br><br>'716 Patent claims 1, 4, 10, 11, 15 | This term is indefinite. In the alternative, it should construed to mean:<br><br>"a structure with the primary purpose of scraping"<br><br>**Cross Reference(s):**<br>Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claims 1, 4, 10, 11, 15; '591 Patent Invalidity Chart claim 1. | "structure that removes a portion of the skin surface by friction" Note that 'a portion' means more than a de minimis amount of skin.<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at pp. 3, 5 Exhibit A to Appendix A at pp. 9-11, 14, 16-19, 21-23, 26, 31 |
| abrading tissue[3] | '519 Patent claim 1<br><br>'716 Patent claims 1, 4, 10, 11, 15, | This term is indefinite. In the alternative, it should construed to mean:<br><br>"scraping tissue"<br><br>**Cross Reference(s):**<br>Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claims 1, 4, 10, 11, 15;'591 Patent Invalidity Chart claim 1. | "removing a portion of the skin surface by friction" Note that 'a portion' means more than a de minimis amount of skin.<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at pp. 3, 5 Exhibit A to Appendix A at pp. 9-11, 14, 16-19, 21-23, 26, 31. |

---

[2] See footnote 1.

[3] See footnote 1.

**JOINT DISPUTED CLAIM TERMS CHART PURSUANT TO LOCAL PATENT RULE 11**

| abrading element[s][4] | '716 Patent claim 11 | This term is indefinite. In the alternative, it should construed to mean: "element(s) with a primary purpose of scraping"  **Cross Reference(s):** Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claim 11. | "element(s) that remove a portion of the skin surface by friction" Note that 'a portion' means more than a de minimis amount of skin.  **Cross Reference(s):** 4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at pp. 3, 5 Exhibit A to Appendix A at pp. 9-11, 14, 16-19, 21-23, 26, 31. |
|---|---|---|---|
| abrade[5] | '716 Patent claims 1, 11, 15  '513 Patent claims 1, 10 | This term is indefinite. In the alternative, it should construed to mean: scrape  **Cross Reference(s):** Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claims 1, 11, 15; '513 Patent Invalidity Chart claims 1, 10. | "remove a portion of the skin surface by friction" Note that 'a portion' means more than a de minimis amount of skin.  **Cross Reference(s):** 4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at pp. 3, 5 Exhibit A to Appendix A at pp. 9-11, 14, 16-19, 21-23, 26, 31. |
| abrade[d] skin[6] | '716 Patent claims 1, 11, 15  '513 Patent claims 1, 10, | This term is indefinite. In the alternative, it should construed to mean:  "scrape off skin" / "skin that has been scraped off" | "remove(d) a portion of the skin surface by friction" Note that 'a portion' means more than a de minimis amount of skin.  **Cross Reference(s):** 4/19/2021 Edge's Preliminary Disclosure of |

---

[4] See footnote 1.

[5] See footnote 1.

[6] See footnote 1.

<u>**EXHIBIT A**</u>
<u>**JOINT DISPUTED CLAIM TERMS CHART PURSUANT TO LOCAL PATENT RULE 11**</u>

| | | <u>**Cross Reference(s):**</u> Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claims 1, 11, 15; '513 Patent Invalidity Chart claims 1, 10. | Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at pp. 3, 5 Exhibit A to Appendix A at pp. 9-11, 14, 16-19, 21-23, 26, 31. |
|---|---|---|---|
| skin interface | '591 Patent claims 1, 4<br><br>'716 Patent claims 1, 3, 6,<br><br>'646 Patent claims 1, 12, 21, 22, 25, 26 | This term is indefinite. In the alternative, it should construed to mean:<br><br>That portion of the handset that contacts the skin during use.<br><br><u>**Cross Reference(s):**</u> Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claims 1, 3, 6; '646 Patent Invalidity Chart claims 1, 12, 21, 22, 25, 26; '591 Patent Invalidity Chart claims 1, 4. | "the portion of the working end that interacts with the skin during treatment"<br><br><u>**Cross Reference(s):**</u> 4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at p. 3, Exhibit A to Appendix A at pp. 9, 10-11, 14-16, 50-51, 57-58, 61-62, 63. |
| irregularities | '591 Patent claim 4 | This term is indefinite. In the alternative, it should construed to mean:<br><br>corrugated or ridged portions<br><br><u>**Cross Reference(s):**</u> Cartessa's Preliminary Invalidity Contentions at 17; '591 Patent Invalidity Chart claim 4. | No construction required.<br><br><u>**Cross Reference(s):**</u> 4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Exhibit A to Appendix A at p. 11. |
| flowable media | '513 Patent claims 1, 11,<br><br>'716 Patent claims 3, 15, 16 | This term is indefinite. In the alternative, it should construed to mean:<br><br>A substance capable of flowing movement. | "a substance capable of flowing"<br><br><u>**Cross Reference(s):**</u> 4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at p. 5, Exhibit A to |

**EXHIBIT A**
**JOINT DISPUTED CLAIM TERMS CHART PURSUANT TO LOCAL PATENT RULE 11**

| | | | |
|---|---|---|---|
| | | **Cross Reference(s):**<br>Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claims 3, 15, 16; '513 Patent Invalidity Chart claims 1, 11. | Appendix A at pp. 15, 19-20, 22, 23, 28, 33-34. |
| around | '716 Patent claim 10 | This term is indefinite. In the alternative, it should construed to mean:<br><br>Encircling<br><br>**Cross Reference(s):**<br>Cartessa's Preliminary Invalidity Contentions at 17; '716 Patent Invalidity Chart claim 10. | "on all or various sides"<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Exhibit A to Appendix A at p. 10. |
| abrading structure with substantially sharp edges for abrading tissue | '591 Patent claim 1 | [abrading structure] with substantially [sharp] edges oriented such that the [sharp] edges scrape tissue<br><br>**Cross Reference(s):**<br>'591 Patent Invalidity Chart claim 1. | No separate constructions are required.<br><br>Alternatively: "[abrading structure] with substantially [sharp edges] for [abrading skin]" [7]<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Exhibit A to Appendix A at pp. 10-11. |
| abrading element comprises a sharp edge | '716 Patent claim 11 | [abrading element] with a [sharp] edges oriented such that the [sharp] edge scrapes tissue | "[abrading element] has a [sharp edge]"<br><br>**Cross Reference(s):** |

---

[7] Bracketed terms are construed elsewhere in this document by the same party, and should be understood to have the meaning previously proposed by that party.

| | | | 4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Exhibit A to Appendix A at p. 18. |
|---|---|---|---|
| sharp edge configured to abrade skin | '513 Patent claim 1 | [sharp] edges oriented such that the [sharp] edge scrapes tissue<br><br>**Cross Reference(s):**<br>'513 Patent Invalidity Chart claim 1. | No separate constructions are required.<br><br>Alternatively: "[sharp edge] configured to [abrade skin]"<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Exhibit A to Appendix A at p. 26. |
| sharp | '591 Patent claim 1<br><br>'716 Patent claim 11<br><br>'513 Patent claim 1 | shaped for cutting<br><br>**Cross Reference(s):**<br>'591 Patent Invalidity Chart claim 1; '716 Patent Invalidity Chart claim 11; '513 Patent Invalidity Chart claim 1. | "sufficiently sharp to abrade skin, but not necessarily sharp enough to cut the skin"<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at p. 5, Exhibit A to Appendix A at pp. 10-11. 18. 26. |
| ridge, ridge[d] | '716 Patent claim 1<br><br>'646 Patent claims 21, 22, 25, 26 | line or edge formed by the intersection of two sloping faces<br><br>**Cross Reference(s):**<br>'716 Patent Invalidity Chart claim 1; '646 Patent Invalidity Chart claims 21, 22, 25, 26. | No construction necessary.<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at p. 3, Exhibit A to Appendix A at pp. 14, 15, 61-63. |
| fluid container[s] | '052 Patent claims 1, 2, 4, 5, 6, 11, 13, 15 | [A] container[s] capable of holding a fluid<br><br>**Cross Reference(s):**<br>'052 Patent Invalidity Chart claims 1, 2, | No construction necessary.<br><br>Alternatively: "container[s] for holding fluid" |

