# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

EDGE SYSTEMS LLC, )
)   Civil Action No. 1:20-cv-06082 (GRB)(ST)
    Plaintiff, )
)
    v. )
)
CARTESSA AESTHETICS, LLC, )
)
    Defendant. )
)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF EDGE SYSTEMS LLC'S MOTION FOR SUMMARY JUDGMEMENT OF INFRINGEMENT OF CLAIM 1 OF THE '052 PATENT

## TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 2

    A.      Edge's '052 Patent and Cartessa's Infringing Skinwave Device .................... 2

    B.      Cartessa's Untimely Claim-Construction Arguments ..................................... 5

III.    INFRINGEMENT OF CLAIM 1 OF THE '052 PATENT MAY BE
    RESOLVED ON SUMMARY JUDGMENT ................................................. 9

IV.     UNDER THE PROPER CONTRUCTION OF CLAIM 1, CARTESSA HAS
    DIRECTLY INFRINGED THE CLAIM AS A MATTER OF LAW ...................... 10

    A.      Cartessa Waived Its New Claim-Construction Arguments By Failing
        To Propose Them During Claim Construction ............................................. 10

    B.      The Court Should Reject Cartessa's Belated Construction Of
        "Manifold" On The Merits .......................................................................... 13

        1.      The parties' experts agreed that the dictionary accurately
                expresses the ordinary meaning of "manifold." ................................. 13

        2.      The ordinary meaning of "manifold" is confirmed by the
                remaining language of Claim 1 ......................................................... 15

        3.      Cartessa's construction would violate the doctrine of claim
                differentiation. ................................................................................. 16

        4.      Cartessa's construction would improperly read a feature from
                the preferred embodiment of the specification into Claim 1. ........... 17

    C.      Cartessa's Skinwave Plainly Includes A Manifold ........................................ 19

    D.      The Court Should Not Construe Claim 1 To Require A User To
        Activate The Device .................................................................................... 22

V.      CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page No(s).**

*Bayer CropScience AG v. Dow AgroSciences LLC*,
  2012 WL 4498527 (D. Del. Sept. 27, 2012) .................................................... 14

*Cedarapids, Inc. v. Johnson Crushers Int'l, Inc.*,
  2005 WL 2086752 (M.D. Tenn. Aug. 26, 2005) ........................................... 15

*Celerity, Inc. v. Ultra Clean Tech. Sys. & Serv., Inc.*,
  2007 WL 5734830 (N.D. Cal. June 19, 2007) .............................................. 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................ 10

*Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007) .............................................................. 10, 12

*Evolusion Concepts, Inc. v. HOC Events, Inc.*,
  22 F.4th 1361 (Fed. Cir. 2022) ..................................................................... 18

*Frac Shack Inc. v. Fuel Automation Station, LLC*,
  300 F. Supp. 3d 1333 (D. Colo. 2018) .......................................................... 15

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
  103 F.3d 978 (Fed. Cir. 1997) ............................................................ 9, 10, 22

*Hayward Indus., Inc. v. Pentair Water Pool & Spa, Inc.*,
  722 F. App'x 1049 (Fed. Cir. 2018) .............................................................. 16

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
  909 F.2d 1464 (Fed. Cir. 1990) ..................................................................... 22

*Holmes Grp., Inc. v. RPS Prod., Inc.*,
  2010 WL 7867756 (D. Mass. June 25, 2010) .......................................... 10, 22

*IGT v. Bally Gaming Int'l, Inc.*,
  659 F.3d 1109 (Fed. Cir. 2011) ................................................................. 9, 22

*Intel Corp. v. ITC*,
  946 F.2d 821 (Fed. Cir. 1995) ....................................................................... 25

*Liebel–Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ....................................................................... 16

**TABLE OF AUTHORITIES**
*(Cont'd)*

**Page No(s).**

*Littelfuse, Inc. v. Mersen USA EP Corp.*,
    29 F.4th 1376 (Fed. Cir. 2022) ..................................................... 18

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
    839 F.3d 1111 (Fed. Cir. 2016)..................................................... 13

*McCarty v. Lehigh Valley R. Co.*,
    160 U.S. 110 (1895)..................................................................... 18

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*,
    106 F. Supp. 3d 369 (S.D.N.Y. 2015)...................................... 11, 12

*Parker-Hannifin Corp. v. Wix Filtration Corp.*,
    2009 WL 10689385 (N.D. Ohio Nov. 6, 2009) ............................ 12

*PCT Int'l Inc. v. Holland Elecs. LLC*
    2015 WL 875200 (D. Ariz. Mar. 2, 2015) .............................. 23, 25

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .............................*passim*

*Plasmart Inc. v. Wincell Int'l Inc.*,
    2007 WL 3355509 (S.D.N.Y. Nov. 8, 2007)............................ 16, 17

*Polaris Innovations Ltd. v. Brent*,
    48 F.4th 1365 (Fed. Cir. Sept. 15, 2022) ..................................... 18

*Separation Design Grp. IP Holdings, LLC v. Inogen, Inc.*,
    2016 WL 7486596 (C.D. Cal. Oct. 21, 2016)................................ 14

*Silicon Graphics, Inc. v. ATI Technologies, Inc.*,
    607 F.3d 784 (Fed. Cir. 2010)................................................. 22, 23

*Spigen Korea Co. Ltd v. Ispeaker Ltd*,
    2018 WL 6038300 (C.D. Cal. July 16, 2018)................................ 12

*Thorner v. Sony Computer Entertainment America* LLC,
    669 F.3d 1362 (Fed. Cir. 2012)..................................................... 13

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007)..................................................... 13

# TABLE OF AUTHORITIES
### (*Cont'd*)

**Page No(s).**

*VirnetX Inc. v. Apple Inc.*,
  792 Fed.App'x 796 ........................................................................................ 24, 25

