**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EDGE SYSTEMS LLC

        Plaintiff,

  vs.

CARTESSA AESTHETICS, LLC

        Defendant.

Case No. 2:20-cv-06082-GRB
Hon. Gary R. Brown

**DEFENDANT'S OPPOSITION TO EDGE'S MOTION FOR SUMMARY**
**JUDGMENT OF INFRINGEMENT OF CLAIM 1 OF THE '052 PATENT**

4883-9979-3725.v2

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................1

II.     BACKGROUND .................................................................................1

        A.      Edge's untimely disclosure of expert analysis............................1

        B.      Edge's attempted blame-shifting should be rejected and recognized
                as an admission of failed analysis..............................................3

        C.      Edge cannot create a genuine issue of material fact on the
                existence of a manifold in fluid communication with a plurality of
                containers. ...............................................................................5

III.    EDGE HAS NOT SHOWN THE EXISTENCE OF A MANIFOLD IN
        FLUID COMMUNICATION WITH CONTAINERS ...........................5

        A.      Edge cannot avoid the manifold argument by claiming Cartessa's
                position is a belated claim construction. .....................................5

        B.      Edge's caselaw regarding unconstrued claim terms simply misses
                the point that *unconstrued terms are given their plain and ordinary
                meaning* and *unconstrued terms can be the basis of non-
                infringement.* ..........................................................................6

        C.      Edge misrepresents the evidence each time Edge tells the Court
                that the experts agree that a manifold is the dictionary definition. ...........7

        D.      Edge's position attempts to obfuscate that it is applying a
                construction of manifold according to a non-technical dictionary. ..........10

IV.     CARTESSA HAS NOT DIRECTLY INFRINGED CLAIM 1 OF '052
        PATENT ...........................................................................................12

        A.      Edge cannot even meet its own understanding of a manifold. .................12

        B.      Under the correct understanding of manifold, Edge cannot meet its
                burden ....................................................................................13

        C.      Edge's citation to other court's constructions of manifold has no
                bearing on the present case. .......................................................16

        D.      The claim structure demonstrates simultaneous fluid flow and
                Edge's claim differentiation argument does not counsel otherwise. .........16

        E.      The claims are system claims, and the end user creates the system. .........18

V.      CONCLUSION..................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Acantha LLC v. DePuy Orthopaedics Inc.*, No. 15-C-1257, 2018 WL 1951228, at
  *4 (E.D. Wis. Apr. 25, 2018) ................................................................................ 20

*Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482
  F.3d 1347, 1356 (Fed. Cir. 2007) ........................................................................... 6

*Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293
  (Fed. Cir. 2005) ..................................................................................................... 19

*Eon Corp. IP Holdings v. Silver Springs*, 815 F.3d 1314, 1320 (Fed. Cir. 2016) ....................... 16

*Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1235 (D. Utah
  2013) ..................................................................................................................... 20

*PCT Int'l Inc. v. Holland Elecs. LLC*, 2015 WL 875200 (D. Ariz. Mar. 2, 2015) ..................... 20

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*) ................................... 11

*Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 795 (Fed. Cir. 2010) .......................... 21

I.      **INTRODUCTION**

Edge Systems, LLC's ("Edge" or "Plaintiffs") takes on the difficult task of moving for summary judgment despite its own expert telling Edge its infringement analysis is incorrect. The Court's view of this motion should be simple: Cartessa applies an ordinarily skilled artisan's understanding of manifold. Edge does not. As Edge's expert Richard Meyst says, no ordinarily skilled artisan would use dictionary definitions, as Edge does, to understand manifold because the definitions are simply wrong.

> Q   But the point being an ordinarily skilled artesian [*sic* – artisan]
> is not just going to just rely on the dictionary definition to
> determine whether or not something is a manifold, correct?

> A   That's correct.

The Federal Circuit agrees. Online dictionaries are tools for the linguistic goal of informing the public of the broad contours of word meanings. But in patent analysis, they "systematically" provide "unduly expansive" definitions far out of line with the scope of a patent. Here, Mr. Meyst is right: using an online dictionary definition in lieu of actual analysis is not evidence of a skilled artisan's understanding and does not support infringement.

II.     **BACKGROUND**

    A.      **Edge's untimely disclosure of expert analysis.**

Edge attempts to fill a fatal hole in its infringement analysis by conducting – for the first time – analysis to support the manifold limitation. *See* Meyst Suppl. Decl. Oct. 13, 2022 ("Meyst Supplement"). It is far too late for that.

Edge improperly attempts to add expert analysis far too late and in a manner that prejudices Cartessa, and this untimely disclosure is the subject of a concurrent Motion to Strike. The scheduling order places the end of expert disclosures on April 11, 2022, which the parties agreed to extend to April 28, 2022. *See* Dkt. 49, Corresp. S. Murray and S. Tepera, Mar. 2, 2022.