**EXHIBIT A**
**JOINT DISPUTED CLAIM TERMS CHART PURSUANT TO LOCAL PATENT RULE 11**

|  |  | 4, 5, 6, 11, 13, 15. | **Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at p. 5, Exhibit A to Appendix A at pp. 36-42, 44, 46-48. |
|---|---|---|---|
| fluid communication | '716 Patent claims 11, 15<br><br>'513 Patent claims 1, 4, 10, 11, 12<br><br>'052 Patent claims 1, 5, 10, 11, 17<br><br>'646 Patent claims 1, 13, 17 | positioned to allow flow between structures<br><br>**Cross Reference(s):**<br>'716 Patent Invalidity Chart claims 11, 15; '513 Patent Invalidity Chart claims 1, 4, 10, 11, 12; '052 Patent Invalidity Chart claims 1, 5, 10, 11, 17; '646 patent Invalidity Chart claims 1, 13, 17. | No construction necessary.<br><br>**Cross Reference(s):**<br>4/19/2021 Edge's Preliminary Disclosure of Asserted Claims and Infringement Contentions at pp. 10-11, Appendix A at pp. 2, 4, 5, Exhibit A to Appendix A at pp. 18-19, 21-22, 27-28, 29, 32, 33, 34, 36, 37, 38, 41, 43, 44-46, 49, 51-52, 58-61. |

7

## CERTIFICATE OF SERVICE

The undersigned herby certifies that on July 2, 2021, the attached document was filed electronically through CM/ECF system, which will send notice to the registered participants identified on the Notice of Electronic Filing.


Dated: July 2, 2021       By: */s/ Karen M. Cassidy* _____

         Craig S. Summers (*Admitted pro hac vice*)
         Email: craig.summers@knobbe.com
         Ali S. Razai (*Admitted pro hac vice*)
         Email: ali.razai@knobbe.com
         Karen M. Cassidy (*Admitted pro hac vice*)
         Email: karen.cassidy@knobbe.com
         Sean M. Murray (*Admitted pro hac vice*)
         Email: sean.murray@knobbe.com
         Ashley C. Morales (*Admitted pro hac vice*)
         Email: ashley.morales@knobbe.com
         **KNOBBE, MARTENS, OLSON & BEAR, LLP**
         2040 Main Street, Fourteenth Floor
         Irvine, CA 92614
         Telephone: (949) 760-0404
         Facsimile: (949) 760-9502

         *Attorneys for Plaintiff*
         EDGE SYSTEMS LLC

# EXHIBIT Q

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDGE SYSTEMS LLC, | ) Civil Action No. 2:20-cv-06082-GRB-ST |
| Plaintiff, | ) |
| v. | ) |
| CARTESSA AESTHETICS, LLC, | ) |
| Defendant. | ) |

**EDGE SYSTEMS LLC'S OBJECTIONS TO CARTESSA'S AMENDED NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)**

Pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure, Plaintiff Edge Systems LLC ("Edge"), through its undersigned counsel, objects to Defendant's Amended Notice of Deposition of Edge Systems LLC Pursuant to Fed. R. Civ. P. 30(b)(6), dated December 17, 2021, on the following grounds:

**GENERAL RESPONSE AND OBJECTIONS**

Edge asserts each of the following general objections to Defendants' Notice of Deposition and the topics listed therein (the "topics"). In addition to these general objections, Edge also has objections to specific topics, including objections that are not generally applicable to all topics. By setting forth such specific objections, Edge does not intend to limit or restrict its general objections.

1.      Edge objects to the Notice of Deposition and each and every topic to the extent they seek to impose any obligations beyond those set forth in the Federal Rules of Civil Procedure (the "Federal Rules") or in the Local Rules of the United States District Court for the Eastern District of New York (the "Local Rules").

1

2.      Edge objects to the topics to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, common interest privilege or any other applicable privilege or immunity.

3.      Edge objects to the topics to the extent that they call for legal conclusions, legal contentions, or expert testimony.

4.      Edge objects to each topic to the extent it is construed broadly enough to encompass information that is not relevant to the subject matter of this litigation, not proportional to the needs of the case, or beyond the ability of a corporate designee to become familiar with through reasonable efforts in the time allowed by the notice.

5.      Edge further objects to each topic to the extent that the information sought must be retrieved from documents available to Defendant, where the burden of deriving or ascertaining the responsive information from those documents is substantially the same for Cartessa as it is for Edge.

6.      Edge objects to each topic to the extent that it seeks information not known to Edge or within Edge's possession, custody, or control.

7.      Edge objects to Defendant's definition of "Edge," "You," or "Your" as overly broad and unduly burdensome to the extent it encompasses parties over whom Edge has no control. For example, the definition attempts to include former employees and consultants.  For purposes of these responses, Edge shall interpret these terms to mean Edge Systems LLC, as well as its directors, officers, employees, agents, and representatives.

## TOPICS

**TOPIC 1:**

The alleged invention claimed in each of the patents-in-suit, including without limitation (i) the conception and reduction to practice of the alleged invention, (ii) the purported benefits of the alleged invention over the prior art, and (iii) all communications relating to the alleged invention.

**RESPONSE TO TOPIC NO. 1:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.  Edge also objects that the topic is overbroad, vague and ambiguous regarding the phrase "all communications relating to the alleged invention," and is therefore unduly burdensome and disproportionate to the needs of the case.  Edge further objects to this topic to the extent it seeks a witness to provide legal conclusions.

Subject to and without waiver of its General and Specific Objections, Edge will designate and make available one or more witnesses to testify on its behalf regarding the conception and reduction to practice of the invention(s) described the patents-in-suit and the benefits of the invention(s) described in the patents-in-suit over the prior art.

**TOPIC 2:**

Prior art to the patents-in-suit and any communications related thereto.

**RESPONSE TO TOPIC NO. 2:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge further objects to this topic to the extent it seeks information protected by the attorney-client

privilege and/or work product doctrine. Edge further objects to this topic to the extent it calls for a legal conclusion regarding, for example, whether a reference is material or constitutes prior art.

Subject to and without waiver of its General and Specific Objections, Edge will designate and make available one or more witnesses to testify on its behalf regarding this topic.

**TOPIC 3:**

Your understanding prior to the lawsuit of the function of the Accused Devices, including any testing, data, marketing materials, documents, or other information that that was the basis of such understanding, including function that is asserted to meet limitations in asserted claims of the patents-in-suit.

**RESPONSE TO TOPIC NO. 3:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this topic to the extent it calls for a legal conclusion or Edge's contentions regarding specific claim limitations.

Subject to and without waiver of its General and Specific Objections, and to the extent any non-privileged information exists, Edge will designate and make available one or more witnesses to testify on its behalf regarding this topic.

**TOPIC 4:**

Any products alleged to practice the patents-in-suit and/or any attempts by you or your predecessors in interest to develop products alleged to practice the patent-in-suit, including without limitation all communications relating to the foregoing.

**RESPONSE TO TOPIC NO. 4:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Edge also objects that the topic because is overbroad, vague and ambiguous, and is therefore unduly burdensome and disproportionate to the needs of the case.

Subject to and without waiver of its General and Specific Objections, Edge will designate and make available one or more witnesses to testify on its behalf regarding Edge's products that practice the asserted claims of the patents-in-suit.

**TOPIC 5:**

Any commercial embodiment or attempt to develop a commercial embodiment of the subject matter claimed in the patents-in-suit, including

    a.    function and testing of the commercial embodiment;

    b.    marketing and attempted commercial exploitation, sales history, revenue history, profitability of the same;

    c.    identity of customers and potential customers, geographic location of customers and potential customers; and

    d.    advantages and market need of any commercial embodiment, including the advantages and market need you claim is captured in a limitation of the patents-in-suit.