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)........................................................................ 9, 13

*Wi-LAN USA, Inc. v. Apple Inc.*,
  830 F.3d 1374 (Fed. Cir. 2016)........................................................................ 10

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015)........................................................................ 18

## OTHER AUTHORITIES

35 U.S.C. § 271 .................................................................................................. 9

Fed. R. Civ. P. 1 ................................................................................................ 10

Fed. R. Civ. P. 56 .............................................................................................. 9

# I.  INTRODUCTION

Summary judgment of infringement of Claim 1 of U.S. Patent No. 9,550,502 is warranted because there is no fact issue for a jury to decide.  The parties dispute neither the structure of the accused Skinwave device nor how it operates.   Their only dispute concerns the proper construction of Claim 1, and claim construction is a legal issue for the Court.   Moreover, Cartessa's claim-construction arguments are completely baseless on the merits, and were waived by Cartessa's failure to raise them during the Court-ordered claim-construction proceedings.

Cartessa's noninfringement position is based on two erroneous claim-construction arguments.   First, Cartessa argues that the Skinwave does not satisfy Claim 1's "manifold" limitation because a manifold must be able to draw treatment fluid from two fluid containers simultaneously.   Because Cartessa never proposed this construction of "manifold" during the claim-construction phase of the case, Cartessa has waived this argument.  Cartessa's construction is also wrong on the merits because it conflicts with the ordinary meaning of "manifold" in the dictionary; with the opinion of Cartessa's own expert, who adopted the dictionary definition in his invalidity report; and with constructions of "manifold" adopted by several district courts. Moreover, Claim 1 never recites that the claimed skin-treatment system must have the ability to draw treatment fluid from two containers simultaneously – that is a feature of a preferred embodiment shown in the patent's figures.   Cartessa's attempt to limit Claim 1 based on a feature of a preferred embodiment – a feature expressly recited in a dependent claim – violates at least two canons of claim construction.

Cartessa also argues it is not a direct infringer because "[t]he claims make the direct infringer" the person who uses the device, not the entity that sells the device.  Dkt. 76-1 at 21. This is another untimely claim-construction argument – Cartessa contends that "the claims require fluid to be drawn when a vacuum is powered." Dkt. 76 at 2.  Cartessa's construction is

1

also wrong on the merits.  Claim 1 is an apparatus claim, not a method claim.  It does not require any action by the user to be infringed.  It merely requires that the device have the structural features recited in the claim and be capable of drawing fluid "when the vacuum source is activated."  The Skinwave unquestionably meets all of these requirements.  Thus, the Skinwave infringes when the device is sold, even if the device is never unboxed or used.

## II.  FACTUAL BACKGROUND

### A.   Edge's '052 Patent and Cartessa's Infringing Skinwave Device

Edge pioneered the field of hydradermabrasion, and is a worldwide leader in the design, development, manufacture and sale of high-quality hydradermabrasion systems.  These systems rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface with a therapeutic solution, called a "serum," that moisturizes and protects the treated skin surface.  Edge markets and sells these systems throughout the United States to end users such as dermatologists, plastic surgeons, cosmetic physicians, and aestheticians at medical spas.

Edge's flagship system is its revolutionary HydraFacial MD® system, which is the premier hydradermabrasion system sold in the United States.  Edge created the field now known as "hydradermabrasion," and Edge's revolutionary HydraFacial® systems are protected by numerous United States patents.

U.S. Patent No. 9,550,052 ("the '052 Patent") discloses a skin-treatment system that applies a treatment fluid to a person's skin while simultaneously suctioning spent treatment fluid away from the skin and into a waste container.  Ex. 1[1] at 5:52-57, 7:47-60.  The user can select a

---

[1] Exhibits 1-20 are attached to the Declaration of Karen M. Cassidy Selvaggio, Dkt. 66-2. Exhibits 21-23 are attached to the Declaration of Sean M. Murray submitted herewith.

desired treatment fluid from multiple treatment-fluid containers (shown in blue below). *Id.* at 6:9-18, 15:49-51, 17:5-17.



**Preferred Embodiment of the '052 Patent**

Edge's patented invention also includes a manifold (shown in beige above), a component that can receive fluid from any of the fluid containers and channel that fluid into a single supply conduit (shown in yellow above) that extends to a handpiece (shown in red above) that the user translates across the patient's skin. *Id.* at 2:18-23, 3:45-47, 5:16-19, 6:10-12, 17:5-17; 17:61-18:6. The patented system also contains a vacuum source which, when the user places the handpiece tip against the skin, creates an area of negative pressure inside the tip. *Id.* at 10:58-64. That negative pressure pulls the patient's skin against the handpiece tip. *Id.* at 10:58-67. The negative pressure also draws treatment fluid from the selected container while simultaneously suctioning waste into a waste container. *Id.* at 7:47-60, 10:58-11:4. The multiple treatment-fluid containers allow the physician or esthetician using the device to selectively draw treatment fluid from the containers and thereby craft a customized, multi-step treatment for each patient. *Id.* at 6:12-25, 16:22-47.

Cartessa's Skinwave system is an infringing device that incorporates the technology in the '052 patent.  Like the device described and claimed in the '052 patent, the Cartessa Skinwave has four containers for holding treatment fluid.  Cartessa sells tabletop versions of its device as well as tower-style versions that roll on caster wheels.  The tower-style version of Cartessa's device is shown below, side-by-side with Figure 1 of the '052 patent.



Edge has asserted several claims of the '052 patent against Cartessa's Skinwave device. The present motion for summary judgment raises only Claim 1 of the '052 patent, which recites:

1.  A system for performing a skin treatment procedure, the system comprising:

a console including ***a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container***, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

***wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit***; and

a vacuum source;

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and

***wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit***.

Ex. 1 at column 21 (emphases added to identify disputed limitations).