4883-9979-3725.v2

The Meyst Supplement is not a simple clarification of ambiguities or something that could be deemed innocuous; instead, it is the analysis that he openly conceded through extensive deposition testimony that he did not do for his expert report. The original three reports from Meyst leave a gaping hole in Plaintiff's analysis of manifolds – Mr. Meyst could not even say he so much as "physically touch[ed]" the device he claims is a manifold, let alone performed any analysis of it. Mr. Meyst conceded in every possible fashion that he did not analyze the alleged manifold. Dkt. 69-2, Ex. I, (Dep. R. Meyst at 80:1-81:21; 84:15-24) (Mr. Meyst "do[esn't] know how it is structured on the interior so [he] would be just guessing" as to its internal flow patterns; Mr. Meyst "do[esn't] know and didn't concern [himself]" with what it is made of; Mr. Meyst doesn't know who took the pictures in his report; Mr. Meyst cannot say he even "physically touch[ed] the device"; Mr. Meyst did not do any destructive testing; Mr. Meyst did not detach it to inspect). Now, he attempts to fill gaps in ways that directly contradict his testimony to date.

Mr. Meyst had ample opportunity to perform the analysis and failed at every turn. He provided an original infringement report, a validity report, and a rebuttal infringement report. None had any real analysis of the object Edge calls a "manifold." This is despite Cartessa's indication from its very first discovery responses that the Accused Device did not have a manifold in fluid communication with a plurality of containers and despite Dr. Jensen providing an expert non-infringement report of the same. Still, the Meyst reports contained no analysis.

Dr. Jensen was questioned about the manifold during his deposition. Again, he pointed out there was no evidence of a manifold in the expert disclosures. Again, Edge failed to correct its failures. Mr. Meyst was deposed. A substantial amount of the deposition was dedicated to the absence of analysis related to the manifold, with key admissions including that he could not say he "even touched" the device he calls a manifold. Still, Edge did not seek to supplement. The

parties filed preliminary letters related to summary judgment, where Cartessa moved for summary judgment on the absence of a manifold and Edge cross moved for infringement. Edge's briefing attached a combined forty-six exhibits, *see* Dkt. 69-3, Dkt. 69-4, and Dkt. 73-3, but did not provide any indication of additional analysis of the manifold. The parties argued summary judgment in a multi-hour hearing before the Court, arguing the manifold matter, and the parties rested. Still Edge did not indicate additional analysis was coming.

Now, after three rounds of expert reports regarding manifolds, after Mr. Meyst was deposed twice on the manifold and conceded he did no analysis, after Dr. Jensen was deposed on the manifold, after the preliminary round of summary judgment letters and argument on the manifold, Edge attempts to fix its fatally lacking analysis by providing a declaration of new analysis. If there is anything after an "eleventh hour" attempt, this is it. The violation of the Court's scheduling order and the prejudice to Cartessa is manifest. The Court should not consider the additional analysis.

**B. Edge's attempted blame-shifting should be rejected and recognized as an admission of failed analysis.**

Edge lodges two main complaints on why it failed to analyze the alleged manifold. Edge complains that its ability to analyze was hampered because of discovery timing. *See* Pl.'s Mot. for Summ. J. of Infringement at 21, n.2 (claiming Cartessa never provided technical drawings). Edge also complains that Cartessa's manifold argument is somehow new or untimely. *Id*. at 10.

None of the above complaints justify Edge's failures to meet its evidentiary burdens as a plaintiff in a case in which it had physical possession of the Accused Device prior to ever filing its complaint.

Edge has known since the beginning that the manifold in fluid communication with containers was at issue. From the *very first discovery request* at the outset of the case, in

3

September 2021 in response to the first set of interrogatories, Cartessa stated that it did not infringe the '052 Patent because the Accused Product did not have a manifold in fluid communication with a first fluid container and at least a second fluid container. *See* Ex. A, Resp. to Interrog. 1, Sept. 8, 2021. In Dr. Jensen's opening invalidity report, he analyzed the meaning of a manifold in fluid communication with a plurality of containers, and applied it to the existing art. *See* Dkt. 69-2, Ex. S, (Exp. Rep. M. Jensen ¶¶37-42). In Dr. Jensen's opening noninfringement report, he analyzed a manifold in fluid communication with a plurality of containers and applied it to the Accused Product. *See* Dkt. 69-2, Ex. C, (Exp. Rep. M. Jensen ¶¶ 152-154). In Dr. Jensen's deposition, he responded that the Accused Product did not have a manifold in fluid communication with a plurality of containers. As Dr. Jensen stated: It is "not a manifold, it doesn't work like a manifold and it is not a manifold. It is a matrix or a line of solenoid valves." Dkt. 69-1 Statement of Facts ¶11(Dep. M. Jensen at 215:5-19).

Edge is wrong to attempt to blame-shift to cover its failure to generate evidence of a manifold. <u>First</u>, of course, such a complaint is untimely. Discovery ended in June 2022, *see* Dkt. 49, and Edge never hinted at any alleged failures to produce, let alone filed a discovery motion to support the claims it makes today. <u>Second</u>, in any event, Cartessa is a distributor, not the manufacturer, and does not have manufacturing drawings. <u>Third</u>, Cartessa provided the information of the manufacturer in its initial interrogatory response and a means for contact in its supplemental response. Edge was free to seek discovery from the party that may have technical drawings but failed to do so. *See* Ex. B, Supp. Resp. to Interrog. 5. <u>Fourth</u>, the absence of drawings simply does not excuse the absence of analysis, because Edge has possessed an Accused Device since this case began. Both of Plaintiff's experts list the device in their materials considered and both reports include photographs of it. *See* Dkt. 69-2, Ex. K (Exp. Rep. of R.