**RESPONSE TO TOPIC NO. 5:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge further objects to this topic to the extent it seeks information protected by the attorney-client

privilege and/or work product doctrine. Edge also objects to the topic as vague and ambiguous, particularly in its use of the phrase "commercial exploitation." Edge further objects to the topic of the "identity of customers and potential customers, geographic location of customers and potential customers" as overly broad, unduly burdensome, and not relevant to any party's claim or defense, nor proportional to the needs of the case. Edge further objects to the topic to the extent that it seeks a legal conclusion or Edge's contentions regarding specific claim limitations.

To the extent Edge understands this topic, and subject to and without waiver of its General and Specific Objections, Edge will designate and make available one or more witnesses to testify on its behalf regarding (a) the function and testing of the commercial embodiment, (b) marketing, sales, revenue, and profitability of the commercial embodiment, and (d) the advantages and market need of commercial embodiments of the patents-in-suits.

**TOPIC 6:**

All licensing activity related to the patents-in-suit and any patents or applications related to the patents-in-suit, including without limitation (i) existing licenses, (ii) any and all attempts to license, (iii) all communications relating thereto; (iv) your knowledge of licensing activities of prior owner(s) of the patents-in-suit; and (v) licensing activities while Edge was a licensee of the patents-in-suit.

**RESPONSE TO TOPIC NO. 6:**

Edge incorporates by reference its General Objections as if fully set forth herein. Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiver of its General and Specific Objections, Edge will designate and make available one or more witnesses to testify on its behalf regarding this topic.

6

**TOPIC 7:**

Assignments of any rights in any of the patents-in-suit, including without limitation all communications relating thereto.

**RESPONSE TO TOPIC NO. 7:**

Edge incorporates by reference its General Objections as if fully set forth herein. Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiver of its General and Specific Objections, Edge will designate and make available one or more witnesses to testify on its behalf regarding this topic.

**TOPIC 8:**

All analyses or assessments by any person of the value of the patents-in-suit and/or the invention claimed therein, including without limitation all communications relating thereto.

**RESPONSE TO TOPIC NO. 8:**

Edge incorporates by reference its General Objections as if fully set forth herein. Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

Subject to and without waiver of its General and Specific Objections, and to the extent any information exists regarding this topic, Edge will designate and make available one or more witnesses to testify on its behalf regarding this topic.

**TOPIC 9:**

The prosecution of the application that issued as the patent-in-suit, including without limitation (i) the drafting of the application, (ii) the methods for disclosing any prior art, (iii) all

communications with the U.S. Patent & Trademark Office relating to the application, and (iv) all communications relating to the foregoing.

**RESPONSE TO TOPIC NO. 9:**

Edge incorporates by reference its General Objections as if fully set forth herein. Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this topic to the extent it calls for testimony regarding "the application that issued as the patent-in-suit," as there are multiple patents-in-suit.

Subject to and without waiver of its General and Specific Objections, and to the extent that any non-privileged information exists, Edge will designate and make available one or more witnesses to testify on its behalf regarding communications with the U.S. Patent & Trademark Office relating to the applications which issued as the patents-in-suit.

**TOPIC 10:**

Facts related to secondary indicia of nonobviousness, including

a.      The invention's commercial success;

b.      Long felt but unresolved needs;

c.      Failure of others;

d.      Skepticism by experts;

e.      Praise by others;

f.      Teaching away by others;

g.      Recognition of a problem;

h.      Copying of the invention by competitors.

**RESPONSE TO TOPIC NO. 10:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.  Edge further objects to this topic to the extent it seeks a witness to provide legal conclusions or testify as to Edge's contentions.  Edge also objects to this topic to the extent that it seeks expert testimony that will be timely disclosed pursuant to the Court's scheduling order.

Subject to and without waiver of its General and Specific Objections, Edge will designate and make available one or more witnesses to testify on facts relating to secondary indicia in the possession of the company.

**TOPIC 11:**

Facts you contend are relevant to the affirmative defenses asserted by Cartessa, including facts you contend rebut or justify any accused behavior in the affirmative defenses.

**RESPONSE TO TOPIC NO. 11:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge further objects to this topic to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine. Edge also objects to this topic as vague and ambiguous and not properly tailored as a Rule 30(b)(6) topic because it fails to state with particularity the matter on which examination is requested.

Subject to and without waiver of its General and Specific Objections, Edge is willing to meet and confer regarding the scope of this topic.

**TOPIC 12:**

The level of skill of an ordinarily skilled artisan for the patents-in-suit.

**RESPONSE TO TOPIC NO. 12:**

Edge incorporates by reference its General Objections as if fully set forth herein.  Edge

further objects to this topic to the extent it seeks information protected by the attorney-client

privilege and/or work product doctrine.

Subject to and without waiver of its General and Specific Objections, Edge will designate

and make available one or more witnesses to testify on its behalf regarding this topic.


Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  December 29, 2021          By: */s/ Ashley C. Morales*
                                   Craig S. Summers (*Admitted pro hac vice*)
                                   Email: craig.summers@knobbe.com
                                   Ali S. Razai (*Admitted pro hac vice*)
                                   Email:  ali.razai@knobbe.com
                                   Karen M. Cassidy Selvaggio (*Admitted pro hac vice*)
                                   Email: karen.cassidy@knobbe.com
                                   Sean M. Murray (*Admitted pro hac vice*)
                                   Email: sean.murray@knobbe.com
                                   Ashley C. Morales (*Admitted pro hac vice*)
                                   Email: ashley.morales@knobbe.com
                                   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                                   2040 Main Street, Fourteenth Floor
                                   Irvine, CA  92614
                                   Telephone: (949) 760-0404
                                   Facsimile: (949) 760-9502

                                   *Attorneys for Plaintiff*
                                   Edge SYSTEMS LLC

## CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.  My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On December 29, 2021, I served the foregoing **EDGE SYSTEMS LLC'S OBJECTIONS TO CARTESSA'S AMENDED NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)** on counsel shown below via **EMAIL**:

David G. Keyko
david.keyko@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212-858-1604
Fax: 212-858-1500

Steven P. Tepera
steven.tepera@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
401 Congress Avenue, Suite 1700
Austin, TX 78701
Tel.: 512-580-9651
Fax: 512-580-9601

**pillsbury-cartessa@pillsburylaw.com**

*Attorneys for Defendant*
CARTESSA AESTHETICS, LLC

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 29, 2021, at Irvine, California.

Allison Rolenaitis

54827230

# EXHIBIT T

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDGE SYSTEMS LLC,    ) | Civil Action No. 1:20-cv-06082 |
| Plaintiff,    ) | |
| v.    ) | **[CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER]** |
| CARTESSA AESTHETICS, LLC,    ) | **[PAGES 23-24 INCLUDES REFERENCE TO MATERIAL DESIGNATED BY CARTESSA AESTHETICS AS HIGHLY CONFIDENTIAL]** |
| Defendant.    ) | |

## PLAINTIFF EDGE SYSTEMS LLC's SUPPLEMENTAL RESPONSES TO DEFENDANT CARTESSA AESTHETICS, LLC'S FIRST SET OF INTERROGATORIES (NOS. 1-14, FORMERLY NOS. 1-5)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Edge Systems LLC ("Edge") responds to Defendant Cartessa Aesthetics, LLC's ("Cartessa" or "Defendant") First Set of Interrogatories (Nos. 1-14, formerly Nos. 1-5) as follows:

### PRELIMINARY STATEMENT

1.     By responding to an Interrogatory, Edge does not waive any of its objections, and in particular, Edge does not concede that Defendant is entitled to further discovery on the matters to which the Interrogatory pertains.  Likewise, by responding to an Interrogatory, Edge does not concede any factual or legal assertions set forth or assumed in the request. Moreover, Edge does not waive any evidentiary objections at trial.

2.     The following responses are based upon information presently available to and located by Edge and its counsel and reflect the current state of Plaintiff's knowledge, understanding, and belief respecting the matters about which the Interrogatory was made. Edge

1

has not completed its investigation of the facts relating to this litigation or preparation for trial and anticipate that as this litigation proceeds, further facts may be discovered.