Cartessa's Skinwave device embodies each of the limitations of Claim 1.  Meyst Decl. ¶ 7.  Indeed, Cartessa does not dispute that the Skinwave satisfies most of the limitations of Claim 1.  Dkt. 76-1 at ¶¶ 16, 18, 20, 40, 43, 50, 53, 55, 56.  Cartessa's noninfringement position rests on two arguments.  First, Cartessa argues that the Skinwave "does not meet the limitation of a manifold in fluid communication with a plurality of containers."   Dkt. 76 at 1.  Second Cartessa argues that the Skinwave as sold does not meet the final highlighted limitation of Claim 1.  *Id.* at 1-2.  Both of these arguments are based entirely on new claim constructions that Cartessa raised for the first time after the Court's claim-construction ruling.  Accordingly, this motion turns on whether Cartessa's two new claim construction arguments are timely and legally correct.

**B.**     **<u>Cartessa's Untimely Claim-Construction Arguments</u>**

Cartessa's noninfringement position is based on two arguments regarding how Claim 1 should be construed.  First, Cartessa argues that a "manifold" must be able to "provide fluid flow from more than one container at a time."  Dkt. 76 at 2.  Second, Cartessa argues that "the claims require" that a user activate the device so that fluid is actually drawn from the fluid container to

the handpiece tip.  *Id.*  To justify this latter construction, Cartessa points to the final limitation of

Claim 1, which contains the phrase "drawing treatment material from the first fluid container or

the second fluid container to the tip via the supply conduit."  *Id.*  Cartessa never proposed either

of these constructions to the Court during the claim-construction process.

      This Court's local patent rules contain specific rules governing the claim-construction

process.  *See* Administrative Order 2012-02.  Parties to a patent dispute must first identify claim

terms that require construction as well as their proposed constructions of those terms.  L.P.R. 11.

The parties must then file opening, opposition and reply briefs on claim construction, and

provide the Court with all evidence that supports their proposed constructions.  L.P.R. 12.

      When Cartessa served its Proposed Claim Terms and Constructions on June 10, 2021, it

did not identify "manifold" as a term requiring construction.  Ex. 21.  The word "manifold"

appeared nowhere in the document.  *Id.*  Nor did Cartessa identify the "drawing treatment

material" limitation as requiring construction.  *Id.*  When the parties submitted their Joint Claim

Chart on July 2, 2021, neither side identified the "manifold" limitation or the "drawing treatment

material" limitation as requiring construction.  Dkt. 35.  And in its claim-construction brief,

Cartessa never even suggested that these limitations should be construed, let alone proposed the

constructions it now advances in opposition to Edge's motion for summary judgment.  Dkt. 40.

      On October 14, 2021, the Court issued an order aimed at reducing the number of claim

terms for construction.  Ex. 22.  The Court stated that, "[p]rior to the Markman hearing, in an

effort to conserve judicial resources and reduce litigation costs, counsel is hereby directed to

meet and confer in a good faith effort to reduce, if possible, the number of terms that are in

dispute."  *Id.*  In response, the parties submitted a joint stipulation identifying seven previously

disputed claim terms that the parties agreed should be given their plain meaning.  *Id.*

The following day, on October 19, 2021, the Court held a claim-construction hearing on the remaining disputed claim terms.  Dkt. 45.  At no point during the hearing did Cartessa inform the Court that it believed the "manifold" limitation or the "drawing treatment material" limitation required construction.  Unsurprisingly, when the Court issued its claim-construction ruling on November 29, 2021, it construed neither of these limitations.  Dkt. 48.

On February 17, 2022, Cartessa served the expert report of Morton Jensen on the issue of invalidity.  Ex. 8.  In arguing that the "manifold" limitation of Claim 1 of the '052 patent claims was taught by a prior-art Shadduck patent, Dr. Jensen adopted the following dictionary definitions, which he considered to be the ordinary meaning of "manifold":

> I understand I am to apply the plain and ordinary meaning of terms in light of the specification unless I am provided another definition through claim construction. I find the dictionary definitions, supplemented by my explanation of the invention elsewhere, of the following terms to be helpful for this limitation: … *A manifold is "a pipe or closed space in a machine that has several openings, allowing liquids and gases to enter and leave"[4] or "a pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes*..."[5]

*Id.* at 14-15 (emphasis added).  Dr. Jensen identified two online dictionaries as the source of his definition.  *Id.* at 15 (citing https://dictionary.cambridge.org/us/dictionary/english/manifold and https://www.collinsdictionary.com/us/dictionary/english/manifold).  However, Dr. Jensen's definitions do not state that a manifold must channel fluid from multiple sources simultaneously.

Dr. Jensen also quoted the deposition testimony of the inventor of the '052 patent, Roger Ignon.  In the quoted testimony, Mr. Ignon stated that he "identified the 'manifold' as the connections between the various bottles and then the outflow from the – the console."  *Id.* at 16. However, Mr. Ignon did not say that a manifold must be able to channel fluid from multiple sources at the same time.  *Id.* at 16-17.  Likewise, in Paragraphs 41 and 42 of Dr. Jensen's report, where he analyzed the prior art Shadduck patent and concluded that it contained the claimed

manifold, Dr. Jensen never stated that the prior-art Shadduck device could draw fluid from two containers at the same time. *Id.* at 17-18. The reason is apparent. Under Dr. Jensen's dictionary definition of "manifold," the prior-art Shadduck device did not need to channel fluid from two containers simultaneously in order to have a manifold.