4

Meyst), L (Exp. Rep. of E. Duboys) (both with "Exhibit B, Materials Considered . . . HydraCare H2 Device"). Any analysis could be performed on the actual product.

Edge's failures to conduct analysis to support its initial burden are its own.

**C.      Edge cannot create a genuine issue of material fact on the existence of a manifold in fluid communication with a plurality of containers.**

Regardless of the improper addition of expert analysis, Edge still cannot create a genuine issue of material fact regarding the existence of a manifold, let alone prove its presence such that it is entitled to summary judgment. Edge once again shows pictures of a mount and never shows how it would meet an ordinarily skilled artisan's understanding of a manifold.

**III.      EDGE HAS NOT SHOWN THE EXISTENCE OF A MANIFOLD IN FLUID COMMUNICATION WITH CONTAINERS**

**A.      Edge cannot avoid the manifold argument by claiming Cartessa's position is a belated claim construction.**

Edge argues that Cartessa presents a belated claim construction argument and therefore the Accused Device must be understood to have a manifold. Edge is wrong as a matter of law and as a matter of factual deficiency.

Terms that are not construed are given their plain and ordinary meaning to a person of ordinary skill at the time of the invention. "Manifold" was not construed. Therefore, manifold should be given such a meaning.

Cartessa's expert Dr. Morten Jensen's understanding of manifolds to be multi-channeled objects that allow for the convergence of fluids from a plurality of sources (or vice versa) is not a claim construction argument: it is what an ordinarily skilled artisan understands a manifold to mean, the exact task that experts in patent infringement analysis are obligated to perform. His understanding is a meaning that triangulates teachings from the specification of the '052 Patent, his understanding as an engineer, his understanding as a medical professional, the understanding of dictionaries (which he merely deemed "helpful"), the testimony of the inventors, and the

5

structure of the claims. *See* Dkt. 69-2 Ex. C (Exp. Rep. M. Jensen Apr. 7, 2022 ¶¶152-154); Ex. S (Exp. Rep. M. Jensen Feb. 17, 2022 ¶¶37, 39, 60); Dkt. 76-2, Ex. AL (Dep. Trans. M. Jensen May 31, 2022, 300: 1-19).

Edge's expert Mr. Richard Meyst hardly pushed back on this at all. Mr. Meyst, who had only fleeting knowledge of manifolds, nonetheless acknowledged that the manifolds he knew of fit Dr. Jensen's description and those objects that differed from it were not manifolds. For example (and important to this case), Mr. Meyst acknowledged that merely having a single inlet and a plurality of outlets designed for fluid flow did not make an object a manifold. The examples were a garden hose splitter and a flute, both of which met Plaintiff's definition, but neither of which was a manifold. *See* Dkt. 76-1 ¶22, (Dep. R. Meyst 41:12-23, 43:3-23).

Cartessa's understanding is the plain and ordinary understanding of a manifold for the invention in question.

### B. Edge's caselaw regarding unconstrued claim terms simply misses the point that *unconstrued terms are given their plain and ordinary meaning* and *unconstrued terms can be the basis of non-infringement.*

Edge cites several cases in support of its argument that Cartessa is somehow untimely, but none support the position Edge seeks to take. The claim construction process was conducted on terms *meanings* that were in dispute. Neither party offered manifold for construction. Edge's leap that somehow manifold is meaningless and that Edge is relieved of its obligation to demonstrate its presence in the Accuse Device is wholly unsupported.

Edge cites *Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) and includes a misleading quote as a parenthetical to argue that Cartessa has waived an argument on "manifold." In *Central Admixture*, a party did not seek to construe the term "maintaining" at claim construction, but alleged the court erred by failing to construe it. the party waived any right to have the term construed. Cartessa's stance is wholly

different: it does not believe construction of manifold is necessary. There is no waiver of obtaining a construction because Cartessa is not seeking a construction. The reasoning is simple: a manifold is a known thing, and that known thing is not in the Accused Device. A construction that differed from the plain meaning could injure Cartessa.

Edge extensively quotes *On Track Innovations Ltd. v. T-Mobile USA, Inc.*, 106 F. Supp. 3d 369, 383 (S.D.N.Y. 2015) as though it supports Edge's position that it is relieved of analyzing and proving the existence of a manifold. But *On Track* is no different from *Central Admixture*. There, at summary judgment the defendant "ask[ed] that the Court construe" two particular terms to give them certain narrow understandings, justified by an apparent shift in understanding of those terms by the plaintiff. *Id*. at 383. The Court disagreed there was a shift in understanding and disagreed that "any real dispute exists" between the parties regarding their definition. *Id*. at 384. Here, Cartessa is <u>not</u> asking the Court to construe manifold. Nor would such a request make any sense – the plain and ordinary meaning of a manifold is <u>helpful</u> to Cartessa. *On Track* simply stands for the same proposition as *Central Admixture*; a Court is within its discretion to refuse to engage in a late restart of the claim construction process, a request that is not being made here.