3.      Edge's responses are made without in any way waiving or intending to waive, but on the contrary, intending to preserve and preserving:

a.  The right to raise all questions of competence, authenticity, relevancy, materiality, privilege, and admissibility with regard to the information and documents and things identified and/or produced in response to these Interrogatories, which may arise in any subsequent proceeding in this or any other action;

b.  The right to object to the use of the information and/or documents and things for any purpose, including without limitation their use in any subsequent proceeding in this or any other action;

c.  The right to object on any ground at any time to other Requests or discovery relating to information and/or documents produced or the subject matter thereof; and

d.  The right to make subsequent responses if Plaintiff uncovers additional information called for by these requests, as Plaintiff's investigation of the facts and the evidence pertinent to this action has not been completed.

4.      Words and terms used in the following responses shall be construed in accordance with their normal meanings and connotations, and shall in no way be interpreted as terms of art or statutorily defined terms used in the patent laws unless otherwise indicated. Plaintiff specifically disavows any such meaning or connotation that might accorded to such terms.

5.      As used herein, the term "privileged" shall refer to documents and communications that are protected by the attorney-client privilege, the work product doctrine, the protection of trial preparation materials pursuant to Fed. R. Civ. P Rule 26(b)(3), the protection

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

of consulting expert materials pursuant to Fed. R. Civ. P Rule 26(b)(4), or any other applicable privilege or protective doctrine.  Any production of privileged documents or information by Edge is purely inadvertent and shall not constitute a waiver of privilege.

6.     Without waiving the objections set forth below, and subject to the limitations stated above, Edge is providing the information it believes is responsive that was uncovered by means of a reasonable investigation and that is the subject of legitimate discovery.

## **GENERAL OBJECTIONS**

The following General Objections are incorporated by reference in response to each of Defendant's Interrogatories and are not waived with respect to any response.

1.     Edge objects to Defendant's Interrogatories to the extent that they seek information protected by the attorney–client privilege, information protected as work product or trial-preparation material, or information protected by any other applicable privilege or immunity. The specific objections stated below invoking the attorney-client privilege, work-product or trial preparation protection, or any other applicable privilege or immunity do not limit the generality of this objection in any way.  Nothing contained in these responses waives any attorney-client privilege, work-product protection or any other applicable privilege, immunity, or doctrine. Edge has stated its privilege objections expressly to each interrogatory which would, in its view, reasonably be interpreted to encompass privileged documents or information.  To the extent that any other interrogatories encompass privileged documents or information, however, Edge hereby incorporates its general objection.

2.     Edge objects to Defendant's interrogatories to the extent that they incorporate Defendant's instructions concerning identification of privileged and otherwise-protected materials.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

3.      Edge objects to Defendant's interrogatories to the extent that they rely on Defendant's definitions and instructions in a manner that causes Defendant's requests to fail to comply with, or impose obligations in excess of, the Federal Rules of Civil Procedure, the local rules, any court order, or any agreement between the parties.

4.      Edge further objects to the interrogatories to the extent that they seek discovery of matters that are not relevant to any claim or defense in the present action and are not proportional to the needs of the case, particularly as set forth in Edge's Specific Objections.

5.      Edge objects to the interrogatories to the extent that they seek materials not in the possession, custody, or control of Edge.

6.      Edge further objects to the interrogatories to the extent that they call for information that is protected from disclosure by any legal obligation imposed on Edge.

7.      Edge further objects to Defendant's requests to the extent that they rely on instructions that make the individual requests vague, ambiguous, unintelligible, or unduly burdensome, particularly as set forth in Edge's Specific Objections.

8.      Edge generally objects to the term "Document(s)" as vague and in excess of, not "synonymous in meaning and equal in scope," with the term's usage in Federal Rule of Civil Procedure 34.

9.      Edge generally objects to Defendant's interrogatories to the extent that they seek all information that support Edge's anticipated claims or contentions at trial.  Discovery is in the early stages and the following responses are based only upon such information and documents that are known to Edge at this time.  Further investigation, discovery, and legal research and analysis may yield additional information and documents. Edge expressly reserves the right to supplement this response as fact discovery and expert discovery progress.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

10.     Edge generally objects to Defendant's interrogatories to the extent they seek "all" or "any" information concerning a particular subject on the grounds that performing searches of such breadth is unduly burdensome and not proportional to the needs of the case.  In their search for relevant information, Edge has made, or will make, a reasonable search as required by the Federal Rules of Civil Procedure.

11.     Edge objects to Defendant's interrogatories, to the extent they seek third party confidential information outside the scope of the Protective Order. Edge will produce third party confidential information in accordance with the Parties' agreement in the Protective Order.

12.     The fact that Edge has responded or objected to an interrogatory should not be understood as an admission that Edge accepts or admits the existence of any "fact" set forth in or assumed by that interrogatory.

Without waiving the specific objections set forth below, and subject to the limitations and general objections set forth above, Edge provides the following responses to Defendant's First Set of Interrogatories (Nos. 1-14, formerly Nos. 1-5).

/ / /

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

<u>**RESPONSES TO INTERROGATORIES**</u>

<u>**INTERROGATORY NO. 1:**</u>

Describe in detail all evidence, facts and circumstances underlying your claim that any infringement by Cartessa was willful. To be complete, your response should include, but not be limited to, the identity of all documents, persons, or entities related to such objective evidence.

<u>**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**</u>

Subject to the objections below, Edge responds as follows:

Defendant's infringement of Edge's patent rights has been willful.  Defendant had actual knowledge of the Asserted Patents (or their respective applications) when it began offering and selling the accused Eunsung-manufactured products, or it acted with willful blindness to its infringement.  Defendant's supplier Eunsung had actual knowledge of Edge's patent portfolio – and the '591, '513, and '716 patents specifically – at least as early as April 25, 2014 and February 1, 2017, when Edge sent a letter and emails to Eunsung concerning sales of Eunsung hydradermabrasion products in the United States. Before Defendant "teamed up with [Eunsung] to exclusively bring Skinwave to the US," Eunsung and Cartessa discussed Edge's patent portfolio on several occasions. For example, Cartessa expressed concern to Eunsung that the Hydratouch, another name for the Skinwave, might infringe Edge's intellectual property, and investigated the HydraFacial patents at Eunsung's request. *See* CARTESSA_0054840-43;  Jan. 7. 2021 Rough Depo. Tr. Cartessa 30(b)(6) at 151-155. In addition, prior to distributing the Skinwave, Cartessa conducted an analysis to determine whether there was a risk of patent infringement, something Cartessa had not done for any other product. *See* Jan. 7. 2021 Rough Depo. Tr. Lubin at 51-52.  Indeed, the distribution agreement between Eunsung and Cartessa requires Eunsung to indemnify Cartessa for losses, costs, damages, and expenses that Cartessa

6

incurs due to infringement or alleged infringement of patents, indicating both parties' recognition that a patent infringement lawsuit due to infringement of Edge's Patents was a possibility. *See* CARTESSA_000303-311; Jan. 7. 2021 Rough Depo. Tr. Cartessa 30(b)(6) at 58-61.   Similarly, in anticipation of launching a hydradermabrasion product, Defendant was aware that Edge had a patent that might cover its anticipated product.  For example, on January 31, 2019, Don DiBrita Jr., an employee at Cartessa, sent Gabe Lubin, Jon Banks, and A.J. Storrs, also employees of Cartessa, an email titled "HydraFacial Patents." *See* CARTESSA0055816. The body of the email contained a link to the Google Patents page for the '716 patent. *Id.* Given Don DiBrita's reference to HydraFacial *Patents*, rather than Patent, it is clear that Cartessa was aware that Edge's HydraFacial devices were protected by multiple patents. Mr. Lubin, Cartessa's 30(b)(6) witness, confirmed that he was aware of at least the '716 patent by at least 2018, before Cartessa began distributing its Skinwave product. Jan. 7. 2021 Rough Depo. Tr. Cartessa 30(b)(6) at 73. Defendant was certainly aware both of the existence of Edge's patent family and of Edge's allegations concerning the '591, '513, and '716 patents against Eunsung's Hydratouch device.