On April 7, 2022, Edge served the expert report of its engineering expert, Richard Meyst, which responded to Dr. Jensen's invalidity report. Ex. 9. Mr. Meyst agreed that the dictionary definitions adopted by Dr. Jensen accurately reflected the ordinary meaning of "manifold." *Id.* at 17-18. Specifically, Mr. Meyst stated: "A manifold is a well-known structure in mechanical engineering: it is a machine component with multiple inlet/outlet ports for controlling the flow of liquids or gasses. This meaning is reflected in the dictionary definitions cited in Dr. Jensen's report." *Id.* at 17-18 (citing Jensen Opening Rpt. at 15). Mr. Meyst also quoted Dr. Jensen's definition verbatim in a footnote. *Id.* at n. 3. However, Mr. Meyst disagreed with Dr. Jensen's assertion that the prior art Shadduck patent disclosed a "manifold" under the ordinary meaning of the term. *Id.* at 19-23.

On June 21, 2022, Edge submitted a letter to the Court requesting leave to file a motion for summary judgment of infringement of Claim 1 of the '052 patent. Dkt. 67. In its letter opposing Edge's request, Cartessa advanced two new claim-construction arguments that it never presented during the claim-construction process. Dkt. 76. Cartessa argued (1) that a "manifold" must be able to "provide fluid flow from more than one container at a time," and (2) that Claim 1 cannot be directly infringed through the sale of the system, but only by a user who activates the vacuum and draws fluid from the fluid containers. *Id.* However, Cartessa did not attempt to justify its failure to propose these constructions during claim construction or explain why it should be permitted to disregard the dictionary definition of "manifold" adopted by its own expert. *Id.*

## III.  INFRINGEMENT OF CLAIM 1 OF THE '052 PATENT MAY BE RESOLVED ON SUMMARY JUDGMENT

A party infringes a patent if, without authorization from the patent owner, it offers for sale or sells in the United States a product covered by at least one claim of the patent.  *See* 35 U.S.C. § 271(a).  Cartessa undisputedly offers for sale and sells the accused Skinwave in the United States without authorization from Edge.  Infringement therefore turns on whether the accused Skinwave device is covered by a claim of the '052 patent.

Determining whether an accused product infringes a patent claim is a two-part process. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581–82 (Fed. Cir. 1996).  First, the court construes the patent claim, determining its scope and meaning as a matter of law.  *Id.*  Second, the court compares the properly construed claim to the accused product.  *Id.*

Summary judgment is appropriate when no material fact is genuinely disputed and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Here, the parties do not dispute the structure of the accused device or how it functions, but only how Claim 1 of the '052 patent should be construed.  In such circumstances, "[w]here the parties do not dispute any relevant facts regarding the accused product, … but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment."  *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997).  *See also IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1121 (Fed. Cir. 2011).

Summary judgment is an important mechanism for conserving judicial resources when there is no material fact issue for a jury to decide.  The Supreme Court has emphasized:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Accordingly, where the structure of the accused product is not in dispute, and the defendant's noninfringement position is based on an incorrect claim construction, courts will grant summary judgment of infringement.  *See, e.g., General Mills*, 103 F.3d at 983 (affirming summary judgment); *Holmes Grp., Inc. v. RPS Prod., Inc.*, 2010 WL 7867756, at *24 (D. Mass. June 25, 2010) ("The Court has rejected defendant's proffered construction of the disputed claims.  Accordingly, because the accused products contain each of these limitations (the only limitations in dispute), the Court concludes that the [accused products] literally infringe….").

## IV.  UNDER THE PROPER CONTRUCTION OF CLAIM 1, CARTESSA HAS DIRECTLY INFRINGED THE CLAIM AS A MATTER OF LAW

Cartessa's noninfringement position is based entirely on two arguments concerning the construction of Claim 1 of the '052 patent.  The Court should reject these claim constructions and rule that Cartessa has directly infringed Claim 1 as a matter of law.

### A.  Cartessa Waived Its New Claim-Construction Arguments By Failing To Propose Them During Claim Construction

As an initial matter, Cartessa's new constructions of Claim 1 should be rejected as untimely.  The Federal Circuit "generally support[s] a district court's case-management authority to set a schedule for claim construction that requires parties to take positions on various dates and holds the parties to these positions." *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1385 (Fed. Cir. 2016).  A court may therefore find that a party waives a claim-construction argument by failing to raise the argument during the case's claim-construction phase.  *Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that ACS waived any argument with respect to this term by failing to raise it during the claim construction phase. We agree.").

This Court established a detailed claim-construction process in which the parties identified claim terms, disclosed their proposed constructions and supporting evidence, and filed briefs in support of their constructions.  L.P.R. 11, 12; Dkt. 21.  The Court then held a claim-construction hearing October 19, 2021, and issued a claim-construction order on November 29, 2021.  Dkt. 48.  This process allowed the parties to propose claim terms for construction.  It also allowed the Court to make an informed decision about the meaning of those terms and to ensure consistency by construing all disputed terms at once.  The Court's procedure further allowed the parties' experts to know the Court's constructions before their initial reports were due on February 17, 2022, so that they could employ those constructions in analyzing and opining on the disputed issues of infringement and validity.

The clear benefits of this process militate against allowing a party to raise claim-construction arguments after the conclusion of the claim-construction phase.  As the *On Track Innovations* court explained in a case applying the same local patent rules that apply here:

> [T]he Court first rendered its *Markman* decision over a year ago. Prior to that, the Court considered extensive briefing, a technological tutorial, presentations, and oral arguments concerning the disputed terms.  The benefit of these materials are amongst the "[s]ound practical reasons counsel[ing] against construing additional terms based on claim construction arguments raised for the first time in summary judgment briefs.  *Apple, Inc. v. Samsung Electronics Co., Ltd.,* 2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014) (noting that the Court "painstakingly adjudged the parties' claim construction disputes during the claim construction phase based on their in-depth technology tutorials and voluminous submissions of intrinsic and extrinsic evidence").
>
> While courts have the obligation to resolve disputes regarding claim scope, the Court "fulfilled that duty when it provided a thorough claim construction opinion earlier in these proceedings." *Id.* (citing *O2 Micro Int'l v. Beyond Innovation Tech. Co.,* 521 F.3d 1351, 1360 (Fed.Cir.2008)). *See also SanDisk Corp. v. Memorex Products, Inc.,* 415 F.3d 1278, 1292 (Fed.Cir.2005) (upholding district

court's decision to not to hear untimely claim construction arguments due to "broad deference to the trial court's application of local procedural rules in view of the trial court's need to control the parties and flow of litigation before it." (quoting *Genentech, Inc. v. Amgen, Inc.,* 289 F.3d 761, 774 (Fed. Cir. 2002)).