### C. Edge misrepresents the evidence each time Edge tells the Court that the experts agree that a manifold is the dictionary definition.

Edge argues that both parties agree that a manifold is anything that meets the online dictionary definitions. *See* Mot. for Summ. J. of Non-Infringement at 13. Edge has repeated this litigation position several times. *See, e.g.*, Dkt. 73 at 1 (alleging "both parties' experts have adopted" the definition); Dkt. 73-1 ¶8 (similar). Edge is wrong.

The parties are required to apply the plain and ordinary meaning manifold as that term is understood by an ordinarily skilled artisan at the time of the invention, as the experts acknowledge. *See, e.g.*, Ex. C, Reply Rpt. R. Meyst at ¶¶24, 26 (noting he must use meaning as

understood by an ordinarily skilled artisan at the time of the invention).

Dr. Jensen never states that a manifold is everything that fits within the non-technical dictionary definition. Instead, to deduce the term's meaning for the present case, Dr. Jensen cited numerous pieces of intrinsic and extrinsic evidence, as the Federal Circuit requires, in understanding the term manifold. In the invalidity report, Dr. Jensen cited his experience as an engineer and medical professional, his work in the field, the testimony of the patentees, and non-technical dictionary definitions. *See* Dkt. 69-2, Ex. S (Exp. Rep. M. Jensen Feb. 17, 2022 ¶¶37-42).The dictionary definitions were deemed "helpful" by Dr. Jensen, and ultimately analysis of the prior art '232 Patent did not require more for Dr. Jensen's determination that it taught a manifold. *See id*. at ¶147.

Mr. Meyst likewise does not cite the dictionary definition in his report, and in fact did nothing to understand the term. His report identifies that he must analyze from the perspective of an ordinarily skilled artisan, *see* Dkt. 69-2 Ex. K (Exp. Rpt. R. Meyst at ¶31), but never even attempted to do so with respect to manifold (nor any other term). Instead, he simply drew arrows to the mount and labeled it a manifold. *Id*. at 77, ¶71.

Mr. Meyst was deposed regarding the dictionary definitions and whether they informed how an ordinarily skilled artisan would understand the term manifold. The questioning was direct, and the answers were an unequivocal that the dictionary does not provide the correct interpretation. The example provided was a garden hose splitter. Mr. Meyst openly acknowledged that matters that fit within the non-technical dictionary definition of a manifold were not in fact manifolds.

```
 6        Q   BY MR. TEPERA:  Can you tell me what it is
 7   that you see in Exhibit 3?
 8        A   It is, as it says, it is a garden hose
 9   splitter.  It has a place that -- the tip of the
10   outlet of a hose going into the inlet and it --
11   sorry.
12        Q   I'm sorry, I thought you were done with
13   your answer.  I didn't mean to speak over you.
14            The way that these function typically is
15   you screw them onto a faucet, fluid comes in one of
16   the paths and they're divided into two different
17   outlets, right?
18        A   Yes.
19        Q   And that would meet the definitions that
20   Dr. Jensen provided from the dictionary as to what
21   a manifold is, correct?
22        A   I think so, but I would not call this a
23   manifold.
```

Dkt. 76-1 ¶22 (Dep. R. Meyst at 43:6-23; Dep. Ex. 3).

The point was not lost on Mr. Meyst: an ordinarily skilled artisan cannot solely rely on the dictionary definition to understand manifold, a proposition to which Mr. Meyst readily agreed.

> Q   But the point being an ordinarily skilled artesian [*sic* – artisan]
> is not just going to just rely on the dictionary definition to
> determine whether or not something is a manifold, correct?
>
> A   That's correct.

*Id*. While rejecting Edge's litigation position of only using an online dictionary, Mr. Meyst appeared to endorse the *proper* technique for determining the meaning of manifold as Dr. Jensen did, triangulating through different allowable sources of information. Dkt. 69-2 Ex. G (Dep. R. Meyst at 43:24-44:3) (acknowledging that "the dictionary definition of a manifold is not all the information that you need," and instead "[y]ou want to have as much information as possible.").

The fact that Edge must continually misrepresent the state of the evidence is telling. Edge can only attempt a colorable argument of infringement when applying a construction that its technical expert expressly disclaimed. As Federal Circuit *en banc* repeatedly warned in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) and as Cartessa extensively briefed in its concurrent Motion, such a technique "systematically cause[s]" terms to be interpreted in an

"unduly expansive" manner such that even a garden hose splitter and (allegedly) a mount could be considered a manifold, even as the parties' experts agree otherwise. Def. Mot. for Summ. J. Non-Infr. at 13 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*)).

**D.     Edge's position attempts to obfuscate that it is applying a construction of manifold according to a non-technical dictionary.**

Edge's aggressive argument that Cartessa is wrong in applying an ordinarily skilled artisan's understanding of manifold raises the question as to why *Edge* gets to apply a nontechnical dictionary definition for purposes of its analysis. The reality is that *both* parties are attempting to apply an understanding of manifold to the device at issue, but only Cartessa's understanding purports to be an ordinarily skilled artisan's understanding, whereas Edge's understanding is admittedly rejected by skilled artisans.