Moreover, because Edge is the industry leader and Edge's patented HydraFacial products are well-known throughout the industry, Defendant had actual knowledge of the Asserted Patents, their respective applications prior to this action and/or that Edge's products are protected by its patents, or willfully blinded itself to the existence of Edge's patents.  For example, Edge and Defendant are members of some of the same trade organizations and attend some of the same trade shows.  Both Edge and Defendant had booths at "The Aesthetic Show" held in Las Vegas July 11-14, 2019.   The conference included a summary identifying Edge d/b/a the HydraFacial Company as having 68 issued or pending patents and provided a link to Edge's website.   The conference map indicates that Edge and Defendant's trade-show booths were

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

located within 100 feet of each other. Thus, Defendant knew, or it was so obvious that Defendant should have known, that its actions constituted infringement of the Asserted Patents. Defendant's acts of infringement were not consistent with the standards of commerce for its industry.

At a minimum, Defendant had actual knowledge of the Asserted Patents no later than about September 16, 2020, when it received a letter from Edge informing Defendant of the Asserted Patents and its infringement thereof.

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which additional information responsive to this Interrogatory can be determined: EDGE-CARTESSA_0013180-249, CARTESSA_0054840-43, CARTESSA_000303-311, CARTESSA0055816 as well as additional documents Edge will produce in this action. Edge expressly reserves the right to supplement this response as Cartessa discloses additional information in accordance with Federal Rule of Civil Procedure 26(e)(1).

Edge may provide a response and supporting evidence regarding its willful infringement contentions and its claim for enhanced damages through an expert witness and report in accordance with the schedule for expert disclosures as set forth in the Court's Scheduling Order or otherwise agreed to by the parties. Edge expressly incorporates by this reference any such expert report as if set forth fully herein.

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this interrogatory as it seeks legal reasoning and theories of Edge's claims for relief and contentions. Edge further objects to this Interrogatory as premature, and, on that ground, as unduly burdensome.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

**INTERROGATORY NO. 2:**

Separately for each claim of the patents-in-suit, describe in detail all objective evidence of nonobviousness and identify any and all problems that you contend were solved by the combination of elements recited in each claim that would not have been solved by a predictable variation of solutions described in the prior art known to you, disclosed in the patents-in-suit, or otherwise known to a person of ordinary skill in the art. To be complete, your response should include, but not be limited to, evidence of commercial success, long-felt but unsolved needs, failure of others, copying of the invention, industry praise or awards, unexpected results, and industry acceptance, and the identity of all documents, persons, or entities related to such objective evidence.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to the objections below, Edge responds as follows:

Secondary indicia of non-obviousness include at least copying (by Defendant as well as others, as evidenced, for example, by pending and past patent infringement lawsuits including *Edge Systems LLC v. Image MicroDerm, Inc.*, No. 2:17-cv-08699 (C.D. Cal.), *Edge Systems LLC v. Aesthetic Skin Systems LLC*, No. 2:17-cv-04597 (C.D. Cal.), *Edge Systems LLC v. Ageless Serums LLC*, No. 2:17-cv-02720 (C.D. Cal.), *Edge Systems LLC v. Aguila*, No. 1:14-cv-24517 (S.D. Fla.), *Edge Systems LLC v. Naumkeag Spa & Medical Supplies*, LLC, No. 2:14-cv-04663 (C.D. Cal.), *Edge Systems LLC v. Image MicroDerm, Inc.*, No. 2:14-cv-04428 (C.D. Cal.), *Edge Systems Corporation v. Bio-Therapeutic Inc.*, No. 2:11-cv-04993 (C.D. Cal.), *Edge Systems LLC v. Cartessa Aesthetics*, LLC., No. 2:20-cv-06082 (E.D.N.Y.), and *Edge Systems LLC v. Venus Concept USA Inc.*, No. 0:18-cv-62588 (S.D. Fla.)), commercial success (e.g., Edge's robust sales of products, to over 2,500 locations nationwide, that embody the inventions of the Asserted

9

Patents and the emphasis on the patented technology in Edge's marketing), satisfaction of a long felt need (previous microdermabrasion systems were a health hazard, causing a coating of abrasive crystal dust which could be inhaled by the operator, created a mess, dried out the user's skin, were less smooth, resulted in more redness and irritation, were painful to the point of requiring local anesthetics, and often either resulted in longer recovery time), and praise by others (e.g., 2016 "Best Facial to Transform Your Skin" and 2017 "Best Facial for a Healthy Glow" Awards from New Beauty Choice) support a finding of no invalidity based on obviousness.

Edge identifies the following individuals as potentially having knowledge responsive to this interrogatory:

| Individual | Title | Contact Information |
|---|---|---|
| Rosemarie Holcomb | Vice President, Brand & Consumer Engagement | Contact through counsel |
| Vipul Savsani | Director, FP&A | Contact through counsel |
| Dan Watson | Executive VP of Sales | Contact through counsel |
| Matt Norwood | Area Vice President – West | Contact through counsel |
| Carroll Lamarque | Vice President of Sales, East & LATM | Contact through counsel |

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which additional information responsive to this Interrogatory can be determined: EDGE-CARTESSA_0012805-26, EDGE0030650-51, EDGE-

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CARTESSA_0339610-14, and deposition testimony of Edge witnesses including Roger Ignon, Rosemarie Holcomb, Vipul Savsani, John Shadduck, and Carroll Lamarque.  Edge expressly reserves the right to supplement this response as Cartessa discloses additional information in accordance with Federal Rule of Civil Procedure 26(e)(1).

Each of the Asserted Patents is entitled to a presumption of validity and Defendant bears the burden of proof to rebut that presumption through clear and convincing evidence.  Edge responds that it may provide a response and supporting evidence regarding secondary indicia of non-obviousness through a rebuttal expert report in accordance with the schedule for expert disclosures set forth in the Court's Scheduling Order or otherwise agreed to by the parties.  Edge expressly incorporates by this reference any such expert report as if set forth fully herein.

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this interrogatory because it is overbroad and therefore unduly burdensome and not proportional to the needs of the case, for example, in requesting "separately for each claim of the patents-in-suit," and "identify any and all problems."

**INTERROGATORY NO. 3 (Renumbered Interrogatory No. 3-6):**

Describe in detail all instances in which the patents-in-suit or any related patents and/or patent applications have been involved in any license, sale, assignment, or other attempted or actual transfer of rights or contingent rights thereto. To be complete, your response should include, but not be limited to, identification of each entity to whom rights were offered, whether that entity received rights (in whole or in part) to any of those patents or patent applications, the identity of each agreement with that entity conferring said rights, the identity of all offers,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

proposals, drafts of agreements and negotiations relating to actual or potential agreements, the identity of the two Edge employees or representatives most knowledgeable (excluding knowledge learned through privileged communications) about the negotiations regarding the respective patents and/or patent applications and should include Edge's efforts involvement as both a grantor and grantee of such rights.

**RESPONSE TO INTERROGATORY NO. 3 (Renumbered Interrogatory Nos. 3-6):**

Edge incorporates by reference its Preliminary Statement and its General Objections for each interrogatory, stated below. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory to the extent it contains numerous discrete subparts within the meaning of Federal Rules of Civil Procedure 33(a)(1) and constitutes at least four interrogatories of Cartessa's twenty-five interrogatories. This interrogatory should be counted as at least four discrete interrogatories to the extent it seeks information relating to which the patents-in-suit or any related patents and/or patent applications have been involved in any (1) license, (2) sale, (3) assignment, or (4) other attempted or actual transfer of rights or contingent rights thereto.

Subject to the above objections and the specific objections below, which apply to each subpart, Edge responds as follows:

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3 (formerly subpart 1 of Interrogatory No. 3):**

Axia licensed the Shadduck Patents to Edge on April 16, 2004. As part of a settlement agreement dated November 30, 2019, Edge licensed the Shadduck Patents to Venus Concept USA for the last 9 months of life of those patents.