*On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 383–84 (S.D.N.Y. 2015). As in *On Track Innovations*, courts routinely refuse to entertain claim-construction arguments raised after the claim-construction phase. *Id.*; *see also*, *Spigen Korea Co. Ltd v. Ispeaker Ltd*, 2018 WL 6038300, at *19 (C.D. Cal. July 16, 2018) ("Plaintiff's argument is not a factual dispute but a belated claim construction argument…. Indeed, to the extent these 'factual disputes' … are premised on claim construction they are waived."); *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 252045, at *10 (N.D. Cal. Jan. 21, 2014); *Parker-Hannifin Corp. v. Wix Filtration Corp.*, 2009 WL 10689385, at *12 (N.D. Ohio Nov. 6, 2009) ("Because Defendants failed to raise this issue during construction of the claims as required by the court's Order, their argument is untimely.").

By unveiling new claim-construction arguments months after the conclusion of the Court's claim-construction process, Cartessa has flouted the Court's rules and made the claim-construction process a waste of time and judicial resources. For this reason alone, the Court should reject Cartessa's belated claim-construction arguments and rule that Cartessa has directly infringed Claim 1 by offering for sale and selling the Skinwave device. *See Central Admixture Pharmacy*, 482 F.3d at 1356 (affirming finding of waiver); *On Track Innovations*, 106 F. Supp. 3d at 383–84 (refusing to consider the defendant's untimely claim-construction arguments and granting summary judgment of infringement).

**B.     The Court Should Reject Cartessa's Belated Construction Of "Manifold" On The Merits**

Even if this Court were to address Cartessa's new claim construction arguments on the merits, those arguments fail badly.  Cartessa's first argument asserts that, to be a "manifold," a component must be able to channel fluid from two sources simultaneously.  For numerous reasons, the Court should reject this construction of Claim 1 on the merits.

**1.     The parties' experts agreed that the dictionary accurately expresses the ordinary meaning of "manifold."**

Claim terms "are generally given their ordinary and customary meaning" to a person of ordinary skill in the art.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*).

> There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer; or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution.

*Thorner v. Sony Computer Entertainment America* LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Vitronics*, 90 F.3d at 1580).  It is undisputed that the '052 patent contains no express definition of "manifold," and that Edge did not disclaim the full scope of the term's ordinary meaning.  Accordingly, the term should be given its ordinary meaning.

In determining the ordinary meaning of a claim term, "courts can rely on dictionaries so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."  *Imaginal*, 805 F.3d at 1111 (citing *Phillips*, 415 F.3d at 1322–23 (internal punctuation omitted); *see also Mass. Inst. of Tech. v. Shire Pharms., Inc.,* 839 F.3d 1111, 1124 (Fed. Cir. 2016) (the district court properly "construed the term 'three dimensional' according to its accepted, ordinary meaning, as confirmed by dictionary definitions"); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1304 (Fed. Cir. 2007).

In this case, the parties' experts agreed that the dictionary definition of "manifold" accurately expresses the term's ordinary meaning.  Cartessa's expert, Dr. Jensen, recognized that he was "to apply the plain and ordinary meaning of terms in light of the specification unless I am provided another definition through claim construction."  Ex. 8 at 14.  Dr. Jensen relied on dictionaries that define "manifold" as "a pipe or closed space in a machine that has several openings, allowing liquids and gases to enter and leave or a pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes . . ."  *Id.* (punctuation omitted).  Edge's expert, Mr. Meyst, agreed that Dr. Jensen's dictionary definitions reflected the ordinary meaning of the term.  Ex. 9 at 17-18.  Accordingly, if the Court concludes that it must construe "manifold," it should adopt the dictionary definition both parties' experts have approved.  Certainly, the Court should reject Cartessa's new, self-serving construction.  Nowhere does the dictionary – or any other objective source – suggest that a manifold must channel fluid from two sources simultaneously.  Cartessa should not be permitted to advance a claim construction that is inconsistent with the opinion of its own expert.  *See Bayer CropScience AG v. Dow AgroSciences LLC*, 2012 WL 4498527, at *8 (D. Del. Sept. 27, 2012) (rejecting a construction of "biological activity" that was "flatly contradicted … by Bayer's own expert").

The dictionary definition of "manifold" is also supported by the decisions of multiple courts that have construed "manifold" without including any simultaneity requirement.  *See, e.g., Separation Design Grp. IP Holdings, LLC v. Inogen, Inc.*, 2016 WL 7486596, at *12 (C.D. Cal. Oct. 21, 2016) ("A 'manifold,' as it is commonly understood, [is] a collection of passageways, sufficient to control the directional flow of gas."); *Celerity, Inc. v. Ultra Clean Tech. Sys. & Serv., Inc.*, 2007 WL 5734830, at *1 (N.D. Cal. June 19, 2007) (construing "manifold" as "a structure containing a channel or fluid pathway and having openings allowing gases or fluid to

14

enter and exit"); *Cedarapids, Inc. v. Johnson Crushers Int'l, Inc.*, 2005 WL 2086752, at *3 (M.D. Tenn. Aug. 26, 2005) (construing "manifold" as "a fitting or a passage that has a plurality of openings for making connections"); *Frac Shack Inc. v. Fuel Automation Station, LLC*, 300 F. Supp. 3d 1333, 1346 (D. Colo. 2018) (construing "manifold" as "an arrangement of piping having multiple outlets through which fuel is distributed, which may have a valve arrangement at each outlet to control the fuel distributed through that outlet"). Accordingly, the dictionaries, the parties experts, and multiple federal courts are all in accord: the ordinary meaning of "manifold" is not limited to devices that can channel fluid from multiple sources simultaneously. The Court should therefore decline to adopt Cartessa's overly narrow construction of Claim 1.