Edge is forced to construe and apply the meaning of a manifold to conduct its infringement analysis. Edge is forced to do so because otherwise there would be no chance of raising a genuine issue of material fact that a manifold exists: no one calls the mount a manifold, no one describes the function of the mount as being that of a manifold, no manuals – or any other papers – for the Accused Device refer to the mount as a manifold.

Instead, Edge chooses a construction that is both factually and legally lacking. It applies some amalgamation of two different dictionary definitions that were cited by Dr. Jensen in helping him understand the term, dictionary definitions that Edge cherry-picked from the multiple pieces of evidence Dr. Jensen used to understand the term, and definitions that its own expert said an ordinarily skilled artisan would not rely on. *See* Dkt. 69-2 Ex. C (Exp. Rep. M. Jensen ¶147), *see also* Ex. F (Exp. Rep. R. Meyst ¶ 53, n.3). Moreover, the amalgamation is from two general purpose non-technical online dictionary definitions, a source that the Federal Circuit has said is not usable for these purposes.

Edge suggests the non-technical, online dictionary definitions of manifold is proper. But the Federal Circuit's *en banc* opinion on claim interpretation has repeatedly rejected that technique, for the exact reason that it is improper in this case: a Court should not look to a dictionary editor whose task is "aggregating all possible definitions." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (*en banc*). With "[g]eneral dictionaries, in particular," it is "inevitable" that the definition "will extend beyond the construction of the patent that is confirmed by the avowed understanding of the patentee." *Id*.

Here, it is particularly true that the online, non-technical dictionary definitions cannot be the sole source of information because the two offered definitions *themselves* are incompatible with *each other*. One definition used is "a pipe or closed space in a machine that has several openings, allowing liquids and gases to enter and leave," while the second is "a pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes." *See* Pl.'s Mot. for Summ. J. Infr. at 19. The first definition contemplates an object with multiple inlets and multiple outlets as a manifold, while the second requires one inlet or outlet. The first definition contemplates a "closed space" being a manifold while the second requires a "pipe." The first definition requires that a manifold be "in a machine," the second does not. The second definition requires that the manifold be "for connecting with other pipes," the first does not.

Incredibly, Edge asserts that these two definitions – which themselves would require different proofs to satisfy – are "the" plain and ordinary meaning of manifold, *see id.* (citing both definitions as the plain and ordinary meaning), and attempts to provide evidence that the mount fits both definitions. *Id*. at 21.

Edge offers no legal support for its litigation position that, in the face of there being no construction of a term, the parties should default to whatever nontechnical dictionary definition

suits an immediate need. The law is in fact the opposite: the meaning is the plain and ordinary meaning to an ordinarily skilled artisan at the time of the invention. *See, generally, Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).

## IV.   CARTESSA HAS NOT DIRECTLY INFRINGED CLAIM 1 OF '052 PATENT

### A.   Edge cannot even meet its own understanding of a manifold.

Edge failed to meet even its incorrect understanding of a manifold because Edge alleges a manifold is a pipe and immediately deletes that part of the definition. As discussed above, Edge has taken a convoluted process to adopt an understanding of manifold in a manner rejected by the Federal Circuit and its own experts. *See supra*. But even if Edge's understanding were correct, it provides no evidence that the Accused Device meets the limitations.

Edge claims that the dictionaries provide the appropriate understanding of "manifold," that it be a "pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes." Pl.'s Mot. for Summ. J. of Infr. at 19. Notably, this object must be, according to Edge's position, "a pipe."

> **C.   Cartessa's Skinwave Plainly Includes A Manifold**
>
> There is no genuine dispute that the accused Skinwave device infringes Claim 1.  The ordinary meaning of "manifold" is "a pipe or closed space in a machine that has several openings, allowing liquids and gases to enter and leave" or "a pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes." Ex. 8 at 14; Ex. 9

*Id.* Edge alleges this definition is met by a very-obviously block-shaped object in the Accused Device, includes no allegation that it is "a pipe," and labels it "manifold". *See id.* at 20.

In performing its analysis, Edge cuts off the very definition that it itself provided as the meaning of manifold just two pages before. Whereas the definition states that a manifold is "a pipe . . .," Edge skips that portion – as fatal to its analysis – and simply quotes the parts of the

language it likes. Through clever sentence structure, Edge removes the requirement that a manifold be "a pipe."

> Once the user selects a container and activates the accused device, fluid flows from the selected fluid container to a dedicated inlet opening in the manifold. In the images above, the four inlet openings are shown in blue, orange, purple and green, respectively. The fluid exits the manifold at the fifth opening, shown in red above, and passes through the supply conduit to the handpiece. *Id.* ¶¶ 4-6. None of this is in dispute. Thus, there is no dispute that the Skinwave's manifold constitutes a "closed space in a machine that has several openings, allowing liquids and gases to enter and leave." Likewise, it is indisputably a component with "one outlet and several inlets, for connecting with other pipes." Accordingly, under the ordinary-meaning construction of "manifold," there is no genuine dispute that the accused Skinwave device satisfies the "manifold" limitation of Claim 1.