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

representative documents from which information responsive to this Interrogatory can be determined: EDGE-CARTESSA_0012025-036, EDGE-CARTESSA_0012038, EDGE-CARTESSA_0012065-075, EDGE-CARTESSA_0012076-86, EDGE-CARTESSA_0012322-34. Edge identifies the following individuals as potentially having knowledge responsive to this interrogatory:

| Individual | Title | Contact Information |
|---|---|---|
| Mark Price | Vice President, Quality, Regulatory Affairs and Research and Development | Contact through counsel |

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this interrogatory because it is overbroad and therefore unduly burdensome and not proportional to the needs of the case, for example, in requesting "the identity of all offers, proposals, drafts of agreements and negotiations relating to actual or potential agreements."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (formerly subpart 2 of Interrogatory No. 3):**

Regarding sale of the patents-in-suit or any related patents and/or patent applications, on August 26, 2018, Edge purchased the Shadduck Patents from Axia.

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which information responsive to this Interrogatory can be

13

determined:   EDGE-CARTESSA_0012013-024,   EDGE-CARTESSA_0012053-064.   Edge identifies the following individuals as potentially having knowledge responsive to this interrogatory:

| Individual | Title | Contact Information |
| --- | --- | --- |
| Mark Price | Vice President, Quality, Regulatory Affairs and Research and Development | Contact through counsel |

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this interrogatory because it is overbroad and therefore unduly burdensome and not proportional to the needs of the case, for example, in requesting "the identity of all offers, proposals, drafts of agreements and negotiations relating to actual or potential agreements."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5 (formerly subpart 3 of Interrogatory No. 3):**

Regarding assignment of the patents-in-suit or any related patents and/or patent applications, on August 26, 2018, the Shadduck Patents were assigned from the inventor, John Shadduck, to Axia MedSciences ("Axia") on June 4, 2004.  On August 26, 2018, Axia assigned the Shadduck Patents to Edge.  The inventors of the '052 patent assigned the '052 patent to Edge on May 10, 2006, June 13, 2006, and June 28, 2006.  Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which information responsive to this Interrogatory can be determined: EDGE-CARTESSA_0011998-0012087,

14

0012322-34. Edge identifies the following individuals as potentially having knowledge responsive to this interrogatory:

| Individual | Title | Contact Information |
|------------|-------|---------------------|
| Mark Price | Vice President, Quality, Regulatory Affairs and Research and Development | Contact through counsel |

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this interrogatory because it is overbroad and therefore unduly burdensome and not proportional to the needs of the case, for example, in requesting "the identity of all offers, proposals, drafts of agreements and negotiations relating to actual or potential agreements."

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 6 (formerly subpart 4 of Interrogatory No. 3):**

Regarding other attempted or actual transfer of rights or contingent rights thereto, Edge incorporates by reference its responses to Interrogatories 3-5 (formerly subparts 1-3 of Interrogatory No. 3)

Edge identifies the following individuals as potentially having knowledge responsive to this interrogatory:

| Individual | Title | Contact Information |
|------------|-------|---------------------|
| Mark Price | Vice President, Quality, Regulatory Affairs and | Contact through counsel |

15

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| | Research and Development | |
|---|---|---|

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge further objects to this interrogatory because it is overbroad and therefore unduly burdensome and not proportional to the needs of the case, for example, in requesting "attempted … transfer of rights," and "the identity of all offers, proposals, drafts of agreements and negotiations relating to actual or potential agreements."

**INTERROGATORY NO. 4 (Renumbered Interrogatory Nos. 7-12):**

Please identify any facts that support or negate any affirmative defense by Cartessa, including identification of documents and identification of witnesses most knowledgeable of each such fact.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4 (Renumbered Interrogatory Nos. 7-13):**

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory to the extent it contains numerous discrete subparts within the meaning of Federal Rules of Civil Procedure 33(a)(1) and constitutes at least seven interrogatories of Cartessa's twenty-five interrogatories. This interrogatory should be counted as at least seven discrete interrogatories to the extent it seeks information relating to Cartessa's seven affirmative defenses, (1) marking, (2) non-infringement, (3) invalidity, (4) unclean hands, (5) waiver, (6) estoppel and (7) prosecution history estoppel.

Subject to the above objection and the specific objections below, which apply to each

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

subpart, Edge responds as follows:

Cartessa bears the burden of proof for each of its asserted affirmative defenses, but Cartessa has failed to recite facts that, if true, would make Cartessa's affirmative defenses plausible. Further, Edge experts will analyze certain of Cartessa's affirmative defenses and provide their analysis of the flaws in those defenses in their expert reports.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (formerly subpart 1 of Interrogatory No. 4):**

With regard to marking, each of Edge's HydraFacial® products practices the claimed invention and is marked in accordance with 35 U.S.C. § 287, by including the word "patent" together with a website associating the patent number with the patented system in user manuals, on labels, and on the device screen/software interface, including the HydraFacial® Elite, the HydraFacial® Tower™, HydraFacial® Allegro™, HydraFacial® Wave™, HydraFacial® Core™, HydraFacial® Nectre®, and HydraFacial® Microdermabrasion Delphia.  For example, the User Manual states: "This product and its use are covered by one or more U.S. and International patents.  Patent info: hydrafacialco.com/patents. These intellectual property rights (IPR's) remain the exclusive property of Edge Systems LLC or its licensors."  The website also communicates that certain of Edge's patents are fundamental to the Hydrafacial technology by listing them in connection with both types of commercial hydradermabrasion that device Edge sells (the tower devices and the tabletop devices).  In addition, the striking visual similarity between the figures in the '052 patent and Edge's tower-type HydraFacial devices provides additional notice that those devices are covered by the '052 patent.

Edge identifies the following non-privileged, representative documents from which information responsive to this Interrogatory can be determined: EDGE-CARTESSA_0013256-

17

259, EDGE-CARTESSA_0387722-737, EDGE-CARTESSA_1059914, EDGE-CARTESSA_1060504-25, EDGE-CARTESSA_1060526-43, EDGE-CARTESSA1060544-70, EDGE-CARTESSA_0209018, EDGE-CARTESSA_0846476, EDGE-CARTESSA_0846615, EDGE-CARTESSA_0212977-979, EDGE-CARTESSA_0215150, EDGE-CARTESSA_0065540, EDGE-CARTESSA_0108723-24, EDGE-CARTESSA_0755850-851, EDGE-CARTESSA_0162760, EDGE-CARTESSA_0167110-112, and EDGE-CARTESSA_0411960.

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory as premature to the extent it is seeking Edge's contentions on an issue for which Cartessa bears the burden of proof, at the early stages of discovery. Edge objects to the interrogatory as having multiple discrete subparts as it seeks information regarding each discrete defense asserted by Cartessa.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (formerly subpart 2 of Interrogatory No. 4):**

With regard to non-infringement, Edge incorporates by reference its infringement contentions dated April 19, 2021. Edge identifies the following individuals as potentially having knowledge responsive to this interrogatory: Gabe Lubin, Jon Banks, and A.J. Storrs.

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory as premature to the extent it is seeking Edge's contentions on an issue for which Cartessa bears the

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

burden of proof, at the early stages of discovery. Edge objects to the interrogatory as having multiple discrete subparts as it seeks information regarding each discrete defense asserted by Cartessa.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 9 (formerly subpart 3 of Interrogatory No. 4):**

With respect to invalidity, Edge states that Defendant's Invalidity Contentions do not disclose any prior art, alone or in combination, which anticipates the asserted claims of the Patents-in-Suit or renders them obvious.  Nor does Cartessa provide any reasonable basis for finding invalidity under 35 U.S.C. § 112.  Moreover, the Scheduling Order does not require the exchange of responses to contentions.  The requested information improperly seeks expert discovery before the date set forth by the Court for expert discovery in the Scheduling Order. Edge will provide discovery regarding the adequacy of Defendant's contentions in accordance with the schedule for expert disclosures as set forth in the Court's Scheduling Order.

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which additional information responsive to this Interrogatory can be determined: EDGE-CARTESSA_0012805-26, EDGE0030650-51, Deposition testimony of Edge witnesses including Roger Ignon, Rosemarie Holcomb, Vipul Savsani, John Shadduck, and Carroll Lamarque.