**2.** **The ordinary meaning of "manifold" is confirmed by the remaining language of Claim 1.**

Cartessa's new construction of "manifold" should also be rejected because it is inconsistent with the remaining language of Claim 1. *See Phillips*, 415 F.3d at 1314 ("the claims themselves provide substantial guidance as to the meaning of particular claim terms" including "the context of the surrounding words of the claim"). Claim 1 requires at least two fluid containers: a "first fluid container" and a "second fluid container." Ex. 1 at 21:15-16. However, the claim never states that the device must be able to draw fluid from these two containers simultaneously. On the contrary, the claim expressly states that "the system is configured to permit a user to select the treatment material from the first fluid container ***or*** the at least second fluid container." *Id.* at 21:37-39 (emphasis added). The claim also states that, when the vacuum source is activated and the handpiece tip contacts the skin, a suction force "draw[s] treatment material from the first fluid container ***or*** the second fluid container to the tip via the supply conduit." *Id.* at 21:42-48 (emphasis added). This language from the claim itself leaves no doubt that fluid may flow from either of two containers separately, rather than simultaneously.

Moreover, the patentee knew how to claim simultaneous action.  The final limitation of Claim 1 states that the vacuum "remov[es] waste from the skin surface via the waste conduit **while** drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit."  *Id.*  But Claim 1 never says that the manifold must be capable of drawing fluid from the first fluid container **while** drawing fluid from the second container.  The language of Claim 1 simply does not support Cartessa's proposed simultaneity requirement.

### 3.    Cartessa's construction would violate the doctrine of claim differentiation.

Under the doctrine of claim differentiation, "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim."  *Phillips*, 415 F.3d at 1314; *see also Hayward Indus., Inc. v. Pentair Water Pool & Spa, Inc*., 722 F. App'x 1049, 1051 (Fed. Cir. 2018) (citing *Liebel–Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 910 (Fed. Cir. 2004)); *Plasmart Inc. v. Wincell Int'l Inc.*, 2007 WL 3355509, at *6 (S.D.N.Y. Nov. 8, 2007).

Claim 6 of the '052 patent depends from Claim 1 and adds the limitation "wherein treatment materials from the first fluid container and at least the second fluid container are delivered to the supply conduit sequentially or simultaneously."  Ex. 1 at 22:1-4.  If Claim 1 already required the skin-treatment system to have the ability to deliver fluid to the supply conduit from both fluid containers simultaneously, as Cartessa urges, there would be no need for dependent Claim 6 to repeat that the system can deliver fluid from two containers "simultaneously."  Rather, Claim 6 would merely state that the system also has the ability to deliver fluid from two containers "sequentially."

In *Plasmart*, the court construed an independent claim directed to a scooter with "a safety wheel which is rotatably mounted to a free end of said supporting arm to support a front portion of said scooter body and prevent said scooter from being flipped over."  *Plasmart*, 2007 WL

3355509, at *4.  The plaintiff argued that "a safety wheel which is rotatably mounted" should be limited to caster-type wheels that are capable of rolling in any direction.  *Id.* at 5.  In rejecting the plaintiff's proposed construction, the court observed that dependent claims expressly added the "universal rolling" limitation that the plaintiff wished to read into the independent claim.  *Id.* at *6 ("said safety wheel is arranged to self-rotate 360 degrees").  Invoking the doctrine of claim differentiation, the court reasoned that, "[b]ecause these claims are dependent on [independent] claim 1, if the limitation that the safety wheel must be a caster were already present in claim 1, there would be no reason to repeat it…." *Id.*

*Plasmart* is highly relevant here.  Cartessa's attempt to import a simultaneity requirement into Claim 1 makes the term "simultaneously" in Claim 6 superfluous.  This "gives rise to a presumption that the limitation in question is not present in the independent claim."  *Phillips*, 415 F.3d at 1314.  Cartessa has no basis to rebut this presumption.  This is yet another reason the Court should decline to adopt Cartessa's untimely construction of the "manifold" limitation.

### 4.    Cartessa's construction would improperly read a feature from the preferred embodiment of the specification into Claim 1.

In its letter brief, Cartessa argues that "the '052 Patent specification describes a multi-modal device, one that allows to choose between both (1) fluid flow from multiple containers and (2) fluid flow from one container."  Dkt. 76 at 2.  Cartessa is correct that, in one of the embodiments described in the specification, the system is configured so that it can draw fluid from multiple containers either sequentially or simultaneously.  Ex. 1 at 6:15-18 ("treatment materials from multiple containers 26 are sequentially or simultaneously applied to the patient's skin").  But the specification repeatedly states that it is merely describing various ***embodiments*** of the invention.  *See, e.g., id.* at 3:51-57 ("FIG. 1 is a perspective view of one embodiment of a skin treatment system."); 6:1 ("In the illustrated embodiment"); 6:12-15 ("In certain

embodiments, the console 12 has a user input device 32 for selecting a treatment material to be passed through the line 20 to the handpiece assembly 18."). The '052 patent never states that the ability to draw fluid from two containers simultaneously is an essential part of the invention, rather than a mere characteristic of an embodiment. On the contrary, the specification states that, "[a]lthough the invention has been disclosed in the context of certain embodiments and examples, it will be understood by those skilled in the art that the invention extends beyond the specifically disclosed embodiments…. Accordingly, it is not intended that the invention be limited, except as by the appended claims." *Id.* at 4-10.