Pl.'s Mot. for Summ. J. of Infr. at 21 (removing from the definition of manifold "**a pipe with** . . . one outlet . . ." and converting the definition to some more litigation-friendly position).

Needless to say, there is nothing in the evidence, even in Mr. Meyst's late-provided declaration, which indicates that the block-shaped mount is a "pipe." To remove any doubt, the very dictionaries that Edge relies upon for the definition of manifold define a pipe as "a tube . . ." or "round . . . "[1] and this block-shaped object is neither. Nor is there justification under any proffered statement of law that Edge can put forth a definition, truncate the definition, then claim that allegedly meeting a truncated definition meets the requirement that the Accused Device meet all limitations. Edge has not shown the existence of a manifold even under its *post hoc* construction and is not entitled to summary judgment.

### B. Under the correct understanding of manifold, Edge cannot meet its burden

A manifold as an ordinarily skilled artisan would understand it in the context of the '052

---

[1] https://dictionary.cambridge.org/dictionary/english/pipe;

https://www.collinsdictionary.com/dictionary/english/pipe

Patent has the features of allowing fluid to be intermixed as it is translated to the outlet. As Dr. Jensen notes, that understanding accords with the specification, the dictionary definitions, his knowledge as an engineer, his knowledge as a medical expert, patentee testimony, and it is in line with the claim structure. It is ultimately borne out by the fact that the product Edge produced under the '052 Patent actually has such a feature.

Cartessa's expert opined that there was no manifold in fluid communication with a plurality of containers in his expert report. His reasoning depending on multiple things; among the points he makes is that the Accused Device did not allow for fluid flow from a plurality of containers at once. This is required in the claims both *implicitly* (because that is what a manifold is) and *explicitly* (because the claim states that the manifold is in fluid communication with a first "and" second fluid container (claim 1) or "at least two" fluid containers (claim 11)).

The absence of an ability to intermix fluids or draw fluids from multiple containers at once is not in dispute. Dr. Jensen analyzed the Accused Device, operated it according to its instructions and ran its software. The Accused Device had no such ability. Dr. Jensen checked for any ability to override its functions. It had none. That aspect is not in dispute. *See* Dkt. 76-1 ¶10.

Edge cites Dr. Jensen's invalidity report, and the absence of discussion of simultaneous fluid flow, as alleged evidence that a manifold does not operate in such a way. See Pl.'s Mot. for Summ. J. of Infr. at 7. The argument fails for two reasons. <u>First</u>, and most obviously, is that unnecessary analysis is excluded from expert reports. Dr. Jensen provided sufficient evidence that the '232 Patent taught a manifold by identifying a structure that only exhibited features and behaviors consistent with being a manifold and by observing that the structure did not exhibit feature or behaviors inconsistent with being a manifold. Simultaneous flow is self-evident in the

'232 Patent: it shown in virtually every image, discussed throughout the disclosure, and a part of a number of claims. *See, e.g.*, Dkt. 76-2 Ex. AK (U.S. Pat. No. 6,162,232) Figs. 4, 5A, 5B, 8 (each showing simultaneous streams from multiple containers), *id.* at 10:56-11:53 (discussing technique for simultaneous flow). Indeed, Edge relies on the existence of simultaneous flow to argue the '232 Patent does not invalidate. *See, e.g.*, Pl.'s Mot. for Summ. J. of No Invalidity at 14 (discussing the "intermix[ing]" of fluids from different containers and showing Fig. 5 with intermixing of fluids from a plurality of sources). When questioned in his deposition, Dr. Jensen pointed out that the '232 Patent manifold had all the necessary characteristics of a manifold. *See* Dkt. 76-1 ¶67 (Dep. M. Jensen at 271:5-273:13). <u>Second</u>, Edge's criticism is a non-sequitur. Analysis of a invalidity report, when a party opines what a piece of art discloses, differs from analysis of a non-infringement report, when a party discusses what a device lacks. It is often sufficient to describe certain features to positively identify a limitation while describing other features to conclude of the non-existence of that limitation (*e.g.*, proving a sneaker is a shoe because it has laces, a tongue and goes on one's foot versus proving a sock is not a shoe because it does not have a sole). A manifold has certain fundamental aspects regardless of where it is discussed, and Edge has provided <u>no evidence</u> to contradict that a manifold allows for simultaneous fluid flow. *See, e.g.,* Dkt. 69-2, Ex. G (Dep. R. Meyst at 64:1-12) (cannot think of a single example of a manifold that does not allow for simultaneous fluid flow). Edge's critique of Dr. Jensen's invalidity expert report does not show otherwise.

Because the features that are inherent to a "manifold in fluid communication with a first fluid container and a second fluid container" were not present in the Accused Device, it does not meet that limitation.

C.   **Edge's citation to other court's constructions of manifold has no bearing on the present case.**

Edge cites other cases that construed the term manifold, but none impact the present litigation in any way. *See* Pl.'s Mot. for Summ. J. of Infr. at 14.