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory as premature to the extent it is seeking Edge's contentions on an issue for which Cartessa bears the burden of proof, at the early stages of discovery. Edge objects to the interrogatory as having

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

multiple discrete subparts as it seeks information regarding each discrete defense asserted by Cartessa.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 10 (formerly subpart 4 of Interrogatory No. 4):**

With respect to unclean hands, Edge incorporates its Motion to Strike and Reply in Support Thereof (Dkt. Nos. 32 and 32-4).

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory as premature to the extent it is seeking Edge's contentions on an issue for which Cartessa bears the burden of proof, at the early stages of discovery. Edge objects to the interrogatory as having multiple discrete subparts as it seeks information regarding each discrete defense asserted by Cartessa.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (formerly subpart 5 of Interrogatory No. 4):**

With respect to waiver, Edge has not waived any right to assert patents by narrowing the number of patents asserted.  In addition, to the extent Defendant's allegations overlap with the allegations of unclean hands, Edge incorporates its Motion to Strike and Reply in Support Thereof (Dkt. Nos. 32 and 32-4).

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which additional information responsive to this Interrogatory can be determined:   EDGE-CARTESSA_0000825-1197,   EDGE-CARTESSA_0001909-2043, EDGE-CARTESSA_0001198-1577, EDGE-CARTESSA_0001593-1098,                                     EDGE-

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CARTESSA_0000001-824, deposition testimony of Edge witnesses including Roger Ignon, John Shadduck, and Theodore Papagiannis.

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory as premature to the extent it is seeking Edge's contentions on an issue for which Cartessa bears the burden of proof, at the early stages of discovery. Edge objects to the interrogatory as having multiple discrete subparts as it seeks information regarding each discrete defense asserted by Cartessa.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (formerly subpart 6 of Interrogatory No. 4):**

With respect to estoppel, Edge is not estopped from asserting any of the Asserted Patents at least because Edge has interpreted the claim scope of the Asserted Patents consistently throughout cases.  In addition, to the extent Defendant's allegations overlap with the allegations of unclean hands, Edge incorporates its Motion to Strike and Reply in Support Thereof (Dkt. Nos. 32 and 32-4).

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which additional information responsive to this Interrogatory can be determined: Deposition testimony of Edge witnesses including Roger Ignon, John Shadduck, and Theodore Papagiannis. Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory as premature to the extent it is seeking Edge's contentions on an issue for which

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Cartessa bears the burden of proof, at the early stages of discovery. Edge objects to the interrogatory as having multiple discrete subparts as it seeks information regarding each discrete defense asserted by Cartessa.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13 (formerly subpart 7 of Interrogatory No. 4):**

With respect to prosecution history estoppel, nothing in the prosecution history limits the scope of Edge's claims as Defendant asserts.  Moreover, the requested information improperly seeks expert discovery before the date set forth by the Court for expert discovery in the Scheduling Order. Edge will provide discovery regarding the adequacy of Defendant's defenses in accordance with the schedule for expert disclosures as set forth in the Court's Scheduling Order.

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which additional information responsive to this Interrogatory can be determined: Deposition testimony of Edge witnesses including Roger Ignon, John Shadduck, and Theodore Papagiannis.

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge objects to this interrogatory as premature to the extent it is seeking Edge's contentions on an issue for which Cartessa bears the burden of proof, at the early stages of discovery. Edge objects to the interrogatory as having multiple discrete subparts as it seeks information regarding each discrete defense asserted by Cartessa.

**INTERROGATORY NO. 14 (formerly Interrogatory No. 5):**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Please identify any facts that support or negate any damages or component of damages you contend are owed in this case, including sales, sales dates, sales volumes, convoyed sales, profit margins, gross margins, all factors relevant to lost profits and all factors relevant to a Georgia-Pacific analysis.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14 (formerly Interrogatory No. 5)

Subject to the objections below, Edge responds as follows:

Pursuant to 35 U.S.C. § 284, Edge is seeking actual damages in the form of lost profits, or in the alternative, other damages to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the patented inventions by Defendant. Edge is also seeking damages for other lost business opportunities, including lost convoyed sales of consumables, such as disposable tips, used with Edge's patented HydraFacial devices. Edge further responds that it may also be entitled to treble damages for Defendant's willful infringement, at least with respect to sales made after September 15, 2020. Pursuant to 35 U.S.C. § 285, Edge is also seeking its reasonable attorneys' fees for the necessity of bringing this action.

## BEGIN HIGHLY CONFIDENTIAL MATERIAL – SUBJECT TO PROTECTIVE ORDER

Cartessa has stated that it has sold approximately 241 units of the accused Skinwave device from launch to date *See* Rough Depo. Tr. Banks at 16. Edge's lost profits, including convoyed sales of consumables (e.g., tips and serums), from these sales may total over $6.9 million.  If the Court finds willful infringement and trebles Edge's damages, Cartessa could be liable for over $13 million in damages and treble damages.  In no event should Edge's lost profits be less than a reasonable royalty of 50% of Cartessa's sales, or $1,782,714. *See*

23

CARTESSA_0000872. Cartessa's total sales of Skinwave totaled $3,106,691.20 through May 2021, and appears to total at least $3,565,428 through September 14, 2021. CARTESSA_0000872.   Edge's expert will provide detailed calculations through an Expert Report in accordance with the date set forth by the Court in the Scheduling Order, such report is incorporated by reference herein.

**END HIGHLY CONFIDENTIAL MATERIAL**

The requested information is an improper request for expert discovery before the date set forth by the Court for expert discovery in the Scheduling Order. Edge will provide expert analysis supporting its damages claims in accordance with the Scheduling Order. Edge incorporates by reference the aforementioned expert analysis.

Edge identifies the following individuals as potentially having knowledge of information relevant to damages:

| Individual | Title | Contact Information |
|---|---|---|
| Liyuan Woo | EVP, Chief Financial Officer | Contact through counsel |
| Vipul Savsani | Director, Financial Planning and Analysis | Contact through counsel |
| Carroll Lamarque | Vice President of Sales, East & LATM | Contact through counsel |
| Dan Watson | Executive VP of Sales | Contact through counsel |

Pursuant to Fed. R. Civ. P. 33(d), Edge identifies the following non-privileged, representative documents from which information responsive to this Interrogatory can be determined:   EDGE-CARTESSA_0012682-91,   EDGE-CARTESSA_0012693-97,   EDGE-CARTESSA_1050505, EDGE-CARTESSA_0012686, EDGE-CARTESSA_0012695, EDGE-CARTESSA_0021593, EDGE-CARTESSA_0012744, EDGE-CARTESSA_0021592, EDGE-

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

CARTESSA_0021594, EDGE-CARTESSA_0021596, EDGE-CARTESSA_0012694, EDGE-CARTESSA_0012691, EDGE-CARTESSA_0000322; EDGE-CARTESSA_0000872, deposition testimony of Edge witness Vipul Savsani, the spreadsheets that were marked as exhibits during Mr. Savsani's deposition, and deposition testimony of Cartessa witness Jon Banks. Edge expressly reserves the right to supplement this response as Cartessa discloses additional information in accordance with Federal Rule of Civil Procedure 26(e)(1).

Edge incorporates by reference its Preliminary Statement and its General Objections. Edge further objects to this interrogatory to the extent it seeks documents protected by the attorney-client privilege and/or work product doctrine. Edge further objects that this interrogatory seeks expert opinions before the date set forth in the Court's Scheduling Order.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: January 10, 2022       By: */s/ Ashley C. Morales*
                                   Craig S. Summers (*Admitted pro hac vice*)
                                   Email: craig.summers@knobbe.com
                                   Ali S. Razai (*Admitted pro hac vice*)
                                   Email: ali.razai@knobbe.com
                                   Karen M. Cassidy Selvaggio (*Admitted pro hac vice*)
                                   Email: karen.cassidy@knobbe.com
                                   Sean M. Murray (*Admitted pro hac vice*)
                                   Email: sean.murray@knobbe.com
                                   Ashley C. Morales (*Admitted pro hac vice*)
                                   Email: ashley.morales@knobbe.com
                                   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                                   2040 Main Street, Fourteenth Floor
                                   Irvine, CA  92614
                                   Telephone: (949) 760-0404
                                   Facsimile: (949) 760-9502

                                   *Attorneys for Plaintiff*
                                   EDGE SYSTEMS LLC

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in San Diego, California. I am over the age of 18 and not a party to the within action. My business address is 3579 Valley Center Drive, San Diego, California.