It is fundamental in patent law that claims are not limited to unclaimed features of an embodiment in the specification, a preferred embodiment in the specification, or even the sole embodiment disclosed in the specification. *See Polaris Innovations Ltd. v. Brent,* 48 F.4th 1365, 1377 (Fed. Cir. Sept. 15, 2022) ("It is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.") (citation and punctuation omitted)*; Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1381 (Fed. Cir. 2022); *Evolusion Concepts, Inc. v. HOC Events, Inc.*, 22 F.4th 1361, 1367 (Fed. Cir. 2022); *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1346–47 (Fed. Cir. 2015) ("This court has repeatedly cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification."); *Phillips*, 415 F.3d at 1323; *McCarty v. Lehigh Valley R. Co.*, 160 U.S. 110, 116 (1895) ("if we once begin to include elements not mentioned in the claim, in order to limit such claim ..., we should never know where to stop").

In seeking to limit Claim 1 to devices that can draw fluid from multiple fluid containers simultaneously, a feature of the preferred embodiment not recited in the claim, Cartessa violates

another fundamental canon of claim construction.  This is another reason the Court should reject Cartessa's improperly narrow construction of Claim 1's "manifold" limitation.

## C.  Cartessa's Skinwave Plainly Includes A Manifold

There is no genuine dispute that the accused Skinwave device infringes Claim 1.  The ordinary meaning of "manifold" is "a pipe or closed space in a machine that has several openings, allowing liquids and gases to enter and leave" or "a pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes."  Ex. 8 at 14; Ex. 9 at 17-18.  In the images below from the '052 patent, the manifold is the box-like component shown in beige.  The image on the right, Fig. 15B from the patent, is a cross-sectional view of the manifold that shows the inlet openings for receiving fluid from the fluid containers.  Ex. 1 at 4:64-65.



If this case went to trial, Edge would present the jury with a sample of the manifold in the accused Skinwave device.   Below are two images of the sample.



Meyst Decl. ¶¶ 5-6.  The upper image shows the manifold, a white box-like component.  *Id.*  The

lower image shows the manifold with its (black) fittings in place.  *Id.*

Once the user selects a container and activates the accused device, fluid flows from the selected fluid container to a dedicated inlet opening in the manifold.  In the images above, the four inlet openings are shown in blue, orange, purple and green, respectively.  The fluid exits the manifold at the fifth opening, shown in red above, and passes through the supply conduit to the handpiece.  *Id.* ¶¶ 4-6.  None of this is in dispute.  Thus, there is no dispute that the Skinwave's manifold constitutes a "closed space in a machine that has several openings, allowing liquids and gases to enter and leave."  Likewise, it is indisputably a component with "one outlet and several inlets, for connecting with other pipes."  Accordingly, under the ordinary-meaning construction of "manifold," there is no genuine dispute that the accused Skinwave device satisfies the "manifold" limitation of Claim 1.

In its letter brief, Cartessa argues that Edge's expert, Mr. Meyst, did not sufficiently analyze the accused device.  Dkt. 76 at 1.  Cartessa insists that he should have done destructive testing and reviewed technical drawings.  *Id.*  But Mr. Meyst had no need to perform destructive testing – he merely needed to examine the device and trace the path of the treatment fluid from the fluid containers to the handpiece.  This simple task required very little of Mr. Meyst's decades of mechanical-engineering expertise.  Indeed, after observing the tube extending from the fluid container to the manifold, even a lawyer would recognize that fluid enters the manifold where the tube connects.  Once Mr. Meyst traced the path the fluid takes through the device, he knew the manifold had four inlets and one outlet for channeling treatment fluid to the supply conduit.  Nothing more is required to show that the component constitutes a "manifold."[2]

The parties do not dispute the relevant structure of the accused device: the path the treatment fluid takes through the system, and the presence of the four treatment-fluid inlets and

---

[2]  Mr. Meyst did not review any technical drawings because Cartessa did not produce technical drawings in response to Edge's discovery requests.  Murray Decl. ¶ 8.

one treatment-fluid outlet in the manifold.  Accordingly, because "the parties do not dispute any relevant facts regarding the accused product, … but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *General Mills*, 103 F.3d at 983; *see also IGT*, 659 F.3d at 1121.  The Court should reject Cartessa's untimely and incorrect construction of the "manifold" limitation and rule that the accused Skinwave device infringes Claim 1 as a matter of law.  *See Holmes*, 2010 WL 7867756, at *24.

**D.      The Court Should Not Construe Claim 1 To Require A User To Activate The Device**

Cartessa's second noninfringement argument asserts that Cartessa has not directly infringed Claim 1 because "[t]he claims make the direct infringer" the one who uses the device, not the one who sells the device.  Dkt. 76-1 at 21.  Specifically, Cartessa contends that "the claims require" that a user physically add fluid to the fluid containers and activate the device, so that fluid is actually drawn from the fluid container to the handpiece tip.  Dkt. 76 at 2.  Because Cartessa allegedly ships the accused product without fluid and without having activated the device, Cartessa argues that it cannot infringe Claim 1.  This argument concerning what Claim 1 allegedly *requires* is another untimely claim-construction argument that Cartessa waived by failing to raise the argument during the claim-construction phase.  *See supra*, at 10-12.