First, it does not appear that Edge is actually advocating that the Court adopt any of the constructions provided. Nor should the Court. Each of the different cases involved different patents and different intrinsic records—the best evidence for claim term meaning. "Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 3d at 1315. Moreover, the claim constructions provided in those cases are those that are designed to resolve the dispute at issue in that case. *See Eon Corp. IP Holdings v. Silver Springs*, 815 F.3d 1314, 1320 (Fed. Cir. 2016) (constructions must actually resolve the dispute between the parties). With different parties asserting different patents against different accused products, it is of little surprise that the construction does not address the dispute in the present suit. Here the record supports Dr. Jensen's understanding: the patent drawings allow for simultaneous delivery of fluid, the specification shows simultaneous delivery of fluid, the claim structure implies simultaneous delivery of fluid, and a manifold as known by the engineers allow for simultaneous delivery of fluid. The focus of the dispute in the present case is the simultaneous delivery of fluid; Edge's cited cases are otherwise.

What little import the cases have suggests that manifold can be construed differently given the context: Edge cites four cases and the Courts generated four different constructions. None adopt the dictionary definitions that Edge cites. Such a result contradicts Edge's assumption that its nontechnical definition must somehow govern.

D.   **The claim structure demonstrates simultaneous fluid flow and Edge's claim differentiation argument does not counsel otherwise.**

Edge argues that claim differentiation requires the result it seeks, *see* Pl.'s Mot. for

Summ. J. of Infr. at 16, but the doctrine has little applicability here where the claims are not otherwise identical in scope. Instead, the claim structure supports Cartessa's understanding. They are written to distinguish between *actual* fluid communication (the independent claims) and *potential* fluid communication based on the position of a switch (dependent claims).

As discussed in Cartessa's concurrent non-infringement motion, the claim structure requires actual fluid communication between the manifold and the fluid containers in claims 1 and 11, and reserves potential fluid communication (e.g., fluid communication that can be broken by a valve) for claims 5, 10, and 17. *See* Def.'s Mot. for Summ. J. of Non-Infr. at 7. This difference is captured in the words that the manifold must be "configured to be placed" in fluid communication in the dependent claims, whereas the manifold *is* in fluid communication with the containers in the independent claims. The relevant language of Claim 1 is below:

> a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container,

The contrasting language of Claim 5 is below, which differs in that the manifold is *configured to be placed* in fluid communication as opposed to actually being *in* fluid communication.

> 5. The system of claim 1, wherein the manifold is ***configured to be placed*** in fluid communication with at least four fluid containers.

The invention of the '052 Patent is "configured to be placed" in fluid communication by switching a valve that allows for fluid flow from the container through manifold. Those switches are highlighted in green in Plaintiff's motion. *See* Pl.'s Mot. for Summ. J. of Infr. at 3.

The patentee makes this distinction *three times*, including the "configured to be placed" language once in each of claims 5, 10, and 17. Roger Ignon, the inventor of the '052 Patent himself, agreed that when valves are closed, areas are not in fluid communication with each other. John Shadduck, the inventor of the Shadduck patents, likewise agreed. *See* Doc. 76-1 at

¶27 (Ignon agreeing "so long as the valves are open, they're in fluid communication.  If they're closed, it's not in fluid communication;" Shadduck agreeing when "you turn the valve and two areas of no more – are no longer in fluid communication with each other").

Only in the dependent claims is the manifold "configured to be placed" in fluid communication with the fluid containers. As such, only in those claims is the switch contemplated. In the independent claims, the manifold *is* in fluid communication with a first and second container. There is no switch that stops flow in the independent claims. The '052 Patent therefore claims a multimodal device and the Court should not read the claim to read on device that prevents simultaneous fluid flow.

Edge looks to claim 6 to argue claim differentiation favors its position. But Edge over-relies on weak evidence. Claim 6 differs from Claim 1 in that it *locates* the flow: per the claim language, Claim 6 limits Claim 1 such that flow "to the supply conduit" is either sequential or simultaneous. Moreover, Claim 6 speaks to the fluid behavior *after* the manifold, and does not discuss at all whether the manifold is in actual fluid communication with the containers. This narrows the dependent claim by reading out embodiments where, for instance, a post-manifold valve would affect fluid flow before the supply conduit. Claim 6 is not redundant of Claim 1. The Federal Circuit "decline[s] to apply the doctrine of claim differentiation where, as here, the claims are not otherwise identical in scope." *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016). So too should this Court.

E.   **The claims are system claims, and the end user creates the system.**[2]

Edge argues that the end user is not the direct infringer, and contends the patent only speaks in terms of *capability* instead of actual arrangement. Pl.'s Mot. for Summ. J. of Infr. at 22. Edge is

---

[2] This section extends beyond 20 pages Defendant understands it is limited. Plaintiff utilized 25 pages and additional space was necessary to address the additional arguments. To the extent necessary, Defendant will seek leave for the additional pages.

wrong. The claims, and Edge's evidence regarding Cartessa, are directed at making a manufacturer of parts that can be arranged in an infringing manner an *indirect* infringer.