On January 10, 2022, I served the foregoing **PLAINTIFF EDGE SYSTEMS LLC's SUPPLEMENTAL RESPONSES TO DEFENDANT CARTESSA AESTHETICS, LLC'S FIRST SET OF INTERROGATORIES (NOS. 1-14, FORMERLY NOS. 1-5)** on counsel shown below via **EMAIL**:

David G. Keyko
david.keyko@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212-858-1604
Fax: 212-858-1500

Steven P. Tepera
steven.tepera@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
401 Congress Avenue, Suite 1700
Austin, TX 78701
Tel.: 512-580-9651
Fax: 512-580-9601

Matthew David Stockwell
matthew.stockwell@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212-858-1604
Fax: 212-858-1500

Michael Hines Borofsky
Michael.borofsky@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
401 Congress Avenue, Suite 1700
Austin, TX 78701
Tel.: 512-580-9651
Fax: 512-580-9601

26

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

*Attorneys for Defendant*
CARTESSA AESTHETICS, LLC

I declare that I am employed in the office of a member of the bar of this Court at whose

direction the service was made.

Executed on January 10, 2022, at San Diego, California.

*/s/ Ashley C. Morales*
Ashley Morales

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

# EXHIBIT W

REF 70290-03-01   SN HFE- XXXX-XXXX



## HydraFacial MD™ Elite™
220-240VAC, 50/60Hz, 8A

QTY/QTÉ: 1

THIS DEVICE IS COVERED BY ONE OR MORE US AND INTERNATIONAL
PATENTS. PATENT INFO: **HYDRAFACIALCO.COM/PATENTS**

GROUNDING RELIABILITY CAN ONLY BE ACHIEVED WHEN EQUIPMENT
IS CONNECTED TO AN EQUIVALENT RECEPTACLE MARKED "HOSPITAL
ONLY" OR "HOSPITAL GRADE".

TRANSPORTING DEVICE MAY BE UNDERTAKEN ONLY AS INDICATED
IN USER GUIDE.



www.hydrafacial.com/ifu



 250V 8A SB

1639

Mass of Equipment / Masse de l'équipement: 39 Kg (85 Lbs)
Designed in California, USA / Conçu en Californie, États-Unis



Edge Systems LLC
2277 Redondo Avenue,
Signal Hill, CA 90755 USA
(800) 603-4996 • (562) 597-0102
hydrafacial.com



E C Rep Ltd.
5 Fitzwilliam Square East,
Dublin 2, D02 R744, Ireland
Tel: +353 89 225 1951
Email: info@ecrep.ie
**Responsible Person in the United Kingdom:**
Responsible Person Ltd.
Summit House, 4-5 Mitchell Street,
Edinburgh, EH6 7BD, UK
Tel: +44 7543 672 888
Email: Info@responsible-person.co.uk

LBL 88013-01-F

CONFIDENTIAL

# EXHIBIT X

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
T (949) 760-0404

Ali S. Razai
Ali.Razai@knobbe.com

**September 15, 2020**
**Via Federal Express**

Gabe Lubin
175 Broadhollow Rd, Suite 185
Melville, New York 11747

Re:    Edge Systems' Intellectual Property
       Our Ref.: EDGE.141IS

Dear Mr. Lubin:

We represent Edge Systems LLC ("Edge") in connection with its intellectual property matters.

As you know, Edge is a worldwide leader in microdermabrasion and hydradermabrasion systems. Edge has expended considerable time, effort, and money to develop its proprietary technology including the HydraFacial MD® hydradermabrasion system and HydroPeel® tip. To protect its substantial investment, Edge Systems has obtained the rights to various patents and patent applications throughout the world. These include United States Patent Nos. 6,641,591, 7,789,886, 8,337,513, 8,066,716, 7,678,120, 9,468,464, 9,775,646, 8,048,089, 10,357,642, 10,357,641, and 9,550,052 (the "Edge Patents") and several pending U.S. and foreign patent applications.

Under 35 U.S.C. § 271, any entity that, without permission, makes, uses, sells, offers to sell, or imports a product covered by any claim of an Edge Patent infringes Edge's patent rights. Edge takes infringement of its patent rights very seriously. In the past five years alone, Edge has successfully defended its patent rights—including patents covering its revolutionary HydraFacial MD® hydradermabrasion system and HydroPeel® tip—in numerous actions, including multiple litigations. As examples, these include:

- *Edge Systems LLC v. Venus Concept USA Inc.* (Case No. 0:18-cv-62588 (S.D. Fl.))
- *Edge Systems LLC et al. v. Imagemicroderm, Inc.* (Case No. 2:17-cv-08699 (C.D. Cal.))
- *Edge Systems LLC et al. v. Aesthetic Skin Systems LLC* (Case No. 2:17-cv-04597 (C.D. Cal.))
- *Edge Systems LLC et al. v. Ageless Serums LLC* (Case No. 2:17-cv-02720 (C.D. Cal.))
- *Edge Systems LLC et al. v. Rafael Newton Aguila* (Case No. 1:14-cv-04663 (S.D. Fl.))

As evidenced by even a cursory review of the dockets in these lawsuits, Edge vigorously enforces its intellectual property rights and has an unblemished record of success in these actions. We have recently become aware that Cartessa is selling and/or offering to sell products that infringe Edge's

Case 2:20-cv-06082-GRB-ST   Document 69-4   Filed 06/21/22   Page 95 of 96 PageID #: 4952

patent rights.[1] For example, based on publicly available information, we have determined that Cartessa's "Skinwave" system infringes each of the Edge Patents and that Cartessa's "Aquascaling" tips infringe at least U.S. Patent Nos. 8,048,089, 10,357,642, and 10,357,641.

Under the United States patent laws, an infringer can be liable for damages in the amount of the patent owner's lost profits and, in any event, no less than a reasonable royalty. *See* 35 U.S.C. § 284. If the infringement is found to be willful, the court may increase the amount of damages up to three times the amount of actual damages. If Edge is forced to litigate the matter, you may additionally be responsible for Edge's attorney's fees. 35 U.S.C. § 285. These attorney's fees can even exceed the total damages awarded.

We insist that you:

1. Immediately stop offering, making, promoting, advertising or selling products that infringe Edge's patent rights including the "Skinwave" system and "Aquascaling" tips during the term of the patents each is alleged to infringe; and

2. Pay to Edge any and all damages in accordance with 35 U.S.C. § 284 that are sufficient to compensate Edge for its losses. In order to determine the amount of these damages, we further demand that you account to us for all sales of the infringing products; and

3. Pay to Edge Systems its attorneys' fees and costs incurred in connection with this matter.

We request that you provide this information and confirm within **seven (7) days of the date of this letter**, that you will fully comply with Edge's demands. Otherwise, Edge will have no choice but to file a lawsuit in the Eastern District of New York.

Failure to promptly respond to this letter and to comply with these demands will be regarded as evidence that your infringement is willful and intentional, and will greatly increase the likelihood that Edge will take legal action. In addition, the above demands are without prejudice to any rights, remedies or compensation to which Edge is entitled, each of which is expressly reserved.

Very truly yours,

Ali S. Razai

Enclosures:
United States Patent No. 6,641,591
United States Patent No. 7,789,886
United States Patent No. 8,337,513
United States Patent No. 8,066,716

---

[1] https://www.cartessaaesthetics.com/skinwave (last visited on September 11, 2020).

United States Patent No. 7,678,120
United States Patent No. 9,468,464
United States Patent No. 9,775,646
United States Patent No. 8,048,089
United States Patent No. 10,357,642
United States Patent No. 10,357,641
United States Patent No. 9,550,052