Cartessa's untimely argument is also wrong on the merits.  Cartessa misunderstands the function of claims, like Claim 1, which are directed to an *apparatus* rather than a *method*.  As the Federal Circuit has repeatedly explained, "apparatus claims cover what a device *is*, not what a device *does*."  *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) (emphasis in original).  "Infringement of an apparatus claim occurs when the invention is among other things, made or sold in the United States."  *Silicon Graphics, Inc. v. ATI Technologies, Inc.*, 607 F.3d 784, 794 (Fed. Cir. 2010).  "Thus, even absent its use (or

performance), this court has held that an apparatus claim … that is claimed in functional terms is nonetheless infringed so long as the product is designed in such a way as to enable a user of that product to utilize the function without having to modify the product." *Id*.  Cartessa's noninfringement argument is directed to what the Skinwave does when used, not what the Skinwave is.  Thus, this argument is entirely misplaced.

Cartessa's argument purports to be based on the final limitation of Claim 1, which reads:

wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.

Ex. 1 at 21:42-48.  However, this limitation merely describes a function that the apparatus must be capable of performing.  Since a user of the Skinwave may "utilize the function without having to modify the product," the Skinwave infringes.

Moreover, numerous courts have held that, where claim language requires an apparatus to perform a function "when" a user takes action, the claim is satisfied by a device that performs the function when the user takes action; the user need not actually take the action for the apparatus claim to be infringed.  For example, in *PCT Int'l Inc. v. Holland Elecs. LLC,* the asserted claim was directed to an end connector for coaxial cable with a "collapsible band forming an annular rib … ***when said outer barrel is axially compressed***."  2015 WL 875200, at *3–4 (D. Ariz. Mar. 2, 2015) (emphasis added).  The defendant argued that its products did not infringe because, "as sold, the outer barrel has not yet been axially compressed."  *Id.* at 4.  It insisted that "infringement only occurs when someone other than [the defendant] actually takes [an accused] connector and attaches it to a piece of coaxial cable."  *Id.* (punctuation omitted).  The district court rejected this argument:

> [T]he plain language of claim 1 of the '422 Patent specifies that the annular rib is formed **when** the outer barrel is axially compressed. A device having all of the limitations specified in claim 1 thus infringes if the relevant collapsible band forms an annular rib when the outer barrel is axially compressed; the device does not need to actually be compressed as a condition precedent to infringement.

*Id.* (italics in original; boldface added).

In *NetFuel, Inc. v. Cisco Sys. Inc.,* the claims recited software instructions "which **when executed** by a system" performed a method. 438 F. Supp. 3d 1031, 1035 (N.D. Cal. 2020) (emphasis in original). The court ruled that "[t]hese claims require only that the instructions be capable of causing a method to be performed." *Id.* Similarly, in *VirnetX Inc. v. Apple Inc.*, the claim was directed to software that performed certain steps "**when executed**." 2018 WL 10048706, at *11 (E.D. Tex. Aug. 30, 2018), aff'd in relevant part, 792 Fed.App'x 796 (Fed. Cir. 2019) (emphasis added). The district court ruled that the claim recited capability and reiterated that "[a] claim that recites capability and not actual operation may be infringed when it is capable of operating in the claimed mode." *Id.* at 10. The Federal Circuit agreed and noted that, because the accused products were sold with the software installed, "infringement occurs when the party sells those products." *VirnetX Inc. v. Apple Inc.*, 792 F. App'x at 808. Consequently, the plaintiff "was not required to prove that Apple or its customers actually executed [the software,] just that Apple sold devices with [the software] installed." *Id.*

Like the claims in *PCT*, *NetFuel* and *VirnetX*, Claim 1 of the '052 patent requires that the claimed device have the capability of performing specified functions "**when**" it is used. Ex. 1 at 21:42-48. For example, the skin-treatment device of Claim 1 must draw treatment material from the fluid container to the handpiece tip "**when** the vacuum source is activated and the tip contacts the skin surface." *Id.* (emphasis added). This language requires only the capability of performing the recited function when the user takes action, not actual performance of that

function by a user.  *See Intel Corp. v. ITC*, 946 F.2d 821, 832 (Fed. Cir. 1995);  *PCT*, 2015 WL 875200, at *4; *NetFuel*, 438 F. Supp. 3d at 1035; *VirnetX* 2018 WL 10048706, at *11.  It is beyond dispute that the accused Skinwave device is capable of drawing fluid from a fluid container when the vacuum is activated, and that it actually does so during use.  Dkt. 76-1, ¶ 56. Cartessa therefore infringes Claim 1 by importing, selling or offering for sale the accused Skinwave device, even if no one ever unboxes or activates the device.  *See Intel*, 946 F.2d at 832; *PCT*, 2015 WL 875200, at *4; *NetFuel*, 438 F. Supp. 3d at 1035; *VirnetX* 2018 WL 10048706, at *11.  Accordingly, the Court should reject Cartessa's erroneous construction of Claim 1 and rule that Cartessa has directly infringed Claim 1 as a matter of law.

## V.  **CONCLUSION**

For the reasons set forth above, Edge respectfully requests that the Court rule that Cartessa has directly infringed Claim 1 of the '052 patent as a matter of law.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  October 13, 2022     By: */s/ Sean M. Murray*
                              Craig S. Summers (*Admitted pro hac vice*)
                              Email: craig.summers@knobbe.com
                              Ali S. Razai (*Admitted pro hac vice*)
                              Email:  ali.razai@knobbe.com
                              Karen M. Cassidy (*Admitted pro hac vice*)
                              Email: karen.cassidy@knobbe.com
                              Sean M. Murray (*Admitted pro hac vice*)
                              Email: sean.murray@knobbe.com
                              Ashley C. Morales (*Admitted pro hac vice*)
                              Email: ashley.morales@knobbe.com
                              **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                              2040 Main Street, Fourteenth Floor
                              Irvine, CA  92614
                              Telephone: (949) 760-0404
                              Facsimile: (949) 760-9502

                              *Attorneys for Plaintiff*
                              EDGE SYSTEMS LLC

56423674