Claim 1 of the '052 Patent claims a system such that "when" the vacuum is activated, "suction force is created," resulting in "removing waste" and "drawing treatment material" from a container. Dkt. 69-2 Ex. A (U.S. Pat. No. 9,550,052) Claim 1. As is briefed in Cartessa's concurrent summary judgment motion, that system is created only if someone meets the structural requirement of taking the Cartessa product, filling the bottles with fluid, taking the handpiece, and orienting it on a person in a particular way. Until that point, the Accused Product will not remove waste or draw treatment material "when" a vacuum is activated. *See* Def's Mot. for Summ. J. of Non Infr. at 17. The claimed system does not exist before.

The case is controlled by *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005), which makes the end user (there a surgeon) the direct infringer instead of the seller of medical equipment because the claims required connection between an anchoring means and bone. Thus, the seller of the equipment, despite it being *capable* of being connected to the bone, was not the infringer.

*Cross Medical* takes on a similar argument that Edge makes here: mere capability does not suffice for infringement depending on the claim language. Def.'s Mot. for Summ. J. of Non-Infr. at 24. *Cross Medical* rejected arguments based on capability and distinguished cases that hold mere capability did so because of the specifics of the claim language at issue. *See Cross Medical,* 424 F.3d at 1311. As the *Cross Medical* Court stated in rejecting the capability argument, "the claim does not require that the interface be merely 'capable' of contacting bone; the claim has a structural limitation that the anchor seat be in contact with bone." *Id.* So too with the '052 Patent: the claim is directed to a system with components in a particular structural arrangement. That arrangement is such that "when" a certain action occurs (the vacuum is turned on) a particular reaction occurs (fluid is drawn and waste is removed). That structural arrangement of elements does not occur until, if ever, another

19

person fills bottles and positions a tip on a user such that the vacuum will transmit through the system to draw fluid and remove waste. Only at that point could the system be complete. Many cases are in accord. *See, e.g.*, *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 970 F. Supp. 2d 1229, 1235 (D. Utah 2013); *Acantha LLC v. DePuy Orthopaedics Inc.*, No. 15-C-1257, 2018 WL 1951228, at *4 (E.D. Wis. Apr. 25, 2018) ("Just as in *Cross Medical*, [the] claimed device is not complete until the three elements of the product . . . are assembled.").

The claims are not stated as capability but as a structural limitation: they must be physically interconnected in a system such that "when" the vacuum is triggered, a result happens. Cartessa does not make, use, sell, or offer for sale, that system. *See* 35 U.S.C. §271. As with *Acantha*, Cartessa is entitled to judgment as a matter of law because the mere presence of the individual structures in the claim does not meet the claim language; instead, "the claimed device is not complete until the [various components, such as the liquid] are assembled" and placed in a particular orientation on a client. *See Acantha*, 2018 WL 1951228, at *4.

Edge's cases are distinguishable on the facts. Edge relies heavily on *PCT Int'l Inc. v. Holland Elecs. LLC*, 2015 WL 875200 (D. Ariz. Mar. 2, 2015). But the difference appears even in the block quote provided by Edge. In that case, and emphasized by Edge, a device would infringe if it were sold in a condition that an "annular rib is formed *when* the outer barrel is axially compressed." *See* Pl's Mot. for Summ. J. of Infr. at 24. The defendant did so: the product that it sold, "when" compressed, behaved as claimed. *See PCT Int'l Inc.,* 2015 WL 875200, at *4. Thus, the seller infringed.

That condition is lacking with Cartessa. The product that Cartessa sells is not a system that behaves as claimed unless and until an operator chooses to structurally arrange the elements by adding fluid and placing it on a client in a particular orientation. As stated above, as is admitted by Mr. Meyst, and as distinct from *PCT*, "when" a vacuum is activated in Cartessa's possession, no fluid is drawn and no waste is removed. *See* Dkt. 69-2, Ex. I (Dep. Tr. R. Meyst at 268: 5-18).

20

*Silicon Graphics* is the same. The defendant sold software that had the capability of infringing. The Court cited language that infringement was possible because one would "activat[e] means that are *already present in the underlying software.*" *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 795 (Fed. Cir. 2010) (emphasis in original). That distinction is key: the '052 Patent claim language does not allow for infringement based on what is "already present" with Cartessa. Instead, structural limitation of a particular arrangement of the elements is required.

Edge's case law does not control here because the claim language is specific to actual outcome, not potential outcome. Only the end user, if anyone, can be a direct infringer.

## V.    CONCLUSION

The Court should deny Plaintiff's motion for summary judgment.

21

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

DATED: November 3, 2022

By: _____

Steven Tepera (24053510)
steven.tepera@pillsburylaw.com
Aya Hatori
aya.hatori@pillsburylaw.com
401 Congress Avenue, Suite 1700
Austin, TX 78701-3797
Phone: +1.512.580.9651
Fax: 512.580.9601

David G. Keyko (New York Bar No. 1309814)
david.keyko@pillsburylaw.com
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212-858-1604
Fax: 212-858-1500

*Attorneys for Defendant:*
*Cartessa Aesthetics, LLC*

22

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above document has

been served upon all counsel of record via email on November 3, 2022.

*/s/ Steven P. Tepera*

Steven P. Tepera