**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDGE SYSTEMS LLC, | ) <br> ) <br> ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 1:20-cv-06082 <br> ) |
| CARTESSA AESTHETICS, LLC, | ) <br> ) |
| Defendant. | ) <br> ) |

**DECLARATION OF AYAKA HATORI IN SUPPORT OF CARTESSA AESTHETICS, LLC'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 9,550,052**

I, Ayaka Hatori, do hereby declare:

1.      I am an attorney with the law firm of Pillsbury Winthrop Shaw Pittman LLP and am counsel of record for Defendant Cartessa Aesthetics, LLC ("Cartessa" or "Defendant"). I have personal knowledge of the matters set forth in this declaration and, if called as a witness, could and would testify to those facts under oath.

2.      Attached hereto as **Exhibit A** is a true and correct copy of Docket item 69 Cartessa's Letter Motion entered June 21, 2022.

3.      Attached hereto as **Exhibit B** is a true and correct copy of Docket item 85, Minute Entry for Proceedings Held before Judge Gary R. Brown entered September 15, 2022.

4.      Attached hereto as **Exhibit C** is a true and correct copy of U.S. Patent No. 9,550,052.

5.      Attached hereto as **Exhibit D** is a true and correct copy of Docket item 73.1 Rule 56.1 Statement Plaintiff Edge's Response to Defendant Cartessa's Statement of Facts entered July 6, 2022.

6.      Attached hereto as **Exhibit E** is a true and correct copy of Expert Report of Dr. Morton Jensen filed April 7, 2022.

7.      Attached hereto as **Exhibit F** is a true and correct copy of Deposition Transcript of Dr. Morton Jensen taken May 26, 2022.

8.      Attached hereto as **Exhibit G** is a true and correct copy of Deposition Transcript of Richard Meyst taken May 31, 2022.

9.      Attached hereto as **Exhibit H** is a true and correct copy of Expert Report of Richard Meyst filed February 17, 2022.

10.      Attached hereto as **Exhibit I** is a true and correct copy of HydraTouch User Manual bearing bates number CARTESSA_00323-354.

11.      Attached hereto as **Exhibit J** is a true and correct copy of Expert Report of Richard Meyst filed April 28, 2022.

12.      Attached hereto as **Exhibit K** is a true and correct copy of Expert Report of Richard Meyst on validity filed April 7, 2022.

13.      Attached hereto as **Exhibit L** is a true and correct copy of Deposition Transcript of Roger Ignon taken January 6, 2022.

14.      Attached hereto as **Exhibit M** is a true and correct copy of Deposition Transcript of John Shadduck taken January 11, 2022.

15.      Attached hereto as **Exhibit N** is a true and correct copy of the Prosecution History of U.S. Patent No. 9,550,052.

16.      Attached hereto as **Exhibit O** is a true and correct copy of Expert Report of Dr. Morton Jensen filed February 17, 2022.

17.     Attached hereto as **Exhibit P** is a true and correct copy of Docket item 073 Response Letter in Opposition to MSJ entered July 6, 2022.

18.     Attached hereto as **Exhibit Q** is a true and correct copy of Deposition Transcript of Richard Meyst taken May 27, 2022.

19.     Attached hereto as **Exhibit R** is a true and correct copy of Deposition Transcript of Theodore Papagiannis taken January 10, 2022.

20.     Attached hereto as **Exhibit S** is a true and correct copy of Plaintiff's Infringement Contentions filed April 19, 2021.

21.     Attached hereto as **Exhibit T** is a true and correct copy of Expert Report of Dr. Duboys filed February 17, 2022.

22.     Attached hereto as **Exhibit U** is a true and correct copy of Docket item 48 Markman Order entered November 29, 2021.

23.     Attached hereto as **Exhibit V** is a true and correct copy a photo of Parker Solenoid Valves from Exhibit 7 of Deposition of Richard Meyst taken May 31, 2022.


Further declarant sayeth not.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed October 13, 2022, in Santa Clara, California.


/s/ *Ayaka Hatori*
Ayaka Hatori

3

Ex.



Pillsbury Winthrop Shaw Pittman LLP
401 Congress Avenue, Suite 1700  |  Austin, TX 78701-3797  |  tel 512.580.9600  |  fax 512.580.9601

Steven Tepera
tel:512.580.9651
steven.tepera@pillsburylaw.com

June 21, 2022

Hon. Gary R. Brown
U.S. District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722-9014

Re: Edge Systems, LLC v. Cartessa Aesthetics, LLC, Cause No. CV-20-6082 (GRB) (ST)

Dear Judge Brown,

Pursuant to Your Honor's local rules, Cartessa request leave to move for summary judgment of non-infringement of each asserted claim of the four patents-in-suit and the defense of marking. Cartessa also request leave to exclude Edge's damages expert as a predicate to summary judgment on that matter.

No reasonable jury could find all limitations of any claims of any of the patents-in-suit were found in the accused device. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000). U.S. Patent No. 9,550,052 describes and claims a multi-modal product: it can selectively draw treatment fluid from one container or multiple containers by use of a manifold. A manifold allows for the combination of fluids from multiple different sources into one conduit or alternatively dividing fluids from a single source into multiple different conduits. This understanding is captured in the claims both by the word "manifold" and the language that requires the manifold be in "fluid communication with a first fluid container and at least a second fluid container" (claim 1) or in "fluid communication with at least two containers" (claim 11). The specification describes an invention in accordance with that understanding, and the Plaintiff's products function accordingly.

The accused device does not meet those limitations and does not operate in a like manner. The accused device is not multi-modal. Instead of a manifold in fluid communication with a plurality of containers, it has a matrix of solenoid valves that control fluid flow which allows flow from a single container at a time.

Moreover, the '052 Patent is written such that the end user is the direct infringer. It describes a "system" including fluids, having a vacuum, and describing the flow required when the vacuum is activated. Cartessa is a reseller, not a user, and never completes the system as claimed. Edge's

Michael Mellott
June 21, 2022
Page 2

experts accuse Cartessa of "teaching" and "instructing" others to complete the system by adding fluids and utilizing the vacuum – classic indications of induced infringement. While Cartessa denies any infringement, the claims and the evidence relied upon by Edge only point to induced infringement of this patent.

U.S. Patent Nos. 6,641,591, 8,066,716, and 8,337,513 (the "Shadduck patents") stem from a common specification and are drawn to the use of a physical structure to translate along the skin to remove dead skin cells. This appears in the claims as structures that are "sharp" or elements that "abrade." At least one of those two limitations exist in each of the asserted claims.

The accused device does not remove skin through abrasion or physically translating some sharp apex across the skin. The accused devices are *chemical* peel devices that circulate exfoliating liquid solutions over the skin to remove dead cells and clean the skin. Because the device is a chemical peel device, the structures of the accused device have no abrading function – they are rounded. The structures are not configured to abrade, they are configured to direct fluid flow. Plaintiff fails to provide any evidence of sharpness and instead avoids the plain and ordinary meaning of the term altogether. Plaintiff's attempt to fit the accused product within the scope of the claims so extreme that its expert testified a dome – a perfectly round feature – is sharp.

Defendant is entitled to summary judgment on its affirmative defense of marking on all patents-in-suit. *See Bombardier Recreation Prods. Inc. v. BRP U.S. Inc.*, 950 F.3d 860 (Fed. Cir. 2020). Plaintiff has chaotically attempted to mark its products but never approached the requirements of the marking statute. At the outset, no product is physically marked; Edge only relies on virtual marking. Edge's marking website had not been updated since 2016, meaning it excluded entirely the after-introduced Hydrafacial Elite, a product covered by each of the patents in suit and Edge's purported flagship product. Moreover, Edge sells products such as a handpiece that it claims is covered by its patents, but Edge makes no effort to either mark that product or identify which of the patents cover it on the website. Next, Edge maintained multiple virtual marking patent websites under different domain names showing different images. As this problem was pointed out to Edge during this litigation, Edge disabled the website pointed to by the Edge's virtual marking, temporarily making *none* of their products even arguably marked. Now, as litigation draws on, Edge has permanently disabled that website and redirects to another website.

Finally, Cartessa is entitled to exclude all evidence of Edge's damages in this case and Cartessa is entitled to summary judgment that a reasonable royalty cannot exceed the amount supplied by Cartessa expert. *Cf. Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371 (Fed. Cir. 2015) (striking Plaintiff's damages evidence but remanding for consideration of only other evidence of reasonable royalty). Edge has provided an unqualified and unreliable expert to opine that does not meet the standards of *Daubert*. The damages expert is not an economist and has no professional training at economic predictions – he is a CPA. His expert report is so fundamentally in error that he denies basic matters such as the supply-demand curve without any justification, he opines that Cartessa would have agreed to an effective royalty rate of above 100%, he fails to apportion at all, and he ultimately decided on an arbitrary profit split because it is what seemed to him to be "fair." This sort of testimony is unhelpful to a jury and should be excluded, which leaves only Cartessa's expert damages evidence.

Michael Mellott
June 21, 2022
Page 3

Respectfully,

Steven Tepera
Counsel for Defendant Cartessa Aesthetics, LLC

Ex.

Case 2:20-cv-06082-GRB-ST Document 85 Filed 09/15/22 Page 1 of 1 PageID #: 11321

**UNITED STATES DISTRICT COURT**     **Courtroom 940**
**EASTERN DISTRICT OF NEW YORK**     DATE: 6/15/2022     TIME:
BEFORE: GARY R. BROWN, U.S. DISTRICT JUDGE

CASE: Civil Cause for Telephone Pre-Motion Conference
**2:20-cv-06082-GRB-ST** Edge Systems LLC v. Cartessa Aesthetics, LLC

APPEARANCES:     Plaintiff:  **Ali S Razai, Sean Michael Murray**

Defendant:  **Steven P Tepera, Aya Hatori**

FTR: AT&T 2:00-3:11

**Motion for:**   (i)Plaintiff's anticipated summary judgment motion(s) pursuant to Rule 56 of the Federal Rules of Civil Procedure, DE 65 and DE 66; and (ii) Defendant's anticipated summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, DE 69
**Movant:**

Case called.

☒     Counsel for all sides present.

☒     Pre-motion conference held.

☐ Parties to meet and confer and submit a schedule within 2 weeks.

☐ Motion Schedule set.     Motion served by:

Response served by:

Reply and all papers filed by:

☐     Discovery to proceed while motion is pending. Parties to contact Magistrate Judge assigned to the case to schedule an Initial Conference.

☒     Motion argued.

☒     The Court deems the motion made.

☒     Other: RULINGS PLACED ON THE RECORD. THE '052 PATENT MOTION

WILL BE BRIEFED FURTHER.,

☐     The parties are to submit order on notice to all parties.

☐     Settlement discussed. Choose an item.

☐     Jury Selection and trial set for:
Joint pretrial order due by:

** To obtain a copy of the transcript counsel should contact the ESR department in Central Islip at (631) 712-6030. Instructions and forms for requesting a transcript can be found at https://www.nyed.uscourts.gov/ under the *Court Information* tab.**

Ex.

US009550052B2

## (12) United States Patent
### Ignon et al.

(10) Patent No.: **US 9,550,052 B2**
(45) Date of Patent: **Jan. 24, 2017**

(54) **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN**

(71) Applicant: **EDGE SYSTEMS LLC**, Signal Hill, CA (US)

(72) Inventors: **Roger Ignon**, Redondo Beach, CA (US); **Scott Mallett**, Coto De Caza, CA (US); **Abraham Solano**, Corona, CA (US); **William Cohen**, Los Alamitos, CA (US)

(73) Assignee: **Edge Systems LLC**, Signal Hill, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **14/698,673**

(22) Filed: **Apr. 28, 2015**

(65) **Prior Publication Data**

US 2015/0272623 A1      Oct. 1, 2015

**Related U.S. Application Data**

(63) Continuation of application No. 13/267,554, filed on Oct. 6, 2011, which is a continuation of application
(Continued)

(51) **Int. Cl.**
**A61M 35/00** (2006.01)
**A61B 17/54** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ........ **A61M 35/003** (2013.01); **A61B 17/3205** (2013.01); **A61B 17/50** (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .................. A61B 17/54; A61B 17/545; A61B 2017/00017; A61B 2017/00199; A61B 2017/00743; A61B 2017/00747; A61B 2017/00761; A61B 19/0248; A61B 2019/025; A61B 2217/005; A61B 2217/007; A61B 17/50; A61B 2017/320004; A61B 50/10; A61B 50/13; A61M 35/003; A61N 5/0616
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,608,032 A | 8/1952 | Garver |
| 2,631,583 A | 3/1953 | Lavergne |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 34 21 390 A1 | 12/1985 |
| DE | 234 608 | 4/1986 |

(Continued)

OTHER PUBLICATIONS

Cox III et al., *Decreased Splatter in Dermabrasion*, Arch Facial Plastic Surgery, Jan.-Mar. 2000, vol. 2, pp. 23-26.
(Continued)

*Primary Examiner* — Ryan J Severson
*Assistant Examiner* — Christian Knauss
(74) *Attorney, Agent, or Firm* — Knobbe, Martens, Olson & Bear, LLP

(57) **ABSTRACT**

An apparatus for treating skin has a console with a user input device and a handpiece assembly. The handpiece assembly is configured to treat skin. A fluid line provides fluid communication between the console and the handpiece assembly. A manifold system is coupled to the console and controlled by the user input device. The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

**17 Claims, 25 Drawing Sheets**



## US 9,550,052 B2

Page 2

### Related U.S. Application Data

No. 11/392,348, filed on Mar. 29, 2006, now Pat. No. 8,048,089.

(60) Provisional application No. 60/755,310, filed on Dec. 30, 2005, provisional application No. 60/764,668, filed on Feb. 2, 2006.

(51) **Int. Cl.**

| | |
|---|---|
| *A61M 1/00* | (2006.01) |
| *A61B 17/3205* | (2006.01) |
| *A61B 17/50* | (2006.01) |
| *A61B 17/00* | (2006.01) |
| *A61N 5/06* | (2006.01) |
| *A61B 17/32* | (2006.01) |

(52) **U.S. Cl.**

CPC ............ *A61B 17/54* (2013.01); *A61B 17/545* (2013.01); *A61B 50/10* (2016.02); *A61B 50/13* (2016.02); *A61M 1/009* (2014.02); *A61B 2017/00199* (2013.01); *A61B 2017/00761* (2013.01); *A61B 2017/320004* (2013.01); *A61B 2217/005* (2013.01); *A61N 5/0616* (2013.01)

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,701,559 A | | 2/1955 | Cooper |
| 2,712,823 A | | 7/1955 | Kurtin |
| 2,867,214 A | | 1/1959 | Wilson |
| 2,881,763 A | | 4/1959 | Robbins |
| 2,921,585 A | | 1/1960 | Schumann |
| 3,085,573 A | | 4/1963 | Meyer et al. |
| 3,214,869 A | | 11/1965 | Stryker |
| 3,476,112 A | | 11/1969 | Elstein |
| 3,574,239 A | | 4/1971 | Sollerud |
| 3,715,838 A | | 2/1973 | Young et al. |
| 3,865,352 A | * | 2/1975 | Nelson ..................... B01F 3/10 |
| | | | 138/42 |
| 3,948,265 A | | 4/1976 | Al Ami |
| 3,964,212 A | | 6/1976 | Karden |
| 3,977,084 A | | 8/1976 | Sloan |
| 4,121,388 A | | 10/1978 | Wilson |
| 4,155,721 A | | 5/1979 | Fletcher |
| 4,170,821 A | | 10/1979 | Booth |
| 4,182,329 A | | 1/1980 | Smith et al. |
| 4,203,431 A | | 5/1980 | Abura et al. |
| 4,216,233 A | | 8/1980 | Stein |
| 4,299,219 A | | 11/1981 | Norris, Jr. |
| 4,378,804 A | | 4/1983 | Cortese |
| 4,560,373 A | | 12/1985 | Sugino et al. |
| 4,646,480 A | | 3/1987 | Williams |
| 4,646,482 A | | 3/1987 | Chitjian |
| 4,655,743 A | | 4/1987 | Hyde |
| 4,676,749 A | | 6/1987 | Mabille |
| 4,706,676 A | | 11/1987 | Peck |
| 4,754,756 A | | 7/1988 | Shelanski |
| 4,757,814 A | | 7/1988 | Wang et al. |
| 4,764,362 A | | 8/1988 | Barchas |
| 4,795,421 A | | 1/1989 | Blasius, Jr. et al. |
| 4,875,287 A | | 10/1989 | Creasy et al. |
| 4,886,078 A | | 12/1989 | Shiffman |
| 4,887,994 A | | 12/1989 | Bedford |
| 4,900,316 A | | 2/1990 | Yamamoto |
| 4,917,086 A | | 4/1990 | Feltovich et al. |
| 4,925,450 A | | 5/1990 | Imonti et al. |
| 4,957,747 A | | 9/1990 | Stiefel |
| 5,006,004 A | | 4/1991 | Dirksing et al. |
| 5,006,339 A | | 4/1991 | Bargery et al. |
| 5,012,797 A | | 5/1991 | Liang et al. |
| 5,035,089 A | | 7/1991 | Tillman et al. |
| 5,037,431 A | | 8/1991 | Summers et al. |
| 5,037,432 A | | 8/1991 | Molinari |

| | | | |
|---|---|---|---|
| 5,100,412 A | | 3/1992 | Rosso |
| 5,100,424 A | | 3/1992 | Jang |
| 5,119,839 A | | 6/1992 | Rudolph |
| 5,122,153 A | | 6/1992 | Harrel |
| 5,207,234 A | | 5/1993 | Rosso |
| 5,222,956 A | | 6/1993 | Waldron |
| 5,242,433 A | | 9/1993 | Smith et al. |
| 5,254,109 A | | 10/1993 | Smith et al. |
| 5,368,581 A | | 11/1994 | Smith et al. |
| 5,391,151 A | | 2/1995 | Wilmot |
| 5,417,674 A | | 5/1995 | Smith et al. |
| 5,419,772 A | | 5/1995 | Teitz et al. |
| 5,460,620 A | | 10/1995 | Smith et al. |
| 5,470,323 A | | 11/1995 | Smith et al. |
| 5,484,427 A | | 1/1996 | Gibbons |
| 5,562,642 A | | 10/1996 | Smith et al. |
| 5,611,687 A | | 3/1997 | Wagner |
| 5,674,235 A | | 10/1997 | Parisi |
| 5,676,643 A | | 10/1997 | Cann et al. |
| 5,676,648 A | | 10/1997 | Henley |
| 5,683,971 A | | 11/1997 | Rose et al. |
| 5,697,920 A | | 12/1997 | Gibbons |
| 5,707,383 A | | 1/1998 | Bays |
| 5,713,785 A | | 2/1998 | Nishio |
| 5,735,833 A | | 4/1998 | Olson |
| 5,759,185 A | | 6/1998 | Grinberg |
| 5,779,519 A | | 7/1998 | Oliver |
| 5,800,446 A | | 9/1998 | Banuchi |
| 5,807,353 A | | 9/1998 | Schmitz |
| 5,810,842 A | | 9/1998 | Di Fiore et al. |
| 5,813,416 A | | 9/1998 | Rudolph |
| 5,817,050 A | | 10/1998 | Klein |
| 5,846,215 A | | 12/1998 | Zygmont |
| 5,848,998 A | | 12/1998 | Marasco, Jr. |
| 5,861,142 A | | 1/1999 | Schick |
| 5,873,881 A | | 2/1999 | McEwen et al. |
| 5,879,323 A | | 3/1999 | Henley |
| 5,882,201 A | | 3/1999 | Salem |
| 5,885,260 A | | 3/1999 | Mehl, Sr. et al. |
| 5,908,401 A | | 6/1999 | Henley |
| 5,919,152 A | | 7/1999 | Zygmont |
| 5,954,730 A | | 9/1999 | Bernabei |
| 5,971,999 A | | 10/1999 | Naldoni |
| 5,980,555 A | | 11/1999 | Barbut et al. |
| 6,019,749 A | | 2/2000 | Fields et al. |
| 6,024,733 A | | 2/2000 | Eggers et al. |
| 6,027,402 A | | 2/2000 | Oliver |
| 6,039,745 A | | 3/2000 | Di Fiore et al. |
| 6,042,552 A | | 3/2000 | Cornier |
| 6,080,165 A | | 6/2000 | DeJacma |
| 6,080,166 A | | 6/2000 | McEwen et al. |
| 6,090,085 A | | 7/2000 | Mehl, Sr. et al. |
| 6,120,512 A | | 9/2000 | Bernabei |
| 6,129,701 A | | 10/2000 | Cimino |
| 6,136,008 A | | 10/2000 | Becker et al. |
| 6,139,553 A | | 10/2000 | Dotan |
| 6,139,554 A | | 10/2000 | Karkar et al. |
| 6,142,155 A | | 11/2000 | Rudolph |
| 6,149,634 A | | 11/2000 | Bernabei |
| 6,159,226 A | | 12/2000 | Kim |
| 6,162,218 A | | 12/2000 | Elbrecht et al. |
| 6,162,232 A | | 12/2000 | Shadduck |
| 6,183,451 B1 | | 2/2001 | Mehl, Sr. et al. |
| 6,183,483 B1 | | 2/2001 | Chang |
| 6,193,589 B1 | | 2/2001 | Khalaj |
| 6,231,593 B1 | | 5/2001 | Meserol |
| 6,235,039 B1 | | 5/2001 | Parkin et al. |
| 6,238,275 B1 | | 5/2001 | Metcalf et al. |
| 6,241,739 B1 | | 6/2001 | Waldron |
| 6,264,666 B1 | | 7/2001 | Coleman et al. |
| 6,277,128 B1 | * | 8/2001 | Muldner ..................... 606/133 |
| 6,283,978 B1 | | 9/2001 | Cheski et al. |
| 6,299,620 B1 | | 10/2001 | Shadduck |
| 6,306,119 B1 | | 10/2001 | Weber et al. |
| 6,306,147 B1 | | 10/2001 | Bernabei et al. |
| 6,322,568 B1 | | 11/2001 | Bernabei et al. |
| 6,368,333 B2 | | 4/2002 | Bernabei et al. |
| 6,387,103 B2 | | 5/2002 | Shadduck |
| 6,409,736 B1 | | 6/2002 | Bernabei |

US 9,550,052 B2

Page 3

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,410,599 | B1 | 6/2002 | Johnson |
| RE37,796 | E | 7/2002 | Henley |
| 6,414,032 | B1 | 7/2002 | Johnson |
| 6,420,431 | B1 | 7/2002 | Johnson |
| 6,423,078 | B1 | 7/2002 | Bays et al. |
| 6,423,750 | B1 | 7/2002 | Johnson |
| 6,432,113 | B1 | 8/2002 | Parkin et al. |
| 6,432,114 | B1 * | 8/2002 | Rosso ........................... 606/131 |
| 6,471,712 | B2 | 10/2002 | Burres |
| 6,477,410 | B1 | 11/2002 | Henley et al. |
| 6,482,212 | B1 | 11/2002 | Bernabei et al. |
| 6,488,646 | B1 | 12/2002 | Zygmont |
| 6,494,856 | B1 | 12/2002 | Zygmont |
| 6,500,183 | B1 | 12/2002 | Waldron |
| 6,503,256 | B2 | 1/2003 | Parkin et al. |
| 6,511,486 | B2 | 1/2003 | Mercier et al. |
| 6,514,262 | B1 | 2/2003 | Di Fiore et al. |
| 6,527,783 | B1 | 3/2003 | Ignon |
| 6,535,761 | B2 | 3/2003 | Bernabei |
| 6,540,757 | B1 | 4/2003 | Hruska et al. |
| 6,562,013 | B1 | 5/2003 | Marasco, Jr. |
| 6,562,050 | B1 | 5/2003 | Owen |
| 6,564,093 | B1 | 5/2003 | Ostrow et al. |
| 6,565,535 | B2 | 5/2003 | Zaias et al. |
| 6,582,442 | B2 | 6/2003 | Simon et al. |
| 6,589,218 | B2 | 7/2003 | Garcia |
| 6,592,595 | B1 | 7/2003 | Mallett et al. |
| 6,629,983 | B1 | 10/2003 | Ignon |
| 6,641,591 | B1 | 11/2003 | Shadduck |
| 6,645,184 | B1 | 11/2003 | Zelickson et al. |
| 6,652,888 | B2 | 11/2003 | Rhoades |
| 6,673,081 | B1 | 1/2004 | Tavger et al. |
| 6,673,082 | B2 | 1/2004 | Mallett et al. |
| 6,685,853 | B1 | 2/2004 | Angelopoulous et al. |
| 6,687,537 | B2 | 2/2004 | Bernabei |
| 6,695,853 | B2 * | 2/2004 | Karasiuk ....................... 606/131 |
| 6,735,470 | B2 | 5/2004 | Henley et al. |
| 6,743,211 | B1 | 6/2004 | Prausnitz et al. |
| 6,743,215 | B2 | 6/2004 | Bernabei |
| 6,764,493 | B1 | 7/2004 | Weber et al. |
| 6,869,611 | B1 | 3/2005 | Kligman et al. |
| 6,905,487 | B2 | 6/2005 | Zimmerman |
| 6,911,031 | B2 | 6/2005 | Muldner |
| 6,924,649 | B2 | 8/2005 | Knoedgen |
| 6,926,681 | B1 | 8/2005 | Ramey et al. |
| 6,942,649 | B2 | 9/2005 | Ignon et al. |
| 7,001,355 | B2 | 2/2006 | Nunomura et al. |
| 7,004,933 | B2 | 2/2006 | McDaniel |
| 7,044,938 | B2 | 5/2006 | La Bianco et al. |
| 7,052,503 | B2 | 5/2006 | Bernabei |
| 7,069,073 | B2 | 6/2006 | Henley et al. |
| 7,070,488 | B2 | 7/2006 | Suissa et al. |
| 7,083,580 | B1 | 8/2006 | Bernabei |
| 7,087,063 | B2 | 8/2006 | Carson et al. |
| 7,094,252 | B2 | 8/2006 | Koop |
| 7,115,275 | B2 | 10/2006 | Clarot et al. |
| 7,135,011 | B2 | 11/2006 | Powers et al. |
| 7,153,311 | B2 | 12/2006 | Chung |
| 7,197,359 | B1 | 3/2007 | Tokudome et al. |
| 7,198,623 | B2 | 4/2007 | Fischer et al. |
| 7,232,444 | B2 * | 6/2007 | Chang ........................... 606/131 |
| 7,241,208 | B2 | 7/2007 | Suissa et al. |
| 7,276,051 | B1 | 10/2007 | Henley et al. |
| 7,314,326 | B2 | 1/2008 | Rosenberg |
| 7,316,657 | B2 | 1/2008 | Kleinhenz et al. |
| 7,318,828 | B1 | 1/2008 | Revivo |
| 7,320,691 | B2 | 1/2008 | Pilcher et al. |
| 7,320,801 | B2 | 1/2008 | Kelly |
| 7,354,423 | B2 | 4/2008 | Zelickson et al. |
| 7,364,565 | B2 | 4/2008 | Freeman |
| 7,384,405 | B2 | 6/2008 | Rhoades |
| 7,427,273 | B2 | 9/2008 | Mitsui |
| 7,458,944 | B2 | 12/2008 | Liste et al. |
| 7,476,205 | B2 | 1/2009 | Erdmann |
| 7,477,938 | B2 | 1/2009 | Sun et al. |

| | | | |
|---|---|---|---|
| 7,482,314 | B2 | 1/2009 | Grimes et al. |
| 7,489,989 | B2 | 2/2009 | Sukhanov et al. |
| 7,507,228 | B2 | 3/2009 | Sun et al. |
| 7,582,067 | B2 | 9/2009 | Van Acker |
| 7,597,900 | B2 | 10/2009 | Zimmer et al. |
| 7,597,901 | B2 | 10/2009 | Clarot et al. |
| 7,658,742 | B2 | 2/2010 | Karasiuk |
| 7,678,120 | B2 | 3/2010 | Shadduck |
| 7,744,582 | B2 | 6/2010 | Sadowski et al. |
| 7,789,886 | B2 | 9/2010 | Shadduck |
| 7,837,695 | B2 | 11/2010 | Hart et al. |
| 7,901,373 | B2 | 3/2011 | Tavger |
| 7,951,156 | B2 | 5/2011 | Karasiuk |
| 8,025,669 | B1 | 9/2011 | David et al. |
| RE42,960 | E | 11/2011 | Waldron |
| 8,048,089 | B2 | 11/2011 | Ignon et al. |
| 8,066,716 | B2 | 11/2011 | Shadduck |
| 8,088,085 | B2 | 1/2012 | Thiebaut et al. |
| 8,128,638 | B2 | 3/2012 | Karasiuk et al. |
| 8,221,437 | B2 | 7/2012 | Waldron et al. |
| 8,236,008 | B2 | 8/2012 | Boone, III et al. |
| 8,277,287 | B2 | 10/2012 | Hart |
| 8,337,513 | B2 | 12/2012 | Shadduck |
| 8,343,116 | B2 | 1/2013 | Ignon et al. |
| 8,814,836 | B2 | 8/2014 | Ignon et al. |
| 9,056,193 | B2 | 6/2015 | Ignon et al. |
| 2001/0023351 | A1 | 9/2001 | Eilers |
| 2001/0037118 | A1 | 11/2001 | Shadduck |
| 2001/0049511 | A1 * | 12/2001 | Coleman ................. A61H 9/00 |
| | | | 604/290 |
| 2002/0016601 | A1 | 2/2002 | Shadduck |
| 2002/0041891 | A1 | 4/2002 | Cheski |
| 2002/0058952 | A1 | 5/2002 | Weber et al. |
| 2002/0107527 | A1 | 8/2002 | Burres |
| 2002/0133110 | A1 | 9/2002 | Citow |
| 2002/0133176 | A1 | 9/2002 | Parkin et al. |
| 2002/0151826 | A1 | 10/2002 | Ramey et al. |
| 2002/0151908 | A1 | 10/2002 | Mallett, Sr. et al. |
| 2002/0188261 | A1 | 12/2002 | Hruska |
| 2003/0012415 | A1 | 1/2003 | Cossel |
| 2003/0018252 | A1 * | 1/2003 | Duchon ................. A61B 6/481 |
| | | | 600/432 |
| 2003/0060834 | A1 | 3/2003 | Muldner |
| 2003/0093040 | A1 | 5/2003 | Mikszta et al. |
| 2003/0093089 | A1 * | 5/2003 | Greenberg .......... A61B 17/545 |
| | | | 606/131 |
| 2003/0097139 | A1 | 5/2003 | Karasiuk |
| 2003/0167032 | A1 | 9/2003 | Ignon |
| 2003/0187462 | A1 | 10/2003 | Chang |
| 2003/0208159 | A1 | 11/2003 | Ignon et al. |
| 2003/0212127 | A1 | 11/2003 | Glassman et al. |
| 2003/0212415 | A1 | 11/2003 | Karasiuk |
| 2004/0010222 | A1 | 1/2004 | Nunomura et al. |
| 2004/0010269 | A1 | 1/2004 | Grimes et al. |
| 2004/0087972 | A1 | 5/2004 | Mulholland et al. |
| 2004/0092895 | A1 | 5/2004 | Harmon |
| 2004/0092959 | A1 | 5/2004 | Bernaz |
| 2004/0097967 | A1 | 5/2004 | Ignon |
| 2004/0122447 | A1 | 6/2004 | Harmon et al. |
| 2004/0143274 | A1 | 7/2004 | Shadduck |
| 2004/0162565 | A1 | 8/2004 | Carson et al. |
| 2004/0166172 | A1 | 8/2004 | Rosati et al. |
| 2004/0219179 | A1 | 11/2004 | McDaniel |
| 2004/0236291 | A1 | 11/2004 | Zelickson et al. |
| 2004/0243149 | A1 | 12/2004 | Lee, Jr. |
| 2004/0254587 | A1 | 12/2004 | Park |
| 2004/0267285 | A1 | 12/2004 | Chang |
| 2005/0037034 | A1 | 2/2005 | Rhoades |
| 2005/0038448 | A1 | 2/2005 | Chung |
| 2005/0059940 | A1 | 3/2005 | Weber et al. |
| 2005/0084509 | A1 | 4/2005 | Bernstein |
| 2005/0148958 | A1 | 7/2005 | Rucinski |
| 2005/0203111 | A1 | 9/2005 | David |
| 2005/0209611 | A1 | 9/2005 | Greenberg |
| 2005/0283176 | A1 | 12/2005 | Law |
| 2006/0002960 | A1 | 1/2006 | Zoeteweij et al. |
| 2006/0116674 | A1 * | 6/2006 | Goble et al. .................... 606/41 |
| 2006/0161178 | A1 | 7/2006 | Lee |
| 2006/0189964 | A1 | 8/2006 | Anderson |

# US 9,550,052 B2

Page 4

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2006/0191562 A1 | 8/2006 | Numomura |
| 2006/0200099 A1 | 9/2006 | La Bianco et al. |
| 2006/0200172 A1 | 9/2006 | Shadduck |
| 2006/0200173 A1 | 9/2006 | Shadduck |
| 2006/0212029 A1 | 9/2006 | Arcusa Villacampa et al. |
| 2006/0253125 A1 | 11/2006 | Ignon |
| 2006/0264893 A1 | 11/2006 | Sage, Jr. et al. |
| 2007/0005078 A1 | 1/2007 | Hart et al. |
| 2007/0043382 A1 | 2/2007 | Cheney |
| 2007/0065515 A1 | 3/2007 | Key |
| 2007/0088371 A1 | 4/2007 | Karasiuk |
| 2007/0123808 A1 | 5/2007 | Rhoades |
| 2007/0154502 A1 | 7/2007 | Hattendorf et al. |
| 2007/0156124 A1 | 7/2007 | Ignon et al. |
| 2007/0178121 A1 | 8/2007 | First et al. |
| 2007/0198031 A1 | 8/2007 | Kellogg |
| 2007/0208353 A1 | 9/2007 | Shadduck |
| 2007/0239173 A1 | 10/2007 | Khalaj |
| 2008/0027328 A1 | 1/2008 | Klopotek et al. |
| 2008/0091179 A1 | 4/2008 | Durkin et al. |
| 2008/0103563 A1 | 5/2008 | Powell |
| 2008/0119781 A1 | 5/2008 | King |
| 2008/0132914 A1 | 6/2008 | Bossard et al. |
| 2008/0139974 A1 | 6/2008 | Da Silva |
| 2008/0154161 A1 | 6/2008 | Abbott |
| 2008/0193493 A1 | 8/2008 | Rhoades |
| 2008/0200861 A1 | 8/2008 | Shalev et al. |
| 2008/0208146 A1 | 8/2008 | Brandwein et al. |
| 2008/0214987 A1 | 9/2008 | Xu |
| 2008/0215068 A1 | 9/2008 | Hart et al. |
| 2008/0221548 A1 | 9/2008 | Danenberg et al. |
| 2008/0243039 A1 | 10/2008 | Rhoades |
| 2008/0287864 A1 | 11/2008 | Rosenberg |
| 2008/0300529 A1 | 12/2008 | Reinstein |
| 2008/0300552 A1 | 12/2008 | Cichocki et al. |
| 2009/0048557 A1 | 2/2009 | Yeshurun et al. |
| 2009/0053390 A1 | 2/2009 | Sakou et al. |
| 2009/0062815 A1 | 3/2009 | Karasiuk et al. |
| 2009/0099091 A1 | 4/2009 | Hantash |
| 2009/0099093 A1 | 4/2009 | Hantash |
| 2009/0124985 A1 | 5/2009 | Hasenoehrl et al. |
| 2009/0138026 A1 | 5/2009 | Wu |
| 2009/0177171 A1 | 7/2009 | Ignon et al. |
| 2009/0192442 A1 | 7/2009 | Ignon et al. |
| 2009/0222023 A1 | 9/2009 | Boone, III et al. |
| 2010/0045427 A1 | 2/2010 | Boone, III et al. |
| 2010/0049177 A1 | 2/2010 | Boone, III et al. |
| 2010/0049210 A1 | 2/2010 | Boone, III et al. |
| 2010/0217357 A1 | 8/2010 | Da Silva |
| 2011/0054490 A1 | 3/2011 | Hart |
| 2011/0066162 A1 | 3/2011 | Cohen |
| 2011/0082415 A1 | 4/2011 | Ignon et al. |
| 2012/0022435 A1 | 1/2012 | Ignon et al. |
| 2012/0041338 A1 | 2/2012 | Chickering, III et al. |
| 2012/0136374 A1 | 5/2012 | Karasiuk |
| 2013/0018317 A1 | 1/2013 | Bobroff et al. |
| 2013/0066336 A1 | 3/2013 | Boone, III et al. |
| 2013/0096577 A1 | 4/2013 | Shadduck |
| 2013/0102978 A1 | 4/2013 | Ignon et al. |
| 2013/0144280 A1 | 6/2013 | Eckhouse et al. |
| 2013/0158547 A1 | 6/2013 | David |
| 2014/0343481 A1 | 11/2014 | Ignon |
| 2014/0343574 A1 | 11/2014 | Ignon et al. |
| 2015/0032047 A1 | 1/2015 | Ignon et al. |
| 2015/0230824 A1 | 8/2015 | Shadduck |
| 2015/0230825 A1 | 8/2015 | Shadduck |
| 2015/0231379 A1 | 8/2015 | Ignon et al. |
| 2015/0265822 A1 | 9/2015 | Ignon et al. |
| 2015/0290442 A1 | 10/2015 | Ignon et al. |
| 2016/0038183 A1 | 2/2016 | Ignon et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 10 2004 015815 A1 | 11/2005 |
| EP | 0 258 901 | 9/1987 |
| EP | 0 564 392 | 3/1993 |
| IT | 553 076 | 12/1956 |
| IT | 118 49 22 | 3/1985 |
| JP | 1993-088552 | 12/1993 |
| JP | 09-294747 | 11/1997 |
| JP | 2003-339713 | 12/2003 |
| JP | 2006-503627 | 2/2006 |
| JP | 2006-204767 | 10/2006 |
| KR | 20-0280320 | 7/2002 |
| WO | WO 00/15300 | 3/2000 |
| WO | WO 01/93931 | 12/2001 |
| WO | WO 03/073917 | 9/2003 |
| WO | WO 2004/037098 | 5/2004 |
| WO | WO 2005/070313 | 8/2005 |
| WO | WO 2006/018731 | 2/2006 |
| WO | WO 2007/114904 | 10/2007 |
| WO | WO 2012/145667 | 10/2012 |

OTHER PUBLICATIONS

Ditre et al., *Effect of α-hydroxy acids on photoaged skin: A pilot clinical, histologic, and ultrastructural study*, Journal of American Academy of Dermatology, Feb. 1996, vol. 34, No. 2, Part 1, pp. 187-195.

Harris et al., *Combining Manual Dermasanding with Low Stregnth Trichloroacetic Acid to Improve Antinically Injured Skin*, The Journal of Dermatologic Surgery and Oncology, Jul. 1994, vol. 20, No. 7, pp. 436-442.

* cited by examiner

Case 2:20-cv-06082-GRB-ST Document 24-4 Filed 12/14/20 Page 6 of 15 of 574 PageID #: 11327



*FIG. 1*



FIG. 2A

Case 2:20-cv-06082-GRB-ST    Document 124-4   Filed 12/14/22   Page 2 of 17 of 574 PageID #: 11329



*FIG. 2B*



*FIG. 3*

Case 2:20-cv-06082-GRB-ST   Document 192-4   Filed 12/14/22   Page 10 of 141 PageID #: 11331



*FIG. 4*



FIG. 5A

FIG. 5B

FIG. 5C

FIG. 5D





Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/14/21   Page 14 of 23   PageID #: 11335



Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/14/21   Page 15 of 24 of 574 PageID #: 11336



Case 2:20-cv-06082-GRB-ST Document 192-4 Filed 12/14/21 Page 16 of 25 PageID #: 11337



FIG. 10A

FIG. 10B

FIG. 10C

FIG. 10D

FIG. 10E

Case 2:20-cv-06082-GRB-ST   Document 192-4   Filed 11/20/21   Page 27 of 26   Page 574 PageID
#: 11338



Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/11/20   Page 12 of 21   PageID #: 11339



*FIG. 12*

Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/14/21   Page 29 of 574 PageID #: 11340



*FIG. 13A*

Case 2:20-cv-06082-GRB-ST   Document 192-4   Filed 12/14/21   Page 29 of 574 PageID #: 11341



*FIG. 13B*

Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/14/21   Page 21 of 30 PageID #: 11342



*FIG. 14A*



*FIG. 14B*



*FIG. 15A*

Case 2:20-cv-06082-GRB-ST   Document 192-4   Filed 12/14/22   Page 24 of 31 PageID
#: 11345



FIG. 15B

Case 2:20-cv-06082-GRB-ST   Document 192-4   Filed 12/14/21   Page 25 of 34   PageID #: 11346



*FIG. 15C*

Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/11/20   Page 26 of 45   PageID #: 11347

*FIG. 15D*

Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/14/20   Page 27 of 36 of 574 PageID #: 11348



*FIG. 15E*

Case 2:20-cv-06082-GRB-ST   Document 192-4   Filed 12/11/21   Page 23 of 41 of 574 PageID #: 11349



*FIG. 16*

*FIG. 17*

Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/14/21   Page 29 of 48 Page ID #: 11350



*FIG. 18*

Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 12/14/21   Page 30 of 39   Page ID #: 11351



*FIG. 19*

US 9,550,052 B2

1

# CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

## CROSS-REFERENCE TO RELATED APPLICATIONS

This is a continuation of U.S. patent application Ser. No. 13/267,554, filed Oct. 6, 2011, which is a continuation of U.S. patent application Ser. No. 11/392,348, filed Mar. 29, 2006, which claims the benefit of U.S. Provisional Application No. 60/755,310, filed Dec. 30, 2005 and U.S. Provisional Application No. 60/764,668, filed Feb. 2, 2006, the entireties of all of the aforementioned applications are hereby incorporated by reference herein.

## BACKGROUND

Field

The invention relates in general to the field of skin treatment, and more specifically to apparatuses and methods for treating a person's skin.

Description of the Related Art

Abrasion of the outer layer or epidermis of the skin is desirable to smooth or blend scars, blemishes, or other skin conditions that may be caused by, for example, acne, sun exposure, and aging. Standard techniques used to abrade the skin have generally been separated into two fields referred to as dermabrasion and microdermabrasion. Both techniques remove portions of the epidermis called the stratum corneum, which the body interprets as a mild injury. The body then replaces the lost skin cells, resulting in a new outer layer of skin. Additionally, despite the mild edema and erythema associated with the procedures, the skin looks and feels smoother because of the new outer layer of skin.

Dermabrasion refers to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece with an abrasive element that is often in the form of a burr, wheel, or disc. This process tends to be painful and messy. In fact, the procedure is sometimes painful enough to require a local anesthetic. Dermabrasion leaves the skin red and raw-looking. The removed skin can take several months to regrow and heal. Recent efforts have led to the use of lasers instead of abrasive elements, which have resulted in less bleeding, but the pain and mess remains.

Efforts have been made to decrease the mess caused by the process waste, such as removed skin and blood, by adding a suction element. As the process waste is drawn into the suction opening, skin that has not been removed is also pulled against the grit surrounding the suction opening, so the procedure remains fairly messy due to the abrasion that takes place outside of the handpiece by the grit.

Microdermabrasion refers generally to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece emitting a stream of sand or grit. For example, a handpiece can be used to direct an air flow containing tiny crystals of aluminum oxide, sodium chloride, or sodium bicarbonate. The momentum of the grit tends to wear away two to three cell layers of the skin with each pass of the handpiece. Alternatively, new "crystal-free" microdermabrasion techniques utilize a diamond-tipped handpiece without a stream of grit.

Efforts to add a suction element have been more successful in microdermabrasion than in dermabrasion because the handpiece applying the stream of grit is more controllable to a localized area. That is, as the removed skin is drawn into the suction opening, skin that has not been removed is also pulled towards the handpiece where it is treated with the grit stream, allowing for simultaneous local treatment and suction.

Microdermabrasion removes moisture from the skin, so the procedure is always followed by the application of moisturizing creams. However, similar to topical application of moisturizing creams prior to microdermabrasion, the moisturizing elements only work as deep as the active ingredients can passively migrate through the remaining epidermis.

## SUMMARY OF THE INVENTION

In some embodiments, an apparatus for treating skin has a console with a user input device and a handpiece assembly. The handpiece assembly is configured to treat skin. A fluid line provides fluid communication between the console and the handpiece assembly. A manifold system is coupled to the console and controlled by the user input device, such as a computer, touchscreen, keyboard, and the like. The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

In some embodiments, a tip comprising a skirt portion is configured to couple to a handpiece for treating a target area on a patient's skin. A central body portion is coupled to the skirt portion. A first passage extends through the central body portion and is configured to receive a fluid from the handpiece. At least one second passageway extending through the central body portion and is configured to convey the fluid back into the handpiece. An inner member extends in a generally spiral fashion across at least a portion of a distal face of the central body portion. The inner member defines a channel between the first passage and the at least one second passage. When the tip is place against the skin, a chamber can be formed by the channel and the person's skin.

In some embodiments, a method of treating a target region on a patient's skin comprises providing a tip including a first aperture and at least one second aperture. At least one inner member on the surface of the tip defines at least one channel between the first aperture and the at least one second aperture. An outer member is disposed on the surface of the tip. The outer member engages the target with the tip. A treatment fluid flows distally through the first aperture region and through the at least one channel. The treatment fluid flows proximally through the at least one second aperture.

In some embodiments, a tip comprises a skirt portion configured to couple to a handpiece for treating a target on a patient's skin. A central body portion is coupled to the skirt portion and includes a mounting region substantially opposite the skirt portion. The mounting region configured to receive a pad for treating the skin. A first aperture extends through the skirt portion and the central body portion and configured to receive a fluid from the handpiece. At least one second aperture extending through the skirt portion and the central body portion and configured to convey the fluid back into the handpiece.

In some embodiments, a method of treating a target region of a patient comprises providing a tip including a first aperture, at least one second aperture, and a distal end configured to receive a pad. In some variations, the first pad is attached to the distal end. The tip is engaged with the target region.

In some embodiments, a manifold system comprises a body portion configured to receive releasably at least two

US 9,550,052 B2

3

bottles. The manifold is configured so that it can be coupled to a console. The console includes a handpiece for treating skin. At least one elongate member is in communication with a pump and configured to extract a fluid from one of the at least two bottles. At least one switch is configured to permit or inhibit a flow of the fluid from one of the at least two bottles through the pump. In some variations, the elongate member is dimensioned to fit within one of at least two bottles to draw fluid out of the bottle.

In some embodiments, a method of treating a target region on a patient's skin comprises engaging a tip with the patient's skin such that an effective amount of skin is removed by the tip. In some variations, the tip is a dry tip. After removing an effective amount of skin, another tip (e.g., a wet tip) engages the patient's skin such that an effective amount of skin is removed by the tip. In some variations, acid is delivered out of the wet tip to facilitate skin removal. In some variations, the wet tip includes a first aperture, at least one second aperture, at least one inner member on the surface of the tip defining at least one channel between the first aperture and the at least one second aperture, and an outer member on the surface of the tip. In some variations, treatment fluid flows outwardly along the channel. In some variations, treatment fluid flows inwardly along the channel. In some variations, the wet tip comprises an abrasive pad.

In some embodiments, a method of treating a target region on a patient's skin comprises engaging a first skin treatment tip with the patient's skin. A first material is delivered out of the first skin treatment tip to a target region. A second skin treatment tip engages the target region while the first material effectively facilitates exfoliation with the second skin treatment tip. In some variations, the first material comprises an acid, hydrator, and combination thereof. In some variations, the first skin treatment tip is configured to remove skin at a different rate than the second skin treatment tip. In some variations, the first skin treatment tip is configured to exfoliate at a higher rate than the second skin treatment tip. In some variations, material is delivered out of the second treatment tip to the target region of the patient's skin.

The apparatus for treating skin can dispense treatment material that is held in containers, such as bottles, bags, pouches, or other suitable structures for holding and storing material. These containers can be non-refillable or refillable. The treatment material can be delivered by gravity feed, pumps, or suction devices. The manifold system can be used to control fluid flow from a plurality of containers to one or more handpieces.

BRIEF DESCRIPTION OF THE DRAWINGS

Having thus summarized the general nature of the invention, certain preferred embodiments and modifications thereof will become apparent to those skilled in the art from the detailed description herein having reference to the figures that follow.

FIG. 1 is a perspective view of one embodiment of a skin treatment system.

FIG. 2A is a perspective view of one embodiment of a handpiece assembly for use with the skin treatment system of FIG. 1.

FIG. 2B is a side elevational view of the handpiece assembly of FIG. 2A.

FIG. 3 is a longitudinal cross-sectional view of the handpiece assembly of FIG. 2B. The handpiece assembly is engaging a person's skin.

FIG. 4 is a perspective view of another embodiment of a handpiece assembly.

4

FIG. 5A is a perspective view of one embodiment of a tip that can be coupled to a main body of a handpiece assembly to treat a person's skin.

FIG. 5B is a top elevational view of the tip of FIG. 5A.

FIG. 5C illustrates a bottom elevational view of the tip of FIG. 5A.

FIG. 5D is a cross-sectional view of the tip of FIG. 5B taken along the line 5D-5D.

FIG. 6A is a perspective view of a tip in accordance with another embodiment.

FIG. 6B is a top elevational view of the tip of FIG. 6A.

FIG. 6C is a bottom elevational view of the tip of FIG. 6A.

FIG. 6D is a cross-sectional view of the tip of FIG. 6B taken along the line 6D-6D.

FIG. 7A is a perspective view of a tip in accordance with another embodiment.

FIG. 7B is a top elevational view of the tip of FIG. 7A.

FIG. 7C is a bottom elevational view of the tip of FIG. 7A.

FIG. 7D is a cross-sectional view of the tip of FIG. 7B taken along the line 7D-7D.

FIG. 8A is a perspective view of yet another embodiment of a tip for treating a person's skin.

FIG. 8B is a top elevational view of the tip of FIG. 8A.

FIG. 8C is a bottom elevational view of the tip of FIG. 8A.

FIG. 8D is a cross-sectional view of the tip of FIG. 8B taken along the line 8D-8D.

FIG. 9A is a perspective view of still another embodiment of a tip that can be coupled to a main body of a handpiece assembly.

FIG. 9B is a top elevational view of the tip of FIG. 9A.

FIG. 9C is a bottom elevational view of the tip of FIG. 9A.

FIG. 9D is a cross-sectional view of the tip of FIG. 9B taken along the line 9D-9D.

FIG. 10A is a perspective view of another embodiment of a tip for treating a person's skin.

FIG. 10B is top elevational view of the tip of FIG. 10A.

FIG. 10C is bottom elevational view of the tip of FIG. 10A.

FIG. 10D is a cross-sectional view of the tip of FIG. 10B taken along the line 10D-10D.

FIG. 10E is a perspective exploded view of the tip of FIG. 10A, wherein a pad is spaced from a tip main body.

FIGS. 11A-11E are cross-sectional views of inner members that can be used to exfoliate skin.

FIG. 12 is a perspective view of a bottle for use with the skin treatment system of FIG. 1.

FIG. 13A is a cross-sectional view of one embodiment of a bottle spaced from an insertion tip assembly.

FIG. 13B is a cross-sectional view of the bottle of FIG. 12A coupled with the insertion tip assembly.

FIG. 14A is a cross-sectional view of a closure and a bottle.

FIG. 14B is a cross-sectional view of the closure and bottle of FIG. 14A when assembled.

FIG. 15A is a perspective view of one embodiment of a manifold system holding a plurality of bottles.

FIG. 15B is a cross-sectional view of the manifold system of FIG. 15A taken along the line 15B-15B of FIG. 15A.

FIG. 15C is a cross-sectional view of the manifold system of FIG. 15A taken along the line 15C-15C of FIG. 15A.

FIG. 15D is a cross-sectional view of the manifold system of FIG. 15C wherein the bottle has been removed.

FIG. 15E is a cross-sectional elevational view of the manifold system.

FIG. 16 is a perspective view of another embodiment of a skin treatment system.

US 9,550,052 B2

**5**

FIG. 17 is a cross-sectional view of a fluid line of the skin treatment system of FIG. 16 taken along the line 17-17.

FIG. 18 is a side elevational view of a handpiece assembly with a removable cartridge.

FIG. 19 is a side elevational view of the handpiece assembly and removable cartridge of FIG. 18, the cartridge is shown removed from the handpiece assembly.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

FIG. 1 illustrates a skin treatment system 10 that can be used to perform one or more treatments on a person's skin. The illustrated skin treatment system 10 includes a console 12 and a handpiece assembly 18 connected to the console 12 via a line 20. A manifold system 24 can control the flow of treatment material from containers 26 into and through the line 20. The treatment material can be discharged out of the handpiece assembly 18 to treat a person's skin. The skin treatment system 10 can be used at a hospital, health care physicality, residences, or any other suitable location.

As explained in more detail below, the handpiece assembly 18 is applied to the target area of the patient to perform skin treatment(s). As used herein, the term "skin treatment" is a broad term and includes, but is not limited to, skin removal, skin abrasion (e.g., dermabrasion, microdermabrasion, etc.), ablating or slicing skin (preferably a thin layer of skin), stimulation (including thermal, mechanical, electrical, and/or chemical stimulation), mesotherapy, isophoresis, light therapy, vacuum therapy, and the like. Preferably, the handpiece assembly 18 administers a treatment material from at least one of the containers 26 through the line 20 to the target area of the skin while the handpiece assembly 18 engages the skin.

As used herein, the term "treatment material" is a broad term and includes, but is not limited to, medicament, a substance tending to flow or conform to the outline of its container such as fluid, gas, liquid (e.g., serums, water, saline, etc.), gel, fluidized material, additives, and/or a plurality of fine solids. The general term "fluid" is used throughout synonymously with the term "treatment material" and is to be given the same broad definition. The handpiece assembly 18 can preferably massage, abrade, ablate, or otherwise treat the target skin area while also applying a treatment material to the patient. In certain embodiments, the treatment material and tip of the handpiece 18 can work in combination for an effective and rapid skin treatment. Additionally, any number of "dry" and "wet" tips can be used alone or in combination for treatment flexibility.

With continued reference to FIG. 1 the line 20 is configured to provide fluid communication between the containers 26 and the handpiece assembly 18. The line 20 can comprise one or more conduits extending between the console 12 and the handpiece assembly 18. In certain embodiments, the line 20 includes a supply line and a waste line for delivering and returning material, respectively, as detailed below.

The distal end 22 of the line 20 is connected to the handpiece assembly 18. Preferably, the line 20 includes a filter 28 that removes contaminants or impurities from the treatment material passing through the line 20. In other embodiments, the filter 28 is located in the console 12 or the manifold system 24. The console 12 can be connected to a power source such as an AC outlet. The power source can power the handpiece assembly 18 and/or other components of the skin treatment system 10, such as, for example, pumps, valves, and the like.

**6**

In the illustrated embodiment, the console 12 comprises four casters 33 to allow for easy movement, for example, from one treatment room to another treatment room. In such an embodiment, the console 12 can be conveniently rolled on a support surface. Other means of transportation can also be employed or the console 12 can be stationary. In some embodiments, the console 12 is portable for convenient transport.

The illustrated containers 26 of FIG. 1 are preferably releasably coupled to the manifold system 24. The manifold system 24 can deliver treatment material from the containers 26 to the line 20 as mentioned above. In certain embodiments, the console 12 has a user input device 32 for selecting a treatment material to be passed through the line 20 to the handpiece assembly 18. During some skin treatment procedures, treatment materials from multiple containers 26 are sequentially or simultaneously applied to the patient's skin during a "wet" mode of operation. Alternatively, the skin treatment system 10 can be used to deliver a single treatment material to the patient's skin. In some embodiments, the console 12 can be used for a "dry" mode of operation. That is, the console 12 can be used to exfoliate skin, for example, without delivering little or substantially no treatment fluid. The skin treatment system 10 can thus provide flexibility in selecting a treatment plan.

Multiple handpieces assemblies 18 and/or tips 34 can be used during a single skin treatment procedure in a wet and/or dry mode of operation. For example, a first handpiece assembly 18 may be employed to treat a patient's face and neck while a second handpiece assembly 18 may be employed to treat other larger areas of the patient's body. Thus, different handpieces 18 can be used to treat different regions of a person's body. The configurations of the handpieces 18 and tips can be selected based on the treatment material to be applied, desired interaction with the patient's skin, size of treatment area, skin condition, and the like.

With reference to FIGS. 2A and 2B, the handpiece assembly 18 includes a main body 30 and a tip 34. The handpiece assembly 18 can be conveniently held within the hand of a user so that the user can place the tip 34 in operative engagement with a person's skin. The user is typically an aesthetician (e.g., an aesthetician allowed to perform microdermabrasion), doctor, and other medical personnel, such as a physician assistant and nurse practitioner. In some cases, the user is the person whose skin is being treated.

The main body 30 has contoured portions 70 at its distal end 36 so that the user can comfortably grip the handpiece assembly 18 during use. The main body 30 can have other designs to provide a comfortable grip. FIG. 2A illustrates an embodiment in which the main body 30 is substantially flat on two opposing sides. FIG. 4 illustrates an embodiment in which the main body 30 is generally cylindrical.

As noted above, the tip 34 can be pressed against a patient's skin to perform a skin treatment. The distal end 102 of the tip 34 may be angled with respect to the handpiece assembly 18 to increase the contact area with the patient's skin without enlarging the handpiece assembly 18 for an ergonomic and comfortable design. The angled tip 34 can lay flat on the skin while the main body 30 is angled to the skin. The angle between the face of the distal end 102 and the longitudinal axis of the handpiece assembly 18 can be selected based on the desired size of the face of the distal end 102. In alternative embodiments, the face of the distal end 102 is generally perpendicular to the longitudinal axis of the main body 30.

The tip 34 can be permanently or temporarily coupled to the distal end 36 of the main body 30. In some embodiments,

Case 2:20-cv-06082-GRB-ST Document 192-4 Filed 12/14/21 Page 34 of 43 PageID #: 11355

US 9,550,052 B2

7

the tip **34** is disposable. As used herein, the term "disposable," when applied to a system or component (or combination of components), such as a tip, container, or pad, is a broad term and means, without limitation, that the component in question is used a finite number of times and then discarded. Some disposable components are used only once and then discarded. Other disposable components are used more than once and then discarded. In some embodiments, the tip **34** is removably coupled to the main body **30** such that the tip may be removed from the main body **30** and thrown away to avoid cross-contamination. In other embodiments, the tip **34** is a reusable tip that can be cleaned, for example by autoclaving, after each use. The tip **34** can thus be used for any number of procedures as desired.

With reference to FIGS. **2**A and **2**B, the proximal end **40** of the main body **30** is operatively connected to the line **20**. In the embodiment illustrated, the line **20** includes an output line **50** for removing waste from the handpiece assembly **18** and an input line **52** for delivering treatment material to the handpiece assembly **18**. The proximal end **40** of the main body **30** includes a plurality of connectors **44**, **46**, each connected to one of the conduits **50**, **52**. The illustrated input line **52** is connected to the connector **46**, and the output line **50** is connected to the connector **44**.

The input line **52** delivers treatment material from at least one of the containers **26** to the connector **46**. The fluid then flows through the main body **30** and ultimately to the tip **34**. As shown in FIG. **3**, the main body **30** comprises a plurality of lumens **90**, **92** in a fluid communication with the tip **34**. Fluid from the input line **52** can flow through the input lumen **92** to the tip **34**. The fluid then flows out of the tip **34** to a target skin area. The fluid is then trapped in the space **100** between the skin **80** and the tip **34**. To remove the fluid, the fluid flows proximally through the lumen **90** to the output line **50**. The fluid passes through the output line **50** and into the console **12**. As such, fluid can continuously or intermittently flow through the handpiece assembly **18**.

To treat the person's skin **80**, the handpiece assembly **18** can also be moved relative to the skin **80** such that the tip **34** maintains engagement with the skin **80**. The illustrated tip **34** is configured to massage the skin **80** while also providing fluid communication with the skin **80**. As detailed below in connection with FIGS. **5**A through **10**, the tip can include sharp planing blades, blades (e.g., razor blades), raised sharp areas, molded posts, grits, or other structures for treating skin, as detailed below.

When the tip **34** and treatment material are used in combination, the handpiece assembly **18** preferably exfoliates dead skin cells and extracts impurities by applying a vacuum while simultaneously bathing the healthy underlying skin with active treatment material. The active treatment material can facilitate cleansing, exfoliating, hydrating, and/or provide residual antioxidant protection. The treatment material and tip **34**, alone or in combination, can effectively and rapidly treat the target skin area. The waste material, including the used treatment material, removed skin, and/or grit, can then be drawn back through the tip **34**, the main body **30** via lumen **90**, and into the connector **44**. The waste then flows into the output line **50** for subsequent disposal, as detailed below in connection with FIG. **4**.

In some embodiments, including the illustrated embodiment of FIG. **3**, the tip **34** has a tip connector **98** (see FIGS. **5**C and **5**D) that mates with the lumen **92**. The tip **34** can provide fluid communication from the tip connector **98** to the space **100** via a through-hole **122**. One or more through-holes **114** define fluid passageways through the tip **34** between the space **100** and the intermediate chamber **116**.

8

The intermediate chamber **116** can be interposed between the through-holes **114** and the lumen **90**. The intermediate chamber **116** is preferably defined by the distal face **43** of the main body **30** and the proximal face **41** of the tip **34**. The intermediate chamber **116** can provide equalization of fluid between the tip **34** and the body **30**. As such, a generally equal vacuum is applied to both through-holes **114**. The fluid can flow through the through-holes **114**, into the intermediate chamber **116**, and then into the lumen **90**. In some embodiments, however, the fluid flows directly from the through-holes **114** to the lumen **90** without passing through an intermediate chamber **116**.

The tip **34** can have one or more sealing members to form a fluidic seal between the tip **34** and the main body **30**. The illustrated main body **30** includes a sealing member **47** that engages the inner surface of the skirt **64** of the tip **34**. The sealing member **47** can be a compliant member comprising rubber, polymer, plastic, or other suitable material for forming seals. In some embodiments, the sealing member **47** is an O-ring made of rubber.

With continued reference to FIG. **3**, during use, treatment material can flow distally through the lumen **92** into the through-hole **122**. The treatment material then proceeds through and out of the through-hole **122** into the space **180**. Preferably, the treatment material spreads radially outward to the peripheral through-holes **114**. The material can then flow through the through-holes **114** into the lumen **90** for subsequent removal.

In alternative embodiments, the fluid flows in the opposite direction. That is, the line **50** delivers fluid through the lumen **90** into the tip **34**. The fluid flows through the intermediate chamber **116** and the through-holes **114**. The fluid then flows to the chamber **100** and inwardly through the tip connector **98** to the lumen **92**. The fluid proceeds proximally along the lumen **92** and ultimately into the line **52**.

In yet another embodiment, the handpiece assembly **18** comprises two or more input lumens **90**. Such a design allows mixing of two or more treatment materials within the handpiece assembly **18** or space **100**, which would be useful for treatments with fluids that react or are unstable or degrade when stored or mixed.

As depicted in FIG. **4**, the handpiece assembly **18** can optionally include a controller **60** that is configured to control the fluid flow out of the tip **34**. The illustrated controller **60** can be operated to increase or decrease the flow rate of treatment fluid out of the tip **34**. Alternatively or additionally, the controller **60** may control the flow rate of waste fluid flowing through the handpiece assembly **18** to the output line **50**. When control of the waste treatment fluid and waste fluid is independent, the detention time of the fluid in the tip **34** may be adjusted as desired.

The illustrated controller **60** is a generally cylindrical body that is pivotally connected to the main body **30**. FIG. **4** illustrates an embodiment in which the controller **60** is recessed into and partially hidden by the main body **30**, although in other embodiments the controller **60** may encircle the main body **30**. The controller **60** may include textured grooves to provide for easier manipulation. In some embodiments, the controller **60** is located near the distal end **36** of the handpiece assembly **18** proximal or distal of the contoured portion **70**. The type and configuration of the controller **60** can be selected based on the design of the handpiece assembly **18**. The controller **60** can also be a rotatable knob or handle, digital controller, and the like.

The handpiece assembly **18** can also include one or more flow rate controllers within the main body **30** that cooperate

US 9,550,052 B2

9 10

with the controller **60** to adjust the fluid flow out of the tip **34**. For example, the controller **60** may comprise a flow control valve such as a globe valve, butterfly valve, needle valve, or variable orifice. Other types of flow rate controllers can also be used, such as an electrically controlled solenoid valve. In embodiments where the fluid flow is electronically controlled, the valve system may alternatively be located in the console **12** or manifold system **24**. Separate devices can also be used to control the flow of treatment material. For example, clamps, pinch valves, or other suitable devices can be used to control fluid flow through the lines **50**, **52**.

Various types of tips **34** can be used with the handpiece assemblies **18** illustrated in FIGS. **1** to **4**. FIGS. **5**A through **10**E illustrate embodiments, for example, of tips **34** that can be used with these handpiece assemblies **18**. These tips **34** can be interchangeable to provide maximum treatment flexibility.

As shown in FIGS. **5**A through **10**E, the tip **34** comprises the skirt **64** and a tip main body **66** extending outwardly therefrom. The skirt **64** is preferably configured to provide a gripping surface suitable for applying leverage or force sufficient to remove the tip **34** from the main body **30**. In some embodiments, the skirt **64** includes internal threads such that it can be mechanically coupled to external threads on the distal end **36** of the main body **30**. In some embodiments, the tip **34** can be press fit onto the main body **30**. Frictional forces can retain the tip **34** to the main body **30**.

With respect to FIGS. **5**A through **7**, the tip **34** comprises an outer member **120** and an inner member **124**. The outer member **120** preferably defines the periphery of the distal end **102** of the tip **34**. When the tip **34** is placed against skin, the outer member **120** can inhibit fluid flow between the tip **34** and the skin and define the outer portion of the space **100**.

The inner member **124** is preferably spaced from the outer member **120** to define one or more channels. The illustrated outer member **120** defines a continuous channel **140** that extends outwardly from the central through-hole **122** towards at least one of the outer through-holes **114**. The inner member **120** can form the sidewalls of the channel **140**. Any suitable configuration of channels **140** can be used to provide fluid flow along a flow path. The illustrated channels **140** have a somewhat U-shaped axial cross-sectional profile, as depicted in FIG. **8**A. The channel **140** can have a V-shaped, curved, or any other suitable cross sectional profile. A flow path between the through-holes in the tip **34** can be defined at least in part by the channels.

The spiral-like pattern of the inner members **124** in FIGS. **5** through **7** varies. For example, the inner member **124** in FIG. **5** extends about a longitudinal axis **143** of the tip **34** approximately one and a half times, the inner member **124** in FIG. **6** extends about the tip **34** approximately two and a half times, and the inner member **124** in FIG. **7** rotates about the tip **34** approximately one and three quarters times. In some embodiments, the inner member **124** subtends an angle of about 70°, 135°, 180°, 210°, 225°, 270°, 315°, 360°, and angles encompassing such ranges. In yet other embodiments, the inner member **124** subtends an angle of about 405°, 450°, or 495°. The tightness of the spiral in combination with the location and number of through-holes **114** affects the detention time of the fluid in the channel **140**. Generally, a tighter spiral results in a longer the pathway (i.e., the length of the channel **140**) from delivery through-hole **122** to the return through-holes **114**. Fluid traveling down the longer pathway is in contact with the person's skin **80** for a longer period of time. Thus, tighter spirals lead to increased contact time between the fluid and the skin **80**. These longer contact times can increase the effectiveness of the fluid because the skin can absorb an adequate amount of active ingredients of the treatment material. Fluid retention time on the patient's skin can be increased to increase hydration, serum retention, and the like. Shorter pathways can be used to reduce contact time between the fluid and the patient's skin. In some embodiments, for example, the tip **34** of FIGS. **5**A to **5**D has a relatively short pathway to limit absorption of fluids, achieve relatively high flow rates, and the like.

Additionally, the inner members **124** can be configured to remove tissue. The inner member **124** can be an abrasive member designed to remove tissue when the inner member **124** slides along a person's skin. The user may select a tip **34** based on the appropriate detention time and abrasiveness for the treatment being applied. For example, the tip **34** illustrated in FIG. **7** will provide less abrasion than the tip illustrated in FIG. **6**, but the tip **34** illustrated in FIG. **7** will provide a longer detention time than the tip **34** illustrated in FIG. **5**.

The illustrated tip **34** includes a generally continuous inner member **124** that extends from near the through-hole **122** towards at least one of the through-holes **114**. In other embodiments, the tip **34** can have a plurality of inner members **124**. For example, the inner members **124** can be linear, curved, and may be continuous or discontinuous.

The handpiece assembly **18** can be moved while the spiral-like inner member **124** engages the patient's skin. The movement of the handpiece assembly **18** can increase the effectiveness of the treatment material expelled out of the tip **34**. In some embodiments, for example, the tip **34** can be used with a lifting treatment material that facilitates extractions of, for example, sebum, blackheads, skin, or other substances (e.g., oils, dead skin, etc.). The lifting treatment extraction producer can unclog pores to improve the treated skin's overall appearance. To facilitate extractions, the handpiece assembly **18** can be twisted or rotated while the tip **34** is pressed against the patient's skin. The twisting action and the lifting treatment material can work in combination for effective extractions. In alternative embodiments, a handpiece assembly **18** can also be used without a lifting treatment material for extractions by employing the twisting motion.

In certain embodiments, the spiral-like tip **34** massages the skin **80**. In other embodiments, the spiral-like tip **34** ablates the skin **80**. For example, the inner members **124** may act as blades to cut thin layers from the skin **80** when the user twists the handpiece assembly **18**. Twisting the handpiece assembly **18** causes the tip **34** to rotate about the twisting axis, rotating the sharp inner members **124** against the skin **80**, which causes ablation. Thin layers of skin can thus be removed by the handpiece assembly **18**. Additionally or alternatively, the spiral-like tip **34** may plane along skin when a fluid is applied to the skin. The planing tip **34** can remove a thin layer of the skin (e.g., the stratum corneum, preferably hydrated stratum corneum). Accordingly, the user can use the handpiece assembly **18** to remove a particular amount of skin.

A vacuum can be applied by the handpiece assembly **18**. For example, the console **12** can have a pump that applies a vacuum via the output line **52**. The negative pressure draws waste material into the through-holes **114** and out of the handpiece assembly **18**. When the tip **34** engages the patient's skin, the vacuum can draw the skin against the tip **34** to enhance the effectiveness of the inner members **124**. The vacuum can be increased or decreased to increase or decrease, respectively, for example, frictional forces, depth of cutting, amount of abrasion, and the like. To rapidly

US 9,550,052 B2

11

remove skin, a strong vacuum can be applied to the person's skin so that the skin is pulled against the inner member **124**. The vacuum can also facilitated removal of the waste fluid captured between the tip **34** and the patient's skin. A vacuum can also be used in combination with the tips illustrated in FIGS. **1-10**E. The vacuum can also be varied based on the thickness, compliance, and other properties of the skin surface

The tip **34** can have any suitable number of through-holes **114**, **122** to achieve the desired fluid flow between the skin **80** and the tip **34**. For example, FIG. **5**A to **5**D illustrate an embodiment with two through-holes **114**. The number of through-holes **114**, **122** can be chosen based on the cross-sectional areas of the through-holes **114**, **122** and the expected flow rate of the fluid through the channel **100**. Preferably, one end of through-holes **114** is positioned between the inner member **124** and the outer member **120**. In some embodiments, including the embodiments illustrated in FIGS. **5**A through **7**, the through-holes **114** are positioned generally midway between the outer member **120** and inner member **124**.

The tips can also have one or more energy sources for delivering energy to the skin. Radiant energy, heat, and the like can be delivered to the skin by the tips. The tip **34** illustrated in FIGS. **6**A to **6**D has a pair of energy sources **151** in the form of LEDs. When the tip **34** is proximate the patient's skin, the LEDs **151** can deliver a desired amount of energy to the skin. The illustrated tip **34** has four LEDs; however, any number of LEDs can be employed.

In alternative embodiments, the tips can carry deployable material. The structure **151** can be in the form of a cavity or pocket that contain and carry material that is released when it engages the treatment fluid. The material in the cavities **151** can be made of any of the treatment materials disclosed herein, and can be in a solid form. For example, the cavities can hold lubricant or soap that is released when the tip is applied to skin.

FIGS. **8**A through **8**D illustrate another embodiment of a tip **34** when the inner member **124** includes a ring with perforations **140** that provide fluid communication between the through-hole **122** and through-holes **114**. A space **100** can be defined between the inner member **124**, perforations **140**, and outer member **120** when the tip **34** is in operative engagement with the skin **80**. FIG. **8**C illustrates an embodiment with eight through-holes **114**. In the embodiment illustrated in FIGS. **8**A through **8**D, the inner member **124** forms recessed regions **171**, allowing for a larger area of fluid contact with the skin **80** then the tips **34** illustrated in FIGS. **5** through **7**.

FIGS. **9**A through **9**D illustrate another embodiment of a tip **34** comprising an outer member **120** and an array of protruding inner members **124**. A recessed region **191** is defined between the inner members **124** and the outer member **120**. The inner members **124** of FIGS. **9**A to **9**D can be posts that are similar to the inner members described above. The post **124**, for example, can have relatively sharp edges. These edges can be used to remove skin. In some embodiments, the inner members **124** can have relatively sharp planing blades. The tip **34** illustrated in FIGS. **9**A through **9**D allows for more freedom of movement of the treatment fluid. The protruding inner members **124** preferably abrade the skin differently than the tips **34** illustrated in FIGS. **5**A through **8**. Rather than being able to ablate large sections of the skin **80** like a blade, as the tips **34** in FIGS. **5**A-**8** can do in certain embodiments, the plurality of protruding inner members **124** can ablate or roughen a plurality of smaller sections of the skin **80**.

12

The protruding member **124** can optionally contain treatment material. For example, the protruding members **124** can be generally cylindrical members having a passageway or chamber **127** that holds treatment material. Thus, fluid can be used in combination with treatment material coupled to the tip **34**.

With reference to FIGS. **5**A through **9**, the inner member **124** preferably has a height from the distal surface that is generally less than the height of the outer member **120**. In some non-limiting embodiments, the height of the inner member **124** is less than 90%, 70%, 60%, 50%, and ranges encompassing such percentages of the height of the outer member **120**. However, in other embodiments, the inner member **124** has a height that is generally greater than the height of the outer member **120**. For example, the inner member **124** can have a height that is 10%, 20%, 30%, 40%, 50% greater than the height of the outer member **120**. The inner member **124** can thus protrude from the tip **34**. A skilled artisan can select a desired height of the inner member **124** and/or the outer member **120** to achieve the desired interaction with the person's skin **80**.

FIGS. **10**A through **10**E illustrate another embodiment of a tip **34** comprising an outer member **120** and a pad **128**. FIG. **10**E depicts the pad **128** removed from the tip **34**. The tip **34** preferably has a mounting surface **227** that is surrounded by the outer member **120**. The pad **128** can be permanently or temporarily coupled to the mounting surface **227**.

The pad **128** preferably has a distal surface **224** configured to treat a person's skin. In some embodiments, the pad **128** is a disposable pad that comprises treatment material attached thereto. For example, the pad **128** may comprise vitamins, moisturizers, antioxidants, and the like. Preferably, the pad **128** comprises an adhesive proximal side and a distal side **224** including an abrasive surface. The abrasive surface can have grit, a plurality of members (e.g., members similar to the inner members **124** described above), or the like. The pad **128** can be permanently coupled to the mating surface **227** so that the tip **34** can be used for an extended length of time, or for multiple treatments. In alternative embodiments, the tip **34** is removable for maximum flexibility in selecting pad abrasiveness, and also allows the user to make changes to the tip **34** without changing the tip **34** in its entirety. The grit rating of abrasive surface of the distal surface **224** can be selected based on the desired rate of skin removal.

The illustrated pad **128** is generally elliptical and planar. In alternative embodiments, the pad **128** can be polygonal, circular, or have any other shape as desired. The pad **128** can have cutouts **225** that can match the through-holes **114**, **122**. The cutouts **225** can be aligned with the through-holes **114**, **122** when the pad **128** is coupled to the mounting surface **227** of the tip **34**, as shown in FIGS. **10**A to **10**D. The illustrated mounting surface **227** defines a plurality of tip flow channels **229** extending between the through-holes **114**, **122**. When the tip **34** is assembled, fluid can flow along the channels **229** between the main body **66** and the pad **128**.

Various types of adhesives can be used to temporarily or permanently couple the pad **128** to the mounting surface **227**. As used herein, the term "adhesive" is a broad term and includes, but is not limited to, coupling agents, glues, bonding materials, or the like. In some embodiments, for example, waterproof pressure sensitive adhesives are used for releasably coupling the pad **128** to the mounting surface **227**. In some embodiments, the pad **128** can be permanently coupled to the mounting surface **227**. For example, the pad **128** can be bonded or fused to the main body **66**. Addition-

US 9,550,052 B2

13

ally or alternatively, snap fittings, fasteners, or other coupling structures can be used to mount the pad **128**.

The tip **34** described above can be used for wet or dry modes of operation. As such, the tip **34** can be used for wet exfoliation or dry exfoliation. In some embodiments, the tip **34** is used in a dry mode to remove a desired amount of skin. After removing a desired amount of skin, the tip **34** can be used in a wet mode on the same or different area of the patient's kin. During wet mode, fluid can be passed out of the tip **34** onto the patient's skin. The wet tip **34** can exfoliate, hydrate, and/or perform other types of treatments. Alternatively, the tip **34** can be used in a wet mode and than a dry mode. The sequence of wet and dry modes of operation can be selected based on the type of tip, treatment material, skin condition, and the like.

Although the handpiece assemblies are primarily discussed with respect to use with treatment material, the handpiece assemblies can be used without treatment material, i.e., the handpieces can be used in a dry procedure. Dry procedures can be used for non-hydration procedures and may require less post-procedure clean up.

Various fabrication techniques can be employed to make the tips **34** as mentioned above in connection with FIGS. **11**A-**11**E. In some embodiments, the tips **34** are formed through a molding process, such as an injection or compression molding process. The tips **34** of FIGS. **5**A to **5**D, for example, can be monolithically formed through an injection molding process. Alternatively, the tip **34** of can have a multi-piece construction, if desired. The tips **34** can be made of polymers, rubbers, metals, or other suitable materials.

The tips **34** can also be fabricated in a multi-step process. For example, the main body **66** and skirt **64** can be formed in a single process. A textured surface (e.g., pad, inner members **124**, etc.) can be applied to the main body **66** in a subsequent process. The textured surface can be formed by cutting, embossing, adding material (e.g., a pad, adhesive grit, etc.), a roughening implement, stamping process, or other suitable texturing means.

The tips can have associated treatment materials, including, for example, a medicament. As used herein, the term "medicament" is a broad term and includes, without limitation, growth agents, growth factors or hormones, growth inhibitors, serums, treatment material, cleaners, vitamins, exfoliators, lubricants, or other substances that can be used to treat a patient's skin. The medicament can be associated with the tip **34** by imbedding, overlaying, coating, impregnation, co-mixing, absorption, or other suitable means for associating the medicament with the tip **34**. The medicament can be hardened so that it can further enhance massaging and/or abrasion. In some embodiments, the medicament forms hardened grit that can be imbedded on the surface of the tip **34**. The grit can work in combination with the inner members **124** to treat a person's skin. If a fluid is used, the fluid can facilitate the release of the medicament from the tip **34**. In some embodiments, the medicament comprises or more bioactive substances, such as antibiotics, substances for accelerating the healing of the wound, cell proliferation agents, and the like. Such bioactive substances may be desirable because they contribute to the healing of damaged or removed skin, as well as reducing the likelihood of infection.

FIGS. **11**A to **11**E illustrate different cross-sections of inner members that can be used with the tips illustrated in FIGS. **1**-**10**E. The inner member **124** of FIG. **11**A has generally sharp tip **253** for removing tissue. The tip **253** can have any suitable configuration for removing tissue from a patient. FIG. **11**B illustrates an inner member **124** that has a

14

pair of cutting edges **253** and a generally trapezoidal shape. FIG. **11**C illustrates an inner member **124** that has a surface treatment **255** for treating a person's skin. The surface treatment **255** can be serrations, grooves, grit, roughed surface, protrusions, and the like. The type of surface treatment **255** can be selected based on the procedure to be performed. FIG. **11**D illustrates another inner member **124** having a pair of cutting edges **253**. The cutting edges **253** are spaced from each other and protrude outwardly. The central portion **257** is generally V-shaped; however, the central portion **257** can have other configurations. For example, FIG. **11**E illustrates a central portion **257** that has a curved, semi-circular profile. In alternative embodiments, the inner member **124** can have more than two cutting edges.

The inner members **124** of FIGS. **11**A to **11**E can be formed by a molding process, such as an injection molding process. Additionally or alternatively, the inner members **124** can be formed by a machining process. For example, at least a portion of the inner member **124** of FIGS. **11**D to **11**E can be formed through a machining process. In some embodiments, the central portion **257** can be formed by cutting material out of the inner member **124**. The fabrication process (e.g., molding, injection molding, compression molding, machining, milling, etc.) can be selected based on the design of the inner members.

Referring again to FIG. **1**, the console **12** includes a manifold system **24** that holds containers **26** containing treatment fluids and/or antimicrobial agents. In a preferred embodiment, the console **12** holds four containers **26**, three containing different treatment fluids and one containing an antimicrobial agent. In the illustrated embodiment, the largest container **26** holds antimicrobial agent for cleaning and sanitizing the fluid lines of the console **12**. The containers **26** can also hold other suitable substances, such as surfactants, disinfectants, sanitizers, and the like, for cleaning and/or sanitizing the skin treatment system **10**.

As shown in FIGS. **12** and **12**A, the container **26** can be a fluid source such as a bottle comprising a body **262**, a neck **264**, and a closure assembly **266**. The neck **264** includes a threaded neck finish and the closure **266** includes a threaded interior surface, allowing it to screw onto the neck **264**. The closure **266** can be permanently or temporarily coupled to the neck **264**. The illustrated bottle **26** is a non-refillable, disposable bottle. As used herein, the term "non-refillable" is a broad term that includes, but is not limited to, components that cannot be easily refilled with a treatment material. For example, the illustrated non-refillable bottle **26** cannot be refilled without substantial difficulty.

Bodies **262** of the containers **26** may be formed by stretch blow molding a preform into the desired shape. In other embodiments, the body **262** and a neck **264** can be formed by extrusion blow molding. For example, the bottle of FIG. **13**A can be formed by extrusion blow molding. The containers **26** can be made of polymers, thermosets, thermoplastic materials such as polyesters (e.g., polyethylene terephthalate (PET)), polyolefins, including polypropylene and polyethylene, polycarbonate, polyamides including nylons, epoxies, and/or acrylics. The material can be virgin or post-consumer/recycled. However, other suitable materials known in the art can also be used.

In some embodiments, including the illustrated embodiment of FIGS. **12** and **12**B, the closure **266** is welded (e.g., induction welded) to an upper edge **269** of the neck **264**. A sealing member **267** can be interposed between the upper edge of the neck **269** and the closure **266**. In some embodiments, the sealing member **267** is made out of a conductive metal, such as aluminum, that preferably does not react with

Case 2:20-cv-06082-GRB-ST   Document 1-92-4   Filed 11/20/14   Page 33 of 41 Page ID Page 124 #: 11359

US 9,550,052 B2

15

the fluid in the bottle **26**. In other embodiments, the seal **267** comprises plastic, such as cellophane, polypropylene, or other suitable material, preferably suitable for coupling to the closure **266** and upper edge **269**. In some embodiments, the sealing member **267** comprises metal that is at least partially coated with a polymer, such as polypropylene. Induction welding can be used to couple the polypropylene to the closure **266** and neck **264**, both of which can also comprise polypropylene.

FIG. **14**A illustrates another embodiment of a bottle **26**. The closure **266** includes locking members **268** that engage the neck **264**, but do not allow removal of the closure **266** from the bottle **26** when assembled, as shown in FIG. **13**B. The locking closure **266** may include a sealing member **267**, for example as described above.

In either of the embodiments illustrated in FIGS. **12** through **14**B, the closure **266** may then be sealed with a second closure (not shown), creating multi-piece closures. For example, a screw cap can be threaded onto the external threads **273** at the top end of the closure **266**. In these embodiments, the treatment fluid inside the bottle **26** may be accessed by puncturing or otherwise breaking the seal **267**, for example with an insertion tip assembly **59** (see FIG. **13**A).

The insertion tip assembly **59** has an elongate member **161** that comprises a fluid pick up conduit **62** and lancing tip **64** extending from the distal end of the conduit **62**. In the illustrated embodiment, the lancing tip **64** is a tubular member having a somewhat sharp distal end. To access treatment fluid in the bottle **26**, the lancing tip **64** can be inserted into the closure passageway **73** of the closure **266**. The lancing tip **64** can be advanced through the passageway **73** until it breaks the sealing member **267**. The elongate member **161** can be sufficiently rigid such that it can break the sealing member **267** without buckling. The elongate member **161** can comprise metal, polymers, plastics, or any suitable material.

The fluid pick up conduit **62** and lancing tip **64** can be slid through the passageway **73** until the stop **91** is spaced from the upper edge of the closure **266**. In alternative embodiments, the insertion tip assembly **59** can be slid through the passageway **73** until the stop **91** contacts the upper edge of the closure **266**, as shown in FIG. **12**B. After the insertion tip assembly **59** and bottle **26** are assembled, as shown in FIG. **12**B, the treatment material can be draw upwardly through the lancing tip **64** and the fluid pick up conduit **62**. The treatment material can flow through a passageway of the insertion tip assembly **59** and to the manifold assembly **24**.

In certain embodiments, the treatment fluid applied from the containers **26** may be selected from the console **12** for a particular treatment or skin type. In one embodiment, the treatment fluid may comprise a skin rejuvenation serum. Skin rejuvenation serum cleans the skin **80** deeply while softening sebum and impurities to aid in extractions. Skin rejuvenation serum also assists in dislodging dead cells for extraction and exfoliation by the tip **34** as well as providing residual hydration that aids in firming and smoothing fine lines, resulting in clean, refined, and ultra-moisturized skin **80**. Preferably, a skin rejuvenation treatment serum is active-4™, available from Edge Systems Corp., 2277 Redondo Ave., Signal Hill, Calif., 90755, (800) 603-4996. In another embodiment, the treatment fluid may comprise a salicylic acid serum. A salicylic acid serum cleans oily skin deeply while softening sebum and impurities to aid in extraction and exfoliation by the tip **34**. Hydration additives in the salicylic acid serum create an ultra-moisturized skin surface, and is blended to remain on the face for the best possible

16

benefit. Preferably, a salicylic acid treatment fluid is Beta-Hd™ also available from Edge Systems Corp. In yet another embodiment, the treatment fluid may comprise antioxidants. The antioxidant serum is a hybrid that combats free radicals and environmental damage to the cells. The antioxidant serum is formulated with a blend of the most effective antioxidant ingredients. The antioxidant serum is an absorbable, leave-on service that improves the appearance of age signs as well as texture and clarity. Preferably, an antioxidant treatment fluid is antiox-6™, also available from Edge Systems Corp. The treatment fluids may comprise agents known to be beneficial to skin healing and/or hydration including but not limited to glucosamine, *laminaria digitata* extract, yeast extract, carbamide, lactic acid, sodium lactate, honey extract, pentylene glycol, *spirea ulmaria* extract, *camellia sinensis* leaf (white tea) extract, horse chestnut extract, stabilized vitamins A, B1, B6, B12, C, and E, tocopherol, inositol, calcium panthothenate, linoleic acid, *rosemarinus officinalis* extract, biotin, and aloins such as anthraquinone gycosides, polysaccharides, sterols, gelonins, and chromones.

A single treatment may comprise the serial use of several treatment fluids from the containers **26**. For example, the treatment of acne prone skin may comprise salicylic treatment followed by antioxidant treatment, the treatment of aging skin may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of congestion (e.g., blackheads) may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of damaged skin (e.g., due to medication or smoking) may comprise skin rejuvenator treatment followed by antioxidant treatment, the treatment of skin may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of hyperpigmentation may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of melasma may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of sensitive skin may comprise skin rejuvenator treatment followed by antioxidant treatment, and the treatment of thin skin may comprise salicylic treatment followed by antioxidant treatment. Alternatively, a single treatment may comprise the parallel use of a combination of treatment fluids from the containers **26**, for example using a handpiece with a plurality of input lumens **90** as described above. Treatment time with each treatment fluid is preferably about 2 to 20 minutes, but may be longer or shorter depending on the patient, the tip **34** used, and the treatment itself.

The treatment materials can be used for acne (e.g., by removing oils, bacteria, etc.), melasma, damaged skin (e.g., sun damaged skin, burns, free radical damage, etc.), extractions, skin lightening and/or brightening, skin lines (e.g., fine lines, wrinkles, creases, etc.), dry skin, and the like. The treatment materials can improve skin elasticity and overall health of the skin. For example, if the skin is damaged, antioxidants can be applied to damaged area. Accordingly, the skin treatment system **10** can be used to improve the health, appearance, and/or function of a person's skin.

Additionally, the line **20** may be periodically flushed with a fluid (e.g., a antimicrobial fluid, water, etc.) contained in one of the containers **26**. Antimicrobial fluids can contain any disinfecting agent compatible with skin including, but not limited to, butylene glycol, phenoxyethanol, and methyl isothiazolinone. Preferably, an antimicrobial fluid is Rinseaway™, available from Edge Systems Corp. The line **20**

US 9,550,052 B2

17 18

should be flushed with antimicrobial fluid at least at the end of each service day. Flushing with antimicrobial fluid is more important when the system is not used for consecutive days.

As illustrated in FIG. 1, the console 12 comprises the manifold system 24 designed to draw treatment fluid from at least one of the containers 26 based on user selection. The manifold system 24 may include switches 29, each corresponding to one of the bottles. The switches 29 can be used to control fluid flow from the containers 26. The illustrated switches 29 can be used to turn Off/On to permit or prevent fluid flow from the bottles 26. The illustrated manifold system 24 has a switch corresponding to each bottle 26. As such, the switches can be used to independently control fluid flow from each of the bottles 26. In other embodiments, a single switch can be used to control the flow of treatment fluid from more than one of the bottles 26.

With continued reference to FIG. 1, the button 246 can be operated to release a corresponding bottle 26 from the manifold system 24. FIG. 15A is front perspective view an embodiment in which the manifold system 24 contains quick-release locks connected to the button 246, wherein the quick-release locks capture the containers 26. As illustrated in FIGS. 14B and 14C, the quick-release locks 242 engage the closure 266 when the bottle 26 is inserted into the manifold system 24. When the quick-release lock 242 is manually engaged by a user, for example by pulling the button 246, a slide structure 249 surrounding the closure 266 releases, thereby releasing the bottle 26 from the manifold system 24.

FIG. 15E illustrates the slide structure 249 holding the neck 264 of the bottle 26 in an elongated slot 309. The button 246 can be pushed inwardly (indicated by the arrow 313) so that the neck 264 is positioned within the enlarged aperture 317. The bottle 26 can then slide downwardly out of the manifold system 24. The bottle 26 can be replaced with another bottle 26.

To couple the bottle 26 to the manifold system 24, the closure 266 can be inserted through the aperture 317 of the slide structure 249 when the button 246 is pushed in. Once the closure 266 engages the stop surface 333 (FIG. 15C), the spring 247 can push the slide structure 249 until the flange 335 of the bottle 26 rests on the slide structure 249, as shown in FIG. 15C. In such a position, the manifold system 24 securely holds the bottle 26. The illustrated slide structure 249 has a sloped portion 269 that can cam along the flange 335 as the button 246 moves outwardly. Accordingly, the slide member 249 can push the closure 266 upwardly until the closure 266 is locked with the manifold 24, as shown in FIG. 15C. The quick-release lock 242 is loaded with spring 247 such that the slide structure 249 is biased towards the button 246.

The manifold system 24 can have a modular design so that it can be removed from the console 12. In some embodiments, the manifold system 24 and associated containers 26 can be removed and transported away from the console 12. Accordingly, the modular manifold systems can be interchanged to provide treatment flexibility. Alternatively, the manifold system 24 can be permanently mounted to the console 12.

FIGS. 15B and 15C illustrate cross-sectional views of the manifold system 24 taken along lines 15B-15B and lines 15C-15C, respectively. Both FIGS. 15B and 15C show the fluid pick up conduit 62 in operative engagement with the bottle 26 through the seal 267. Suction device(s) is preferably in fluid communication with the fluid pick up conduit 62, and draws fluid out of the bottle 26 through the fluid pick

up conduit 62. The fluid can flow through a passageway 161 (see FIG. 15C) extending through the pick up conduit 62. The fluid can flow to and through the lumen 171 towards the line 20. If the switch 29 is off, the fluid from one or more of the upstream bottles can flow along the passage 173. The manifold system 24 then directs the fluid into the line 20.

In certain embodiments, including the embodiment of FIG. 1, the console 12 comprises a computer with display 32. In one embodiment, the display 32 is a user input device comprising a touch screen that controls the computer. In other embodiments, the computer may be controlled by input devices such as a keyboard, keypad, mouse, pointing device, or other input device. The computer controls a variety of functions in the console 12. For example, the computer may control the manifold system 24, and thereby the flow of treatment fluids from the containers 26. In one embodiment, the fluid flowing through the line 20 can be changed by pressing a single button on the touch screen display 32. In another embodiment, the computer contains teaching tutorials that are exhibited on the display 32. In yet another embodiment, the user may change program chips within the computer according to treatment and/or patient. In still another embodiment, the computer records patient and treatment data, for example data gathered during treatment.

The console 12 can also comprise a mechanical system for controlling fluid flow from the containers to the handpiece. One or more pumps, valves, fluid lines, and the like can cooperate to deliver fluid from the containers to the handpiece. The console 12 can be powered pneumatically, electrically, or by any other suitable powering means. The mechanically drive console 12 can have manual controls for controlling fluid flow to the handpiece.

The console 12 can also comprise additional handpieces suitable for other types of skin treatment. These additional handpieces can be used for pre-treatment or post-treatment in combination with other modalities. For example, the console 12 may include a handpiece for diamond tip abrasion, or "crystal-free" microdermabrasion, as described above. Such a handpiece may be useful for more aggressive treatments, in addition to treatment with the handpiece assembly 18. The diamond tips can range from fine to extra coarse.

In some embodiments, the console 12 comprises a handpiece including at least one light emitting diode (LED). Light therapy has been shown to improve skin. For example, red light between about 600 and about 700 nanometers and infrared LED light between about 700 and about 1,000 nanometers reduces the appearance of fine lines and superficial hyperpigmentation. For another example, blue LED light at about 430 nanometers improves the appearance of oily and acne-prone skin. Other benefits of light therapy include promotion of collagen production, increased circulation and moisture retention, smoothing of skin texture, and improvement of skin firmness and resilience.

The console 12 can comprise handpieces for vacuum therapy such as lymphatic drainage and cellulite massage. Vacuum therapy enhances the effects of treatment with the handpiece assembly 18 and LED light therapy. Preferably, the vacuum therapy handpieces are sized appropriately for facial massage and body massage. An example of a multi-modality protocol using a plurality of handpieces comprises diamond tip abrasion, treatment with handpiece assembly 18 and at least one treatment fluid from containers 26, vacuum therapy, red light therapy, and application of sunscreen, for example at a minimum skin protection factor (SPF) of 15.

US 9,550,052 B2

19

The various modalities may be included and ordered by the user depending on the desired outcome of the overall treatment.

The console **12** optionally includes any of a plurality of additional features. For example, a digital camera may be used to take pictures of the patient before and after treatment, and the pictures may be stored on the computer. The computer may hold client medical and treatment records. The computer may be connected to a network. The console **12** may store disks. The console **12** may include an ultrasound unit. The console **12** may include a stimulator, such as an electrical stimulator. The console **12** may include an iontophoresis handpiece. The number of additional features is limitless when considering the range of features that a user may wish to incorporate with the treatment provided by the handpiece assembly **18**.

FIG. **16** depicts another embodiment of the skin treatment system **10**, which may be generally similar to the embodiment illustrated in FIG. **1**, except as further detailed below. Where possible, similar elements are identified with identical reference numerals in the depiction of the embodiment of FIG. **1**.

The line **20** includes an output line **50** for removing waste from the handpiece assembly **18** and an input line **52** for delivering treatment material to the handpiece assembly **18**. A valve **300** can be disposed along the input line **52** to inhibit backflow of treatment material. The console **12** can pump treatment material through the input line **52** to the handpiece assembly **18** when the handpiece assembly **18** is applied to the person's skin, as detailed above. The fluid flow through the input line **52** can be reduced or stopped so that the handpiece assembly **18** can be removed from the patient's skin. The valve **300** can inhibit the flow of fluid through the input line **52** towards the console **12**. A desired amount of treatment material can therefore be contained in the handpiece assembly **18** and the section **310** of the input tubing **52** extending between the valve **300** and the handpiece assembly **18**. When the handpiece assembly **18** is applied to a patient's skin, a vacuum can be applied to the output line **50**. The vacuum can draw the treatment material out of the handpiece assembly **18** without a substantial or noticeable delay.

In some embodiments, the valve **300** can be a one-way valve, such as a duckbill valve, check valve, or other type of valve for inhibiting fluid flow. In alternative embodiments, the valve **300** can comprises a plurality of valves (e.g., one-way valves, flow regulators, adjustable valves, etc.).

FIG. **17** is a cross-sectional view of the line **20**. The input and output lines **50**, **52** can have different or similar cross sectional flow areas. The illustrated output line **50** has a passageway **312** with a diameter that that is less than the diameter of a passageway **314** of the input line **52**. Accordingly, a relatively large slug of treatment material can be stored in the section **310** extending distally from the valve **300** to the handpiece assembly **18**. The slug can be quickly delivered out of the handpiece assembly **18** once the handpiece assembly is applied to a patient's skin as detailed above.

In some embodiments, the section **310** of the output line **50** has a length L greater than 6 inches, 12 inches, 18 inches, 24 inches, and ranges encompassing such lengths. In some embodiments, the section **310** of the output line **50** has a length L greater than 24 inches, 30 inches, 36 inches, and ranges encompassing such lengths. The passageway **312** can have a cross-sectional area that is at least 10%, 30%, 50%, 75%, or 100% greater than the cross-sectional area of the passageway **314**. The length L and the diameters of the

20

passageways **312**, **314** can be selected based on the desired amount of treatment material to be stored in the line **20**, delivery and removal rates.

FIGS. **18** and **19** illustrate a modular handpiece assembly **360** having a cartridge **362** containing treatment material. The illustrated handpiece assembly **360** can be used to deliver treatment material from the cartridge **362**. The main body **30** can have a pump for pressuring the treatment material. In one embodiment, the fluid control device includes a power supply, such as a battery, which provides power to electrical components (e.g., pumps or valves) of the handpiece assembly **360**. The power supply can be a battery that is preferably disposed within the main body **30** of the handpiece assembly **360**. In one arrangement, the battery is a rechargeable battery that can be connected to and recharged by an AC power supply, such as a typical residential electrical outlet. Alternatively, the handpiece assembly **360** can be directly powered by an AC power supply. The power supply can provide power to several components of the handpiece assembly **360**. For example, the power supply can provide power to a plurality of fluid control devices **330** and/or a flow control unit. A control switch **371** can be used to turn the handpiece assembly **360** Off/On and/or control the output of the handpiece assembly **360**.

In operation, the cartridge **362** can be inserted into the main body **30**. The handpiece assembly **360** can be applied to a patient's skin to deliver treatment material from the cartridge **362** to the patient's skin. After delivering a desired amount of treatment material, the cartridge **362** can be separated from the main body **30**. The cartridge **362** can be a one-use or multi-use cartridge. For example, the cartridge can be a non-refillable disposable cartridge.

The tip **34** can also be used to remove hair or perform other skin treatments. For example, the tip **34** can include one or more razor blades and may be configured to apply a treatment material (e.g., antioxidants, vitamins, serums, growth agents, etc.) to the skin during the shaving process. In such embodiments, the main body **30** can be an elongated handle that is connected to a transversely extending elongate tip **34**. In some embodiments, the handpiece assembly can be in the form of a disposable handheld razor. The treatment material can reduce or substantially eliminate problems associated with wet or dry shaving systems. These treatment materials may be applied prior to, during, before, and/or after shaving.

The articles disclosed herein may be formed through any suitable means. The various methods and techniques described above provide a number of ways to carry out the invention. Of course, it is to be understood that not necessarily all objectives or advantages described may be achieved in accordance with any particular embodiment described herein. Thus, for example, those skilled in the art will recognize that the methods may be performed in a manner that achieves or optimizes one advantage or group of advantages as taught herein without necessarily achieving other objectives or advantages as may be taught or suggested herein.

Furthermore, the skilled artisan will recognize the interchangeability of various features from different embodiments disclosed herein. Similarly, the various features and steps discussed above, as well as other known equivalents for each such feature or step, can be mixed and matched by one of ordinary skill in this art to perform methods in accordance with principles described herein. Additionally, the methods which are described and illustrated herein are not limited to the exact sequence of acts described, nor are they necessarily limited to the practice of all of the acts set

US 9,550,052 B2

21                                                                    22

forth. Other sequences of events or acts, or less than all of the events, or simultaneous occurrence of the events, may be utilized in practicing the embodiments of the invention.

Although the invention has been disclosed in the context of certain embodiments and examples, it will be understood by those skilled in the art that the invention extends beyond the specifically disclosed embodiments to other alternative embodiments and/or uses and obvious modifications and equivalents thereof. Accordingly, it is not intended that the invention be limited, except as by the appended claims.

What is claimed is:

1. A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and

a vacuum source;

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and

wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.

2. The system of claim 1, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the first fluid container or the at least a second fluid container to the handpiece assembly.

3. The system of claim 2, wherein the user input device comprises a touch screen.

4. The system of claim 1, wherein the first fluid container or the at least a second fluid container is releasably coupled to the manifold.

5. The system of claim 1, wherein the manifold is configured to be placed in fluid communication with at least four fluid containers.

6. The system of claim 1, wherein treatment materials from the first fluid container and at least the second fluid container are delivered to the supply conduit sequentially or simultaneously.

7. The system of claim 1, wherein the console is movable.

8. The system of claim 1, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

9. The system of claim 1, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

10. The system of claim 1, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

11. A system for performing a skin treatment procedure, the system comprising:

a manifold in fluid communication with at least two fluid containers, each of the at least two fluid containers being configured to contain a treatment material, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly;

a vacuum source; and

a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to the vacuum source;

wherein the manifold is configured to control a flow of treatment material from each of the at least two fluid containers through the supply conduit;

wherein the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit.

12. The system of claim 11, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

13. The system of claim 11, wherein the system comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least two fluid containers.

14. The system of claim 13, wherein the user input device comprises a touch screen.

15. The system of claim 11, wherein the at least two fluid containers is releasably coupled to the manifold.

16. The system of claim 11, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

17. The system of claim 11, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

* * * * *

Ex.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDGE SYSTEMS LLC, | ) |
| | ) Civil Action No. 2:20-cv-06082-GRB-ST |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CARTESSA AESTHETICS, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF EDGE SYSTEMS LLC'S RESPONSE TO DEFENDANT CARTESSA AESTHETICS, LLC'S STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Eastern District of New York, Plaintiff Edge Systems LLC ("Edge") submits this response to the Statement of Facts (Dkt. 69-1) submitted by Defendant Cartessa Aesthetics, LLC ("Cartessa") in support of its letter seeking leave to file a motion for summary judgment (Dkt. 69).

**INTRODUCTION**

Cartessa's Statement of Facts ("Statement") fails to support Cartessa's request for leave to file a motion for summary judgment on the issues of infringement, marking and damages. On the issue of infringement of the '052 patent, Cartessa's Statement highlights that the parties' dispute is one of claim construction, a legal issue for the Court. The parties do not dispute how the accused device works, and Cartessa does not dispute the dictionary definition of "manifold." Instead, Cartessa advocates a narrow construction of the "manifold" limitation, which improperly imports additional limitations that are not part of the ordinary meaning of "manifold" and that appear nowhere in the independent claims of the '052 patent. The parties' primary

1

dispute on the '052 patent is therefore not a factual dispute but, rather, a purely legal dispute on claim construction that the Court may resolve on summary judgment.

Cartessa's Statement also asserts that, when Cartessa ships its accused device in its box, the device's fluid containers are not pre-filled with treatment fluid.  However, this fact is relevant only under Cartessa's incorrect construction of the claims of the '052 patent.  That construction ignores claim language stating that the fluid containers are *configured to contain* treatment fluid, and thus improperly seeks to require that the containers *actually contain* fluid.

On the issue infringement of the Shadduck patents, Cartessa's Statement identifies a long list of allegedly undisputed facts relating to whether the ridges on the accused device are "sharp" and whether they abrade skin during use.  But these factual issues are vigorously disputed.  The "sharp" and "abrade" limitations as they relate to the accused device were the subject of extensive testing by Edge's technical experts, Dr. Elliot Duboys and Mr. Richard Meyst, and are discussed in over fifty combined pages of their expert reports.   This is a quintessential fact issue for the jury.

On marking, Cartessa's Statement asserts that Edge places its marking sticker on the console of its device, rather than the handpiece.  But this fact is irrelevant because the asserted claims are directed to skin treatment *systems*, not handpieces by themselves.  Cartessa also asserts that Edge's website does not list all of the brand names under which its patented tower-style product has been sold.  However, because Edge frequently changes the brand name of the device, Edge identifies its patented device using an image of the device next to the list of patent numbers.  Nothing in the marking statute prohibits using an image on the patentee's website to identify the patented device.  The jury must therefore look at Edge's website and decide whether it conveys that Edge's patented tower-style products are covered by the listed patents.

On damages, Cartessa's Statement asserts the position in the report of *its* expert on each of the numerous factual issues that underlie the reasonable-royalty analysis. But Edge's damages expert, Mr. David Hanson, served a responsive report expressing very different positions on all these factual issues. In this case, as in all patent cases, the jury must hear the conflicting opinions of each side's damages expert and decide how much weight to accord each opinion.

Finally, Cartessa's Statement contains attorney argument and many alleged facts that are not supported by evidentiary citations. Other alleged "facts" are, in reality, Cartessa's position on legal issues for the Court, such as the content of the governing law or the proper construction of the asserted claims. Under the plain language of Local Rule 56.1 and relevant precedent, legal statements and unsupported factual statements in a Rule 56.1 statement should be disregarded.[1]

## ALLEGED NON-INFRINGEMENT OF US PATENT NO. 9,550,052

[001] Edge does not dispute that the preferred embodiment described in the specification of U.S. Patent No. 9,550,052 ("the '052 patent") is capable of delivering treatment fluid to the manifold (and ultimately to the handpiece) from multiple fluid containers either sequentially or simultaneously. Edge also does not dispute that, for each such container, the delivery of treatment fluid to the manifold is controlled by a switch that opens or closes a valve. Edge also does not dispute that, in the preferred embodiment, treatment fluids may be mixed in the manifold by opening more than one valve at the same time. And Edge does not dispute that the manifold, in conjunction with the valves, "facilitates" the user's ability to choose the desired fluid container(s) from which fluid will be provided. Finally, to the extent this paragraph contains other alleged statements of fact, Edge disputes those statements and objects to them as

---

[1] Cartessa's Statement also contains numerous argumentative headings. These headings are not statements of fact and have no supporting evidentiary citations. Accordingly, Edge has not addressed those headings in this response.

3

not supported by evidentiary citations. L.R. 56.1 ("Each statement … must be followed by citation to evidence….").

[002]     Edge does not dispute that, during prosecution of the '052 patent, the applicant cancelled an original claim and replaced it with claims that required a manifold "in fluid communication at least one fluid container."  Some of those claims further required that the system have "at least two fluid containers" or "at least four fluid containers. Ex. B[2] at May 1, 2015 Preliminary Amendment at 2-3 (then-pending Claims 7-9).  Edge also does not dispute that, after rejecting the claims over the Coleman reference, the examiner suggested in an interview that "focusing on the ability to individually select a treatment material of the multiple fluid containers would overcome the Coleman reference."  Edge does not dispute that the applicant then amended Claim 2 – which was later renumbered as Claim 1 in the issued patent – to specify (*inter alia*) that the manifold is in fluid communication with at least two fluid containers, and that "the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly."   However, Edge disputes Cartessa's statement that "The amendment was to allow for 'the system's ability to permit for the selection of treatment materials from specific containers in fluid communication with a manifold.'"   The quoted language is not from a statement by the applicant explaining why the applicant made the amendment.   Rather, the applicant was describing the examiners' suggestion during the interview: "Examiners [Rodjom and Knauss] suggested that presenting clarifying amendments related to the system's ability to permit for the selection of treatment materials from specific containers in fluid communication

---

[2] Lettered exhibits are attached to the Tepera Declaration, Dkt. 69-3. Numbered exhibits are attached to the Cassidy Selvaggio Declaration filed herewith.

4

with a manifold would overcome any rejection over Coleman." Ex. B at February 5, 2016 Response to Office Action at 5.

Finally, the last sentence of Paragraph 2 should be disregarded because it is attorney argument, it draws a conclusion from facts rather than states a fact, and it is unsupported by any evidentiary citation. *Rodriguez v. Schneider*, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("*Rule 56.1 statements are not argument*. They should contain factual assertions, with citation to the record. They should not contain conclusions[.]") (emphasis in original); *Taveras v. HRV Mgmt., Inc.*, 2020 WL 1501777, at *2 (E.D.N.Y. Mar. 24, 2020) ("Legal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded."). In fact, Claim 1 of the '052 patent nowhere states that the system must allow a user to select treatment material from two containers simultaneously. Ex. A ('052 patent) at Claim 1. Claim 1 states that "the system is configured to permit a user to select the treatment material from the first fluid container *or* the at least second fluid container." *Id.* (emphasis added). Claim 1 does not state that the user must be able to select the treatment material from the first container *and* the second container. *Id.* Only Claim 6 requires that the system be able to deliver treatment material from the two fluid containers "sequentially or simultaneously." Ex. A at Claim 6.

[003] Edge does not dispute that many of its HydraFacial® hydradermabrasion systems allow the user to provide treatment material from a single container or from multiple containers simultaneously. Edge also does not dispute that the user starts or stops the flow of fluid from a given container via a switch or similar control mechanism. To the extent this paragraph contains other alleged statements of fact, Edge disputes those statements and objects to them as not supported by evidentiary citations. *Rodriguez*, 1999 WL 459813, at *1 n.3.

5

[004]   Edge does not dispute that its HydraFacial® tower systems allow the user to provide treatment fluid from a single container or from multiple containers simultaneously, as confirmed by the deposition testimony of Edge witness Roger Ignon.  Edge disputes Cartessa's ambiguous assertion that Edge's "product" is "multi-modal."  To the extent this paragraph contains other alleged statements of fact, Edge disputes those statements and objects to them as not supported by evidentiary citations. *Rodriguez*, 1999 WL 459813, at *1 n.3

[005]   This paragraph should be disregarded because it contains assertions about the construction of the asserted claims, a legal issue for the Court, rather than statements of fact. *Taveras*, 2020 WL 1501777, at *2 ("Legal arguments are impermissible in any Rule 56.1 Statement and are to be disregarded.").  However, Edge agrees that the manifold limitations of Claims 1 and 11 were not construed by the Court.

[006]   This paragraph should be disregarded because it contains assertions about the construction of the asserted claims, a legal issue for the Court, rather than statements of fact. *Taveras*, 2020 WL 1501777, at *2.  Those assertions are also incorrect.  However, Edge agrees that Cartessa accurately quoted portions of the manifold limitations of Claims 1 and 11.

[007]   This paragraph should be disregarded because it contains assertions about what the asserted claims "require," a legal issue of claim construction for the Court, rather than statements of fact.  *Taveras*, 2020 WL 1501777, at *2.  However, Edge agrees that Cartessa accurately quoted portions of the manifold limitations of Claims 1 and 11.

[008]   Edge does not dispute that a manifold is a well-known structure in mechanical engineering, and that automotive air intake and exhaust manifolds are examples of manifolds. Edge disputes Cartessa's assertion that "[a] manifold is 'a structure that either combines a liquid fluid or gas from multiple sources into one common line, or does the opposite, has a common

6

line to supply multiple outlets.'" The parties do not dispute the definition of "manifold." The parties' experts agree that the dictionary correctly defines "manifold." Ex. S (Jensen Report) at ¶ 37; Ex. G (Meyst Dep.) at 32 ("Actually Dr. Jensen, I believe, had a dictionary definition which I think is correct.") and 36. As Cartessa's expert, Dr. Morton Jensen, stated in his expert report, "[a] manifold is 'a pipe or closed space in a machine that has several openings, allowing liquids and gases to enter and leave' or 'a pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes.'" Ex. S (Jensen Report) ¶ 37 (citing

https://dictionary.cambridge.org/us/dictionary/english/manifold and

https://www.collinsdictionary.com/us/dictionary/english/manifold).

[009] Edge disputes Cartessa's assertion that a manifold must have "the ability to combine fluid flows from multiple sources into one channel or divides [sic] fluid flow from one source into multiple channels." That is not part of the ordinary meaning of "manifold," as expressed in the dictionary. Ex. S (Jensen Report) ¶ 37. Nor did the Court construe the term during claim construction to require a "manifold" to combine or divide fluids. Dkt. 48 (claim construction ruling). That is a function that some manifolds can be configured or used to perform, but a structure does not need to perform this function to be a manifold. Edge also disputes Cartessa's claim that all automotive intake and exhaust manifolds "continuously route fluids through." Cartessa cites Mr. Meyst's deposition, but Mr. Meyst testified that he does not know whether particular automotive manifolds (including those in his own car) have valves that have can cut off fluid flow. Ex. G at 30:13-32:25. In any event, the fact that certain manifolds are not paired with valves is irrelevant to the ordinary meaning of "manifold," as other manifolds *are* used with valves. The '052 patent itself describes a manifold 24 that is used with multiple valves activated by switches 29. Ex. A at Figs. 15A-D, 9:6-10, 17:5-17, 17:61-18:6.

[0010] Edge does not dispute that the accused device provides treatment fluid from four fluid containers to the device's handpiece using solenoid valves. Edge also does not dispute that the user interface of the accused device is programmed so that the accused device cannot provide treatment fluid from more than one container at the same time. However, Edge disputes Cartessa's assertion that "Mr. Meyst understands there to be a conduit from each container to the solenoid valve." When Mr. Meyst was asked whether that was the case, he explained that a conduit extends from each container to a fitting *on the top of the manifold*. Ex. I at 96:5-10 ("There's a conduit from each of the containers that goes into a 90-degree elbow fitting that's screwed into the top of the manifold."). To the extent this paragraph contains other alleged statements of fact, Edge disputes those statements and objects to them as not supported by evidentiary citations. *Rodriguez*, 1999 WL 459813, at *1 n.3.

[0011] Edge disputes Cartessa's assertion that the accused device does not have a manifold. Cartessa's position is based on its incorrect construction of the manifold limitations of Claim 1 and Claim 11 of the '052 patent. The parties' experts agree that "[a] manifold is 'a pipe or closed space in a machine that has several openings, allowing liquids and gases to enter and leave' or 'a pipe with one inlet and several outlets or with one outlet and several inlets, for connecting with other pipes.'" Ex. S (Jensen Report) at ¶ 37; Ex. G (Meyst Dep.) at 32. It is undisputed that the manifold in the accused device has four inlets for receiving treatment fluid from the four fluid containers, and one outlet for conveying the selected treatment fluid to the supply conduit that terminates in the handpiece. Ex. K (Meyst Report) ¶ 71 ("As previously explained above, fluid flows from the manifold to the handpiece assembly through the supply conduit. That fluid originates from one of the four fluid containers, which are in fluid communication with the manifold via four tubes. The user selects the desired fluid container

using the touchscreen. Wires running from the electronic components connected to the touchscreen to the manifold cause the manifold's valves to open or close, allowing the selected treatment material to enter the manifold and preventing treatment media from the non-selected containers from entering."). The manifold with its four inlets (for receiving the selected treatment material) and one outlet (for conveying the treatment material to the supply conduit) is shown in the image below. Ex. 21.



Edge also disputes Cartessa's assertion that the accused device has only a matrix or series of solenoid valves. The white component (above) has four inlets and an outlet for treatment fluid and is therefore a manifold under the dictionary's undisputed expression of the plain meaning of the term. Ex. K (Meyst Report) ¶ 71; Ex. S (Jensen Report) at ¶ 37; Ex. G (Meyst Dep.) at 32. That portions of the solenoid valves are embedded in or extend into the manifold is irrelevant; in the preferred embodiment of the '052 patent, the switches/valves 29 (that control fluid flow from the fluid containers) are almost entirely embedded in the manifold. *See* '052 patent at Figs. 15A and 15C (shown below) and the associated description in the specification.

9



**Manifold**

**Switches/Valves**

**Fluid Containers**

*FIG. 15A*

**Switch/Valve**

**Fluid Container**

*FIG. 15C*

10

[0012] Edge does not dispute that the accused device cannot provide treatment fluid from multiple containers at the same time.

[0013] Edge disputes the statements in this paragraph and the characterizations of Mr. Meyst's deposition testimony. The white, box-shaped component in the accused device is a manifold because of its undisputed structure: it has multiple inlets for receiving fluid and a single outlet for channeling fluid to the handpiece. Ex. K (Meyst Report) ¶ 71. This structure satisfies the dictionary definition of "manifold," which the parties agree accurately expresses the ordinary meaning of the term. It is therefore unnecessary to address the specific interior structure of Cartessa's manifold. Ex. S (dictionary definitions in Jensen Report) at ¶ 37. Edge also disputes Cartessa's characterization of Mr. Meyst's analysis of the accused device. Mr. Meyst examined the accused device, including in operation, and traced the flow path of the treatment fluids starting at the four fluid containers, passing through four conduits to the manifold, entering the manifold through four inlets, exiting the manifold through one outlet, entering the single supply conduit, and terminating in the tip of the handpiece. Ex. K (Meyst Report) ¶ 71. This sufficed to determine that the white, box-like component in the accused device is a manifold under the ordinary meaning of the term. *See* Ex. S (dictionary definitions in Jensen Report) at ¶ 37.

[0014] Edge does not dispute that the accused device controls fluid flow in part with solenoid valves.

[0015] Edge does not dispute that a solenoid valve is not a manifold. However, Edge disputes that a manifold must supply fluid continuously through all of its fluid pathways – that is not part of the ordinary meaning of the term "manifold." *See* Ex. S (dictionary definitions in Jensen Report) at ¶ 37.

[0016]  Edge does not dispute that the accused device can draw fluid from only one fluid container at a time.  Edge disagrees with Dr. Jensen's conclusion – based on his incorrect claim construction – that the accused device therefore does not satisfy the manifold limitations of the independent claims of the '052 patent.

[0017]  Edge does not dispute that, when the solenoid valve associated with a fluid container is closed, the valve terminates fluid flow from that container.  Edge does dispute Cartessa's construction of the claim language "in fluid communication with," under which two things are in fluid communication with one another only if fluid is free to move between them *at that time*. Cartessa never proposed such a construction during the claim construction process, and the Court never adopted such a construction.  Dkt. 48.  Moreover, under the ordinary meaning of the claim language, two components of a device are "in fluid communication with" one another if the device is configured so that fluid can flow from one component to the other.  Ex. 4 (Meyst Reply Report) ¶ 132.  Each fluid container in the accused device is in fluid communication with the manifold *because the device has tubing and other components that allow or enable fluid to flow from the container to the manifold*. *Id.*  Thus, Cartessa's device infringes in the box when it is sold, even if no one ever unpacks the device, fills the containers with treatment fluid, and opens a solenoid valve to initiate the flow of treatment fluid.  *Id.*  In sum, there is no real dispute about the *structure* of the accused Cartessa device; the parties dispute whether the claim language should be construed to require the claimed system to have the ability to provide fluid from more than one container simultaneously.

[0018]  This paragraph should be disregarded because it lacks any evidentiary citation. *Rodriguez*, 1999 WL 459813, at *1 n.3.

[0019]  This paragraph should be disregarded because it contains only attorney argument and lacks any evidentiary citation. *Rodriguez*, 1999 WL 459813, at *1 n.3.

[0020]  This paragraph should be disregarded because it contains assertions about the proper construction of the asserted claims, a legal issue for the Court, rather than statements of fact. *Taveras*, 2020 WL 1501777, at *2.  However, Edge agrees that Cartessa accurately quoted portions of the asserted claims.

[0021]  Edge does not dispute that the solenoid valves are part of the structure that controls fluid flow in the accused device.  The touch screen, solenoid valves and manifold all contribute to controlling the flow of treatment fluid from the fluid containers and into supply conduit.  Ex. K (Meyst Report) at ¶ 71, p. 85.   However, Edge disputes Cartessa's construction of the claim language "wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit" to require that the manifold be the ***sole*** component that controls fluid flow.  No such language appears in the claims.  Ex. A at Claims 1 and 11.  Moreover, during claim construction, Cartessa never asked the Court to read such a requirement into the claims, and the Court never adopted any construction incorporating such a requirement.  Dkt. 48.

[0022]  As this paragraph is duplicative of Cartessa's Paragraph 15, Edge incorporates its response to that paragraph herein.

[0023]  As this paragraph is duplicative of Cartessa's Paragraph 13, Edge incorporates its response to that paragraph herein.

[0024]  Edge does not dispute that Cartessa is ███████████████████ ████████ a reseller of that device.  Ex. 5 at 68.  However, Edge does dispute Cartessa's assertion that it is a mere reseller that never activates the claimed systems.  Cartessa's CEO and

13

corporate representative, Gabe Lubin, testified that ███████████████████████████

██████████████████████████████████  Ex. 5 (Lubin Dep.) at 22-23.

Cartessa also provides customers with an installation guide for the accused device that instructs

them in the use of the device. *Id.* at 25-31; Ex. 6 (CARTESSA_0044178-87). ████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████  Ex. 5 at 71:22-74:15.

[0025]  This paragraph should be disregarded because it contains assertions about what the

asserted claims "require," a legal issue of claim construction for the Court, rather than statements

of fact. *Taveras*, 2020 WL 1501777, at *2. Moreover, the paragraph quotes small portions of

the claims out of context and inaccurately characterizes the claims.

[0026]  This paragraph should be disregarded because it contains assertions about what the

asserted claims "require," a legal issue of claim construction for the Court, rather than statements

of fact. *Taveras*, 2020 WL 1501777, at *2. Moreover, Cartessa quotes small portions of the

claims out of context and inaccurately characterizes the claims.

[0027]  This paragraph should be disregarded because it contains only attorney argument

about the construction of the asserted claims, a legal issue for the Court, and because it lacks any

evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1

n.3.

[0028]  Edge does not dispute that Cartessa instructs users to use the accused Skinwave

device, and that Dr. Duboys discusses this in his expert report. *See* Ex. 5 (Lubin Dep.) at 22-31;

Ex. 7 (user guide). To the extent this paragraph contains other alleged statements of fact, Edge

14

disputes those statements and objects to them as not supported by evidentiary citations. *Rodriguez*, 1999 WL 459813, at *1 n.3

[0029] Edge does not dispute that Cartessa teaches users to use treatment liquids in the accused Skinwave device, and that Dr. Duboys discusses this in his expert report. To the extent this paragraph contains other alleged statements of fact, Edge disputes those statements and objects to them as not supported by evidentiary citations. *Rodriguez*, 1999 WL 459813, at *1 n.3

[0030] Edge disputes Cartessa's assertion that Mr. Meyst acknowledged in his deposition "that the claimed system of the '052 Patent is not complete until fluid is in the containers." In the cited deposition testimony, Mr. Meyst merely testified that "You can't draw fluid [from a fluid container] unless there is fluid in it, that's correct." Ex. I at 269-70. He further testified that a device need not have liquid in its fluid containers to satisfy Claim 1. *Id.* at 270-71. In fact, Claim 1 only requires fluid containers that are ***configured to contain*** liquid treatment material. Ex. A at 21:16-20 ("the first fluid container and the at least the second fluid container being ***configured to contain*** a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid") (emphasis added). Similarly, the final limitation of Claim 1 requires a skin-treatment system "wherein, ***when the vacuum source is activated and the tip contacts the skin surface***, a suction force is created" that draws fluid from the fluid container the tip of the handpiece. *Id.* at 21:42-48 (emphasis added). It cannot be disputed that the accused device is a skin-treatment system "wherein, ***when the vacuum source is activated***" by the user, fluid is drawn from the fluid container to the handpiece tip. Ex. K (Meyst Report) ¶ 71. No part of Claim 1 requires the actual presence of treatment fluid in the fluid containers. Edge notes that the parties' dispute concerning what the claims "require" – namely, whether the claims require the actual presence of fluid in the fluid containers – is a legal issue for the Court,

15

not a factual dispute that could preclude summary judgment for Edge on infringement of Claim 1 of the '052 patent by Cartessa.

[0031]   Edge does not dispute that, when Cartessa ships the accused device in a box to a customer, the fluid containers are empty.  Edge disputes that "Cartessa is not in possession of the completed system because it does not have fluid in it," but Edge notes that this is a legal issue for the Court and not a factual dispute that could preclude summary judgment for Edge on infringement of Claim 1 of the '052 patent by Cartessa.

[0032]   This paragraph should be disregarded because it contains attorney argument about the construction of the asserted claims, a legal issue for the Court.  *Taveras*, 2020 WL 1501777, at *2.

[0033]   This paragraph should be disregarded because it contains a legal assertion, not a factual statement supported by evidentiary citations.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

[0034]   This paragraph should be disregarded because it does not contain a factual statement supported by evidentiary citations.  *Rodriguez*, 1999 WL 459813, at *1 n.3.  However, Edge does not dispute that it is asserting that Cartessa directly infringes the asserted claims.

## ALLEGED NON-INFRINGEMENT OF THE SHADDUCK PATENTS

[0035]   Edge does not dispute the factual assertions in this paragraph.

[0036]   Edge disputes Cartessa's characterization of the requirements of the asserted claims of the Shadduck patents.  For example, Claims 1, 4, and 6-8 of the '591 Patent requires a skin interfacing comprising "an abrading structure with substantially sharp edges for abrading tissue." Ex. 1 ('591 Patent) at Claims 1, 4, 6-8 (Although Cartessa identifies claims 1-4, claims 2 and 3 of the '591 patent have never been asserted in this case).  On the other hand, Claim 1 of the '716

16

Patent (and Claims 3, 4, 6, and 8-10, which ultimately depend therefrom) and Claim 15 of the '716 Patent (and Claim 16 which depends therefrom) do not include any "sharp" requirement. Instead, these claims only require "a skin interface with an abrading structure, said abrading structure comprising a plurality of ridge elements, wherein said ridge elements are configured to abrade skin" and "said working end comprising an abrading structure configured to selectively abrade skin"), respectively. Ex. 2 ('716 Patent) at Claims 1, 3, 4, 6, 8-10 and 15-16). Claim 11 of the '716 Patent is similar and requires "said working end comprising an abrading structure, wherein said abrading structure comprises a plurality of abrading elements configured to abrade skin, wherein each abrading element comprises a sharp edge." *Id*. at Claims 11-12, 14. Finally, Claim 1 (and Claims 2-4 and 6-9 which ultimately depend therefrom) of the '513 Patent require that the at least one surface element "comprises at least one sharp edge configured to abrade skin when the handheld device is moved relative to a skin surface"). Ex. 3 ('513 Patent) at Claims 1-4, and 6-9. Claim 10 (and Claims 11-12 and 14 which ultimately depend therefrom) of the '513 Patent require a "distal end comprising at least one surface element configured to selectively abrade skin." *Id*. at Claims 11-12 and 14.

[0037]  Edge does not dispute that internal structures, in both the Shadduck patents and the accused device, are structures found within the perimeter of the tip. However, Edge disputes Cartessa's characterization of the "abrading" requirement of the asserted claims for the same reasons set forth in response to Paragraph 36, above.

[0038]  This paragraph should be disregarded because it contains attorney argument about the construction of the asserted claims, a legal issue for the Court. *Taveras*, 2020 WL 1501777, at *2. Moreover, Cartessa misstates the terms to be construed. In addition to ruling that "abrade" and "sharp" should be given their ordinary meaning, the Court construed the phrase

17

"sharp edge configured to abrade skin." Dkt. 48 at 6-7. The Court explained that the parties' stipulated construction of this term "helps clarify that the 'configuration' of the edge refers to its physical positioning rather than, for example, something inherent in its design." Dkt. 48 at 6-7. However, the Court did not rule that the design of the abrading structure is irrelevant to whether the structure abrades the skin. *Id.* Edge does not dispute that, during claim construction, the Court gave the terms "sharp" and "abrade" their plain and ordinary meanings. *Id.*

[0039] Edge disputes most of the factual statements in this paragraph. While Edge does not dispute that the Shadduck patents include illustrations, Edge disputes that those illustrations are provided for the purpose of indicating whether an edge is sharp. Under settled law, patent figures are generally not drawn to scale unless the specification indicates otherwise. However, nothing in the Shadduck patents suggests that the illustrations were drawn to scale or were intended to illustrate examples of sharp or non-sharp edges. *See* Ex. 4 (Meyst Reply Report) at ¶¶ 91-92. The Shadduck Patents do not describe Figure 4 as showing "rounded features not configured to abrade." *See* Ex. 1 ('591 Patent) at 3:48. In fact, the word "round" appears only once in the entire Shadduck patent specification, when the specification states that the overall shape of the skin interface portion of the handpiece may be any shape, including round, oval or rectangular. *See id.* at 5:47-50 and Fig. 3 (showing skin interface 25 with an oval shape). Edge does not dispute that the ridges in Figure 4 are rounded. However, Edge disputes that Cartessa's ridges are as rounded as the ridges shown in Figure 4. Edge also disputes Cartessa's implicit argument that, if an edge shows rounding when viewed under magnification, it cannot be "sharp" as that term is used in the Shadduck patents. Ex. 4 (Meyst Reply Report) ¶¶ 75-76.

[0040] Edge does not dispute that the preferred embodiments identified as Type A systems and those identified as Type B systems have different characteristics, or that Cartessa has

18

accurately quoted portions of Dr. Duboys's deposition testimony.  Edge also does not dispute that the Type A embodiments – which are not covered by the asserted claims and are irrelevant to this case – have ridges without sharp edges.  The ridges in the Type A embodiment do not need to be sharp enough to abrade skin because, in those embodiments, abrasion is accomplished with crystals embedded in the treatment liquid.  *Id.* ¶¶ 88-92.

[0041]  Edge disputes that the internal structures in the accused Cartessa device are rounded such that they are not sharp.  *See* Edge's Response to Paragraph 45 below.  Edge does not dispute that Cartessa's expert represented that he used a zoom lens to magnify the edges of the internal structures.  However, Edge's expert explained that it is always possible to see curvature in an edge on a plastic structure if the image is sufficiently magnified.  *Id.* at ¶¶ 93-95 (explaining how magnification inaccurately enhances the appearance of rounding).  Dr. Jensen did just that, with the result that his images overstate the curvature in the edges of the internal structures.  *Id*.  Edge also does not dispute that the images its experts obtained were also magnified, blowing up the image in a manner that enhanced the curvature of the ridges' edges.

[0042]  Edge does not dispute that the images its experts obtained were also magnified, blowing up the image in a manner that emphasized the curvature.  *See* Ex. 4 (Meyst Reply Report) at ¶¶ 94 (explaining how magnification inaccurately enhances the appearance of rounding).  However, Edge disputes that the internal structures in the accused device have edges that are so rounded that they are not sharp.  *See* Edge's Response to Paragraph 45 below.

[0043]  Edge disputes that the internal structures in the accused device have rounded edges such that they are not sharp.  *See* Edge's Response to Paragraphs 41 and 42 above.

[0044]  Cartessa's assertion that an "object is objectively sharp when it displays sudden intersections between faces" should be disregarded because it is attorney argument.  *Taveras*,

19

2020 WL 1501777, at *2. Edge disputes Cartessa's implicit assertion that Dr. Jensen's discussion of dice provides a standard for defining what is "sharp" or otherwise shows that Cartessa's ridges lack sharp edges. During his deposition, Dr. Jensen testified that he did "did not use these dice to define whether something is sharp or not." Ex. H (Jensen Tr. Vol. I) at 76:3-9. Nor does Dr. Jensen use the word "sharp" to describe either set of dice; instead, he discusses the differences between "abrupt and rounded corners." Ex. C (Jensen NI Decl.) at ¶ 103. Edge does not dispute that Dr. Jensen's report discusses the angles of intersection on dice, which are not at issue in this case. *Id*. Edge also does not dispute that Dr. Jensen' report discusses light reflection in images of dice, which are not at issue in this case. *Id*.

[0045] Cartessa's assertion that "[a]pplying the straightforward understanding of sharp above to the device shows obviously rounded edges that do not meet any plain and ordinary meaning of sharpness" should be disregarded because it is primarily attorney argument on the issue of infringement and on the ordinary meaning of "sharp." *Taveras*, 2020 WL 1501777, at *2. Edge disputes that the appearance of rounded edges in blown up and zoomed in photos indicates a lack of sharpness. *See* Ex. 4 (Meyst Reply Report) at ¶¶ 94 (explaining how magnification inaccurately enhances the appearance of rounding). The internal structures of the accused device are tiny, with fifteen structures fitting within a tip having a width of just 15mm. *See* Ex. C (Jensen NI Report) at ¶ 133. Edge disputes that the appearance of rounding in magnified images establishes a lack of sharpness. *See* Ex. 4 (Meyst Reply Report) at ¶¶ 78-79, 95-96 (describing how a lack or presence of acute angles or rounding does not alone indicate sharpness); Ex. AC (Duboys Tr. Vol. I) at 207:15-19 (describing "sharp" medical tools with "rounded" edges), 208:13-22 (describing sharpness is a relative term). In addition, both of Edge's experts, Dr. Duboys and Mr. Meyst, performed extensive testing of the device and

20

Case 2:20-cv-06882-GRB-ST Document 78-92-4 Filed 07/06/22 Page 21 of 72 PageID #: 11384

determined that the internal structures are sharp. *See* Ex. L (Duboys Opening Report) at ¶¶ 50-79; ¶ 59 ("Inside the perimeter are fifteen ridge structures that *felt sharp and, collectively rough to the touch*") (emphasis added), ¶ 61 ("Based on this initial inspection and my experience, I concluded that the fifteen ridge structures would be sharp enough to abrade the skin when the device is translated across the skin in use"), ¶ 91 ("based on my observations, it is my opinion that the accused device comprises at least one sharp edge configured to abrade skin"); Ex. P (Duboys Reply Report) at ¶ 56 ("However, as a medical practitioner with extensive experience in the use of facial treatment devices, I also separately and independently concluded that a person of ordinary skill in the art would conclude that the surface elements of the tip of the accused device are sharp. . . . . I conducted a visual and physical inspection of the tips of the accused device, as well as reviewing photos provided by Richard Meyst. . . . My inspection involved, in part, observing the effects of the tip of the accused device when suction is applied and the accused device is translated across a person's skin. . . . I also felt the inside of the tip using my fingers and observed that the fifteen surface elements felt sharp and, collectively, rough to the touch. . . . From the totality of these observations, I was able to conclude that structures were "sharp" and "sharp enough to abrade."), *see also id*. at ¶¶ 63, 68; Ex. K (Meyst Opening Report) at ¶¶ 51, 59, 63 (describing Cartessa's ridges as having sharp edges with "minimal rounding"); Ex. 4 (Meyst Reply Report) at ¶ 75 ("Only if the rounding (radius of curvature) is significant – compared to the dimensions of the surfaces that intersect to form the edge – will the structure have a rounded edge rather than a sharp edge."), 78 ("Surfaces that come together at larger angles can be sharp. For example, trocar blues used in surgery . . . have extremely sharp edges formed by surfaces that do not intersect at acute angles. The trocar is sharp because the radius of curvature of the edge is small."). In addition, if Cartessa's motion is allowed to proceed, Edge

21

will submit physical samples of the Cartessa tips so that the Court may examine their ridges, and Edge will argue that whether those ridges are "sharp" is a disputed question of fact for the jury to decide.  Edge also disputes Cartessa's "straight forward understanding of sharp" as requiring "sudden intersections between faces."  First, this is not the meaning that Dr. Jensen applied in rendering his opinion that the internal structures of the accused device are not sharp.  The meaning of "sharp" Dr. Jensen applied in forming his opinions required that "sharp items can provide a sensation of pain when one presses on them, or in certain contexts, can tear or puncture a surface." *See* Ex. C (Jensen NI Report) ¶ 91; *see also* Ex. H (Jensen Tr. Vol. I) at 91:8-92:8, 92:16-93:5.  He also opined that he has "examined the tips and I do not find the structures sharp . . . They do not provide a sensation of pain when pressed on them." *See* Ex. C (Jensen NI Report) ¶ 97.  However, the Shadduck patents state that abrasion should occur "in a controllably gentle manner that is below any threshold of significant pain."  Ex. 1 ('591 Patent) at 5:22-25; *see also id* at 7:62 (referring to "painless" abrasion); Ex. P (Duboys Reply) ¶ 53 (opining that "a person of ordinary skill in the art would recognize that it would be undesirable for a facial treatment device to be configured to scratch or otherwise cut the skin, or to even cause physical pain to the subject or patient.").  Second, the Shadduck patents do not require a "sharp" edge to have a particular angle or range of angles.  *See* Ex. 1 ('591 patent) at 7:30-8:36; Ex. 4 (Meyst Reply) at ¶ 79.

[0046]  Edge disputes that "arcs are the dominant feature" of the accused device.  *See* Ex. 4 (Meyst Reply Report) ¶ 94 (explaining how magnification inaccurately enhances the appearance of rounding).  Edge disputes that "small acute angles" are required for an edge to be "sharp." *See id.* ¶¶ 75, 78-79, 95-96 (describing how a lack or presence of acute angles or rounding does not alone indicate sharpness); Ex. AC (Duboys Tr. Vol. I) at 207:15-19 (describing "sharp"

22

medical tools with "rounded" edges), 208:13-22 (describing sharpness is a relative term). The internal structures of the accused device, irrespective of the shape when magnified and blown up, are sharp. *See* Ex. L (Duboys Opening Report) at ¶¶ 50-79; ¶ 59 ("Inside the perimeter are fifteen ridge structures that *felt sharp and, collectively rough to the touch*") (emphasis added), ¶ 61 ("Based on this initial inspection and my experience, I concluded that the fifteen ridge structures would be sharp enough to abrade the skin when the device is translated across the skin in use"), ¶ 91 ("based on my observations, it is my opinion that the accused device comprises at least one sharp edge configured to abrade skin"); Ex. P (Duboys Reply Report) at ¶ 56 ("However, as a medical practitioner with extensive experience in the use of facial treatment devices, I also separately and independently concluded that a person of ordinary skill in the art would conclude that the surface elements of the tip of the accused device are sharp. . . . I conducted a visual and physical inspection of the types of the accused device, as well as reviewing photos provided by Richard Meyst. . . . My inspection involved, in part, observing the effects of the tip of the accused device when suction is applied and the accused device is translated across a person's skin. . . . I also felt the inside of the tip using my fingers and observed that the fifteen surface elements felt sharp and, collectively, rough to the touch. . . . From the totality of these observations, I was able to conclude that structures were "sharp" and "sharp enough to abrade."), *see also id*. at ¶¶ 63, 68; Ex. K (Meyst Opening Report) at ¶¶ 51, 59, 63 (describing sharp edges with "minimal rounding"); Ex. 4 (Meyst Reply Report) at ¶¶ 75 ("Only if the rounding (radius of curvature) is significant – compared to the dimensions of the surfaces that intersect to form the edge – will the structure have a rounded edge rather than a sharp edge."), 78 ("Surfaces that come together at larger angles can be sharp. For example, trocar blades used in surgery . . . have extremely sharp edges formed by surfaces that do not

intersect at acute angles.  The trocar is sharp because the radius of curvature of the edge is small.").  In addition, if Cartessa's motion is allowed to proceed, Edge will submit physical samples of the Cartessa tips for the Court to examine, and Edge will argue that whether the ridges on those tips are "sharp" is a disputed question of fact for the jury to decide.

[0047]  This paragraph should be disregarded because it contains only attorney argument, and because it lacks any evidentiary citation.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

[0048]  This paragraph should be disregarded because it contains only attorney argument about the construction of the asserted claims, a legal issue for the Court, and because it lacks any evidentiary citation.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  Edge also disputes that it proposed that "sharp" be construed to mean "sufficiently sharp to abrade."   Edge's proposed construction was "sufficiently sharp to abrade skin, but not necessarily sharp enough to cut the skin."  Dkt. 48 at 5.   Edge disputes that its proposed construction – which simply combined the constructions of two other district courts – would have read the sharp limitation out of the claims.  What is "sharp" is dependent on context.  *See* Ex. AC (Duboys Tr. Vol. I) at 209:11-20; Ex. 4 (Meyst Reply Report) at ¶¶ 72-74; Ex. P (Duboys Reply Report) at ¶¶ 65-66; Ex. H (Jensen Tr. Vol. I) at 57:10-9.  For example, a butter knife is sharp in the context of cutting butter, but not in the context of cutting steak.  *See* Ex. 4 (Meyst Reply Report) at ¶ 71; Ex. AC (Duboys Tr. Vol. I) at 208:17-22.  Edge's proposed construction highlighted the contextual nature of the relative term "sharp."   Edge disputes Cartessa's suggestion that the Court "rejected [Edge's] improper broadening."   The Court's claim construction opinion included no particular comment on either party's proposed construction – it simply declined to adopt either party's construction.  *See* Dkt. 48 at 5-6.

[0049]  This paragraph should be disregarded because it contains only attorney argument about the construction of the asserted claims, a legal issue for the Court, and because it lacks any evidentiary citation.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  Edge disputes that its proposed claim construction "attempt[ed] to make sharp meaningless."  *See* Response to Paragraph 48.  Edge notes that the Court also rejected Cartessa's proposed construction – "edge[s] shaped for cutting" – yet Cartessa has repeatedly argues that cutting and pain are requirements for a structure to be "sharp."  *See* Ex. C (Jensen NI Report) at 72; *see also* Ex. H (Jensen Tr. Vol. I) at 91:8-92:8, 92:16-93:5.

[0050]  Edge disputes that Dr. Duboys defined sharp as capable of abrading.  Dr. Duboys independently evaluated sharpness.  *See* Ex. L (Duboys Opening Report) at ¶¶ 50-79; ¶ 59 ("Inside the perimeter are fifteen ridge structures that ***felt sharp and, collectively rough to the touch***") (emphasis added), ¶ 91 ("based on my observations, it is my opinion that the accused device comprises at least one sharp edge configured to abrade skin"); Ex. P (Duboys Reply Report) at ¶ 56 ("However, as a medical practitioner with extensive experience in the use of facial treatment devices, I also separately and independently concluded that a person of ordinary skill in the art would conclude that the surface elements of the tip of the accused device are sharp. . . . . I conducted a visual and physical inspection of the types of the accused device, as well as reviewing photos provided by Richard Meyst. . . . My inspection involved, in part, observing the effects of the tip of the accused device when suction is applied and the accused device is translated across a person's skin. . . . I also felt the inside of the tip using my fingers and observed that the fifteen surface elements felt sharp and, collectively, rough to the touch. . . . From the totality of these observations, I was able to conclude that structures were 'sharp' and 'sharp enough to abrade.'").  Mr. Meyst also determined that the internal structures were sharp,

independent of their ability to abrade.  Ex. K (Meyst Opening Report) ¶¶ 51, 59, 63 (describing sharp edges with "minimal rounding"); Ex. 4 (Meyst Reply Report) ¶¶ 73-76. In addition, if Cartessa's motion is allowed to proceed, Edge will submit physical samples of the Cartessa tips for the Court to examine, and Edge will argue that whether the ridges on those tips are "sharp" is a disputed question of fact for the jury to decide.

[0051]  This paragraph should be disregarded because it contains attorney argument about the construction of the asserted claims.  *See Taveras*, 2020 WL 1501777 at \*2.  Edge disputes that Dr. Duboys defined sharp as capable of abrading in his reply expert report.  *See* Ex. P (Duboys Reply Report) at ¶ 56 ("However, as a medical practitioner with extensive experience in the use of facial treatment devices, I also separately and independently concluded that a person of ordinary skill in the art would conclude that the surface elements of the tip of the accused device are sharp. . . . . I conducted a visual and physical inspection of the types of the accused device, as well as reviewing photos provided by Richard Meyst. . . . My inspection involved, in part, observing the effects of the tip of the accused device when suction is applied and the accused device is translated across a person's skin. . . . I also felt the inside of the tip using my fingers and observed that the fifteen surface elements felt sharp and, collectively, rough to the touch. . . . From the totality of these observations, I was able to conclude that structures were "sharp" and "sharp enough to abrade."); *see also* Response to Paragraph 50.

[0052]  Edge disputes Cartessa's characterization of Dr. Duboys's deposition testimony without the proper context.   In context, Dr. Duboys opined that with suction force drawing skin into tight contact with small dome-shaped objects, the dome-like objects might be sharp. *See* Ex. AC (Duboys Tr. Vol. I) at 239:25-241:6.  In this context, Dr. Duboys disagreed that the tip design that Dr. Jensen imagined, but never developed or tested, was necessarily non-infringing.

*Id.* (testifying that, given the suction force that pulls the skin against with tip's internal features, a tip with dome-like features might be "sharp"). Because the proposed design was not provided to Dr. Duboys to inspect, his testimony on that design is hypothetical and irrelevant to whether the accused device infringes.

[0053] This paragraph should be disregarded because it is attorney argument. *See Taveras*, 2020 WL 1501777, at *2. Edge disputes Cartessa's assertion that Dr. Duboys has collapsed sharpness into abrasion, and that he supposedly failed to provide any analysis of "sharp." Edge, through both Dr. Duboys and Mr. Meyst, provided extensive, independent analysis of "sharp" in relation to the accused device. *See* Response to Paragraphs 41-52. In addition, if Cartessa's motion is allowed to proceed, Edge will submit physical samples of the Cartessa tips for the Court to examine, and Edge will argue that whether the ridges on those tips are "sharp" is a disputed question of fact for the jury to decide.

[0054] Edge disputes that the Shadduck patent figures provide guidance as to what ridge contours are capable of abrading skin. *See* Response to Paragraphs 39-40. In addition, Cartessa reads a "sharp" requirement into abrasion, defining Figure 9 as "showing sharp features configured to abrade." While, as discussed above, the terms are related, it is undisputed that a structure need not be sharp to abrade. *See* Ex. S (Jensen Report) at ¶¶ 78, 81-84; Ex. 4 (Meyst Reply) at ¶ 69. As noted above, not all of the asserted claims contain a "sharp" limitation.

[0055] Edge disputes Cartessa's assertion that "Dr. Duboys agrees that this is the difference between Type A and Type B systems is that Type B are abrading structures and Type A do not." The cited testimony Cartessa relies on is discussing sharpness, not the ability to abrade. *See also* Response to Paragraphs 39-40, 54.

27

[0056] Edge disputes Cartessa's characterization of Mr. Meyst's testimony out of its context. When asked about a cross-section of the particular ridge elements labeled 255a in Figure 9, Mr. Meyst testified that "Perhaps it looks like a roof on a building, a simple . . . a simple roof with an apex tapered down from either side of that." Ex. I (Meyst Tr. Vol. II) at 134:1-8. When asked whether the ridges "have substantially sharp apexes," Mr. Meyst agreed that, *in that particular embodiment*, the substantially sharp apexes served as "agents of abrasion." *Id*. at 129:10-13. He also agreed that, in the preferred embodiment of Figure 9, the "peak of the roof" would contact the skin first. *Id*. at 134:16-20. However, Edge disputes Cartessa's suggestion that Mr. Meyst testified that, to infringe, a device must have abrading structures shaped like the specific ridges shown in the preferred embodiment. Cartessa improperly cobbles together isolated pieces of Mr. Meyst's testimony out of context, mischaracterizing the testimony. In addition, Edge disputes that the scope of any asserted claim should be limited to a single embodiment, as Cartessa suggests.

[0057] Edge disputes that the accused device has "a flat surface parallel with the skin" as the tip is "translated across" the skin. In use, the suction pulls the skin into the tip, causing the skin to wrap around the corners that define to top surface of the ridge. Ex. 4 (Meyst Reply Report) ¶¶ 100-105 ("In fact, in order for the visible indentations to be created, the skin of the subject must not only contact the ridges, but must go around the ridges and at least partially into gaps between the ridges."), 112. The skin will also contact the "vertical" edges on the ridges. *Id*. at ¶¶ 112-15. As shown below, when the suction is on, the ridges contact the skin with enough force to leave deep impressions in the skin, impressions in which the edges that define the top surfaces of the ridges are clearly visible.

28



Ex. C (Jensen NI Report) at ¶ 123.



(large tip, median setting)

Ex. K (Meyst Opening Report) at ¶ 51. For these same reasons, Edge also disputes Cartessa's

conclusion that, because the accused device has ridges with flat top surfaces, those ridges are not

configured to abrade skin.

[0058] Edge does not dispute that the Court, upon consent of the parties, construed "sharp

edge configured to abrade skin" to mean "sharp edges that are positioned such that the sharp

edge abrades tissue." Dkt. 48 at 6. Edge does not dispute that the Court also stated "[t]his

stipulated construction helps clarify that the 'configuration' of the edge refers to its physical

positioning rather than, for example, something inherent it its design." Edge evaluated the

positioning of the internal structures. Ex. L (Duboys Opening Report) at ¶ 98. As can be seen in

the image below, the fifteen internal structures of the accused device are positioned in a circle. *Id.* This positioning results in at least one sharp edge (identified with red lines) being perpendicular to the direction of movement when the tip is translated in any direction. With this positioning, friction between the sharp-edged surface elements and the skin is formed, resulting in the removal or abrasion of skin. Ex. L (Duboys Opening Report) at ¶ 98.



*Id.*

[0059]  Edge disputes Cartessa's assertion that none of Edge's tests show abrasion occurred. On the contrary, as explained in detail herein, Edge's technical experts both performed testing which established that the ridges mechanically abrade the skin when the accused device is used.

31

Ex. L (Duboys Report) ¶¶ 55-75, 90-91, 95-99; Ex. P (Duboys Reply Report) ¶¶ 67-81; Ex. K (Meyst Report) at pp. 33-35; Ex. 4 (Meyst Reply) ¶¶ 100-107, 123.  In addition, as also discussed herein, Edge disputes Cartessa's claim that Dr. Duboys relied only on reddening of the skin to establish abrasion.  Edge has provided extensive evidence of abrasion through physical inspections of the accused device, testing of the accused device, and evaluation of Cartessa's characterizations of the accused device.  *See* Ex. L (Duboys Opening Report) at ¶¶ 50-54.  First, Dr. Duboys conducted an inspection of the accused device.  *See* Ex. L (Duboys Opening Report) at ¶¶ 55-61.  During this initial inspection, Dr. Duboys visually inspected the tips used with the accused device.  *Id*. at ¶¶ 55-58.  He identified fifteen structures with edges, shown in red lines in the below and above images.



Ex. L (Duboys Opening Report) at ¶ 58. As shown in the image in Edge's response to Paragraph 58, these fifteen structures with edges (shown in red) are arranged in a circular pattern such that at least one edge is positioned to be perpendicular to the direction of movement when the tip is translated in any direction. *Id*. at ¶ 98. Next, Dr. Duboys used his fingers to physically examine the tip, observing that the perimeter was "smooth," while the fifteen ridges structures "felt sharp and, collectively, rough to the touch." *Id*. at ¶ 59. For his part, Mr. Meyst obtained images depicting how the tip interacts with the skin when the vacuum is activated, and opined that that the ridges contacting the skin will abrade. Ex. K (Meyst Opening Report) at ¶ 51; *see also* Ex. 4 (Meyst Reply) at ¶ 108-111.



(large tip, median setting)

Ex. K (Myest Opening Report) at ¶ 51. Dr. Duboys also reviewed these images, explaining "skin is pulled into the aperture created by the periphery and brought into contact with the fifteen raised structures. The contact is strong enough that, in addition to transferring ink to the skin, the raised structures left visible indentations. In view of this contact, which I could also feel when

33

the device was used on my face and leg, it is my opinion that when the device is translated the structures will abrade the skin." Ex. L (Duboys Opening Report) at ¶ 60. The below image, obtained by Cartessa, shows this same strong contact evidenced by indentations.



*See* Ex. C (Jensen NI Report) at ¶ 123. Dr. Duboys also both performed and was the subject of treatments using the accused device, during which he observed the formation of redness and confirmed that the patient could feel the internal structures. Ex. L (Duboys Report) at ¶¶ 62-71. Dr. Duboys's treatment inspection was performed using saline, eliminating any argument that abrasion is caused merely by acids or other chemicals in the serums. *Id.* Next, Dr. Duboys evaluated whether the accused device was abrading skin by determining that skin was removed during treatment. Using a water insoluble Sharpie® pen, Dr. Duboys marked his leg. *Id.* at ¶ 72. To confirm that the saline had no effect on the removal of the marker, Dr. Duboys washed the

line with saline, resulting in no visible change to the line. *Id.* Dr. Duboys then treated the line using the accused device (again with saline) and, as shown in the below before and after photos, the device removed a significant amount of ink-impregnated skin.




*Before treatment after saline rinse*  *After 45 sec treatment*

Ex. L (Duboys Opening Report) at ¶ 73. Dr. Duboys also performed both wet and dry treatments using the accused device. In both treatments abrasion occurred. *Id.* at ¶ 75.



(Before Treatment)  (wet treatment)  (dry treatment)

*Id.* Finally, Dr. Duboys testified that he observed "detritus within the [waste] container, and that's a combination of skin cells . . . as what is contained within the pores of skin" after the treatments. *See* Ex. AC (Duboys Tr. Vol. I) at 228:24-229:20. Edge also disputes Cartessa's

35

suggestion that, for a device to infringe, it must abrade only mechanically, by virtue of the internal structures. Nothing in the asserted claims precludes a device from also abrading chemically, or from also abrading mechanically by virtue of the perimeter. As can be seen below, the internal structures are more tightly in contact with the skin than the perimeter.



Ex. C (Jensen NI Report) at ¶ 123. In addition, a simple tactile inspection shows that the perimeter is smooth, while the internal structures are "sharp" and "rough." Ex. L (Opening Duboys Report) at ¶ 59. Thus, if the perimeter is abrading, the internal structures necessarily are as well. *See id*. (showing only the perimeter and the internal structures to be in contact with the skin). The asserted claims do not require that the internal structures be the sole source of abrasion. *See* Ex. 1 ('591 Patent) at claim 1, Ex. 2 ('716 Patent) at claims 1, 11 and 15; Ex. 3 ('513 Patent) at claims 1 and 10. Finally, Cartessa's own statements support that abrasion is occurring. Cartessa's brochure states that the accused device performs "cleansing & ***exfoliation***

*by vacuum.*" Ex. 18 at EDGE-CARTESSA_0011975 (emphasis added); Ex. L (Duboys Opening Report) at ¶ 77. Cartessa's website also advertises the accused device stating, "[t]his professional skincare machine incorporates solutions . . . using hydraderm*abrasion.*" Ex. 19 at EDGE-CARTESSA_0011970 (emphasis added); Ex. L (Duboys Opening Report) at ¶¶ 76, 78. In addition, Cartessa's internal documents confirm abrasion. In email correspondence, Cartessa Founder and CEO, Gabe Lubin, instructed Cartessa's Chief Financial Officer, Jon Banks, ███

████████████████████████████ Ex. 20 at CARTESSA_0002411 (emphasis added).

██████████████████████████████████████████

████████████████████████ *Id.* (emphasis added). In addition, Crystal Romano, Cartessa's Vice President of Emerging Technologies responsible for the accused device, described the tips of the accused device as ███████████████

████████████████████████████ Ex. 25 at CARTESSA_0109615 (emphasis added); Ex. 5 (Lubin Tr.) at 114:18-22. Ms. Romano also stated that ████████████████████████████ *Id.* (emphasis added).

## ALLEGED FAILURE TO MARK

[0060] This paragraph should be disregarded because it contains a legal assertion, not a factual statement supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. However, Edge does not dispute that 35 U.S.C. 287(a) states: "Patentees … selling within the United States any patented article … may give notice to the public that the same is patented . . . by fixing thereon the word 'patent' or the abbreviation 'pat,'... together with an address of a posting on the Internet . . that associates the patented article with the number of the patent, or when ... this can not be done, by fixing to it, or the package

wherein one or more of them is contained, a label containing a like notice." Edge also does not dispute that 35 U.S.C. 287(a) states: "In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which even damages may be recovered only for infringement occurring after such notice."

[0061] Edge disputes the assertions in this paragraph. During the deposition of Edge's corporate witness, Mr. Carroll Lamarque, counsel explained that the witness was not an attorney or expert and that he was not designated to read patent claims and determine whether products are covered by patents, but rather to discuss what the company knows about *the products* Edge has alleged are covered by the asserted patents. Ex. R (Edge Corp. Tr. at 50:24-51:15). Cartessa's counsel elected to ask, "what products does Edge provide and ... what patents are practiced by those products?" *Id*. at 52:19-21. When the witness could not answer this specific question, Cartessa's counsel moved on, electing not to ask about particular devices or place Edge's patent website, which lists patents Edge alleges are practiced by its devices, in front of the witness to refresh his recollection. Edge's technical experts, however, did opine that Edge's products are covered by the asserted patents.

[0062] Edge disputes Cartessa's assertion that Edge sells individual handpieces to the public. Edge does not sell handpieces on the open market; rather, Edge sells replacement handpieces only to clients who already own a HydraFacial device. Ex. R (Lamarque Tr.) at 114:21-24; Ex. V (Duboys Rebuttal Report) at ¶ 97; Ex. N (Duboys Tr. Vol. II) at 386:2-10. Edge requires proof that the client already owns a HydraFacial device in order to purchase a replacement handpiece. Ex. N (Duboys Tr. Vol. II) at 386:11-19 (testifying that Edge required proof of customer status and previous purchase of a HydraFacial before selling a replacement

38

handpiece). Edge does not dispute that the handpiece has its own SKU number – this is necessary to track sales of replacement parts. If Cartessa is allowed to proceed with a motion for summary judgment, Edge will submit a declaration from an Edge employee stating that all Edge devices and parts, including replacement parts, have SKU numbers in Edge's system.

[0063] Edge does not dispute that, when a replacement handpiece is shipped to an owner of a HydraFacial device, the replacement handpiece is shipped in its own box. Ex. N (Duboys Tr. Vol. II) at 386:11-387:6. Edge also does not dispute that, when a HydraFacial device is shipped, the handpiece, tubing, bottles, and other loose parts are boxed separately within a larger box and assembled by a customer service representative or the customer. Ex. R (Lamarque Tr) at 159:7-16.

[0064] Edge disputes that Cartessa has shown that the handpiece, alone, falls within the scope of any asserted patent. Dr. Jensen opined only that the handpiece falls within the scope of Claim 1 of the '646 Patent, which is no longer asserted. *See* Ex. S (Jensen Opening Report) at ¶ 405. Dr. Jensen did not prepare a claim chart for any other asserted claim. *Id*. at ¶ 406; Ex. 8 (Jensen Tr. Vol II) at 360:21-361:1; 366:3-17. The claims of the patents that remain in the case are not directed to handpieces, but to "systems" for treating skin, not handpieces. *See, e.g*, Ex. V (Duboys Responsive Report) ¶ 98; Exs. 1-3 (Shadduck patents). The handpiece alone is not a complete system and cannot treat skin. Even the claims of the (unasserted) '646 patent require more than a handpiece. For example, Claim 1 of the '646 patent requires a vacuum source ("at least one first port being in fluid communication with a vacuum source via at least one waste passageway" and "wherein the vacuum source is configured to create a vacuum within the at least one waste passageway and the working end portion, and wherein the vacuum source is configured to simultaneously deliver a treatment media from the hydration treatment media

source to the working end portion and remove spent treatment media away from the working end via the at least one passageway"). Ex. 26 ('646 patent) at Claim 1. Dr. Jensen admits that the vacuum is in the freestanding tower portion of the device, not the handpiece. *See* Ex. S (Jensen Opening Report) at ¶ 405; Ex. 8 (Jensen Tr. Vol. II) at 361:12-362:20. Cartessa's only evidence that the handpiece is covered by the remaining Shadduck Patents is Dr. Jensen's opinion that "a similar chart could be made for each of the Shadduck patents," and Edge's identification of *entire devices* (the Tower MD, the Tower Elite, and the Allegro) as being covered by the Shadduck patents. *See* Ex. S (Jensen Opening Report) at ¶ 406. As Dr. Jensen's analysis of the unasserted '646 patent fails to show that the handpiece itself, independent of the remainder of the device, meets all limitations of any claim of the '646 patent, Cartessa has similarly failed to show that the handpiece itself, independent of the whole device, is covered by any other Edge patent. In addition, like the unasserted '646 patent, each asserted claim of the remaining Shadduck patents requires a vacuum source or aspiration. *See* Ex. 1 ('591 patent) at claims 1 and 10; Ex. 2 ('716 patent) at claims 1, 11, and 15; Ex. 3 ('513 patent) at claim 1; *see also* Ex. V (Duboys Rebuttal Report) at ¶ 98. Cartessa's reliance on Dr. Duboys's testimony regarding whether the handpiece is covered by ***Claim 1*** of the '513 Patent is misplaced as Dr. Duboys is not an engineer and repeatedly stated that his "opinions will focus primarily on the effects of the accused device on the skin, methods of using the accused device, and the advantages and disadvantages of various skin-treatment systems." Ex. L (Duboys Opening Report) at ¶ 14.

[0065] Edge does not dispute that the Handpiece User Manual indicates that patents covering the device may be found on the Edge Patent Website. Ex. 9 (Exhibit 37 Lamarque Dep). However, the handpiece, standing alone and independent of a HydraFacial device, is not covered by a patent. This is confirmed by Edge's patent website, which does not independently

list the handpiece, but rather identifies entire devices (which, for example, include handpieces and numerous other components that collectively comprise the HydraFacial device) covered by Edge's patents. Ex. 23 (Edge patent webpage), Ex. 15 (Edge patent webpage); *see also* Ex. S (Jensen Opening Report) at ¶ 422. It is undisputed that the main body of the HydraFacial device includes a sticker physically marking the device as a whole and directing users to Edge's patent website. Ex. S (Jensen Opening Report) at 00425; Ex. 10 (EDGE-CARTESSA_1059914). Edge does not dispute that the handpiece user manual is copyrighted by Edge.

[0066] Edge disputes that the evidence it provided does not show marking of the HydraFacial devices, which include their handpieces. For example, Edge identified images of the label affixed to the body of the Elite device. Ex. S (Jensen Opening Report) at 00425; Ex. 10 (EDGE-CARTESSA_1059914); Ex. V (Duboys Rebuttal Report) at ¶ 99. Edge also identified exemplary documents and advertising identifying the HydraFacial Tower Elite, as the full name of the "Elite" device. Ex. S (Jensen Opening Report) at 00425; Ex. 11 (EDGE-CARTESSA_0846476); Ex. 12 (EDGE-CARTESSA_0846615); Ex. 13 (EDGE-CARTESSA_0162760); Ex. 14 (EDGE-CARTESSA_0167110-112); Ex. 24 (EDGE-CARTESSA_0411960). These documents are relevant to whether the "Tower" device on the HydraFacial patent website would be understood to refer to Edge's tower-style device regardless of how it is branded. Ex. S (Jensen Opening Report) at 00425. Edge also disputes the underlying assumption in this paragraph, namely, that Edge was required to mark the handpiece separately from the rest of the HydraFacial device to which it is attached.

[0067] Cartessa provides no citation for its assertion that "The handpiece is of a character that could be physically marked." Thus, this assertion may be disregarded. *Rodriguez*, 1999 WL 459813, at *1 n.3. In any event, Edge has not investigated whether it would have been possible

41

to mark its patent numbers directly on the handpieces, and for that reason Edge disputes Cartessa's assertion. Edge also disputes the underlying assumption that Edge was required to mark the handpiece separately from the rest of the HydraFacial device to which it is attached. As discussed in response to Paragraph 64, the handpiece alone is not covered by any claim of an asserted patent and therefore need not be marked separately from the rest of the device; thus whether it is "of a character that could be marked," "has physical markings on it," or could be marked with patent numbers placed is irrelevant. HydraFacial devices are marked with a sticker on their console. Ex. S (Jensen Opening Report) at 00425; Ex. 10 (EDGE-CARTESSA_1059914); Ex. V (Duboys Rebuttal Report) at ¶ 99.

[0068] Edge does not dispute that it has a facility in Long Beach, California, and that labeling is performed there. Edge does not dispute that the employees at its Long Beach facilities are Edge employees. For the reasons explained above, Edge does not dispute that it does not mark patent numbers on the handpiece portions of its devices because the handpiece alone not covered by any claim of an asserted patent.

[0069] Edge disputes that the handpiece is not physically marked. As discussed in response to Paragraph 64, because the handpiece alone is not covered by any claim of an asserted patent, the handpiece is marked insofar as it is part of a patented HydraFacial skin-treatment system that is marked. Edge does not dispute that it marks its HydraFacial devices by placing a sticker on the console portion of each device, and that it does not place the sticker on the device's handpiece. Edge disputes Cartessa's assertion that "Plaintiffs attempted to mark by including of a website in a manual." HydraFacial devices as a whole, including the handpiece, are marked with a sticker on the console body. Ex. S (Jensen Opening Report) at 00425; Ex. 10 (EDGE-CARTESSA_1059914); Ex. V (Duboys Rebuttal Report) at ¶ 99.

[0070]  Edge disputes that the handpiece is not physically marked.  As discussed in response to Paragraph 64, the handpiece alone is not covered by any claim of an asserted patent and therefore need not be marked separately from the rest of the HydraFacial device.  Edge also disputes Cartessa's assertion that "Plaintiffs attempted to mark by including of a website in a manual."  HydraFacial devices as a whole, including the handpiece, are marked with a sticker on the console body.  Ex. S (Jensen Opening Report) at 00425; Ex. 10 (EDGE-CARTESSA_1059914); Ex. V (Duboys Rebuttal Report) at ¶ 99.  Edge does not dispute that its website does not associate any patent number with a handpiece alone, that is, a handpiece separate from any complete HydraFacial system.

[0071]  This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  Edge disputes the statements in this paragraph for the same reasons set forth in response to Paragraphs 62-70.

[0072]  The first sentence should be disregarded because it contains a legal assertion and attorney argument, and it is unsupported by any evidentiary citation.  *Rodriguez* 1999 WL 459813, at *1 n.3; *Taveras*, 2020 WL 1501777, at *2.  Edge disputes that it failed to properly mark its products.  HydraFacial devices as a whole, including the handpiece, are marked with a sticker on the console body.  Ex. S (Jensen Opening Report) at 00425; Ex. 10 (EDGE-CARTESSA_1059914); Ex. V (Duboys Rebuttal Report) at ¶ 99.  Edge does not dispute that it maintained two websites before this lawsuit was filed.  However, to the extent that Cartessa is suggesting that the two patent web pages contained different content (e.g., different patent numbers, product images or product names) relating to the patented Edge devices at issue, Edge

43

disputes that suggestion. *Compare* Ex. 23 (EDGE-CARTESSA_1059732-33) at EDGE-CARTESSA_1059732 *with* Ex. 15 (EDGE-CARTESSA_0013256-59) at EDGE-CARTESSA_0013256.

[0073]  Edge does not dispute that between 2016 and at least February 17, 2022, it did not modify its websites to add new patents.

[0074]  Edge does not dispute that it did not add new products to its patent websites between 2016 and February 17, 2022.  However, the Elite iteration of Edge's Tower product was launched in 2016 and "is essentially the same device" as Edge's other tower-style devices, such as the Tower MD, because the products are structurally and functionally the same and differ only in their branding and programming.  *See* Ex. S (Jensen Opening Report) at ¶ 420; Ex. U (Holcomb Tr) at 118:8-10, 117:11-15, 118:18-24; Ex R (Lamarque Tr) at 149:12-22.

[0075]  Edge does not dispute that its patent websites were updated to change the brand name of the Delphia Microdermabrasion device to the HydraFacial Microdermabrasion device.

[0076]  Edge does not dispute that the HydraFacial Elite meets all limitations of at least one claim from each asserted patent.

[0077]  Edge does not dispute that the HydraFacial Elite and HydraFacial Tower MD are technically different products, in that they have different brand names and slightly different programming.  However, the HydraFacial Elite and the HydraFacial Tower MD are the same "Tower" product line, are structurally and functionally the same, and have identical appearances. Ex. U (Holcomb Tr) at 118:8-10, 117:11-15, 118:18-24; Ex R (Lamarque Tr) at 149:12-22. Edge does not dispute that the only difference between the Elite and the Tower MD is in the software.  For example, when the device is turned on, the software causes the current brand name of the device to appear on the device's screen.  Ex. U (Holcomb Dep.) at 120-21.

[0078]   Edge disputes the assertions in this paragraph to the extent they treat the Elite and the Tower as unique products.  *See* Response to Paragraphs 74 and 77.  However, Edge does not dispute that its Tower line, including both the Tower MD and the Elite iterations, are covered by at least one claim of each of the asserted patents.

[0079]   This paragraph should be disregarded because it is unsupported by any evidentiary citation.  *Rodriguez* 1999 WL 459813, at *1 n.3.  Edge does not dispute that the Tower MD and the Elite have different SKU numbers.  Edge disputes Cartessa's assertion that the two devices are sold at different prices—the Tower MD was phased out beginning in 2016 ███████████

██████████████████████   *See* Ex. 16 (EDGE-CARTESSA_1050505).

[0080]   Edge does not dispute that it no longer sells the Tower MD iteration of its tower-style device and has been phasing out the product since it rebranded the product with the "Elite" name.  ████████████████████████████████████████████

*See* Ex. 16 (EDGE-CARTESSA_1050505).  Edge does not dispute that it is currently selling its tower product in the United States under the "Elite" name and has been since 2016.  *Id.*

[0081]   Edge does not dispute that the HydraFacial Elite manual indicates that patents which may cover the device can be found at hydrafacialco.co/patents.  Edge disputes that this statement in the user manual is the marking notice.  Edge affixes a label to the HydraFacial Elite that similarly indicates that the patents protecting the HydraFacial Elite may be found at Edge's patent webpage.   Ex.   10   (EDGE-CARTESSA_1059914);   Ex.   17   (EDGE-CARTESSA_1061600).   Below is an image of Edge's tower-style product, with the sticker circled in red, as well as an image of the sticker itself.



Ex. 10 (EDGE-CARTESSA_1059914); Ex. 17 (EDGE-CARTESSA_1061600) (circle added).

[0082] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at \*2; *Rodriguez*, 1999 WL 459813, at \*1 n.3. Edge also disputes that it is relying on the manual for marking. As discussed in response to Paragraph 82, a label is affixed to the HydraFacial Elite which indicates that the relevant patents for the HydraFacial Elite can be found at hydrafacialco.com/. Ex. 10 (EDGE-CARTESSA_1059914); Ex. 17 (EDGE-CARTESSA_1061600). The website includes an image of an Edge tower-style product – i.e., a product structurally, functionally and visually identical to both the Elite and Tower MD – as well as a list of patents covering Edge's tower-style devices. Ex. 23 (EDGE-CARTESSA_1059732-33) at EDGE-CARTESSA_1059732; Ex. V (Duboys Rebuttal Report) at ¶¶ 100-101.

46

[0083]   Edge disputes this paragraph for the same reasons set forth in response to Paragraph 82.

[0084]   The first sentence in this paragraph should be disregarded because it contains a legal assertion and attorney argument.  *See Taveras*, 2020 WL 1501777, at *2.  Edge does not dispute that it contends that it has appropriately marked the HydraFacial Elite by affixing a label that directs persons to its patent website, where an image of the exact device appears next to the words "HydraFacial Tower" and a list of patents.  Edge disputes Cartessa's assertion that a "research project" is necessary to determine the products that are covered by the patents.  On the contrary, a person need only look at a single picture to identify the list of patents that cover Edge's tower devices.  Ex. 23 (EDGE-CARTESSA_1059732-33) at 1059732; Ex. 15; Ex. V (Duboys Rebuttal Report) at ¶¶ 100-101.

[0085] Edge does not dispute that its Elite products are marked with the hydrafacialco.com/patents webpage, rather than the hydrafacial.com/patents webpage.  However, to the extent that Cartessa is suggesting that the two patent web pages contained different content (e.g., different patent numbers, product images or product names) relating to the patented Edge devices at issue, Edge disputes that suggestion.  *Compare* Ex. 23 (EDGE-CARTESSA_1059732-33) at EDGE-CARTESSA_1059732 *with* Ex. 15 (EDGE-CARTESSA_0013256-59) at EDGE-CARTESSA_0013256.

[0086]  Edge does not dispute that the word "Elite" does not appear on Edge's patent webpage, and that Edge's witness could not find the word on the webpage during his deposition.  However, Edge disputes Cartessa's assertion that "[t]he Hydrafacial Elite does not appear on the hydrafacialco.com/patents webpage."   Ex. 23 (EDGE-CARTESSA_1059732-33) at EDGE-CARTESSA_1059732; Ex. V (Duboys Rebuttal Report) at ¶¶ 100-101.  *See also* Responses to

47

Paragraphs 82-85. The website includes an image of an Edge tower-style product that is structurally and visually identical to the Elite device, because "Elite" is simply one brand name for Edge's tower-style product. Ex. 23 (EDGE-CARTESSA_1059732-33) at 1059732; Ex. V (Duboys Rebuttal Report) at ¶¶ 100-101. The webpage conveys to the viewer that the Elite device bearing the sticker is covered by the patents listed next to the photograph showing the very same device. Ex. V (Duboys Responsive Report) ¶¶ 100-101.

[0087] Edge does not dispute that every limitation of an asserted claim is not visible in images of Edges products, but this fact is irrelevant. The marking statute only requires the patent owner to "give notice to the public that [a patented article] is patented, either by affixing thereon the word 'patent' or the abbreviation 'pat.' together with the number of the patent, or by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet . . . that associate the patented article with the number of the patent." 35 U.S.C. §287(a). The statute does not state *how* the patented article must be associated with the patent number, e.g., by using the patented article's brand name, model number, SKU number, chemical formula, etc. Nothing in the statute prohibits using an image to associate the patented article with the numbers of the patents that cover the article. As discussed in Edge's responses to Paragraphs 82-85, Edge's website includes an image and identification of the "Tower" line and lists the associated patent numbers. This is all that is required to comply with the marking statute.

[0088] This paragraph is unintelligible. To the extent Cartessa is stating that Dr. Duboys opined that the marking requirements are met, that is undisputed. *See* responses to Paragraphs 82-87, *see also* Ex. V (Duboys Rebuttal Report) ¶¶ 100-101 (providing detailed explanation as to how the Elite is associated with the listed patents on the HydraFacial patent websites).

[0089]  Edge does not dispute that the "Tower" in HydraFacial Tower includes a "TM" marking.

[0090]  This paragraph contains attorney argument, lacks any evidentiary citations, and should be disregarded. *See Rodriguez*, 1999 WL 459813, at *1 n.3.  However, Edge does not dispute that the name HydraFacial Elite is an Edge trademark.

[0091]  This paragraph should be disregarded because it contains attorney argument and lacks any evidentiary citations.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. To the extent this paragraph contains any statements of fact, Edge disputes those statements.  Further, for the reasons discussed above in Paragraphs 74-87, Edge also disputes that it has failed to comply with the marking statute.

[0092]  This paragraph should be disregarded because it contains attorney argument and lacks any evidentiary citations.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  To the extent this paragraph contains any statements of fact, Edge disputes those statements for the same reasons set forth in Edge's responses to Paragraphs 82-88.

[0093]  This paragraph should be disregarded because it contains attorney argument  and lacks any evidentiary citations.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  To the extent this paragraph contains any statements of fact, Edge disputes those statements for the same reasons set forth in Edge's responses to Paragraphs 82-88.

[0094]  Edge does not dispute that its two websites differ with regard to color scheme and other purely aesthetic characteristics.  However, Edge disputes that there is any substantive difference in their content (e.g., different patent numbers, product images or product names) relating to the patented Edge devices at issue.  *Compare* Ex. 23 (EDGE-CARTESSA_1059732-33) at EDGE-CARTESSA_1059732 *with* Ex. 15 (EDGE-CARTESSA_0013256-59) at EDGE-

49

CARTESSA_0013256. The second sentence in this paragraph lacks any evidentiary citation and should be disregarded. *Rodriguez*, 1999 WL 459813, at *1 n.3.

[0095] Edge does not dispute that, for a brief period after expert reports were exchanged, the hydrafacialco.com/patents website was down so that it could be updated. However, Edge notes that changes to Edge's website after the filing of the complaint in this case are legally irrelevant to whether Edge's marking of its products provided Cartessa with constructive notice of the asserted patents prior to the actual notice Cartessa received during the parties' pre-suit correspondence. Dkt. 29 at ¶ 72 (admitting receipt of demand letter dated September 15, 2020).

[0096] Edge does not dispute that the hydrafacialco.com/patents website now redirects to hydrafacial.com/patents.

[0097] This paragraph lacks any evidentiary citations and should be disregarded. *See Rodriguez*, 1999 WL 459813, at *1 n.3. However, Edge does not dispute that the Allegro is a tabletop hydradermabrasion device. Ex. R (Lamarque Tr.) at 21-23. Edge disputes that the Allegro is part of the Tower product line.

[0098] The sole citation to the record on which Cartessa relies does not contain a claim-by-claim analysis that the Allegro falls within the scope of any claim of a patent-in-suit. *See* Ex. S (Jensen Report) at ¶¶ 415-416; Ex. 8 (Jensen Tr. Vol. II) at 371:14-372:22. However, Edge does not dispute that the Allegro is covered by at least one claim of each asserted Shadduck patent.

[0099] Edge disputes Cartessa's assertion that "[t]he Allegro has the same functionality as Edge's Tower-style devices." In the remainder of this paragraph, Cartessa itself identifies functional differences between the Tower line and the Allegro. Edge does not dispute that the Allegro the has multiple containers, conduits that carry fluid from the containers, a vacuum that draws waste, a screen, a waste bottle, and switches that are used to start or stop the flow of media

from the fluid containers. Edge also does not dispute that the Allegro is shorter than the Tower product line, sits on a tabletop instead of on casters, has a smaller monitor than the Tower product line, does not provide protocols for treatment, and does not have certain lights and lymphatic drainage components found in the Tower product line. To the extent this paragraph contains any additional statements of fact, Edge disputes those statements.

[00100] This paragraph should be disregarded because it contains attorney argument and lacks any evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

[00101] Edge disputes this paragraph to the extent Cartessa's statement attempts to include more than the HydraFacial Tower product line in the phrase "HydraFacial Devices." Ex. V (Duboys Rebuttal Report) at ¶ 2.

[00102] Edge does not dispute that it does not mark products with patents that it does not believe cover that product, and for that reason Edge has not marked the Allegro with the '052 Patent. Even if Cartessa were correct that the Allegro is covered by the '052 patent, ███████ ████████████████████████████████████████████████ *See* Ex. 16 (EDGE-CARTESSA_1050505). ██████████████████████████████ ████████ *Id*. Because the Allegro devices accounted for ████████████, even if the Allegro is found to practice a claim of the '052 patent, Edge has still marked substantially all of its patented products. At a minimum, these are all disputed issues of fact that should be decided by a jury.

[00103] This paragraph should be disregarded because it contains attorney argument and lacks any evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL

51

459813, at *1 n.3.  Edge does not dispute that 35 U.S.C. 287(a) sets forth the legal avenues for a plaintiff to obtain pre-notice damages.

[00104] This paragraph should be disregarded because it contains attorney argument and lacks any evidentiary citations.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

[00105] This paragraph should be disregarded because it contains only attorney argument and lacks any evidentiary citation.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.   To the extent this paragraph contains any alleged statements of fact, Edge disputes them for the same reasons set forth in Edge's responses to Paragraphs 60-102.

[00106] Edge does not dispute that the Shadduck Patents expired in August 2020.

[00107] Edge does not dispute that it provided notice of Cartessa's infringement via letter dated September 15, 2020.  Edge does not dispute that it provided a second letter during pre-suit discussions with Cartessa; however, Edge disputes Cartessa's characterization of this letter as a "corrected letter" and disputes Cartessa's suggestion that the first letter was inadequate to provide notice of Cartessa's infringement.   The September 15, 2020 letter included an identification of the accused device and the specific patents Edge contended Cartessa may be infringing.  *See* Ex. X (Sept. 15 Letter to Lubin).

[00108] This paragraph should be disregarded because it primarily contains attorney argument.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  Edge does not dispute that it sent Cartessa letters concerning Cartessa's infringement on September 15, 2020, and November 17, 2020.

[00109] This paragraph should be disregarded because it contains attorney argument and lacks any evidentiary citations.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL

459813, at *1 n.3.    To the extent this paragraph contains any alleged statements of fact, Edge

disputes them for the same reasons set forth in Edge's responses to Paragraphs 60-102.

## DAMAGES

[00110] Edge does not dispute that it asked Mr. Hanson to provide his opinions on damages

in this case, including his assessment of the opinions of Cartessa's damages expert.

[00111] Edge does not dispute that Mr. Hanson provided an opening expert report and a

reply expert report, and that he was deposed by Cartessa.                                 In any event,

there is no *per se* rule that a reasonable royalty is capped at the average selling price of the

accused device.  This is a disputed issue for a jury to decide.

[00112] This paragraph should be disregarded because it contains only attorney argument

about the admissibility of Mr. Hanson's opinions, a legal issue for the Court, and because it lacks

any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. In any event, Cartessa's conclusions are predicated on incorrect premises and/or assumptions.

- Mr. Hanson has over 40 years of professional experience in the field of public accounting, devoting much of the last 35 years to economic damages analysis in commercial litigation. Ex. AA at 1-2; *see also id*., Attachment 1-3 (a copy of his resume, description of his consulting firm, and a listing of cases in which he has provided trial and deposition testimony).

- Cartessa has not pointed to which of Mr. Hanson's opinions lacks factual support, what assumptions he has made, and what unreliable method he supposedly used. In fact, Mr. Hanson's expert opinion is grounded in the facts of the case, explicitly discloses assumptions made, and relies on time-tested, industry-standard methods and techniques. *See, e.g.*, Ex. Z, §§ III-VI; Ex. HR §§ II-III.

- Mr. Hanson's reasonably royalty analysis is not flawed. *See, e.g*., Ex. AA § III. For example, his "reasonable royalty analysis directly apportions the royalty rate to the value of the patented technology by analyzing the profits at stake (i.e. the incremental profits or benefits) compared to Cartessa's 'next-best' non-infringing alternative. Thus, [his] reasonable royalty analysis satisfies any apportionment requirement and appropriately ties the royalty for the asserted patents to the footprint of the invention." *Id*. AA at 10. Mr. Hanson's proposed royalty rate is based on the profit pool in a hypothetical world where Cartessa takes a license to the patents-in-suit. *Id.* at 10-21.

- Mr. Hanson's lost profits analysis is not flawed. Ex. AA § II; Ex. Z § IV. For example, Mr. Hanson pointed out the correct legal standard to be applied for assessing demand and

addresses demand for the patented products. Ex. AA at 2-4. He similarly addressed non-infringing alternatives. *Id.* at 4-5; Ex. Z at 17-22. Cartessa fails to identify which assumptions about the economic behavior of Cartessa's customers are contrary to basic economic principles.

- Edge further addresses each of these issues in the numbered paragraphs below.

[00113] This paragraph should be disregarded because it contains only attorney argument about the admissibility of Mr. Hanson's opinions, a legal issue for the Court, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. In any event, as explained in response to Cartessa's more specific allegations below, there is no basis to exclude Mr. Hanson's testimony in whole or in part.

[00114] This paragraph should be disregarded because it contains only attorney argument about the admissibility of Mr. Hanson's opinions, a legal issue for the Court, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

[00115] Edge does not dispute that Mr. Hanson is a licensed CPA. Edge disputes that Mr. Hanson is not qualified to opine on damages in this case. Mr. Hanson is an economic expert in the areas of economic analysis, damage assessment, forensic accounting, and business and asset valuation. *See* Ex. Z at 1-2. He is also a California-licensed CPA. He has over 40 years of professional experience in the field of public accounting, devoting much of the last 35 years to economic damages analysis in commercial litigation. *Id.* at 1-2; *see also id.*, Attachment 1-3 (a copy of his resume, description of his consulting firm, and a listing of cases in which he has provided trial and deposition testimony). Mr. Hanson routinely testifies on damages issue. *Id.*, Attachment-3 (listing of cases in which he has provided trial and deposition testimony); *see also*

55

*e.g.*, Ex. AB at 11:16-13:22, 14:20-21 (explaining the common aspects of an economist and an accountant on the issue of litigation damages and Mr. Hanson's experience with forecasting for audited financials); Ex. Z at 31, 38 (performing economic analysis, using relevant economic principles and standard valuation procedures recognized in the accounting profession); Ex. AA at 2-3, 6-9, 11, 18-19 (same).

The remainder of this paragraph should be disregarded because it contains only attorney argument about the admissibility of Mr. Hanson's opinions, a legal issue for the Court, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

[00116] This paragraph should be disregarded because it contains only a discussion of Cartessa's view of the law, rather than statements of alleged fact, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

[00117] Edge disputes that Mr. Hanson is unqualified to render opinions on damages in this case. *See supra,* at [00115]. This paragraph should also be disregarded because it contains only attorney argument about the admissibility of Mr. Hanson's opinions, a legal issue for the Court, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

[00118] This paragraph should be disregarded because it contains only a discussion of Cartessa's view of the law, rather than statements of alleged fact, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

[00119] Edge does not dispute that Mr. Hanson opines on lost profits and reasonable royalty rates in this case. The remainder of this paragraph should be disregarded because it contains a legal assertion, not a factual statement supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

In any event, Mr. Hanson's expert opinion is grounded in the facts of this case, explicitly discloses assumptions made, and relies on time-tested, industry-standard methods and techniques. *See, e.g.*, Ex. Z §§ III-VI; Ex. AA §§ II-III. Edge further addresses these issues in the numbered paragraphs below.

[00120] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

In any event, Edge disputes the assertions in this paragraph. First, regarding apportionment, Mr. Hanson's "reasonable royalty analysis directly apportions the royalty rate to the value of the patented technology by analyzing the profits at stake (i.e. the incremental profits or benefits) compared to Cartessa's "next-best" non-infringing alternative." Ex. AA at 10. And if Edge were required to satisfy the entire-market-value rule, it could do so because Edge has evidence that substantially all of the demand for the accused devices derives from the patented inventions. Ex. L, § VI.G. The jury is entitled to credit this evidence and accept the foundational facts underlying Mr. Hanson's damages analysis.

███████████████████████████ For example, Mr. Hanson considered that, without each of the asserted patents, Cartessa would not be able to provide a commercially acceptable device, and without a hypothetical license, Cartessa would lose not only its profits on

the accused devices, but also its profits for any related consumables.  Ex. AA at 16.

 Ex. Z at 32-43.

 Third,

 Ex. AA at 11; *see also* Ex. V, §§ V.E and V.F.

Fourth, Mr. Hanson did not merely assume that Edge would capture all of Cartessa's sales. As explained in more detail in the numbered paragraphs below, his conclusions are the product of a thorough analysis. Ex. AA, § III.

[00121] This paragraph should be disregarded because it contains only a discussion of Cartessa's view of the law, rather than statements of alleged fact, and because it lacks any evidentiary citation.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  Cartessa also misstates the law.

[00122] This paragraph should be disregarded because it contains only a discussion of Cartessa's view of the law, rather than statements of alleged fact, and because it lacks any evidentiary citation.  *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  Cartessa also misstates the law.

[00123] This paragraph should be disregarded because it contains only a discussion of Cartessa's view of the law, rather than statements of alleged fact, and because it lacks any

58

evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

[00124] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

In any event, Edge disputes that Mr. Hanson had no basis to find that the patented features drive consumer demand, and that he improperly based the royalty rates on device and consumable sales. Mr. Hanson considered ███████████████████████████ ████████████████████████████ and considered the opinions of other experts in performing his analysis. Ex. AA at 12; Ex. P, ¶¶ 99-100, 103-104 (The hydradermabrasion features of the HydraFacial (covered by the asserted patents) drive demand for the HydraFacial.); *id.* ¶ 101 (The electroporation handpiece and y-shaped handpiece are unlikely to drive demand for the Skinwave device, as the effects of each handpiece can be achieved through substantially cheaper means). Cartessa's technical expert simply disagrees with Edge's technical experts regarding whether the non-patented features of the Skinwave contribute to consumer demand for the product. This is a fact issue for the jury to decide.

[00125] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

In any event, Edge disputes the allegations in this paragraph. Mr. Hanson did consider Cartessa's profits. Ex. AA at 14-15. ████████████████████████

59

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████                              And Mr. Hanson

did not assume that Edge and Cartessa had the same bargaining power. On the contrary, his

opinion on the specific royalty rates on which the parties would have agreed is based on his

opinion that "Edge had the stronger bargaining power in a hypothetical negotiation." *Id.* at 16.

[00126] ████████████████████████████████████████

██████████████████████████████████████████████████

On the contrary, Mr. Hanson's opinion is based on his review of the facts and evidence in the

case. Ex. Z at 3-4, Ex. AA at 1. Other than in the first sentence, this paragraph contains attorney

argument, lacks any evidentiary citations, and should be disregarded. *See Rodriguez*, 1999 WL

459813, at *1 n.3.

In any event, Edge disputes Cartessa's unsupported allegations in this paragraph. First, Mr.

Hanson did consider Cartessa's willingness to pay. For example, Mr. Hanson considered that

Cartessa would be highly motivated to enter a hypothetical license with Edge given that its next

best alternative would be to lose the full amount of the expected profit at stake. Ex. AA at 16.

██████████████████████████████████████████████             *Id.*

Mr. Hanson also considered Cartessa's consumable sales data. Ex. AA at 14-15, and

Schedule 3 ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████             *Id.*

[00127] This paragraph should be disregarded because it contains only attorney argument

and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by

evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

Further, Mr. Hanson's ▮▮▮▮▮ is not arbitrary. *See supra,* ¶ 120.

[00128] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *Taveras*, 2020 WL 1501777, at *2. Cartessa also misstates the law.

In any event, Mr. Hanson's ▮▮▮▮▮ is tied to the facts of this case. Mr. Hanson conducted a reasoned royalty analysis under the *Georgia-Pacific* factors. Ex. Z at 32-43; *see also supra,* ¶ 120.

[00129] Only one sentence in this paragraph contains an evidentiary citation. The remainder of the paragraph should be disregarded. *See Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the applicable law. Cartessa also alleges that "since the entire market rule does not apply, convoyed sales should not be included in the royalty base." This is attorney argument and a legal assertion, and should be disregarded. *See Taveras*, 2020 WL 1501777, at *2;

Moreover, Edge disputes that Mr. Hanson provided only a single royalty rate. Rather, Mr. Hanson provides several royalty rates. ▮▮▮▮▮

61

Edge also disputes that convoyed sales should not be included in the royalty base. Mr. Hanson included convoyed sales in the royalty base because there is a functional relationship between the patented devices and related consumables. *Id*. at 9; *see also* Ex. AB at 194:8-12. As Dr. Duboys will explain at trial, the consumables (as well as the replacement tips and replacement handpieces) function together with the patented devices to produce the desired result

of hydrating skin while simultaneously abrading it, thereby enhancing absorption of treatment fluids and preventing the skin from drying out. Ex. L (Duboys report) ¶¶ 30-31; Ex. AA at 9-10.

[00130] The majority of this paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

Edge also disputes that Mr. Hanson failed to consider the value of each patent.



Ex. AA at 11; Ex. AB at 181:19-182:13; *see also* April 7, 2022 Report of Duboys, sections V.E and V.F. Mr. Hanson considered that Cartessa would not be able to provide a commercially acceptable device without each of the asserted patents.

Ex. AA at 11; Ex. AB at 185:7-186:24.

[00131] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Rodriguez*, 1999 WL 459813, at *1 n.3.

In any event, Edge disputes Cartessa's allegations. First, Mr. Hanson considered the market, customer demand, and approaches of Cartessa and Edge in his royalty analysis. Ex. AA §§ II, III. Each issue is addressed in further detail in the numbered paragraphs below.

[00132] Edge does not dispute that Mr. Hanson calculated Edge's lost profits from Cartessa's sales of the Skinwave, and that the calculation included lost sales of consumables. Edge also does not dispute that the consumables included solutions and replacement tips, or that Mr. Hanson used the *Panduit* factors in his analysis. Edge disputes that Mr. Hanson failed to apply three of the four *Panduit* factors. Ex. Z at 14-24; Ex. AA at 1-10.

Further, other than one sentence, this paragraph lacks evidentiary citations and should be disregarded. *See Rodriguez*, 1999 WL 459813, at *1 n.3.

[00133] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

In any event, Edge disputes that Mr. Hanson failed to establish demand for the patented product. To the contrary, there is no dispute that there is demand for both Edge's Tower products and Cartessa's Skinwave products. Ex. AA at 2; Ex. 22 (Meyer Report) ¶ 68.

Further, the hydradermabrasion features of the patented HydraFacial devices drive demand for those devices, not the other features Cartessa points to. Ex. P (Duboys Reply), ¶¶ 99-100, 103-104; *see also id.*, ¶ 101 (The electroporation handpiece and y-shaped handpiece are unlikely to drive demand for the Skinwave device, as the effects of each handpiece can be achieved through substantially cheaper means). Cartessa's website also characterizes the Skinwave as an "aqua delivery system" and highlights the hydradermabrasion steps, not even mentioning other handpieces until the end of the second page of information. AA at 12.

[00134] Cartessa's assertion that "as the price for a product increases, the demand for that product decreases," and its assertion that "the supply/demand curve dictates that not all Cartessa

customers would be willing to pay for the more expensive Tower Elite," are attorney argument and lack relevant evidentiary citations. They should therefore be disregarded. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

Further, Edge disputes that Mr. Hanson failed to explain that Edge would make all of Cartessa's sales if the Skinwave were unavailable. Ex. AA at 24, Ex. Z at 6 (explaining that Edge would capture all of Cartessa's sales); *id.* at 22 (Cartessa itself has contended that Edge's share of hydradermabrasion devices is 97-99%); Ex. AB at 94:2-95:9, 96:2-22, 104:16-25, 112:3-21, 113:5-9, 154:16-155:20 (testifying that given the similar average price it was not unreasonable to conclude that Edge would have made all of Cartessa's sales).

65

████████████████████████████████████████████████

████████████   *Id.* at 3; *see also* Ex. AB at 48:9-23.

[00135] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

Moreover, Edge disputes that Edge's and Cartessa's customers do not have the same focus or otherwise overlap. Rather, Mr. Hanson considered evidence that Cartessa and Edge compete for the same customers ███████████████████████████ Ex. AA at 18; *see also id.* at 8 (Cartessa was targeting customers of the Edge patented device as it presented its Skinwave product to potential customers). For example, in a blog post for the Cartessa website, Cartessa's partner Reanne Kelly stated, "If you love Hydrafacial, then you need to try SkinWave because you will like this one so much more." Mr. Hanson noted similar advertising on third-party websites comparing Skinwave to Edge's HydraFacial); Ex. Z at 19; Ex. AB at 41:13-19, 43:13-17, 80:23-81:6. Indeed, Dr. Duboys is a plastic and reconstructive surgeon who purchased a HydraFacial system long before this action commenced.

[00136] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

Moreover, Edge disputes Cartessa's assertion that Mr. Hanson "ignores that there are non-infringing alternatives" and, more fundamentally, Cartessa's assertion that non-infringing alternatives exist. To the contrary, Mr. Hanson considers in detail the evidence from Edge's

technical experts that there are no non-infringing alternatives. *See, e.g.*, Z at 17-22; AA at 4-5. Mr. Meyst and Dr. Duboys opine that the alleged alternatives identified by Cartessa are either infringing or not acceptable. Ex. 4, (Reply Meyst Report), ¶¶ 124, 134-137; Ex. P, (Reply Duboys Report) ¶ 58. In particular, Mr. Meyst and Dr. Duboys opine that the non-infringing alternative Cartessa proposed for the tip would insufficiently abrade, resulting in a sub-par skin treatment. AA at 4-5; Ex. 4, (Reply Meyst Report), ¶¶ 124, 134-137; Ex. P, (Reply Duboys Report) ¶ 58. Mr. Meyst also opines that the majority of the proposed redesigns would still infringe the '052 patent. *Id.* The sole non-infringing redesign, with only a single serum container connected to the device, would not be a suitable non-infringing alternative, as it would eliminate key benefits of the patented system, such as the increased ability to customize treatments, the decreased treatment time, and the superior hygiene provided by the invention of the '052 patent. AA at 4-5; Reply Meyst Report ¶ 137.

[00137] Cartessa provides no citations for the first three sentences in this paragraph. They should therefore be disregarded. *Rodriguez*, 1999 WL 459813, at *1 n.3. Moreover, Edge disputes that Cartessa's '052 redesign would be an acceptable non-infringing alternative. *See* response to ¶ 136.

The remainder of this paragraph contains only attorney argument and legal assertions, and should be disregarded. *See Taveras*, 2020 WL 1501777, at *2.

[00138] This paragraph should be disregarded because it contains only attorney argument about the admissibility of Mr. Hanson's opinions, a legal issue for the Court, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

67

[00139] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.

In any event, for the reasons stated in Edge's response to ¶ 134, Edge disputes Cartessa's purported factual statements in this paragraph.

[00140] This paragraph should be disregarded because it contains only attorney argument and legal conclusions Cartessa would like the Court to adopt, not factual statements supported by evidentiary citations. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3. Cartessa also misstates the law.

Edge also disputes that Mr. Hanson "inflates damages by making baseless assumptions about convoyed sales of consumables" and failed to consider the consumables' functional relationship to the accused devices. On the contrary, Mr. Hanson considered that customers of Edge's devices would purchase consumables from Edge. Ex. AA at 9 ███████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

██████████████████████████ *see also* Ex. AB at 51:9-16. In addition, there is a functional relationship between the patented devices and related consumables. Ex. AA at 9 ("consumables (as well as the replacement tips and replacement handpieces) function together with the patented devices to produce the desired result of hydrating skin simultaneously with the abrasion process, thereby enhancing absorption of treatment fluids and preventing the skin from drying out. . . the patented invention creates

68

consumer demand for the HydraFacial® treatments, which in turn drives the sales of consumables to treatment providers that perform the HydraFacial® treatments. As more consumers seek treatments by Edge's patented HydraFacial® machines, the more serum, tips, and other associated consumables are required that to continue providing these treatments."); *see also* Ex. AB at 179:13-180:4.  Because consumables are functionally related to the patented product, Mr. Hanson opined that Edge is entitled to lost profits on convoyed sales.   The jury is entitled to credit the testimony of Edge's trial witnesses, find that the systems and consumables are functionally related, and then accept Mr. Hanson's expert opinions that are based on that functional relationship.

[00141] The first four sentences of this paragraph contain no citation and should be disregarded. *Rodriguez*, 1999 WL 459813, at *1 n.3.  Edge also disputes that "Mr. Hanson assumes without basis that the Skinwave customers would purchase consumables at the same rate and for the same amount as Edge's Tower Elite customers."  Rather, Mr. Hanson considered Cartessa's consumable sales data, and provided royalty rates in view of the rate by which Cartessa's customers purchase consumables.  Ex. AA at 14-15, and Schedule 3 ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ *see also* Ex. AB at 209:13-210:6; 211:24-213:7.  Mr. Hanson therefore considers the very facts that Cartessa claims he ignored.

[00142] This paragraph should be disregarded because it contains only attorney argument about the admissibility of Mr. Hanson's opinions, a legal issue for the Court, and because it lacks any evidentiary citation. *See Taveras*, 2020 WL 1501777, at *2; *Rodriguez*, 1999 WL 459813, at *1 n.3.  Cartessa also misstates the law.

Respectfully submitted,
Knobbe, Martens, Olson & Bear, LLP

Dated:  July 6, 2022                     By: */s/ Sean M. Murray*
                                      Craig S. Summers (*Admitted pro hac vice*)
                                        Email: craig.summers@knobbe.com
                                        Ali S. Razai (*Admitted pro hac vice*)
                                        Email:  ali.razai@knobbe.com
                                        Karen M. Cassidy Selvaggio (*Admitted pro hac vice*)
                                        Email: karen.cassidy@knobbe.com
                                        Sean M. Murray (*Admitted pro hac vice*)
                                        Email: sean.murray@knobbe.com
                                        Hans L. Mayer (*Admitted pro hac vice*)
                                        Email: hans.mayer@knobbe.com
                                        Ashley C. Morales (*Admitted pro hac vice*)
                                        Email: ashley.morales@knobbe.com
                                        **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                                        2040 Main Street, Fourteenth Floor
                                        Irvine, CA  92614
                                        Telephone: (949) 760-0404
                                        Facsimile: (949) 760-9502

                                        *Attorneys for Plaintiff*
                                        EDGE SYSTEMS LLC

# Ex. E,   ,   , Under Seal

Ex.

# Hydra touch H2



## The User's Manual

Ver. 1.



CARTESSA_0000323

# Table of Contents

**1. Introduction**

   1.1 General ................................................................................................................ 4

   1.2 User's Manual & Key Marks Description ................................................. 5


**2. Safety Precautions**

   2.1 General Precautions ...................................................................................... 6

   2.2 Electric & Fire Hazards ................................................................................. 7

   2.3 Contraindication ............................................................................................. 8


**3. Device Description**

   3.1 Exterior & Functions ..................................................................................... 9

   3.2 Display Screen ............................................................................................... 12

   3.3 Components ..................................................................................................... 13


**4. Installation**

   4.1 About the Installation ................................................................................. 14

   4.2 Installation Guide ......................................................................................... 15


**5. Operation**

   5.1 About the Operation ................................................................................... 19

   5.2 Operation Guide ........................................................................................... 20

Hydratouch

CARTESSA_0000324

# Table of Contents

**6. Maintenance**

6.1 Storage/ Cleaning Precautions ................................................ 25

6.2 Storage/ Cleaning Guide ...................................................... 25

6.3 Trouble Shootings ............................................................. 28


**7. Specification** ................................................................. 29


**8. Warranty**

8.1 1-Year Warranty ............................................................... 30

8.2 Compensatory Guarantees ..................................................... 30


**9. Customer Service** ............................................................ 31

3

*Hydra touch*

CARTESSA_0000325

# 1. Instruction

## 1.1 General

- Hydra touch H2 is designed to meet international safety and performance standards for medical devices which guarantees durability, safety and easy operation.

 **Please read user's manual carefully before operating this device.**

- Please keep user's manual in distance for immediate actions.

- The user's manual shall be revised or updated accordingly.

- The standards and regulations in user's manual is based on the effective references when this manual prepared.

- Eunsung Global Corp. provides the training service for customers to use the device safely and correctly.  Please request any information in need.

- Eunsung Global Corp. has no liabilities for damages resulted from any cases not complied with user's manual.

Cautions: Incorrect use of the device causes hazardous events or operational malfunctions. Please be well-informed of the information in user's manual.

4

Hydra touch

CARTESSA_0000326

# 1. Instruction

## 1.2 User's Manual & Key marks Description

| Marks | Description |
|---|---|
| | **Warning**<br>This indicates inappropriate conditions in use or incorrect operations may cause severe accident of human life as well as property damages. |
| | **Caution**<br>This indicates inappropriate conditions in use or incorrect operations may cause slight human injuries or property damages. |
| | **Notebook**<br>Remark the important massages for operation of device. |
| | **Good Manufacturing Practices**<br>This indicates a certified product in accordance with Korean medical device manufacturing and quality control standards. The manufacturer observed the necessary process and standards in overall procedure from importing law materials to release final goods. |
| **MFDS** | **Ministry of Food and Drug Safety**<br>This indicates a certified safe product in accordance with the standards of Korea Food and Drug Administration. |
| | **Manufacturer**<br>Medical device manufacturer symbol |
| EC \| REP | **Authorized representative in the European Community**<br>This ensures the manufacturers in non European Union(EU) compliance with the EU Directives. |
| | **EU Waste Electrical and Electronic Equipment Directive**<br>This product shall be decommissioned in accordance with Directive 2002/96/EC & EN50419 and shall be properly recycled. |

 **WARNING**

The inappropriate use or adjustment of the device other than those specified in the user's manual may cause exposure of high voltage electricity resulting in serious damages.

Hydra touch

CARTESSA_0000327

# 2. Safety Precautions

## 2.1 General

- The manager in charge of this device should be responsible for leading the user's education and understanding of Safety Precautions. Simply reading this session shall not be deemed as qualified status for operation, inspection, test, arrangement, adjustment, trouble shooting, repair or modification of the system. It remains the onus of manager to train the user to be qualified in overall performance including above.

- The user of this device and the patient should be aware of the potential risks and safety precautions.

- The manager should monitor whether the authorized user perfectly qualified to operate the device through sufficient train. Before assign the user, the manager should strictly audit the user's understanding of the operation guide in this manual. In case of operational problems, please contact to Customer Service of Eunsung Global Corp., a manufacturer, to get prompt supports.

- The medical professionals completed the sufficient safety education are allowed to operate this device and they should deliver the precautions to patients and help their understandings. Overall safety responsibility in procedure of treatment remains to the person who operates this device.

- Please use the device for the specified purpose in this manual only.

- Please carefully read the safety precautions and operation guides before use the device.

- The use of unauthorized components and other accessories shall bring the serious errors on the device. Please do not use.

- Please do not disassemble or repair the device intentionally.

- The pregnant women should consult with medical professionals before treatment.

- Please do not use or contact the device to a person who has infectious disease or wounded.

- Please do not use the device if any cracks found on the surface. It causes serious injuries.

Hydra touch

CARTESSA_0000328

# 2. Safety Precautions

## 2.2 Electricity & Fire Hazards

- Please do not disassemble or revamp the device intentionally. The device is designed to use in the condition of AC 110-220V, and thus resulting in severe electric shock if an exterior cover of main body is removed.

- Please be cautious not to spill any liquid into a main body of the device. It may cause a serious malfunction of the device and an electric shock. Furthermore please keep the device away from wet conditions which may create a high-voltage electric current entailing the high risk of electric shock and fire.

- Please do not use the device nearby the equipments which generate a strong electric field such as a television or appliances using electromagnetic waves, etc.

- Please do not use the device close to or stacking up with other devices, which may result in the inoperability due to the electromagnetic interference among them.

- Please do not turn on the device when the main power connection is damaged.

- Please disconnect the power and store in clean when not in use for long-time to eliminate the risk of electric shock, short circuits and fire.

- Please disconnect the power in case of abnormal situation such as the flood, unnatural sounds, burning smell and smog, promptly contact to Customer Service.

- Please do not locate the device nearby flammable or combustible materials.

- Please do not use or operate when the device is covered with fabrics.

 NOTE

Eunsung Global is liable for the damages limited to the device defectives. All or any damages caused by the user's lack of experience or carelessness shall not be included.

Hydra touch

CARTESSA_0000329

# 2. Safety Precautions

## 2.3 Contraindication

- The user should carefully read and understand the guides in the manual. EunSung Global strictly recommends the users to complete a course of training including operation, safety, a laboratories experience, and observation of the patient's symptom, etc. Furthermore we highly encourage the user to refer to the latest references related to the clinical demonstration.

 **Please do not operate the device on a patient who has any cases demonstrated below. Even though a patient does not have any cases below, please check repeatedly throughout the sufficient consult with a patient.**

- Malignant tumor
- Children
- Pregnant or nursing women
- Herpes
- Epileptic, Infection and rash
- Inflammatory response
- Hemorrhagic disease (eg. Hemophilia)
- Cardiovascular Disease
- Nephritis
- Pacemaker users
- Insulted Metal Stand
- Dysarteriotony
- Diabetes
- Dermatopathy
- Taking medicine anti-cogolants

- Autoimmune Disease
- Facial Paralysis
- Lupus/ Achromoderma
- High Fever
- Menstruation Period
- Filler
- Implant (Dentistry, Plastic Surgery, orthopedics)
- Blooding cuts, eyes or near eyes, ears or near ears
- Chronic dermatopathy impacting topical or  whole body.
- Keloid Skin
- Weak to electric shock therapy
- Febrile patient (over 38℃)
- Other Extraordinary disease

**Please do not use the other medical instruments listed below with the device.**
- Implantable electronic medical instruments (pacemakers)
- Life support system (artificial heart or lung)
- Portable electronic medical instruments (electrocardiograph)
- Do not connect the device to the electro stimulators.

 **It is able to adjust the level of treatment or power according to the patient's condition**

The device shall be adjusted the level of operation according to the patient's condition.
The result of operation can be different based on the patient's condition.

Hydra touch
CARTESSA_0000330

# 3. Device Description

## 3.1 Exterior & Functions

Front



Liquid Waste Container (L)

Aqua Handpiece

Touch Screen

Solution Bottles

Y Handpiece

Electroporation Handpiece

Vacuum Control Knob

Flow Control Knob

Main Body

H2 (Hydrogen water) module

9

Hydra touch

CARTESSA_0000331

# 3. Device Description

## 3.1 Exterior & Functions

### Back & Side



Liquid Waste Container (L)

USB Port

Main Power Switch

Fuse Holder & Fuse

Power Cable Connection Hole



Aqua Handpiece Connection

Left side of the Main body
Aqua Handpiece connection in detail



Electroporation Handpiece Connection hole

Y Handpiece Connection

Hydrogen water Module Connection

Right side of the Main body
Electroporation Handpiece, Y Handpiece,
Hydrogen Water Module connection in detail

Hydra touch

10

CARTESSA_0000332

# 3. Device Description

## 3.1 Exterior & Functions

Handpiece

Aqua Handpiece



Aqua Tip

Electroporation Handpiece



Electroporation

Y Handpiece



Low Frequency

11

*Hydra touch*

CARTESSA_0000333

# 3. Device Description

## 3.2 Display Screen



| No | Description |
|----|-------------|
| ① | Select Solution 1 |
| ② | Select Solution 2 |
| ③ | Select Solution 3 |
| ④ | Select H2 (Hydrogen Water) Solution |
| ⑤ | Select Cleansing Mode |
| ⑥ | Liquid Waste Container is full |
| ⑦ | Select Aqua Handpiece |
| ⑧ | Select Electroporation Handpiece |
| ⑨ | Select Y Handpiece |
| ⑩ | Setting (Sound ON/OFF, Display Adjustment, Software version) |
| ⑪ | Treatment Time |
| ⑫ | Control & Display output level of Electroporation Handpiece and Y Handpiece |
| ⑬ | START/ STOP |

12

Hydra touch

# 3. Device Description

## 3.3 Components

| ① Main Body (Cylinder & H2 Module installed) | ② Y Handpiece | ③ Electroporation Handpiece |
|---|---|---|
| | | |
| ④ Aqua Handpiece + Cap | ⑤ Aqua Tip Large (10ea/1pack) | ⑥ Aqua Tip Small (10ea/1pack) |
| | | |
| ⑦ Solution bottle (3ea) | ⑧ Solution Filter | ⑨ Liquid Waste Container (L) |
| | | |
| ⑩ The User's Manual | ⑪ Power Cable | ⑫ Fuse |
| | | |

13

Hydra touch

CARTESSA_0000335

# 4. Installation

## 4.1 Installation Precautions

### Transportation

- Please carefully transport considering the weight of device.

- Please do not lay down or apply impacts on the device, which may result in serious damage inside.

- Please avoid drop, impacts and wobbling.

### Installation Environment

- Install the device on flat and solid floor.

- Keep away from heat or humid condition, which may damage the insulation.

- Preferred condition for the device:
  Temperature 10~40°C, Humidity 10%~80%, Pressure 800~1060hPa

- Keep away from the equipment which may impact on temperature such as a heater.

- Keep away from the location exposed the risk of explosion caused by flammable or boil-off gas.

- Install the device where ventilation is easy considering Specification in this manual. It shall requires at least 0.2 meter away from wall or other devices.

- Keep at least 2 meter of distance from electronic devices to eliminate potential impacts.

### Cautions

- Check the voltage for use matches to rated voltage (100–240Vac, 50/60Hz).

- Check the earth terminal at the socket. If it does not work, please install an additional earth connection to the terminal located at backside of main body.

- Keep the power cable from water or wet conditions.

- Do not connect the main body if the power cable is damaged.

- Do not use extension cord with other device which may cause a fire.

Hydra touch

CARTESSA_0000336

# 4. Installation

## 4.2 Installation Guide

1) Unpack at the installable place and check the all components.

2) Set the location of main body and connect Aqua handpiece cable to the left side of main body refer to the below.



3) Put Aqua Handpiece cable into the connection hole on the left side of a main body, push them until it clicks.

4) After connection, fix it on the holder on the side of a main body.

5) To disconnect from the main body, pull down the cable while pressing the button on the cable connection part.

6) Do not apply strong force to connection hole of Aqua Handpiece for disconnection. It may damage the hole. Please disconnect while pressing the lower part of connection hole.

7) Put Y Handpiece and Electroporation into connection holes on the right side of a main body (front view). Please follow the direction below.



15

CARTESSA_0000337

# 4. Installation

## 4.2 Installation Guide

8) Turn the screw to the right until it tightened after putting Y Handpiece and Electroporation Handpiece into the connection hole.

9) For disconnection of Y Handpiece and Electroporation Handpiece from the main body, turn the screw to the left until it loosened perfectly, and pull the cables.

10) Fit accurately a selected Aqua tip to the Aqua Handpiece connection groove. To replace the tips, pull and separate connected one, and fit an another tip to the groove.

11) To clean the handpiece or not using for long time, cap with a handpiece cap and store.

          

- Aqua Handpiece -          - Equip with Aqua tip -          - Equip with Cap -

12) The solution bottles are equipped at first. Take them out and fill with solution extracts and distilled water. Place the solution 1, 2 and 3 in order from the left on the main body and make them connect to hoses respectively by turning them counterclockwise.

          

 **NOTE**

- Aqua tips are disposable. Please replace tips every treatment.
- Please discard the used tips. Eunsung global does not have liabilities for any damages caused by reuse of tips.

Hydra touch

CARTESSA_0000338

# 4. Installation

## 4.2 Installation Guide

13) Each hose connected to solution bottle needs a filter. The filters are equipped when you unpack at first. Please clean and use those filters every replacement of solution.

  

14) Pushing the upper side of the filter make easy-separation. Clean the filter with running water and dry for reuse.

15) Equip the filter to make a arrow mark point up.

16) Connect the H2 bottle to a module on the right end of the main body. Those are connected when you unpack at first. Fill the bottle with mineral water, and place in position and turn counterclockwise.  Connect the connector on the right side of the main body and the bottom of H2 module with a cable.

  

- Module Bottom -



17) Match Liquid Waste Container ("Container") to the connection hole on the back of the main body and push them until fit. (if the container does not fit into the hole, it may causes malfunction of the device) For disconnection, take it out with a handle.



17

Hydra touch

CARTESSA_0000339

# 4. Installation

## 4.2 Installation Guide

18) When you equip or un-equip the container, please be cautious not to make the liquid out of the container due to the weight.

19) Separate the container by turning a cap in direction of OPEN marked on the cap to replace or clean.

20) Change the cap when it is not opened easily or the rubber joint ring is damaged.



[ OPEN Direction ]                    [ How to OPEN ]

21) Connect the power cable to the main body and supply the power.

22) Do not use an extension cord with other devices or remove other connections if it uses.

23) Double check Power cable connection. (Cautious: Touching the Power with wet hands could cause electric shock)

24) Turn on the Power On/ Off Switch on.



- Power OFF -                    - Power ON -

Hydra touch

CARTESSA_0000340

# 5. Operation

## 5.1 About the Operation

- The device is to be used by the authorized user only who is trained correctly.
- Please read the manual and understand all risks, warnings, precautions and critical points for use.
- Please understand how to use the device.
- Please check the connected power source and supply voltage before use.
- Please main body and other components are well assembled.
- Please check the handpiece and other device are clean.
- Please operational test the device before treatment.
- Please remove all metallic accessories the patient wears.
- Please keep the device away from flammable anesthetics and solvent.
- The device is allowed to apply all patients regardless of sex or age, but only limit to the patients in good health condition determined by the user.
- Please stop the operation and disconnect power in case of any malfunctions or troubles found.
- Please power off and turn all buttons back to the default.
- Please keep clean the main body and each handpiece.
- Please check all handpiece cables are not tangled.
- Please check a power cable connection.
- Please check the main body and hand piece are in position.
- Please clean the surface of handpiece with wet wipes and dry in air (or wipe with dry fabrics) before keep in standby. If this cleaning process is skipped, it may affect on the device itself and result in abnormal outcomes.
- Please conduct the patch-test before treatment.
- Please start every treatment from the default settings.
- Please use drinkable water such as mineral or purified one (exception: distilled water and reverse osmotic pressure method purified) for H2 module. Using any water mixed with aromatic oils or other cosmetic tonics is strictly prohibited.
- Please use water of 10℃~40 ℃. The hotter water could cause scald.


- **It is strictly required to consult with a doctor before get treatment with the device.**
- **Keep in mind the risk of side effects in high-energy set treatments.**
- **Conduct the tests before give treatment.**
- **Operate the device while a handpiece is tightly attached to skin.**
- **The device is well-designed to adjust through the control panel and easily switch the treatment levels according to the patient's condition.**

Hydra touch

CARTESSA_0000341

# 5. Operation

## 5.2 Operation Guide

1) Check the power connection on the back of the main body and power supply.
2) Turn on the Power ON/OFF switch on.

## 5.2.1 Starting System

1) The boot screen is loaded when power connected. The screen is turned to the main display mode after few seconds of system diagnosis.




- Boot Screen -



- Main Display -

## 5.2.2 System Settings

1) "Setting" includes volume ON/ OFF, display adjustments and the details of the device (ex. device name, software version etc.). Touch the "End" on the right upper side make the screen back to main display mode.



- Main Display -



- Setting -

20

Hydra touch

# 5. Operation

## 5.2 Operation Guide

### 5.2.3 Aqua Filling Mode

1) Touch "Aqua Handpiece" and select Aqua filling mode.



- Aqua filling mode -

2) Select the solution and touch START to operate the device.
3) Check the solution injection by turning vacuum and flow knobs to the right, and set the pressure and spray level to use.
4) Make Aqua Handpiece tip fully contact to the skin for treatment.
5) Running time is displayed when the operation starts. The treatment time is up to 30min and is reset each time you select a solution. It becomes reset when you touch the Cleansing mode.
6) To switch the solutions, touch STOP and select an another solution and touch START to resume.
7) Touch STOP to finish the treatment.
8) Right after the use the solution 1 and 2, and before using the solution 3, clean the handpiece tip by shaking in water to remove dirt to get an right effect.



- Correct -



- Incorrect -

Hydra touch

CARTESSA_0000343

# 5. Operation

## 5.2 Operation Guide

### 5.2.3 Aqua Filling Mode

9) Touch "Cleansing mode" automatically starts cleaning for 90 seconds.

10) Touch "Start" at the highest level of vacuum and flow knobs automatically starts cleansing mode for 90 seconds. Please cap the Aqua Handpiece with a provided cap before the cleansing starts.



- Cleansing Mode -



- Cleansing Mode Operations -



**NOTE**
After use of solution 2 and before use of solution 3, clean the Handpiece cable with cleansing mode.
When finished the treatment (after use of solution 3), clean again with cleansing mode and store.

**NOTE**

1. Please clean with cleansing mode before starting the first treatment after the device installation.
2. Please use with an appropriate level after testing the solution spray on the back of a hand during 20~30 seconds at the highest level of Vacuum and Injections.
3. To switch the solutions, please check the solution spray in the same way mentioned above, and use with an appropriate level.

Hydra touch

CARTESSA_0000344

# 5. Operation

## 5.2 Operation Guide

### 5.2.3 Aqua Filling Mode

11) Touch "H2" on the center of Aqua filling mode.



- H2 Mode -

12) Touch H2 solution button and START starts the operation.

13) It is available to check the H2 generation in the H2 bottle.

14) Make Aqua Handpiece fully contact to the skin and start the treatment.

15) Generating H2 continues 5 minutes after it starts and automatically stop after 5 minutes. (H2 LED is ON during the operation regardless of generating H2)

## 5.2.4 Large Liquid Waste Container: Liquid Level Warning

1) Sensor helps to check the time to empty the waste in the container, the warning mark with beep sound is showed on the screen when the waste liquid level reaches 2.4 liters in the container and the device is automatically stopped. In this case, empty the container and resume the operation. It is highly recommended to check and empty the container frequently before warning.



- Large Waste Liquid Container:
Liquid Level Warning -

23

*Hydra touch*

CARTESSA_0000345

# 5. Operation

## 5.2 Operation Guide

### 5.2.5 Electroporation Mode

1) Touch Electroporation Handpiece and select Electroporation mode.



- Electroporation Mode-

2) Adjust Electroporation level with control buttons. Setting range is 1~10 and default setting is 3.
3) Start with low level in the beginning, gradually increase the level during the treatment.
4) Touch START starts operation. Running time is up to 30 minutes.
5) Press Electroporation Handpiece button repeatedly, the LED color is changed to Red, Blue, Purple and OFF.
6) Touch STOP to finish the operation.

### 5.2.6 Y Handpiece Mode

1) Touch Y Handpiece and select Y Handpiece Mode.



- Y Handpiece Mode -

2) Adjust Electroporation level with control buttons. Setting range is 1~10 and default setting is 4.
3) Start with low level in the beginning, gradually increase the level during the treatment.
4) Touch START starts operation. Running time is up to 30 minutes.
5) Touch STOP to finish the operation.

*Hydra touch*

CARTESSA_0000346

# 6. Maintenance

## 6.1 Storage & Cleaning Precautions

- Do not twist or tangle the handpiece.
- Do not store the device in humid or wet conditions.
- Power off in case of not in use for a day or more.
- For long time storage, remove the power cable and wrap the device.
- For long time storage, disassemble the handpiece connectors.
- Remove the handpeices from the device and store safely.
- Do not store in direct sunlight areas which may increase the temperature of the device.
- Be careful that the handpiece falls on the floor and is not damaged.
- Remove the power cable from the outlet and store.
- Keep the device away from children.
- To protect the device from bad influence of environment, do not store the device in a place exposed to high temperature, high humidity, dust and corrosive gas etc.
- Keep the device away from physical impacts, wobbling and slope.
- Do not store the device in a place with chemicals or which may generate gas.
- Carrying out a periodical inspection is strongly recommended.
- Safety check is strongly required before resume the device which has not used a month or more.

## 6.2 Storage & Cleaning Guide

Store

- Optimal temperature for storage is -10~50℃.
- Optimal humidity for storage is 10~90%.
- Indoor ventilation for storage is required.
- Minimize physical impacts or wobbling of the device.

>  Please turn off the power switch and disconnect a power cable before conduct the maintenance. It causes serious damages to the user or device unless power off.

Hydra touch

# 6. Maintenance

## 6.2 Storage & Cleaning Guide

### Cleaning Main Body

- Wipe the screen and main body with a soft cloth to remove foreign materials and dirt.

- In case of removing serious contaminations, softly rubbing in repeat is required rather than wiping with a strong pressure.

### Cleaning LCD

- Wipe the LCD with a soft cloth. In case of removing serious contaminations, softly rubbing in repeat is required rather than wiping with a strong pressure.

### Cleaning Handpieces

- Remove the used tips for treatment and destroy.

- Handpiece tip is disposable. Do not use repeatedly and destroy after use.

- Clean with automatic cleansing mode after treatment. This basic cleaning step keeps the device clean and prevent from bacterial infections.

- Clean with wet wipes and clean again with a dry cloth.

- Check the connection parts of handpieces and remove foreign materials and dirt.

- While cleaning or in case of not in use for long time, take tips off from the handpieces and store them covered with caps.

### Cleaning Waste Container

- Censor helps to check the time to empty the waste in the container during treatment, the 'Liquid Waste Container is full icon' with beep sound is showed on the screen when the liquid waste level reaches 2.4 liters in the container. The device is automatically stopped as the icon is flickering with marked 'Liquid Waste Container is full icon'. In this case, empty the container and resume the operation. It is highly recommended to check and empty the container frequently before 'Liquid Waste Container is full icon' warning.

- Discard the liquid waste and clean the container with cleaning tools and running water.

- In case not in use for long time, empty the container and store.

- Metallic area inside of the container is liquid level censor. It is recommended to empty the container and clean the area with dried fabrics before use. if the censor wet, the warning mark could be showed in case of the liquid level is not full.

- In case of cleaning, equip to the device after water in or outside of the container is fully removed .

26

Hydra touch

CARTESSA_0000348

# 6. Maintenance

## 6.2 Storage & Cleaning Guide

### Hydrogen Water Module

- Please use drinkable water such as mineral or purified one (exception: distilled water and reverse osmotic pressure method purified) for H2 module. Using any water mixed with aromatic oils or other cosmetic tonics is strictly prohibited.

- It is highly recommended to conduct the electrodes cleaning every month. Operate cleansing mode with vinegar and citric acid solution. After 90 seconds of cleansing mode, rinse the H2 bottle with water and operate cleansing mode again with clean mineral water.
  (Citric acid solution (citric acid: water = 1:2) 100 milliliters or more)

- When removing the H2 module, remove it by holding the part of bottle, not module part. If there is water in the H2 module, there is a danger of spillage.

 

Hydra touch

CARTESSA_0000349

# 6. Maintenance

## 6.3 Trouble Shootings

| Message | Cause | Action |
|---|---|---|
| | H2 module is not connected to a main body | Connect H2 module to a main body. |
| | Electroporation is not connected to a main body | Connect Electroporation Handpiece to a main body. |
| | Y Handpiece is not connected to a main body | Connect Y Handpiece to a main body. |
| | The Communication between LCD and a main body is not proceed for 3 seconds or more | Power off and reboot the system. If this continues, please contact to Customer Service (Head Office). |
| | The power supply of the H2 module is unstable | Power off and reboot the system. If this continues, please contact to Customer Service (Head Office). |

| Problem | Action |
|---|---|
| Power ON is not available. | • Check the power supply outlet and connections.<br>• Check the power cable connection to the device.<br>• Check the fuse located in the part of power cable connection, and replace if it is not functioned.<br>• Check the Power switch is ON.<br>• Please contact to Customer Service (Head Office), if the problem continues after proceed all actions above. |
| Unusual Smell from the device | • Turn Power OFF<br>• Disconnect the power cable from the outlet.<br>• Please contact to Customer Service (Head Office).<br>• Using the device with this problem may cause the risk of fire or accidents by impairing the modules inside. |

28

CARTESSA_0000350

# 6. Maintenance

## 6.3 Trouble Shootings

| Problem | Action |
|---|---|
| Handpiece is not recognized | • Check the connection between a handpiece and a main body.<br>• Check the connection part of a main body with applicable hand pieces.<br>• Please contact to Customer Service (Head Office), if the problem continues after proceed all actions above. |
| Solution Spray Troubles | • Check the solution spray for 20~30 seconds at the highest level.<br>• Clean the device with Cleansing mode and check the operation.<br>• Please contact to Customer Service (Head Office), if the problem continues after proceed all actions above. |
| Liquid Waste Container is full | • 'Liquid Waste Container is full' icon is showed on the screen when the liquid waste level reaches 2.4 liters in the container. Check the liquid waste container is full.<br>• Empty the liquid waste container. |
| Less bubble generation in H2 Module | • It may come from the trouble in electrolysis caused by electrode scales.<br>• Conduct the electrode cleaning if the bubble remarkably decreases.<br>• Please refer to the cleaning guide page 27. |
| Only Big bubble generation in H2 Module | • H2 module could be malfunctioned if it dried. In case of initial use or resume to use after long time storage, please fill the H2 bottle with water and leave it 5 minutes before use. |

# 7. Specification

| Specification | |
|---|---|
| Input Power | AC100 - 120V / 200 - 240V, 50/60Hz |
| Weight | 14 Kg |
| Size (WxDxH, mm) | 434 x 383 x 416 |

29

Hydra touch

CARTESSA_0000351

# 8. Warranty

## 8.1 1-year Warranty

- Eunsung Global Corp. provides the following assurance for products in accordance with the Consumer Dispute Resolution Criteria by Item (Fair Trade Commission Notice).
- In the event of a break down in normal use (according to the user's manual only) within 1 year from the date of purchase, customer service is granted without charges.
- The warranty covers a main body of the device only.
- The warranty excludes any malfunctions caused from delivery or movement of the device by connected handpieces or cables.
- The warranty excludes the cases of misuse, disassemble and modification which are not identified in the manual.
- The warranty excludes consumable components.

## 8.2 Compensatory guarantees

- Compensatory guarantees is provided after 1-year warranty above. Within the warranty period, compensatory guarantees is applied to the cases of a break down caused by consumer's faults or natural disasters such as fire, salt damages, flood, shocks, earthquakes, lighting etc.

- Compensatory guarantees is applied to damages caused by disassemble, modification and careless handlings of the user.

- Compensatory guarantees is applied to damages due to the third party repairs which is not authorized by Eunsung Global Corp.

- Compensatory guarantees is applied to damages caused by using inappropriate consumable goods or the user's misconduct of the manual.

- Compensatory guarantees is applied in case of expire of the warranty period approved by Eunsung Global Corp. for consumable goods

> ⚠ - The authorized person must provide the repair service for free warranty. The warranty strictly excludes the cases that the device is used for the purpose which is not identified in the manual.
> - The service request for any cases other than the damage of the device, it shall be charged regardless of warranty period. Please read and understand all guidelines in the manual.



Hydra touch

CARTESSA_0000352

# 9. Customer Service

## Sales Manager

## Producer



Eunsung Global Corp.

Head Office:

120, Gieopdosi-ro, Gagok-ri, Wonju-si, Gangwon-do, Korea 26354

Tel: +82-33-760-1700 (Rep) Fax: +82-33-746-9716

E-mail: es@esglobal.co.kr/www.esglobal.co.kr

Seoul Office:

#1102-1105, 53, Gasan-digital-2ro, Geumcheon-gu, Seoul, Korea 08588

Tel: +82-2-514-9713(Rep)    Fax: +82-2-514-9716

Hydra touch

CARTESSA_0000353



Hydra touch

CARTESSA_0000354

# Ex.  ,   ,   ,
# Under Seal

E .

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | **Attorney Docket Number** | EDGE.005C2 |
|---|---|---|
| | **Application Number** | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor    1**                                                   Remove
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Roger | | Ignon | |

**Residence Information (Select One)**   ⦿ US Residency   ○ Non US Residency   ○ Active US Military Service

| City | Redondo Beach | **State/Province** | CA | **Country of Residence** i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 843 Avenue C | | |
|---|---|---|---|
| Address 2 | | | |
| City | Redondo Beach | **State/Province** | CA |
| **Postal Code** | 90277 | **Country** i | US |

**Inventor    2**                                                   Remove
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Scott | | Mallett | |

**Residence Information (Select One)**   ⦿ US Residency   ○ Non US Residency   ○ Active US Military Service

| City | Coto De Caza | **State/Province** | CA | **Country of Residence** i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| Address 1 | 31682 Via Patito | | |
|---|---|---|---|
| Address 2 | | | |
| City | Coto De Caza | **State/Province** | CA |
| **Postal Code** | 92679 | **Country** i | US |

**Inventor    3**                                                   Remove
**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Abraham | | Solano | |

**Residence Information (Select One)**   ⦿ US Residency   ○ Non US Residency   ○ Active US Military Service

**Exhibit 17**

EDGE-CARTESSA_0001593

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

| City | Corona | State/Province | CA | Country of Residence i | US |
|---|---|---|---|---|---|
| | | | | | |

**Mailing Address of Inventor:**

| Address 1 | 11 Summerwood Ct., #F | | |
|---|---|---|---|
| Address 2 | | | |
| City | Corona | State/Province | CA |
| Postal Code | 92880 | Country i | US |

**Inventor    4**                                                                    [ Remove ]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | William | | Cohen | |

| **Residence Information (Select One)** | ⊙ US Residency | ○ Non US Residency | ○ Active US Military Service | |
|---|---|---|---|---|

| City | Los Alamitos | State/Province | CA | Country of Residence i | US |
|---|---|---|---|---|---|
| | | | | | |

**Mailing Address of Inventor:**

| Address 1 | 3922 Toland Circle | | |
|---|---|---|---|
| Address 2 | | | |
| City | Los Alamitos | State/Province | CA |
| Postal Code | 90720 | Country i | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button.                    [ Add ]

## Correspondence Information:

| Enter either Customer Number or complete the Correspondence Information section below. For further information see 37 CFR 1.33(a). | | |
|---|---|---|
| ☐  **An Address is being provided for the correspondence Information of this application.** | | |
| Customer Number | 20995 | |
| Email Address | efiling@knobbe.com | [ Add Email ]  [ Remove Email ] |

## Application Information:

| Title of the Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN | |
|---|---|---|
| Attorney Docket Number | EDGE.005C2 | **Small Entity Status Claimed**  ☒ |
| Application Type | Nonprovisional | |
| Subject Matter | Utility | |
| Total Number of Drawing Sheets (if any) | 25 | **Suggested Figure for Publication (if any)** |

## Filing By Reference :

EDGE-CARTESSA_0001594

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country i |
|---|---|---|
| | | |

## Publication Information:

| | Request Early Publication (Fee required at time of Request 37 CFR 1.219) |
|---|---|
| | **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing. |

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| Please Select One: | ◉ Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
|---|---|---|---|
| Customer Number | 20995 | | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the application number blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | Continuation of | 13/267554 | 2011-10-06 |

| Prior Application Status | Patented | | | | Remove |
|---|---|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) | Patent Number | Issue Date (YYYY-MM-DD) |
| 13/267554 | Continuation of | 11/392348 | 2006-03-29 | 8048089 | 2011-11-01 |

| Prior Application Status | Expired | | Remove |
|---|---|---|---|

EFS Web 2.2.11

EDGE-CARTESSA_0001595

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
|---|---|---|---|
| 11/392348 | Claims benefit of provisional | 60/755310 | 2005-12-30 |

| Prior Application Status | Expired | | Remove |
|---|---|---|---|

| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
|---|---|---|---|
| 11/392348 | Claims benefit of provisional | 60/764668 | 2006-02-02 |

Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button.

Add

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX) [i] the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

Remove

| Application Number | Country [i] | Filing Date (YYYY-MM-DD) | Access Code[i] (if applicable) |
|---|---|---|---|
| | | | |

Additional Foreign Priority Data may be generated within this form by selecting the **Add** button.

Add

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☐ Authorization to Permit Access to the Instant Application by the Participating Offices

EFS Web 2.2.11

EDGE-CARTESSA_0001596

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing this Authorization.

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

| Applicant    1 | Remove |
|---|---|

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

| ◉ Assignee | ◯ Legal Representative under 35 U.S.C. 117 | ◯ Joint Inventor |
|---|---|---|
| ◯ Person to whom the inventor is obligated to assign. | ◯ Person who shows sufficient proprietary interest | |

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here.     ☒

| Organization Name | EDGE SYSTEMS LLC |
|---|---|

**Mailing Address Information:**

| **Address 1** | 2277 Redondo Avenue | | |
|---|---|---|---|
| Address 2 | | | |
| **City** | Signal Hill | **State/Province** | CA |
| **Country** i   US | | Postal Code | 90755 |
| Phone Number | | Fax Number | |

EFS Web 2.2.11

EDGE-CARTESSA_0001597

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

| Email Address | |
|---|---|

Additional Applicant Data may be generated within this form by selecting the Add button.    | Add |

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

### Assignee    1

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

| Remove |

| If the Assignee or Non-Applicant Assignee is an Organization check here. | ☐ |
|---|---|

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| **Address 1** | |
|---|---|
| Address 2 | |

| **City** | | **State/Province** | |
|---|---|---|---|
| **Country**  i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button.    | Add |

## Signature:    | Remove |

NOTE:  This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4 for signature requirements and certifications

| **Signature** | /Theodore G. Papagiannis/ | | | Date  (YYYY-MM-DD) | 2015-04-28 |
|---|---|---|---|---|---|
| First Name | Theodore G. | Last Name | Papagiannis | Registration Number | 61546 |

Additional Signature may be generated within this form by selecting the Add button.    | Add |

EDGE-CARTESSA_0001598

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | EDGE.005C2 |
|---|---|---|
| | Application Number | |

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

EDGE-CARTESSA_0001599

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.    The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.    A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.    A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.    A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.    A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.    A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.    A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.    A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.    A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS Web 2.2.11

EDGE-CARTESSA_0001600

EDGE.005C2 PATENT

# CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

## Cross-reference to Related Applications

[0001] This is a continuation of U.S. Patent Application No. 13/267,554, filed October 6, 2011, which is a continuation of U.S. Patent Application No. 11/392,348, filed March 29, 2006, which claims the benefit of U.S. Provisional Application No. 60/755,310, filed December 30, 2005 and U.S. Provisional Application No. 60/764,668, filed February 2, 2006, the entireties of all of the aforementioned applications are hereby incorporated by reference herein.

## Background

### Field

[0002] The invention relates in general to the field of skin treatment, and more specifically to apparatuses and methods for treating a person's skin.

### Description of the Related Art

[0003] Abrasion of the outer layer or epidermis of the skin is desirable to smooth or blend scars, blemishes, or other skin conditions that may be caused by, for example, acne, sun exposure, and aging. Standard techniques used to abrade the skin have generally been separated into two fields referred to as dermabrasion and microdermabrasion. Both techniques remove portions of the epidermis called the stratum corneum, which the body interprets as a mild injury. The body then replaces the lost skin cells, resulting in a new outer layer of skin. Additionally, despite the mild edema and erythema associated with the procedures, the skin looks and feels smoother because of the new outer layer of skin.

[0004] Dermabrasion refers to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece with an abrasive element that is often in the form of a burr, wheel, or disc. This process tends to be painful and messy. In fact, the procedure is sometimes painful enough to require a local anesthetic. Dermabrasion leaves the skin red and raw-looking. The removed skin can take several months to regrow and heal. Recent efforts have led to the use of lasers instead of abrasive elements, which have resulted in less bleeding, but the pain and mess remains.

EDGE-CARTESSA_0001601

[0005]    Efforts have been made to decrease the mess caused by the process waste, such as removed skin and blood, by adding a suction element. As the process waste is drawn into the suction opening, skin that has not been removed is also pulled against the grit surrounding the suction opening, so the procedure remains fairly messy due to the abrasion that takes place outside of the handpiece by the grit.

[0006]    Microdermabrasion refers generally to a procedure in which the surface of the skin is removed due to mechanical rubbing by a handpiece emitting a stream of sand or grit. For example, a handpiece can be used to direct an air flow containing tiny crystals of aluminum oxide, sodium chloride, or sodium bicarbonate. The momentum of the grit tends to wear away two to three cell layers of the skin with each pass of the handpiece. Alternatively, new "crystal-free" microdermabrasion techniques utilize a diamond-tipped handpiece without a stream of grit.

[0007]    Efforts to add a suction element have been more successful in microdermabrasion than in dermabrasion because the handpiece applying the stream of grit is more controllable to a localized area. That is, as the removed skin is drawn into the suction opening, skin that has not been removed is also pulled towards the handpiece where it is treated with the grit stream, allowing for simultaneous local treatment and suction.

[0008]    Microdermabrasion removes moisture from the skin, so the procedure is always followed by the application of moisturizing creams. However, similar to topical application of moisturizing creams prior to microdermabrasion, the moisturizing elements only work as deep as the active ingredients can passively migrate through the remaining epidermis.

Summary of the Invention

[0009]    In some embodiments, an apparatus for treating skin has a console with a user input device and a handpiece assembly. The handpiece assembly is configured to treat skin. A fluid line provides fluid communication between the console and the handpiece assembly. A manifold system is coupled to the console and controlled by the user input device, such as a computer, touchscreen, keyboard, and the like. The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

EDGE.005C2                                    -2-                        Knobbe, Martens, Olson & Bear, LLP

EDGE-CARTESSA_0001602

[0010]    In some embodiments, a tip comprising a skirt portion is configured to couple to a handpiece for treating a target area on a patient's skin. A central body portion is coupled to the skirt portion. A first passage extends through the central body portion and is configured to receive a fluid from the handpiece. At least one second passageway extending through the central body portion and is configured to convey the fluid back into the handpiece. An inner member extends in a generally spiral fashion across at least a portion of a distal face of the central body portion. The inner member defines a channel between the first passage and the at least one second passage. When the tip is place against the skin, a chamber can be formed by the channel and the person's skin.

[0011]    In some embodiments, a method of treating a target region on a patient's skin comprises providing a tip including a first aperture and at least one second aperture. At least one inner member on the surface of the tip defines at least one channel between the first aperture and the at least one second aperture. An outer member is disposed on the surface of the tip. The outer member engages the target with the tip. A treatment fluid flows distally through the first aperture region and through the at least one channel. The treatment fluid flows proximally through the at least one second aperture.

[0012]    In some embodiments, a tip comprises a skirt portion configured to couple to a handpiece for treating a target on a patient's skin. A central body portion is coupled to the skirt portion and includes a mounting region substantially opposite the skirt portion. The mounting region configured to receive a pad for treating the skin. A first aperture extends through the skirt portion and the central body portion and configured to receive a fluid from the handpiece. At least one second aperture extending through the skirt portion and the central body portion and configured to convey the fluid back into the handpiece.

[0013]    In some embodiments, a method of treating a target region of a patient comprises providing a tip including a first aperture, at least one second aperture, and a distal end configured to receive a pad. In some variations, the first pad is attached to the distal end. The tip is engaged with the target region.

[0014]    In some embodiments, a manifold system comprises a body portion configured to receive releasably at least two bottles. The manifold is configured so that it can be coupled to a console. The console includes a handpiece for treating skin. At least one

EDGE-CARTESSA_0001603

elongate member is in communication with a pump and configured to extract a fluid from one of the at least two bottles. At least one switch is configured to permit or inhibit a flow of the fluid from one of the at least two bottles through the pump. In some variations, the elongate member is dimensioned to fit within one of at least two bottles to draw fluid out of the bottle.

[0015]    In some embodiments, a method of treating a target region on a patient's skin comprises engaging a tip with the patient's skin such that an effective amount of skin is removed by the tip. In some variations, the tip is a dry tip. After removing an effective amount of skin, another tip (e.g., a wet tip) engages the patient's skin such that an effective amount of skin is removed by the tip. In some variations, acid is delivered out of the wet tip to facilitate skin removal. In some variations, the wet tip includes a first aperture, at least one second aperture, at least one inner member on the surface of the tip defining at least one channel between the first aperture and the at least one second aperture, and an outer member on the surface of the tip. In some variations, treatment fluid flows outwardly along the channel. In some variations, treatment fluid flows inwardly along the channel. In some variations, the wet tip comprises an abrasive pad.

[0016]    In some embodiments, a method of treating a target region on a patient's skin comprises engaging a first skin treatment tip with the patient's skin. A first material is delivered out of the first skin treatment tip to a target region. A second skin treatment tip engages the target region while the first material effectively facilitates exfoliation with the second skin treatment tip. In some variations, the first material comprises an acid, hydrator, and combination thereof. In some variations, the first skin treatment tip is configured to remove skin at a different rate than the second skin treatment tip. In some variations, the first skin treatment tip is configured to exfoliate at a higher rate than the second skin treatment tip. In some variations, material is delivered out of the second treatment tip to the target region of the patient's skin.

[0017]    The apparatus for treating skin can dispense treatment material that is held in containers, such as bottles, bags, pouches, or other suitable structures for holding and storing material. These containers can be non-refillable or refillable. The treatment material can be delivered by gravity feed, pumps, or suction devices. The manifold system can be used to control fluid flow from a plurality of containers to one or more handpieces.

EDGE-CARTESSA_0001604

Brief Description of the Drawings

[0018]    Having thus summarized the general nature of the invention, certain preferred embodiments and modifications thereof will become apparent to those skilled in the art from the detailed description herein having reference to the figures that follow.

[0019]    Figure 1 is a perspective view of one embodiment of a skin treatment system.

[0020]    Figure 2A is a perspective view of one embodiment of a handpiece assembly for use with the skin treatment system of Figure 1.

[0021]    Figure 2B is a side elevational view of the handpiece assembly of Figure 2A.

[0022]    Figure 3 is a longitudinal cross-sectional view of the handpiece assembly of Figure 2B.  The handpiece assembly is engaging a person's skin.

[0023]    Figure 4 is a perspective view of another embodiment of a handpiece assembly.

[0024]    Figure 5A is a perspective view of one embodiment of a tip that can be coupled to a main body of a handpiece assembly to treat a person's skin.

[0025]    Figure 5B is a top elevational view of the tip of Figure 5A.

[0026]    Figure 5C illustrates a bottom elevational view of the tip of Figure 5A.

[0027]    Figure 5D is a cross-sectional view of the tip of Figure 5B taken along the line 5D-5D.

[0028]    Figure 6A is a perspective view of a tip in accordance with another embodiment.

[0029]    Figure 6B is a top elevational view of the tip of Figure 6A.

[0030]    Figure 6C is a bottom elevational view of the tip of Figure 6A.

[0031]    Figure 6D is a cross-sectional view of the tip of Figure 6B taken along the line 6D-6D.

[0032]    Figure 7A is a perspective view of a tip in accordance with another embodiment.

[0033]    Figure 7B is a top elevational view of the tip of Figure 7A.

[0034]    Figure 7C is a bottom elevational view of the tip of Figure 7A.

EDGE-CARTESSA_0001605

**[0035]**     Figure 7D is a cross-sectional view of the tip of Figure 7B taken along the line 7D-7D.

**[0036]**     Figure 8A is a perspective view of yet another embodiment of a tip for treating a person's skin.

**[0037]**     Figure 8B is a top elevational view of the tip of Figure 8A.

**[0038]**     Figure 8C is a bottom elevational view of the tip of Figure 8A.

**[0039]**     Figure 8D is a cross-sectional view of the tip of Figure 8B taken along the line 8D-8D.

**[0040]**     Figure 9A is a perspective view of still another embodiment of a tip that can be coupled to a main body of a handpiece assembly.

**[0041]**     Figure 9B is a top elevational view of the tip of Figure 9A.

**[0042]**     Figure 9C is a bottom elevational view of the tip of Figure 9A.

**[0043]**     Figure 9D is a cross-sectional view of the tip of Figure 9B taken along the line 9D-9D.

**[0044]**     Figure 10A is a perspective view of another embodiment of a tip for treating a person's skin.

**[0045]**     Figure 10B is top elevational view of the tip of Figure 10A.

**[0046]**     Figure 10C is bottom elevational view of the tip of Figure 10A.

**[0047]**     Figure 10D is a cross-sectional view of the tip of Figure 10B taken along the line 10D-10D.

**[0048]**     Figure 10E is a perspective exploded view of the tip of Figure 10A, wherein a pad is spaced from a tip main body.

**[0049]**     Figures 11A-11E are cross-sectional views of inner members that can be used to exfoliate skin.

**[0050]**     Figure 12 is a perspective view of a bottle for use with the skin treatment system of Figure 1.

**[0051]**     Figure 13A is a cross-sectional view of one embodiment of a bottle spaced from an insertion tip assembly.

**[0052]**     Figure 13B is a cross-sectional view of the bottle of Figure 12A coupled with the insertion tip assembly.

EDGE-CARTESSA_0001606

[0053]    Figure 14A is a cross-sectional view of a closure and a bottle.

[0054]    Figure 14B is a cross-sectional view of the closure and bottle of Figure 14A when assembled.

[0055]    Figure 15A is a perspective view of one embodiment of a manifold system holding a plurality of bottles.

[0056]    Figure 15B is a cross-sectional view of the manifold system of Figure 15A taken along the line 15B-15B of Figure 15A.

[0057]    Figure 15C is a cross-sectional view of the manifold system of Figure 15A taken along the line 15C-15C of Figure 15A.

[0058]    Figure 15D is a cross-sectional view of the manifold system of Figure 15C wherein the bottle has been removed.

[0059]    Figure 15E is a cross-sectional elevational view of the manifold system.

[0060]    Figure 16 is a perspective view of another embodiment of a skin treatment system.

[0061]    Figure 17 is a cross-sectional view of a fluid line of the skin treatment system of Figure 16 taken along the line 17-17.

[0062]    Figure 18 is a side elevational view of a handpiece assembly with a removable cartridge.

[0063]    Figure 19 is a side elevational view of the handpiece assembly and removable cartridge of Figure 18, the cartridge is shown removed from the handpiece assembly.

Detailed Description of the Preferred Embodiment

[0064]    Figure 1 illustrates a skin treatment system 10 that can be used to perform one or more treatments on a person's skin.  The illustrated skin treatment system 10 includes a console 12 and a handpiece assembly 18 connected to the console 12 via a line 20.  A manifold system 24 can control the flow of treatment material from containers 26 into and through the line 20.  The treatment material can be discharged out of the handpiece assembly 18 to treat a person's skin. The skin treatment system 10 can be used at a hospital, health care physicality, residences, or any other suitable location.

EDGE-CARTESSA_0001607

[0065]    As explained in more detail below, the handpiece assembly 18 is applied to the target area of the patient to perform skin treatment(s).  As used herein, the term "skin treatment" is a broad term and includes, but is not limited to, skin removal, skin abrasion (e.g., dermabrasion, microdermabrasion, etc.), ablating or slicing skin (preferably a thin layer of skin), stimulation (including thermal, mechanical, electrical, and/or chemical stimulation), mesotherapy, isophoresis, light therapy, vacuum therapy, and the like.  Preferably, the handpiece assembly 18 administers a treatment material from at least one of the containers 26 through the line 20 to the target area of the skin while the handpiece assembly 18 engages the skin.

[0066]    As used herein, the term "treatment material" is a broad term and includes, but is not limited to, medicament, a substance tending to flow or conform to the outline of its container such as fluid, gas, liquid (e.g., serums, water, saline, etc.), gel, fluidized material, additives, and/or a plurality of fine solids.  The general term "fluid" is used throughout synonymously with the term "treatment material" and is to be given the same broad definition. The handpiece assembly 18 can preferably massage, abrade, ablate, or otherwise treat the target skin area while also applying a treatment material to the patient.  In certain embodiments, the treatment material and tip of the handpiece 18 can work in combination for an effective and rapid skin treatment.  Additionally, any number of "dry" and "wet" tips can be used alone or in combination for treatment flexibility.

[0067]    With continued reference to Figure 1 the line 20 is configured to provide fluid communication between the containers 26 and the handpiece assembly 18.  The line 20 can comprise one or more conduits extending between the console 12 and the handpiece assembly 18.  In certain embodiments, the line 20 includes a supply line and a waste line for delivering and returning material, respectively, as detailed below.

[0068]    The distal end 22 of the line 20 is connected to the handpiece assembly 18. Preferably, the line 20 includes a filter 28 that removes contaminants or impurities from the treatment material passing through the line 20.  In other embodiments, the filter 28 is located in the console 12 or the manifold system 24.  The console 12 can be connected to a power source such as an AC outlet.  The power source can power the handpiece assembly 18 and/or

EDGE-CARTESSA_0001608

other components of the skin treatment system 10, such as, for example, pumps, valves, and the like.

[0069]    In the illustrated embodiment, the console 12 comprises four casters 33 to allow for easy movement, for example, from one treatment room to another treatment room. In such an embodiment, the console 12 can be conveniently rolled on a support surface. Other means of transportation can also be employed or the console 12 can be stationary. In some embodiments, the console 12 is portable for convenient transport.

[0070]    The illustrated containers 26 of Figure 1 are preferably releasably coupled to the manifold system 24. The manifold system 24 can deliver treatment material from the containers 26 to the line 20 as mentioned above. In certain embodiments, the console 12 has a user input device 32 for selecting a treatment material to be passed through the line 20 to the handpiece assembly 18. During some skin treatment procedures, treatment materials from multiple containers 26 are sequentially or simultaneously applied to the patient's skin during a "wet" mode of operation. Alternatively, the skin treatment system 10 can be used to deliver a single treatment material to the patient's skin. In some embodiments, the console 12 can be used for a "dry" mode of operation. That is, the console 12 can be used to exfoliate skin, for example, without delivering little or substantially no treatment fluid. The skin treatment system 10 can thus provide flexibility in selecting a treatment plan.

[0071]    Multiple handpieces assemblies 18 and/or tips 34 can be used during a single skin treatment procedure in a wet and/or dry mode of operation. For example, a first handpiece assembly 18 may be employed to treat a patient's face and neck while a second handpiece assembly 18 may be employed to treat other larger areas of the patient's body. Thus, different handpieces 18 can be used to treat different regions of a person's body. The configurations of the handpieces 18 and tips can be selected based on the treatment material to be applied, desired interaction with the patient's skin, size of treatment area, skin condition, and the like.

[0072]    With reference to Figures 2A and 2B, the handpiece assembly 18 includes a main body 30 and a tip 34. The handpiece assembly 18 can be conveniently held within the hand of a user so that the user can place the tip 34 in operative engagement with a person's skin. The user is typically an aesthetician (e.g., an aesthetician allowed to perform

EDGE-CARTESSA_0001609

microdermabrasion), doctor, and other medical personnel, such as a physician assistant and nurse practitioner.  In some cases, the user is the person whose skin is being treated.

[0073]    The main body 30 has contoured portions 70 at its distal end 36 so that the user can comfortably grip the handpiece assembly 18 during use.  The main body 30 can have other designs to provide a comfortable grip.  Figure 2A illustrates an embodiment in which the main body 30 is substantially flat on two opposing sides.  Figure 4 illustrates an embodiment in which the main body 30 is generally cylindrical.

[0074]    As noted above, the tip 34 can be pressed against a patient's skin to perform a skin treatment.  The distal end 102 of the tip 34 may be angled with respect to the handpiece assembly 18 to increase the contact area with the patient's skin without enlarging the handpiece assembly 18 for an ergonomic and comfortable design.  The angled tip 34 can lay flat on the skin while the main body 30 is angled to the skin.  The angle between the face of the distal end 102 and the longitudinal axis of the handpiece assembly 18 can be selected based on the desired size of the face of the distal end 102.  In alternative embodiments, the face of the distal end 102 is generally perpendicular to the longitudinal axis of the main body 30.

[0075]    The tip 34 can be permanently or temporarily coupled to the distal end 36 of the main body 30.  In some embodiments, the tip 34 is disposable.  As used herein, the term "disposable," when applied to a system or component (or combination of components), such as a tip, container, or pad, is a broad term and means, without limitation, that the component in question is used a finite number of times and then discarded.  Some disposable components are used only once and then discarded.  Other disposable components are used more than once and then discarded.  In some embodiments, the tip 34 is removably coupled to the main body 30 such that the tip may be removed from the main body 30 and thrown away to avoid cross-contamination.  In other embodiments, the tip 34 is a reusable tip that can be cleaned, for example by autoclaving, after each use.  The tip 34 can thus be used for any number of procedures as desired.

[0076]    With reference to Figures 2A and 2B, the proximal end 40 of the main body 30 is operatively connected to the line 20.  In the embodiment illustrated, the line 20 includes an output line 50 for removing waste from the handpiece assembly 18 and an input

EDGE-CARTESSA_0001610

line 52 for delivering treatment material to the handpiece assembly 18. The proximal end 40 of the main body 30 includes a plurality of connectors 44, 46, each connected to one of the conduits 50, 52. The illustrated input line 52 is connected to the connector 46, and the output line 50 is connected to the connector 44.

[0077]    The input line 52 delivers treatment material from at least one of the containers 26 to the connector 46. The fluid then flows through the main body 30 and ultimately to the tip 34. As shown in Figure 3, the main body 30 comprises a plurality of lumens 90, 92 in a fluid communication with the tip 34. Fluid from the input line 52 can flow through the input lumen 92 to the tip 34. The fluid then flows out of the tip 34 to a target skin area. The fluid is then trapped in the space 100 between the skin 80 and the tip 34. To remove the fluid, the fluid flows proximally through the lumen 90 to the output line 50. The fluid passes through the output line 50 and into the console 12. As such, fluid can continuously or intermittently flow through the handpiece assembly 18.

[0078]    To treat the person's skin 80, the handpiece assembly 18 can also be moved relative to the skin 80 such that the tip 34 maintains engagement with the skin 80. The illustrated tip 34 is configured to massage the skin 80 while also providing fluid communication with the skin 80. As detailed below in connection with Figures 5A through 10, the tip can include sharp planing blades, blades (e.g., razor blades), raised sharp areas, molded posts, grits, or other structures for treating skin, as detailed below.

[0079]    When the tip 34 and treatment material are used in combination, the handpiece assembly 18 preferably exfoliates dead skin cells and extracts impurities by applying a vacuum while simultaneously bathing the healthy underlying skin with active treatment material. The active treatment material can facilitate cleansing, exfoliating, hydrating, and/or provide residual antioxidant protection. The treatment material and tip 34, alone or in combination, can effectively and rapidly treat the target skin area. The waste material, including the used treatment material, removed skin, and/or grit, can then be drawn back through the tip 34, the main body 30 via lumen 90, and into the connector 44. The waste then flows into the output line 50 for subsequent disposal, as detailed below in connection with Figure 4.

EDGE-CARTESSA_0001611

[0080]     In some embodiments, including the illustrated embodiment of Figure 3, the tip 34 has a tip connector 98 (see Figures 5C and 5D) that mates with the lumen 92. The tip 34 can provide fluid communication from the tip connector 98 to the space 100 via a through-hole 122. One or more through-holes 114 define fluid passageways through the tip 34 between the space 100 and the intermediate chamber 116.

[0081]     The intermediate chamber 116 can be interposed between the through-holes 114 and the lumen 90. The intermediate chamber 116 is preferably defined by the distal face 43 of the main body 30 and the proximal face 41 of the tip 34. The intermediate chamber 116 can provide equalization of fluid between the tip 34 and the body 30. As such, a generally equal vacuum is applied to both through-holes 114. The fluid can flow through the through-holes 114, into the intermediate chamber 116, and then into the lumen 90. In some embodiments, however, the fluid flows directly from the through-holes 114 to the lumen 90 without passing through an intermediate chamber 116.

[0082]     The tip 34 can have one or more sealing members to form a fluidic seal between the tip 34 and the main body 30. The illustrated main body 30 includes a sealing member 47 that engages the inner surface of the skirt 64 of the tip 34. The sealing member 47 can be a compliant member comprising rubber, polymer, plastic, or other suitable material for forming seals. In some embodiments, the sealing member 47 is an O-ring made of rubber.

[0083]     With continued reference to Figure 3, during use, treatment material can flow distally through the lumen 92 into the through-hole 122. The treatment material then proceeds through and out of the through-hole 122 into the space 180. Preferably, the treatment material spreads radially outward to the peripheral through-holes 114. The material can then flow through the through-holes 114 into the lumen 90 for subsequent removal.

[0084]     In alternative embodiments, the fluid flows in the opposite direction. That is, the line 50 delivers fluid through the lumen 90 into the tip 34. The fluid flows through the intermediate chamber 116 and the through-holes 114. The fluid then flows to the chamber 100 and inwardly through the tip connector 98 to the lumen 92. The fluid proceeds proximally along the lumen 92 and ultimately into the line 52.

[0085]     In yet another embodiment, the handpiece assembly 18 comprises two or more input lumens 90. Such a design allows mixing of two or more treatment materials within

EDGE-CARTESSA_0001612

the handpiece assembly 18 or space 100, which would be useful for treatments with fluids that react or are unstable or degrade when stored or mixed.

[0086]    As depicted in Figure 4, the handpiece assembly 18 can optionally include a controller 60 that is configured to control the fluid flow out of the tip 34. The illustrated controller 60 can be operated to increase or decrease the flow rate of treatment fluid out of the tip 34. Alternatively or additionally, the controller 60 may control the flow rate of waste fluid flowing through the handpiece assembly 18 to the output line 50. When control of the waste treatment fluid and waste fluid is independent, the detention time of the fluid in the tip 34 may be adjusted as desired.

[0087]    The illustrated controller 60 is a generally cylindrical body that is pivotally connected to the main body 30. Figure 4 illustrates an embodiment in which the controller 60 is recessed into and partially hidden by the main body 30, although in other embodiments the controller 60 may encircle the main body 30. The controller 60 may include textured grooves to provide for easier manipulation. In some embodiments, the controller 60 is located near the distal end 36 of the handpiece assembly 18 proximal or distal of the contoured portion 70. The type and configuration of the controller 60 can be selected based on the design of the handpiece assembly 18. The controller 60 can also be a rotatable knob or handle, digital controller, and the like.

[0088]    The handpiece assembly 18 can also include one or more flow rate controllers within the main body 30 that cooperate with the controller 60 to adjust the fluid flow out of the tip 34. For example, the controller 60 may comprise a flow control valve such as a globe valve, butterfly valve, needle valve, or variable orifice. Other types of flow rate controllers can also be used, such as an electrically controlled solenoid valve. In embodiments where the fluid flow is electronically controlled, the valve system may alternatively be located in the console 12 or manifold system 24. Separate devices can also be used to control the flow of treatment material. For example, clamps, pinch valves, or other suitable devices can be used to control fluid flow through the lines 50, 52.

[0089]    Various types of tips 34 can be used with the handpiece assemblies 18 illustrated in Figures 1 to 4. Figures 5A through 10E illustrate embodiments, for example, of

EDGE-CARTESSA_0001613

tips 34 that can be used with these handpiece assemblies 18. These tips 34 can be interchangeable to provide maximum treatment flexibility.

[0090]    As shown in Figures 5A through 10E, the tip 34 comprises the skirt 64 and a tip main body 66 extending outwardly therefrom. The skirt 64 is preferably configured to provide a gripping surface suitable for applying leverage or force sufficient to remove the tip 34 from the main body 30. In some embodiments, the skirt 64 includes internal threads such that it can be mechanically coupled to external threads on the distal end 36 of the main body 30. In some embodiments, the tip 34 can be press fit onto the main body 30. Frictional forces can retain the tip 34 to the main body 30.

[0091]    With respect to Figures 5A through 7, the tip 34 comprises an outer member 120 and an inner member 124. The outer member 120 preferably defines the periphery of the distal end 102 of the tip 34. When the tip 34 is placed against skin, the outer member 120 can inhibit fluid flow between the tip 34 and the skin and define the outer portion of the space 100.

[0092]    The inner member 124 is preferably spaced from the outer member 120 to define one or more channels. The illustrated outer member 120 defines a continuous channel 140 that extends outwardly from the central through-hole 122 towards at least one of the outer through-holes 114. The inner member 120 can form the sidewalls of the channel 140. Any suitable configuration of channels 140 can be used to provide fluid flow along a flow path. The illustrated channels 140 have a somewhat U-shaped axial cross-sectional profile, as depicted in Fig. 8A. The channel 140 can have a V-shaped, curved, or any other suitable cross sectional profile. A flow path between the through-holes in the tip 34 can be defined at least in part by the channels.

[0093]    The spiral-like pattern of the inner members 124 in Figures 5 through 7 varies. For example, the inner member 124 in Figure 5 extends about a longitudinal axis 143 of the tip 34 approximately one and a half times, the inner member 124 in Figure 6 extends about the tip 34 approximately two and a half times, and the inner member 124 in Figure 7 rotates about the tip 34 approximately one and three quarters times. In some embodiments, the inner member 124 subtends an angle of about 70°, 135°, 180°, 210°, 225°, 270°, 315°, 360°, and angles encompassing such ranges. In yet other embodiments, the inner member 124

EDGE-CARTESSA_0001614

subtends an angle of about 405°, 450°, or 495°. The tightness of the spiral in combination with the location and number of through-holes 114 affects the detention time of the fluid in the channel 140. Generally, a tighter spiral results in a longer the pathway (i.e., the length of the channel 140) from delivery through-hole 122 to the return through-holes 114. Fluid traveling down the longer pathway is in contact with the person's skin 80 for a longer period of time. Thus, tighter spirals lead to increased contact time between the fluid and the skin 80. These longer contact times can increase the effectiveness of the fluid because the skin can absorb an adequate amount of active ingredients of the treatment material. Fluid retention time on the patient's skin can be increased to increase hydration, serum retention, and the like. Shorter pathways can be used to reduce contact time between the fluid and the patient's skin. In some embodiments, for example, the tip 34 of Figures 5A to 5D has a relatively short pathway to limit absorption of fluids, achieve relatively high flow rates, and the like.

[0094]    Additionally, the inner members 124 can be configured to remove tissue. The inner member 124 can be an abrasive member designed to remove tissue when the inner member 124 slides along a person's skin. The user may select a tip 34 based on the appropriate detention time and abrasiveness for the treatment being applied. For example, the tip 34 illustrated in Figure 7 will provide less abrasion than the tip illustrated in Figure 6, but the tip 34 illustrated in Figure 7 will provide a longer detention time than the tip 34 illustrated in Figure 5.

[0095]    The illustrated tip 34 includes a generally continuous inner member 124 that extends from near the through-hole 122 towards at least one of the through-holes 114. In other embodiments, the tip 34 can have a plurality of inner members 124. For example, the inner members 124 can be linear, curved, and may be continuous or discontinuous.

[0096]    The handpiece assembly 18 can be moved while the spiral-like inner member 124 engages the patient's skin. The movement of the handpiece assembly 18 can increase the effectiveness of the treatment material expelled out of the tip 34. In some embodiments, for example, the tip 34 can be used with a lifting treatment material that facilitates extractions of, for example, sebum, blackheads, skin, or other substances (e.g., oils, dead skin, etc.). The lifting treatment extraction producer can unclog pores to improve the treated skin's overall appearance. To facilitate extractions, the handpiece assembly 18 can be

EDGE-CARTESSA_0001615

twisted or rotated while the tip 34 is pressed against the patient's skin. The twisting action and the lifting treatment material can work in combination for effective extractions. In alternative embodiments, a handpiece assembly 18 can also be used without a lifting treatment material for extractions by employing the twisting motion.

[0097]    In certain embodiments, the spiral-like tip 34 massages the skin 80. In other embodiments, the spiral-like tip 34 ablates the skin 80. For example, the inner members 124 may act as blades to cut thin layers from the skin 80 when the user twists the handpiece assembly 18. Twisting the handpiece assembly 18 causes the tip 34 to rotate about the twisting axis, rotating the sharp inner members 124 against the skin 80, which causes ablation. Thin layers of skin can thus be removed by the handpiece assembly 18. Additionally or alternatively, the spiral-like tip 34 may plane along skin when a fluid is applied to the skin. The planing tip 34 can remove a thin layer of the skin (e.g., the stratum corneum, preferably hydrated stratum corneum). Accordingly, the user can use the handpiece assembly 18 to remove a particular amount of skin.

[0098]    A vacuum can be applied by the handpiece assembly 18. For example, the console 12 can have a pump that applies a vacuum via the output line 52. The negative pressure draws waste material into the through-holes 114 and out of the handpiece assembly 18. When the tip 34 engages the patient's skin, the vacuum can draw the skin against the tip 34 to enhance the effectiveness of the inner members 124. The vacuum can be increased or decreased to increase or decrease, respectively, for example, frictional forces, depth of cutting, amount of abrasion, and the like. To rapidly remove skin, a strong vacuum can be applied to the person's skin so that the skin is pulled against the inner member 124. The vacuum can also facilitated removal of the waste fluid captured between the tip 34 and the patient's skin. A vacuum can also be used in combination with the tips illustrated in Figures 1-10E. The vacuum can also be varied based on the thickness, compliance, and other properties of the skin surface

[0099]    The tip 34 can have any suitable number of through-holes 114, 122 to achieve the desired fluid flow between the skin 80 and the tip 34. For example, Figure 5A to 5D illustrate an embodiment with two through-holes 114. The number of through-holes 114, 122 can be chosen based on the cross-sectional areas of the through-holes 114, 122 and the

EDGE-CARTESSA_0001616

expected flow rate of the fluid through the channel 100. Preferably, one end of through-holes 114 is positioned between the inner member 124 and the outer member 120. In some embodiments, including the embodiments illustrated in Figures 5A through 7, the through-holes 114 are positioned generally midway between the outer member 120 and inner member 124.

[0100]    The tips can also have one or more energy sources for delivering energy to the skin. Radiant energy, heat, and the like can be delivered to the skin by the tips. The tip 34 illustrated in Figures 6A to 6D has a pair of energy sources 151 in the form of LEDs. When the tip 34 is proximate the patient's skin, the LEDs 151 can deliver a desired amount of energy to the skin. The illustrated tip 34 has four LEDs; however, any number of LEDs can be employed.

[0101]    In alternative embodiments, the tips can carry deployable material. The structure 151 can be in the form of a cavity or pocket that contain and carry material that is released when it engages the treatment fluid. The material in the cavities 151 can be made of any of the treatment materials disclosed herein, and can be in a solid form. For example, the cavities can hold lubricant or soap that is released when the tip is applied to skin.

[0102]    Figures 8A through 8D illustrate another embodiment of a tip 34 when the inner member 124 includes a ring with perforations 140 that provide fluid communication between the through-hole 122 and through-holes 114. A space 100 can be defined between the inner member 124, perforations 140, and outer member 120 when the tip 34 is in operative engagement with the skin 80. Figure 8C illustrates an embodiment with eight through-holes 114. In the embodiment illustrated in Figures 8A through 8D, the inner member 124 forms recessed regions 171, allowing for a larger area of fluid contact with the skin 80 then the tips 34 illustrated in Figures 5 through 7.

[0103]    Figures 9A through 9D illustrate another embodiment of a tip 34 comprising an outer member 120 and an array of protruding inner members 124. A recessed region 191 is defined between the inner members 124 and the outer member 120. The inner members 124 of Figures 9A to 9D can be posts that are similar to the inner members described above. The post 124, for example, can have relatively sharp edges. These edges can be used to remove skin. In some embodiments, the inner members 124 can have relatively

EDGE.005C2                                    -17-                        Knobbe, Martens, Olson & Bear, LLP

EDGE-CARTESSA_0001617

sharp planing blades.   The tip 34 illustrated in Figures 9A through 9D allows for more freedom of movement of the treatment fluid.   The protruding inner members 124 preferably abrade the skin differently than the tips 34 illustrated in Figures 5A through 8.   Rather than being able to ablate large sections of the skin 80 like a blade, as the tips 34 in Figures 5A-8 can do in certain embodiments, the plurality of protruding inner members 124 can ablate or roughen a plurality of smaller sections of the skin 80.

[0104]     The protruding member 124 can optionally contain treatment material.   For example, the protruding members 124 can be generally cylindrical members having a passageway or chamber 127 that holds treatment material.   Thus, fluid can be used in combination with treatment material coupled to the tip 34.

[0105]     With reference to Figures 5A through 9, the inner member 124 preferably has a height from the distal surface that is generally less than the height of the outer member 120.   In some non-limiting embodiments, the height of the inner member 124 is less than 90%, 70%, 60%, 50%, and ranges encompassing such percentages of the height of the outer member 120.   However, in other embodiments, the inner member 124 has a height that is generally greater than the height of the outer member 120.   For example, the inner member 124 can have a height that is 10%, 20%, 30%, 40%, 50% greater than the height of the outer member 120.   The inner member 124 can thus protrude from the tip 34.   A skilled artisan can select a desired height of the inner member 124 and/or the outer member 120 to achieve the desired interaction with the person's skin 80.

[0106]     Figures 10A through 10E illustrate another embodiment of a tip 34 comprising an outer member 120 and a pad 128.   Figure 10E depicts the pad 128 removed from the tip 34.   The tip 34 preferably has a mounting surface 227 that is surrounded by the outer member 120.   The pad 128 can be permanently or temporarily coupled to the mounting surface 227.

[0107]     The pad 128 preferably has a distal surface 224 configured to treat a person's skin.   In some embodiments, the pad 128 is a disposable pad that comprises treatment material attached thereto.   For example, the pad 128 may comprise vitamins, moisturizers, antioxidants, and the like.   Preferably, the pad 128 comprises an adhesive proximal side and a distal side 224 including an abrasive surface.   The abrasive surface can

EDGE-CARTESSA_0001618

have grit, a plurality of members (e.g., members similar to the inner members 124 described above), or the like. The pad 128 can be permanently coupled to the mating surface 227 so that the tip 34 can be used for an extended length of time, or for multiple treatments. In alternative embodiments, the tip 34 is removable for maximum flexibility in selecting pad abrasiveness, and also allows the user to make changes to the tip 34 without changing the tip 34 in its entirety. The grit rating of abrasive surface of the distal surface 224 can be selected based on the desired rate of skin removal.

[0108] The illustrated pad 128 is generally elliptical and planar. In alternative embodiments, the pad 128 can be polygonal, circular, or have any other shape as desired. The pad 128 can have cutouts 225 that can match the through-holes 114, 122. The cutouts 225 can be aligned with the through-holes 114, 122 when the pad 128 is coupled to the mounting surface 227 of the tip 34, as shown in Figures 10A to 10D. The illustrated mounting surface 227 defines a plurality of tip flow channels 229 extending between the through-holes 114, 122. When the tip 34 is assembled, fluid can flow along the channels 229 between the main body 66 and the pad 128.

[0109] Various types of adhesives can be used to temporarily or permanently couple the pad 128 to the mounting surface 227. As used herein, the term "adhesive" is a broad term and includes, but is not limited to, coupling agents, glues, bonding materials, or the like. In some embodiments, for example, waterproof pressure sensitive adhesives are used for releasably coupling the pad 128 to the mounting surface 227. In some embodiments, the pad 128 can be permanently coupled to the mounting surface 227. For example, the pad 128 can be bonded or fused to the main body 66. Additionally or alternatively, snap fittings, fasteners, or other coupling structures can be used to mount the pad 128.

[0110] The tip 34 described above can be used for wet or dry modes of operation. As such, the tip 34 can be used for wet exfoliation or dry exfoliation. In some embodiments, the tip 34 is used in a dry mode to remove a desired amount of skin. After removing a desired amount of skin, the tip 34 can be used in a wet mode on the same or different area of the patient's kin. During wet mode, fluid can be passed out of the tip 34 onto the patient's skin. The wet tip 34 can exfoliate, hydrate, and/or perform other types of treatments. Alternatively, the tip 34 can be used in a wet mode and than a dry mode. The sequence of wet and dry

EDGE-CARTESSA_0001619

modes of operation can be selected based on the type of tip, treatment material, skin condition, and the like.

[0111]    Although the handpiece assemblies are primarily discussed with respect to use with treatment material, the handpiece assemblies can be used without treatment material, i.e., the handpieces can be used in a dry procedure. Dry procedures can be used for non-hydration procedures and may require less post-procedure clean up.

[0112]    Various fabrication techniques can be employed to make the tips 34 as mentioned above in connection with Figures 11A-11E. In some embodiments, the tips 34 are formed through a molding process, such as an injection or compression molding process. The tips 34 of Figures 5A to 5D, for example, can be monolithically formed through an injection molding process. Alternatively, the tip 34 of can have a multi-piece construction, if desired. The tips 34 can be made of polymers, rubbers, metals, or other suitable materials.

[0113]    The tips 34 can also be fabricated in a multi-step process. For example, the main body 66 and skirt 64 can be formed in a single process. A textured surface (e.g., pad, inner members 124, etc.) can be applied to the main body 66 in a subsequent process. The textured surface can be formed by cutting, embossing, adding material (e.g., a pad, adhesive grit, etc.), a roughening implement, stamping process, or other suitable texturing means.

[0114]    The tips can have associated treatment materials, including, for example, a medicament. As used herein, the term "medicament" is a broad term and includes, without limitation, growth agents, growth factors or hormones, growth inhibitors, serums, treatment material, cleaners, vitamins, exfoliators, lubricants, or other substances that can be used to treat a patient's skin. The medicament can be associated with the tip 34 by imbedding, overlaying, coating, impregnation, co-mixing, absorption, or other suitable means for associating the medicament with the tip 34. The medicament can be hardened so that it can further enhance massaging and/or abrasion. In some embodiments, the medicament forms hardened grit that can be imbedded on the surface of the tip 34. The grit can work in combination with the inner members 124 to treat a person's skin. If a fluid is used, the fluid can facilitate the release of the medicament from the tip 34. In some embodiments, the medicament comprises or more bioactive substances, such as antibiotics, substances for accelerating the healing of the wound, cell proliferation agents, and the like. Such bioactive

EDGE.005C2                            -20-                  Knobbe, Martens, Olson & Bear, LLP

substances may be desirable because they contribute to the healing of damaged or removed skin, as well as reducing the likelihood of infection.

[0115]    Figures 11A to 11E illustrate different cross-sections of inner members that can be used with the tips illustrated in Figures 1-10E.  The inner member 124 of Figure 11A has generally sharp tip 253 for removing tissue.   The tip 253 can have any suitable configuration for removing tissue from a patient.  Figure 11B illustrates an inner member 124 that has a pair of cutting edges 253 and a generally trapezoidal shape.  Figure 11C illustrates an inner member 124 that has a surface treatment 255 for treating a person's skin.   The surface treatment 255 can be serrations, grooves, grit, roughed surface, protrusions, and the like.   The type of surface treatment 255 can be selected based on the procedure to be performed.  Figure 11D illustrates another inner member 124 having a pair of cutting edges 253.  The cutting edges 253 are spaced from each other and protrude outwardly.  The central portion 257 is generally V-shaped; however, the central portion 257 can have other configurations.  For example, Figure 11E illustrates a central portion 257 that has a curved, semi-circular profile.  In alternative embodiments, the inner member 124 can have more than two cutting edges.

[0116]    The inner members 124 of Figures 11A to 11E can be formed by a molding process, such as an injection molding process.   Additionally or alternatively, the inner members 124 can be formed by a machining process.  For example, at least a portion of the inner member 124 of Figures 11D to 11E can be formed through a machining process.   In some embodiments, the central portion 257 can be formed by cutting material out of the inner member 124.  The fabrication process (e.g., molding, injection molding, compression molding, machining, milling, etc.) can be selected based on the design of the inner members.

[0117]    Referring again to Figure 1, the console 12 includes a manifold system 24 that holds containers 26 containing treatment fluids and/or antimicrobial agents.   In a preferred embodiment, the console 12 holds four containers 26, three containing different treatment fluids and one containing an antimicrobial agent.  In the illustrated embodiment, the largest container 26 holds antimicrobial agent for cleaning and sanitizing the fluid lines of the console 12.  The containers 26 can also hold other suitable substances, such as surfactants,

EDGE-CARTESSA_0001621

disinfectants, sanitizers, and the like, for cleaning and/or sanitizing the skin treatment system 10.

[0118]     As shown in Figures 12 and 12A, the container 26 can be a fluid source such as a bottle comprising a body 262, a neck 264, and a closure assembly 266.  The neck 264 includes a threaded neck finish and the closure 266 includes a threaded interior surface, allowing it to screw onto the neck 264.  The closure 266 can be permanently or temporarily coupled to the neck 264.  The illustrated bottle 26 is a non-refillable, disposable bottle.  As used herein, the term "non-refillable" is a broad term that includes, but is not limited to, components that cannot be easily refilled with a treatment material.  For example, the illustrated non-refillable bottle 26 cannot be refilled without substantial difficulty.

[0119]     Bodies 262 of the containers 26 may be formed by stretch blow molding a preform into the desired shape.  In other embodiments, the body 262 and a neck 264 can be formed by extrusion blow molding.  For example, the bottle of Figure 13A can be formed by extrusion blow molding.   The containers 26 can be made of polymers, thermosets, thermoplastic materials such as polyesters (e.g., polyethylene terephthalate (PET)), polyolefins, including polypropylene and polyethylene, polycarbonate, polyamides including nylons, epoxies, and/or acrylics.  The material can be virgin or post-consumer/recycled.  However, other suitable materials known in the art can also be used.

[0120]     In some embodiments, including the illustrated embodiment of Figures 12 and 12B, the closure 266 is welded (e.g., induction welded) to an upper edge 269 of the neck 264.  A sealing member 267 can be interposed between the upper edge of the neck 269 and the closure 266.  In some embodiments, the sealing member 267 is made out of a conductive metal, such as aluminum, that preferably does not react with the fluid in the bottle 26.  In other embodiments, the seal 267 comprises plastic, such as cellophane, polypropylene, or other suitable material, preferably suitable for coupling to the closure 266 and upper edge 269.  In some embodiments, the sealing member 267 comprises metal that is at least partially coated with a polymer, such as polypropylene.  Induction welding can be used to couple the polypropylene to the closure 266 and neck 264, both of which can also comprise polypropylene.

EDGE-CARTESSA_0001622

[0121]    Figure 14A illustrates another embodiment of a bottle 26. The closure 266 includes locking members 268 that engage the neck 264, but do not allow removal of the closure 266 from the bottle 26 when assembled, as shown in Figure 13B. The locking closure 266 may include a sealing member 267, for example as described above.

[0122]    In either of the embodiments illustrated in Figures 12 through 14B, the closure 266 may then be sealed with a second closure (not shown), creating multi-piece closures. For example, a screw cap can be threaded onto the external threads 273 at the top end of the closure 266. In these embodiments, the treatment fluid inside the bottle 26 may be accessed by puncturing or otherwise breaking the seal 267, for example with an insertion tip assembly 59 (see Figure 13A).

[0123]    The insertion tip assembly 59 has an elongate member 161 that comprises a fluid pick up conduit 62 and lancing tip 64 extending from the distal end of the conduit 62. In the illustrated embodiment, the lancing tip 64 is a tubular member having a somewhat sharp distal end. To access treatment fluid in the bottle 26, the lancing tip 64 can be inserted into the closure passageway 73 of the closure 266. The lancing tip 64 can be advanced through the passageway 73 until it breaks the sealing member 267. The elongate member 161 can be sufficiently rigid such that it can break the sealing member 267 without buckling. The elongate member 161 can comprise metal, polymers, plastics, or any suitable material.

[0124]    The fluid pick up conduit 62 and lancing tip 64 can be slid through the passageway 73 until the stop 91 is spaced from the upper edge of the closure 266. In alternative embodiments, the insertion tip assembly 59 can be slid through the passageway 73 until the stop 91 contacts the upper edge of the closure 266, as shown in Figure 12B. After the insertion tip assembly 59 and bottle 26 are assembled, as shown in Figure 12B, the treatment material can be draw upwardly through the lancing tip 64 and the fluid pick up conduit 62. The treatment material can flow through a passageway of the insertion tip assembly 59 and to the manifold assembly 24.

[0125]    In certain embodiments, the treatment fluid applied from the containers 26 may be selected from the console 12 for a particular treatment or skin type. In one embodiment, the treatment fluid may comprise a skin rejuvenation serum. Skin rejuvenation serum cleans the skin 80 deeply while softening sebum and impurities to aid in extractions.

EDGE-CARTESSA_0001623

Skin rejuvenation serum also assists in dislodging dead cells for extraction and exfoliation by the tip 34 as well as providing residual hydration that aids in firming and smoothing fine lines, resulting in clean, refined, and ultra-moisturized skin 80. Preferably, a skin rejuvenation treatment serum is active-4™, available from Edge Systems Corp., 2277 Redondo Ave., Signal Hill, CA, 90755, (800) 603-4996. In another embodiment, the treatment fluid may comprise a salicylic acid serum. A salicylic acid serum cleans oily skin deeply while softening sebum and impurities to aid in extraction and exfoliation by the tip 34. Hydration additives in the salicylic acid serum create an ultra-moisturized skin surface, and is blended to remain on the face for the best possible benefit. Preferably, a salicylic acid treatment fluid is beta-hd™, also available from Edge Systems Corp. In yet another embodiment, the treatment fluid may comprise antioxidants. The antioxidant serum is a hybrid that combats free radicals and environmental damage to the cells. The antioxidant serum is formulated with a blend of the most effective antioxidant ingredients. The antioxidant serum is an absorbable, leave-on service that improves the appearance of age signs as well as texture and clarity. Preferably, an antioxidant treatment fluid is antiox-6™, also available from Edge Systems Corp. The treatment fluids may comprise agents known to be beneficial to skin healing and/or hydration including but not limited to glucosamine, laminaria digitata extract, yeast extract, carbamide, lactic acid, sodium lactate, honey extract, pentylene glycol, spirea ulmaria extract, camellia sinensis leaf (white tea) extract, horse chestnut extract, stabilized vitamins A, B1, B6, B12, C, and E, tocopherol, inositol, calcium panthothenate, linoleic acid, rosemarinus officinalis extract, biotin, and aloins such as anthraquinone gycosides, polysaccharides, sterols, gelonins, and chromones.

[0126]    A single treatment may comprise the serial use of several treatment fluids from the containers 26. For example, the treatment of acne prone skin may comprise salicylic treatment followed by antioxidant treatment, the treatment of aging skin may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of congestion (e.g., blackheads) may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of damaged skin (e.g., due to medication or smoking) may comprise skin rejuvenator treatment followed by antioxidant treatment, the treatment of skin may comprise skin rejuvenator treatment followed

EDGE-CARTESSA_0001624

by salicylic treatment followed by antioxidant treatment, the treatment of hyperpigmentation may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of melasma may comprise skin rejuvenator treatment followed by salicylic treatment followed by antioxidant treatment, the treatment of sensitive skin may comprise skin rejuvenator treatment followed by antioxidant treatment, and the treatment of thin skin may comprise salicylic treatment followed by antioxidant treatment. Alternatively, a single treatment may comprise the parallel use of a combination of treatment fluids from the containers 26, for example using a handpiece with a plurality of input lumens 90 as described above.  Treatment time with each treatment fluid is preferably about 2 to 20 minutes, but may be longer or shorter depending on the patient, the tip 34 used, and the treatment itself.

[0127]    The treatment materials can be used for acne (e.g., by removing oils, bacteria, etc.), melasma, damaged skin (e.g., sun damaged skin, burns, free radical damage, etc.), extractions, skin lightening and/or brightening, skin lines (e.g., fine lines, wrinkles, creases, etc.), dry skin, and the like.  The treatment materials can improve skin elasticity and overall health of the skin.  For example, if the skin is damaged, antioxidants can be applied to damaged area.  Accordingly, the skin treatment system 10 can be used to improve the health, appearance, and/or function of a person's skin.

[0128]    Additionally, the line 20 may be periodically flushed with a fluid (e.g., a antimicrobial fluid, water, etc.) contained in one of the containers 26.  Antimicrobial fluids can contain any disinfecting agent compatible with skin including, but not limited to, butylene glycol, phenoxyethanol, and methyl isothiazolinone.  Preferably, an antimicrobial fluid is rinseaway™, available from Edge Systems Corp.  The line 20 should be flushed with antimicrobial fluid at least at the end of each service day.  Flushing with antimicrobial fluid is more important when the system is not used for consecutive days.

[0129]    As illustrated in Figure 1, the console 12 comprises the manifold system 24 designed to draw treatment fluid from at least one of the containers 26 based on user selection.  The manifold system 24 may include switches 29, each corresponding to one of the bottles.  The switches 29 can be used to control fluid flow from the containers 26.  The illustrated switches 29 can be used to turn Off/On to permit or prevent fluid flow from the

EDGE.005C2                                   -25-                    Knobbe, Martens, Olson & Bear, LLP

EDGE-CARTESSA_0001625

bottles 26.  The illustrated manifold system 24 has a switch corresponding to each bottle 26. As such, the switches can be used to independently control fluid flow from each of the bottles 26.  In other embodiments, a single switch can be used to control the flow of treatment fluid from more than one of the bottles 26.

[0130]    With continued reference to Figure 1, the button 246 can be operated to release a corresponding bottle 26 from the manifold system 24.  Figure 15A is front perspective view an embodiment in which the manifold system 24 contains quick-release locks connected to the button 246, wherein the quick-release locks capture the containers 26.  As illustrated in Figures 14B and 14C, the quick-release locks 242 engage the closure 266 when the bottle 26 is inserted into the manifold system 24.  When the quick-release lock 242 is manually engaged by a user, for example by pulling the button 246, a slide structure 249 surrounding the closure 266 releases, thereby releasing the bottle 26 from the manifold system 24.

[0131]    Figure 15E illustrates the slide structure 249 holding the neck 264 of the bottle 26 in an elongated slot 309.  The button 246 can be pushed inwardly (indicated by the arrow 313) so that the neck 264 is positioned within the enlarged aperture 317.  The bottle 26 can then slide downwardly out of the manifold system 24.  The bottle 26 can be replaced with another bottle 26.

[0132]    To couple the bottle 26 to the manifold system 24, the closure 266 can be inserted through the aperture 317 of the slide structure 249 when the button 246 is pushed in. Once the closure 266 engages the stop surface 333 (Figure 15C), the spring 247 can push the slide structure 249 until the flange 335 of the bottle 26 rests on the slide structure 249, as shown in Figure 15C.  In such a position, the manifold system 24 securely holds the bottle 26. The illustrated slide structure 249 has a sloped portion 269 that can cam along the flange 335 as the button 246 moves outwardly.  Accordingly, the slide member 249 can push the closure 266 upwardly until the closure 266 is locked with the manifold 24, as shown in Figure 15C. The quick-release lock 242 is loaded with spring 247 such that the slide structure 249 is biased towards the button 246.

[0133]    The manifold system 24 can have a modular design so that it can be removed from the console 12.  In some embodiments, the manifold system 24 and associated

EDGE-CARTESSA_0001626

containers 26 can be removed and transported away from the console 12.  Accordingly, the modular manifold systems can be interchanged to provide treatment flexibility.  Alternatively, the manifold system 24 can be permanently mounted to the console 12.

[0134]    Figures 15B and 15C illustrate cross-sectional views of the manifold system 24 taken along lines 15B-15B and lines 15C-15C, respectively.  Both Figures 15B and 15C show the fluid pick up conduit 62 in operative engagement with the bottle 26 through the seal 267.  Suction device(s) is preferably in fluid communication with the fluid pick up conduit 62, and draws fluid out of the bottle 26 through the fluid pick up conduit 62.  The fluid can flow through a passageway 161 (see Figure 15C) extending through the pick up conduit 62.  The fluid can flow to and through the lumen 171 towards the line 20.  If the switch 29 is off, the fluid from one or more of the upstream bottles can flow along the passage 173.  The manifold system 24 then directs the fluid into the line 20.

[0135]    In certain embodiments, including the embodiment of Figure 1, the console 12 comprises a computer with display 32.  In one embodiment, the display 32 is a user input device comprising a touch screen that controls the computer.  In other embodiments, the computer may be controlled by input devices such as a keyboard, keypad, mouse, pointing device, or other input device.  The computer controls a variety of functions in the console 12.  For example, the computer may control the manifold system 24, and thereby the flow of treatment fluids from the containers 26.  In one embodiment, the fluid flowing through the line 20 can be changed by pressing a single button on the touch screen display 32.  In another embodiment, the computer contains teaching tutorials that are exhibited on the display 32.  In yet another embodiment, the user may change program chips within the computer according to treatment and/or patient.  In still another embodiment, the computer records patient and treatment data, for example data gathered during treatment.

[0136]    The console 12 can also comprise a mechanical system for controlling fluid flow from the containers to the handpiece.  One or more pumps, valves, fluid lines, and the like can cooperate to deliver fluid from the containers to the handpiece.  The console 12 can be powered pneumatically, electrically, or by any other suitable powering means.  The mechanically drive console 12 can have manual controls for controlling fluid flow to the handpiece.

EDGE-CARTESSA_0001627

[0137]     The console 12 can also comprise additional handpieces suitable for other types of skin treatment.  These additional handpieces can be used for pre-treatment or post-treatment in combination with other modalities.  For example, the console 12 may include a handpiece for diamond tip abrasion, or "crystal-free" microdermabrasion, as described above.  Such a handpiece may be useful for more aggressive treatments, in addition to treatment with the handpiece assembly 18.  The diamond tips can range from fine to extra coarse.

[0138]     In some embodiments, the console 12 comprises a handpiece including at least one light emitting diode (LED).  Light therapy has been shown to improve skin.  For example, red light between about 600 and about 700 nanometers and infrared LED light between about 700 and about 1,000 nanometers reduces the appearance of fine lines and superficial hyperpigmentation.  For another example, blue LED light at about 430 nanometers improves the appearance of oily and acne-prone skin.  Other benefits of light therapy include promotion of collagen production, increased circulation and moisture retention, smoothing of skin texture, and improvement of skin firmness and resilience.

[0139]     The console 12 can comprise handpieces for vacuum therapy such as lymphatic drainage and cellulite massage.  Vacuum therapy enhances the effects of treatment with the handpiece assembly 18 and LED light therapy.  Preferably, the vacuum therapy handpieces are sized appropriately for facial massage and body massage.  An example of a multi-modality protocol using a plurality of handpieces comprises diamond tip abrasion, treatment with handpiece assembly 18 and at least one treatment fluid from containers 26, vacuum therapy, red light therapy, and application of sunscreen, for example at a minimum skin protection factor (SPF) of 15.  The various modalities may be included and ordered by the user depending on the desired outcome of the overall treatment.

[0140]     The console 12 optionally includes any of a plurality of additional features. For example, a digital camera may be used to take pictures of the patient before and after treatment, and the pictures may be stored on the computer.  The computer may hold client medical and treatment records.  The computer may be connected to a network.  The console 12 may store disks.  The console 12 may include an ultrasound unit.  The console 12 may include a stimulator, such as an electrical stimulator.  The console 12 may include an iontophoresis handpiece.  The number of additional features is limitless when considering the

EDGE-CARTESSA_0001628

range of features that a user may wish to incorporate with the treatment provided by the handpiece assembly 18.

[0141]  Figure 16 depicts another embodiment of the skin treatment system 10, which may be generally similar to the embodiment illustrated in Figure 1, except as further detailed below.  Where possible, similar elements are identified with identical reference numerals in the depiction of the embodiment of Figure 1.

[0142]  The line 20 includes an output line 50 for removing waste from the handpiece assembly 18 and an input line 52 for delivering treatment material to the handpiece assembly 18.  A valve 300 can be disposed along the input line 52 to inhibit backflow of treatment material.  The console 12 can pump treatment material through the input line 52 to the handpiece assembly 18 when the handpiece assembly 18 is applied to the person's skin, as detailed above.  The fluid flow through the input line 52 can be reduced or stopped so that the handpiece assembly 18 can be removed from the patient's skin.  The valve 300 can inhibit the flow of fluid through the input line 52 towards the console 12.  A desired amount of treatment material can therefore be contained in the handpiece assembly 18 and the section 310 of the input tubing 52 extending between the valve 300 and the handpiece assembly 18.  When the handpiece assembly 18 is applied to a patient's skin, a vacuum can be applied to the output line 50.  The vacuum can draw the treatment material out of the handpiece assembly 18 without a substantial or noticeable delay.

[0143]  In some embodiments, the valve 300 can be a one-way valve, such as a duckbill valve, check valve, or other type of valve for inhibiting fluid flow.  In alternative embodiments, the valve 300 can comprises a plurality of valves (e.g., one-way valves, flow regulators, adjustable valves, etc.).

[0144]  Figure 17 is a cross-sectional view of the line 20.  The input and output lines 50, 52 can have different or similar cross sectional flow areas.  The illustrated output line 50 has a passageway 312 with a diameter that that is less than the diameter of a passageway 314 of the input line 52.  Accordingly, a relatively large slug of treatment material can be stored in the section 310 extending distally from the valve 300 to the handpiece assembly 18. The slug can be quickly delivered out of the handpiece assembly 18 once the handpiece assembly is applied to a patient's skin as detailed above.

EDGE-CARTESSA_0001629

[0145]    In some embodiments, the section 310 of the output line 50 has a length L greater than 6 inches, 12 inches, 18 inches, 24 inches, and ranges encompassing such lengths. In some embodiments, the section 310 of the output line 50 has a length L greater than 24 inches, 30 inches, 36 inches, and ranges encompassing such lengths. The passageway 312 can have a cross-sectional area that is at least 10%, 30%, 50%, 75%, or 100% greater than the cross-sectional area of the passageway 314. The length L and the diameters of the passageways 312, 314 can be selected based on the desired amount of treatment material to be stored in the line 20, delivery and removal rates.

[0146]    Figures 18 and 19 illustrate a modular handpiece assembly 360 having a cartridge 362 containing treatment material. The illustrated handpiece assembly 360 can be used to deliver treatment material from the cartridge 362. The main body 30 can have a pump for pressuring the treatment material. In one embodiment, the fluid control device includes a power supply, such as a battery, which provides power to electrical components (e.g., pumps or valves) of the handpiece assembly 360. The power supply can be a battery that is preferably disposed within the main body 30 of the handpiece assembly 360. In one arrangement, the battery is a rechargeable battery that can be connected to and recharged by an AC power supply, such as a typical residential electrical outlet. Alternatively, the handpiece assembly 360 can be directly powered by an AC power supply. The power supply can provide power to several components of the handpiece assembly 360. For example, the power supply can provide power to a plurality of fluid control devices 330 and/or a flow control unit. A control switch 371 can be used to turn the handpiece assembly 360 Off/On and/or control the output of the handpiece assembly 360.

[0147]    In operation, the cartridge 362 can be inserted into the main body 30. The handpiece assembly 360 can be applied to a patient's skin to deliver treatment material from the cartridge 362 to the patient's skin. After delivering a desired amount of treatment material, the cartridge 362 can be separated from the main body 30. The cartridge 362 can be a one-use or multi-use cartridge. For example, the cartridge can be a non-refillable disposable cartridge.

[0148]    The tip 34 can also be used to remove hair or perform other skin treatments. For example, the tip 34 can include one or more razor blades and may be

EDGE-CARTESSA_0001630

configured to apply a treatment material (e.g., antioxidents, vitamins, serums, growth agents, etc.) to the skin during the shaving process. In such embodiments, the main body 30 can be an elongated handle that is connected to a transversely extending elongate tip 34. In some embodiments, the handpiece assembly can be in the form of a disposable handheld razor. The treatment material can reduce or substantially eliminate problems associated with wet or dry shaving systems. These treatment materials may be applied prior to, during, before, and/or after shaving.

[0149]    The articles disclosed herein may be formed through any suitable means. The various methods and techniques described above provide a number of ways to carry out the invention. Of course, it is to be understood that not necessarily all objectives or advantages described may be achieved in accordance with any particular embodiment described herein. Thus, for example, those skilled in the art will recognize that the methods may be performed in a manner that achieves or optimizes one advantage or group of advantages as taught herein without necessarily achieving other objectives or advantages as may be taught or suggested herein.

[0150]    Furthermore, the skilled artisan will recognize the interchangeability of various features from different embodiments disclosed herein. Similarly, the various features and steps discussed above, as well as other known equivalents for each such feature or step, can be mixed and matched by one of ordinary skill in this art to perform methods in accordance with principles described herein. Additionally, the methods which are described and illustrated herein are not limited to the exact sequence of acts described, nor are they necessarily limited to the practice of all of the acts set forth. Other sequences of events or acts, or less than all of the events, or simultaneous occurrence of the events, may be utilized in practicing the embodiments of the invention.

[0151]    Although the invention has been disclosed in the context of certain embodiments and examples, it will be understood by those skilled in the art that the invention extends beyond the specifically disclosed embodiments to other alternative embodiments and/or uses and obvious modifications and equivalents thereof. Accordingly, it is not intended that the invention be limited, except as by the appended claims.

EDGE-CARTESSA_0001631

<u>WHAT IS CLAIMED IS</u>:

1.    An apparatus for treating skin, the apparatus comprising:

a console having a user input device and a handpiece assembly, which is configured to treat skin;

a fluid line providing fluid communication between the console and the handpiece assembly; and

a manifold system coupled to the console and controlled by the user input device, the manifold system being configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

EDGE-CARTESSA_0001632

# CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

Abstract of the Disclosure

An apparatus for treating skin has a console with a user input device and a handpiece assembly.  The handpiece assembly is configured to treat skin.  A fluid line provides fluid communication between the console and the handpiece assembly.  A manifold system is coupled to the console and controlled by the user input device.  The manifold system is configured to hold releasably a plurality of fluid sources and deliver fluid from at least one of the plurality of fluid sources to the handpiece assembly.

20467378

EDGE-CARTESSA_0001633

1/25



FIG. 1

EDGE-CARTESSA_0001634

2/25



FIG. 2A

EDGE-CARTESSA_0001635



*FIG. 2B*

3/25

EDGE-CARTESSA_0001636



FIG. 3

EDGE-CARTESSA_0001637

5/25



*FIG. 4*

EDGE-CARTESSA_0001638

6/25



FIG. 5A

FIG. 5B

FIG. 5C

FIG. 5D

EDGE-CARTESSA_0001639

7/25



FIG. 6A

FIG. 6B

FIG. 6C

FIG. 6D

EDGE-CARTESSA_0001640

8/25



FIG. 7A

FIG. 7B

FIG. 7C

FIG. 7D

EDGE-CARTESSA_0001641

9/25



FIG. 8A

FIG. 8B

FIG. 8C

FIG. 8D

EDGE-CARTESSA_0001642

10/25



EDGE-CARTESSA_0001643



FIG. 10A

FIG. 10B

FIG. 10C

FIG. 10D

FIG. 10E

EDGE-CARTESSA_0001644

11/25



*FIG. 11A*



*FIG. 11B*



*FIG. 11C*



*FIG. 11D*



*FIG. 11E*

12/25

EDGE-CARTESSA_0001645

13/25



*FIG. 12*

EDGE-CARTESSA_0001646

14 / 25



*FIG. 13A*

EDGE-CARTESSA_0001647

15/25



FIG. 13B

EDGE-CARTESSA_0001648

16/25



FIG. 14A

EDGE-CARTESSA_0001649

17/25



FIG. 14B

EDGE-CARTESSA_0001650

18/25



FIG. 15A

EDGE-CARTESSA_0001651

19/25



FIG. 15B

EDGE-CARTESSA_0001652



*FIG. 15C*

EDGE-CARTESSA_0001653

21/25



*FIG. 15D*

EDGE-CARTESSA_0001654

22/25



*FIG. 15E*

EDGE-CARTESSA_0001655

23/25



FIG. 16

FIG. 17

EDGE-CARTESSA_0001656



*FIG. 18*

EDGE-CARTESSA_0001657

25/25



*FIG. 19*

EDGE-CARTESSA_0001658

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22195890 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Heide Young |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 28-APR-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 18:59:16 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Application Data Sheet | EDGE-005C2_ADS.PDF | 1561684 <br> c7036734c11ff3ea9fb5dba36cef145cb4657 208 | no | 8 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |

EDGE-CARTESSA_0001659

| 2 | | EDGE-005C2_Specification.pdf | 1685621 | yes | 33 |
| | | | 33eae73c316933cebfdac8d33d99a631780cf379 | | |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Specification | 1 | 31 |
| Claims | 32 | 32 |
| Abstract | 33 | 33 |

**Warnings:**

**Information:**

| 3 | Drawings-only black and white line drawings | EDGE-005C2_Drawings.PDF | 667275 | no | 25 |
| | | | 8967a45e619f0a5336c6be2c0acc3d1f4c94a74b | | |

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 3914580 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE-CARTESSA_0001660

Doc code: PET.OP.AGE
Description : Petition to make special based on Age/Health

PTO/SB/130 (07-09)
Approved for use through 07/31/2012. OMB 0651- 0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

## PETITION TO MAKE SPECIAL BASED ON AGE FOR ADVANCEMENT OF EXAMINATION UNDER 37 CFR 1.102(c)(1)

### Application Information

| Application Number | 14698673 | Confirmation Number | 7926 | Filing Date | 2015-04-28 |
|---|---|---|---|---|---|
| Attorney Docket Number (optional) | EDGE.005C2 | Art Unit | TBD | Examiner | Unknown |
| First Named Inventor | Roger Ignon | | | | |
| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN | | | | |

**Attention: Office of Petitions**

An application may be made special for advancement of examination upon filing of a petition showing that the applicant is 65 years of age, or more. No fee is required with such a petition. See 37 CFR 1.102(c)(1) and MPEP 708.02 (IV).

APPLICANT HEREBY PETITIONS TO MAKE SPECIAL FOR ADVANCEMENT OF EXAMINATION IN THIS APPLICATION UNDER 37 CFR 1.102(c)(1) and MPEP 708.02 (IV) ON THE BASIS OF THE APPLICANT'S AGE.

A grantable petition requires one of the following items:
(1) Statement by one named inventor in the application that he/she is 65 years of age, or more; or
(2) Certification by a registered attorney/agent having evidence such as a birth certificate, passport, driver's license, etc. showing one named inventor in the application is 65 years of age, or more.

**Name of Inventor who is 65 years of age, or older**

| Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|
| Roger | | Ignon | |

A signature of the applicant or representative is required in accordance with 37 CFR 1.33 and 10.18.
Please see 37 CFR 1.4(d) for the format of the signature.

Select (1) or (2) :

○ (1) I am an inventor in this application and I am 65 years of age, or more.

◉ (2) I am an attorney or agent registered to practice before the Patent and Trademark Office, and I certify that I am in possession of evidence, and will retain such in the application file record, showing that the inventor listed above is 65 years of age, or more.

| Signature | /Theodore G. Papagiannis/ | Date (YYYY-MM-DD) | 2015-04-30 |
|---|---|---|---|
| Name | Theodore G. Papagiannis | Registration Number | 61546 |

EFSWeb 1.0.18

EDGE-CARTESSA_0001661

Doc code: PET.OP.AGE
Description : Petition to make special based on Age/Health

PTO/SB/130 (07-09)
Approved for use through 07/31/2012. OMB 0651- 0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.  The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Fr eedom of Information Act requires disclosure of these records.

2.  A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.  A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.  A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.  A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.  A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.  A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about indivi duals.

8.  A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.  A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFSWeb 1.0.18

EDGE-CARTESSA_0001662

# UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

In re Application of
Roger Ignon                                                    :
                                                               :
Application No.    14698673                    :DECISION ON PETITION TO MAKE SPECIAL
                                               :UNDER 37 CFR 1.102(c)(1)
Filed:                                                         :

Attorney Docket No.    EDGE.005C2

This is a decision on the electronic petition under 37 CFR 1.102 (c)(1), filed    30-APR-2015      to make the above-identified application special based on applicant's age as set forth in MPEP § 708.02, Section IV.

The petition is **GRANTED**.

A grantable petition to make an application special under 37 CFR 1.102(c)(1), MPEP § 708.02, Section IV: Applicant's Age must include a statement by applicant or a registered practitioner having evidence that applicant is at least 65 years of age.  No fee is required.

Accordingly, the above-identified application has been accorded "special" status and will be taken up for action by the examiner upon the completion of all pre-examination processing.

Telephone inquiries concerning  this electronic decision should be  directed to the Electronic Business Center at 866-217-9197.

All other inquiries concerning either the examination or status of the application should be directed to the Technology Center.

EDGE-CARTESSA_0001663

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22215429 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/janet teeters |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 30-APR-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 12:26:09 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| Submitted with Payment | no |
|---|---|

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Petition automatically granted by EFS | EDGE-005C2_Petition_make_special.PDF | 752159<br>58714e9958be9c6220224475590cad47ccb1d9ac | no | 2 |

| Warnings: |
|---|
| **Information:** |

EDGE-CARTESSA_0001664

Total Files Size (in bytes): 752159

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE-CARTESSA_0001665

EDGE.005C2                                                                                    PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Ignon et al. |
| App. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Unknown |
| Art Unit | : | Unknown |
| Conf No. | : | 7926 |

## PRELIMINARY AMENDMENT

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

Prior to examination on the merits, please amend the above-referenced application as provided below.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks** begin on page 5 of this paper.

-1-

EDGE-CARTESSA_0001666

**Application No.:**    **14/698,673**
**Filing Date:**        **April 28, 2015**

## AMENDMENTS TO THE CLAIMS

*The following listing of claims replaces all prior versions and listings of claims in the application. The listing of claims presents each claim with its respective status shown in parentheses.*

1.    (*Canceled*)

2.    (*New*)    A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with at least one fluid container, the at least one fluid container being configured to contain a treatment material for a skin treatment procedure;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the at least one fluid container through the supply conduit; and

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source.

3.    (*New*)    The system of Claim 2, further comprising a user input device, wherein the user input device is configured to receive instructions regarding the treatment material to be passed through the supply conduit to the handpiece assembly.

4.    (*New*)    The system of Claim 2, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

5.    (*New*)    The system of Claim 4, wherein the user input device comprises a touch screen.

6.    (*New*)    The system of Claim 2, wherein the at least one fluid container is releasably coupled to the manifold.

-2-

EDGE-CARTESSA_0001667

**Application No.:**     **14/698,673**
**Filing Date:**          **April 28, 2015**

7.      (*New*)  The system of Claim 2, wherein the at least one fluid container comprises at least two fluid containers.

8.      (*New*)  The system of Claim 2, wherein the at least one fluid container comprises at least four fluid containers.

9.      (*New*)  The system of Claim 7, wherein treatment materials from the at least two fluid containers are delivered to the supply conduit sequentially or simultaneously.

10.     (*New*)  The system of Claim 2, wherein the console is movable.

11.     (*New*)   The system of Claim 2, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece is moved relative to a skin surface of a subject.

12.     (*New*)  The system of Claim 2, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

13.     (*New*)  The system of Claim 2, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

14.     (*New*)   A system for performing a skin treatment procedure, the system comprising:

a manifold in fluid communication with at least one fluid container, the at least one fluid container being configured to contain a treatment material;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; and

a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the at least one fluid container through the supply conduit.

15.     (*New*)  The system of Claim 14, further comprising a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to a vacuum source.

16.     (*New*)  The system of Claim 14, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

-3-

EDGE-CARTESSA_0001668

**Application No.:**  **14/698,673**
**Filing Date:**  **April 28, 2015**

17.  (*New*)  The system of Claim 14, wherein console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container.

18.  (*New*)  The system of Claim 17, wherein the user input device comprises a touch screen.

19.  (*New*)  The system of Claim 14, wherein the at least one fluid container is releasably coupled to the manifold.

20.  (*New*)  The system of Claim 14, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece is moved relative to a skin surface of a subject.

21.  (*New*)  The system of Claim 14, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

EDGE-CARTESSA_0001669

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

**REMARKS**

Applicant submits this Preliminary Amendment prior to examination.  Claim 1 was pending in this application.  Applicant is canceling without prejudice Claim 1 and adding new Claims 2 to 21 herein.  No new matter is added by the foregoing amendments. Applicant reserves the right to pursue claims similar to the original claims and/or previously-pending versions of the claims in a continuing application.

**New Claims**

As noted above and reflected in the listing of claims, new Claims 2 to 21 are added herein. Applicant submits that no new matter is added by the introduction of these claims.

**Table of U.S. Patents and Applications**

Applicant provides the following table to aid the Examiner during prosecution. The following U.S. patents and/or patent applications are in the same patent family as the subject application.

| Attorney Docket No. | App. No. (*Pat. No., if appl.*) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348 (U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

EDGE-CARTESSA_0001670

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

### No Disclaimers or Disavowals

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

### CONCLUSION

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 1, 2015

By: /Theodore G. Papagiannis/
Theodore G. Papagiannis
Registration No. 61,546
Attorney of Record
Customer No. 20995
(949) 760-0404

20577793

-6-

EDGE-CARTESSA_0001671

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22233872 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Tony Do |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 01-MAY-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 17:26:26 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | EDGE-005C2_Prelim_Amend. pdf | 251862<br>c76b7fe656bea512fb674051aca6b8e2978f778a | yes | 6 |

EDGE-CARTESSA_0001672

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Preliminary Amendment | 1 | 1 |
| Claims | 2 | 4 |
| Applicant Arguments/Remarks Made in an Amendment | 5 | 6 |

| Warnings: | |
|---|---|
| **Information:** | |
| **Total Files Size (in bytes):** | 251862 |

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE-CARTESSA_0001673

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 14/698,673 | Filing Date 04/28/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☒ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | | |
|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **05/01/2015** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LDRC
/PRASAD JANDHYALA/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EDGE-CARTESSA_0001674

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | | 0.00 | EDGE.005C2 | 20 | 2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**FILING RECEIPT**

*OC000000075079467*

Date Mailed: 05/11/2015

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**
Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

**Applicant(s)**
EDGE SYSTEMS LLC, Signal Hill, CA

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**
This application is a CON of 13/267,554 10/06/2011
which is a CON of 11/392,348 03/29/2006 PAT 8048089
which claims benefit of 60/755,310 12/30/2005
and claims benefit of 60/764,668 02/02/2006

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**If Required, Foreign Filing License Granted:** 05/07/2015
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/698,673**
**Projected Publication Date:** To Be Determined - pending completion of Missing Parts
**Non-Publication Request:** No

page 1 of 3

EDGE-CARTESSA_0001675

**Early Publication Request:** No
**\*\* SMALL ENTITY \*\***
**Title**

CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

EDGE-CARTESSA_0001676

# LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

EDGE-CARTESSA_0001677

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number |
|---|
| 14/698,673 |

### APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | | SMALL ENTITY | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 70 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 300 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 360 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 minus 20 = | * | x 40 = | 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 minus 3 = | * | x 210 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 730 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| | | (Column 1) | | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| **AMENDMENT A** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| | | (Column 1) | | (Column 2) | (Column 3) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE($) | ADDITIONAL FEE($) | | RATE($) | ADDITIONAL FEE($) |
| **AMENDMENT B** | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

EDGE-CARTESSA_0001678

Case 2:20-cv-06082-GRB-ST   Document 92-4   Filed 11/17/22   Page 244 of 574 PageID #: 11556



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**FORMALITIES LETTER**

*OC000000075079468*

Date Mailed: 05/11/2015

# NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

## FILED UNDER 37 CFR 1.53(b)

### *Filing Date Granted*

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
- The application search fee must be submitted.
- The application examination fee must be submitted.
- Surcharge as set forth in 37 CFR 1.16(f) must be submitted.
  The surcharge is due for any one of:
    - late submission of the basic filing fee, search fee, or examination fee,
    - late submission of inventor's oath or declaration,
    - filing an application that does not contain at least one claim on filing, or
    - submission of an application filed by reference to a previously filed application.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. Small entity discount is in effect. If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)
- $ **70** basic filing fee.
- $ **70** surcharge.
- $ **300** search fee.
- $ **360** examination fee.
- $( **0**) previous unapplied payment amount.
- $ **800** TOTAL FEE BALANCE DUE.

**Items Required To Avoid Processing Delays:**

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's

EDGE-CARTESSA_0001679

oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

• A properly executed inventor's oath or declaration has not been received for the following inventor(s):
  Roger Ignon
  Scott Mallett
  Abraham Solano
  William Cohen

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice".
https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at **1-866-217-9197** or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

/tpetros/

_____

Office of Data Management, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

EDGE-CARTESSA_0001680

**To:**          jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**        PAIR_eOfficeAction@uspto.gov
**Cc:**          PAIR_eOfficeAction@uspto.gov
**Subject:**     Private PAIR Correspondence Notification for Customer Number 20995

May 11, 2015 05:21:22 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | APP.FILE.REC | 05/11/2015 | EDGE.005C2 |
| | NTC.MISS.PRT | 05/11/2015 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001681

Docket No.:   EDGE.005C2

June 22, 2015
Page 1 of 1

Please Direct All Correspondence to Customer Number 20995

## RESPONSE TO FORMALITIES NOTICE

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| App. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Art Unit | : | Unknown |
| Conf No. | : | 7926 |

**Mail Stop Missing Parts**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

In response to the Formalities Notice that was mailed on May 11, 2015 for the above-captioned application, enclosed, in compliance with 37 CFR §1.53(f), are the following:

The present application qualifies for small entity status under 37 CFR §1.27.

(X)    Fees will be paid via EFS Web.  Any extension of time will be requested by payment of the appropriate extension fee.

(X)    An Information Disclosure Statement and PTO/SB/08 equivalent listing references for consideration:

        (X)    Listing 334 references.

The Commissioner is hereby authorized to charge any additional fees which may be required, now or in the future, or credit any overpayment, to Account No. 11-1410.

Date: June 22, 2015

By: /Theodore G. Papagiannis/
     Theodore G. Papagiannis
     Registration No. 61,546
     Attorney of Record
     Customer No. 20995
     (949) 760-0404

20932049

EDGE-CARTESSA_0001682

Docket No.:  EDGE.005C2                                              **Customer No. 20995**

---

**INFORMATION DISCLOSURE STATEMENT**

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| App. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Unknown |
| Art Unit | : | Unknown |
| Conf. No. | : | 7926 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

Pursuant to 37 CFR §1.56, an Information Disclosure Statement listing references is provided herewith.  Listed references are of record in U.S. patent application No. 13/267,554, filed October 6, 2011, which is the parent of this continuation application, and is relied upon for an earlier filing date under 35 USC 120.  Copies of the references are not submitted pursuant to 37 CFR §1.98(d).  Any foreign references may also include English abstract(s) and/or machine translation(s), but no representation is made as to their accuracy.  Identification herein is not an admission that any of the references are prior art to the above captioned application.

If the Examiner would like additional information regarding these references or if anything is unclear, the Examiner is invited to contact the undersigned for assistance.

The claims of the present application are different and possibly broader in scope than the claims pursued in a parent application (e.g., U.S. Pat. Appl. No. 11/392,348).  To the extent any prior amendments or characterizations of the scope of any claim or referenced art could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant hereby rescinds and retracts such disclaimer.  Accordingly, the references previously considered in the parent application may need to be re-visited.

EDGE-CARTESSA_0001683

**Application No.:**     **14/698,673**
**Filing Date:**        **April 28, 2015**


**Related Applications of Assignee**

Applicant wishes to draw the Examiner's attention to the following patents and/or applications in the same patent family as the present application.

| Attorney Docket | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348 (U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.


**Timing of Disclosure**

This Information Disclosure Statement is being filed within three months of the filing date and no fee is believed to be required.

EDGE-CARTESSA_0001684

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**


The Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: June 22, 2015    By:/Theodore G. Papagiannis/
    Theodore G. Papagiannis
    Registration No. 61,546
    Attorney of Record
    Customer No. 20995
    (949) 760-0404


20778612

-3-

EDGE-CARTESSA_0001685

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 1 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,608,032 | 08-26-1952 | Garver | |
| | 2 | 2,701,559 | 02-05-1955 | Cooper | |
| | 3 | 2,712,823 | 07-12-1955 | Kurtin | |
| | 4 | 2,867,214 | 01-06-1959 | Wilson | |
| | 5 | 2,881,763 | 04-14-1959 | Robbins | |
| | 6 | 2,921,585 | 01-19-1960 | Schumann | |
| | 7 | 3,085,573 | 04-16-1963 | Meyer et al. | |
| | 8 | 3,214,869 | 11-02-1965 | Stryker | |
| | 9 | 3,476,112 | 11-04-1969 | Elstein | |
| | 10 | 3,574,239 | 04-13-1971 | Sollerud | |
| | 11 | 3,715,838 | 02-13-1973 | Young et al. | |
| | 12 | 3,948,265 | 04-06-1976 | Al Ami | |
| | 13 | 3,964,212 | 06-22-1976 | Karden | |
| | 14 | 3,977,084 | 08-31-1976 | Sloan | |
| | 15 | 4,121,388 | 10-24-1978 | Wilson | |
| | 16 | 4,155,721 | 05-22-1979 | Fletcher | |
| | 17 | 4,182,329 | 01-08-1980 | Smith et al. | |
| | 18 | 4,203,431 | 05-20-1980 | Abura et al. | |
| | 19 | 4,216,233 | 08-05-1980 | Stein | |
| | 20 | 4,299,219 | 11-10-1981 | Norris, Jr. | |
| | 21 | 4,378,804 | 04-05-1983 | Cortese | |
| | 22 | 4,560,373 | 12-24-1985 | Sugino et al. | |
| | 23 | 4,646,480 | 03-03-1987 | Williams | |
| | 24 | 4,646,482 | 03-03-1987 | Chitjian | |
| | 25 | 4,655,743 | 04-07-1987 | Hyde | |
| | 26 | 4,676,749 | 06-30-1987 | Mabille | |
| | 27 | 4,706,676 | 11-17-1987 | Peck | |
| | 28 | 4,754,756 | 07-05-1988 | Shelanski | |
| | 29 | 4,757,814 | 07-19-1988 | Wang et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001686

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 2 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example:  1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 4,764,362 | 08-16-1988 | Barchas | |
| | 31 | 4,795,421 | 01-03-1989 | Blasius, Jr., et al. | |
| | 32 | 4,875,287 | 10-24-1989 | Creasy et al. | |
| | 33 | 4,886,078 | 12-12-1989 | Shiffman | |
| | 34 | 4,887,994 | 12-12-1989 | Shiffmann | |
| | 35 | 4,900,316 | 02-13-1990 | Yamamoto | |
| | 36 | 4,917,086 | 04-17-1990 | Feltovich et al. | |
| | 37 | 4,925,450 | 05-15-1990 | Imonti et al. | |
| | 38 | 4,957,747 | 09-18-1990 | Stiefel | |
| | 39 | 5,006,004 | 04-09-1991 | Dirksing et al. | |
| | 40 | 5,006,339 | 04-09-1991 | Bargery et al. | |
| | 41 | 5,012,797 | 05-07-1991 | Liang et al. | |
| | 42 | 5,035,089 | 07-30-1991 | Tillman et al. | |
| | 43 | 5,037,431 | 08-06-1991 | Summers et al. | |
| | 44 | 5,037,432 | 08-06-1991 | Molinari | |
| | 45 | 5,100,412 | 03-31-1992 | Rosso | |
| | 46 | 5,100,424 | 03-31-1992 | Jang | |
| | 47 | 5,119,839 | 06-09-1992 | Rudolph | |
| | 48 | 5,122,153 | 06-16-1992 | Harrel | |
| | 49 | 5,207,234 | 05-04-1993 | Rosso | |
| | 50 | 5,222,956 | 06-29-1993 | Waldron | |
| | 51 | 5,242,433 | 09-07-1993 | Smith et al. | |
| | 52 | 5,254,109 | 10-19-1993 | Smith et al. | |
| | 53 | 5,368,581 | 11-29-1994 | Smith et al. | |
| | 54 | 5,391,151 | 02-21-1995 | Wilmot | |
| | 55 | 5,417,674 | 05-23-1995 | Smith et al. | |
| | 56 | 5,419,772 | 05-30-1995 | Teitz et al. | |
| | 57 | 5,460,620 | 10-24-1995 | Smith et al. | |
| | 58 | 5,470,323 | 11-28-1995 | Smith et al. | |

| Examiner Signature | Date Considered |
|---|---|
| | |

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001687

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|

| | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 3 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 59 | 5,484,427 | 01-16-1996 | Gibbons | |
| | 60 | 5,562,642 | 10-08-1996 | Smith et al. | |
| | 61 | 5,611,687 | 03-18-1997 | Wagner | |
| | 62 | 5,612,797 | 03-18-1997 | Liang et al. | |
| | 63 | 5,674,235 | 10-07-1997 | Parisi | |
| | 64 | 5,676,643 | 10-14-1997 | Cann et al. | |
| | 65 | 5,676,648 | 10-14-1997 | Henley | |
| | 66 | 5,683,971 | 11-04-1997 | Rose et al. | |
| | 67 | 5,707,383 | 01-13-1998 | Bays | |
| | 68 | 5,713,785 | 02-03-1998 | Nishio | |
| | 69 | 5,759,185 | 06-02-1998 | Grinberg | |
| | 70 | 5,779,519 | 07-14-1998 | Oliver | |
| | 71 | 5,800,446 | 09-01-1998 | Banuchi | |
| | 72 | 5,807,353 | 09-15-1998 | Schmitz | |
| | 73 | 5,810,842 | 09-22-1998 | Di Fiore at al. | |
| | 74 | 5,813,416 | 09-29-1998 | Rudolph | |
| | 75 | 5,817,050 | 10-06-1998 | Klein | |
| | 76 | 5,846,215 | 12-08-1998 | Zygmont | |
| | 77 | 5,848,998 | 12-15-1998 | Marasco, Jr. | |
| | 78 | 5,861,142 | 01-19-1999 | Schick | |
| | 79 | 5,873,881 | 02-23-1999 | McEwen et al. | |
| | 80 | 5,879,323 | 03-09-1999 | Henley | |
| | 81 | 5,882,201 | 03-16-1999 | Salem | |
| | 82 | 5,885,260 | 03-23-1999 | Mehl, Sr., et al. | |
| | 83 | 5,908,401 | 06-01-1999 | Henley | |
| | 84 | 5,919,152 | 07-06-1999 | Zygmont | |
| | 85 | 5,954,730 | 09-21-1999 | Bernabei | |
| | 86 | 5,971,999 | 10-26-1999 | Naldoni | |
| | 87 | 5,980,555 | 11-09-1999 | Barbut et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*****Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001688

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 4 OF 13 | | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 88 | 6,019,749 | 02-01-2000 | Fields et al. | |
| | 89 | 6,024,733 | 02-15-2000 | Eggers et al. | |
| | 90 | 6,027,402 | 02-22-2000 | Oliver | |
| | 91 | 6,039,745 | 03-21-2000 | Di Fiore et al. | |
| | 92 | 6,042,552 | 03-28-2000 | Cornier | |
| | 93 | 6,080,165 | 06-27-2000 | DeJacma | |
| | 94 | 6,080,166 | 06-27-2000 | McEwen et al. | |
| | 95 | 6,090,085 | 07-18-2000 | Mehl, Sr. Et al. | |
| | 96 | 6,120,512 | 09-19-2000 | Bernabei | |
| | 97 | 6,136,008 | 10-24-2000 | Becker et al. | |
| | 98 | 6,139,553 | 10-31-2000 | Dotan | |
| | 99 | 6,139,554 | 10-31-2000 | Karkar et al. | |
| | 100 | 6,142,155 | 11-07-2000 | Rudolph | |
| | 101 | 6,149,634 | 11-21-2000 | Bernabei | |
| | 102 | 6,159,226 | 12-12-2000 | Kim | |
| | 103 | 6,162,232 | 12-19-2000 | Shadduck | |
| | 104 | 6,183,451 | 02-06-2001 | Mehl, Sr., et al. | |
| | 105 | 6,183,483 | 02-06-2001 | Chang | |
| | 106 | 6,231,593 | 05-15-2001 | Meserol | |
| | 107 | 6,238,275 | 05-29-2001 | Metcalf et al. | |
| | 108 | 6,241,739 | 06-05-2001 | Waldron | |
| | 109 | 6,264,666 | 07-24-2001 | Coleman et al. | |
| | 110 | 6,277,128 | 08-21-2001 | Muldner | |
| | 111 | 6,283,978 | 09-04-2001 | Cheski et al. | |
| | 112 | 6,299,620 | 10-09-2001 | Shadduck | |
| | 113 | 6,306,119 | 10-23-2001 | Weber et al. | |
| | 114 | 6,306,147 | 10-23-2001 | Bernabei et al. | |
| | 115 | 6,322,568 | 11-27-2001 | Bernabei et al. | |
| | 116 | 6,368,333 | 04-09-2002 | Bernabei et al. | |

| Examiner Signature | | Date Considered |
|---|---|---|
| | | |

*Examiner:  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001689

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 5 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 117 | 6,387,103 | 05-14-2002 | Shadduck | |
| | 118 | 6,409,736 | 06-25-2002 | Bernabei | |
| | 119 | 6,410,599 | 06-25-2002 | Johnson | |
| | 120 | 6,414,032 | 07-02-2002 | Johnson | |
| | 121 | 6,420,431 | 07-16-2002 | Johnson | |
| | 122 | 6,423,078 | 07-23-2002 | Bays et al. | |
| | 123 | 6,423,750 | 07-23-2002 | Johnson | |
| | 124 | RE 37,796 | 07-23-2002 | Henley | |
| | 125 | 6,432,113 | 08-13-2002 | Parkin et al. | |
| | 126 | 6,471,712 | 10-29-2002 | Burres | |
| | 127 | 6,477,410 | 11-05-2002 | Henley et al. | |
| | 128 | 6,482,212 | 11-19-2002 | Bernabei et al. | |
| | 129 | 6,488,646 | 12-03-2002 | Zygmont | |
| | 130 | 6,494,856 | 12-17-2002 | Zygmont | |
| | 131 | 6,500,183 | 12-31-2002 | Waldron | |
| | 132 | 6,503,256 | 01-07-2003 | Parkin et al. | |
| | 133 | 6,511,486 | 01-28-2003 | Mercier et al. | |
| | 134 | 6,514,262 | 02-04-2003 | Di Fiore, et al. | |
| | 135 | 6,527,783 | 03-04-2003 | Ignon | |
| | 136 | 6,535,761 | 03-18-2003 | Bernabei | |
| | 137 | 6,540,757 | 04-01-2003 | Hruska et al. | |
| | 138 | 6,562,013 | 05-13-2003 | Marasco, Jr. | |
| | 139 | 6,562,050 | 05-13-2003 | Owen | |
| | 140 | 6,564,093 | 05-13-2003 | Ostrow et al. | |
| | 141 | 6,565,535 | 05-20-2003 | Zaias et al. | |
| | 142 | 6,582,442 | 06-24-2003 | Simon et al. | |
| | 143 | 6,592,595 | 07-15-2003 | Mallett et al. | |
| | 144 | 6,629,983 | 10-07-2003 | Ignon | |
| | 145 | 6,641,591 | 11-04-2003 | Shadduck | |

| Examiner Signature | | Date Considered |
|---|---|---|
| | | |

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001690

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 6 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example:  1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 146 | 6,645,184 | 11-11-2003 | Zelickson et al. | |
| | 147 | 6,652,888 | 11-25-2003 | Rhoades | |
| | 148 | 6,673,081 | 01-06-2004 | Tavger et al. | |
| | 149 | 6,673,082 | 01-06-2004 | Mallett et al. | |
| | 150 | 6,685,853 | 02-03-2004 | Angelopoulous et al. | |
| | 151 | 6,687,537 | 02-03-2004 | Bernabei | |
| | 152 | 6,695,853 | 02-24-2004 | Karasiuk | |
| | 153 | 6,735,470 | 05-11-2004 | Henley et al. | |
| | 154 | 6,743,215 | 06-01-2004 | Bernabei | |
| | 155 | 6,764,493 | 07-20-2004 | Weber et al. | |
| | 156 | 6,869,611 | 03-22-2005 | Kligman et al. | |
| | 157 | 6,905,487 | 06-14-2005 | Zimmerman | |
| | 158 | 6,911,031 | 06-28-2005 | Muldner | |
| | 159 | 6,924,649 | 08-02-2005 | Knoedgen | |
| | 160 | 6,926,681 | 08-09-2005 | Ramey, et al. | |
| | 161 | 6,942,649 | 09-13-2005 | Ignon et al. | |
| | 162 | 7,001,355 | 02-21-2006 | Nunomura et al. | |
| | 163 | 7,004,933 | 02-28-2006 | McCaniel | |
| | 164 | 7,044,938 | 05-16-2006 | La Bianco et al. | |
| | 165 | 7,052,503 | 05-30-2006 | Bernabei | |
| | 166 | 7,069,073 | 06-27-2006 | Henley et al. | |
| | 167 | 7,070,488 | 07-04-2006 | Suissa et al. | |
| | 168 | 7083,580 | 08-01-2006 | Bernabei | |
| | 169 | 7,087,063 | 08-08-2006 | Carson et al. | |
| | 170 | 7,094,252 | 08-22-2006 | Koop | |
| | 171 | 7,115,275 | 10-03-2006 | Clarot et al. | |
| | 172 | 7,135,011 | 11-14-2006 | Powers et al. | |
| | 173 | 7,153,311 | 12-26-2006 | Chung | |
| | 174 | 7,197,359 | 03-27-2007 | Tokudome et al. | |

| Examiner Signature | | Date Considered |
|---|---|---|
| | | |

*****Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001691

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 7 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number *Number - Kind Code (if known)* Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 175 | 7,198,623 | 04-03-2007 | Fischer et al. | |
| | 176 | 7,241,208 | 07-10-2007 | Suissa et al. | |
| | 177 | 7,276,051 | 10-02-2007 | Henley et al. | |
| | 178 | 7,314,326 | 01-01-2008 | Rosenberg | |
| | 179 | 7,316,657 | 01-08-2008 | Kleinhenz et al. | |
| | 180 | 7,318,828 | 01-15-2008 | Revivo | |
| | 181 | 7,320,691 | 01-22-2008 | Pilcher et al. | |
| | 182 | 7,320,801 | 01-22-2008 | Kelly | |
| | 183 | 7,354,423 | 04-08-2008 | Zelickson et al. | |
| | 184 | 7,364,565 | 04-29-2008 | Freeman | |
| | 185 | 7,384,405 | 06-10-2008 | Rhoades | |
| | 186 | 7,427,273 | 09-23-2008 | Mitsui | |
| | 187 | 7,458,944 | 12-02-2008 | Liste et al. | |
| | 188 | 7,476,205 | 01-13-2009 | Erdmann | |
| | 189 | 7,477,938 | 01-13-2009 | Sun et al. | |
| | 190 | 7,482,314 | 01-27-2009 | Grimes et al. | |
| | 191 | 7,489,989 | 02-10-2009 | Sukhanov et al. | |
| | 192 | 7,507,228 | 03-24-2009 | Sun et al. | |
| | 193 | 7,582,067 | 09-01-2009 | Van Acker | |
| | 194 | 7,597,900 | 10-06-2009 | Zimmer et al. | |
| | 195 | 7,597,901 | 10-06-2009 | Clarot et al. | |
| | 196 | 7,658,742 | 02-09-2010 | Karasiuk | |
| | 197 | 7,678,120 | 03-16-2010 | Shadduck | |
| | 198 | 7,744,582 | 06-29-2010 | Sadowski et al. | |
| | 199 | 7,789,886 | 09-07-2010 | Shadduck | |
| | 200 | 7,837,695 | 11-23-2010 | Hart et al. | |
| | 201 | 7,901,373 | 03-08-2011 | Tavger | |
| | 202 | 7,951,156 | 05-31-2011 | Karasiuk | |
| | 203 | 8,025,669 | 09-27-2011 | David et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001692

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 8 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 204 | 8,048,089 | 11-01-2011 | Ignon et al. | |
| | 205 | RE42960 | 11-22-2011 | Waldron | |
| | 206 | 8,066,716 | 11-29-2011 | Shadduck | |
| | 207 | 8,088,085 | 01-03-2012 | Thiebaut et al. | |
| | 208 | 8,128,638 | 03-06-2012 | Karasiuk et al. | |
| | 209 | 8,221,437 | 07-17-2012 | Waldron et al. | |
| | 210 | 8,236,008 | 08-07-2012 | Boone, III et al. | |
| | 211 | 8,277,287 | 10-02-2012 | Hart | |
| | 212 | 8,337,513 | 12-25-2012 | Shadduck | |
| | 213 | 8,343,116 | 01-01-2013 | Ignon et al. | |
| | 214 | 8,814,836 | 08-26-2014 | Ignon et al. | |
| | 215 | 2001/0023351 | 09-20-2001 | Eilers | |
| | 216 | 2001/0049511 | 12-06-2001 | Coleman et al. | |
| | 217 | 2002/0016601 | 02-07-2002 | Shadduck | |
| | 218 | 2002/0041891 | 04-11-2002 | Cheski | |
| | 219 | 2002/0058952 | 05-16-2002 | Weber et al. | |
| | 220 | 2002/0107527 | 08-08-2002 | Burres | |
| | 221 | 2002/0133110 | 09-19-2002 | Citow | |
| | 222 | 2002/0151826 | 10-17-2002 | Ramey et al | |
| | 223 | 2002/0188261 | 12-12-2002 | Hruska | |
| | 224 | 2003/0012415 | 01-16-2003 | Cossel | |
| | 225 | 2003/0060834 | 03-27-2003 | Muldner | |
| | 226 | 2003/0093040 | 05-15-2003 | Mikszta et al. | |
| | 227 | 2003/0093089 | 05-15-2003 | Greenberg | |
| | 228 | 2003/0097139 | 05-22-2003 | Karasiuk | |
| | 229 | 2003/0187462 | 10-14-2003 | Chang | |
| | 230 | 2003/0208159 | 11-06-2003 | Ignon, et al. | |
| | 231 | 2003/0212127 | 11-13-2003 | Glassman et al. | |
| | 232 | 2003/0212415 | 11-13-2003 | Karasiuk | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:**  Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001693

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 9 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 233 | 2004/0010222 | 01-15-2004 | Nunomura et al. | |
| | 234 | 2004/0010269 | 01-15-2004 | Grimes et al. | |
| | 235 | 2004/0087972 | 05-06-2004 | Mulholland, et al. | |
| | 236 | 2004/0092895 | 05-13-2004 | Harmon | |
| | 237 | 2004/0097967 | 05-20-2004 | Ignon | |
| | 238 | 2004/0122447 | 06-24-2004 | Harmon et al. | |
| | 239 | 2004/0143274 | 07-22-2004 | Shadduck | |
| | 240 | 2004/0166172 | 08-26-2004 | Rosati et al. | |
| | 241 | 2004/0219179 | 11-04-2004 | McDaniel | |
| | 242 | 2004/0236291 | 11-25-2004 | Zelickson et al. | |
| | 243 | 2004/0243149 | 12-02-2004 | Lee, John B. JR. | |
| | 244 | 2004/0267285 | 12-30-2004 | Chang | |
| | 245 | 2005/0037034 | 02-17-2005 | Rhoades | |
| | 246 | 2005/0038448 | 02-17-2005 | Chung | |
| | 247 | 2005/0059940 | 03-17-2005 | Weber et al. | |
| | 248 | 2005/0084509 | 04-21-2005 | Bernstein | |
| | 249 | 2005/0148958 | 07-07-2005 | Rucinski | |
| | 250 | 2005/0203111 | 09-15-2005 | David | |
| | 251 | 2005/0209611 | 09-22-2005 | Greenberg | |
| | 252 | 2005/0283176 | 12-22-2005 | Law | |
| | 253 | 2006/0002960 | 01-05-2006 | Zoeteweij et al. | |
| | 254 | 2006/0191562 | 08-31-2006 | Numomura | |
| | 255 | 2006/0200099 | 09-07-2006 | La Bianco et al. | |
| | 256 | 2006/0200172 | 09-07-2006 | Shadduck | |
| | 257 | 2006/0200173 | 09-07-2006 | Shadduck | |
| | 258 | 2006/0212029 | 09-21-2006 | Arcusa Villacampa et al. | |
| | 259 | 2006/0253125 | 11-09-2006 | Ignon | |
| | 260 | 2006/0264893 | 11-23-2006 | Sage, Jr. et al. | |
| | 261 | 2007/0005078 | 01-04-2007 | Hart et al. | |

| Examiner Signature | | Date Considered |
|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001694

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| (Multiple sheets used when necessary) | Examiner | Unknown |
| SHEET 10 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number *Number - Kind Code (if known)* Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 262 | 2007/0043382 | 02-22-2007 | Cheney | |
| | 263 | 2007/0065515 | 03-22-2007 | Key | |
| | 264 | 2007/0123808 | 03-31-2007 | Rhoades | |
| | 265 | 2007/0088371 | 04-19-2007 | Karasiuk | |
| | 266 | 2007/0154502 | 07-05-2007 | Hattendorf et al. | |
| | 267 | 2007/0156124 | 07-05-2007 | Ignon et al. | |
| | 268 | 2007/0178121 | 08-02-2007 | First et al. | |
| | 269 | 2007/0198031 | 08-23-2007 | Kellogg | |
| | 270 | 2007/0208353 | 09-06-2007 | Shadduck | |
| | 271 | 2007/0239173 | 10-11-2007 | Khalaj | |
| | 272 | 2008/0027328 | 01-31-2008 | Klopotek et al. | |
| | 273 | 2008/0091179 | 04-17-2008 | Durkin et al. | |
| | 274 | 2008/0119781 | 05-22-2008 | King | |
| | 275 | 2008/0132914 | 06-05-2008 | Bossard et al. | |
| | 276 | 2008/0139974 | 06-12-2008 | Da Silva | |
| | 277 | 2008/0193493 | 08-14-2008 | Rhoades | |
| | 278 | 2008/0200861 | 08-21-2008 | Shalev et al. | |
| | 279 | 2008/0214987 | 09-04-2008 | Xu | |
| | 280 | 2008/0215068 | 09-04-2008 | Hart et al. | |
| | 281 | 2008/0243039 | 10-02-2008 | Rhoades | |
| | 282 | 2008/0287864 | 11-20-2008 | Rosenberg | |
| | 283 | 2008/0300529 | 12-04-2008 | Reinstein | |
| | 284 | 2008/0300552 | 12-04-2008 | Cichocki et al. | |
| | 285 | 2009/0048557 | 02-19-2009 | Yeshurun et al. | |
| | 286 | 2009/0053390 | 02-26-2009 | Sakou et al. | |
| | 287 | 2009/0099091 | 04-16-2009 | Hantash | |
| | 288 | 2009/0099093 | 04-16-2009 | Hantash | |
| | 289 | 2009/0124985 | 05-14-2009 | Hasenoehrl et al. | |
| | 290 | 2009/0138026 | 05-28-2009 | Wu | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

***Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001695

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 11 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 291 | 2009/0177171 | 07-09-2009 | Ignon et al. | |
| | 292 | 2009/0192442 | 07-30-2009 | Ignon et al. | |
| | 293 | 2009/0222023 | 09-03-2009 | Boone, III et al. | |
| | 294 | 2010/0045427 | 02-25-2010 | Boone, III et al. | |
| | 295 | 2010/0049177 | 02-25-2010 | Boone, III et al. | |
| | 296 | 2010/0049210 | 02-25-2010 | Boone, III et al. | |
| | 297 | 2011/0054490 | 03-03-2011 | Hart | |
| | 298 | 2011/0066162 | 03-17-2011 | Cohen | |
| | 299 | 2011/0082415 | 04-07-2011 | Ignon et al. | |
| | 300 | 2012/0022435 | 01-26-2012 | Ignon et al. | |
| | 301 | 2012/0136374 | 03-31-2012 | Karasiuk | |
| | 302 | 2013/0018317 | 01-17-2013 | Bobroff et al. | |
| | 303 | 2013/0066336 | 03-14-2013 | Boone, III et al. | |
| | 304 | 2013/0096577 | 04-18-2013 | Shadduck | |
| | 305 | 2013/0102978 | 04-25-2013 | Ignon et al. | |
| | 306 | 2013/0144280 | 06-06-2013 | Eckhouse et al. | |
| | 307 | 2013/0158547 | 06-20-2013 | David | |
| | 308 | 2014/0343481 | 11-20-2014 | Ignon | |
| | 309 | 2014/0343574 | 11-20-2014 | Ignon et al. | |
| | 310 | 2015/0032047 | 01-29-2015 | Ignon et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Foreign Patent Document<br>*Country Code-Number-Kind Code*<br>Example: JP 1234567 A1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 311 | DD 234 608 | 04-09-1986 | Rath | | |
| | 312 | DE 34 21 390 A1 | 12-12-1985 | Schubert | | |
| | 313 | DE 10 2004 015815 A1 | 11-03-2005 | Bundersrepublik Deutschland | | |
| | 314 | EP 0 258 901 | 09-03-1987 | Tonokura Ika Kogyo Co. LTD | | |
| | 315 | EP 0 564 392 | 03-03-1993 | Fructuoso Martinez | | |
| | 316 | IT 553 076 | 12-01-1956 | Facconi | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001696

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 12 OF 13 | Attorney Docket No. | EDGE.005C2 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 317 | IT 118 49 22 | 03-22-1985 | Porqueddu | | |
| | 318 | JP1993-088552 | 12-03-1993 | Sumitomo Bakelite Co., Ltd. | | X |
| | 319 | JP09-294747 | 11-18-1997 | Fukutaro, Yamazaki | | X Abstract |
| | 320 | JP2003-339713 | 12-02-2003 | Twinbird Corp | | |
| | 321 | JP2006-503627 (English abstract of WO 2004/037098) | 02-02-2006 | Bionoface | | X Abstract |
| | 322 | JP2006-204767 | 10-08-2006 | Matsushita Electric Works | | X Abstract |
| | 323 | KR 20-0280320 (with English machine translation obtained from Korean Intellectual Property Office website, http://eng.kipris.or.kr/enghome/main.jsp) | 07-02-2002 | Lee | | X |
| | 324 | WO 2000/015300 | 03-23-2000 | Ultra Cure Ltd | | |
| | 325 | WO 2001/93931 | 12-13-2001 | Becton, Dickinson and Company | | |
| | 326 | WO 2003/073917 | 09-12-2003 | Edge Systems | | |
| | 327 | WO 2004/037098 | 05-06-2004 | Bionoface | | |
| | 328 | WO 2005/070313 | 08-04-2005 | Crystal Clear International Limited | | |
| | 329 | WO 2006/018731 | 02-23-2006 | Mc Anton Holding SA | | |
| | 330 | WO 2007/114904 | 10-11-2007 | Amcol International Corporation | | |
| | 331 | WO 2012/145667 | 10-26-2012 | Sun-Less, Inc. | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | 332 | Cox III et al., *Decreased Splatter in Dermabrasion*, Arch Facial Plastic Surgery, Jan-Mar 2000, Vol. 2, pp. 23-26. | |
| | 333 | Ditre et al., *Effect of α-hydroxy acids on photoaged skin: A pilot clinical, histologic, and ultrastructural study*, Journal of American Academy of Dermatology, February 1996, Vol. 34, No. 2, Part 1, pp. 187-195. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001697

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 13 OF 13 | | Attorney Docket No. | EDGE.005C2 |

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | 334 | Harris et al., *Combining Manual Dermasanding with Low Stregnth Trichloroacetic Acid to Improve Antinically Injured Skin*, The Journal of Dermatologic Surgery and Oncology, July 1994, Vol. 20, No. 7, pp. 436-442. | |

20778469

| Examiner Signature | Date Considered |
|---|---|
| | |

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001698

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14698673 |
| **Filing Date:** | 28-Apr-2015 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Filer:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |

Filed as Small Entity

**Filing Fees for** Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 70 | 70 |
| Utility Search Fee | 2111 | 1 | 300 | 300 |
| Utility Examination Fee | 2311 | 1 | 360 | 360 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| Late Filing Fee for Oath or Declaration | 2051 | 1 | 70 | 70 |
| **Petition:** | | | | |

EDGE-CARTESSA_0001699

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Patent-Appeals-and-Interference: | | | | |
| Post-Allowance-and-Post-Issuance: | | | | |
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | **Total in USD ($)** | | | 800 |

EDGE-CARTESSA_0001700

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22696586 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Gustavo Lopez |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 22-JUN-2015 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 13:40:34 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $800 |
| RAM confirmation Number | 10628 |
| Deposit Account | 111410 |
| Authorized User | KNOBBE MARTENS OLSON AND BEAR |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

EDGE-CARTESSA_0001701

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | EDGE-005C2_Response_MP_IDS.pdf | 717821 <br> a606cbd674d51d492f39c5c9896f1fae97bceb72 | yes | 17 |

| | Multipart Description/PDF files in .zip description | | | | |
|---|---|---|---|---|---|
| | **Document Description** | | **Start** | **End** | |
| | Applicant Response to Pre-Exam Formalities Notice | | 1 | 1 | |
| | Transmittal Letter | | 2 | 4 | |
| | Information Disclosure Statement (IDS) Form (SB08) | | 5 | 17 | |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 37133 <br> 3bdbb03a6f0d99df6ec0b9bbe2b85df4e73fc656 | no | 2 |

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 754954 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

**New Applications Under 35 U.S.C. 111**
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

**National Stage of an International Application under 35 U.S.C. 371**
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

**New International Application Filed with the USPTO as a Receiving Office**
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE-CARTESSA_0001702

## PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| | Application or Docket Number |
| --- | --- |
| | 14/698,673 |

### APPLICATION AS FILED - PART I

| | (Column 1) | (Column 2) | SMALL ENTITY | | OR | OTHER THAN SMALL ENTITY | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| FOR | NUMBER FILED | NUMBER EXTRA | RATE($) | FEE($) | | RATE($) | FEE($) |
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 70 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 300 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 360 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 minus 20 = | * | x  40  = | 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 minus 3 = | * | x  210  = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | 730 | | TOTAL | |

### APPLICATION AS AMENDED - PART II

| AMENDMENT A | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x  = | | OR | x  = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x  = | | OR | x  = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

| AMENDMENT B | | (Column 1) CLAIMS REMAINING AFTER AMENDMENT | | (Column 2) HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3) PRESENT EXTRA | SMALL ENTITY RATE($) | ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | ADDITIONAL FEE($) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | x  = | | OR | x  = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x  = | | OR | x  = | |
| | Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| | FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

EDGE-CARTESSA_0001703



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**INFORMAL NOTICE**

*OC000000075952523*

Date Mailed: 06/26/2015

## INFORMATIONAL NOTICE TO APPLICANT

Applicant is notified that the above-identified application contains the deficiencies noted below. No period for reply is set forth in this notice for correction of these deficiencies. However, if a deficiency relates to the inventor's oath or declaration, the applicant must file an oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each actual inventor no later than the expiration of the time period set in the "Notice of Allowability" to avoid abandonment. See 37 CFR 1.53(f).

The item(s) indicated below are also required and should be submitted with any reply to this notice to avoid further processing delays.

- A properly executed inventor's oath or declaration has not been received for the following inventor(s):
    Roger Ignon
    Scott Mallett
    Abraham Solano
    William Cohen

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/nbekele/

_____

EDGE-CARTESSA_0001704

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | | 800 | EDGE.005C2 | 20 | 2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**UPDATED FILING RECEIPT**


OC000000075952322

Date Mailed: 06/26/2015

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

**Applicant(s)**

EDGE SYSTEMS LLC, Signal Hill, CA;

**Power of Attorney:** None

**Domestic Priority data as claimed by applicant**

This application is a CON of 13/267,554 10/06/2011
which is a CON of 11/392,348 03/29/2006 PAT 8048089
which claims benefit of 60/755,310 12/30/2005
and claims benefit of 60/764,668 02/02/2006

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

**If Required, Foreign Filing License Granted:** 05/07/2015
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/698,673**
**Projected Publication Date:** 10/01/2015
**Non-Publication Request:** No

page 1 of 3

EDGE-CARTESSA_0001705

**Early Publication Request:** No
**** SMALL ENTITY ****
**Title**

      CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

**Preliminary Class**

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

# PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

EDGE-CARTESSA_0001706

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

### GRANTED

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

### NOT GRANTED

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

EDGE-CARTESSA_0001707

**To:**       jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**     PAIR_eOfficeAction@uspto.gov
**Cc:**       PAIR_eOfficeAction@uspto.gov
**Subject:**  Private PAIR Correspondence Notification for Customer Number 20995

Jun 26, 2015 05:21:48 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | M327 | 06/26/2015 | EDGE.005C2 |
| | APP.FILE.REC | 06/26/2015 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

     Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001708

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        08/05/2015
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3734 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/05/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

PTOL-90A (Rev. 04/07)

EDGE-CARTESSA_0001709

| **Office Action Summary** | Application No. 14/698,673 | Applicant(s) IGNON ET AL. |
|---|---|---|
| | Examiner CHRISTIAN KNAUSS | Art Unit 3734 | AIA (First Inventor to File) Status No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *5/1/15*.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL**.    2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) *2-21* is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) *2-21* is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.

11)☒ The drawing(s) filed on *4/28/15* is/are: a)☒ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**

  a)☐ All    b)☐ Some**  c)☐ None of the:

  1.☐ Certified copies of the priority documents have been received.

  2.☐ Certified copies of the priority documents have been received in Application No. _____.

  3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4)☐ Other: _____.

EDGE-CARTESSA_0001710

Application/Control Number: 14/698,673                                                    Page 2

Art Unit: 3734

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application is being examined under the pre-AIA first to invent provisions.

### *Specification*

2.      The lengthy specification has not been checked to the extent necessary to determine the presence of all possible minor errors.  Applicant's cooperation is requested in correcting any errors of which applicant may become aware in the specification.

### *Claim Objections*

3.      Claim 11 is objected to because of the following informalities:  in line 2, "the handpiece" should read --the handpiece assembly--.  Appropriate correction is required.

4.      Claim 20 is objected to because of the following informalities:  in line 2, "the handpiece" should read --the handpiece assembly--.  Appropriate correction is required.

### *Claim Rejections - 35 USC § 102*

5.      The following is a quotation of the appropriate paragraphs of pre-AIA 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

6.      Claims 2, 3, 7-9, 11, 12, 14-16, and 20 rejected under pre-AIA 35 U.S.C. 102(b) as being anticipated by Coleman et al. (US 2001/0049511 A1) ("Coleman").

EDGE-CARTESSA_0001711

Application/Control Number: 14/698,673                                              Page 3

Art Unit: 3734

Regarding claim 2, Coleman discloses (Figures 4-6) a system for performing a skin treatment procedure, the system comprising: a console (Figure 6) including a manifold (see Figure 6 below), the manifold being in fluid communication with at least one fluid container (60C), the at least one fluid container capable of containing a treatment material for a skin treatment procedure; a handpiece assembly (Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin surface of a subject; a supply conduit (51A) placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; wherein the manifold is capable of controlling a flow of treatment material from the at least one fluid container through the supply conduit; and a waste conduit (51B) in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source (64A).

EDGE-CARTESSA_0001712

Application/Control Number: 14/698,673

Page 4

Art Unit: 3734



FIG. 6

Regarding claim 3, Coleman discloses (Figures 5A and 5B) that the system further comprises a user input device (59A, 59B), wherein the user input device is capable of receiving instructions regarding the treatment material to be passed through the supply conduit to the handpiece assembly.

Regarding claim 7, Coleman discloses (Figure 6) that the at least one fluid container comprises at least two fluid containers (60B and 60C).

Regarding claim 8, Coleman discloses (Figure 6) that the at least one fluid container comprises at least four containers (60A, 60B, 60C, 61A).

Regarding claim 9, Coleman discloses that treatment materials from the at least two fluid containers are delivered to the supply conduit simultaneously (paragraph 0060).

EDGE-CARTESSA_0001713

Application/Control Number: 14/698,673                                                    Page 5

Art Unit: 3734

Regarding claim 11, Coleman discloses that the tip of the handpiece assembly is
capable of exfoliating skin tissue as the handpiece is moved relative to a skin surface of
a subject (paragraphs 0009-0010).

Regarding claim 12, Coleman discloses (Figures 5A and 5B) that each of the
supply conduit (51A) and the waste conduit (51B) connects to a corresponding
connector along a proximal end of the handpiece assembly.

Regarding claim 14, Coleman discloses (Figures 4-6) a system for performing a
skin treatment procedure, the system comprising: a manifold (see Figure 6 above) in
fluid communication with at least one fluid container (60C), the at least one fluid
container capable of containing a treatment material; a handpiece assembly (Figures 5A
and 5B) comprising a tip, the tip capable of contacting a skin surface of a subject; and a
supply conduit (51A) placing the manifold in fluid communication with the handpiece
assembly, wherein a distal end of the supply conduit is capable of securing to the
handpiece assembly; wherein the manifold is capable of controlling a flow of treatment
material from the at least one fluid container through the supply conduit.

Regarding claim 15, Coleman discloses (Figure 6) a waste conduit (51B) in fluid
communication with the handpiece assembly capable of removing waste from a skin
surface of a subject during a procedure, wherein the waste conduit is operatively couple
to a vacuum source (65A).

Regarding claim 16, Coleman discloses (Figures 5A and 5B) a user input device
(59A and 59B) for selecting a treatment material to be passed through the supply
conduit to the handpiece assembly.

EDGE-CARTESSA_0001714

Application/Control Number: 14/698,673                                      Page 6
Art Unit: 3734

Regarding claim 20, Coleman discloses that the tip of the handpiece is capable

of exfoliating skin tissue as the handpiece is moved relative to a skin surface of a

subject (paragraphs 0009-0010).


7.      Claims 2, 4, 6, 10, 14, 17, and 19 are rejected under pre-AIA 35 U.S.C. 102(b) as

being anticipated by Greenberg (US 2003/0093089 A1).

Regarding claim 2, Greenberg discloses (Figures 1 and 2) a system for

performing a skin treatment procedure, the system comprising: a console (10) including

a manifold (44), the manifold being in fluid communication with at least one fluid

container (18), the at least one fluid container capable of containing a treatment material

for a skin treatment procedure; a handpiece assembly (16) comprising a tip, the tip

capable of contacting a skin surface of a subject; a supply conduit (20) placing the

manifold of the console in fluid communication with the handpiece assembly, wherein a

distal end of the supply conduit is capable of coupling to the handpiece assembly;

wherein the manifold is capable of controlling a flow of treatment material from the at

least one fluid container through the supply conduit; and a waste conduit (20) in fluid

communication with the tip of the handpiece assembly to remove waste away from a

skin surface of a subject during a skin treatment procedure, wherein the waste conduit

is operatively coupled to a vacuum source (12).

Regarding claim 4, Greenberg discloses (Figure 1) that the console comprises a

display (front surface of console containing 52, 66), wherein the display comprises a

EDGE-CARTESSA_0001715

Application/Control Number: 14/698,673                                    Page 7
Art Unit: 3734

user input device (30, 32, 42, 48, 50) capable of facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

Regarding claim 6, Greenberg discloses (Figure 2) that the at least one fluid container (18) is releasably coupled to the manifold (42).

Regarding claim 10, the console disclosed by Coleman is capable of being moved.

Regarding claim 14, Greenberg discloses (Figures 1 and 2) a system for performing a skin treatment procedure, the system comprising: a manifold (42) in fluid communication with at least one fluid container (14), the at least one fluid container capable of containing a treatment material; a handpiece assembly (16) comprising a tip, the tip capable of contacting a skin surface of a subject; and a supply conduit (20) placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is capable of securing to the handpiece assembly; wherein the manifold is capable of controlling a flow of treatment material from the at least one fluid container through the supply conduit.

Regarding claim 17, Greenberg discloses (Figure 1) that the console comprises a display (front surface of console containing 52, 66), wherein the display comprises a user input device (30, 32, 42, 48, 50) capable of facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

Regarding claim 19, Greenberg discloses (Figure 2) that the at least one fluid container (18) is releasably coupled to the manifold (42).

EDGE-CARTESSA_0001716

Application/Control Number: 14/698,673                                        Page 8

Art Unit: 3734

### *Claim Rejections - 35 USC § 103*

8.      The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the manner in which the invention was made.

9.      Claims 5 and 18 are rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Greenberg (US 2003/0093089 A1) in view of Duchon et al. (US

2003/0018252 A1) ("Duchon").

Regarding claims 5 and 18, Greenberg discloses the invention substantially as

claimed.  However, Greenberg fails to disclose that the user input device comprises a

touch screen.

Duchon teaches that it was well-known in the art at the time the invention was

made for a console to include a touch screen user input (432).  Duchon teaches that a

touch screen is an equivalent structure to a selector dial, keypad, button, etc. that can

be used by a user for console input.

It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the user input device disclosed by Greenberg to be a

touch screen user input because Duchon teaches that a touch screen is an equivalent

structure to a input knob, button, keypad, dial, etc. that is known in the art for entering

input into a console system.

EDGE-CARTESSA_0001717

Application/Control Number: 14/698,673                                                    Page 9

Art Unit: 3734

10.      Claims 13 and 21 rejected under pre-AIA 35 U.S.C. 103(a) as being

unpatentable over Coleman et al. (US 2001/0049511 A1) ("Coleman") in view of Nelson

et al. (US 3,865,352) ("Nelson").

        Regarding claims 13 and 21, Coleman discloses the invention substantially as

claimed.  However, Coleman fails to disclose that the manifold of the console is

configured to be placed in fluid communication with a container comprising an

antimicrobial fluid, or other disinfecting agent for periodic flushing of the manifold.

        Nelson teaches a device for mixing and dispensing materials, comprising: a

manifold (25), the manifold in fluid communication with at least one fluid container (15,

16, 38), the at least one fluid container being configured to contain a fluid material; a

handpiece assembly (10); the manifold and the handpiece assembly in fluid

communication.  Nelson further teaches that the manifold of the console is in fluid

communication with a container (38) comprising a solvent for periodic flushing and

cleaning of the manifold.

        It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the manifold to be placed in fluid communication with a

container comprising a solvent for periodic flushing of the manifold, as taught by Nelson.

This modification would clean the manifold and supply conduit of the materials from the

at least one fluid container (Column 2, lines 18-22).

EDGE-CARTESSA_0001718

Application/Control Number: 14/698,673                                      Page 10

Art Unit: 3734

## *Conclusion*

11.     The prior art made of record and not relied upon is considered pertinent to

applicant's disclosure: Muldner (US 6,277,128 B1) (Figures 7 and 10), Rosso (US

6,432,114 B1) (Figures 1-3), Karasiuk (US 6,695,853 B2) (Figure 5), Chang (US

7,232,444 B2) (Figures 1-5), Goble et al. (US 2006/0116674 A1) (Figures 1-3).

12.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Christian Knauss whose telephone number is (571)272-

8641.  The examiner can normally be reached on M-F 8 am–5 pm.

If attempts to reach the examiner by telephone are unsuccessful, ***please contact***

***the examiner's supervisor, Darwin Erezo, at (571) 272-4695***.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

***If there are any inquiries that are not being addressed by first contacting***

***the Examiner or the Supervisor, you may send an email inquiry to***

TC3700_Workgroup_D_Inquiries@uspto.gov.

EDGE-CARTESSA_0001719

Application/Control Number: 14/698,673                                  Page 11
Art Unit: 3734

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/C. K./
Examiner, Art Unit 3734

/KATHERINE RODJOM/
Primary Examiner, Art Unit 3734

EDGE-CARTESSA_0001720

| | | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|---|
| **Notice of References Cited** | | 14/698,673 | IGNON ET AL. |
| | | Examiner | Art Unit | Page 1 of 1 |
| | | CHRISTIAN KNAUSS | 3734 | |

### U.S. PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Name | Classification |
|---|---|---|---|---|---|
| * | A | US-3,865,352 | 02-1975 | Nelson et al. | 366/336 |
| * | B | US-2003/0093089 | 05-2003 | Greenberg, Ronald Allan | 606/131 |
| * | C | US-2003/0018252 | 01-2003 | Duchon et al. | 600/432 |
| * | D | US-2001/0049511 | 12-2001 | COLEMAN et al. | 604/290 |
| * | E | US-6,277,128 | 08-2001 | Muldner, J. Scott | 606/133 |
| * | F | US-6,432,114 | 08-2002 | Rosso, Luciano | 606/131 |
| * | G | US-6,695,853 | 02-2004 | Karasiuk, Kenneth B. | 606/131 |
| * | H | US-2006/0116674 | 06-2006 | Goble et al. | 606/041 |
| * | I | US-7,232,444 | 06-2007 | Chang, Mei Yin | 606/131 |
| * | J | US-2006/0116674 | 06-2006 | Goble et al. | 606/041 |
| | K | US- | | | |
| | L | US- | | | |
| | M | US- | | | |

### FOREIGN PATENT DOCUMENTS

| * | | Document Number Country Code-Number-Kind Code | Date MM-YYYY | Country | Name | Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

### NON-PATENT DOCUMENTS

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)        **Notice of References Cited**        Part of Paper No. 20150722

EDGE-CARTESSA_0001721

PTO/SB/08 Equivalent

| | | | | | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application No. | 14/698,673 | |
| | | | Filing Date | April 28, 2015 | |
| | | | First Named Inventor | Ignon et al. | |
| | | | Art Unit | Unknown | |
| *(Multiple sheets used when necessary)* | | | Examiner | Unknown | |
| SHEET 1 OF 13 | | | Attorney Docket No. | EDGE.005C2 | |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,608,032 | 08-26-1952 | Garver | |
| | 2 | 2,701,559 | 02-05-1955 | Cooper | |
| | 3 | 2,712,823 | 07-12-1955 | Kurtin | |
| | 4 | 2,867,214 | 01-06-1959 | Wilson | |
| | 5 | 2,881,763 | 04-14-1959 | Robbins | |
| | 6 | 2,921,585 | 01-19-1960 | Schumann | |
| | 7 | 3,085,573 | 04-16-1963 | Meyer et al. | |
| | 8 | 3,214,869 | 11-02-1965 | Stryker | |
| | 9 | 3,476,112 | 11-04-1969 | Elstein | |
| | 10 | 3,574,239 | 04-13-1971 | Sollerud | |
| | 11 | 3,715,838 | 02-13-1973 | Young et al. | |
| | 12 | 3,948,265 | 04-06-1976 | Al Ami | |
| | 13 | 3,964,212 | 06-22-1976 | Karden | |
| | 14 | 3,977,084 | 08-31-1976 | Sloan | |
| | 15 | 4,121,388 | 10-24-1978 | Wilson | |
| | 16 | 4,155,721 | 05-22-1979 | Fletcher | |
| | 17 | 4,182,329 | 01-08-1980 | Smith et al. | |
| | 18 | 4,203,431 | 05-20-1980 | Abura et al. | |
| | 19 | 4,216,233 | 08-05-1980 | Stein | |
| | 20 | 4,299,219 | 11-10-1981 | Norris, Jr. | |
| | 21 | 4,378,804 | 04-05-1983 | Cortese | |
| | 22 | 4,560,373 | 12-24-1985 | Sugino et al. | |
| | 23 | 4,646,480 | 03-03-1987 | Williams | |
| | 24 | 4,646,482 | 03-03-1987 | Chitjian | |
| | 25 | 4,655,743 | 04-07-1987 | Hyde | |
| | 26 | 4,676,749 | 06-30-1987 | Mabille | |
| | 27 | 4,706,676 | 11-17-1987 | Peck | |
| | 28 | 4,754,756 | 07-05-1988 | Shelanski | |
| | 29 | 4,757,814 | 07-19-1988 | Wang et al. | |

| Examiner Signature | /Christian Knauss/ | | Date Considered | 07/23/2015 |
|---|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001722

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| | | | | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Application No. | 14/698,673 | |
| | | Filing Date | April 28, 2015 | |
| | | First Named Inventor | Ignon et al. | |
| | | Art Unit | Unknown | |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown | |
| SHEET 2 OF 13 | | Attorney Docket No. | EDGE.005C2 | |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 4,764,362 | 08-16-1988 | Barchas | |
| | 31 | 4,795,421 | 01-03-1989 | Blasius, Jr., et al. | |
| | 32 | 4,875,287 | 10-24-1989 | Creasy et al. | |
| | 33 | 4,886,078 | 12-12-1989 | Shiffman | |
| | 34 | 4,887,994 | 12-12-1989 | Shiffmann | |
| | 35 | 4,900,316 | 02-13-1990 | Yamamoto | |
| | 36 | 4,917,086 | 04-17-1990 | Feltovich et al. | |
| | 37 | 4,925,450 | 05-15-1990 | Imonti et al. | |
| | 38 | 4,957,747 | 09-18-1990 | Stiefel | |
| | 39 | 5,006,004 | 04-09-1991 | Dirksing et al. | |
| | 40 | 5,006,339 | 04-09-1991 | Bargery et al. | |
| | 41 | 5,012,797 | 05-07-1991 | Liang et al. | |
| | 42 | 5,035,089 | 07-30-1991 | Tillman et al. | |
| | 43 | 5,037,431 | 08-06-1991 | Summers et al. | |
| | 44 | 5,037,432 | 08-06-1991 | Molinari | |
| | 45 | 5,100,412 | 03-31-1992 | Rosso | |
| | 46 | 5,100,424 | 03-31-1992 | Jang | |
| | 47 | 5,119,839 | 06-09-1992 | Rudolph | |
| | 48 | 5,122,153 | 06-16-1992 | Harrel | |
| | 49 | 5,207,234 | 05-04-1993 | Rosso | |
| | 50 | 5,222,956 | 06-29-1993 | Waldron | |
| | 51 | 5,242,433 | 09-07-1993 | Smith et al. | |
| | 52 | 5,254,109 | 10-19-1993 | Smith et al. | |
| | 53 | 5,368,581 | 11-29-1994 | Smith et al. | |
| | 54 | 5,391,151 | 02-21-1995 | Wilmot | |
| | 55 | 5,417,674 | 05-23-1995 | Smith et al. | |
| | 56 | 5,419,772 | 05-30-1995 | Teitz et al. | |
| | 57 | 5,460,620 | 10-24-1995 | Smith et al. | |
| | 58 | 5,470,323 | 11-28-1995 | Smith et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*Examiner:* Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001723

Receipt date: 06/22/2015                                                14698673 - GAU: 3734

PTO/SB/08 Equivalent

| | | | | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | Application No. | 14/698,673 | |
| | | Filing Date | April 28, 2015 | |
| | | First Named Inventor | Ignon et al. | |
| | | Art Unit | Unknown | |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown | |
| SHEET 3 OF 13 | | Attorney Docket No. | EDGE.005C2 | |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 59 | 5,484,427 | 01-16-1996 | Gibbons | |
| | 60 | 5,562,642 | 10-08-1996 | Smith et al. | |
| | 61 | 5,611,687 | 03-18-1997 | Wagner | |
| | 62 | 5,612,797 | 03-18-1997 | Liang et al. | |
| | 63 | 5,674,235 | 10-07-1997 | Parisi | |
| | 64 | 5,676,643 | 10-14-1997 | Cann et al. | |
| | 65 | 5,676,648 | 10-14-1997 | Henley | |
| | 66 | 5,683,971 | 11-04-1997 | Rose et al. | |
| | 67 | 5,707,383 | 01-13-1998 | Bays | |
| | 68 | 5,713,785 | 02-03-1998 | Nishio | |
| | 69 | 5,759,185 | 06-02-1998 | Grinberg | |
| | 70 | 5,779,519 | 07-14-1998 | Oliver | |
| | 71 | 5,800,446 | 09-01-1998 | Banuchi | |
| | 72 | 5,807,353 | 09-15-1998 | Schmitz | |
| | 73 | 5,810,842 | 09-22-1998 | Di Fiore at al. | |
| | 74 | 5,813,416 | 09-29-1998 | Rudolph | |
| | 75 | 5,817,050 | 10-06-1998 | Klein | |
| | 76 | 5,846,215 | 12-08-1998 | Zygmont | |
| | 77 | 5,848,998 | 12-15-1998 | Marasco, Jr. | |
| | 78 | 5,861,142 | 01-19-1999 | Schick | |
| | 79 | 5,873,881 | 02-23-1999 | McEwen et al. | |
| | 80 | 5,879,323 | 03-09-1999 | Henley | |
| | 81 | 5,882,201 | 03-16-1999 | Salem | |
| | 82 | 5,885,260 | 03-23-1999 | Mehl, Sr., et al. | |
| | 83 | 5,908,401 | 06-01-1999 | Henley | |
| | 84 | 5,919,152 | 07-06-1999 | Zygmont | |
| | 85 | 5,954,730 | 09-21-1999 | Bernabei | |
| | 86 | 5,971,999 | 10-26-1999 | Naldoni | |
| | 87 | 5,980,555 | 11-09-1999 | Barbut et al. | |

| | | | |
|---|---|---|---|
| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |

*__Examiner:__ Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

1 Place a check mark in this area when an English language translation is attached.

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | |
|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 4 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 88 | 6,019,749 | 02-01-2000 | Fields et al. | |
| | 89 | 6,024,733 | 02-15-2000 | Eggers et al. | |
| | 90 | 6,027,402 | 02-22-2000 | Oliver | |
| | 91 | 6,039,745 | 03-21-2000 | Di Fiore et al. | |
| | 92 | 6,042,552 | 03-28-2000 | Cornier | |
| | 93 | 6,080,165 | 06-27-2000 | DeJacma | |
| | 94 | 6,080,166 | 06-27-2000 | McEwen et al. | |
| | 95 | 6,090,085 | 07-18-2000 | Mehl, Sr. Et al. | |
| | 96 | 6,120,512 | 09-19-2000 | Bernabei | |
| | 97 | 6,136,008 | 10-24-2000 | Becker et al. | |
| | 98 | 6,139,553 | 10-31-2000 | Dotan | |
| | 99 | 6,139,554 | 10-31-2000 | Karkar et al. | |
| | 100 | 6,142,155 | 11-07-2000 | Rudolph | |
| | 101 | 6,149,634 | 11-21-2000 | Bernabei | |
| | 102 | 6,159,226 | 12-12-2000 | Kim | |
| | 103 | 6,162,232 | 12-19-2000 | Shadduck | |
| | 104 | 6,183,451 | 02-06-2001 | Mehl, Sr., et al. | |
| | 105 | 6,183,483 | 02-06-2001 | Chang | |
| | 106 | 6,231,593 | 05-15-2001 | Meserol | |
| | 107 | 6,238,275 | 05-29-2001 | Metcalf et al. | |
| | 108 | 6,241,739 | 06-05-2001 | Waldron | |
| | 109 | 6,264,666 | 07-24-2001 | Coleman et al. | |
| | 110 | 6,277,128 | 08-21-2001 | Muldner | |
| | 111 | 6,283,978 | 09-04-2001 | Cheski et al. | |
| | 112 | 6,299,620 | 10-09-2001 | Shadduck | |
| | 113 | 6,306,119 | 10-23-2001 | Weber et al. | |
| | 114 | 6,306,147 | 10-23-2001 | Bernabei et al. | |
| | 115 | 6,322,568 | 11-27-2001 | Bernabei et al. | |
| | 116 | 6,368,333 | 04-09-2002 | Bernabei et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001725

Receipt date: 06/22/2015                                                                14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | | Application No. | 14/698,673 |
|---|---|---|---|---|
| | | | Filing Date | April 28, 2015 |
| | | | First Named Inventor | Ignon et al. |
| | | | Art Unit | Unknown |
| (Multiple sheets used when necessary) | | | Examiner | Unknown |
| SHEET 5 OF 13 | | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 117 | 6,387,103 | 05-14-2002 | Shadduck | |
| | 118 | 6,409,736 | 06-25-2002 | Bernabei | |
| | 119 | 6,410,599 | 06-25-2002 | Johnson | |
| | 120 | 6,414,032 | 07-02-2002 | Johnson | |
| | 121 | 6,420,431 | 07-16-2002 | Johnson | |
| | 122 | 6,423,078 | 07-23-2002 | Bays et al. | |
| | 123 | 6,423,750 | 07-23-2002 | Johnson | |
| | 124 | RE 37,796 | 07-23-2002 | Henley | |
| | 125 | 6,432,113 | 08-13-2002 | Parkin et al. | |
| | 126 | 6,471,712 | 10-29-2002 | Burres | |
| | 127 | 6,477,410 | 11-05-2002 | Henley et al. | |
| | 128 | 6,482,212 | 11-19-2002 | Bernabei et al. | |
| | 129 | 6,488,646 | 12-03-2002 | Zygmont | |
| | 130 | 6,494,856 | 12-17-2002 | Zygmont | |
| | 131 | 6,500,183 | 12-31-2002 | Waldron | |
| | 132 | 6,503,256 | 01-07-2003 | Parkin et al. | |
| | 133 | 6,511,486 | 01-28-2003 | Mercier et al. | |
| | 134 | 6,514,262 | 02-04-2003 | Di Fiore, et al. | |
| | 135 | 6,527,783 | 03-04-2003 | Ignon | |
| | 136 | 6,535,761 | 03-18-2003 | Bernabei | |
| | 137 | 6,540,757 | 04-01-2003 | Hruska et al. | |
| | 138 | 6,562,013 | 05-13-2003 | Marasco, Jr. | |
| | 139 | 6,562,050 | 05-13-2003 | Owen | |
| | 140 | 6,564,093 | 05-13-2003 | Ostrow et al. | |
| | 141 | 6,565,535 | 05-20-2003 | Zaias et al. | |
| | 142 | 6,582,442 | 06-24-2003 | Simon et al. | |
| | 143 | 6,592,595 | 07-15-2003 | Mallett et al. | |
| | 144 | 6,629,983 | 10-07-2003 | Ignon | |
| | 145 | 6,641,591 | 11-04-2003 | Shadduck | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001726

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| (Multiple sheets used when necessary) | Examiner | Unknown |
| SHEET 6 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>Number - Kind Code (if known)<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 146 | 6,645,184 | 11-11-2003 | Zelickson et al. | |
| | 147 | 6,652,888 | 11-25-2003 | Rhoades | |
| | 148 | 6,673,081 | 01-06-2004 | Tavger et al. | |
| | 149 | 6,673,082 | 01-06-2004 | Mallett et al. | |
| | 150 | 6,685,853 | 02-03-2004 | Angelopoulous et al. | |
| | 151 | 6,687,537 | 02-03-2004 | Bernabei | |
| | 152 | 6,695,853 | 02-24-2004 | Karasiuk | |
| | 153 | 6,735,470 | 05-11-2004 | Henley et al. | |
| | 154 | 6,743,215 | 06-01-2004 | Bernabei | |
| | 155 | 6,764,493 | 07-20-2004 | Weber et al. | |
| | 156 | 6,869,611 | 03-22-2005 | Kligman et al. | |
| | 157 | 6,905,487 | 06-14-2005 | Zimmerman | |
| | 158 | 6,911,031 | 06-28-2005 | Muldner | |
| | 159 | 6,924,649 | 08-02-2005 | Knoedgen | |
| | 160 | 6,926,681 | 08-09-2005 | Ramey, et al. | |
| | 161 | 6,942,649 | 09-13-2005 | Ignon et al. | |
| | 162 | 7,001,355 | 02-21-2006 | Nunomura et al. | |
| | 163 | 7,004,933 | 02-28-2006 | McCaniel | |
| | 164 | 7,044,938 | 05-16-2006 | La Bianco et al. | |
| | 165 | 7,052,503 | 05-30-2006 | Bernabei | |
| | 166 | 7,069,073 | 06-27-2006 | Henley et al. | |
| | 167 | 7,070,488 | 07-04-2006 | Suissa et al. | |
| | 168 | 7083,580 | 08-01-2006 | Bernabei | |
| | 169 | 7,087,063 | 08-08-2006 | Carson et al. | |
| | 170 | 7,094,252 | 08-22-2006 | Koop | |
| | 171 | 7,115,275 | 10-03-2006 | Clarot et al. | |
| | 172 | 7,135,011 | 11-14-2006 | Powers et al. | |
| | 173 | 7,153,311 | 12-26-2006 | Chung | |
| | 174 | 7,197,359 | 03-27-2007 | Tokudome et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| | | | |
|---|---|---|---|
| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 | |
| | Filing Date | April 28, 2015 | |
| | First Named Inventor | Ignon et al. | |
| | Art Unit | Unknown | |
| (Multiple sheets used when necessary) | Examiner | Unknown | |
| SHEET 7 OF 13 | Attorney Docket No. | EDGE.005C2 | |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 175 | 7,198,623 | 04-03-2007 | Fischer et al. | |
| | 176 | 7,241,208 | 07-10-2007 | Suissa et al. | |
| | 177 | 7,276,051 | 10-02-2007 | Henley et al. | |
| | 178 | 7,314,326 | 01-01-2008 | Rosenberg | |
| | 179 | 7,316,657 | 01-08-2008 | Kleinhenz et al. | |
| | 180 | 7,318,828 | 01-15-2008 | Revivo | |
| | 181 | 7,320,691 | 01-22-2008 | Pilcher et al. | |
| | 182 | 7,320,801 | 01-22-2008 | Kelly | |
| | 183 | 7,354,423 | 04-08-2008 | Zelickson et al. | |
| | 184 | 7,364,565 | 04-29-2008 | Freeman | |
| | 185 | 7,384,405 | 06-10-2008 | Rhoades | |
| | 186 | 7,427,273 | 09-23-2008 | Mitsui | |
| | 187 | 7,458,944 | 12-02-2008 | Liste et al. | |
| | 188 | 7,476,205 | 01-13-2009 | Erdmann | |
| | 189 | 7,477,938 | 01-13-2009 | Sun et al. | |
| | 190 | 7,482,314 | 01-27-2009 | Grimes et al. | |
| | 191 | 7,489,989 | 02-10-2009 | Sukhanov et al. | |
| | 192 | 7,507,228 | 03-24-2009 | Sun et al. | |
| | 193 | 7,582,067 | 09-01-2009 | Van Acker | |
| | 194 | 7,597,900 | 10-06-2009 | Zimmer et al. | |
| | 195 | 7,597,901 | 10-06-2009 | Clarot et al. | |
| | 196 | 7,658,742 | 02-09-2010 | Karasiuk | |
| | 197 | 7,678,120 | 03-16-2010 | Shadduck | |
| | 198 | 7,744,582 | 06-29-2010 | Sadowski et al. | |
| | 199 | 7,789,886 | 09-07-2010 | Shadduck | |
| | 200 | 7,837,695 | 11-23-2010 | Hart et al. | |
| | 201 | 7,901,373 | 03-08-2011 | Tavger | |
| | 202 | 7,951,156 | 05-31-2011 | Karasiuk | |
| | 203 | 8,025,669 | 09-27-2011 | David et al. | |

| | | | | |
|---|---|---|---|---|
| Examiner Signature | /Christian Knauss/ | | Date Considered | 07/23/2015 |

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001728

Receipt date: 06/22/2015                                                                14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| (Multiple sheets used when necessary) | | Examiner | Unknown |
| SHEET 8 OF 13 | | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 204 | 8,048,089 | 11-01-2011 | Ignon et al. | |
| | 205 | RE42960 | 11-22-2011 | Waldron | |
| | 206 | 8,066,716 | 11-29-2011 | Shadduck | |
| | 207 | 8,088,085 | 01-03-2012 | Thiebaut et al. | |
| | 208 | 8,128,638 | 03-06-2012 | Karasiuk et al. | |
| | 209 | 8,221,437 | 07-17-2012 | Waldron et al. | |
| | 210 | 8,236,008 | 08-07-2012 | Boone, III et al. | |
| | 211 | 8,277,287 | 10-02-2012 | Hart | |
| | 212 | 8,337,513 | 12-25-2012 | Shadduck | |
| | 213 | 8,343,116 | 01-01-2013 | Ignon et al. | |
| | 214 | 8,814,836 | 08-26-2014 | Ignon et al. | |
| | 215 | 2001/0023351 | 09-20-2001 | Eilers | |
| | 216 | 2001/0049511 | 12-06-2001 | Coleman et al. | |
| | 217 | 2002/0016601 | 02-07-2002 | Shadduck | |
| | 218 | 2002/0041891 | 04-11-2002 | Cheski | |
| | 219 | 2002/0058952 | 05-16-2002 | Weber et al. | |
| | 220 | 2002/0107527 | 08-08-2002 | Burres | |
| | 221 | 2002/0133110 | 09-19-2002 | Citow | |
| | 222 | 2002/0151826 | 10-17-2002 | Ramey et al | |
| | 223 | 2002/0188261 | 12-12-2002 | Hruska | |
| | 224 | 2003/0012415 | 01-16-2003 | Cossel | |
| | 225 | 2003/0060834 | 03-27-2003 | Muldner | |
| | 226 | 2003/0093040 | 05-15-2003 | Mikszta et al. | |
| | 227 | 2003/0093089 | 05-15-2003 | Greenberg | |
| | 228 | 2003/0097139 | 05-22-2003 | Karasiuk | |
| | 229 | 2003/0187462 | 10-14-2003 | Chang | |
| | 230 | 2003/0208159 | 11-06-2003 | Ignon, et al. | |
| | 231 | 2003/0212127 | 11-13-2003 | Glassman et al. | |
| | 232 | 2003/0212415 | 11-13-2003 | Karasiuk | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001729

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 9 OF 13 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 233 | 2004/0010222 | 01-15-2004 | Nunomura et al. | |
| | 234 | 2004/0010269 | 01-15-2004 | Grimes et al. | |
| | 235 | 2004/0087972 | 05-06-2004 | Mulholland, et al. | |
| | 236 | 2004/0092895 | 05-13-2004 | Harmon | |
| | 237 | 2004/0097967 | 05-20-2004 | Ignon | |
| | 238 | 2004/0122447 | 06-24-2004 | Harmon et al. | |
| | 239 | 2004/0143274 | 07-22-2004 | Shadduck | |
| | 240 | 2004/0166172 | 08-26-2004 | Rosati et al. | |
| | 241 | 2004/0219179 | 11-04-2004 | McDaniel | |
| | 242 | 2004/0236291 | 11-25-2004 | Zelickson et al. | |
| | 243 | 2004/0243149 | 12-02-2004 | Lee, John B. JR. | |
| | 244 | 2004/0267285 | 12-30-2004 | Chang | |
| | 245 | 2005/0037034 | 02-17-2005 | Rhoades | |
| | 246 | 2005/0038448 | 02-17-2005 | Chung | |
| | 247 | 2005/0059940 | 03-17-2005 | Weber et al. | |
| | 248 | 2005/0084509 | 04-21-2005 | Bernstein | |
| | 249 | 2005/0148958 | 07-07-2005 | Rucinski | |
| | 250 | 2005/0203111 | 09-15-2005 | David | |
| | 251 | 2005/0209611 | 09-22-2005 | Greenberg | |
| | 252 | 2005/0283176 | 12-22-2005 | Law | |
| | 253 | 2006/0002960 | 01-05-2006 | Zoeteweij et al. | |
| | 254 | 2006/0191562 | 08-31-2006 | Numomura | |
| | 255 | 2006/0200099 | 09-07-2006 | La Bianco et al. | |
| | 256 | 2006/0200172 | 09-07-2006 | Shadduck | |
| | 257 | 2006/0200173 | 09-07-2006 | Shadduck | |
| | 258 | 2006/0212029 | 09-21-2006 | Arcusa Villacampa et al. | |
| | 259 | 2006/0253125 | 11-09-2006 | Ignon | |
| | 260 | 2006/0264893 | 11-23-2006 | Sage, Jr. et al. | |
| | 261 | 2007/0005078 | 01-04-2007 | Hart et al. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001730

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 10 OF 13 | | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 262 | 2007/0043382 | 02-22-2007 | Cheney | |
| | 263 | 2007/0065515 | 03-22-2007 | Key | |
| | 264 | 2007/0123808 | 03-31-2007 | Rhoades | |
| | 265 | 2007/0088371 | 04-19-2007 | Karasiuk | |
| | 266 | 2007/0154502 | 07-05-2007 | Hattendorf et al. | |
| | 267 | 2007/0156124 | 07-05-2007 | Ignon et al. | |
| | 268 | 2007/0178121 | 08-02-2007 | First et al. | |
| | 269 | 2007/0198031 | 08-23-2007 | Kellogg | |
| | 270 | 2007/0208353 | 09-06-2007 | Shadduck | |
| | 271 | 2007/0239173 | 10-11-2007 | Khalaj | |
| | 272 | 2008/0027328 | 01-31-2008 | Klopotek et al. | |
| | 273 | 2008/0091179 | 04-17-2008 | Durkin et al. | |
| | 274 | 2008/0119781 | 05-22-2008 | King | |
| | 275 | 2008/0132914 | 06-05-2008 | Bossard et al. | |
| | 276 | 2008/0139974 | 06-12-2008 | Da Silva | |
| | 277 | 2008/0193493 | 08-14-2008 | Rhoades | |
| | 278 | 2008/0200861 | 08-21-2008 | Shalev et al. | |
| | 279 | 2008/0214987 | 09-04-2008 | Xu | |
| | 280 | 2008/0215068 | 09-04-2008 | Hart et al. | |
| | 281 | 2008/0243039 | 10-02-2008 | Rhoades | |
| | 282 | 2008/0287864 | 11-20-2008 | Rosenberg | |
| | 283 | 2008/0300529 | 12-04-2008 | Reinstein | |
| | 284 | 2008/0300552 | 12-04-2008 | Cichocki et al. | |
| | 285 | 2009/0048557 | 02-19-2009 | Yeshurun et al. | |
| | 286 | 2009/0053390 | 02-26-2009 | Sakou et al. | |
| | 287 | 2009/0099091 | 04-16-2009 | Hantash | |
| | 288 | 2009/0099093 | 04-16-2009 | Hantash | |
| | 289 | 2009/0124985 | 05-14-2009 | Hasenoehrl et al. | |
| | 290 | 2009/0138026 | 05-28-2009 | Wu | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001731

Receipt date: 06/22/2015                                                                 14698673 - GAU: 3734

PTO/SB/08 Equivalent

| | | Application No. | 14/698,673 |
|---|---|---|---|
| **INFORMATION DISCLOSURE** | | Filing Date | April 28, 2015 |
| **STATEMENT BY APPLICANT** | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 11 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 291 | 2009/0177171 | 07-09-2009 | Ignon et al. | |
| | 292 | 2009/0192442 | 07-30-2009 | Ignon et al. | |
| | 293 | 2009/0222023 | 09-03-2009 | Boone, III et al. | |
| | 294 | 2010/0045427 | 02-25-2010 | Boone, III et al. | |
| | 295 | 2010/0049177 | 02-25-2010 | Boone, III et al. | |
| | 296 | 2010/0049210 | 02-25-2010 | Boone, III et al. | |
| | 297 | 2011/0054490 | 03-03-2011 | Hart | |
| | 298 | 2011/0066162 | 03-17-2011 | Cohen | |
| | 299 | 2011/0082415 | 04-07-2011 | Ignon et al. | |
| | 300 | 2012/0022435 | 01-26-2012 | Ignon et al. | |
| | 301 | 2012/0136374 | 03-31-2012 | Karasiuk | |
| | 302 | 2013/0018317 | 01-17-2013 | Bobroff et al. | |
| | 303 | 2013/0066336 | 03-14-2013 | Boone, III et al. | |
| | 304 | 2013/0096577 | 04-18-2013 | Shadduck | |
| | 305 | 2013/0102978 | 04-25-2013 | Ignon et al. | |
| | 306 | 2013/0144280 | 06-06-2013 | Eckhouse et al. | |
| | 307 | 2013/0158547 | 06-20-2013 | David | |
| | 308 | 2014/0343481 | 11-20-2014 | Ignon | |
| | 309 | 2014/0343574 | 11-20-2014 | Ignon et al. | |
| | 310 | 2015/0032047 | 01-29-2015 | Ignon et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document<br>*Country Code-Number-Kind Code*<br>Example: JP 1234567 A1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 311 | DD 234 608 | 04-09-1986 | Rath | | |
| | 312 | DE 34 21 390 A1 | 12-12-1985 | Schubert | | |
| | 313 | DE 10 2004 015815 A1 | 11-03-2005 | Bundersrepublik Deutschland | | |
| | 314 | EP 0 258 901 | 09-03-1987 | Tonokura Ika Kogyo Co. LTD | | |
| | 315 | EP 0 564 392 | 03-03-1993 | Fructuoso Martinez | | |
| | 316 | IT 553 076 | 12-01-1956 | Facconi | | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*__Examiner:__ Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /C.K./

EDGE-CARTESSA_0001732

Receipt date: 06/22/2015

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 12 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | 317 | IT 118 49 22 | 03-22-1985 | Porqueddu | | |
| | 318 | JP1993-088552 | 12-03-1993 | Sumitomo Bakelite Co., Ltd. | | X |
| | 319 | JP09-294747 | 11-18-1997 | Fukutaro, Yamazaki | | X Abstract |
| | 320 | JP2003-339713 | 12-02-2003 | Twinbird Corp | | |
| | 321 | JP2006-503627 (English abstract of WO 2004/037098) | 02-02-2006 | Bionoface | | X Abstract |
| | 322 | JP2006-204767 | 10-08-2006 | Matsushita Electric Works | | X Abstract |
| | 323 | KR 20-0280320 (with English machine translation obtained from Korean Intellectual Property Office website, http://eng.kipris.or.kr/enghome/main.jsp) | 07-02-2002 | Lee | | X |
| | 324 | WO 2000/015300 | 03-23-2000 | Ultra Cure Ltd | | |
| | 325 | WO 2001/93931 | 12-13-2001 | Becton, Dickinson and Company | | |
| | 326 | WO 2003/073917 | 09-12-2003 | Edge Systems | | |
| | 327 | WO 2004/037098 | 05-06-2004 | Bionoface | | |
| | 328 | WO 2005/070313 | 08-04-2005 | Crystal Clear International Limited | | |
| | 329 | WO 2006/018731 | 02-23-2006 | Mc Anton Holding SA | | |
| | 330 | WO 2007/114904 | 10-11-2007 | Amcol International Corporation | | |
| | 331 | WO 2012/145667 | 10-26-2012 | Sun-Less, Inc. | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | 332 | Cox III et al., *Decreased Splatter in Dermabrasion*, Arch Facial Plastic Surgery, Jan-Mar 2000, Vol. 2, pp. 23-26. | |
| | 333 | Ditre et al., *Effect of α-hydroxy acids on photoaged skin: A pilot clinical, histologic, and ultrastructural study*, Journal of American Academy of Dermatology, February 1996, Vol. 34, No. 2, Part 1, pp. 187-195. | |

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001733

Receipt date: 06/22/2015

14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 13 OF 13 | Attorney Docket No. | EDGE.005C2 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
| | 334 | Harris et al., *Combining Manual Dermasanding with Low Stregnth Trichloroacetic Acid to Improve Antinically Injured Skin*, The Journal of Dermatologic Surgery and Oncology, July 1994, Vol. 20, No. 7, pp. 436-442. | |

20778469

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/27/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001734

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 29 | (roger near2 ignon).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:00 |
| S2 | 101 | (scott near2 mallett).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:04 |
| S3 | 3 | (abraham near2 solano).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:06 |
| S4 | 100 | (william near2 cohen).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:07 |
| S5 | 24 | (edge near2 systems).as. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:09 |
| S6 | 310 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US- | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:14 |

EDGE-CARTESSA_0001735

Case 2:20-cv-06082-GRB-ST    Document 92-4    Filed 11/17/22    Page 301 of 574 PageID #: 11613

5674235-$.DID. OR US-5676643-$.DID. OR
US-5676648-$.DID. OR US-5683971-$.DID.
OR US-5707383-$.DID. OR US-5713785-
$.DID. OR US-5759185-$.DID. OR US-
5779519-$.DID. OR US-5800446-$.DID. OR
US-5807353-$.DID. OR US-5810842-$.DID.
OR US-5813416-$.DID. OR US-5817050-
$.DID. OR US-5846215-$.DID. OR US-
5848998-$.DID. OR US-5861142-$.DID. OR
US-5873881-$.DID. OR US-5879323-$.DID.
OR US-5882201-$.DID. OR US-5885260-
$.DID. OR US-5908401-$.DID. OR US-
5919152-$.DID. OR US-5954730-$.DID. OR
US-5971999-$.DID. OR US-5980555-$.DID.
OR US-6019749-$.DID. OR US-6024733-
$.DID. OR US-6027402-$.DID. OR US-
6039745-$.DID. OR US-6042552-$.DID. OR
US-6080165-$.DID. OR US-6080166-$.DID.
OR US-6090085-$.DID. OR US-6120512-
$.DID. OR US-6136008-$.DID. OR US-
6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID.
OR US-6159226-$.DID. OR US-6162232-
$.DID. OR US-6183451-$.DID. OR US-
6183483-$.DID. OR US-6231593-$.DID. OR
US-6238275-$.DID. OR US-6241739-$.DID.
OR US-6264666-$.DID. OR US-6277128-
$.DID. OR US-6283978-$.DID. OR US-
6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID.
OR US-6368333-$.DID. OR US-6387103-
$.DID. OR US-6409736-$.DID. OR US-
6410599-$.DID. OR US-6414032-$.DID. OR
US-6420431-$.DID. OR US-6423078-$.DID.
OR US-6423750-$.DID. OR US-6432113-
$.DID. OR US-6471712-$.DID. OR US-
6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID.
OR US-6500183-$.DID. OR US-6503256-
$.DID. OR US-6511486-$.DID. OR US-
6514262-$.DID. OR US-6527783-$.DID. OR
US-6535761-$.DID. OR US-6540757-$.DID.
OR US-6562013-$.DID. OR US-6562050-
$.DID. OR US-6564093-$.DID. OR US-
6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID.
OR US-6641591-$.DID. OR US-6645184-
$.DID. OR US-6652888-$.DID. OR US-
6673081-$.DID. OR US-6673082-$.DID. OR
US-6685853-$.DID. OR US-6687537-$.DID.
OR US-6695853-$.DID. OR US-6735470-
$.DID. OR US-6743215-$.DID. OR US-
6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID.
OR US-6924649-$.DID. OR US-6926681-
$.DID. OR US-6942649-$.DID. OR US-
7001355-$.DID. OR US-7004933-$.DID. OR
US-7044938-$.DID. OR US-7052503-$.DID.
OR US-7069073-$.DID. OR US-7070488-
$.DID. OR US-7083580-$.DID. OR US-
7087063-$.DID. OR US-7094252-$.DID. OR
US-7115275-$.DID. OR US-7135011-$.DID.
OR US-7153311-$.DID. OR US-7197359-
$.DID. OR US-7198623-$.DID. OR US-

EDGE-CARTESSA_0001736

7241208-$.DID. OR US-7276051-$.DID. OR
US-7314326-$.DID. OR US-7316657-$.DID.
OR US-7318828-$.DID. OR US-7320691-
$.DID. OR US-7320801-$.DID. OR US-
7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID.
OR US-7458944-$.DID. OR US-7476205-
$.DID. OR US-7477938-$.DID. OR US-
7482314-$.DID. OR US-7489989-$.DID. OR
US-7507228-$.DID. OR US-7582067-$.DID.
OR US-7597900-$.DID. OR US-7597901-
$.DID. OR US-7658742-$.DID. OR US-
7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID.
OR US-7901373-$.DID. OR US-7951156-
$.DID. OR US-8025669-$.DID. OR US-
8048089-$.DID. OR US-8066716-$.DID. OR
US-8088085-$.DID. OR US-8128638-$.DID.
OR US-8221437-$.DID. OR US-8236008-
$.DID. OR US-8277287-$.DID. OR US-
8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-
20020188261-$.DID. OR US-20030012415-
$.DID. OR US-20030060834-$.DID. OR US-
20030093040-$.DID. OR US-20030093089-
$.DID. OR US-20030097139-$.DID. OR US-
20030187462-$.DID. OR US-20030208159-
$.DID. OR US-20030212127-$.DID. OR US-
20030212415-$.DID. OR US-20040010222-
$.DID. OR US-20040010269-$.DID. OR US-
20040087972-$.DID. OR US-20040092895-
$.DID. OR US-20040097967-$.DID. OR US-
20040122447-$.DID. OR US-20040143274-
$.DID. OR US-20040166172-$.DID. OR US-
20040219179-$.DID. OR US-20040236291-
$.DID. OR US-20040243149-$.DID. OR US-
20040267285-$.DID. OR US-20050037034-
$.DID. OR US-20050038448-$.DID. OR US-
20050059940-$.DID. OR US-20050084509-
$.DID. OR US-20050148958-$.DID. OR US-
20050203111-$.DID. OR US-20050209611-
$.DID. OR US-20050283176-$.DID. OR US-
20060002960-$.DID. OR US-20060191562-
$.DID. OR US-20060200099-$.DID. OR US-
20060200172-$.DID. OR US-20060200173-
$.DID. OR US-20060212029-$.DID. OR US-
20060253125-$.DID. OR US-20060264893-
$.DID. OR US-20070005078-$.DID. OR US-
20070043382-$.DID. OR US-20070065515-
$.DID. OR US-20070123808-$.DID. OR US-
20070088371-$.DID. OR US-20070154502-
$.DID. OR US-20070156124-$.DID. OR US-
20070178121-$.DID. OR US-20070198031-
$.DID. OR US-20070208353-$.DID. OR US-
20070239173-$.DID. OR US-20080027328-
$.DID. OR US-20080091179-$.DID. OR US-
20080119781-$.DID. OR US-20080132914-
$.DID. OR US-20080139974-$.DID. OR US-
20080193493-$.DID. OR US-20080200861-

EDGE-CARTESSA_0001737

| | | | | | | |
|---|---|---|---|---|---|---|
| | | $.DID. OR US-20080214987-$.DID. OR US-20080215068-$.DID. OR US-20080243039-$.DID. OR US-20080287864-$.DID. OR US-20080300529-$.DID. OR US-20080300552-$.DID. OR US-20090048557-$.DID. OR US-20090053390-$.DID. OR US-20090099091-$.DID. OR US-20090099093-$.DID. OR US-20090124985-$.DID. OR US-20090138026-$.DID. OR US-20090177171-$.DID. OR US-20090192442-$.DID. OR US-20090222023-$.DID. OR US-20100045427-$.DID. OR US-20100049177-$.DID. OR US-20100049210-$.DID. OR US-20110054490-$.DID. OR US-20110066162-$.DID. OR US-20110082415-$.DID. OR US-20120022435-$.DID. OR US-20120136374-$.DID. OR US-20130018317-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID. OR JP-12022003-$.DID. OR JP-2006503627-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID. | | | | |
| S7 | 316 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:15 |

EDGE-CARTESSA_0001738

Case 2:20-cv-06082-GRB-ST    Document 92-4    Filed 11/17/22    Page 304 of 574 PageID #: 11616

US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US-5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR US-5807353-$.DID. OR US-5810842-$.DID. OR US-5813416-$.DID. OR US-5817050-$.DID. OR US-5846215-$.DID. OR US-5848998-$.DID. OR US-5861142-$.DID. OR US-5873881-$.DID. OR US-5879323-$.DID. OR US-5882201-$.DID. OR US-5885260-$.DID. OR US-5908401-$.DID. OR US-5919152-$.DID. OR US-5954730-$.DID. OR US-5971999-$.DID. OR US-5980555-$.DID. OR US-6019749-$.DID. OR US-6024733-$.DID. OR US-6027402-$.DID. OR US-6039745-$.DID. OR US-6042552-$.DID. OR US-6080165-$.DID. OR US-6080166-$.DID. OR US-6090085-$.DID. OR US-6120512-$.DID. OR US-6136008-$.DID. OR US-6139553-$.DID. OR US-6139554-$.DID. OR US-6142155-$.DID. OR US-6149634-$.DID. OR US-6159226-$.DID. OR US-6162232-$.DID. OR US-6183451-$.DID. OR US-6183483-$.DID. OR US-6231593-$.DID. OR US-6238275-$.DID. OR US-6241739-$.DID. OR US-6264666-$.DID. OR US-6277128-$.DID. OR US-6283978-$.DID. OR US-6299620-$.DID. OR US-6306119-$.DID. OR US-6306147-$.DID. OR US-6322568-$.DID. OR US-6368333-$.DID. OR US-6387103-$.DID. OR US-6409736-$.DID. OR US-6410599-$.DID. OR US-6414032-$.DID. OR US-6420431-$.DID. OR US-6423078-$.DID. OR US-6423750-$.DID. OR US-6432113-$.DID. OR US-6471712-$.DID. OR US-6477410-$.DID. OR US-6482212-$.DID. OR US-6488646-$.DID. OR US-6494856-$.DID. OR US-6500183-$.DID. OR US-6503256-$.DID. OR US-6511486-$.DID. OR US-6514262-$.DID. OR US-6527783-$.DID. OR US-6535761-$.DID. OR US-6540757-$.DID. OR US-6562013-$.DID. OR US-6562050-$.DID. OR US-6564093-$.DID. OR US-6565535-$.DID. OR US-6582442-$.DID. OR US-6592595-$.DID. OR US-6629983-$.DID. OR US-6641591-$.DID. OR US-6645184-$.DID. OR US-6652888-$.DID. OR US-6673081-$.DID. OR US-6673082-$.DID. OR US-6685853-$.DID. OR US-6687537-$.DID. OR US-6695853-$.DID. OR US-6735470-$.DID. OR US-6743215-$.DID. OR US-6764493-$.DID. OR US-6869611-$.DID. OR US-6905487-$.DID. OR US-6911031-$.DID. OR US-6924649-$.DID. OR US-6926681-$.DID. OR US-6942649-$.DID. OR US-7001355-$.DID. OR US-7004933-$.DID. OR US-7044938-$.DID. OR US-7052503-$.DID. OR US-7069073-$.DID. OR US-7070488-$.DID. OR US-7083580-$.DID. OR US-7087063-$.DID. OR US-7094252-$.DID. OR

EDGE-CARTESSA_0001739

US-7115275-$.DID. OR US-7135017-$.DID. OR US-7153311-$.DID. OR US-7197359-$.DID. OR US-7198623-$.DID. OR US-7241208-$.DID. OR US-7276051-$.DID. OR US-7314326-$.DID. OR US-7316657-$.DID. OR US-7318828-$.DID. OR US-7320691-$.DID. OR US-7320801-$.DID. OR US-7354423-$.DID. OR US-7364565-$.DID. OR US-7384405-$.DID. OR US-7427273-$.DID. OR US-7458944-$.DID. OR US-7476205-$.DID. OR US-7477938-$.DID. OR US-7482314-$.DID. OR US-7489989-$.DID. OR US-7507228-$.DID. OR US-7582067-$.DID. OR US-7597900-$.DID. OR US-7597901-$.DID. OR US-7658742-$.DID. OR US-7678120-$.DID. OR US-7744582-$.DID. OR US-7789886-$.DID. OR US-7837695-$.DID. OR US-7901373-$.DID. OR US-7951156-$.DID. OR US-8025669-$.DID. OR US-8048089-$.DID. OR US-8066716-$.DID. OR US-8088085-$.DID. OR US-8128638-$.DID. OR US-8221437-$.DID. OR US-8236008-$.DID. OR US-8277287-$.DID. OR US-8337513-$.DID. OR US-8343116-$.DID. OR US-8814836-$.DID. OR US-20010023351-$.DID. OR US-20010049511-$.DID. OR US-20020016601-$.DID. OR US-20020041891-$.DID. OR US-20020058952-$.DID. OR US-20020107527-$.DID. OR US-20020133110-$.DID. OR US-20020151826-$.DID. OR US-20020188261-$.DID. OR US-20030012415-$.DID. OR US-20030060834-$.DID. OR US-20030093040-$.DID. OR US-20030093089-$.DID. OR US-20030097139-$.DID. OR US-20030187462-$.DID. OR US-20030208159-$.DID. OR US-20030212127-$.DID. OR US-20030212415-$.DID. OR US-20040010222-$.DID. OR US-20040010269-$.DID. OR US-20040087972-$.DID. OR US-20040092895-$.DID. OR US-20040097967-$.DID. OR US-20040122447-$.DID. OR US-20040143274-$.DID. OR US-20040166172-$.DID. OR US-20040219179-$.DID. OR US-20040236291-$.DID. OR US-20040243149-$.DID. OR US-20040267285-$.DID. OR US-20050037034-$.DID. OR US-20050038448-$.DID. OR US-20050059940-$.DID. OR US-20050084509-$.DID. OR US-20050148958-$.DID. OR US-20050203111-$.DID. OR US-20050209611-$.DID. OR US-20050283176-$.DID. OR US-20060002960-$.DID. OR US-20060191562-$.DID. OR US-20060200099-$.DID. OR US-20060200172-$.DID. OR US-20060200173-$.DID. OR US-20060212029-$.DID. OR US-20060253125-$.DID. OR US-20060264893-$.DID. OR US-20070005078-$.DID. OR US-20070043382-$.DID. OR US-20070065515-$.DID. OR US-20070123808-$.DID. OR US-20070088371-$.DID. OR US-20070154502-$.DID. OR US-20070156124-$.DID. OR US-20070178121-$.DID. OR US-20070198031-$.DID. OR US-20070208353-$.DID. OR US-20070239173-$.DID. OR US-20080027328-$.DID. OR US-20080091179-$.DID. OR US-

EDGE-CARTESSA_0001740

20080119781-$.DID. OR US-20080132004-$.DID. OR US-20080139974-$.DID. OR US-20080193493-$.DID. OR US-20080200861-$.DID. OR US-20080214987-$.DID. OR US-20080215068-$.DID. OR US-20080243039-$.DID. OR US-20080287864-$.DID. OR US-20080300529-$.DID. OR US-20080300552-$.DID. OR US-20090048557-$.DID. OR US-20090053390-$.DID. OR US-20090099091-$.DID. OR US-20090099093-$.DID. OR US-20090124985-$.DID. OR US-20090138026-$.DID. OR US-20090177171-$.DID. OR US-20090192442-$.DID. OR US-20090222023-$.DID. OR US-20100045427-$.DID. OR US-20100049177-$.DID. OR US-20100049210-$.DID. OR US-20110054490-$.DID. OR US-20110066162-$.DID. OR US-20110082415-$.DID. OR US-20120022435-$.DID. OR US-20120136374-$.DID. OR US-20130018317-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID. OR JP-12022003-$.DID. OR JP-2006503627-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID.

| | | | | | | |
|---|---|---|---|---|---|---|
| S8 | 0 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:57 |
| S9 | 484 | (console and manifold and fluid and container and hand$7 and (conduit tube) and vacuum) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 11:04 |
| S10 | 498 | A61B17/54.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:13 |
| S11 | 136 | A61B17/545.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:29 |
| S12 | 583 | A61B19/0248.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:43 |
| S13 | 511 | A61B2019/025.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:50 |
| S14 | 1159 | A61B2017/00199.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:59 |
| S15 | 955 | A61B2017/00017.cpc. | US-PGPUB; | OR | ON | 2015/07/21 13:15 |

EDGE-CARTESSA_0001741

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S16 | 2160 | A61B2217/005.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S17 | 1269 | A61B2217/007.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S18 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/21 16:03 |
| S19 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 08:38 |
| S20 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:07 |
| S21 | 51 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6238275" \| "6303119").PN. OR ("6527783").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S22 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S23 | 42 | ("20010023351" \| "4572187" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5354307" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6162232" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6299620" \| "6319211" \| "6391034" \| "6423078" \| "6432113" \| "6629983" \| "6652888").PN. OR ("6942649").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:16 |
| S24 | 38 | ("5037432" \| "5100412" \| "5810842" \| "5971999").PN. OR ("6080165").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:17 |
| S25 | 43 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6196982" \| "6235039" \| "6241739" \| "6250996" | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |

EDGE-CARTESSA_0001742

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "6319211").PN. OR ("6592595").URPN. | | | | |
| S26 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S27 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:37 |
| S28 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:38 |
| S29 | 38 | ("2608032" \| "2921585" \| "3574239" \| "3715838" \| "4375740" \| "4482322" \| "4560373" \| "4646480" \| "4671867" \| "4676749" \| "4757814" \| "4765099" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5309683" \| "5460604" \| "5547376" \| "5765759" \| "5810587" \| "5810842" \| "6039745").PN. OR ("6277128").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:39 |
| S30 | 14 | ("3815286" \| "5037431" \| "6183148" \| "6193589" \| "6235039" \| "6238275" \| "6322568").PN. OR ("6503256").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:41 |
| S31 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:44 |
| S32 | 82 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:46 |
| S33 | 107 | ("2608032" \| "2921585" \| "3085573" \| "3574239" \| "3715838" \| "4560373" \| "4646480" \| "4676749" \| "4757814").PN. OR ("5037432").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:53 |
| S34 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:55 |

EDGE-CARTESSA_0001743

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | | | | |
| S35 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 14:45 |
| S36 | 6 | (manifold same container same (antimicrobial disenfect$4)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:29 |
| S37 | 140 | (manifold same container same (antimicrobial disenfect$4 surfactant sanitiz$5)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:32 |
| S38 | 378 | (manifold with (clean$4 sanitiz$4) with container) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:44 |
| S39 | 12 | (manifold with (clean$4 sanitiz$4) with container) and (abrasion or microabrasion) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:45 |
| S40 | 17 | ("2894732" \| "3378234" \| "3468637").PN. OR ("3865352").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 09:24 |
| S41 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:06 |
| S42 | 15 | ("20010023351" \| "20030093089" \| "20060116674" \| "20070156124" \| "6250996" \| "7232444" \| "7651508" \| "D286920" \| "D286921" \| "D321340" \| "D326920" \| "D489816" \| "D548326").PN. OR ("D627876").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:12 |
| S43 | 15 | ("5037432" \| "5971999").PN. OR ("6250996").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:13 |
| S44 | 8 | ("20010023351" \| "20030093089" \| "20030212415" \| "6250996" \| "D450842").PN. OR ("D503979").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:14 |
| S45 | 16 | ("20010023351" \| "20030093089" \| | US- | OR | ON | 2015/07/23 |

EDGE-CARTESSA_0001744

| | | | | |
|---|---|---|---|---|
| "20070156124" \| "4653474" \| "6250396" "7232444" \| "D192841" \| "D224070" \| "D249550" \| "D326920" \| "D475463" \| "D489816" \| "D627876").PN. OR ("D682414").URPN. | PGPUB; USPAT; USOCR | | | 10:15 |

## EAST Search History (Interference)

< This search history is empty>

**7/23/2015 10:37:47 AM**
**C:\Users\cknauss\Documents\EAST\Workspaces\14698673.wsp**

EDGE-CARTESSA_0001745

Page 1 of 1



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

CONFIRMATION NO. 7926

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 RULE | 606 | 3734 | EDGE.005C2 |

**APPLICANTS**
EDGE SYSTEMS LLC, Signal Hill, CA;

**INVENTORS**
Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

** **CONTINUING DATA** ************************* OK /CK/
This application is a CON of 13/267,554 10/06/2011
    which is a CON of 11/392,348 03/29/2006 PAT 8048089
    which claims benefit of 60/755,310 12/30/2005
    and claims benefit of 60/764,668 02/02/2006

** **FOREIGN APPLICATIONS** ************************ none /CK/

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** ** ** SMALL ENTITY **
05/07/2015

| Foreign Priority claimed ☐ Yes ☑ No | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| 35 USC 119(a-d) conditions met ☐ Yes ☑ No | ☐ Met after Allowance | | | | |
| Verified and Acknowledged   /CHRISTIAN D KNAUSS/   Examiner's Signature | Initials | CA | 25 | 20 | 2 |

**ADDRESS**

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

**TITLE**

CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| FILING FEE RECEIVED 800 | FEES: Authority has been given in Paper No._____ to charge/credit DEPOSIT ACCOUNT No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

EDGE-CARTESSA_0001746

| **Search Notes** ||||
| :--- | :--- | :--- | :--- |
| | **Application/Control No.** 14698673 | **Applicant(s)/Patent Under Reexamination** IGNON ET AL. ||
| | **Examiner** CHRISTIAN KNAUSS | **Art Unit** 3734 ||

### CPC- SEARCHED

| Symbol | Date | Examiner |
| :--- | :--- | :--- |
| A61B17/54, 545 | 7/23/15 | CDK |
| A61B2017/00017, 00199, 00743, 00747, 00761 | 7/23/15 | CDK |
| A61B19/0248 | 7/23/15 | CDK |
| A61B2019/025 | 7/23/15 | CDK |
| A61B2217/005, 007 | 7/23/15 | CDK |

### CPC COMBINATION SETS - SEARCHED

| Symbol | Date | Examiner |
| :--- | :--- | :--- |
| | | |

### US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
| :--- | :--- | :--- | :--- |
| | | | |

### SEARCH NOTES

| Search Notes | Date | Examiner |
| :--- | :--- | :--- |
| Performed inventor and assignee searches in PALM and EAST | 7/23/15 | CDK |
| Performed EAST search (see attached EAST search history) | 7/23/15 | CDK |
| Performed forward/backward searches in EAST | 7/23/15 | CDK |
| Performed class/text searchs and combinations in EAST | 7/23/15 | CDK |

### INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
| :--- | :--- | :--- | :--- |
| | | | |

| | |
| :--- | :--- |
| /C.K./ Examiner.Art Unit 3734 | |

EDGE-CARTESSA_0001747

**To:**          jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**        PAIR_eOfficeAction@uspto.gov
**Cc:**          PAIR_eOfficeAction@uspto.gov
**Subject:**     Private PAIR Correspondence Notification for Customer Number 20995

Aug 05, 2015 05:38:37 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | CTNF | 08/05/2015 | EDGE.005C2 |
| | 892 | 08/05/2015 | EDGE.005C2 |
| | 1449 | 08/05/2015 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001748

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        08/07/2015
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3734 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/07/2015 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

PTOL-90A (Rev. 04/07)

EDGE-CARTESSA_0001749

| *Applicant-Initiated Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 14/698,673 | IGNON ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTIAN KNAUSS | 3734 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *CHRISTIAN KNAUSS*.                                    (3)*KATHERINE RODJOM*.

(2) *THEODORE PAPAGIANNIS*.                      (4)_____.

Date of Interview: *30 July 2015*.

Type:  ☐ Telephonic  ☐ Video Conference
          ☒ Personal [copy given to: ☐ applicant   ☐ applicant's representative]

Exhibit shown or demonstration conducted:  ☐ Yes   ☐ No.
    If Yes, brief description: _____.

Issues Discussed   ☐101  ☐112  ☐102  ☐103  ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _____.

Identification of prior art discussed: _____.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*The Applicant's representative gave the Examiner an overview of the case. The Examiner presented two prior art references that were used in the non-final rejection (Greenberg US 2003/0093089 A1 and Coleman et al. (US 2001/0049511 A1). The Examiner also suggested that focusing on the ability to individually select a treatment material of the multiple fluid containers would overcome the Coleman reference.*

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☒ Attachment

| /KATHERINE RODJOM/<br>Primary Examiner, Art Unit 3734 | /CHRISTIAN KNAUSS/<br>Examiner, Art Unit 3734 |
|---|---|

EDGE-CARTESSA_0001750

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**

A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

### Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

37 CFR §1.2 Business to be transacted in writing.

All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

_____

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
–   An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

EDGE-CARTESSA_0001751

Case 2:20-cv-06082-GRB-ST    Document 92-4    Filed 11/17/22    Page 317 of 574 PageID #: 11639

**Recipient Information**

**To:   Examiner Christian Knauss**
**Company: USPTO**
**Fax #: 5712738641**

**faxZERO.com**
*send a fax for free*

**Sender Information**

**From: Theodore Papagiannis**
**Company: Knobbe Martens**
**Email address: theodore.papagiannis@knobbe.com (from 173.227.19.10)**
**Phone #: 9497600404**
**Sent on: Thursday, July 30 2015 at 5:33 AM EDT**

Dear Examiner Knauss,

Please find the attached agenda for the interview.  If you have any questions before our scheduled interview, do not hesitate to contact me via email (theodore.papagiannis@knobbe.com) or mobile phone (626-429-7249).  Thank you.

-Ted Papagiannis

This fax was sent using the FaxZero.com free fax service. FaxZero.com has a zero tolerance policy for abuse and junk faxes. If this fax is spam or abusive, please e-mail support@faxzero.com or send a fax to 855-330-1238, or phone 707-400-6360. Specify fax #15120012. We will add your fax number to the block list.

EDGE-CARTESSA_0001752

Case 2:20-cv-06082-GRB-ST    Document 92-4    Filed 11/17/22    Page 318 of 574 PageID #: 11630

## Agenda for Interview for U.S. Pat. Appl. Nos. 14/698,673, 14/698,713 & 14/700,789
### *(For Discussion Purposes Only)*

1. <u>Details of Scheduled Interview:</u>
   a. The personal interview will be conducted between Examiner Christian Knauss and attorney for Applicant, Theodore Papagiannis.
   b. Date/Time: Thursday, July 30, 2015 at 11 am Eastern

2. <u>Discussion of the claimed subject matter to which each application is directed</u>
   a. 14/698,673: systems having, e.g., a console, fluid container(s), a delivery conduit and a waste conduit
      i. See, *inter alia*, Figures 1-4 and 15A-17 and related portions of the specification as filed
   b. 14/698,713: methods for extraction of substances (e.g., blackheads) using, e.g., application of vacuum/suction and treatment materials
      i. See, e.g., Paragraph [0096] of the specification as filed
   c. 14/700,789: tips having, e.g., treatment materials configured to be released when fluid is delivered to the tip via, e.g., the application of vacuum/suction
      i. See, e.g., Paragraph [0101] of the specification as filed

3. <u>Possible additional discussion of claims and related strategy</u>
   a. 14/700,789: discussion of references cited in Pre-Interview Communication of related application, U.S. Pat. Appl. No. 13/267,554 (currently under examination)
      i. For example, certain disclosure of U.S. Publ. No. 2002/0016601 to Shadduck and U.S. Publ. No. 2003/0093040 Mikszta et al. may be discussed in view of the pending claims.

21248454

- 1 -

EDGE-CARTESSA_0001753

**To:**          jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**        PAIR_eOfficeAction@uspto.gov
**Cc:**          PAIR_eOfficeAction@uspto.gov
**Subject:**     Private PAIR Correspondence Notification for Customer Number 20995

Aug 07, 2015 05:24:59 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|-------------|----------|---------------|---------------------|
| 14698673 | INTV.SUM.APP | 08/07/2015 | EDGE.005C2 |
| | OA.APPENDIX | 08/07/2015 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001754



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**PUBLICATION NOTICE**

*OC000000077785885*

**Title:**CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

**Publication No.**US-2015-0272623-A1
**Publication Date:**10/01/2015

# NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

EDGE-CARTESSA_0001755

**To:**          jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**       PAIR_eOfficeAction@uspto.gov
**Cc:**          PAIR_eOfficeAction@uspto.gov
**Subject:**    Private PAIR Correspondence Notification for Customer Number 20995

Oct 02, 2015 05:27:18 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | NTC.PUB | 10/01/2015 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001756

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | |
|---|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | 3734 |
| *(Multiple sheets used when necessary)* | Examiner | Christian D. Knauss |
| SHEET 1 OF 2 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,631,583 | 03-17-1953 | Lavergne | |
| | 2 | 4,170,821 | 10-16-1979 | Booth | |
| | 3 | 5,697,920 | 12-16-1997 | Gibbons | |
| | 4 | 5,735,833 | 04-07-1998 | Olson | |
| | 5 | 6,129,701 | 10-10-2000 | Cimino | |
| | 6 | 6,162,218 | 12-19-2000 | Elbrecht et al. | |
| | 7 | 6,193,589 | 02-27-2001 | Khalaj | |
| | 8 | 6,235,039 | 05-22-2001 | Parkin et al. | |
| | 9 | 6,589,218 | 07-08-2003 | Garcia | |
| | 10 | 6,743,211 | 06-01-2004 | Prausnitz et al. | |
| | 11 | 9,056,193 | 06-16-2015 | Ignon et al. | |
| | 12 | 2001/0037118 | 11-01-2001 | Shadduck | |
| | 13 | 2002/0133176 | 09-19-2002 | Parkin et al. | |
| | 14 | 2002/0151908 | 10-17-2002 | Mallett Sr. et al. | |
| | 15 | 2003/0167032 | 09-04-2003 | Ignon | |
| | 16 | 2004/0092959 | 05-13-2004 | Bernaz | |
| | 17 | 2004/0162565 | 08-19-2004 | Carson et al. | |
| | 18 | 2004/0254587 | 12-16-2004 | Park | |
| | 19 | 2006/0161178 | 07-20-2006 | Lee | |
| | 20 | 2006/0189964 | 08-24-2006 | Anderson | |
| | 21 | 2008/0103563 | 05-01-2008 | Powell | |
| | 22 | 2008/0221548 | 09-11-2008 | Danenberg et al. | |
| | 23 | 2009/0062815 | 03-05-2009 | Karasiuk et al. | |
| | 24 | 2010/0217357 | 08-26-2010 | Da Silva | |
| | 25 | 2012/0041338 | 02-16-2012 | Chickering III et al. | |
| | 26 | 2015/0230824 | 08-20-2015 | Shadduck | |
| | 27 | 2015/0230825 | 08-20-2015 | Shadduck | |
| | 28 | 2015/0231379 | 08-20-2015 | Ignon et al. | |
| | 29 | 2015/0265822 | 09-24-2015 | Ignon et al. | |
| | 30 | 2015/0290442 | 10-15-2015 | Ignon et al. | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

***Examiner:*** Initial if reference considered, whether or not citation is in conformance with MPEP 609.  Draw line through citation if not in conformance and not considered.  Include copy of this form with next communication to applicant.

T$^1$ - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001757

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | 3734 |
| *(Multiple sheets used when necessary)* | | Examiner | Christian D. Knauss |
| SHEET 2 OF 2 | | Attorney Docket No. | EDGE.005C2 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document *Country Code-Number-Kind Code* Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|

22505364

| Examiner Signature | | Date Considered |
|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001758

EDGE.005C2                                                                                          PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Ignon et al. |
| App. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3734 |
| Conf No. | : | 7926 |

## RESPONSE TO OFFICE ACTION

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

This response is being filed following the Office Action mailed on August 5, 2015 for the above-captioned application (the "Office Action") and the Personal Interview of July 30, 2015.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Summary of Interview** begins on page 5 of this paper.

**Remarks** begin on page 6 of this paper.

-1-

EDGE-CARTESSA_0001759

**Application No.:**    **14/698,673**
**Filing Date:**        **April 28, 2015**

## AMENDMENTS TO THE CLAIMS

*The following listing of claims replaces all prior versions and listings of claims in the application. The listing of claims presents each claim with its respective status shown in parentheses.*

1.      (*Canceled*)

2.      (*Currently Amended*)  A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second ~~at least one~~ fluid container, the first fluid container and the at least the second ~~one~~ fluid container being configured to contain a treatment material for a skin treatment procedure;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second ~~one~~ fluid container through the supply conduit; and

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source[[.]]; and

a user input device for receiving instructions from a user;

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly.

3.      (*Canceled*)

4.      (*Previously Presented*)  The system of Claim 2, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.

-2-

EDGE-CARTESSA_0001760

**Application No.:** 14/698,673
**Filing Date:** April 28, 2015

5.   (*Previously Presented*)   The system of Claim 4, wherein the user input device comprises a touch screen.

6.   (*Previously Presented*)   The system of Claim 2, wherein the at least one fluid container is releasably coupled to the manifold.

7.   (*Canceled*)

8.   (*Currently Amended*)   The system of Claim 2, wherein the manifold is configured to be placed in fluid communication with ~~at least one fluid container comprises~~ at least four fluid containers.

9.   (*Currently Amended*)   The system of Claim 1[[7]], wherein treatment materials from the first fluid container and at least the second fluid container ~~the at least two fluid containers~~ are delivered to the supply conduit sequentially or simultaneously.

10.   (*Previously Presented*)   The system of Claim 2, wherein the console is movable.

11.   (*Currently Amended*)   The system of Claim 2, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

12.   (*Previously Presented*)   The system of Claim 2, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

13.   (*Previously Presented*)   The system of Claim 2, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

14.   (*Currently Amended*)   A system for performing a skin treatment procedure, the system comprising:

a manifold in fluid communication with at least two ~~one~~ fluid containers, each of the at least two ~~one~~ fluid containers being configured to contain a treatment material;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; and

a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly;

-3-

EDGE-CARTESSA_0001761

**Application No.:**    **14/698,673**
**Filing Date:**        **April 28, 2015**

wherein the manifold is configured to control a flow of treatment material from each of the at least two ~~one~~ fluid container<u>s</u> through the supply conduit[[.]]<u>;</u>

<u>wherein the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit.</u>

15.    *(Previously Presented)*    The system of Claim 14, further comprising a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to a vacuum source.

16.    *(Previously Presented)*    The system of Claim 14, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

17.    *(Previously Presented)*    The system of Claim 14, wherein console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container.

18.    *(Previously Presented)*    The system of Claim 17, wherein the user input device comprises a touch screen.

19.    *(Previously Presented)*    The system of Claim 14, wherein the at least one fluid container is releasably coupled to the manifold.

20.    *(Currently Amended)*    The system of Claim 14, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece <u>assembly</u> is moved relative to a skin surface of a subject.

21.    *(Previously Presented)*    The system of Claim 14, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

-4-

EDGE-CARTESSA_0001762

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

## SUMMARY OF INTERVIEW

Applicant thanks Examiners Rodjom and Knauss for their time and the courtesies extended during the Interview of July 30, 2015.

Attendees, Date and Type of Interview

The Interview was conducted in person on July 30, 2015, and was attended by Examiners Christian Knauss and Katherine Rodjom, and attorney for Applicant, Theodore G. Papagiannis.

Exhibits and/or Demonstrations

None.

Identification of Claims Discussed

The pending claims, including independent Claims 2 and 14.

Identification of References Discussed

U.S. Patent Publication No. 2003/0093089 to Greenberg ("Greenberg"), and U.S. Patent Publication No. 2001/0049511 to Coleman et al. ("Coleman").

Proposed Amendments, Principal Arguments, Other Matters and Results of Interview

The Applicant's representative discussed the claims with the Examiners, who were prepared to discuss Greenberg and Coleman with Applicant's representative. These references were briefly discussed in view of the pending claims. Examiners suggested that presenting clarifying amendments related to the system's ability to permit for the selection of treatment materials from specific containers in fluid communication with a manifold would overcome any rejection over Coleman. Accordingly, as discussed in greater detail herein, Applicant is incorporated certain clarifying amendments to the claims in an effort to advance prosecution and further distinguish the present claims from the cited art, pursuant to the Interview of July 30, 2015.

-5-

**Application No.:**    **14/698,673**
**Filing Date:**        **April 28, 2015**

## REMARKS

The foregoing amendments and the following remarks are responsive to the Office Action. Claims 2 to 21 are currently pending in this application. In order to advance prosecution, clarifying amendments are presented herein to independent Claims 2 and 14 in accordance with the Interview of July 30, 2015. Clarifying amendments are also presented to dependent Claims 8, 9, 11 and 20. Further, Claims 3 and 7 are canceled without prejudice herein. Applicant submits that no new matter is added by the foregoing clarifying claim amendments. Applicant reserves the right to pursue claims similar to the original claims or previously-pending versions of the claims in a continuing application. Accordingly, Claims 2, 4 to 6 and 8 to 21 are presented for further consideration.

### Claim Objections

In the Office Action, Claims 11 and 20 are objected to due to certain informalities, which are believed to have been either corrected or mooted by the foregoing amendments.

### Claim Rejections under 35 U.S.C. §102 & §103

According to the Office Action, Claims 2, 3, 7 to 9, 11, 12, 14 to 16 and 20 stand rejected under 35 U.S.C. §102(b) as being anticipated by U.S. Publication No. 2001/0049511 to Coleman et al. ("Coleman"). Claims 2, 4, 6, 10, 14, 17, and 19 stand rejected under 35 U.S.C. §102(b) as being anticipated by U.S. Publication No. 2003/0093089 to Greenberg ("Greenberg"). Further, Claims 5 and 18 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Greenberg in view of U.S. Publication No. 2003/0018252 to Duchon et al. In addition, Claims 13 and 21 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Coleman in view of U.S. Patent No. 3,865,352 in view of Nelson et al.

Applicant respectfully disagrees with and traverses the anticipation and obviousness rejections presented in the Office Action. However, as noted above and pursuant to the Interview of July 30, 2105, Applicant is incorporating certain clarifying amendments to the claims to expedite prosecution and to further distinguish the claims from the cited references.

As discussed during the Interview, Applicant submits that the cited references, either alone or in combination, fail to teach or suggest the elements of the claims, as presented herein. For example, with specific reference to Claim 2, the cited references do not disclose, *inter alia*, a

-6-

EDGE-CARTESSA_0001764

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

system for performing a skin treatment procedure comprising a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second one fluid container being configured to contain a treatment material for a skin treatment procedure, a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject, a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly, wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second one fluid container through the supply conduit, and a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to a vacuum source, and a user input device for receiving instructions from a user, wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly.

For at least the foregoing reasons, Applicant submits that the pending claims are patentable over the cited references, either alone or in combination with one another. In addition, the dependent claims are distinguished over the cited references in view of additional language included therein. Accordingly, Applicant requests that the obviousness rejections presented in the Office Action be withdrawn.

**No Disclaimers or Disavowals**

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not

-7-

EDGE-CARTESSA_0001765

**Application No.:**    **14/698,673**
**Filing Date:**        **April 28, 2015**

reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

## Table of U.S. Patents and Applications

Applicant provides the following table to aid the Examiner during prosecution. The following U.S. patents and/or patent applications are in the same patent family as the present application.

| Attorney Docket | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348 (U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| EDGE.005C2 | 14/698,673 (present application) | Apr. 28, 2015 | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

EDGE-CARTESSA_0001766

**Application No.:**    **14/698,673**
**Filing Date:**       **April 28, 2015**

## CONCLUSION

In view of the foregoing amendments and remarks, Applicant respectfully submits that the claims are now in condition for allowance.  Accordingly, Applicant respectfully requests reconsideration of the claims in light of the foregoing amendments and remarks.

Applicant has made a good faith effort to place the application in condition for immediate allowance.  Nevertheless, if any issues remain or otherwise require clarification, the Examiner is respectfully requested to contact Applicant's attorney at the below-listed telephone number to promptly resolve such issues.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>February 5, 2016</u>

By:<u>/Theodore G. Papagiannis/</u>
    Theodore G. Papagiannis
    Registration No. 61,546
    Attorney of Record
    Customer No. 20995
    (949) 760-0404

21321587

EDGE-CARTESSA_0001767

## Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14698673 |
| **Filing Date:** | 28-Apr-2015 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Filer:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |

Filed as Small Entity

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

EDGE-CARTESSA_0001768

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 3 months with $0 paid | 2253 | 1 | 700 | 700 |
| **Miscellaneous:** | | | | |
| Submission- Information Disclosure Stmt | 2806 | 1 | 90 | 90 |
| **Total in USD ($)** | | | | **790** |

EDGE-CARTESSA_0001769

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24843170 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Tony Do |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 05-FEB-2016 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 19:59:18 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $790 |
| RAM confirmation Number | 6556 |
| Deposit Account | 111410 |
| Authorized User | KNOBBE MARTENS OLSON AND BEAR |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| Charge any Additional Fees required under 37 CFR 1.16 (National application filing, search, and examination fees) | |
| Charge any Additional Fees required under 37 CFR 1.17 (Patent application and reexamination processing fees) | |

EDGE-CARTESSA_0001770

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | EDGE005C2_IDS.pdf | 52973 / 4e92b524fd9aaa82902eb24d4eb85b2bf694fd24 | yes | 4 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Transmittal Letter | 1 | 2 |
| Information Disclosure Statement (IDS) Form (SB08) | 3 | 4 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | EDGE005C2_OAR.pdf | 61906 / 850ef86c4b2bfc59cba7246b2250a3479a74f526 | yes | 9 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 4 |
| Applicant summary of interview with examiner | 5 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 9 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Fee Worksheet (SB06) | fee-info.pdf | 32581 / c3309c7d767f6772e3babdfacfe5fb839928cd44 | no | 2 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| | | Total Files Size (in bytes): | 147460 | | |

EDGE-CARTESSA_0001771

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE-CARTESSA_0001772

Docket No.:  EDGE.005C2                                              **Customer No. 20995**

---

## INFORMATION DISCLOSURE STATEMENT

Inventor    :    Ignon et al.

App. No.    :    14/698,673

Filed       :    April 28, 2015

For         :    CONSOLE SYSTEM FOR THE TREATMENT
                 OF SKIN

Examiner    :    Christian D. Knauss

Art Unit    :    3734

Conf. No.   :    7926

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith.  Copies of any listed foreign and non-patent literature references are being submitted.  Identification herein is not an admission that any of the references are prior art to the above captioned application.

**Related Applications of Assignee**

Applicant wishes to draw the Examiner's attention to the following patents and/or applications in the same patent family as the present application.

| Attorney Docket | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|
| EDGE.005A | 11/392,348 (U.S. Pat. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |

EDGE-CARTESSA_0001773

Case 2:20-cv-06082-GRB-ST    Document 92-4    Filed 11/17/22    Page 339 of 574 PageID #: 11651

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

**Timing of Disclosure**

This Information Disclosure Statement is being filed after receipt of a First Office Action, but before the mailing date of a Final Action and before the mailing date of a Notice of Allowance. This Statement is accompanied by the fees set forth in 37 CFR 1.17(p). The Commissioner is hereby authorized to charge any additional fees which may be required or to credit any overpayment to Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>February 5, 2016</u>

By:<u>/Theodore G. Papagiannis/</u>
Theodore G. Papagiannis
Registration No. 61,546
Attorney of Record
Customer No. 20995
(949) 760-0404

22509896

-2-

EDGE-CARTESSA_0001774

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/698,673 | Filing Date<br>04/28/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☒ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

|  | (Column 1) | (Column 2) |  |  |
|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | RATE ($) | FEE ($) |
| ☒ BASIC FEE<br>(37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | **140** |
| ☐ SEARCH FEE<br>(37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A |  |
| ☐ EXAMINATION FEE<br>(37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A |  |
| TOTAL CLAIMS<br>(37 CFR 1.16(i)) | 20 minus 20 = | * 0 | x $40 = | 0 |
| INDEPENDENT CLAIMS<br>(37 CFR 1.16(h)) | 2 minus 3 = | * 0 | x $210 = | 0 |
| ☐ APPLICATION SIZE FEE<br>(37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | **140** |

## APPLICATION AS AMENDED – PART II

|  |  | (Column 1) |  | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **02/05/2016** | CLAIMS REMAINING AFTER AMENDMENT |  | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|  | Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | x $40 = | 0 |
|  | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | x $210 = | 0 |
|  | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
|  | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
|  |  |  |  |  |  | TOTAL ADD'L FEE | **0** |

|  |  | (Column 1) |  | (Column 2) | (Column 3) |  |  |
|---|---|---|---|---|---|---|---|
| **AMENDMENT** |  | CLAIMS REMAINING AFTER AMENDMENT |  | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|  | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $    = | |
|  | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $    = | |
|  | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
|  | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
|  |  |  |  |  |  | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/JESSICA GAYNOR/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EDGE-CARTESSA_0001775

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995     7590     03/07/2016
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/07/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

PTOL-90A (Rev. 04/07)

EDGE-CARTESSA_0001776

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 14/698,673 | IGNON ET AL. |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | CHRISTIAN KNAUSS | 3731 | No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

   A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on *2/5/16*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☒ This action is **FINAL**.         2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) *2,4-6 and 8-21* is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) *2,4-6 and 8-21* is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some**  c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413)
   Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

EDGE-CARTESSA_0001777

Application/Control Number: 14/698,673                                         Page 2

Art Unit: 3731

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application is being examined under the pre-AIA first to invent

provisions.

### *Response to Amendment*

2.      Claims 2, 4-6, and 8-21 are pending in the application.  Claims 1, 3, and 7 have

been canceled.  Claims 2, 8, 9, 11, 14, and 20 have been amended.

### *Claim Objections*

3.      Claim 9 is objected to because of the following informalities:  Claim 9 is

dependent on claim 1, which is canceled.  For examination purposes, the Examiner has

assumed that claim 9 is dependent on claim 2.  Appropriate correction is required.

### *Claim Rejections - 35 USC § 112*

4.      The following is a quotation of 35 U.S.C. 112(b):
(b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

5.      Claims 4-6 and 17-19 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-

AIA), second paragraph, as being indefinite for failing to particularly point out and

distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA

the applicant regards as the invention.

EDGE-CARTESSA_0001778

Application/Control Number: 14/698,673                                          Page 3

Art Unit: 3731

6.      Claim 4 recites the limitation "the at least one fluid container" in line 3.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

7.      Claim 4 recites that the console comprises a display, which comprises a user input device to facilitate controlling a flow of treatment materials from the at least one fluid container to the handpiece assembly.  It is unclear if this user input device is the same user input device from claim 1, or a different user input device.  Appropriate correction is required.

8.      Claim 5 is dependent on rejected claim 4, thus is also rendered indefinite. Appropriate correction is required.

9.      Claim 6 recites the limitation "the at least one fluid container" in lines 1-2.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

10.     Claim 17 recites the limitation "the at least one fluid container" in line 3.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

11.     Claim 17 recites the limitation "console" in line 1.  There is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is required.

12.     Claim 18 is dependent on rejected claim 17, thus is also rendered indefinite. Appropriate correction is required.

EDGE-CARTESSA_0001779

Application/Control Number: 14/698,673                                    Page 4

Art Unit: 3731

13.    Claim 19 recites the limitation "the at least one fluid container" in lines 1-2.  There

is insufficient antecedent basis for this limitation in the claim.  Appropriate correction is

required.


### Claim Rejections - 35 USC § 103

14.    The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis

for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described
> as set forth in section 102 of this title, if the differences between the subject matter sought to
> be patented and the prior art are such that the subject matter as a whole would have been
> obvious at the time the invention was made to a person having ordinary skill in the art to which
> said subject matter pertains.  Patentability shall not be negatived by the manner in which the
> invention was made.


15.    Claims 2, 4, 6, 8-12, 14-17, 19, and 20 are rejected under pre-AIA 35 U.S.C.

102(b) as anticipated by Coleman et al. (US 2001/0049511 A1) ("Coleman") or, in the

alternative, under pre-AIA 35 U.S.C. 103(a) as obvious over Coleman et al. (US

2001/0049511 A1) ("Coleman") in view of Greenberg (US 2003/0093089 A1).

       Regarding claim 2, Coleman discloses (Figures 4-6) a system for performing a

skin treatment procedure, the system comprising: a console (Figure 6) including a

manifold (see Figure 6 below), the manifold being in fluid communication with a first fluid

container (60C) and at least a second fluid container (60B), the first fluid container and

the at least second fluid container capable of containing a treatment material for a skin

treatment procedure; a handpiece assembly (Figures 5A and 5B) comprising a tip, the

tip capable of contacting a skin surface of a subject; a supply conduit (51A) placing the

manifold of the console in fluid communication with the handpiece assembly, wherein a

EDGE-CARTESSA_0001780

Application/Control Number: 14/698,673

Page 5

Art Unit: 3731

distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is capable of controlling a flow of treatment material from the first

fluid container and at least the second fluid container through the supply conduit; a

waste conduit (51B) in fluid communication with the tip of the handpiece assembly to

remove waste away from a skin surface of a subject during a skin treatment procedure,

wherein the waste conduit is operatively coupled to a vacuum source (64A); and a user

input device (59A, 59B) capable of receiving instructions from a user; wherein the

system is capable of permitting a user to select a treatment material from the first fluid

container or the at least second fluid container to be delivered through the supply

conduit to the handpiece assembly.



FIG. 6

Application/Control Number: 14/698,673                                           Page 6
Art Unit: 3731

Regarding claim 8, Coleman discloses (Figure 6) that the manifold is configured to be placed in fluid communication with at least four fluid containers (60A, 60B, 60C, 61A).

Regarding claim 9, Coleman discloses that treatment materials from the first fluid container and the at least second fluid container are delivered to the supply conduit simultaneously (paragraph 0060).

Regarding claim 10, the console disclosed by Coleman is capable of being moved.

Regarding claim 11, Coleman discloses that the tip of the handpiece assembly is capable of exfoliating skin tissue as the handpiece assembly is moved relative to a skin surface of a subject (paragraphs 0009-0010).

Regarding claim 12, Coleman discloses (Figures 5A and 5B) that each of the supply conduit (51A) and the waste conduit (51B) connects to a corresponding connector along a proximal end of the handpiece assembly.

Regarding claim 14, Coleman discloses (Figures 4-6) a system for performing a skin treatment procedure, the system comprising: a manifold (see Figure 6 above) in fluid communication with at least two fluid containers (60B, 60C), each of the at least two fluid containers capable of containing a treatment material; a handpiece assembly (Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin surface of a subject; and a supply conduit (51A) placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is capable of securing to the handpiece assembly; wherein the manifold is capable of controlling a flow of

EDGE-CARTESSA_0001782

Application/Control Number: 14/698,673                                              Page 7

Art Unit: 3731

treatment material from each of the fluid containers through the supply conduit; wherein

the system is capable of permitting a user to select the fluid container from which

treatment material is delivered to the supply conduit.

Regarding claim 15, Coleman discloses (Figure 6) a waste conduit (51B) in fluid

communication with the handpiece assembly capable of removing waste from a skin

surface of a subject during a procedure, wherein the waste conduit is operatively couple

to a vacuum source (65A).

Regarding claim 16, Coleman discloses (Figures 5A and 5B) a user input device

(59A and 59B) for selecting a treatment material to be passed through the supply

conduit to the handpiece assembly.

Regarding claim 20, Coleman discloses that the tip of the handpiece assembly is

capable of exfoliating skin tissue as the handpiece assembly is moved relative to a skin

surface of a subject (paragraphs 0009-0010).


In the alternative, regarding claims 2, 4, and 6, Coleman discloses (Figures 4-6)

a system for performing a skin treatment procedure, the system comprising: a console

(Figure 6) including a manifold (see Figure 6 below), the manifold being in fluid

communication with a first fluid container (60C) and at least a second fluid container

(60B), the first fluid container and the at least second fluid container capable of

containing a treatment material for a skin treatment procedure; a handpiece assembly

(Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin surface of a

subject; a supply conduit (51A) placing the manifold of the console in fluid

EDGE-CARTESSA_0001783

Application/Control Number: 14/698,673                                                Page 8

Art Unit: 3731

communication with the handpiece assembly, wherein a distal end of the supply conduit

is configured to couple to the handpiece assembly; wherein the manifold is capable of

controlling a flow of treatment material from the first fluid container and at least the

second fluid container through the supply conduit; a waste conduit (51B) in fluid

communication with the tip of the handpiece assembly to remove waste away from a

skin surface of a subject during a skin treatment procedure, wherein the waste conduit

is operatively coupled to a vacuum source (64A); and a user input device (59A, 59B)

capable of receiving instructions from a user; wherein the system is capable of

permitting a user to select a treatment material from the first fluid container or the at

least second fluid container to be delivered through the supply conduit to the handpiece

assembly.  However, Coleman fails to disclose that the console comprises a display,

wherein the display comprises a user input device to facilitate controlling a flow of

treatment materials from the at least one fluid container to the handpiece assembly.

Coleman further fails to disclose that the at least one fluid container is releasably

coupled to the manifold.

Greenberg discloses (Figures 1 and 2) a system for performing a skin treatment

procedure, the system comprising: a console (10) including a manifold, a fluid container

(18), a handpiece assembly (16), a supply conduit (20), a waste conduit (20), a display

(front surface of console containing 52, 56), wherein the display comprises a user input

device (30, 32, 42, 48, 50) capable of facilitating controlling a flow of treatment materials

from the at least one fluid container to the handpiece assembly.  Greenberg discloses

(Figure 2) that the fluid container is releasably coupled to the manifold.

EDGE-CARTESSA_0001784

Application/Control Number: 14/698,673                                                    Page 9
Art Unit: 3731

It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the console to include a display, wherein the display

comprises a user input device to facilitate controlling a flow of treatment materials from

the at least one fluid container to the handpiece assembly, as taught by Greenberg.

This modification would provide advantages such as a display including a timer to assist

the operator in keeping track of time that the machine has been used for (paragraph

0063) and would allow the operator to make adjustments to features such as vacuum

suction (paragraph 0059).  It would have been obvious to one having ordinary skill in the

art at the time the invention was made to modify the at least one fluid container to be

releasably coupled to the manifold, as taught by Greenberg.  This modification would

allow the operator to attach containers of different medical treatment materials to the

manifold to be applied to the skin.

Regarding claims 14, 17, and 19, Coleman discloses (Figures 4-6) a system for

performing a skin treatment procedure, the system comprising: a manifold (see Figure 6

above) in fluid communication with at least two fluid containers (60B, 60C), each of the

at least two fluid containers capable of containing a treatment material; a handpiece

assembly (Figures 5A and 5B) comprising a tip, the tip capable of contacting a skin

surface of a subject; and a supply conduit (51A) placing the manifold in fluid

communication with the handpiece assembly, wherein a distal end of the supply conduit

is capable of securing to the handpiece assembly; wherein the manifold is capable of

controlling a flow of treatment material from each of the fluid containers through the

EDGE-CARTESSA_0001785

Application/Control Number: 14/698,673                                    Page 10
Art Unit: 3731

supply conduit; wherein the system is capable of permitting a user to select the fluid

container from which treatment material is delivered to the supply conduit.

However, Coleman fails to disclose that the console comprises a display,

wherein the display comprises a user input device to facilitate controlling a flow of

treatment materials from the at least one fluid container to the handpiece assembly.

Coleman further fails to disclose that the at least one fluid container is releasably

coupled to the manifold.

Greenberg discloses (Figures 1 and 2) a system for performing a skin treatment

procedure, the system comprising: a console (10) including a manifold, a fluid container

(18), a handpiece assembly (16), a supply conduit (20), a waste conduit (20), a display

(front surface of console containing 52, 56), wherein the display comprises a user input

device (30, 32, 42, 48, 50) capable of facilitating controlling a flow of treatment materials

from the at least one fluid container to the handpiece assembly.  Greenberg discloses

(Figure 2) that the fluid container is releasably coupled to the manifold.

It would have been obvious to one having ordinary skill in the art at the time the

invention was made to modify the console to include a display, wherein the display

comprises a user input device to facilitate controlling a flow of treatment materials from

the at least one fluid container to the handpiece assembly, as taught by Greenberg.

This modification would provide advantages such as a display including a timer to assist

the operator in keeping track of time that the machine has been used for (paragraph

0063) and would allow the operator to make adjustments to features such as vacuum

suction (paragraph 0059).  It would have been obvious to one having ordinary skill in the

EDGE-CARTESSA_0001786

Application/Control Number: 14/698,673                                              Page 11

Art Unit: 3731

art at the time the invention was made to modify the at least one fluid container to be releasably coupled to the manifold, as taught by Greenberg. This modification would allow the operator to attach containers of different medical treatment materials to the manifold to be applied to the skin.

16.     Claims 5 and 18 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Coleman et al. (US 2001/0049511 A1) ("Coleman") in view of Greenberg (US 2003/0093089 A1) as applied to claims 4 and 17, respectively, above, and further in view of Duchon et al. (US 2003/0018252 A1) ("Duchon").

Regarding claims 5 and 18, Coleman as modified by Greenberg teaches the invention substantially as claimed. However, the combined teaching fails to teach that the user input device comprises a touch screen.

Duchon teaches that it was well-known in the art at the time the invention was made for a console to include a touch screen user input (432). Duchon teaches that a touch screen is an equivalent structure to a selector dial, keypad, button, etc. that can be used by a user for console input.

It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the user input device taught by Coleman in view of Greenberg to be a touch screen user input because Duchon teaches that a touch screen is an equivalent structure to a input knob, button, keypad, dial, etc. that is known in the art for entering input into a console system.

EDGE-CARTESSA_0001787

Application/Control Number: 14/698,673                                         Page 12

Art Unit: 3731

17.    Claims 13 and 21 rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Coleman et al. (US 2001/0049511 A1) ("Coleman") in view of Nelson et al. (US 3,865,352) ("Nelson") or in the alternative over Coleman et al. (US 2001/0049511 A1) ("Coleman") in view Greenberg (US 2003/0093089 A1) as applied to claims 2 and 14, respectively, above, and in further view of Nelson et al. (US 3,865,352) ("Nelson").

Regarding claims 13 and 21, Coleman discloses the invention substantially as highlighted in the rejections above.  However, Coleman fails to disclose that the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid, or other disinfecting agent for periodic flushing of the manifold.

Nelson teaches a device for mixing and dispensing materials, comprising: a manifold (25), the manifold in fluid communication with at least one fluid container (15, 16, 38), the at least one fluid container being configured to contain a fluid material; a handpiece assembly (10); the manifold and the handpiece assembly in fluid communication.  Nelson further teaches that the manifold of the console is in fluid communication with a container (38) comprising a solvent for periodic flushing and cleaning of the manifold.

It would have been obvious to one having ordinary skill in the art at the time the invention was made to modify the manifold to be placed in fluid communication with a container comprising a solvent for periodic flushing of the manifold, as taught by Nelson.

Application/Control Number: 14/698,673                                           Page 13

Art Unit: 3731

This modification would clean the manifold and supply conduit of the materials from the

at least one fluid container (Column 2, lines 18-22).


### *Response to Arguments*

18.     Applicant's arguments filed 2/5/16 have been fully considered but they are not

persuasive.  During the interview held on 8/7/15, the Examiner provided a suggested

strategy as to how to amend the claims to overcome the previous rejections.  However,

specific claim language was not agreed upon.  After further review of the specification,

the Examiner suggests that the Applicant amend the claims to recite that the system is

configured to permit a user to *individually/independently* select the treatment material

from the first fluid container or the at least second fluid container to be delivered through

the supply conduit to the handpiece assembly, as disclosed in paragraph 0129.


### *Conclusion*

19.     **THIS ACTION IS MADE FINAL.**  Applicant is reminded of the extension of time

policy as set forth in 37 CFR 1.136(a).

A shortened statutory period for reply to this final action is set to expire THREE

MONTHS from the mailing date of this action.  In the event a first reply is filed within

TWO MONTHS of the mailing date of this final action and the advisory action is not

mailed until after the end of the THREE-MONTH shortened statutory period, then the

shortened statutory period will expire on the date the advisory action is mailed, and any

extension fee pursuant to 37 CFR 1.136(a) will be calculated from the mailing date of

Application/Control Number: 14/698,673                                        Page 14
Art Unit: 3731

the advisory action.  In no event, however, will the statutory period for reply expire later than SIX MONTHS from the mailing date of this final action.

Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHRISTIAN KNAUSS whose telephone number is (571)272-8641.  The examiner can normally be reached on Monday-Friday 8:00 am - 5 pm EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Corrine McDermott can be reached on (571)272-4754.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished applications is available through Private PAIR only.  For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/C. K./                                          /RYAN J. SEVERSON/
Examiner, Art Unit 3731                          Primary Examiner, Art Unit 3731

EDGE-CARTESSA_0001790

| | | | | | | |
|---|---|---|---|---|---|---|
| **_Notice of References Cited_** | | | Application/Control No.<br>14/698,673 | | Applicant(s)/Patent Under Reexamination<br>IGNON ET AL. | |
| | | | Examiner<br>CHRISTIAN KNAUSS | | Art Unit<br>3731 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2001/0049511 A1 | 12-2001 | COLEMAN, WILLIAM P. | A61H9/00 | 604/290 |
| * | B | US-3,865,352 A | 02-1975 | Nelson; Charles Edward | B01F3/10 | 138/42 |
| * | C | US-2003/0018252 A1 | 01-2003 | Duchon, Douglas J. | A61B6/481 | 600/432 |
| * | D | US-2003/0093089 A1 | 05-2003 | Greenberg, Ronald Allan | A61B17/545 | 606/131 |
| | E | US- | | | | |
| | F | US- | | | | |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN  PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

U.S. Patent and Trademark Office
PTO-892 (Rev. 01-2001)
20160224

**Notice of References Cited**

Part of Paper No.

EDGE-CARTESSA_0001791

Receipt date: 04/05/0082

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | 3734 |
| *(Multiple sheets used when necessary)* | | Examiner | Christian D. Knauss |
| SHEET 1 OF 2 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2,631,583 | 03-17-1953 | Lavergne | |
| | 2 | 4,170,821 | 10-16-1979 | Booth | |
| | 3 | 5,697,920 | 12-16-1997 | Gibbons | |
| | 4 | 5,735,833 | 04-07-1998 | Olson | |
| | 5 | 6,129,701 | 10-10-2000 | Cimino | |
| | 6 | 6,162,218 | 12-19-2000 | Elbrecht et al. | |
| | 7 | 6,193,589 | 02-27-2001 | Khalaj | |
| | 8 | 6,235,039 | 05-22-2001 | Parkin et al. | |
| | 9 | 6,589,218 | 07-08-2003 | Garcia | |
| | 10 | 6,743,211 | 06-01-2004 | Prausnitz et al. | |
| | 11 | 9,056,193 | 06-16-2015 | Ignon et al. | |
| | 12 | 2001/0037118 | 11-01-2001 | Shadduck | |
| | 13 | 2002/0133176 | 09-19-2002 | Parkin et al. | |
| | 14 | 2002/0151908 | 10-17-2002 | Mallett Sr. et al. | |
| | 15 | 2003/0167032 | 09-04-2003 | Ignon | |
| | 16 | 2004/0092959 | 05-13-2004 | Bernaz | |
| | 17 | 2004/0162565 | 08-19-2004 | Carson et al. | |
| | 18 | 2004/0254587 | 12-16-2004 | Park | |
| | 19 | 2006/0161178 | 07-20-2006 | Lee | |
| | 20 | 2006/0189964 | 08-24-2006 | Anderson | |
| | 21 | 2008/0103563 | 05-01-2008 | Powell | |
| | 22 | 2008/0221548 | 09-11-2008 | Danenberg et al. | |
| | 23 | 2009/0062815 | 03-05-2009 | Karasiuk et al. | |
| | 24 | 2010/0217357 | 08-26-2010 | Da Silva | |
| | 25 | 2012/0041338 | 02-16-2012 | Chickering III et al. | |
| | 26 | 2015/0230824 | 08-20-2015 | Shadduck | |
| | 27 | 2015/0230825 | 08-20-2015 | Shadduck | |
| | 28 | 2015/0231379 | 08-20-2015 | Ignon et al. | |
| | 29 | 2015/0265822 | 09-24-2015 | Ignon et al. | |
| | 30 | 2015/0290442 | 10-15-2015 | Ignon et al. | |

| Examiner Signature | /CHRISTIAN D KNAUSS/ | | Date Considered | 02/25/2016 |
|---|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.
ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.D.K/

EDGE-CARTESSA_0001792

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | Application No. | 14/698,673 |
|---|---|---|
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | 3734 |
| *(Multiple sheets used when necessary)* | Examiner | Christian D. Knauss |
| SHEET 2 OF 2 | Attorney Docket No. | EDGE.005C2 |

| | | FOREIGN PATENT DOCUMENTS | | | | |
|---|---|---|---|---|---|---|
| Examiner Initials | Cite No. | Foreign Patent Document *Country Code-Number-Kind Code* Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |

22505364

| Examiner Signature | /CHRISTIAN D KNAUSS/ | Date Considered | 02/25/2016 |
|---|---|---|---|

*Examiner:* Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.
ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.D.K/

EDGE-CARTESSA_0001793

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | Examiner | Art Unit |
| | CHRISTIAN KNAUSS | 3734 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| A61B17/54, 545 | 7/23/15 | CDK |
| A61B2017/00017, 00199, 00743, 00747, 00761 | 7/23/15 | CDK |
| A61B19/0248 | 7/23/15 | CDK |
| A61B2019/025 | 7/23/15 | CDK |
| A61B2217/005, 007 | 7/23/15 | CDK |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Performed inventor and assignee searches in PALM and EAST | 7/23/15 | CDK |
| Performed EAST search (see attached EAST search history) | 7/23/15 | CDK |
| Performed  forward/backward searches in EAST | 7/23/15 | CDK |
| Performed class/text searchs and combinations in EAST | 7/23/15 | CDK |
| Updated EAST search (see attached EAST search history) | 2/25/16 | CDK |
| Consulted Ryan Severson | 2/25/16 | CDK |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

/C.K./
Examiner.Art Unit 3731

U.S. Patent and Trademark Office

Part of Paper No. :  20160224

EDGE-CARTESSA_0001794

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 29 | (roger near2 ignon).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:00 |
| S2 | 101 | (scott near2 mallett).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:04 |
| S3 | 3 | (abraham near2 solano).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:06 |
| S4 | 100 | (william near2 cohen).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:07 |
| S5 | 24 | (edge near2 systems).as. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:09 |
| S6 | 310 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US- | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:14 |

EDGE-CARTESSA_0001795

Case 2:20-cv-06082-GRB-ST    Document 92-4    Filed 11/17/22    Page 361 of 574 PageID #: 11673

5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR US-5807353-$.DID. OR US-5810842-$.DID. OR US-5813416-$.DID. OR US-5817050-$.DID. OR US-5846215-$.DID. OR US-5848998-$.DID. OR US-5861142-$.DID. OR US-5873881-$.DID. OR US-5879323-$.DID. OR US-5882201-$.DID. OR US-5885260-$.DID. OR US-5908401-$.DID. OR US-5919152-$.DID. OR US-5954730-$.DID. OR US-5971999-$.DID. OR US-5980555-$.DID. OR US-6019749-$.DID. OR US-6024733-$.DID. OR US-6027402-$.DID. OR US-6039745-$.DID. OR US-6042552-$.DID. OR US-6080165-$.DID. OR US-6080166-$.DID. OR US-6090085-$.DID. OR US-6120512-$.DID. OR US-6136008-$.DID. OR US-6139553-$.DID. OR US-6139554-$.DID. OR US-6142155-$.DID. OR US-6149634-$.DID. OR US-6159226-$.DID. OR US-6162232-$.DID. OR US-6183451-$.DID. OR US-6183483-$.DID. OR US-6231593-$.DID. OR US-6238275-$.DID. OR US-6241739-$.DID. OR US-6264666-$.DID. OR US-6277128-$.DID. OR US-6283978-$.DID. OR US-6299620-$.DID. OR US-6306119-$.DID. OR US-6306147-$.DID. OR US-6322568-$.DID. OR US-6368333-$.DID. OR US-6387103-$.DID. OR US-6409736-$.DID. OR US-6410599-$.DID. OR US-6414032-$.DID. OR US-6420431-$.DID. OR US-6423078-$.DID. OR US-6423750-$.DID. OR US-6432113-$.DID. OR US-6471712-$.DID. OR US-6477410-$.DID. OR US-6482212-$.DID. OR US-6488646-$.DID. OR US-6494856-$.DID. OR US-6500183-$.DID. OR US-6503256-$.DID. OR US-6511486-$.DID. OR US-6514262-$.DID. OR US-6527783-$.DID. OR US-6535761-$.DID. OR US-6540757-$.DID. OR US-6562013-$.DID. OR US-6562050-$.DID. OR US-6564093-$.DID. OR US-6565535-$.DID. OR US-6582442-$.DID. OR US-6592595-$.DID. OR US-6629983-$.DID. OR US-6641591-$.DID. OR US-6645184-$.DID. OR US-6652888-$.DID. OR US-6673081-$.DID. OR US-6673082-$.DID. OR US-6685853-$.DID. OR US-6687537-$.DID. OR US-6695853-$.DID. OR US-6735470-$.DID. OR US-6743215-$.DID. OR US-6764493-$.DID. OR US-6869611-$.DID. OR US-6905487-$.DID. OR US-6911031-$.DID. OR US-6924649-$.DID. OR US-6926681-$.DID. OR US-6942649-$.DID. OR US-7001355-$.DID. OR US-7004933-$.DID. OR US-7044938-$.DID. OR US-7052503-$.DID. OR US-7069073-$.DID. OR US-7070488-$.DID. OR US-7083580-$.DID. OR US-7087063-$.DID. OR US-7094252-$.DID. OR US-7115275-$.DID. OR US-7135011-$.DID. OR US-7153311-$.DID. OR US-7197359-$.DID. OR US-7198623-$.DID. OR US-

EDGE-CARTESSA_0001796

7241208-$.DID. OR US-7276051-$.DID. OR
US-7314326-$.DID. OR US-7316657-$.DID.
OR US-7318828-$.DID. OR US-7320691-
$.DID. OR US-7320801-$.DID. OR US-
7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID.
OR US-7458944-$.DID. OR US-7476205-
$.DID. OR US-7477938-$.DID. OR US-
7482314-$.DID. OR US-7489989-$.DID. OR
US-7507228-$.DID. OR US-7582067-$.DID.
OR US-7597900-$.DID. OR US-7597901-
$.DID. OR US-7658742-$.DID. OR US-
7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID.
OR US-7901373-$.DID. OR US-7951156-
$.DID. OR US-8025669-$.DID. OR US-
8048089-$.DID. OR US-8066716-$.DID. OR
US-8088085-$.DID. OR US-8128638-$.DID.
OR US-8221437-$.DID. OR US-8236008-
$.DID. OR US-8277287-$.DID. OR US-
8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-
20020188261-$.DID. OR US-20030012415-
$.DID. OR US-20030060834-$.DID. OR US-
20030093040-$.DID. OR US-20030093089-
$.DID. OR US-20030097139-$.DID. OR US-
20030187462-$.DID. OR US-20030208159-
$.DID. OR US-20030212127-$.DID. OR US-
20030212415-$.DID. OR US-20040010222-
$.DID. OR US-20040010269-$.DID. OR US-
20040087972-$.DID. OR US-20040092895-
$.DID. OR US-20040097967-$.DID. OR US-
20040122447-$.DID. OR US-20040143274-
$.DID. OR US-20040166172-$.DID. OR US-
20040219179-$.DID. OR US-20040236291-
$.DID. OR US-20040243149-$.DID. OR US-
20040267285-$.DID. OR US-20050037034-
$.DID. OR US-20050038448-$.DID. OR US-
20050059940-$.DID. OR US-20050084509-
$.DID. OR US-20050148958-$.DID. OR US-
20050203111-$.DID. OR US-20050209611-
$.DID. OR US-20050283176-$.DID. OR US-
20060002960-$.DID. OR US-20060191562-
$.DID. OR US-20060200099-$.DID. OR US-
20060200172-$.DID. OR US-20060200173-
$.DID. OR US-20060212029-$.DID. OR US-
20060253125-$.DID. OR US-20060264893-
$.DID. OR US-20070005078-$.DID. OR US-
20070043382-$.DID. OR US-20070065515-
$.DID. OR US-20070123808-$.DID. OR US-
20070088371-$.DID. OR US-20070154502-
$.DID. OR US-20070156124-$.DID. OR US-
20070178121-$.DID. OR US-20070198031-
$.DID. OR US-20070208353-$.DID. OR US-
20070239173-$.DID. OR US-20080027328-
$.DID. OR US-20080091179-$.DID. OR US-
20080119781-$.DID. OR US-20080132914-
$.DID. OR US-20080139974-$.DID. OR US-
20080193493-$.DID. OR US-20080200861-

EDGE-CARTESSA_0001797

$.DID. OR US-20080214987-$.DID. OR US-20080215068-$.DID. OR US-20080243039-$.DID. OR US-20080287864-$.DID. OR US-20080300529-$.DID. OR US-20080300552-$.DID. OR US-20090048557-$.DID. OR US-20090053390-$.DID. OR US-20090099091-$.DID. OR US-20090099093-$.DID. OR US-20090124985-$.DID. OR US-20090138026-$.DID. OR US-20090177171-$.DID. OR US-20090192442-$.DID. OR US-20090222023-$.DID. OR US-20100045427-$.DID. OR US-20100049177-$.DID. OR US-20100049210-$.DID. OR US-20110054490-$.DID. OR US-20110066162-$.DID. OR US-20110082415-$.DID. OR US-20120022435-$.DID. OR US-20120136374-$.DID. OR US-20130018317-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID. OR JP-12022003-$.DID. OR JP-2006503627-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID.

| | | | | | | |
|---|---|---|---|---|---|---|
| S7 | 316 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:15 |

EDGE-CARTESSA_0001798

US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US-5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR US-5807353-$.DID. OR US-5810842-$.DID. OR US-5813416-$.DID. OR US-5817050-$.DID. OR US-5846215-$.DID. OR US-5848998-$.DID. OR US-5861142-$.DID. OR US-5873881-$.DID. OR US-5879323-$.DID. OR US-5882201-$.DID. OR US-5885260-$.DID. OR US-5908401-$.DID. OR US-5919152-$.DID. OR US-5954730-$.DID. OR US-5971999-$.DID. OR US-5980555-$.DID. OR US-6019749-$.DID. OR US-6024733-$.DID. OR US-6027402-$.DID. OR US-6039745-$.DID. OR US-6042552-$.DID. OR US-6080165-$.DID. OR US-6080166-$.DID. OR US-6090085-$.DID. OR US-6120512-$.DID. OR US-6136008-$.DID. OR US-6139553-$.DID. OR US-6139554-$.DID. OR US-6142155-$.DID. OR US-6149634-$.DID. OR US-6159226-$.DID. OR US-6162232-$.DID. OR US-6183451-$.DID. OR US-6183483-$.DID. OR US-6231593-$.DID. OR US-6238275-$.DID. OR US-6241739-$.DID. OR US-6264666-$.DID. OR US-6277128-$.DID. OR US-6283978-$.DID. OR US-6299620-$.DID. OR US-6306119-$.DID. OR US-6306147-$.DID. OR US-6322568-$.DID. OR US-6368333-$.DID. OR US-6387103-$.DID. OR US-6409736-$.DID. OR US-6410599-$.DID. OR US-6414032-$.DID. OR US-6420431-$.DID. OR US-6423078-$.DID. OR US-6423750-$.DID. OR US-6432113-$.DID. OR US-6471712-$.DID. OR US-6477410-$.DID. OR US-6482212-$.DID. OR US-6488646-$.DID. OR US-6494856-$.DID. OR US-6500183-$.DID. OR US-6503256-$.DID. OR US-6511486-$.DID. OR US-6514262-$.DID. OR US-6527783-$.DID. OR US-6535761-$.DID. OR US-6540757-$.DID. OR US-6562013-$.DID. OR US-6562050-$.DID. OR US-6564093-$.DID. OR US-6565535-$.DID. OR US-6582442-$.DID. OR US-6592595-$.DID. OR US-6629983-$.DID. OR US-6641591-$.DID. OR US-6645184-$.DID. OR US-6652888-$.DID. OR US-6673081-$.DID. OR US-6673082-$.DID. OR US-6685853-$.DID. OR US-6687537-$.DID. OR US-6695853-$.DID. OR US-6735470-$.DID. OR US-6743215-$.DID. OR US-6764493-$.DID. OR US-6869611-$.DID. OR US-6905487-$.DID. OR US-6911031-$.DID. OR US-6924649-$.DID. OR US-6926681-$.DID. OR US-6942649-$.DID. OR US-7001355-$.DID. OR US-7004933-$.DID. OR US-7044938-$.DID. OR US-7052503-$.DID. OR US-7069073-$.DID. OR US-7070488-$.DID. OR US-7083580-$.DID. OR US-7087063-$.DID. OR US-7094252-$.DID. OR

EDGE-CARTESSA_0001799

US-7115275-$.DID. OR US-7135013-$.DID. OR US-7153311-$.DID. OR US-7197359-$.DID. OR US-7198623-$.DID. OR US-7241208-$.DID. OR US-7276051-$.DID. OR US-7314326-$.DID. OR US-7316657-$.DID. OR US-7318828-$.DID. OR US-7320691-$.DID. OR US-7320801-$.DID. OR US-7354423-$.DID. OR US-7364565-$.DID. OR US-7384405-$.DID. OR US-7427273-$.DID. OR US-7458944-$.DID. OR US-7476205-$.DID. OR US-7477938-$.DID. OR US-7482314-$.DID. OR US-7489989-$.DID. OR US-7507228-$.DID. OR US-7582067-$.DID. OR US-7597900-$.DID. OR US-7597901-$.DID. OR US-7658742-$.DID. OR US-7678120-$.DID. OR US-7744582-$.DID. OR US-7789886-$.DID. OR US-7837695-$.DID. OR US-7901373-$.DID. OR US-7951156-$.DID. OR US-8025669-$.DID. OR US-8048089-$.DID. OR US-8066716-$.DID. OR US-8088085-$.DID. OR US-8128638-$.DID. OR US-8221437-$.DID. OR US-8236008-$.DID. OR US-8277287-$.DID. OR US-8337513-$.DID. OR US-8343116-$.DID. OR US-8814836-$.DID. OR US-20010023351-$.DID. OR US-20010049511-$.DID. OR US-20020016601-$.DID. OR US-20020041891-$.DID. OR US-20020058952-$.DID. OR US-20020107527-$.DID. OR US-20020133110-$.DID. OR US-20020151826-$.DID. OR US-20020188261-$.DID. OR US-20030012415-$.DID. OR US-20030060834-$.DID. OR US-20030093040-$.DID. OR US-20030093089-$.DID. OR US-20030097139-$.DID. OR US-20030187462-$.DID. OR US-20030208159-$.DID. OR US-20030212127-$.DID. OR US-20030212415-$.DID. OR US-20040010222-$.DID. OR US-20040010269-$.DID. OR US-20040087972-$.DID. OR US-20040092895-$.DID. OR US-20040097967-$.DID. OR US-20040122447-$.DID. OR US-20040143274-$.DID. OR US-20040166172-$.DID. OR US-20040219179-$.DID. OR US-20040236291-$.DID. OR US-20040243149-$.DID. OR US-20040267285-$.DID. OR US-20050037034-$.DID. OR US-20050038448-$.DID. OR US-20050059940-$.DID. OR US-20050084509-$.DID. OR US-20050148958-$.DID. OR US-20050203111-$.DID. OR US-20050209611-$.DID. OR US-20050283176-$.DID. OR US-20060002960-$.DID. OR US-20060191562-$.DID. OR US-20060200099-$.DID. OR US-20060200172-$.DID. OR US-20060200173-$.DID. OR US-20060212029-$.DID. OR US-20060253125-$.DID. OR US-20060264893-$.DID. OR US-20070005078-$.DID. OR US-20070043382-$.DID. OR US-20070065515-$.DID. OR US-20070123808-$.DID. OR US-20070088371-$.DID. OR US-20070154502-$.DID. OR US-20070156124-$.DID. OR US-20070178121-$.DID. OR US-20070198031-$.DID. OR US-20070208353-$.DID. OR US-20070239173-$.DID. OR US-20080027328-$.DID. OR US-20080091179-$.DID. OR US-

EDGE-CARTESSA_0001800

20080119781-$.DID. OR US-20080131004-$.DID. OR US-20080139974-$.DID. OR US-20080193493-$.DID. OR US-20080200861-$.DID. OR US-20080214987-$.DID. OR US-20080215068-$.DID. OR US-20080243039-$.DID. OR US-20080287864-$.DID. OR US-20080300529-$.DID. OR US-20080300552-$.DID. OR US-20090048557-$.DID. OR US-20090053390-$.DID. OR US-20090099091-$.DID. OR US-20090099093-$.DID. OR US-20090124985-$.DID. OR US-20090138026-$.DID. OR US-20090177171-$.DID. OR US-20090192442-$.DID. OR US-20090222023-$.DID. OR US-20100045427-$.DID. OR US-20100049177-$.DID. OR US-20100049210-$.DID. OR US-20110054490-$.DID. OR US-20110066162-$.DID. OR US-20110082415-$.DID. OR US-20120022435-$.DID. OR US-20120136374-$.DID. OR US-20130018317-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID. OR JP-12022003-$.DID. OR JP-2006503627-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID.

| | | | | | | |
|---|---|---|---|---|---|---|
| S8 | 0 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:57 |
| S9 | 484 | (console and manifold and fluid and container and hand$7 and (conduit tube) and vacuum) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 11:04 |
| S10 | 498 | A61B17/54.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:13 |
| S11 | 136 | A61B17/545.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:29 |
| S12 | 583 | A61B19/0248.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:43 |
| S13 | 511 | A61B2019/025.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:50 |
| S14 | 1159 | A61B2017/00199.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:59 |
| S15 | 955 | A61B2017/00017.cpc. | US-PGPUB; | OR | ON | 2015/07/21 13:15 |

EDGE-CARTESSA_0001801

Case 2:20-cv-06082-GRB-ST    Document 92-4    Filed 11/17/22    Page 367 of 574 PageID #: 11679

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S16 | 2160 | A61B2217/005.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S17 | 1269 | A61B2217/007.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S18 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/21 16:03 |
| S19 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 08:38 |
| S20 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:07 |
| S21 | 51 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6238275" \| "6303119").PN. OR ("6527783").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S22 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S23 | 42 | ("20010023351" \| "4572187" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5354307" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6162232" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6299620" \| "6319211" \| "6391034" \| "6423078" \| "6432113" \| "6629983" \| "6652888").PN. OR ("6942649").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:16 |
| S24 | 38 | ("5037432" \| "5100412" \| "5810842" \| "5971999").PN. OR ("6080165").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:17 |
| S25 | 43 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |

EDGE-CARTESSA_0001802

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "6319211").PN. OR ("6592595").URPN. | | | | |
| S26 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S27 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:37 |
| S28 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:38 |
| S29 | 38 | ("2608032" \| "2921585" \| "3574239" \| "3715838" \| "4375740" \| "4482322" \| "4560373" \| "4646480" \| "4671867" \| "4676749" \| "4757814" \| "4765099" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5309683" \| "5460604" \| "5547376" \| "5765759" \| "5810587" \| "5810842" \| "6039745").PN. OR ("6277128").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:39 |
| S30 | 14 | ("3815286" \| "5037431" \| "6183148" \| "6193589" \| "6235039" \| "6238275" \| "6322568").PN. OR ("6503256").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:41 |
| S31 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:44 |
| S32 | 82 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:46 |
| S33 | 107 | ("2608032" \| "2921585" \| "3085573" \| "3574239" \| "3715838" \| "4560373" \| "4646480" \| "4676749" \| "4757814").PN. OR ("5037432").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:53 |
| S34 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:55 |

EDGE-CARTESSA_0001803

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | | | | |
| S35 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 14:45 |
| S36 | 6 | (manifold same container same (antimicrobial disenfect$4)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:29 |
| S37 | 140 | (manifold same container same (antimicrobial disenfect$4 surfactant sanitiz$5)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:32 |
| S38 | 378 | (manifold with (clean$4 sanitiz$4) with container) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:44 |
| S39 | 12 | (manifold with (clean$4 sanitiz$4) with container) and (abrasion or microabrasion) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:45 |
| S40 | 17 | ("2894732" \| "3378234" \| "3468637").PN. OR ("3865352").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 09:24 |
| S41 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:06 |
| S42 | 15 | ("20010023351" \| "20030093089" \| "20060116674" \| "20070156124" \| "6250996" \| "7232444" \| "7651508" \| "D286920" \| "D286921" \| "D321340" \| "D326920" \| "D489816" \| "D548326").PN. OR ("D627876").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:12 |
| S43 | 15 | ("5037432" \| "5971999").PN. OR ("6250996").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:13 |
| S44 | 8 | ("20010023351" \| "20030093089" \| "20030212415" \| "6250996" \| "D450842").PN. OR ("D503979").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:14 |
| S45 | 16 | ("20010023351" \| "20030093089" \| | US- | OR | ON | 2015/07/23 |

EDGE-CARTESSA_0001804

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | "20070156124" \| "4653474" \| "6250396" \| "7232444" \| "D192841" \| "D224070" \| "D249550" \| "D326920" \| "D475463" \| "D489816" \| "D627876").PN. OR ("D682414").URPN. | | PGPUB; USPAT; USOCR | | | 10:15 |
| S46 | 47 | ("7083580" \| "7087063" \| "7094252" \| "7115275" \| "7135011" \| "7153311" \| "7197359" \| "7198623" \| "7241208" \| "7276051" \| "7314326" \| "7316657" \| "7318828" \| "7320691" \| "7352801" \| "7354423" \| "7364565" \| "7384405" \| "7427273" \| "7458944" \| "7476205" \| "7477938" \| "7482314" \| "7489989" \| "7507067" \| "7579900" \| "7597901" \| "7658742" \| "7678120" \| "7744582" \| "7789886" \| "7837695" \| "7901373" \| "7951156" \| "8025669" \| "8048089" \| "8066716" \| "8088085" \| "8128638" \| "8221437" \| "8236008" \| "8277287" \| "8337513" \| "8343116" \| "8814836" \| "RE37796" \| "RE42960").PN. | | US-PGPUB; USPAT | OR | ON | 2016/02/23 12:32 |

## EAST Search History (Interference)

<This search history is empty>

**2/25/2016 12:31:46 PM**
**C:\Users\cknauss\Documents\EAST\Workspaces\14698673.wsp**

EDGE-CARTESSA_0001805

**To:**        jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**      PAIR_eOfficeAction@uspto.gov
**Cc:**        PAIR_eOfficeAction@uspto.gov
**Subject:**   Private PAIR Correspondence Notification for Customer Number 20995

Mar 07, 2016 05:23:55 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | CTFR | 03/07/2016 | EDGE.005C2 |
| | 892 | 03/07/2016 | EDGE.005C2 |
| | 1449 | 03/07/2016 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

     Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001806

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

20995        7590        05/10/2016
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 05/10/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

jayna.cartee@knobbe.com
efiling@knobbe.com

PTOL-90A (Rev. 04/07)

EDGE-CARTESSA_0001807

| *Applicant-Initiated Interview Summary* | Application No. | Applicant(s) |
|---|---|---|
| | 14/698,673 | IGNON ET AL. |
| | Examiner | Art Unit |
| | CHRISTIAN KNAUSS | 3731 |

All participants (applicant, applicant's representative, PTO personnel):

(1) *CHRISTIAN KNAUSS*.

(3) *MASON MARKS*.

(2) *THEODORE PAPAGIANNIS*.

(4) *RYAN SEVERSON*.

Date of Interview: *03 May 2016*.

Type:　☒ Telephonic　☐ Video Conference
　　　☐ Personal [copy given to: ☐ applicant　☐ applicant's representative]

Exhibit shown or demonstration conducted:　☐ Yes　☒ No.
　If Yes, brief description: _____.

Issues Discussed　☐101 ☐112 ☒102 ☒103 ☐Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: *2 and 14*.

Identification of prior art discussed: *Coleman et al. (US 2001/0049511 A1)*.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

*The Examiner and the Applicant's representatives agreed that the proposed amendment from the agenda (attached) would overcome the rejections from the previous Office Action.  The Applicant stated that the proposed amendment (attached) would be made to both independent claims 2 and 14. The amendment will require an updated search by the Examiner.  No allowable subject matter was agreed upon* .

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable period of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☒ Attachment

| /RYAN J. SEVERSON/<br>Primary Examiner, Art Unit 3731 | /C. K./<br>Examiner, Art Unit 3731 |
|---|---|

EDGE-CARTESSA_0001808

## Summary of Record of Interview Requirements

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**

A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
Paragraph (b)

In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2  Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

———

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
– Application Number (Series Code and Serial Number)
– Name of applicant
– Name of examiner
– Date of interview
– Type of interview (telephonic, video-conference, or personal)
– Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
– An indication whether or not an exhibit was shown or a demonstration conducted
– An identification of the specific prior art discussed
–   An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
– The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case. It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
(The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

### Examiner to Check for Accuracy

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

EDGE-CARTESSA_0001809

# Knobbe | Martens

INTELLECTUAL PROPERTY LAW

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
T (949) 760-0404

Theodore G. Papagiannis
Theodore.Papagiannis@knobbe.com

## FACSIMILE TRANSMITTAL SHEET

### CONFIRMATION COPY WILL FOLLOW VIA:

o   MAIL
o   INTERNATIONAL AIRMAIL
o   COURIER
o   E-MAIL

■   WILL NOT FOLLOW
o   HAND DELIVERY
o   WITH ENCLOSURES
o   WITHOUT ENCLOSURES

### Confidentiality Notice:

The documents accompanying this facsimile transmission contain confidential information which may be legally privileged. The information is intended only for the use of the recipient named below. If you have received this facsimile in error, please immediately notify us by telephone to arrange for return of the original documents to us; and any disclosure, copying, distribution or the taking of any action in reliance on the contents of this faxed information is strictly prohibited.

| | |
|---|---|
| TO: | Examiners Christian Knauss & Ryan Severson |
| FIRM: | U.S. Patent and Trademark Office |
| FACSIMILE NO.: | 571 273-8641 |
| OUR REF.: | EDGE.005C2 & EDGE.005C4 |
| APPLICATION NO. | 14/698,673 & 14/700789 |
| FROM: | Ted G. Papagiannis |
| OPERATOR: | Janet Teeters |
| DATE: | May 3, 2016 |

NO. OF PAGES: 3        (incl. cover sheet)

TIME: 7:40 AM PST

### IF YOU DID NOT RECEIVE ALL OF THE PAGES PLEASE CALL BACK IMMEDIATELY
OPERATOR PHONE NO.: (949) 760-0404          FACSIMILE NO.: (949) 760-9502

MESSAGE: Dear Examiner Knauss,

Please find the attached agenda to facilitate our upcoming Interview for U.S. Pat. Appl. No. 14/698,673. My colleague, Mason Marks, and I will call you at 2 pm Eastern. Please note that, in view of the progress made during the previous Interview, we do not plan to discuss any new issues related to U.S. Pat. Appl. No. 14/700,789 – we plan to briefly reiterate the agreed-to strategy that will advance the case and overcome the rejections in the pending Office Action. We look forward to talking to you again. Thank you.

-Ted Papagiannis

Orange County    San Diego    San Francisco    Silicon Valley    Los Angeles    Seattle    Washington DC      knobbe.com

EDGE-CARTESSA_0001810

Case 2:20-cv-06082-GRB-ST     Document 92-4     Filed 11/17/22     Page 376 of 574 PageID #: 11688

## Interview Agenda for U.S. Appl. No. 14/698,673

*(for discussion purposes only)*

General Details
- **Date/Time**: Tuesday, May 3, 2016 at 2 pm Eastern (11 am Pacific)
- **Participants**: Examiners Christian D. Knauss & Ryan Severson, and representatives for Applicant, Theodore G. Papagiannis & Mason M. Marks.
- **Method/Details**: the Interview will be conducted telephonically (Applicant's representatives will call Examiner Knauss at his direct line (571-272-8641)

Comments

Applicant's representative would like to discuss the various rejections raised in the Office Action mailed on March 7, 2016 (the "Office Action"), including:
- The claim objections and rejections
- The anticipation/obviousness rejections of the claims
- The references cited in the Office Action, including U.S. Publ. No. 2001/0049511 to Coleman et al. and U.S. Publ. No. 2003/0093089 to Greenberg.

Applicant's representative would like to discuss the 35 USC §103 rejections presented in the Office Action. For example, although Applicant does not acquiesce to the rejections in the Office Action, one option for overcoming the rejections includes one or more of the amendments provided below (to Claim 2). The contemplated clarifying amendments to Claim 2 are provided simply for discussion purposes to facilitate the Interview, at the Examiner's request, and are not intended to limit the scope of the subject matter disclosed and/or claimed within the present application.

2.　　*(Possible Amendment)* A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

- 1 -

EDGE-CARTESSA_0001811

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and

a vacuum source;

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the [[a ]]vacuum source; and

a user input device for receiving instructions from a user;

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly[[.]]; and

wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.

23251982

- 2 -

EDGE-CARTESSA_0001812

**To:**         jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**       PAIR_eOfficeAction@uspto.gov
**Cc:**         PAIR_eOfficeAction@uspto.gov
**Subject:**    Private PAIR Correspondence Notification for Customer Number 20995

May 10, 2016 05:21:42 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document    | Mailroom Date | Attorney Docket No. |
|-------------|-------------|---------------|---------------------|
| 14698673    | INTV.SUM.APP | 05/10/2016   | EDGE.005C2          |
|             | OA.APPENDIX  | 05/10/2016   | EDGE.005C2          |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001813

Doc code: RCEX                                                                                                PTO/SB/30EFS (07-14)
Doc description: Request for Continued Examination (RCE)                                          Approved for use through 07/31/2016. OMB 0651-0031
                                                                                                                U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

## REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
### (Submitted Only via EFS-Web)

| Application Number | 14698673 | Filing Date | 2015-04-28 | Docket Number (if applicable) | EDGE.005C2 | Art Unit | 3731 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Roger Ignon et al. | | | Examiner Name | Christian D. Knauss | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, to any international application that does not comply with the requirements of 35 U.S.C. 371, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV.

### SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

- [ ] Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

  - [ ] Consider the arguments in the Appeal Brief or Reply Brief previously filed on _____

  - [ ] Other _____

- [x] Enclosed

  - [x] Amendment/Reply

  - [x] Information Disclosure Statement (IDS)

  - [ ] Affidavit(s)/ Declaration(s)

  - [ ] Other _____

### MISCELLANEOUS

- [ ] Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months _____
  (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

- [ ] Other _____

### FEES

- [x] **The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
  The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to
  Deposit Account No [ 111410 ]

### SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

- [x] Patent Practitioner Signature

  Applicant Signature

EFS - Web 2.1.15

EDGE-CARTESSA_0001814

Doc code: RCEX                                                                                                PTO/SB/30EFS (07-14)
Doc description:  Request for Continued Examination (RCE)                    Approved for use through 07/31/2016. OMB 0651-0031
                                                                                                U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /Theodore G. Papagiannis/ | Date (YYYY-MM-DD) | 2016-08-08 |
| Name | Theodore G. Papagiannis | Registration Number | 61546 |

This collection of information is required by 37 CFR 1.114.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EDGE-CARTESSA_0001815

## Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1.      The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2.      A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3.      A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4.      A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5.      A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6.      A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7.      A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8.      A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9.      A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EFS - Web 2.1.15

EDGE-CARTESSA_0001816

EDGE.005C2                                                                                   PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Applicant | : | Ignon et al. |
| App. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3731 |
| Conf No. | : | 7926 |

## AMENDMENT ACCOMPANYING REQUEST FOR CONTINUED EXAMINATION

**Mail Stop RCE**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

This response is being filed after the Office Action mailed on March 7, 2016 (the "Office Action") and is accompanied by a Request for Continued Examination ("RCE").

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Summary of Interview** begins on page 6 of this paper.

**Remarks** begin on page 7 of this paper.

-1-

EDGE-CARTESSA_0001817

**Application No.:**    **14/698,673**
**Filing Date:**        **April 28, 2015**

## AMENDMENTS TO THE CLAIMS

*The following listing of claims replaces all prior versions and listings of claims in the application. The listing of claims presents each claim with its respective status shown in parentheses.*

1.    (*Canceled*)

2.    (*Currently Amended*)    A system for performing a skin treatment procedure, the system comprising:

a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject;

a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly;

wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and

a vacuum source;

a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the [[a ]]vacuum source; and

~~a user input device for receiving instructions from a user;~~

wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly[[.]]; and

wherein, when the vacuum source is activated and the tip contact the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit.

-2-

EDGE-CARTESSA_0001818

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

3.    (*Canceled*)

4.    (*Currently Amended*)  The system of Claim 2, wherein the console comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the first fluid container or the at least a second fluid container ~~at least one fluid container~~ to the handpiece assembly.

5.    (*Previously Presented*)  The system of Claim 4, wherein the user input device comprises a touch screen.

6.    (*Currently Amended*)  The system of Claim 2, wherein the first fluid container or the at least a second fluid container ~~at least one fluid container~~ is releasably coupled to the manifold.

7.    (*Canceled*)

8.    (*Previously Presented*)  The system of Claim 2, wherein the manifold is configured to be placed in fluid communication with at least four fluid containers.

9.    (*Currently Amended*)  The system of Claim 2[[1]], wherein treatment materials from the first fluid container and at least the second fluid container are delivered to the supply conduit sequentially or simultaneously.

10.    (*Previously Presented*)  The system of Claim 2, wherein the console is movable.

11.    (*Previously Presented*)  The system of Claim 2, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

12.    (*Previously Presented*)  The system of Claim 2, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly.

13.    (*Previously Presented*)  The system of Claim 2, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

EDGE-CARTESSA_0001819

**Application No.:**    **14/698,673**
**Filing Date:**        **April 28, 2015**

14.    (*Currently Amended*)  A system for performing a skin treatment procedure, the system comprising:

a manifold in fluid communication with at least two fluid containers, each of the at least two fluid containers being configured to contain a treatment material, wherein the treatment material comprises a liquid;

a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; ~~and~~

a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly; and

a vacuum source; and

a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively coupled to the vacuum source;

wherein the manifold is configured to control a flow of treatment material from each of the at least two fluid containers through the supply conduit;

wherein the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit.

15.    (*Canceled*)

16.    (*Previously Presented*)  The system of Claim 14, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly.

17.    (*Currently Amended*)  The system of Claim 14, wherein the system ~~console~~ comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least two fluid containers ~~at least one fluid container~~.

18.    (*Previously Presented*)  The system of Claim 17, wherein the user input device comprises a touch screen.

19.    (*Currently Amended*)  The system of Claim 14, wherein the at least two fluid containers ~~at least one fluid container~~ is releasably coupled to the manifold.

-4-

EDGE-CARTESSA_0001820

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

20.    (*Previously Presented*)  The system of Claim 14, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject.

21.    (*Previously Presented*)  The system of Claim 14, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold.

EDGE-CARTESSA_0001821

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

## SUMMARY OF INTERVIEW

Applicant thanks Examiners Knauss and Severson for their time and the courtesies extended during the Interview of May 3, 2016.

### Attendees, Date and Type of Interview

The Interview was conducted telephonically on May 3, 2016, and was attended by Examiners Christian Knauss and Ryan Severson, and attorneys for Applicant, Theodore G. Papagiannis and Mason Marks.

### Exhibits and/or Demonstrations

None.

### Identification of Claims Discussed

The pending claims, including independent Claims 2 and 14.

### Identification of References Discussed

U.S. Patent Publication No. 2001/0049511 to Coleman et al. ("Coleman").

### Proposed Amendments, Principal Arguments, Other Matters and Results of Interview

The Examiners and applicant's attorneys discussed the rejections presented in the Office Action in view of Coleman and the pending claims. Agreement was reached that clarifying amendments similar or identical to those presented herein would overcome the present rejections. The Examiners indicated that an updated search would be required.

-6-

EDGE-CARTESSA_0001822

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

## REMARKS

The foregoing amendments and the following remarks are responsive to the Office Action and pursuant to the Interview of May 3, 2016. Claims 2, 4 to 6 and 8 to 21 are currently pending in this application. As indicated in the foregoing listing of claims and discussed in greater detail below, Applicant is presenting clarifying amendments herein to independent Claims 2 and 14, as well as to certain dependent claims. Further, Claim 15 is canceled without prejudice herein. These amendments are presented pursuant to the Interview of May 3, 2016 and are being made to advance prosecution and to further clarify the present claims from the cited art. Applicant does not acquiesce to the rejections included in the Office Action as a result of the amendments to the claims herein. Applicant submits that no new matter is added by the foregoing clarifying claim amendments. Accordingly, Claims 2, 4 to 6, 8 to 14 and 16 to 21 are presented for further consideration. As noted above, this amendment and response is accompanied by a RCE.

### Claim Objections

In the Office Action, Claim 9 is objected to due to certain informalities. Specifically, Claim 9 was inadvertently dependent on Claim 1. In the view of the clarifying amendment to Claim 9 presented herein, Applicant submits that this objection is now moot and should be withdrawn.

### Claim Rejections under 35 U.S.C. §112

According to the Office Action, Claims 4 to 6 and 17 to 19 stand rejected under 35 U.S.C. §112, second paragraph as being indefinite. Applicant respectfully disagrees with and traverses this rejection. However, in order to advance prosecution and to expedite the allowance of the present application, Applicant is incorporating certain clarifying amendments herein to Claims 4, 6, 17 and 19 to address this rejection. In view of the foregoing clarifying amendments, Applicant submits that these rejections are now moot and should be withdrawn.

### Claim Rejections under 35 U.S.C. §102 & §103

In addition, Claims 2, 4, 6, 8 to 12, 14 to 17, 19 and 20 stand rejected under 35 U.S.C. §102(b) as being anticipated by U.S. Publication No. 2001/0049511 to Coleman et al. ("Coleman") in view of U.S. Publication No. 2003/0093089 to Greenberg ("Greenberg").

-7-

**Application No.:    14/698,673**
**Filing Date:        April 28, 2015**

Further, Claims 5 and 18 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Coleman in view of Greenberg and U.S. Publication No. 2003/0018252 to Duchon et al. Finally, Claims 13 and 21 stand rejected under 35 U.S.C. §103(a) as being unpatentable over Coleman in view of U.S. Patent No. 3,865,352 in view of Nelson et al. or Coleman and Greenberg.

Applicant respectfully disagrees with and traverses the anticipation and obviousness rejections presented in the Office Action. As discussed during the Interview of May 3, 2016, Applicant submits that the cited references fail to teach or suggest each and every limitation of the claims, as amended herein. Pursuant to the Interview, Applicant submits that the pending claims are novel, non-obvious and otherwise patentable over Coleman, Greenberg and other references of record, either alone or in combination with one another or any other reference. In addition, the dependent claims are distinguished over the cited art in view of additional language included therein. Accordingly, Applicant requests that the anticipation and obviousness rejections presented in the Office Action be withdrawn.

*Applicant respectfully asserts that the present application is in condition for allowance. If any issues remain, the Examiner is respectfully requested to contact the undersigned.*

## No Disclaimers or Disavowals

Although the present communication may include alterations to the application or claims, or characterizations of claim scope or referenced art, Applicant is not conceding in this application that previously pending claims are not patentable over the cited references. Rather, any alterations or characterizations are being made to facilitate expeditious prosecution of this application. Applicant reserves the right to pursue at a later date any previously pending or other broader or narrower claims that capture any subject matter supported by the present disclosure, including subject matter found to be specifically disclaimed herein or by any prior prosecution. Accordingly, reviewers of this or any parent, child or related prosecution history shall not reasonably infer that Applicant has made any disclaimers or disavowals of any subject matter supported by the present application.

-8-

EDGE-CARTESSA_0001824

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

## Table of U.S. Patents and Applications

Applicant provides the following table to aid the Examiner during prosecution. The following U.S. patents and/or patent applications are in the same patent family as the present application.

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.004A | US | 09/648,025 (Pat. No. 6,641,591) | Aug. 25, 2000 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1 | US | 10/699,747 (Pat. No. 7,789,886) | Nov. 3, 2003 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1DV1 | US | 11/739,615 (Pat. No. 8,337,513) | Apr. 24, 2007 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C2 | US | 11/417,709 (Pat. No. 8,066,716) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C3 | US | 11/417,396 (Pat. No. 7,678,120) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C4 | US | 13/620,164 | Sep. 14, 2012 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C5 | US | 14/702,509 | May 1, 2015 | DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM |
| EDGE.004C6 | US | 14/702,486 | May 1, 2015 | METHODS FOR TREATING THE SKIN USING VACUUM |
| EDGE.005A | US | 11/392,348 (Pat. No. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | US | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **US** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | US | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | US | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |
| EDGE.006A | US | 09/294,254 (Pat. No. 6,162,232) | Apr. 19, 1999 | INSTRUMENTS AND TECHNIQUES FOR HIGH-VELOCITY FLUID ABRASION OF EPIDERMAL LAYERS WITH SKIN COOLING |
| EDGE.007A | US | 09/475480 (Pat. No. 6,299,620) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.008A | US | 09/475479 (Pat. No. 6,387,103) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.022A | US | 11/370,200 | Mar. 7, 2006 | MICRODERMABRASION METHOD AND APPARATUS |
| EDGE.044A | US | 12/362,353 (Pat. No. 9,056,193) | Jan. 29, 2009 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.044C1 | US | 14/734,995 | Jun. 9, 2015 | DEVICES AND SYSTEMS FOR TREATING SKIN SURFACES |
| EDGE.044CP1 | US | 12/832,663 (Pat. No. 8,814,836) | Jul 8, 2010 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN USING TIME-RELEASE SUBSTANCES |
| EDGE.044P1C1 | US | 14/455,762 | Aug. 8, 2014 | DEVICES FOR TREATING SKIN USING TREATMENT MATERIALS LOCATED ALONG A TIP |
| EDGE.047A | US | 12/346,582 (Pat. No. 8,343,116) | Dec. 30, 2008 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.047C1 | US | 13/620,376 | Sep. 14, 2012 | MICRODERMABRASION APPARATUS AND METHOD |

-9-

EDGE-CARTESSA_0001825

**Application No.:**   **14/698,673**
**Filing Date:**       **April 28, 2015**

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.050A | US | 09/540,945 (Pat. No. 6,592,595) | Mar. 31, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050C1 | US | 09/698,409 (Pat. No. 6,527,783) | Oct. 27, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050DV1 | US | 10/177,173 (Pat. No. 6,673,082) | Jun. 20, 2002 | MICRODERMABRASION HANDPIECE WITH SUPPLY AND RETURN LUMENS |
| EDGE.051A | US | 10/315,478 (Pat. No. 6,942,649) | Dec. 10, 2002 | MICRODERMABRASION FLUID APPLICATION SYSTEM AND METHOD |
| EDGE.052A | US | 09/699,220 (Pat. No. 6,629,983) | Oct. 27, 2000 | APPARATUS AND METHOD FOR SKIN/SURFACE ABRASION |
| EDGE.065A | US | 14/211,089 | Mar. 14, 2014 | SKIN TREATMENT SYSTEMS AND METHODS USING NEEDLES |
| EDGE.077A | US | 14/211,290 | Mar. 14, 2014 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.077NP | US | 14/774641 | Sep. 10, 2015 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.090A | US | 14/998,375 | Dec. 23, 2015 | DEVICES AND METHODS FOR TREATING THE SKIN USING A ROLLERBALL OR A WICKING MEMBER |
| EDGE.091A | US | 15/204,939 | Jul. 7, 2016 | DEVICES, SYSTEMS AND METHODS FOR PROMOTING HAIR GROWTH |

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application. To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited. Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

EDGE-CARTESSA_0001826

**Application No.:**    **14/698,673**
**Filing Date:**       **April 28, 2015**

## CONCLUSION

In view of the foregoing amendments and remarks, Applicant respectfully submits that the claims are now in condition for allowance. Accordingly, Applicant respectfully requests reconsideration of the claims in light of the foregoing amendments and remarks. As noted above, this response is accompanied by a Request for Continued Examination.

Applicant has made a good faith effort to place the application in condition for immediate allowance. Nevertheless, if any issues remain or otherwise require clarification, the Examiner is respectfully requested to contact Applicant's attorney at the below-listed telephone number to promptly resolve such issues.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>August 5, 2016</u>                    By:<u>/Theodore G. Papagiannis/</u>
                                                  Theodore G. Papagiannis
                                                  Registration No. 61,546
                                                  Attorney of Record
                                                  Customer No. 20995
                                                  (949) 760-0404

23476930

-11-

EDGE-CARTESSA_0001827

Doc Code: PA
Document Description:  Power of Attorney
PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form.  If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | 14/698,673 |
| Filing Date | April 28, 2015 |
| First Named Inventor | Roger Ignon et al. |
| Title | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Art Unit | 3731 |
| Examiner Name | Christian D. Knauss |
| Attorney Docket Number | EDGE.005C2 |

**SIGNATURE of Applicant or Patent Practitioner**

| Signature | /Theodore G. Papagiannis/ | Date (Optional) | |
|---|---|---|---|
| Name | Theodore G. Papagiannis | Registration Number | 61,546 |
| Title (if Applicant is a juristic entity) | | | |
| Applicant Name (if Applicant is a juristic entity) | | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33.  See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☑  *Total of 1 _____ forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EDGE-CARTESSA_0001828

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

## POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
|  |  |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

[✓] I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above:

20995

OR

[ ] I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

[✓] The address associated with the above-mentioned Customer Number

OR

[ ] The address associated with Customer Number:

OR

| Firm or Individual Name | |
|---|---|
| Address | |
| City | State | Zip |
| Country | |
| Telephone | Email |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

## Edge Systems LLC

[ ] Inventor or Joint Inventor (title not required below)

[ ] Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

[✓] Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

[ ] Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

### SIGNATURE of Applicant for Patent

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| Signature | *William Cohen* | Date (Optional) | 4.6.16 |
|---|---|---|---|
| Name | William Cohen | | |
| Title | President | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

[✓] Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

EDGE-CARTESSA_0001829

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EDGE-CARTESSA_0001830

Docket No.:  EDGE.005C2                                              **Customer No. 20995**

---

## INFORMATION DISCLOSURE STATEMENT

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| Appl. No. | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3731 |
| Conf. No. | : | 7926 |

**Mail Stop Amendment**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

**References and Listing**

Pursuant to 37 CFR 1.56, an Information Disclosure Statement listing references is provided herewith.  Copies of any listed foreign and non-patent literature references are being submitted.  Identification herein is not an admission that any of the references are prior art to the above captioned application.

**Related Applications of Assignee**

Applicant wishes to draw the Examiner's attention to the following patents and/or applications in the same patent family as the present application.

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.004A | US | 09/648,025 (Pat. No. 6,641,591) | Aug. 25, 2000 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1 | US | 10/699,747 (Pat. No. 7,789,886) | Nov. 3, 2003 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C1DV1 | US | 11/739,615 (Pat. No. 8,337,513) | Apr. 24, 2007 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C2 | US | 11/417,709 (Pat. No. 8,066,716) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C3 | US | 11/417,396 (Pat. No. 7,678,120) | May 3, 2006 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |
| EDGE.004C4 | US | 13/620,164 | Sep. 14, 2012 | INSTRUMENTS AND TECHNIQUES FOR CONTROLLED REMOVAL OF EPIDERMAL LAYERS |

EDGE-CARTESSA_0001831

**Application No.:    14/698,673**
**Filing Date:        April 28, 2015**

| Attorney Docket No. | Country | App. No. (Pat. No., if appl.) | Filing Date | Title |
|---|---|---|---|---|
| EDGE.004C5 | US | 14/702,509 | May 1, 2015 | DEVICES AND SYSTEMS FOR TREATING THE SKIN USING VACUUM |
| EDGE.004C6 | US | 14/702,486 | May 1, 2015 | METHODS FOR TREATING THE SKIN USING VACUUM |
| EDGE.005A | US | 11/392,348 (Pat. No. 8,048,089) | Mar. 29, 2006 | APPARATUS AND METHODS FOR TREATING THE SKIN |
| EDGE.005C1 | US | 13/267,554 | Oct. 6, 2011 | REMOVABLE TIPS FOR SKIN TREATMENT SYSTEMS |
| **EDGE.005C2** | **US** | **14/698,673** (*present application*) | **Apr. 28, 2015** | **CONSOLE SYSTEM FOR THE TREATMENT OF SKIN** |
| EDGE.005C3 | US | 14/698,713 | Apr. 28, 2015 | METHODS AND SYSTEMS FOR EXTRACTION OF MATERIALS FROM SKIN |
| EDGE.005C4 | US | 14/700,789 | Apr. 30, 2015 | TIP WITH EMBEDDED MATERIALS FOR SKIN TREATMENT |
| EDGE.006A | US | 09/294,254 (Pat. No. 6,162,232) | Apr. 19, 1999 | INSTRUMENTS AND TECHNIQUES FOR HIGH-VELOCITY FLUID ABRASION OF EPIDERMAL LAYERS WITH SKIN COOLING |
| EDGE.007A | US | 09/475480 (Pat. No. 6,299,620) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.008A | US | 09/475479 (Pat. No. 6,387,103) | Dec. 30, 1999 | INSTRUMENTS AND TECHNIQUES FOR INDUCING NEOCOLLAGENESIS IN SKIN TREATMENTS |
| EDGE.022A | US | 11/370,200 | Mar. 7, 2006 | MICRODERMABRASION METHOD AND APPARATUS |
| EDGE.044A | US | 12/362,353 (Pat. No. 9,056,193) | Jan. 29, 2009 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.044C1 | US | 14/734,995 | Jun. 9, 2015 | DEVICES AND SYSTEMS FOR TREATING SKIN SURFACES |
| EDGE.044CP1 | US | 12/832,663 (Pat. No. 8,814,836) | Jul 8, 2010 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN USING TIME-RELEASE SUBSTANCES |
| EDGE.044P1C1 | US | 14/455,762 | Aug. 8, 2014 | DEVICES FOR TREATING SKIN USING TREATMENT MATERIALS LOCATED ALONG A TIP |
| EDGE.047A | US | 12/346,582 (Pat. No. 8,343,116) | Dec. 30, 2008 | APPARATUS AND METHOD FOR TREATING THE SKIN |
| EDGE.047C1 | US | 13/620,376 | Sep. 14, 2012 | MICRODERMABRASION APPARATUS AND METHOD |
| EDGE.050A | US | 09/540,945 (Pat. No. 6,592,595) | Mar. 31, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050C1 | US | 09/698,409 (Pat. No. 6,527,783) | Oct. 27, 2000 | MICRODERMABRASION AND SUCTION MASSAGE APPARATUS AND METHOD |
| EDGE.050DV1 | US | 10/177,173 (Pat. No. 6,673,082) | Jun. 20, 2002 | MICRODERMABRASION HANDPIECE WITH SUPPLY AND RETURN LUMENS |
| EDGE.051A | US | 10/315,478 (Pat. No. 6,942,649) | Dec. 10, 2002 | MICRODERMABRASION FLUID APPLICATION SYSTEM AND METHOD |
| EDGE.052A | US | 09/699,220 (Pat. No. 6,629,983) | Oct. 27, 2000 | APPARATUS AND METHOD FOR SKIN/SURFACE ABRASION |
| EDGE.065A | US | 14/211,089 | Mar. 14, 2014 | SKIN TREATMENT SYSTEMS AND METHODS USING NEEDLES |
| EDGE.077A | US | 14/211,290 | Mar. 14, 2014 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.077NP | US | 14/774641 | Sep. 10, 2015 | DEVICES, SYSTEMS AND METHODS FOR TREATING THE SKIN |
| EDGE.090A | US | 14/998,375 | Dec. 23, 2015 | DEVICES AND METHODS FOR TREATING THE SKIN USING A ROLLERBALL OR A WICKING MEMBER |
| EDGE.091A | US | 15/204,939 | Jul. 7, 2016 | DEVICES, SYSTEMS AND METHODS FOR PROMOTING HAIR GROWTH |

-2-

EDGE-CARTESSA_0001832

**Application No.:**    **14/698,673**
**Filing Date:**    **April 28, 2015**

Copies of these patents and patent applications, including any pending claims, office actions, allowances and/or other communications, are available through PALM and/or PAIR. However, if the Examiner so requests, Applicant will be happy to provide the Examiner with copies of any applications, pending claims, office actions, allowances, communications or any other documents, at any time.

Further, Applicant notes for the record that the claims of the present application are different and may be broader in scope than the claims in any related patent or application.  To the extent that any statements made in a related case (such as amendments or characterizations regarding the scope of a claim or prior art) could be construed as a disclaimer of any subject matter supported by the present disclosure, Applicant rescinds and retracts such disclaimer. Accordingly, any listed or referenced prior art may need to be re-visited.  Further, any objections or rejections made by the Examiner in the issued and allowed cases identified above may need to be re-visited.

**Timing of Disclosure**

This Information Disclosure Statement is being filed with an RCE and no fee is required. However, the Commissioner is hereby authorized to charge any additional fees which may be required, or credit any overpayment, to Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: August 8, 2016                    By:/Theodore G. Papagiannis/
                                         Theodore G. Papagiannis
                                         Registration No. 61,546
                                         Attorney of Record
                                         Customer No. 20995
                                         (949) 760-0404

23960308

-3-

EDGE-CARTESSA_0001833

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | |
|---|---|
| | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Roger Ignon |
| | Art Unit | 3731 |
| *(Multiple sheets used when necessary)* | Examiner | Christian D. Knauss |
| SHEET 1 OF 1 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2008/0154161 | 06-26-2008 | Abbott | |
| | 2 | 2008/0208146 | 08-28-2008 | Brandwein et al. | |
| | 3 | 2016/0038183 | 02-11-2016 | Ignon et al. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials | Cite No. | Foreign Patent Document<br>*Country Code-Number-Kind Code*<br>Example: JP 1234567 A1 | Publication Date<br>MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | | | | | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | | | |

23960355

| Examiner Signature | | Date Considered | |
|---|---|---|---|

***Examiner:*** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.

EDGE-CARTESSA_0001834

## Electronic Patent Application Fee Transmittal

| Application Number: | 14698673 |
|---|---|
| Filing Date: | 28-Apr-2015 |
| Title of Invention: | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| First Named Inventor/Applicant Name: | Roger Ignon |
| Filer: | Theodore G. Papagiannis/janet teeters |
| Attorney Docket Number: | EDGE.005C2 |

Filed as Small Entity

**Filing Fees for**   Utility under 35 USC 111(a)

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

EDGE-CARTESSA_0001835

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension - 2 months with $0 paid | 2252 | 1 | 300 | 300 |
| **Miscellaneous:** | | | | |
| Request for Continued Examination | 2801 | 1 | 600 | 600 |
| **Total in USD ($)** | | | | **900** |

EDGE-CARTESSA_0001836

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 26580096 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/ThuyQuyen Nguyen |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 08-AUG-2016 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 17:47:21 |
| **Application Type:** | Utility under 35 USC 111(a) |

# Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $900 |
| RAM confirmation Number | 080916INTEFSW17475500 |
| Deposit Account | 2598 |
| Authorized User | ThuyQuyen Nguyen |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
| 37 CFR 1.16 (National application filing, search, and examination fees) | |
| 37 CFR 1.17 (Patent application and reexamination processing fees) | |

EDGE-CARTESSA_0001837

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Request for Continued Examination (RCE) | EDGE-005C2_RCE.pdf | 1349922<br><br>7fd64e3fdaad6bb38962da96d1126513389c7e32 | no | 3 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | | EDGE005C2_OAR.pdf | 71587<br><br>68bc8cf4e449910837a8cecdede071a1c4d101c5 | yes | 11 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |
| Amendment Submitted/Entered with Filing of CPA/RCE | 1 | 1 |
| Claims | 2 | 5 |
| Applicant summary of interview with examiner | 6 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | 7 | 11 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Power of Attorney | EDGE-005C2_POA.PDF | 268311<br><br>8e9d8d4195fac7f81fc84eeed8206fdb8f355e85 | no | 3 |

| Warnings: |
|---|
| Information: |

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | | EDGE-005C2_IDS.pdf | 72248<br><br>932b573eef74c8431b72d1bca79c57e1d5821f48 | yes | 4 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| Document Description | Start | End |

EDGE-CARTESSA_0001838

| | Transmittal Letter | | 1 | 3 |
|---|---|---|---|---|
| | Information Disclosure Statement (IDS) Form (SB08) | | 4 | 4 |

**Warnings:**

**Information:**

| 5 | Fee Worksheet (SB06) | fee-info.pdf | 32572<br><br>f6391892e9b7fd20704fd91e34d638bc2be7f69c | no | 2 |
|---|---|---|---|---|---|

**Warnings:**

**Information:**

| | Total Files Size (in bytes): | 1794640 |
|---|---|---|

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE-CARTESSA_0001839

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD Substitute for Form PTO-875 | Application or Docket Number 14/698,673 | Filing Date 04/28/2015 | ☐ To be Mailed |
|---|---|---|---|

**ENTITY:** ☐ LARGE  ☒ SMALL  ☐ MICRO

## APPLICATION AS FILED – PART I

| | (Column 1) | (Column 2) | | | |
|---|---|---|---|---|---|
| FOR | NUMBER FILED | NUMBER EXTRA | | RATE ($) | FEE ($) |
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | | X $       = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | | X $       = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | **08/08/2016** | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * 17 | Minus | ** 20 | = 0 | | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | *** 3 | = 0 | | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | 0 |

| | | (Column 1) | | (Column 2) | (Column 3) | | | |
|---|---|---|---|---|---|---|---|---|
| **AMENDMENT** | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | | RATE ($) | ADDITIONAL FEE ($) |
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | | X $       = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | | X $       = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | |
| | | | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
THUY TA

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

EDGE-CARTESSA_0001840



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 |

**CONFIRMATION NO. 7926**

20995
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

**POA ACCEPTANCE LETTER**

*OC000000085219068*

Date Mailed: 08/19/2016

# NOTICE OF ACCEPTANCE OF POWER OF ATTORNEY

This is in response to the Power of Attorney filed 08/08/2016.

The Power of Attorney in this application is accepted. Correspondence in this application will be mailed to the above address as provided by 37 CFR 1.33.

Questions about the contents of this notice and the
requirements it sets forth should be directed to the Office
of Data Management, Application Assistance Unit, at
**(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/agizaw/

EDGE-CARTESSA_0001841

**To:**        jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**      PAIR_eOfficeAction@uspto.gov
**Cc:**        PAIR_eOfficeAction@uspto.gov
**Subject:**   Private PAIR Correspondence Notification for Customer Number 20995

Aug 19, 2016 05:25:16 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | N570 | 08/19/2016 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001842

| | |
|---|---|
| **To:** | jayna.cartee@knobbe.com,efiling@knobbe.com, |
| **From:** | PAIR_eOfficeAction@uspto.gov |
| **Cc:** | PAIR_eOfficeAction@uspto.gov |
| **Subject:** | Private PAIR Correspondence Notification for Customer Number 20995 |

Aug 19, 2016 05:25:16 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | N570 | 08/19/2016 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001843

**To:**              jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**         PAIR_eOfficeAction@uspto.gov
**Cc:**               PAIR_eOfficeAction@uspto.gov
**Subject:**     Private PAIR Correspondence Notification for Customer Number 20995

Aug 19, 2016 05:25:16 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|-------------|----------|---------------|---------------------|
| 14698673 | N570 | 08/19/2016 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001844

**To:** jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:** PAIR_eOfficeAction@uspto.gov
**Cc:** PAIR_eOfficeAction@uspto.gov
**Subject:** Private PAIR Correspondence Notification for Customer Number 20995

Aug 19, 2016 05:25:16 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | N570 | 08/19/2016 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001845



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| 20995 | 7590 | 09/14/2016 |
|---|---|---|

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

DATE MAILED: 09/14/2016

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

TITLE OF INVENTION: CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/14/2016 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.   THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT.   SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE
MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED.   THIS
STATUTORY PERIOD CANNOT BE EXTENDED.   SEE 35 U.S.C. 151.   THE ISSUE FEE DUE INDICATED ABOVE DOES
NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION.   IF AN ISSUE FEE HAS
PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM
WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW
DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

EDGE-CARTESSA_0001846

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** <u>Mail</u>   **Mail** Mail Stop ISSUE FEE
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
or <u>Fax</u>   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

20995        7590        09/14/2016

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

TITLE OF INVENTION: CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/14/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KNAUSS, CHRISTIAN D | 3731 | 606-131000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

❏ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❏ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent):  ❏ Individual  ❏ Corporation or other private group entity  ❏ Government

4a. The following fee(s) are submitted:
❏ Issue Fee
❏ Publication Fee (No small entity discount permitted)
❏ Advance Order - # of Copies _____

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
❏ A check is enclosed.
❏ Payment by credit card. Form PTO-2038 is attached.
❏ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

❏ Applicant certifying micro entity status. See 37 CFR 1.29

❏ Applicant asserting small entity status. See 37 CFR 1.27

❏ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____    Date _____

Typed or printed name _____    Registration No. _____

Page 2 of 3

EDGE-CARTESSA_0001847



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

| EXAMINER |
|---|
| KNAUSS, CHRISTIAN D |

20995      7590      09/14/2016
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

| ART UNIT | PAPER NUMBER |
|---|---|
| 3731 | |

DATE MAILED: 09/14/2016

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

Page 3 of 3

PTOL-85 (Rev. 02/11)

EDGE-CARTESSA_0001848

| *Notice Requiring Inventor's Oath or Declaration* | Application No. 14/698,673 | Applicant(s) Roger Ignon | |
|---|---|---|---|
| | Examiner KNAUSS, CHRISTIAN D | Art Unit 3731 | |

This notice is an attachment to the Notice of Allowability (PTOL-37), or the Notice of Allowability For A Design Application (PTOL-37D).

An inventor's oath or declaration in compliance with 37 CFR 1.63 or 1.64 executed by or with respect to each inventor has not yet been submitted.

An oath or declaration in compliance with 37 CFR 1.63, or a substitute statement in compliance with 37 CFR 1.64, executed by or with respect to each inventor (for any inventor for which a compliant oath, declaration, or substitute statement has not yet been submitted) MUST be filed <u>no later than the date on which the issue fee is paid.</u> See 35 U.S.C. 115(f). Failure to timely comply will result in ABANDONMENT of this application.

A properly executed inventor's oath to declaration has not been received for the following inventor(s):

If applicant previously filed one or more oaths, declarations, or substitute statements, applicant may have received an informational notice regarding deficiencies therein.

The following deficiencies are noted:

INFORMAL ACTION PROBLEMS
- A properly executed inventor's oath or declaration has not been received for the following inventor(s): **Roger Ignon**, **Scott Mallett**, **Abraham Solano**, and **William Cohen**.
  Applicant may submit the inventor's oath or declaration at any time before the Notice of Allowance and Fee(s) Due, PTOL-85, is mailed.

Questions relating to this Notice should be directed to the Application Assistance Unit at 571-272-4200.

U.S. Patent and Trademark Office
PTO-2306 (01-13)                            **Notice Requiring Inventor's Oath or Declaration**

EDGE-CARTESSA_0001849

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EDGE-CARTESSA_0001850

| | Application No.<br>14/698,673 | Applicant(s)<br>IGNON ET AL. | |
|---|---|---|---|
| **_Notice of Allowability_** | Examiner<br>CHRISTIAN KNAUSS | Art Unit<br>3731 | AIA (First Inventor to File)<br>Status<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *See Continuation Sheet*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *2,4-6,8-14 and 16-21*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All    b) ☐ Some    *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____ .

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☒ Interview Summary (PTO-413), Paper No./Mail Date *20160818* .

5. ☒ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____ .

| /RYAN J. SEVERSON/<br>Primary Examiner, Art Unit 3731 | /C. K./<br>Examiner, Art Unit 3731 |
|---|---|

EDGE-CARTESSA_0001851

**Continuation Sheet (PTOL-37)**                                    **Application No.  14/698,673**

Continuation of Item 1. This communication is responsive to :  the Request for Continued Examination filed 8/8/16 and the Examiner's Amendment of 8/30/16.

2

EDGE-CARTESSA_0001852

Application/Control Number: 14/698,673                                                      Page 2

Art Unit: 3731

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

1.      The present application is being examined under the pre-AIA first to invent

provisions.

### EXAMINER'S AMENDMENT

2.      An examiner's amendment to the record appears below. Should the changes

and/or additions be unacceptable to applicant, an amendment may be filed as provided

by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be

submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in an interview with

Theodore Papagiannis on 8/30/16.

The application has been amended as follows:


**IN THE CLAIMS**


In claim 2, line 23, deleted "contact" and inserted --contacts-- in its place


In claim 14, line 10, deleted "and"


### *Allowable Subject Matter*

3.      Claims 2, 4-6, 8-14, and 16-21 allowed.

EDGE-CARTESSA_0001853

Application/Control Number: 14/698,673                                                    Page 3

Art Unit: 3731

4.      The following is an examiner's statement of reasons for allowance: Claim 2 was

amended to recite that the treatment material comprises a liquid and that when the

vacuum source is activated and the tip contacts the skin surface, a suction force is

created within the waste conduit and along the tip, thereby removing waste from the

skin surface via the waste conduit while drawing treatment material from the first fluid

container or the second fluid container to the tip via the supply conduit.  These

limitations, in combination with the other limitations in the claim are not disclosed or

made obvious by the prior art of record.  Claims 4-6 and 8-13 are all dependent on

claim 2, and thus are also allowable over the prior art of record.

5.      Specifically, the previously cited Coleman reference fails to disclose or teach that

when the vacuum source is activated and the tip contacts the skin surface, a suction

force is created within the waste conduit and along the tip, thereby removing waste from

the skin surface via the waste conduit while drawing treatment material from the first

fluid container or the second fluid container to the tip via the supply conduit.  Instead,

Coleman teaches that motor 66 activates valves 62A-62D to draw treatment material

from the first fluid container or the second fluid container.  Coleman does not disclose or

teach that the vacuum source draws treatment material from the fluid containers.

6.      Claim 14 was amended to require a system for performing a skin treatment

procedure, the system comprising, inter alia, a manifold in fluid communication with at

least two fluid containers, each of the at least two fluid containers configured to contain

a treatment material, wherein the treatment material comprises a liquid, a handpiece

assembly comprising a tip, a supply conduit secured to the handpiece assembly, a

EDGE-CARTESSA_0001854

Application/Control Number: 14/698,673                                    Page 4
Art Unit: 3731

vacuum source, and a waste conduit in fluid communication with the handpiece and operatively connected to the vacuum source.  Claim 14 further requires that the manifold is configured to control a flow of treatment material from each of the at least two fluid containers through the supply conduit, and that the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit.  These limitations, in combination with the other limitations in the claim, are not disclosed or made obvious in the prior art of record.  Claims 16-21 are all dependent on claim 14, and thus are also allowable over the prior art of record.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee.  Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."


## Conclusion

7.      Any inquiry concerning this communication or earlier communications from the examiner should be directed to CHRISTIAN KNAUSS whose telephone number is (571)272-8641.  The examiner can normally be reached on Monday-Friday 8:00 am - 5 pm EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Corrine McDermott can be reached on (571)272-4754.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

EDGE-CARTESSA_0001855

Application/Control Number: 14/698,673                                          Page 5
Art Unit: 3731

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/C. K./
Examiner, Art Unit 3731

/RYAN J. SEVERSON/
Primary Examiner, Art Unit 3731

EDGE-CARTESSA_0001856

| | Application No. | Applicant(s) |
|---|---|---|
| **_Examiner-Initiated Interview Summary_** | 14/698,673 | IGNON ET AL. |
| | **Examiner** | **Art Unit** | |
| | CHRISTIAN KNAUSS | 3731 | |

All participants (applicant, applicant's representative, PTO personnel):

(1) _CHRISTIAN KNAUSS_.                        (3)_____.

(2) _THEODORE PAPAGIANNIS_.                (4)_____.

Date of Interview: _30 August 2016_.

Type:    ☒ Telephonic    ☐ Video Conference
         ☐ Personal [copy given to: ☐ applicant    ☐ applicant's representative]

Exhibit shown or demonstration conducted:    ☐ Yes    ☒ No.
    If Yes, brief description: _____.

Issues Discussed    ☐101 ☐112 ☐102 ☐103 ☒Others
(For each of the checked box(es) above, please describe below the issue and detailed description of the discussion)

Claim(s) discussed: _2 and 14_.

Identification of prior art discussed: _none_.

Substance of Interview
(For each issue discussed, provide a detailed description and indicate if agreement was reached. Some topics may include: identification or clarification of a reference or a portion thereof, claim interpretation, proposed amendments, arguments of any applied references etc...)

_The Examiner contacted the Applicant's representative to propose Examiner's amendments. The Applicant's representative authorized the Examiner to enter the Examiner's amendments_.

**Applicant recordation instructions**: It is not necessary for applicant to provide a separate record of the substance of interview.

**Examiner recordation instructions**: Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

☐ Attachment

| /RYAN J. SEVERSON/<br>Primary Examiner, Art Unit 3731 | /C. K./<br>Examiner, Art Unit 3731 |
|---|---|

U.S. Patent and Trademark Office
PTOL-413B (Rev. 8/11/2010)            **Interview Summary**            Paper No. 20160818

EDGE-CARTESSA_0001857

PTO/SB/08 Equivalent

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Roger Ignon |
| | Art Unit | 3731 |
| *(Multiple sheets used when necessary)* | Examiner | Christian D. Knauss |
| SHEET 1 OF 1 | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 1 | 2008/0154161 | 06-26-2008 | Abbott | |
| | 2 | 2008/0208146 | 08-28-2008 | Brandwein et al. | |
| | 3 | 2016/0038183 | 02-11-2016 | Ignon et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Foreign Patent Document Country Code-Number-Kind Code Example: JP 1234567 A1 | Publication Date MM-DD-YYYY | Name | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear | T[1] |
|---|---|---|---|---|---|---|
| | | | | | | |

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials | Cite No. | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[1] |
|---|---|---|---|
| | | | |

23960355

| | | | |
|---|---|---|---|
| Examiner Signature | /CHRISTIAN D KNAUSS/ | Date Considered | 08/18/2016 |

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T[1]** - Place a check mark in this area when an English language Translation is attached.
ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.D.K/

EDGE-CARTESSA_0001858



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

## BIB DATA SHEET

**CONFIRMATION NO. 7926**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 **RULE** | 606 | 3731 | EDGE.005C2 |

**APPLICANTS**
EDGE SYSTEMS LLC, Signal Hill, CA;

**INVENTORS**
Roger Ignon, Redondo Beach, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

** CONTINUING DATA ************************* OK /CK/
This application is a CON of 13/267,554 10/06/2011
    which is a CON of 11/392,348 03/29/2006 PAT 8048089
    which claims benefit of 60/755,310 12/30/2005
    and claims benefit of 60/764,668 02/02/2006

** FOREIGN APPLICATIONS ************************* none /CK/

** IF REQUIRED, FOREIGN FILING LICENSE GRANTED ** ** SMALL ENTITY **
05/07/2015

| Foreign Priority claimed ☐ Yes ☑ No<br>35 USC 119(a-d) conditions met ☐ Yes ☑ No<br>Verified and    /CHRISTIAN D KNAUSS/<br>Acknowledged    Examiner's Signature | ☐ Met after Allowance<br><br>Initials | STATE OR COUNTRY<br><br>CA | SHEETS DRAWINGS<br><br>25 | TOTAL CLAIMS<br><br>20 | INDEPENDENT CLAIMS<br><br>2 |
|---|---|---|---|---|---|

**ADDRESS**

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

**TITLE**

CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| FILING FEE RECEIVED<br><br>800 | FEES: Authority has been given in Paper<br>No._____ to charge/credit DEPOSIT ACCOUNT<br>No._____ for following: | ☐ All Fees |
|---|---|---|
| | | ☐ 1.16 Fees (Filing) |
| | | ☐ 1.17 Fees (Processing Ext. of time) |
| | | ☐ 1.18 Fees (Issue) |
| | | ☐ Other _____ |
| | | ☐ Credit |

BIB (Rev. 05/07).

EDGE-CARTESSA_0001859

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | Examiner | Art Unit |
| | CHRISTIAN KNAUSS | 3731 |

**CPC**

| Symbol | | | | Type | Version |
|---|---|---|---|---|---|
| A61M | 35 | / | 003 | F | 2013-01-01 |
| A61B | 17 | / | 545 | I | 2013-01-01 |
| A61B | 2017 | / | 00199 | A | 2013-01-01 |
| A61B | 2017 | / | 00761 | A | 2013-01-01 |
| A61N | 5 | / | 0616 | A | 2013-01-01 |
| A61B | 2217 | / | 005 | A | 2013-01-01 |
| A61M | 1 | / | 009 | I | 2014-02-04 |
| A61B | 17 | / | 3205 | I | 2013-01-01 |
| A61B | 17 | / | 50 | I | 2013-01-01 |
| A61B | 2017 | / | 320004 | A | 2013-01-01 |
| A61B | 50 | / | 10 | I | 2016-02-01 |
| A61B | 50 | / | 13 | I | 2016-02-01 |
| A61B | 17 | / | 54 | I | 2013-01-01 |
| | | / | | | |
| | | / | | | |

**CPC Combination Sets**

| Symbol | | | | Type | Set | Ranking | Version |
|---|---|---|---|---|---|---|---|
| | | / | | | | | |
| | | / | | | | | |

| /C.K./<br>Examiner.Art Unit 3731<br><br>(Assistant Examiner) | 08/18/2016<br><br>(Date) | **Total Claims Allowed:**<br><br>17 | |
|---|---|---|---|
| /RYAN J SEVERSON/<br>Primary Examiner.Art Unit 3731<br><br>(Primary Examiner) | 09/01/2016<br><br>(Date) | O.G. Print Claim(s)<br><br>1 | O.G. Print Figure<br><br>1 |

U.S. Patent and Trademark Office                              Part of Paper No. 20160818

EDGE-CARTESSA_0001860

| *Issue Classification* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | Examiner | Art Unit |
| | CHRISTIAN KNAUSS | 3731 |

| US ORIGINAL CLASSIFICATION | | INTERNATIONAL CLASSIFICATION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| CLASS | SUBCLASS | CLAIMED | | | | | NON-CLAIMED | | |
| | | A | 6 | 1 | M | 35 / 00 (2006.01.01) | | | |

**CROSS REFERENCE(S)**

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| /C.K./ Examiner.Art Unit 3731 | 08/18/2016 | **Total Claims Allowed:** | |
|---|---|---|---|
| (Assistant Examiner) | (Date) | 17 | |
| /RYAN J SEVERSON/ Primary Examiner.Art Unit 3731 | 09/01/2016 | O.G. Print Claim(s) | O.G. Print Figure |
| (Primary Examiner) | (Date) | 1 | 1 |

U.S. Patent and Trademark Office

Part of Paper No. 20160818

EDGE-CARTESSA_0001861

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14698673 | IGNON ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTIAN KNAUSS | 3731 |

| ☐ | Claims renumbered in the same order as presented by applicant | | | | ☐ CPA | | ☐ T.D. | | ☐ R.1.47 | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
| | 1 | 13 | 17 | | | | | | | | | | | | |
| 1 | 2 | 14 | 18 | | | | | | | | | | | | |
| | 3 | 15 | 19 | | | | | | | | | | | | |
| 2 | 4 | 16 | 20 | | | | | | | | | | | | |
| 3 | 5 | 17 | 21 | | | | | | | | | | | | |
| 4 | 6 | | | | | | | | | | | | | | |
| | 7 | | | | | | | | | | | | | | |
| 5 | 8 | | | | | | | | | | | | | | |
| 6 | 9 | | | | | | | | | | | | | | |
| 7 | 10 | | | | | | | | | | | | | | |
| 8 | 11 | | | | | | | | | | | | | | |
| 9 | 12 | | | | | | | | | | | | | | |
| 10 | 13 | | | | | | | | | | | | | | |
| 11 | 14 | | | | | | | | | | | | | | |
| | 15 | | | | | | | | | | | | | | |
| 12 | 16 | | | | | | | | | | | | | | |

| /C.K./ Examiner.Art Unit 3731 (Assistant Examiner) | 08/18/2016 (Date) | **Total Claims Allowed:** 17 | |
|---|---|---|---|
| /RYAN J SEVERSON/ Primary Examiner.Art Unit 3731 (Primary Examiner) | 09/01/2016 (Date) | O.G. Print Claim(s) 1 | O.G. Print Figure 1 |

U.S. Patent and Trademark Office

Part of Paper No. 20160818

EDGE-CARTESSA_0001862

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S1 | 29 | (roger near2 ignon).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:00 |
| S2 | 101 | (scott near2 mallett).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:04 |
| S3 | 3 | (abraham near2 solano).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:06 |
| S4 | 100 | (william near2 cohen).in. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:07 |
| S5 | 24 | (edge near2 systems).as. | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:09 |
| S6 | 310 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US-5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR | US-PGPUB; USPAT | OR | ON | 2015/07/21 10:14 |

EDGE-CARTESSA_0001863

```
US-5807353-$.DID. OR US-5810842-$.DID. OR
US-5813416-$.DID. OR US-5817050-$.DID. OR
US-5846215-$.DID. OR US-5848998-$.DID. OR
US-5861142-$.DID. OR US-5873881-$.DID. OR
US-5879323-$.DID. OR US-5882201-$.DID. OR
US-5885260-$.DID. OR US-5908401-$.DID. OR
US-5919152-$.DID. OR US-5954730-$.DID. OR
US-5971999-$.DID. OR US-5980555-$.DID. OR
US-6019749-$.DID. OR US-6024733-$.DID. OR
US-6027402-$.DID. OR US-6039745-$.DID. OR
US-6042552-$.DID. OR US-6080165-$.DID. OR
US-6080166-$.DID. OR US-6090085-$.DID. OR
US-6120512-$.DID. OR US-6136008-$.DID. OR
US-6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID. OR
US-6159226-$.DID. OR US-6162232-$.DID. OR
US-6183451-$.DID. OR US-6183483-$.DID. OR
US-6231593-$.DID. OR US-6238275-$.DID. OR
US-6241739-$.DID. OR US-6264666-$.DID. OR
US-6277128-$.DID. OR US-6283978-$.DID. OR
US-6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID. OR
US-6368333-$.DID. OR US-6387103-$.DID. OR
US-6409736-$.DID. OR US-6410599-$.DID. OR
US-6414032-$.DID. OR US-6420431-$.DID. OR
US-6423078-$.DID. OR US-6423750-$.DID. OR
US-6432113-$.DID. OR US-6471712-$.DID. OR
US-6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID. OR
US-6500183-$.DID. OR US-6503256-$.DID. OR
US-6511486-$.DID. OR US-6514262-$.DID. OR
US-6527783-$.DID. OR US-6535761-$.DID. OR
US-6540757-$.DID. OR US-6562013-$.DID. OR
US-6562050-$.DID. OR US-6564093-$.DID. OR
US-6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID. OR
US-6641591-$.DID. OR US-6645184-$.DID. OR
US-6652888-$.DID. OR US-6673081-$.DID. OR
US-6673082-$.DID. OR US-6685853-$.DID. OR
US-6687537-$.DID. OR US-6695853-$.DID. OR
US-6735470-$.DID. OR US-6743215-$.DID. OR
US-6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID. OR
US-6924649-$.DID. OR US-6926681-$.DID. OR
US-6942649-$.DID. OR US-7001355-$.DID. OR
US-7004933-$.DID. OR US-7044938-$.DID. OR
US-7052503-$.DID. OR US-7069073-$.DID. OR
US-7070488-$.DID. OR US-7083580-$.DID. OR
US-7087063-$.DID. OR US-7094252-$.DID. OR
US-7115275-$.DID. OR US-7135011-$.DID. OR
US-7153311-$.DID. OR US-7197359-$.DID. OR
US-7198623-$.DID. OR US-7241208-$.DID. OR
US-7276051-$.DID. OR US-7314326-$.DID. OR
US-7316657-$.DID. OR US-7318828-$.DID. OR
US-7320691-$.DID. OR US-7320801-$.DID. OR
US-7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID. OR
US-7458944-$.DID. OR US-7476205-$.DID. OR
US-7477938-$.DID. OR US-7482314-$.DID. OR
US-7489989-$.DID. OR US-7507228-$.DID. OR
US-7582067-$.DID. OR US-7597900-$.DID. OR
US-7597901-$.DID. OR US-7658742-$.DID. OR
US-7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID. OR
```

EDGE-CARTESSA_0001864

US-7901373-$.DID. OR US-7951156-$.DID. OR US-8025669-$.DID. OR US-8048089-$.DID. OR US-8066716-$.DID. OR US-8088085-$.DID. OR US-8128638-$.DID. OR US-8221437-$.DID. OR US-8236008-$.DID. OR US-8277287-$.DID. OR US-8337513-$.DID. OR US-8343116-$.DID. OR US-8814836-$.DID. OR US-20010023351-$.DID. OR US-20010049511-$.DID. OR US-20020016601-$.DID. OR US-20020041891-$.DID. OR US-20020058952-$.DID. OR US-20020107527-$.DID. OR US-20020133110-$.DID. OR US-20020151826-$.DID. OR US-20020188261-$.DID. OR US-20030012415-$.DID. OR US-20030060834-$.DID. OR US-20030093040-$.DID. OR US-20030093089-$.DID. OR US-20030097139-$.DID. OR US-20030187462-$.DID. OR US-20030208159-$.DID. OR US-20030212127-$.DID. OR US-20030212415-$.DID. OR US-20040010222-$.DID. OR US-20040010269-$.DID. OR US-20040087972-$.DID. OR US-20040092895-$.DID. OR US-20040097967-$.DID. OR US-20040122447-$.DID. OR US-20040143274-$.DID. OR US-20040166172-$.DID. OR US-20040219179-$.DID. OR US-20040236291-$.DID. OR US-20040243149-$.DID. OR US-20040267285-$.DID. OR US-20050037034-$.DID. OR US-20050038448-$.DID. OR US-20050059940-$.DID. OR US-20050084509-$.DID. OR US-20050148958-$.DID. OR US-20050203111-$.DID. OR US-20050209611-$.DID. OR US-20050283176-$.DID. OR US-20060002960-$.DID. OR US-20060191562-$.DID. OR US-20060200099-$.DID. OR US-20060200172-$.DID. OR US-20060200173-$.DID. OR US-20060212029-$.DID. OR US-20060253125-$.DID. OR US-20060264893-$.DID. OR US-20070005078-$.DID. OR US-20070043382-$.DID. OR US-20070065515-$.DID. OR US-20070123808-$.DID. OR US-20070088371-$.DID. OR US-20070154502-$.DID. OR US-20070156124-$.DID. OR US-20070178121-$.DID. OR US-20070198031-$.DID. OR US-20070208353-$.DID. OR US-20070239173-$.DID. OR US-20080027328-$.DID. OR US-20080091179-$.DID. OR US-20080119781-$.DID. OR US-20080132914-$.DID. OR US-20080139974-$.DID. OR US-20080193493-$.DID. OR US-20080200861-$.DID. OR US-20080214987-$.DID. OR US-20080215068-$.DID. OR US-20080243039-$.DID. OR US-20080287864-$.DID. OR US-20080300529-$.DID. OR US-20080300552-$.DID. OR US-20090048557-$.DID. OR US-20090053390-$.DID. OR US-20090099091-$.DID. OR US-20090099093-$.DID. OR US-20090124985-$.DID. OR US-20090138026-$.DID. OR US-20090177171-$.DID. OR US-20090192442-$.DID. OR US-20090222023-$.DID. OR US-20100045427-$.DID. OR US-20100049177-$.DID. OR US-20100049210-$.DID. OR US-20110054490-$.DID. OR US-20110066162-$.DID. OR US-20110082415-$.DID. OR US-20120022435-$.DID. OR US-

EDGE-CARTESSA_0001865

| | | | | | | |
|---|---|---|---|---|---|---|
| | | 20120136374-$.DID. OR US-20130188744-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID. OR JP-12022003-$.DID. OR JP-2006503627-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID. | | | | | |
| S7 | 316 | US-1234567-$.DID. OR US-2608032-$.DID. OR US-2701559-$.DID. OR US-2712823-$.DID. OR US-2867214-$.DID. OR US-2881763-$.DID. OR US-2921585-$.DID. OR US-3085573-$.DID. OR US-3214869-$.DID. OR US-3476112-$.DID. OR US-3574239-$.DID. OR US-3715838-$.DID. OR US-3948265-$.DID. OR US-3964212-$.DID. OR US-3977084-$.DID. OR US-4121388-$.DID. OR US-4155721-$.DID. OR US-4182329-$.DID. OR US-4203431-$.DID. OR US-4216233-$.DID. OR US-4299219-$.DID. OR US-4378804-$.DID. OR US-4560373-$.DID. OR US-4646480-$.DID. OR US-4646482-$.DID. OR US-4655743-$.DID. OR US-4676749-$.DID. OR US-4706676-$.DID. OR US-4754756-$.DID. OR US-4757814-$.DID. OR US-4764362-$.DID. OR US-4795421-$.DID. OR US-4875287-$.DID. OR US-4886078-$.DID. OR US-4887994-$.DID. OR US-4900316-$.DID. OR US-4917086-$.DID. OR US-4925450-$.DID. OR US-4957747-$.DID. OR US-5006004-$.DID. OR US-5006339-$.DID. OR US-5012797-$.DID. OR US-5035089-$.DID. OR US-5037431-$.DID. OR US-5037432-$.DID. OR US-5100412-$.DID. OR US-5100424-$.DID. OR US-5119839-$.DID. OR US-5122153-$.DID. OR US-5207234-$.DID. OR US-5222956-$.DID. OR US-5242433-$.DID. OR US-5254109-$.DID. OR US-5368581-$.DID. OR US-5391151-$.DID. OR US-5417674-$.DID. OR US-5419772-$.DID. OR US-5460620-$.DID. OR US-5470323-$.DID. OR US-5484427-$.DID. OR US-5562642-$.DID. OR US-5611687-$.DID. OR US-5612797-$.DID. OR US-5674235-$.DID. OR US-5676643-$.DID. OR US-5676648-$.DID. OR US-5683971-$.DID. OR US-5707383-$.DID. OR US-5713785-$.DID. OR US-5759185-$.DID. OR US-5779519-$.DID. OR US-5800446-$.DID. OR US-5807353-$.DID. OR US-5810842-$.DID. OR US-5813416-$.DID. OR US-5817050-$.DID. OR US-5846215-$.DID. OR US-5848998-$.DID. OR US-5861142-$.DID. OR US-5873881-$.DID. OR US-5879323-$.DID. OR US-5882201-$.DID. OR US-5885260-$.DID. OR US-5908401-$.DID. OR US-5919152-$.DID. OR US-5954730-$.DID. OR US-5971999-$.DID. OR US-5980555-$.DID. OR US-6019749-$.DID. OR US-6024733-$.DID. OR US-6027402-$.DID. OR US-6039745-$.DID. OR US-6042552-$.DID. OR US-6080165-$.DID. OR US-6080166-$.DID. OR US-6090085-$.DID. OR | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:15 |

EDGE-CARTESSA_0001866

US-6120512-$.DID. OR US-6136008-$.DID. OR
US-6139553-$.DID. OR US-6139554-$.DID. OR
US-6142155-$.DID. OR US-6149634-$.DID. OR
US-6159226-$.DID. OR US-6162232-$.DID. OR
US-6183451-$.DID. OR US-6183483-$.DID. OR
US-6231593-$.DID. OR US-6238275-$.DID. OR
US-6241739-$.DID. OR US-6264666-$.DID. OR
US-6277128-$.DID. OR US-6283978-$.DID. OR
US-6299620-$.DID. OR US-6306119-$.DID. OR
US-6306147-$.DID. OR US-6322568-$.DID. OR
US-6368333-$.DID. OR US-6387103-$.DID. OR
US-6409736-$.DID. OR US-6410599-$.DID. OR
US-6414032-$.DID. OR US-6420431-$.DID. OR
US-6423078-$.DID. OR US-6423750-$.DID. OR
US-6432113-$.DID. OR US-6471712-$.DID. OR
US-6477410-$.DID. OR US-6482212-$.DID. OR
US-6488646-$.DID. OR US-6494856-$.DID. OR
US-6500183-$.DID. OR US-6503256-$.DID. OR
US-6511486-$.DID. OR US-6514262-$.DID. OR
US-6527783-$.DID. OR US-6535761-$.DID. OR
US-6540757-$.DID. OR US-6562013-$.DID. OR
US-6562050-$.DID. OR US-6564093-$.DID. OR
US-6565535-$.DID. OR US-6582442-$.DID. OR
US-6592595-$.DID. OR US-6629983-$.DID. OR
US-6641591-$.DID. OR US-6645184-$.DID. OR
US-6652888-$.DID. OR US-6673081-$.DID. OR
US-6673082-$.DID. OR US-6685853-$.DID. OR
US-6687537-$.DID. OR US-6695853-$.DID. OR
US-6735470-$.DID. OR US-6743215-$.DID. OR
US-6764493-$.DID. OR US-6869611-$.DID. OR
US-6905487-$.DID. OR US-6911031-$.DID. OR
US-6924649-$.DID. OR US-6926681-$.DID. OR
US-6942649-$.DID. OR US-7001355-$.DID. OR
US-7004933-$.DID. OR US-7044938-$.DID. OR
US-7052503-$.DID. OR US-7069073-$.DID. OR
US-7070488-$.DID. OR US-7083580-$.DID. OR
US-7087063-$.DID. OR US-7094252-$.DID. OR
US-7115275-$.DID. OR US-7135011-$.DID. OR
US-7153311-$.DID. OR US-7197359-$.DID. OR
US-7198623-$.DID. OR US-7241208-$.DID. OR
US-7276051-$.DID. OR US-7314326-$.DID. OR
US-7316657-$.DID. OR US-7318828-$.DID. OR
US-7320691-$.DID. OR US-7320801-$.DID. OR
US-7354423-$.DID. OR US-7364565-$.DID. OR
US-7384405-$.DID. OR US-7427273-$.DID. OR
US-7458944-$.DID. OR US-7476205-$.DID. OR
US-7477938-$.DID. OR US-7482314-$.DID. OR
US-7489989-$.DID. OR US-7507228-$.DID. OR
US-7582067-$.DID. OR US-7597900-$.DID. OR
US-7597901-$.DID. OR US-7658742-$.DID. OR
US-7678120-$.DID. OR US-7744582-$.DID. OR
US-7789886-$.DID. OR US-7837695-$.DID. OR
US-7901373-$.DID. OR US-7951156-$.DID. OR
US-8025669-$.DID. OR US-8048089-$.DID. OR
US-8066716-$.DID. OR US-8088085-$.DID. OR
US-8128638-$.DID. OR US-8221437-$.DID. OR
US-8236008-$.DID. OR US-8277287-$.DID. OR
US-8337513-$.DID. OR US-8343116-$.DID. OR
US-8814836-$.DID. OR US-20010023351-
$.DID. OR US-20010049511-$.DID. OR US-
20020016601-$.DID. OR US-20020041891-
$.DID. OR US-20020058952-$.DID. OR US-
20020107527-$.DID. OR US-20020133110-
$.DID. OR US-20020151826-$.DID. OR US-

EDGE-CARTESSA_0001867

20020188261-$.DID. OR US-20030012475-$.DID. OR US-20030060834-$.DID. OR US-20030093040-$.DID. OR US-20030093089-$.DID. OR US-20030097139-$.DID. OR US-20030187462-$.DID. OR US-20030208159-$.DID. OR US-20030212127-$.DID. OR US-20030212415-$.DID. OR US-20040010222-$.DID. OR US-20040010269-$.DID. OR US-20040087972-$.DID. OR US-20040092895-$.DID. OR US-20040097967-$.DID. OR US-20040122447-$.DID. OR US-20040143274-$.DID. OR US-20040166172-$.DID. OR US-20040219179-$.DID. OR US-20040236291-$.DID. OR US-20040243149-$.DID. OR US-20040267285-$.DID. OR US-20050037034-$.DID. OR US-20050038448-$.DID. OR US-20050059940-$.DID. OR US-20050084509-$.DID. OR US-20050148958-$.DID. OR US-20050203111-$.DID. OR US-20050209611-$.DID. OR US-20050283176-$.DID. OR US-20060002960-$.DID. OR US-20060191562-$.DID. OR US-20060200099-$.DID. OR US-20060200172-$.DID. OR US-20060200173-$.DID. OR US-20060212029-$.DID. OR US-20060253125-$.DID. OR US-20060264893-$.DID. OR US-20070005078-$.DID. OR US-20070043382-$.DID. OR US-20070065515-$.DID. OR US-20070123808-$.DID. OR US-20070088371-$.DID. OR US-20070154502-$.DID. OR US-20070156124-$.DID. OR US-20070178121-$.DID. OR US-20070198031-$.DID. OR US-20070208353-$.DID. OR US-20070239173-$.DID. OR US-20080027328-$.DID. OR US-20080091179-$.DID. OR US-20080119781-$.DID. OR US-20080132914-$.DID. OR US-20080139974-$.DID. OR US-20080193493-$.DID. OR US-20080200861-$.DID. OR US-20080214987-$.DID. OR US-20080215068-$.DID. OR US-20080243039-$.DID. OR US-20080287864-$.DID. OR US-20080300529-$.DID. OR US-20080300552-$.DID. OR US-20090048557-$.DID. OR US-20090053390-$.DID. OR US-20090099091-$.DID. OR US-20090099093-$.DID. OR US-20090124985-$.DID. OR US-20090138026-$.DID. OR US-20090177171-$.DID. OR US-20090192442-$.DID. OR US-20090222023-$.DID. OR US-20100045427-$.DID. OR US-20100049177-$.DID. OR US-20100049210-$.DID. OR US-20110054490-$.DID. OR US-20110066162-$.DID. OR US-20110082415-$.DID. OR US-20120022435-$.DID. OR US-20120136374-$.DID. OR US-20130018317-$.DID. OR US-20130066336-$.DID. OR US-20130096577-$.DID. OR US-20130102978-$.DID. OR US-20130144280-$.DID. OR US-20130158547-$.DID. OR US-20140343481-$.DID. OR US-20140343574-$.DID. OR US-20150032047-$.DID. OR JP-1234567-$.DID. OR DE-3421390-$.DID. OR EP-0258901-$.DID. OR EP-0564392-$.DID. OR US-1184922-$.DID. OR JP-1993088552-$.DID. OR JP-12031993-$.DID. OR JP-09294747-$.DID. OR JP-11181997-$.DID. OR JP-2003339713-$.DID.

EDGE-CARTESSA_0001868

| | | | | | | |
|---|---|---|---|---|---|---|
| | | OR JP-12022003-$.DID. OR JP-2006503626-$.DID. OR WO-02022006-$.DID. OR JP-2006204767-$.DID. OR JP-10082006-$.DID. OR KR-200280320-$.DID. | | | | |
| S8 | 0 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 10:57 |
| S9 | 484 | (console and manifold and fluid and container and hand$7 and (conduit tube) and vacuum) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/21 11:04 |
| S10 | 498 | A61B17/54.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:13 |
| S11 | 136 | A61B17/545.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:29 |
| S12 | 583 | A61B19/0248.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:43 |
| S13 | 511 | A61B2019/025.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:50 |
| S14 | 1159 | A61B2017/00199.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 12:59 |
| S15 | 955 | A61B2017/00017.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:15 |
| S16 | 2160 | A61B2217/005.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S17 | 1269 | A61B2217/007.cpc. | US-PGPUB; USPAT | OR | ON | 2015/07/21 13:21 |
| S18 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/21 16:03 |
| S19 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 08:38 |
| S20 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:07 |
| S21 | 51 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |

EDGE-CARTESSA_0001869

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "6120512" \| "6238275" \| "6303119").PN. OR ("6527783").URPN. | | OR | ON | |
| S22 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:09 |
| S23 | 42 | ("20010023351" \| "4572187" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5354307" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6162232" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6299620" \| "6319211" \| "6391034" \| "6423078" \| "6432113" \| "6629983" \| "6652888").PN. OR ("6942649").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:16 |
| S24 | 38 | ("5037432" \| "5100412" \| "5810842" \| "5971999").PN. OR ("6080165").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:17 |
| S25 | 43 | ("20010023351" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964212" \| "4378804" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5154696" \| "5207234" \| "5800446" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6042552" \| "6080165" \| "6196982" \| "6235039" \| "6241739" \| "6250996" \| "6319211").PN. OR ("6592595").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S26 | 32 | ("20010023351" \| "5037432" \| "5100412" \| "5207034" \| "5207234" \| "5620414" \| "5810842" \| "5954730" \| "5971999" \| "6019749" \| "6039745" \| "6080165" \| "6120512" \| "6139554" \| "6196982" \| "6235039" \| "6238275" \| "6241739" \| "6250996" \| "6277003" \| "6306119" \| "6390899").PN. OR ("6673082").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:21 |
| S27 | 19 | ("3815286" \| "5037432" \| "5207234" \| "5971999").PN. OR ("6238275").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:37 |
| S28 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:38 |
| S29 | 38 | ("2608032" \| "2921585" \| "3574239" \| "3715838" \| "4375740" \| "4482322" \| "4560373" \| "4646480" \| "4671867" \| "4676749" \| "4757814" \| "4765099" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5309683" \| "5460604" \| "5547376" \| "5765759" \| "5810587" \| "5810842" \| "6039745").PN. OR ("6277128").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:39 |
| S30 | 14 | ("3815286" \| "5037431" \| "6183148" \| "6193589" \| "6235039" \| "6238275" \| | US-PGPUB; | OR | ON | 2015/07/22 10:41 |

EDGE-CARTESSA_0001870

| | | | | | | |
|---|---|---|---|---|---|---|
| | | ("6322568").PN. OR ("6503256").URPN. | USPAT; USOCR | | | |
| S31 | 59 | ("1772545" \| "2109259" \| "2453080" \| "2547823" \| "2618410" \| "2711268" \| "2962193" \| "3217887" \| "3647118").PN. OR ("3930598").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:44 |
| S32 | 82 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:46 |
| S33 | 107 | ("2608032" \| "2921585" \| "3085573" \| "3574239" \| "3715838" \| "4560373" \| "4646480" \| "4676749" \| "4757814").PN. OR ("5037432").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:53 |
| S34 | 33 | ("20030093089" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3964312" \| "4378804" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5800446" \| "5971999" \| "6039745" \| "6241739" \| "6277128" \| "6299620" \| "6432114" \| "6500183" \| "6582442" \| "6592595" \| "6629983" \| "6695853" \| "6911031" \| "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 10:55 |
| S35 | 38 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/22 14:45 |
| S36 | 6 | (manifold same container same (antimicrobial disenfect$4)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:29 |
| S37 | 140 | (manifold same container same (antimicrobial disenfect$4 surfactant sanitiz$5)) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/22 16:32 |
| S38 | 378 | (manifold with (clean$4 sanitiz$4) with container) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2015/07/23 08:44 |
| S39 | 12 | (manifold with (clean$4 sanitiz$4) with container) and (abrasion or microabrasion) | US-PGPUB; USPAT; | OR | ON | 2015/07/23 08:45 |

EDGE-CARTESSA_0001871

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | EPO; JPO | | | |
| S40 | 17 | ("2894732" | "3378234" | "3468637").PN. OR ("3865352").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 09:24 |
| S41 | 33 | ("20030093089" | "2701559" | "2712823" | "2867214" | "2881763" | "2921585" | "3964312" | "4378804" | "5012797" | "5037431" | "5037432" | "5100412" | "5800446" | "5971999" | "6039745" | "6241739" | "6277128" | "6299620" | "6432114" | "6500183" | "6582442" | "6592595" | "6629983" | "6695853" | "6911031" | "7070488").PN. OR ("7651508").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:06 |
| S42 | 15 | ("20010023351" | "20030093089" | "20060116674" | "20070156124" | "6250996" | "7232444" | "7651508" | "D286920" | "D286921" | "D321340" | "D326920" | "D489816" | "D548326").PN. OR ("D627876").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:12 |
| S43 | 15 | ("5037432" | "5971999").PN. OR ("6250996").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:13 |
| S44 | 8 | ("20010023351" | "20030093089" | "20030212415" | "6250996" | "D450842").PN. OR ("D503979").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:14 |
| S45 | 16 | ("20010023351" | "20030093089" | "20070156124" | "4653474" | "6250996" | "7232444" | "D192841" | "D224070" | "D249550" | "D326920" | "D475463" | "D489816" | "D627876").PN. OR ("D682414").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2015/07/23 10:15 |
| S46 | 47 | ("7083580" | "7087063" | "7094252" | "7115275" | "7135011" | "7153311" | "7197359" | "7198623" | "7241208" | "7276051" | "7314326" | "7316657" | "7318828" | "7320691" | "7352801" | "7354423" | "7364565" | "7384405" | "7427273" | "7458944" | "7476205" | "7477938" | "7482314" | "7489989" | "7507067" | "7579900" | "7597901" | "7658742" | "7678120" | "7744582" | "7789886" | "7837695" | "7901373" | "7951156" | "8025669" | "8048089" | "8066716" | "8088085" | "8128638" | "8221437" | "8236008" | "8277287" | "8337513" | "8343116" | "8814836" | "RE37796" | "RE42960").PN. | US-PGPUB; USPAT | OR | ON | 2016/02/23 12:32 |
| S47 | 3 | ("20080154161" | "20080208146" | "20160038183").PN. | US-PGPUB; USPAT | OR | ON | 2016/08/17 10:17 |
| S48 | 5577 | A61B17/54,545.cpc. or A61B19/0248.cpc. or A61B2019/025.cpc. or A61B2017/00199.cpc. or A61B2017/00017.cpc. or A61B2217/005,007.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 10:39 |
| S49 | 442 | S48 and (manifold) | US- | OR | ON | 2016/08/17 |

EDGE-CARTESSA_0001872

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 10:39 |
| S50 | 250 | S48 and (manifold) and liquid | US-PGPUB; USPAT | OR | ON | 2016/08/17 10:42 |
| S51 | 11 | ("5037431" \| "5037432" \| "5100412" \| "5810842").PN. OR ("6562050").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 10:45 |
| S52 | 40 | ("4183470" \| "5186625" \| "5240842" \| "5350299" \| "5362494" \| "5441174" \| "5547376" \| "5591184" \| "5634791" \| "5657760" \| "5752829" \| "Re31887").PN. OR ("6264666").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:14 |
| S53 | 83 | ("0882532" \| "1882040" \| "1898652" \| "2228676" \| "2266931" \| "2338339" \| "2655146" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3236231" \| "3736921" \| "3818904" \| "3841322" \| "3841323" \| "3964212" \| "4003373" \| "4241499" \| "4378804" \| "4560373" \| "4572187" \| "4646480" \| "4836192" \| "4957747" \| "5012797" \| "5037431" \| "5037432" \| "5100412" \| "5207234" \| "5377701" \| "5699810" \| "5800440" \| "5810842" \| "5954730" \| "5971999" \| "6039745" \| "6042552" \| "6080165" \| "6120512" \| "6139554" \| "6149634" \| "6196982" \| "6241739" \| "6283078" \| "6299620" \| "6319211" \| "6500183" \| "6511486").PN. OR ("6695853").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:15 |
| S54 | 13 | ("20010023351" \| "20020133176" \| "20020169461" \| "20020183702" \| "20030097139" \| "20050277950" \| "20060086634" \| "20060129140" \| "20060161178" \| "20070156124" \| "20070265586" \| "20100030132" \| "6846218").PN. OR ("8986323").URPN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:19 |
| S55 | 7 | ("20030208159" \| "6322568" \| "8236008" \| "20020151908" \| "20090125023" \| "20110009882" \| "20120136374").PN. | US-PGPUB; USPAT; USOCR | OR | ON | 2016/08/17 11:55 |
| S56 | 879 | microdermabrasion | US-PGPUB; USPAT | OR | ON | 2016/08/17 12:14 |
| S57 | 0 | 14/698,67. | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/17 14:22 |
| S58 | 1 | 14/698,673 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/17 14:22 |
| S59 | 406 | A61B17/50.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 14:25 |
| S60 | 1002 | A61M35/003.cpc. | US- | OR | ON | 2016/08/17 |

EDGE-CARTESSA_0001873

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 15:03 |
| S61 | 453 | A61B2017/00761.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 15:04 |
| S62 | 1533 | A61N5/0616.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 15:05 |
| S63 | 952 | A61B2017/320004.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/17 15:05 |
| S64 | 641 | A61B50/10.cpc. | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 13:47 |
| S65 | 16 | A61B50/10.cpc. and (microdermabra$5 or abra$5) | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 14:00 |
| S66 | 622 | A61B50/13.cpc. | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 14:02 |
| S67 | 252 | S66 not S64 | US-PGPUB; USPAT; EPO; JPO | OR | ON | 2016/08/18 14:02 |
| S68 | 17 | 11/392,348 | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:12 |
| S77 | 400 | A61B17/3205.cpc. | US-PGPUB; USPAT | OR | ON | 2016/08/18 15:19 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S69 | 0 | (console and manifold and contain$4 and skin and liquid and (handpiece handle) and tip and (vacuum suction) and (conduit tube) and treat$4).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:08 |
| S70 | 0 | (console and manifold and skin and liquid and (handpiece handle) and tip and (vacuum suction) and (conduit tube) and treat$4).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |
| S71 | 0 | (console and manifold and skin and liquid and (handpiece handle) and tip and (vacuum suction) and (conduit tube)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |
| S72 | 2 | (console and manifold and skin and (handpiece handle) and tip and (vacuum suction) and (conduit tube)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |
| S73 | 3 | (manifold and skin and (handpiece handle) and tip and (vacuum suction) and (conduit tube)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:09 |

EDGE-CARTESSA_0001874

| S74 | 17 | 11/392,348 | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:12 |
|---|---|---|---|---|---|---|
| S75 | 38 | (manifold and (handpiece handle) and tip and (vacuum suction) and (conduit tub$4)).clm. | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:13 |
| S76 | 286 | ("20010023351" \| "20010049511" \| "20020016601" \| "20020041891" \| "20020058952" \| "20020107527" \| "20020133110" \| "20020188261" \| "20030012415" \| "20030060834" \| "20030093089" \| "20030097139" \| "20030187462" \| "20030208159" \| "20030212127" \| "20030212415" \| "20040087972" \| "20040092895" \| "20040097967" \| "20040143274" \| "20040166172" \| "20040219179" \| "20040236291" \| "20040243149" \| "20040267285" \| "20050037034" \| "20050038448" \| "20050059940" \| "20050084509" \| "20050148958" \| "20050203111" \| "20050209611" \| "20050283176" \| "20060002960" \| "20060200099" \| "20060200172" \| "20060200173" \| "20060212029" \| "20060253125" \| "20060264893" \| "20070005078" \| "20070043382" \| "20070065515" \| "20070088371" \| "20070114904" \| "20070123808" \| "20070154502" \| "20070156124" \| "20070178121" \| "20070198031" \| "20070208353" \| "20070239173" \| "20080027328" \| "20080091179" \| "20080119781" \| "20080132914" \| "20080139974" \| "20080193493" \| "20080200861" \| "20080214987" \| "20080215068" \| "20080243039" \| "20080287864" \| "20080300529" \| "20090048557" \| "20090053390" \| "20090099091" \| "20090099093" \| "20090124985" \| "20090138026" \| "20090177171" \| "20090192442" \| "20090222023" \| "20100045427" \| "20100049177" \| "20100049210" \| "20110054490" \| "20110066162" \| "20110082415" \| "20120022435" \| "20120136374" \| "20130066336" \| "20130096577" \| "20130144280" \| "20130158547" \| "2608032" \| "2701559" \| "2712823" \| "2867214" \| "2881763" \| "2921585" \| "3085573" \| "3214869" \| "3476112" \| "3574239" \| "3715838").PN. OR ("3948265" \| "3964212" \| "3977084" \| "4121388" \| "4155721" \| "4182329" \| "4203431" \| "4216233" \| "4378804" \| "4560373" \| "4646480" \| "4646482" \| "4676749" \| "4706676" \| "4754756" \| "4757814" \| "4764362" \| "4795421" \| "4875287" \| "4886078" \| "4887994" \| "4900316" \| "4917086" \| "4925450" \| "4957747" \| "5006004" \| "5006339" \| "5012797" \| "5035089" \| "5037431" \| "5037432" \| "5100412" \| "5119839" \| "5122153" \| "5207234" \| "5222956" \| | US-PGPUB; USPAT | OR | ON | 2016/08/18 14:16 |

EDGE-CARTESSA_0001875

"5242433" | "5254109" | "536858 |
"5417674" | "5419772" | "5460620" |
"5470323" | "5484427" | "5562642" |
"5611687" | "5674235" | "5676643" |
"5676648" | "5683971" | "5713785" |
"5759185" | "5779519" | "5800446" |
"5810842" | "5813416" | "5846215" |
"5861142" | "5873881" | "5879323" |
"5882201" | "5885260" | "5908401" |
"5919152" | "5954730" | "5971999" |
"5980555" | "6019749" | "6024733" |
"6027402" | "6039745" | "6042552" |
"6080165" | "6080166" | "6090085" |
"6120512" | "6136008" | "6139553" |
"6139554" | "6142155" | "6149634" |
"6162232" | "6183451" | "6183483" |
"6231593" | "6238275" | "6241739" |
"6264666" | "6277128" | "6283978" |
"6299620" | "6306119" | "6306147" |
"6322568" | "6368333" | "6387103" |
"6410599" | "6414032" | "6420431" |
"6423078" | "6423750" | "6432113" |
"6471712" | "6477410" | "6482212" |
"6488646" | "6494856" | "6500183" |
"6503256" | "6511486" | "6514262" |
"6527783" | "6535761" | "6540757" |
"6562013" | "6562050" | "6564093" |
"6565535" | "6582442" | "6592595" |
"6629983" | "6641591" | "6645184" |
"6652888" | "6673081").PN. OR ("6673082" |
"6685853" | "6687537" | "6695853" |
"6735470" | "6743215" | "6764493" |
"6869611" | "6905487" | "6911031" |
"6924649" | "6926681" | "6942649" |
"7001355" | "7004933" | "7044938" |
"7052503" | "7069073" | "7070488" |
"7083580" | "7087063" | "7094252" |
"7115275" | "7135011" | "7153311" |
"7197359" | "7198623" | "7241208" |
"7276051" | "7314326" | "7316657" |
"7318828" | "7320691" | "7320801" |
"7354423" | "7364565" | "7384405" |
"7427273" | "7458944" | "7476205" |
"7477938" | "7482314" | "7489989" |
"7507228" | "7582067" | "7597900" |
"7597901" | "7658742" | "7678120" |
"7789886" | "7837695" | "7901373" |
"7951156" | "8025669" | "8048089" |
"8066716" | "8088085" | "8128638" |
"8221437" | "8236008" | "8277287" |
"8337513" | "8343116" | "RE37796").PN. OR
("8814836").URPN.

8/18/2016 5:45:08 PM
C:\Users\cknauss\Documents\EAST\Workspaces\14698673.wsp

EDGE-CARTESSA_0001876

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| ‖‖‖‖‖‖‖‖ | 14698673 | IGNON ET AL. |
| | **Examiner** | **Art Unit** |
| | CHRISTIAN KNAUSS | 3734 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| A61B17/54, 545 | 7/23/15 | CDK |
| A61B2017/00017, 00199, 00743, 00747, 00761 | 7/23/15 | CDK |
| A61B19/0248 | 7/23/15 | CDK |
| A61B2019/025 | 7/23/15 | CDK |
| A61B2217/005, 007 | 7/23/15 | CDK |
| A61B17/50 | 8/18/16 | CDK |
| A61M35/003 | 8/18/16 | CDK |
| A61N5/0616 | 8/18/16 | CDK |
| A61B2017/320004 | 8/18/16 | CDK |
| A61B50/10, 13 | 8/18/16 | CDK |

## CPC COMBINATION SETS  - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| | | | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Performed inventor and assignee searches in PALM and EAST | 7/23/15 | CDK |
| Performed EAST search (see attached EAST search history) | 7/23/15 | CDK |
| Performed  forward/backward searches in EAST | 7/23/15 | CDK |
| Performed class/text searchs and combinations in EAST | 7/23/15 | CDK |
| Updated EAST search (see attached EAST search history) | 2/25/16 | CDK |
| Consulted Ryan Severson | 2/25/16 | CDK |
| Updated EAST search (see attached EAST search history) | 8/18/16 | CDK |
| Consulted Ryan Severson regarding allowable subject matter | 8/18/16 | CDK |
| Performed Interference search | 8/18/16 | CDK |

| | |
|---|---|
| /C.K./<br>Examiner.Art Unit 3731 | |

EDGE-CARTESSA_0001877

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| text search | US-PGPUB; USPAT | 8/18/16 | CDK |

/C.K./
Examiner.Art Unit 3731

Part of Paper No. : 20160818

EDGE-CARTESSA_0001878

**To:**         jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**       PAIR_eOfficeAction@uspto.gov
**Cc:**         PAIR_eOfficeAction@uspto.gov
**Subject:**    Private PAIR Correspondence Notification for Customer Number 20995

Sep 14, 2016 05:30:01 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | NOA | 09/14/2016 | EDGE.005C2 |
| | INTV.SUM.EX | 09/14/2016 | EDGE.005C2 |
| | 1449 | 09/14/2016 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

    Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001879

**PART B - FEE(S) TRANSMITTAL**

Complete and send this form, together with applicable fee(s), to: **Mail** | Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
or **Fax** (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

| 20995 | 7590 | 09/14/2016 |

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 04/28/2015 | Roger Ignon | EDGE.005C2 | 7926 |

TITLE OF INVENTION: CONSOLE SYSTEM FOR THE TREATMENT OF SKIN

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 12/14/2016 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KNAUSS, CHRISTIAN D | 3731 | 606-131000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1. Knobbe, Martens,
2. Olson & Bear, LLP
3. _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Edge Systems LLC                        Signal Hill, California

Please check the appropriate assignee category or categories (will not be printed on the patent): ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The director is hereby authorized to charge ~~the required fee(s)~~, any deficiency, or credits any overpayment, to Deposit Account Number 11-1410 (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29

☐ Applicant asserting small entity status. See 37 CFR 1.27

☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____        Date 2016-12-09

Typed or printed name Theodore G. Papagiannis        Registration No. 61,546

Page 2 of 3

EDGE-CARTESSA_0001880

EDGE.005C2                                                                                    PATENT

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| Appl. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3731 |
| Conf. No. | : | 7926 |

## COMMENTS ON STATEMENT OF REASONS FOR ALLOWANCE

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

To the extent that there is any implication that the patentability of the claims rests on the recitation of a single feature, Applicant respectfully disagrees with the Examiner's Statement of Reasons for Allowance, because it is the combination of features that makes the claims patentable.  Further, to the extent that any features recited in the reasons for allowance are not present in any or all of the claims due to paraphrasing or because the features are in one claim but not in others, Applicant reserves the right to disagree with the Examiner's statements.  In addition, Applicant does not necessarily agree with the Examiner's characterization of any references, such as, for example, U.S. Publ. No. 2001/0049511 to Coleman et al., and/or the state of the art generally mentioned in the Reasons for Allowance.

Applicant respectfully submits that the pending claims, including the dependent claims, may also be allowable for reasons different from, or in addition to, those stated in the Reasons for Allowance.  Accordingly, Applicant reserves the right to argue that the claims of the present application are allowable because each of the claims recites a combination of features that are not taught or suggested by the references of record and/or any other art.

-1-

EDGE-CARTESSA_0001881

**Appl. No.    :    14/698,673**
**Filed    :    April 28, 2015**


If the Examiner disagrees with any of the comments made herein, the Examiner is respectfully invited to promptly contact the undersigned.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: <u>December 9, 2016</u>                    By: <u>/Theodore G. Papagiannis/</u>
                                            Theodore G. Papagiannis
                                            Registration No. 61,546
                                            Attorney of Record
                                            Customer No. 20,995
                                            (949) 760-0404


24215082

-2-

EDGE-CARTESSA_0001882

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☒ United States application or PCT international application number  **14/698,673**

filed on  **April 28, 2015**

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor:  Roger Ignon                                           Date (Optional) :  10/11/16

Signature:

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

EDGE-CARTESSA_0001883

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

■ United States application or PCT international application number **14/698,673**

filed on **April 28, 2015**

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Scott Mallett                          Date (Optional): 9-23-16

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

EDGE-CARTESSA_0001884

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☒ United States application or PCT international application number **14/698,673**

filed on **April 28, 2015**

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Abraham Solano          Date (Optional): _____

Signature: _____

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

EDGE-CARTESSA_0001885

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014.  OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

☐ The attached application, or

☑ United States application or PCT international application number **14/698,673**

filed on **April 28, 2015**

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

### WARNING:

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft.  Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application.  If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them  to the USPTO.  Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent.  Furthermore, the record from an abandoned application may also be available to the public if the  application is referenced in a published application or an issued patent (see 37 CFR 1.14).  Checks and credit card  authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not  publicly available.

LEGAL NAME OF INVENTOR

Inventor: **William Cohen**                                    Date (Optional) :  **10.7.16**

Signature: *[signature]*

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed.  Use an additional PTO/AIA/01 form for each additional inventor.

This collection of information is required by 35 U.S.C. 115 and 37 CFR 1.63. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 minute to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.

EDGE-CARTESSA_0001886

## Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

EDGE-CARTESSA_0001887

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14698673 |
| **Filing Date:** | 28-Apr-2015 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger Ignon |
| **Filer:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| Filed as Small Entity | |

**Filing Fees for   Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 2501 | 1 | 480 | 480 |

EDGE-CARTESSA_0001888

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| Extension-of-Time: | | | | |
| Miscellaneous: | | | | |
| | | | **Total in USD ($)** | **480** |

EDGE-CARTESSA_0001889

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27752165 |
| **Application Number:** | 14698673 |
| **International Application Number:** | |
| **Confirmation Number:** | 7926 |
| **Title of Invention:** | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| **First Named Inventor/Applicant Name:** | Roger  Ignon |
| **Customer Number:** | 20995 |
| **Filer:** | Theodore G. Papagiannis/Christina Graul |
| **Filer Authorized By:** | Theodore G. Papagiannis |
| **Attorney Docket Number:** | EDGE.005C2 |
| **Receipt Date:** | 09-DEC-2016 |
| **Filing Date:** | 28-APR-2015 |
| **Time Stamp:** | 17:30:39 |
| **Application Type:** | Utility under 35 USC 111(a) |

# Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | CARD |
| Payment was successfully received in RAM | $480 |
| RAM confirmation Number | 121216INTEFSW17320900 |
| Deposit Account | 111410 |
| Authorized User | Christina Graul |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |
|     37 CFR 1.16 (National application filing, search, and examination fees) | |
|     37 CFR 1.17 (Patent application and reexamination processing fees) | |

EDGE-CARTESSA_0001890

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Transmittal Letter | EDGE005C2_Transmittal.pdf | 15826<br>d879df39d53e2e1ceeb1c313db888f13937b7a25 | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 2 | Issue Fee Payment (PTO-85B) | EDGE-005C2_Issue_Fee.pdf | 943846<br>2f42755c5c80336cb7670a1ee99ca2e581a669aa | no | 1 |
| Warnings: | | | | | |
| Information: | | | | | |
| 3 | Miscellaneous Incoming Letter | EDGE005C2_Comments.pdf | 20692<br>50b761b33ac8bca33ed6b8434c16fa89935fbdb7 | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| 4 | Oath or Declaration filed | EDGE-005C2_Declarations.pdf | 5542205<br>c0bc5ecced0dac20d45fe9d9b18fb3034fa6b411 | no | 5 |
| Warnings: | | | | | |
| Information: | | | | | |
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 30443<br>64b8e60aa359895f8ad8e9d4e7a3b8316195011b | no | 2 |
| Warnings: | | | | | |
| Information: | | | | | |
| | | **Total Files Size (in bytes):** | 6553012 | | |

EDGE-CARTESSA_0001891

This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.

New Applications Under 35 U.S.C. 111
If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.

National Stage of an International Application under 35 U.S.C. 371
If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.

New International Application Filed with the USPTO as a Receiving Office
If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.

EDGE-CARTESSA_0001892

Docket No.: EDGE.005C2

December 9, 2016
Page 1 of 1

## Please Direct All Correspondence to Customer Number 20995

### TRANSMITTAL

| | | |
|---|---|---|
| Inventor | : | Ignon et al. |
| Appl. No | : | 14/698,673 |
| Filed | : | April 28, 2015 |
| For | : | CONSOLE SYSTEM FOR THE TREATMENT OF SKIN |
| Examiner | : | Christian D. Knauss |
| Art Unit | : | 3731 |
| Conf. No. | : | 7926 |

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

In reference to the above-identified application, please find the following:

(X)    Declarations of inventors, namely Roger Ignon, Scott Mallett, Abraham Solano and William Cohen;

(X)    Issue Fee Transmittal; and

(X)    Comments on Statement of Reasons for Allowance.

Please charge any additional fees, including any fees for additional extension of time, or credit overpayment to Deposit Account No. 11-1410.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: December 9, 2016

By: /Theodore G. Papagiannis/
Theodore G. Papagiannis
Registration No. 61,546
Attorney of Record
Customer No. 20995
(949) 760-0404

24451431

EDGE-CARTESSA_0001893

Receipt date: 06/22/2015                                                                                    14698673 - GAU: 3734

PTO/SB/08 Equivalent

| | | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application No. | 14/698,673 |
| | Filing Date | April 28, 2015 |
| | First Named Inventor | Ignon et al. |
| | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | Examiner | Unknown |
| SHEET 6 OF 13 | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number Number - Kind Code (if known) Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 146 | 6,645,184 | 11-11-2003 | Zelickson et al. | |
| | 147 | 6,652,888 | 11-25-2003 | Rhoades | |
| | 148 | 6,673,081 | 01-06-2004 | Tavger et al. | |
| | 149 | 6,673,082 | 01-06-2004 | Mallett et al. | |
| | 150 | 6,685,853 | 02-03-2004 | Angelopoulous et al. | |
| | 151 | 6,687,537 | 02-03-2004 | Bernabei | |
| | 152 | 6,695,853 | 02-24-2004 | Karasiuk | |
| | 153 | 6,735,470 | 05-11-2004 | Henley et al. | |
| | 154 | 6,743,215 | 06-01-2004 | Bernabei | |
| | 155 | 6,764,493 | 07-20-2004 | Weber et al. | |
| | 156 | 6,869,611 | 03-22-2005 | Kligman et al. | |
| | 157 | 6,905,487 | 06-14-2005 | Zimmerman | |
| | 158 | 6,911,031 | 06-28-2005 | Muldner | |
| | 159 | 6,924,649 | 08-02-2005 | Knoedgen | |
| | 160 | 6,926,681 | 08-09-2005 | Ramey, et al. | |
| | 161 | 6,942,649 | 09-13-2005 | Ignon et al. | |
| | 162 | 7,001,355 | 02-21-2006 | Nunomura et al. | |
| | 163 | 7,004,933 | 02-28-2006 | ~~McDaniel~~ McDaniel | |
| | 164 | 7,044,938 | 05-16-2006 | La Bianco et al. | |
| | 165 | 7,052,503 | 05-30-2006 | Bernabei | |
| | 166 | 7,069,073 | 06-27-2006 | Henley et al. | |
| | 167 | 7,070,488 | 07-04-2006 | Suissa et al. | |
| | 168 | 7083,580 | 08-01-2006 | Bernabei | |
| | 169 | 7,087,063 | 08-08-2006 | Carson et al. | |
| | 170 | 7,094,252 | 08-22-2006 | Koop | |
| | 171 | 7,115,275 | 10-03-2006 | Clarot et al. | |
| | 172 | 7,135,011 | 11-14-2006 | Powers et al. | |
| | 173 | 7,153,311 | 12-26-2006 | Chung | |
| | 174 | 7,197,359 | 03-27-2007 | Tokudome et al. | |

*Change(s) applied to document, /D.D/ 9/24/2016*

| | | |
|---|---|---|
| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

**T**[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001894

Receipt date: 06/22/2015                                                                 14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 3 OF 13 | | Attorney Docket No. | EDGE.005C2 |

### U.S. PATENT DOCUMENTS

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 59 | 5,484,427 | 01-16-1996 | Gibbons | |
| | 60 | 5,562,642 | 10-08-1996 | Smith et al. | |
| | 61 | 5,611,687 | 03-18-1997 | Wagner | |
| | 62 | ~~5,012,797~~ 5,012,797 | ~~03-18-1997~~ 05-1991 | Liang et al. | |
| | 63 | 5,674,235 | 10-07-1997 | Parisi | |
| | 64 | 5,676,643 | 10-14-1997 | Cann et al. | |
| | 65 | 5,676,648 | 10-14-1997 | Henley | |
| | 66 | 5,683,971 | 11-04-1997 | Rose et al. | |
| | 67 | 5,707,383 | 01-13-1998 | Bays | |
| | 68 | 5,713,785 | 02-03-1998 | Nishio | |
| | 69 | 5,759,185 | 06-02-1998 | Grinberg | |
| | 70 | 5,779,519 | 07-14-1998 | Oliver | |
| | 71 | 5,800,446 | 09-01-1998 | Banuchi | |
| | 72 | 5,807,353 | 09-15-1998 | Schmitz | |
| | 73 | 5,810,842 | 09-22-1998 | Di Fiore at al. | |
| | 74 | 5,813,416 | 09-29-1998 | Rudolph | |
| | 75 | 5,817,050 | 10-06-1998 | Klein | |
| | 76 | 5,846,215 | 12-08-1998 | Zygmont | |
| | 77 | 5,848,998 | 12-15-1998 | Marasco, Jr. | |
| | 78 | 5,861,142 | 01-19-1999 | Schick | |
| | 79 | 5,873,881 | 02-23-1999 | McEwen et al. | |
| | 80 | 5,879,323 | 03-09-1999 | Henley | |
| | 81 | 5,882,201 | 03-16-1999 | Salem | |
| | 82 | 5,885,260 | 03-23-1999 | Mehl, Sr., et al. | |
| | 83 | 5,908,401 | 06-01-1999 | Henley | |
| | 84 | 5,919,152 | 07-06-1999 | Zygmont | |
| | 85 | 5,954,730 | 09-21-1999 | Bernabei | |
| | 86 | 5,971,999 | 10-26-1999 | Naldoni | |
| | 87 | 5,980,555 | 11-09-1999 | Barbut et al. | |

*Change(s) applied to document, /D.D./ 9/24/2016*

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

*Examiner: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

Place a check mark in this area when an English language translation is attached.

EDGE-CARTESSA_0001895

Receipt date: 06/22/2015                                                        14698673 - GAU: 3734

PTO/SB/08 Equivalent

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT | | Application No. | 14/698,673 |
|---|---|---|---|
| | | Filing Date | April 28, 2015 |
| | | First Named Inventor | Ignon et al. |
| | | Art Unit | Unknown |
| *(Multiple sheets used when necessary)* | | Examiner | Unknown |
| SHEET 2 OF 13 | | Attorney Docket No. | EDGE.005C2 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials | Cite No. | Document Number<br>*Number - Kind Code (if known)*<br>Example: 1,234,567 B1 | Publication Date<br>MM-DD-YYYY | Name of Patentee or Applicant | Pages, Columns, Lines Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | 30 | 4,764,362 | 08-16-1988 | Barchas | |
| | 31 | 4,795,421 | 01-03-1989 | Blasius, Jr., et al. | |
| | 32 | 4,875,287 | 10-24-1989 | Creasy et al. | |
| | 33 | 4,886,078 | 12-12-1989 | Shiffman | |
| | 34 | 4,887,994 | 12-12-1989 | ~~Shiffmann~~ Bedford | |
| | 35 | 4,900,316 | 02-13-1990 | Yamamoto | |
| | 36 | 4,917,086 | 04-17-1990 | Feltovich et al. | |
| | 37 | 4,925,450 | 05-15-1990 | Imonti et al. | |
| | 38 | 4,957,747 | 09-18-1990 | Stiefel | |
| | 39 | 5,006,004 | 04-09-1991 | Dirksing et al. | |
| | 40 | 5,006,339 | 04-09-1991 | Bargery et al. | |
| | 41 | 5,012,797 | 05-07-1991 | Liang et al. | |
| | 42 | 5,035,089 | 07-30-1991 | Tillman et al. | |
| | 43 | 5,037,431 | 08-06-1991 | Summers et al. | |
| | 44 | 5,037,432 | 08-06-1991 | Molinari | |
| | 45 | 5,100,412 | 03-31-1992 | Rosso | |
| | 46 | 5,100,424 | 03-31-1992 | Jang | |
| | 47 | 5,119,839 | 06-09-1992 | Rudolph | |
| | 48 | 5,122,153 | 06-16-1992 | Harrel | |
| | 49 | 5,207,234 | 05-04-1993 | Rosso | |
| | 50 | 5,222,956 | 06-29-1993 | Waldron | |
| | 51 | 5,242,433 | 09-07-1993 | Smith et al. | |
| | 52 | 5,254,109 | 10-19-1993 | Smith et al. | |
| | 53 | 5,368,581 | 11-29-1994 | Smith et al. | |
| | 54 | 5,391,151 | 02-21-1995 | Wilmot | |
| | 55 | 5,417,674 | 05-23-1995 | Smith et al. | |
| | 56 | 5,419,772 | 05-30-1995 | Teitz et al. | |
| | 57 | 5,460,620 | 10-24-1995 | Smith et al. | |
| | 58 | 5,470,323 | 11-28-1995 | Smith et al. | |

*Change(s) applied to document, /D.D./ 9/24/2016*

| Examiner Signature | /Christian Knauss/ | Date Considered | 07/23/2015 |
|---|---|---|---|

**\*Examiner:** Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

T[1] - Place a check mark in this area when an English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /C.K./

EDGE-CARTESSA_0001896

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/698,673 | 01/24/2017 | 9550052 | EDGE.005C2 | 7926 |

20995      7590      01/04/2017
KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 0 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Roger Ignon, Redondo Beach, CA;
EDGE SYSTEMS LLC, Signal Hill, CA;
Scott Mallett, Coto De Caza, CA;
Abraham Solano, Corona, CA;
William Cohen, Los Alamitos, CA;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

IR103 (Rev. 10/09)

EDGE-CARTESSA_0001897

**To:**        jayna.cartee@knobbe.com,efiling@knobbe.com,
**From:**      PAIR_eOfficeAction@uspto.gov
**Cc:**        PAIR_eOfficeAction@uspto.gov
**Subject:**   Private PAIR Correspondence Notification for Customer Number 20995

Jan 05, 2017 03:22:47 AM

Dear PAIR Customer:

KNOBBE MARTENS OLSON & BEAR LLP
2040 MAIN STREET
FOURTEENTH FLOOR
IRVINE, CA 92614
UNITED STATES

The following USPTO patent application(s) associated with your Customer Number, 20995 , have new outgoing correspondence. This correspondence is now available for viewing in Private PAIR.

The official date of notification of the outgoing correspondence will be indicated on the form PTOL-90 accompanying the correspondence.

Disclaimer:
The list of documents shown below is provided as a courtesy and is not part of the official file wrapper. The content of the images shown in PAIR is the official record.

| Application | Document | Mailroom Date | Attorney Docket No. |
|---|---|---|---|
| 14698673 | ISSUE.NTF | 01/04/2017 | EDGE.005C2 |

To view your correspondence online or update your email addresses, please visit us anytime at https://sportal.uspto.gov/secure/myportal/privatepair.

If you have any questions, please email the Electronic Business Center (EBC) at EBC@uspto.gov with 'e-Office Action' on the subject line or call 1-866-217-9197 during the following hours:

      Monday - Friday 6:00 a.m. to 12:00 a.m.

Thank you for prompt attention to this notice,

UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT APPLICATION INFORMATION RETRIEVAL SYSTEM

EDGE-CARTESSA_0001898

AO 120 (Rev. 08/10)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court **CENTRAL DISTRICT OF CALIFORNIA** on the following

☐ Trademarks or ☑ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO.<br>2:17-cv-8699 | DATE FILED<br>12/1/2017 | U.S. DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA |
|---|---|---|
| PLAINTIFF<br>EDGE SYSTEMS LLC, a California limited liability company, and AXIA MEDSCIENCES, LLC, a Delaware limited liability company | | DEFENDANT<br>IMAGE MICRODERM INC., a Nevada corporation |

| | PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 6,641,591 | 11/4/2003 | Axia MedSciences, LLC |
| 2 | 7,789,886 | 9/7/2010 | Axia MedSciences, LLC |
| 3 | 8,066,716 | 11/29/2011 | Axia MedSciences, LLC |
| 4 | 8,337,513 | 12/25/2012 | Axia MedSciences, LLC |
| 5 | 9,468,464 | 10/18/2016 | Axia MedSciences, LLC |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br>☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
|---|---|---|
| | PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |

| | PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| see attached Final Consent Judgment |

| CLERK<br>KIRY K. GRAY | (BY) DEPUTY CLERK | DATE<br>5/23/19 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

EDGE-CARTESSA_0001899

**IT IS SO STIPULATED AND AGREED**

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: May 20, 2019        By: */s/ Paul A. Stewart*
Paul A. Stewart
paul.stewart@knobbe.com
Ali S. Razai
ali.razai@knobbe.com

Attorneys for Plaintiffs
EDGE SYSTEMS LLC and
AXIA MEDSCIENCES, LLC

HANKIN PATENT LAW, APC

Dated: May 20, 2019        By*: /Marc E. Hankin/ (with permission)*
Marc E. Hankin
marc@hankinpatentlaw.com
Anooj Patel
anooj@hankinpatentlaw.com

Attorneys for Defendant,
IMAGE MICRODERM, INC.

**IT IS SO ORDERED AND DECREED, AND FINAL JUDGMENT IS HEREBY ENTERED**

Dated: _5/23/19_ _____
Honorable Philip S. Gutierrez
United States District Judge

30557834

- 7 -

EDGE-CARTESSA_0001900

Case 2:17-cv-06082-PSG-AGR   Document 92   Filed 08/15/18   Page 430 of 485   Page ID #9218

# REPORT ON THE FILING OR DETERMINATION OF AN
## ACTION REGARDING A PATENT OR TRADEMARK
### (Continued)

| | Docket No. 2:17-cv-8699 | Date Filed 12/1/2017 | U.S. District Court For the Central District of California |
|---|---|---|---|
| | **PATENT NO.** | **DATE OF PATENT** | **HOLDER OF PATENT** |
| 6 | 9,550,052 | 1/24/2017 | Edge Systems LLC |
| 7 | 9,775,646 | 10/3/2017 | Axia MedSciences, LLC |

EDGE-CARTESSA_0001901

E-FILED 5/23/19

JS-6

Paul Stewart (SBN 153,467)
paul.Stewart@knobbe.com
Ali S. Razai (SBN 246,922)
ali.razai@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiffs EDGE SYSTEMS LLC and
AXIA MEDSCIENCES, LLC

Marc E. Hankin (SBN 170,505)
marc@hankinpatentlaw.com
Anooj Patel (SBN 300.297)
anooj@hankinpatentlaw.com
HANKIN PATENT LAW, APC
12400 Wilshire Boulevard, Suite 1265
Los Angeles, CA 90025
Telephone: (310) 979-3600
Facsimile: (310) 979-3603

Attorneys for Defendant IMAGE MICRODERM, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EDGE SYSTEMS LLC, a California limited liability company, and AXIA MEDSCIENCES, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>IMAGE MICRODERM, INC., a Nevada corporation,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS AND COUNTERCLAIMS-IN-REPLY | Civil Action No. 2:17-CV-08699-PSG-AGR<br><br>[PROPOSED]<br><br>**FINAL CONSENT JUDGMENT OF WILLFUL INFRINGEMENT AND PERMANENT INJUNCTION** |

EDGE-CARTESSA_0001902

Plaintiffs Edge Systems LLC ("Edge") and Axia Medsciences, LLC (collectively, "Plaintiffs") and Defendant Image Microderm, Inc. ("Defendant") hereby stipulate and jointly move for entry of final judgment as follows:

1. That this Court has subject matter jurisdiction over this action as well as personal jurisdiction over Plaintiffs and Defendant.

2. That venue is proper in this judicial district.

3. That Edge owns each of U.S. Patent Nos. 6,641,591 ("the 591 Patent"), 7,789,886 ("the '886 Patent"), 8,066,716 ("the '716 Patent"), 8,337,513 ("the '513 Patent"), 9,468,464 ("the '464 Patent"), 9,775,646 ("the '646 Patent") and 9,550,052 ("the '052 Patent") (collectively, the "patents-in-suit").

4. That each of the patents-in-suit is valid and enforceable, and that Defendant shall not challenge the validity or enforceability of any of the patents-in-suit in any judicial, administrative, or other proceeding.

5. That Defendant has manufactured, used, sold, offered for sale, and/or imported into the United States the BioXFusion MD product shown in Exhibit A.

6. That Defendant has manufactured, used, sold, offered for sale, and/or imported into the United States the BioXFusion Mini product shown in Exhibit B.

7. That the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion MD product shown in Exhibit A infringes each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, the '646 Patent, and the '052 Patent.

8. That the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion Mini product shown in Exhibit B infringes each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent.

/ / /

- 1 -

9. That through the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion MD product shown in Exhibit A, Defendant has infringed each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, the '646 Patent, and the '052 Patent.

10. That through the manufacture, use, sale, offer for sale, and/or importation into the United States of the BioXFusion Mini product shown in Exhibit B, Defendant has infringed each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent.

11. That Defendant induced its customers to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent, by using the BioXFusion MD product shown in Exhibit A because Defendant had knowledge of each of these patents-in-suit, Defendant knew that its customers would infringe each of these patents by using the BioXFusion MD product shown in Exhibit A, and Defendant had the specific intent to induce and did induce its customers to infringe each of these patents-in-suit by using the BioXFusion MD product shown in Exhibit A.

12. That Defendant induced distributors to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent, by selling and/or offering for sale the BioXFusion MD product shown in Exhibit A, because Defendant had knowledge of each of these patents-in-suit, Defendant knew that distributors would infringe each of these patents by selling and/or offering for sale the BioXFusion MD product shown in Exhibit A, and Defendant had the specific intent to induce and did induce distributors to infringe each of these patents-in-suit by selling and/or offering for sale the BioXFusion MD product shown in Exhibit A.

13. That Defendant induced its customers to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by using the BioXFusion Mini product shown in Exhibit B because

- 2 -

EDGE-CARTESSA_0001904

Defendant had knowledge of each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent, Defendant knew that its customers would infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by using the BioXFusion Mini product shown in Exhibit B, and Defendant had the specific intent to induce and did induce its customers to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by using the BioXFusion Mini product shown in Exhibit B.

14. That Defendant induced distributors to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent by selling and/or offering for sale the BioXFusion Mini product shown in Exhibit B because Defendant had knowledge of each of the patents-in-suit, Defendant knew that distributors would infringe each of the patents by selling and/or offering for sale the BioXFusion Mini product shown in Exhibit B, and Defendant had the specific intent to induce and did induce distributors to infringe each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent by selling and/or offering for sale the BioXFusion Mini product shown in Exhibit B.

15. That Defendant's infringement of each of the '591 Patent, the '886 Patent, the '716 Patent, the '513 Patent, the '464 Patent, and the '646 Patent was willful.

16. That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of

- 3 -

EDGE-CARTESSA_0001905

the '591 Patent during the life of the '591 Patent.

17.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '886 Patent during the life of the '886 Patent.

18.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '716 Patent during the life of the '716 Patent.

19.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '513 Patent during the life of the '513 Patent.

20.     That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting

- 4 -

EDGE-CARTESSA_0001906

to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '464 Patent during the life of the '464 Patent.

21. That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A, the BioXFusion Mini product shown in Exhibit B, or any other goods that are infringements of the '646 Patent during the life of the '646 Patent.

22. That, pursuant to the Patent Act, 35 U.S.C. § 283, Defendant, together with its officers, directors, agents, servants, employees and affiliates thereof, representatives and attorneys, and all other persons acting or attempting to act in concert or participation with them, are permanently enjoined and restrained from making, using, selling, offering to sell, or importing into the United States, the BioXFusion MD product shown in Exhibit A or any other goods that are infringements of the '052 Patent during the life of the '052 Patent.

23. That Defendant is enjoined from inducing others from undertaking any of the actions prohibited by any of Paragraphs 16-22 of this Final Consent Judgment and Permanent Injunction.

24. That Defendant has breached Paragraph 5 of the Parties' August 2014 Settlement Agreement attached as Exhibit C ("2014 Agreement").

25. That the covenant not to sue granted to Defendant by Plaintiffs in Paragraph 5 of the 2014 Agreement is null and void, but that all other provisions of the 2014 Agreement remain in effect.

- 5 -

EDGE-CARTESSA_0001907

26.     That Final Judgment be entered in favor of Plaintiffs and against Defendant on all claims, counterclaims, and defenses in this action.

27.     That Defendant has not paid any compensation for the infringing acts described herein.

28.     That no other or further relief, monetary or otherwise, be granted to Plaintiffs or Defendant with respect to each other, and that Plaintiffs will not seek any further relief, monetary or otherwise, from Defendant and/or from any of Defendant's officers, directors, agents, servants, employees and affiliates, representatives and attorneys, and/or any and all other persons and/or entities acting and/or attempting to act in concert and/or participation with them, including but not limited to, any and all of Defendant's distributors and/or customers, for any acts and/or omissions relating to the allegations of the Complaint in this matter.  Plaintiff's agreement not to seek further relief from Defendant's distributors and/or customers shall be void against any distributor or customer who files an action for declaratory relief against Plaintiff relating to any of the patents in suit.  For the avoidance of doubt, no license or release is hereby created in favor of Defendant's distributors or customers, who are receiving only a conditional personal immunity from suit.

29.     That Defendant affirmatively waives any and all rights to appeal this Final Consent Judgment and Permanent Injunction.

30.     That this Court retain jurisdiction over this matter to enforce compliance with the Permanent Injunction.

31.     That each party will bear its own costs and attorneys' fees for this action.

/ / /

/ / /

/ / /

/ / /

- 6 -

EDGE-CARTESSA_0001908

# Ex.    Under Seal

Ex.

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

Hon. Gary R. Brown
United States District Court for the Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722-9014

Re:  *Edge Systems LLC v. Cartessa Aesthetics, LLC* (Case No. CV-20-6082) (GRB) (ST)

Dear Judge Brown:

I write on behalf of Plaintiff Edge Systems to oppose Cartessa's request for leave to file a motion for summary judgment on the issues of infringement, marking and damages.

Cartessa seeks summary judgment of noninfringement of the '052 Patent based on its construction of the manifold limitation, which would require the claimed skin-treatment system to have the capability of providing treatment fluid from multiple containers sequentially ***and*** simultaneously. As Edge noted in its own motion for summary judgment letter, Edge does not dispute that Cartessa's Skinwave device can draw fluid from its four fluid containers only sequentially, not simultaneously. But Edge vigorously disputes the claim construction on which Cartessa's noninfringement position rests. Thus, the parties' cross-motions for summary judgment present a purely legal dispute on the proper construction of the manifold limitation.

However, the time for claim construction is long past. The Court has a detailed procedure for addressing claim construction, and Cartessa never proposed, briefed or argued the "simultaneous delivery" construction it now advances for the manifold limitation. The Court should therefore apply the plain and ordinary meaning of "manifold" and deny Cartessa's untimely request for claim construction. However, if the Court elects to address claim construction, it should reject Cartessa's construction because Cartessa misconstrues the prosecution history and improperly seeks to limit the claims to a feature present in a preferred embodiment and Edge's commercial product. The Court should instead apply the plain meaning of the manifold limitation, informed by the dictionary definitions of "manifold" that both parties' experts have adopted. Those definitions do not require that a manifold have the ability to combine or mix fluids from different sources simultaneously. Accordingly, the Court should apply the plain meaning of the manifold limitation and rule that Cartessa infringes Claim 1 of the '052 Patent as a matter of law.

Cartessa also argues that it does not infringe the '052 Patent because independent Claims 1 and 11 supposedly require the steps of adding treatment fluid to the system and activating the vacuum. Cartessa's argument is based on a misunderstanding of the law. The claims of the '052 Patent are system claims, not method claims. While method claims are only infringed when the recited steps are performed, a system claim is infringed when the defendant sells a device that has the recited structural features and is configured to perform the recited functions. Claim 1 recites a system "wherein, ***when the vacuum source is activated*** and the tip contacts the skin surface," waste is removed from the skin to the waste container and treatment fluid is drawn from its container to the handpiece tip. Ex. A at 21:42-48 (emphasis added). Cartessa sells a system wherein, ***when the vacuum source is activated*** and the handpiece tip is placed against the

# Knobbe Martens

skin, the system performs the recited functions of removing waste and drawing fluid to the handpiece tip. Such a system infringes the '052 Patent the moment Cartessa imports or sells it, regardless of whether the system is ever unboxed or activated.

Cartessa also seeks summary judgment of noninfringement of the Shadduck patents because, according to Cartessa, the ridges on its handpiece tip are not "sharp" and do not "abrade" the skin. These are vigorously disputed factual issues that cannot be resolved on summary judgment. Edge's technical experts, engineer Richard Meyst and physician Elliot Duboys, tested the accused device and devoted over fifty combined pages of their expert reports to analyzing the "sharp" and "abrade" issues. They concluded that the ridges on the Skinwave tip are "sharp" within the meaning of the Shadduck patents and that they mechanically abrade the skin when the handpiece is translated across the skin surface. While Cartessa insists that its system abrades skin chemically, the asserted claims do not preclude chemical abrasion so long as the ridges on Cartessa's tip also abrade skin mechanically. Significantly, Cartessa's own Vice-President of Emerging Technologies, Crystal Romano, acknowledged in an internal email that ██████████ ████████████████████████████ Ex. 25. This striking admission belies Cartessa's claim that the ridges on its tip do not mechanically abrade skin.

Cartessa also seeks summary judgment on its marking defense. It is undisputed that Edge places a sticker on its patented hydradermabrasion systems that states that the system is covered by patents listed on the webpage hydrafacialco.com/patents. This procedure is expressly authorized by the marking statute. Cartessa makes much of Edge's temporary suspension of its patent webpage to update that page. But this is normal and, because it occurred after this case was initiated, has no bearing on whether Cartessa had actual or constructive notice of Edge's patents *before* Edge filed its complaint. Cartessa also argues that Edge's website does not list the HydraFacial Elite system. But the Elite system is structurally and visually identical to all of Edge's freestanding (non-tabletop) HydraFacial systems. Because Edge periodically rebrands its freestanding HydraFacial system, Edge placed a photograph of its freestanding system next to the list of patents that cover the system. Dr. Duboys, a physician whose medical spa provides hydradermabrasion treatments, has opined that someone who sees a system bearing Edge's sticker and then sees *the identical device* on Edge's website would understand that the device bearing the sticker is covered by the patents listed on the website. Whether this satisfies the marking statute is, at most, a factual issue for the jury.

Finally, Cartessa seeks summary judgment that its proposed reasonable-royalty rate is correct. It is hard to imagine a more factually intense issue than the determination of a reasonable royalty for use of a patent, which involves considering *fifteen Georgia-Pacific* factors. Nor is there any merit to Cartessa's criticisms of Edge's damages expert, David Hanson. For example, while Cartessa complains that Mr. Hansen's royalty rate is over 100% of Cartessa's sales price, this is common when an infringer sells at an artificially low price. Indeed, Cartessa's own expert has proposed rates over 100% in at least one other case. Cartessa's criticisms of Mr. Hanson are, at most, fodder for cross-examination, not grounds for summary judgment.

# Knobbe Martens

Respectfully submitted,

Dated: July 6, 2022          By: */s/ Sean M. Murray*

                    Craig S. Summers (*Admitted pro hac vice*)
                    Email: craig.summers@knobbe.com
                    Ali S. Razai (*Admitted pro hac vice*)
                    Email: ali.razai@knobbe.com
                    Karen M. Cassidy Selvaggio (*Admitted pro hac vice*)
                    Email: karen.cassidy@knobbe.com
                    Sean M. Murray (*Admitted pro hac vice*)
                    Email: sean.murray@knobbe.com

                    **KNOBBE, MARTENS, OLSON & BEAR, LLP**
                    2040 Main Street, Fourteenth Floor
                    Irvine, CA  92614
                    Telephone: (949) 760-0404
                    Facsimile: (949) 760-9502

                    *Attorneys for Plaintiff*
                    EDGE SYSTEMS LLC

55747784

# Ex. Q, R
# Under Seal

# Ex. S

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EDGE SYSTEMS LLC, | ) <br> ) Civil Action No. 1:20-cv-06082 <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) **PLAINTIFF EDGE SYSTEMS LLC'S** <br> ) **DISCLOSURE OF ASSERTED CLAIMS** <br> ) **AND INFRINGEMENT CONTENTIONS** |
| CARTESSA AESTHETICS, LLC, | ) |
| Defendant. | ) <br> ) |

Plaintiff Edge Systems LLC ("Edge") hereby submits the following Disclosure of Asserted Claims and Infringement Contentions, which include Edge's initial claim charts for the patents-in-suit: U.S. Patent Nos. 6,641,591 ("the '591 Patent"), 8,066,716 ("the '716 Patent"), 8,337,513 ("the '513 Patent"), 9,550,052 ("the '052 Patent"), and 9,775,646 ("the '646 Patent") (collectively, the "Asserted Patents").

A. **Disclosures of Asserted Claims and Infringement Contentions**

The following disclosures are based on the information reasonably available to and located by Edge to date. Pursuant to the Parties' Joint Discovery Plan Worksheet, Defendant agreed to produce documents, including agreements with Eunsung Global regarding the Skinwave system, user's manuals relating to the Defendant's Skinwave system, drawings/schematics for the Skinwave system, and design files for the Skinwave system, during Phase I. However, Defendant has not produced any documents to date. Edge has not completed its investigation of the facts relating to this case and has not completed preparation for trial. Edge expressly reserves the right to amend or supplement these contentions if it receives newly available information or as required by the Court's claim construction ruling.

1

**B. <u>Asserted Claims</u>**

Based on the presently available information, Edge asserts that Defendant Cartessa Aesthetics, LLC ("Defendant") infringes, literally and/or under the doctrine of equivalents, at least claims 1, 4, and 6-8 of U.S. Patent No. 6,641,591, claims 1, 3, 4, 6, 8-12, and 14-16 of U.S. Patent No. 8,066,716, claims 1-4, 6-12, and 14 of U.S. Patent No. 8,337,513, claims 1-17 of U.S. Patent No. 9,550,052, and claims 1, 2, 4-8, 11-14, 16-18, 21-22, 24-26, and 28 of U.S. Patent No. 9,775,646 (collectively, the "Asserted Claims"). Further details on how Defendant's product infringes each of the asserted claims of the Asserted Patents are provided below and in Exhibits A-E of Appendix A, attached hereto.

**C. <u>Accused Products</u>**

The accused hydradermabrasion device is manufactured by Eunsung Global ("Eunsung") and is sold in the United States under various names including the Skinwave, the Hydra Touch H2, and the Hydra Care H2 (the "Accused Product"). Defendant's website indicates that it is the exclusive U.S. distributor of the Eunsung device. Dkt 1, Ex. 6 (stating that Defendant "teamed up with Eunsung Global manufacturer to ***exclusively*** bring Skinwave to the US." (emphasis added)). The Accused Product is shown in detail in Appendix A to these contentions, including the claim charts in Exhibits A-E thereto. Because the Accused Product has the same structure regardless of the name under which it is sold, the claim charts in these contentions refer to images of and documentation relating to the Accused Product without regard to the specific brand name that appears on the product or in the documentation.

Defendant has not provided Edge with a complete list of the products that Defendant makes, uses, sells, offers for sale, and/or imports into the United States, and Phase II discovery does not begin until July 23, 2021. Edge reserves the right to amend its infringement contentions

as additional information becomes available through discovery. Edge additionally reserves the right to supplement or amend these disclosures and contentions upon Defendant's production of its agreements with Eunsung Global ("Eunsung") relating to the Accused Product.

## D. Infringement Charts

In Appendix A, Edge has attached claim charts for each Asserted Patent, labeled Exhibits A-E. These claim charts identify where and how each limitation of each Asserted Claim is present in the Accused Product. Appendix A, including Exhibits A-E thereto, is incorporated herein by reference. Discovery is at its nascent stages and Edge provides these initial claim charts based on information presently known to Edge. Defendant has not produced technical documents relating to the Skinwave System, including but not limited to user manuals, engineering drawings, design files, or documents sufficient to identify the components of the Skinwave System. Accordingly, Edge reserves the right to supplement and/or amend these initial claim charts to incorporate information that may be discovered during litigation. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this disclosure based on the Court's construction of any disputed claim terms.

Edge's initial claim charts are illustrative of its contentions and are not intended to limit Edge's ability to rely on other documents, information or evidence to prove the contentions described in these initial charts, or in rebuttal of arguments asserted by Defendant.

## E. Doctrine of Equivalents

Edge contends that each Asserted Claim is literally infringed by the Accused Product. To the extent that any claim element is not literally satisfied, the Accused Product would still infringe under the doctrine of equivalents because any differences between the Accused Product and any element of the respective Asserted Claim would be insubstantial.

3

Defendant has not yet identified any claim construction disputes or provided non-infringement contentions.  Edge reserves the right to identify additional grounds for infringement under the doctrine of equivalents after the Defendant provides its claim construction positions and non-infringement contentions, or as necessitated by the Court's claim construction ruling.

## F.  <u>Asserted Patents</u>

### <u>U.S. Patent No. 6,641,591</u>

As set forth in the claim chart attached to Appendix A hereto as Exhibit A, Accused Product infringes Claims 1, 4, and 6-8  of the '591 Patent, literally and/or under the doctrine of equivalents, because it meets each and every limitation of those claims literally and/or under the doctrine of equivalents.

### <u>U.S. Patent No. 8,066,716</u>

As set forth in the claim chart attached to Appendix A hereto as Exhibit B, the Accused Product infringes Claims 1, 3, 4, 6, 8-12, and 14-16 of the '716 Patent, literally and/or under the doctrine of equivalents, because it meets each and every limitation of those claims literally and/or under the doctrine of equivalents.

### <u>U.S. Patent No. 8,337,513</u>

As set forth in the claim chart attached to Appendix A hereto as Exhibit C, the Accused Product infringes Claims 1-4, 6-12, and 14 of the '513 Patent, literally and/or under the doctrine of equivalents, because it meets each and every limitation of those claims literally and/or under the doctrine of equivalents.

### <u>U.S. Patent No. 9,550,052</u>

As set forth in the claim chart attached to Appendix A hereto as Exhibit D, the Accused Product infringes Claims 1-17 of the '052 Patent, literally and/or under the doctrine of

equivalents, because it meets each and every limitation of those claims literally and/or under the doctrine of equivalents.

### U.S. Patent No. 9,775,646

As set forth in the claim chart attached to Appendix A hereto as Exhibit E, the Accused Product infringes Claims 1, 2, 4-8, 11-14, 16-18, 21-22, 24-26, and 28 of the '646 Patent, literally and/or under the doctrine of equivalents, because it meets each and every limitation of those claims literally and/or under the doctrine of equivalents.

### G.  Reservation of Rights

These disclosures are based on information currently available to Edge.  Edge expressly reserves the right to amend, supplement, or otherwise modify its disclosures as additional information becomes available through discovery and as necessitated by the Court's claim construction order.

Respectfully submitted,
KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  April 19, 2021

By: */s/ Karen M. Cassidy*

Craig S. Summers (*Admitted pro hac vice*)
Email: craig.summers@knobbe.com
Ali S. Razai (*Admitted pro hac vice*)
Email:  ali.razai@knobbe.com
Karen M. Cassidy (*Admitted pro hac vice*)
Email: karen.cassidy@knobbe.com
Sean M. Murray (*Admitted pro hac vice*)
Email: sean.murray@knobbe.com
Ashley C. Morales (*Admitted pro hac vice*)
Email: ashley.morales@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff*
EDGE SYSTEMS LLC

5

# APPENDIX A

## APPENDIX A – Infringement by the Accused Product

The Accused Product is manufactured by Eunsung Global ("Eunsung") and is exclusively distributed in the United States by Defendant.  Dkt. 1, Ex. 6 (stating that Defendant "teamed up with Eunsung Global manufacturer to **exclusively** bring Skinwave to the US." (emphasis added)).  Defendant sells the Accused Product on its website under the Skinwave brand and elsewhere under the name Hydra Care H2.  Eunsung's English-language website shows the Accused Product branded with the name Hydra Touch H2.  As shown below, the Accused Product has the same structure regardless of how it is branded.  Figures 1A and 2A are from Defendant's website and show the Accused Product branded with the Skinwave name.[1]  Figures 1B and 2B are from Eunsung's website and show an Accused Product branded as Hydra Touch H2.[2]  Figures 1C and 2C are images of a commercially available Accused Product bearing the brand "Hydra Care H2" that Edge purchased in the United States.

Edge's factual investigation is ongoing, and Defendant has yet to produce any documents or information in discovery.  Accordingly, while these contentions describe the elements of the Accused Product with reference to devices bearing the Skinwave, Hydra Touch H2, and Hydra Care H2 brands, these contentions apply to any other Accused Product bearing different brand names that Defendant imports into the United States, or that Defendant sells, offers for sale or uses in the United States.

The Accused Product is a system for treating the skin surface of a patient.  The Accused Product includes a manifold (21) to which at least a first and second container are attached (13),

---

[1] *See* https://www.cartessaaesthetics.com/skinwave (visited April 6, 2021) (EDGE-CARTESSA_0011969-11972).

[2] *See* http://esglobal.co.kr/en/products-intro/facial-care/hydra_touch_h2/ (visited April 6, 2021)( EDGE-CARTESSA_0011965-11968).

1

placing them in fluid communication with the manifold and, ultimately, the handpiece (1). The

manifold includes a console (22) and a display comprising a user input device and touch screen

(23).



**Figure 1A**
(EDGE-CARTESSA_0011970)

**Figure 1B**
(EDGE-CARTESSA_0011966)

**Figure 1C**
(EDGE-CARTESSA_0011981)

The Accused Product includes a handpiece or handheld device (1) that is configured to

receive a replaceable tip (2) at the end of the handpiece, an example of which is shown in Figures

2A-2C below.    Defendant refers to this tip as the "Aqua Scaling Tip."    *See, e.g.,*

https://cartessastore.com/products/skinwave-tips   (last visited April 10, 2021) (EDGE-

CARTESSA_0011990-91).  The tip or interface portion (2) supplied with the Accused Product

2

that forms the working end (5) of the handpiece (1) is removable from the main body or instrument body (3) of the handpiece (1). The handpiece (1) of the Accused Product has a body or main body (3) that comprises a housing (4) and an interior channel (20). The interior channel (20) is shown below in Figure 6. The distal end of the handpiece (1) includes a working end, working end portion, or working surface (5), which has a distal end (6).



**Figure 2A**
(EDGE-CARTESSA_0011989)

**Figure 2B**
(EDGE-CARTESSA_0011967)

**Figure 2C**
(EDGE-CARTESSA_0011982)

The working end (5) of the handpiece (1) includes an abrasive or abrading structure, skin interface, or surface element (7), comprised of ridges or apices (7) and valleys (19), that is configured to abrade a patient's skin. The working end (5) includes an aperture arrangement (17)

3

which includes an inflow port, delivery aperture or port, aperture, opening, or port (10) that is in fluid communication with a flowable or treatment media and includes an aperture arrangement (18) which includes an aperture, opening, or port (8) that is in fluid communication with a vacuum source (9). The Accused Product includes eight of these ports (8). The working end (5) also includes an outer periphery or perimeter (11) that encircles (7), (8), and (10). The working end (5) also includes a plurality of recessed portions or valleys (19).



**Figure 3:** Aqua Scaling Tip (small) (EDGE-CARTESSA_0011979)



**Figure 4:** Aqua Scaling Tip (small) (black highlights added). (EDGE-CARTESSA_0011983)

When in use, the working end (5) of the handpiece (1) is translated relative to the patient's skin surface.[3]  In addition, when in use, the outer periphery (11) of the working end (5) is

---

[3] *See, e.g.*:
https://www.facebook.com/cartessaaesthetics/videos/361807448055124/https://www.facebook.com/cartessaaestheti cs/videos/311527229734983/ and https://www.youtube.com/watch?v=nFwmtIaJ0U&feature=youtu.be (all last visited December 11, 2020) (collectively, "the Skinwave Videos") (EDGE-CARTESSA_0011962-11964); https://www.youtube.com/watch?v=eMX3FAovqK8, https://www.youtube.com/watch?v=eYxBtLwi2Bc (all last visited April 6, 2020) (collectively, "the Hydra Touch Videos") (EDGE-CARTESSA_0011977-11978).

configured to contact the patient's skin surface.  This contact creates a vacuum seal between the working end (5) and the patient's skin, as shown in Figure 5 below.

The application of a vacuum (9) through the aperture (8) draws the patient's skin against the outer periphery (11) and structure (7) of the handpiece to abrade the patient's skin during translation of the handpiece's working end across the selected skin surface.  Structure (7) has an edge (12) that is sharp enough to abrade skin.  *See, e.g.,* Figs. 3-4.  At the same time, a flowable media can be provided to the patient's skin via the inflow port (10) at the working end (5) of the handpiece (1).  The flowable media provided to the patient's skin is located in a fluid media reservoir, fluid media source, fluid container, or treatment media source (13) that is separate from the handpiece (1).  The fluid media reservoir (13) is in fluid communication with the inflow port (10) via a treatment media passageway or conduit (15).



**Figure 5:** Imprint of the Aqua Scaling Tip (small) purchased from Defendant (EDGE-CARTESSA_0011984)



**Figure 6:** Skinwave System (EDGE-CARTESSA_0011966).

The vacuum source (9), which is in fluid communication with the aperture (8) via a passageway, waste passageway (25), or supply conduit (15), is adapted to apply suction to the aperture (8) to draw debris away from the patient's skin surface. Spent treatment media and debris that results from the skin abrasion is aspirated away from the working end (5) through passageway

5

(15) by the suction generated by the vacuum source (9) and is deposited in a container or reservoir OR debris receptacle (16).



**Figure 7**
(EDGE-CARTESSA_0011980)

Figures 8-11, below, show the interior of the Accused Product.  Figure 8 depicts a waste passageway (25) and a delivery passage (26).  Figure 9 depicts waste passageway (25) connecting through connection (27) to the waste receptacle (16).  Figure 9 also depicts the delivery passageway (26) connecting to fluid media containers (13) through delivery passageways (26a, 26b, and 26(c)).  Figure 10 shows the delivery passageway (26) connecting to the manifold for flow control (28). Finally, Figure 11 depicts the interior of the Accused Product, showing the vacuum source (9).



**Figure 8**
(EDGE-CARTESSA_0011994)

**Figure 9**
(EDGE-CARTESSA_0011995)

**Figure 10**
(EDGE-CARTESSA_0011996)

**Figure 11**
(EDGE-CARTESSA_0011997)

The working end (5) comprises the Aqua Scaling Tip (2). The Aqua Scaling Tip (2) is removable from the handpiece (1). As shown below in Figure 12, the Aqua Scaling Tips (2) can be purchased separately. Additionally, as shown below in Figure 13, the Accused Product is movable. For example, it has wheels (24).

7



**Figure 12**
(EDGE-CARTESSA_0011970)



**Figure 13**
EDGE-CARTESSA_0011989

8

# EXHIBIT A

## CLAIM CHARTS – EXHIBITS A-E

The numerals referenced in the claim charts below correspond to the structures that are identified in Figures 1-13 above.

### Exhibit A - Infringement Chart for U.S. Patent No. 6,641,591

| Claim Language | Accused Product |
| --- | --- |
| **Claim 1** ||
| 1. A system for treating the skin surface of a patient, comprising: | The Accused Product is a system for treating the skin surface of a patient. For example, Defendant's website describes the Accused Product as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
| (a) an instrument body with a distal working end that defines a skin interface portion for contacting the skin; | The Accused Product includes a handpiece (1) that includes an instrument body (3) and a distal working end (5) with a tip (2) (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See e.g.* the Skinwave Videos (EDGE-CARTESSA_0011962-11964); the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| (b) a first aperture arrangement in said skin | The skin interface (2) has a first aperture arrangement (17) that delivers treatment media from a treatment media source (13) to the skin through |

9

| | |
|---|---|
| interface consisting of at least one port in communication with a treatment media source; | a port (10) (i.e. the port is "in communication" with the treatment media source). *See* Figs. 1 and 4; *see also* Figs. 8-11.<br><br>When in contact a patient's skin, fluid is drawn from fluid media sources to the working surface of the tip, for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| (c) a second aperture arrangement in said skin interface consisting of at least one port in communication with a vacuum source for removing treatment media and removed tissue from the skin interface; and | The skin interface (2) has a second aperture arrangement (18) with eight ports (8) located near the periphery (11). These ports are connected to a vacuum source (9). *See* Figs. 3, 4, and 6; *see also* Figs. 8-11.<br><br>When activated, the vacuum source creates a vacuum that suctions used treatment media and abraded skin particles through the ports and deposits them in a debris receptacle (16) located on the back of the device. *See* Figs. 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| (d) wherein the skin interface comprises an abrading structure with | The skin interface (2) has abrading structures (7) that have substantially sharp edges (12). |

10

| | |
|---|---|
| substantially sharp edges for abrading tissue. | The tip is made of hard plastic and comprises a configuration with substantially sharp edges that abrades skin when the tip is translated across the skin.  *See* Fig. 3 and 4. |
| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

| Claim 4 |
|---|

| | |
|---|---|
| 4. The system of claim 1 wherein said skin interface portion has shape irregularities comprising distally projecting apices and recessed portions therebetween. | The skin interface (2) located on the distal end (6) has shape irregularities comprising projecting apices (7) and recessed portions (19) in between. *See* Fig. 4. |
| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

| Claim 6 |
|---|

| | |
|---|---|
| 6. The system of claim 1 wherein said treatment media source carries a fluid. | The Accused Product includes a treatment media source (13). As shown, for example, in Figure 6, when the Accused Product is in use, the user can provide a fluid to the skin. *See* Figs. 6, 8-11*,* the Skinwave Videos (EDGE-CARTESSA_0011962-11964); Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). |
| | When in contact a patient's skin, fluid is drawn from treatment media sources to the working surface of the tip, for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968. |

11

| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 7** | |
| 7. The system of claim 6 wherein the fluid is sterile water or saline solution. | The fluid can be sterile water or saline solution. *See* EDGE-CARTESSA_0011969-11972 ("utilizing water infused with hydrogen") & EDGE-CARTESSA_0011965-11968 ("nourish with hydrogen water"). <br><br> The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 8** | |
| 8. The system of claim 6 wherein the fluid carries an agent selected from the class comprising TCA (trichloroacetic acid), glycolic acid, alphahydroxy acid (AHA), lactic acid, and citric acid. | The supplied solutions incorporate Alpha Hydroxy Acid. *See* EDGE-CARTESSA_0011969-11972; EDGE-CARTESSA_0011965-11968. <br><br> The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. <br><br> (EDGE-CARTESSA_0011989) <br><br> The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information |

12

|  | presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|

# EXHIBIT B

## Exhibit B - Infringement Chart for U.S. Patent No. 8,066,716

| Claim Language | Accused Product |
|---|---|
| | **Claim 1** |
| 1. A system for treating a skin surface of a patient, comprising: | The Accused Product is a system for treating the skin surface of a patient. For example, Defendant's website describes the Accused Product as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
| an instrument body that comprises a main body and a working end, said working end comprising an outer periphery and a skin interface with an abrading structure, said abrading structure comprising a plurality of ridge elements, wherein said ridge elements are configured to abrade skin; and | The Accused Product includes an instrument/main body (3) and a working end (5). The working end (5) is a skin interface/tip (2) with an outer periphery (11) and abrading structures (7). The abrading structures include a plurality of ridge elements (7) and those ridge elements are configured to abrade skin. *See* Figs. 3-4; *see also, e.g.* the Skinwave Videos (EDGE-CARTESSA_0011962-11964) and the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978), EDGE-CARTESSA_0011965-11968 ("exfoliation by vacuum"); EDGE-CARTESSA_0011969-11972 ("cleanse & exfoliate").<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| at least one aspiration opening at or near the skin | The skin interface (2) includes openings (8) located at the working end (5). The openings (8) are coupled to a passageway (15), (25), |

| | |
|---|---|
| interface coupled to a passageway that extends to a remote vacuum source configured to apply suction to the skin surface; | and (26) that extends to a vacuum source (9) configured to apply suction to the skin surface during use. *See* Figs. 6 and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the outer periphery completely circumscribes the plurality of ridge elements and the at least one aspiration opening. | The outer periphery (11) surrounds the ridge elements (7) and the openings (8), as shown in Figures 3 and 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 3** | |
| 3. The system of claim 1, further comprising at least one media inflow port in the skin interface, said media inflow port configured to deliver a flowable media to the skin during treatment. | The skin interface (2) includes an inflow port (10) that provides a flowable media to the skin during treatment. *See, e.g.,* Figs 3-4, 8-11, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>When in contact a patient's skin, treatment media is drawn from the media sources (13) to the working surface (5), for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on |

15

| | the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 4** | |
| 4. The system of claim 3, wherein at least a portion of the abrading structure is positioned between the at least one media inflow port and the at least one aspiration opening. | The abrading structures (7) are positioned between the media inflow port (10) and the aspiration openings (8), as shown in Figure 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 6** | |
| 6. The system of claim 4, wherein the least one aspiration opening in the skin interface is positioned closer to a periphery of the working end as compared to the at least one media inflow port. | The aspiration openings (8) in the skin interface (2) are positioned closer to the periphery (11) as compared to the media inflow port (10). *See* Fig. 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 8** | |
| 8. The system of claim 3, wherein the working end is formed from a transparent material. | The working end/tip (2) is formed from a transparent material. *See, e.g., Figs*. 3 & 4. |

16

| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 9** | |
| 9. The system of claim 1, wherein the working end is formed from a transparent material. | The Accused Product includes a working end/tip (2) that is formed from a transparent material. *See, e.g.*, *Figs.* 3 & 4. |
| **Claim 10** | |
| 10. The system of claim 1, wherein the at least one aspiration opening is located around the abrading structure. | As shown in Figures 3 and 4, the aspiration openings (8) are located around the abrading structure (7). *See, e.g.*, Figs. 3 & 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 11** | |
| 11. A system for treating skin, comprising: | The Accused Product is a system for treating the skin surface of a patient. For example, Defendant's website describes the Accused Product as: |

17

| | |
|---|---|
| | The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
| a handheld device comprising a main body and a working end attached to a distal end of the main body, said main body defining a longitudinal axis, said working end comprising an abrading structure, wherein said abrading structure comprises a plurality of abrading elements configured to abrade skin, wherein each abrading element comprises a sharp edge; and | The Accused Product has a handheld device (1) with a main body (3) having a distal (6) working end (5) (e.g., a tip (2)) that contacts the skin during use. *See also, e.g.,* Figs. 5-6, the Skinwave videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The working end/tip (2) includes an abrading structure comprising a plurality of abrading elements (7). *See* Figs. 3-4. The tip is made of hard plastic and comprises a configuration with a plurality of elements (7) with sharp edges that abrade skin when the tip is translated across the skin surface (the abrading elements). *Id.*, *see also* EDGE-CARTESSA_0011965-11968 ("exfoliation by vacuum"); EDGE-CARTESSA_0011969-11972 ("cleanse & exfoliate").<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| at least one aperture along the working end, said at least one aperture being in fluid communication with a vacuum source adapted to apply suction to all of the at least one aperture in order | The handheld device (1) includes at least one aperture (8) located along the working end/tip (2). *See* Figs. 3 and 4. These apertures are connected to a vacuum source (9). *See, e.g.,* Figs. 3-6, 8-11 the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>When activated, the vacuum source (9) creates a vacuum that suctions used treatment media and abraded skin particles through |

18

| | |
|---|---|
| to draw abraded skin away from the working end, | the apertures and deposits them in a debris receptacle (16) located on the back of the device. *See* Figs. 6, 7, and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the at least one aperture and the abrading elements are located completely within a raised outer periphery of the working end. | The Accused Product includes apertures (8) and abrading elements (7). The apertures (8) and abrading elements (7) are located within the raised periphery (11) of the working end/tip (2). *See* Fig. 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 12** | |
| 12. The system of claim 11, further comprising at least one inflow port configured to deliver a flowable media to a skin surface during treatment. | The Accsued Product includes an inflow port (10) that provides a flowable media to the skin during treatment. *See, e.g.* Figs. 3 and 4, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>When in contact with a patient's skin, fluid is drawn from media sources (13) to the working surface of the tip (2), for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery |

19

| | |
|---|---|
| | system, skin revitalizing solutions . . .”); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 14** | |
| 14. The system of claim 11, wherein the working end is selectively removable from the main body. | The working end/tip (2) is removable from the main body (3). The working end/tip (2) is a single use consumable that is sold separately, as shown, for example, in Figure 12. *See also*, Figs. 3-4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 15** | |
| 15. A system for treating a skin surface, comprising: | The Accused Product is a system for treating the skin surface of a patient. For example, Defendant's website describes the Accused Product as: |

20

The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.

(EDGE-CARTESSA_0011989)

| | |
|---|---|
| a handheld device comprising a main body and a working end at a distal end of the main body, said working end comprising an abrading structure configured to selectively abrade skin; | The Accused Product has a handheld device (1) with a main body (3) having a distal (6) working end (5) (e.g., a tip (2)) that contacts the skin during use. *See, e.g.,* Figs. 3-6, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The working end/tip (2) includes an abrading structure (7). The tip (2) is made of hard plastic with sharp edges that abrade skin when the tip is translated across the skin surface. *See* Figs.3- 4; *see also* EDGE-CARTESSA_0011965-11968 ("exfoliation by vacuum"); EDGE-CARTESSA_0011969-11972 ("cleanse & exfoliate").<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| at least one aperture at or near the working end of the device, wherein said aperture is in fluid communication with a vacuum source adapted to apply a suction to said aperture to draw debris | The working end/tip includes at least one aperture (8) located along the working end/tip (2). *See* Figs. 3 and 4. These apertures are connected to a vacuum source (9) via passageways (15), (25), and (26). *See* Figs 3-6, 8-11.<br><br>When activated, the vacuum source (9) creates a vacuum that suctions used treatment media and abraded skin particles through |

21

| | |
|---|---|
| away from the skin surface; and | the apertures (8) and deposits them in a debris receptacle (16) located on the back of the device. *See* Figs. 6, 7, and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| at least one inflow port at the working end, said inflow port configured to deliver a flowable media to the skin surface during treatment; | The working end/tip (2) includes an inflow port (10) located on the working end/tip (5) of the handheld device (1) that is configured to deliver flowable media to the skin surface during treatment. *See* Figs. 3-4, 8-11.<br><br>When in contact a patient's skin, fluid is drawn from media sources (13) to the working surface of the tip, for delivery to the skin. *See* Figs. 3-4, 8-11; *see also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the working end comprises a non-abrasive outer periphery that generally circumscribes an interior area, the abrading | The working end/tip (2) of the handheld device (1) also includes a non-abrasive outer periphery (11) that circumscribes an interior area that the includes the abrading structure (7), the aperture (8) and the inflow port (10). *See* Figs. 3-4. The outer periphery (11) is configured to contact the patient's skin surface during |

| | |
|---|---|
| structure being located completely within said interior area, the outer periphery is configured to contact the skin surface during treatment, and wherein the at least one aperture and the at least one inflow port are positioned within the interior area; | treatment. *See* Fig. 5, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein flowable media delivered through the at least one inflow port is configured to pass through at least a portion of the abrading structure before being removed away from the working end through the at least one aperture. | The flowable media is delivered through the inflow port (10) and passes through the abrading structure (7) and removed through apertures (8). *See, e.g,* Figs. 3, 4, 6, 8-11; *see also, e.g.,* EDGE-CARTESSA_0011965-11968 (showing radial flow between abrading structure).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 16** | |
| 16. The system of claim 15, wherein the flowable media is configured to be delivered to the skin surface by the suction of the vacuum source. | When the vacuum source (9) is activated and the the working end/tip (2) is contacting to the skin, a vacuum is formed causing the flowable media to be delivered to the patient's skin surface by the suction of the vacuum source (9). *See e.g.,* Figs. 8-11, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). Accordingly, the flowable media is configured to be delivered to the skin surface by the suction of the vacuum source.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on |

23

| | the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|

# EXHIBIT C

## Exhibit C - Infringement Chart for U.S. Patent No. 8,337,513

| Claim Language | Accused Product |
|---|---|
| **Claim 1** ||
| 1. A system for treating skin, comprising: | The Accused Product is a system for treating the skin surface of a patient.  For example, Defendant's website describes the Accused Product as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
| a handheld device comprising a main body and a working end along a distal end of the main body; | The Accused Product includes a handheld device (1) having a distal working end (5) with a tip (2) (e.g., the Aqua Scaling Tip).  *See* Figs. 2A-2C.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| an outer periphery extending along the distal end of the handheld device; | The Accused Product includes an outer periphery (11) extending along the distal working end/tip (2) of the handheld device (1). *See* Fig. 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the |

25

| | |
|---|---|
| | parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| at least one surface element extending distally from the working end of the handheld device, said at least one surface element being positioned within an interior area circumscribed by the outer periphery; | The working end/tip (2) includes at least one surface element (7) that extends distally from the working end/tip (2) of the handheld device (1). The outer periphery (11) circumscribes an interior area that includes the surface element (7). *See* Fig. 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the at least one surface element comprises at least one sharp edge configured to abrade skin when said handheld device is moved relative to a skin surface; and | The surface elements (7) are made of hard plastic and comprise a configuration with sharp edges that abrade skin when the tip (2) is translated across the skin surface. *See* Figs. 3 and 4; the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| at least one opening along the working end of the handheld device; | The working end/tip (2) has eight openings (8) located near the periphery (11) of the working end (5) of the handheld device (1). *See* Figs. 3 and 4. |

| | |
|---|---|
| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the at least one opening is configured to be placed in fluid communication with a vacuum source via a passageway, said passageway being configured to convey debris away from the working end when said vacuum source is activated; and | The openings (8) are in fluid communication with a vacuum source (9) via passageways (15), (25), and (26). *See* Figs. 8-11. When activated, the vacuum source (9) creates a vacuum that suctions used treatment media and removed skin particles through the openings (8) and through a passageway (15) and (25), and deposits them in a debris receptacle (16) located on the back of the device. *Id*. *See* Fig. 7. <br><br> The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein substantially an entire circumference of the outer periphery is configured to contact a skin surface during a treatment procedure. | As shown in Figure 5 (an imprint of the Aqua Scaling Tip (small) purchased from Defendant) the entire outer periphery (11) contacts the skin surface when used during a treatment procedure. *See e.g.,* Figs. 5-6, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). <br><br> The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In |

27

| | addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 2** ||
| 2. The system of claim 1, further comprising at least one inflow port located along the working end, wherein said at least one inflow port is configured to deliver a flowable media to the skin during a treatment. | The working end/tip (2) includes an inflow port (10) that provides a flowable media to the skin during treatment. *See* Figs. 3-4, & 8-11**.**<br><br>When in contact with a patient's skin, fluid is drawn from a media source to the working surface of the tip (2), for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."), EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 3** ||
| 3. The system of claim 2, wherein at least a portion of the at least one surface element is positioned between the at least one inflow port and the at least one opening. | The surface element (7) is positioned between the inflow port (10) and the opening (8), as shown, for example in Figures 3 & 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction |

| | order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 4** | |
| 4. The system of claim 2, wherein the at least one inflow port is in fluid communication with a fluid media reservoir. | Flowable media is delivered from a media reservoir (13) through the inflow port (10). As shown for example, in Figures 1A-1C and 8-11, the inflow port (10) of the handpiece (1) connects to the fluid media reservoir (13) via a passageways (15) and (26). *See* Figs. 1A-1C, 2A-2C, 6 and 8-11.

When in contact with a patient's skin, fluid is drawn from fluid media reservoirs (13) to the working surface of the tip (2), for delivery to the skin. *See* Figs. 8-11; *see also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.

The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 6** | |
| 6. The system of claim 4, wherein the fluid media reservoir comprises a remote reservoir that is separate from the handheld device. | As shown, for example, in Figures 1A-1C, the fluid media reservoir (13) is remote and separate from the handheld device (1).

The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect |

29

| | |
|---|---|
| | information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 7** | |
| 7. The system of claim 1, wherein the working end is removable from the main body. | The supplied working end/tip (2) supplied is removable from the main body (3) of the handpiece (1). *See* Fig. 12.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 8** | |
| 8. The system of claim 1, wherein the working end comprises a transparent material. | The working end/tip (2) is transparent, as shown in Figures 3 and 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 9** | |
| 9. The system of claim 1, wherein the working end comprises a plastic. | The working end/tip (2) is made of hard plastic, as shown in Figures 3 and 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the |

30

| | |
|---|---|
| | parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 10** | |
| 10. A system for treating a skin surface, comprising: | The Accused Product is a system for treating the skin surface of a patient. For example, Defendant's website describes the Accused Product as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
| a handheld device comprising a body and a distal end, said distal end comprising at least one surface element configured to selectively abrade skin; | The Accused Product includes a handheld device (1). The handheld device (1) includes a body (3) and a distal working end (5) (e.g., tip (2)). The distal working end/tip (2) includes a surface element (7) that is configured to abrade skin. *See, e.g.,* Fig. 3-4, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

31

| | |
|---|---|
| at least one aspiration opening at or near the distal end of the handheld device, wherein said at least opening is in fluid communication with a suction passageway configured to apply a suction to the at least one aspiration opening; and | The Accused Product includes an aspiration opening (8) located at the distal end (6) of the handheld device (1). The opening (8) is in fluid communication with a suction passageway (26). *See* Figs. 7, and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the distal end comprises an outer periphery that generally circumscribes an interior area, the at least one surface element positioned within the interior area; | The distal end (6) includes a working end/tip with an outer periphery (11) that circumscribes an interior area. The surface element (7) is positioned within the interior area, as shown in Figures 3 and 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein substantially an entire circumference of the outer periphery is configured to contact a skin surface during a treatment procedure; and | As shown in Figure 5, (an imprint of the Aqua Scaling Tip (small) purchased from Defendant) the entire outer periphery contacts the skin surface when used during a treatment procedure. *See also, e.g.*, the Skinwave Videos (EDGE-CARTESSA_0011962-11964) and the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge |

32

| | |
|---|---|
| | reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the at least one aspiration is positioned within the interior area. | The aspiration opening (8) is located within the interior area, as shown in Figures 3 and 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

**Claim 11**

| | |
|---|---|
| 11. The system of claim 10, further comprising at least one delivery port located along the distal end, said at least one delivery port configured to be in fluid communication with at least one flowable media. | The distal end (6) include a delivery port (10) located at the working end/tip (2). The delivery port is in fluid communication with a flowable media. *See, e.g.,* Figs. 3-6, 8-11, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>When in contact with a patient's skin, fluid is drawn from a flowable media source (13), through a passageway (15) and (26) to the delivery port and tip, for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect |

33

| | |
|---|---|
| | information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

| **Claim 12** ||
|---|---|
| 12. The system of claim 11, wherein the at least one delivery port is in fluid communication with a fluid media reservoir. | The delivery port (10) is in fluid communication with the media reservoir (13). The handpiece (1) connects to the fluid media reservoir (13) via passageways (15) and (26). *See* Figs. 1A-1C, 2A-2C and 8-11. |
| | When in contact with a patient's skin, fluid is dawn from fluid media reservoirs to the working surface of the tip, for delivery to the skin, confirming that the delivery port is in fluid communication with a fluid media reservoir. *See* Figs. 8-11, *see also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968. |
| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

| **Claim 14** ||
|---|---|
| 14. The system of claim 12, wherein the fluid media reservoir comprises a remote reservoir that is separate from the handheld device. | As shown, for example, in Figures 1A-1C, the fluid media reservoir (13) is remote and separate from the handheld device (1). |
| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, |

34

| | Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

35

# EXHIBIT D

## Exhibit D - Infringement Chart for U.S. Patent No. 9,550,052

| Claim Language | Accused Product |
|---|---|
| | **Claim 1** |
| 1. A system for performing a skin treatment procedure, the system comprising: | The Accused Product is a system for treating the skin surface of a patient. For example, Defendant's website describes the Accused Product as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
| a console including a manifold, the manifold being in fluid communication with a first fluid container and at least a second fluid container, the first fluid container and the at least the second fluid container being configured to contain a treatment material for a skin treatment procedure, wherein the treatment material comprises a liquid; | The Accused Product includes a manifold (21) and (28) to which at least a first and second fluid container (13) are attached, placing them in fluid communication therewith. *See* Figs. 1A-C, 8-11. The Accused Product each have a console (22) which controls the manifold, allowing users to select "Solution emission in 3 different levels," and control "4 different solution selection[s]." *See* EDGE-CARTESSA_0011965-11968. The first and second fluid containers are configured to contain a liquid treatment material for skin treatment procedures. *See* Figs. 1A-1C, EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."), EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

36

| | |
|---|---|
| a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | The Accused Product has a handpiece (1) with a tip (2) (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See e.g.,* Figs. 3-6, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a supply conduit placing the manifold of the console in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to couple to the handpiece assembly; | The Accused Product has a supply conduit (15) and (26), coupled to the handpiece (1), which connects the handpiece to the manifold (21) and (28), placing the two in fluid communication. *See* Figs. 1A-1C and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the manifold is configured to control a flow of treatment material from the first fluid container and at least the second fluid container through the supply conduit; and | The Accused Product has a manifold (21) and (28) which is configured to control the flow of treatment material from the fluid containers (13) through the supply conduit (15) and (26) by adjusting a knob on the front of the console. *See* Figs. 1A-C and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

37

| | |
|---|---|
| a vacuum source; | The Accused Product has a vacuum source (9) located in the device casing. *See* Figs. 6 and 11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a waste conduit in fluid communication with the tip of the handpiece assembly to remove waste away from a skin surface of a subject during a skin treatment procedure, wherein the waste conduit is operatively coupled to the vacuum source; and | The Accused Product has a waste conduit (15) and (25) connected to the handpiece (1) and a vacuum source (9). *See* Figs. 8-11. When activated, the vaccum source (9) suctions used treatment media and abraded skin particles (waste) through the waste conduit (15) and (26) and deposits them in a waste receptacle (16) located on the back of the device. *Id.*; *see also, e.g.,* Figs. 6 and 7, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the system is configured to permit a user to select the treatment material from the first fluid container or the at least second fluid container to be delivered through the supply conduit to the handpiece assembly; and | The Accused Product delivers treatment media from fluid containers (13), through the supply conduit (15) and (26), to the handpiece (1), to the skin. *See* Figs. 1A-C and 8-11.<br><br>The user can select fluids for delivery through the supply conduit. *See, e.g.,* Figs. 1A-1C. For example Defendant's website explains: |

38

Three nutrient-rich solutions optimize skin revitalization. Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid to address top skincare needs: exfoliating, oil control and moisturization. Dial-up the volume of one of these solutions to offer a more customizable treatment.

*See* EDGE-CARTESSA_0011989.

The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms.

| | |
|---|---|
| wherein, when the vacuum source is activated and the tip contacts the skin surface, a suction force is created within the waste conduit and along the tip, thereby removing waste from the skin surface via the waste conduit while drawing treatment material from the first fluid container or the second fluid container to the tip via the supply conduit. | In use, the vacuum source (9) creates a vacuum within the waste passageways (15) and (25) and the tip (2). The suction force created by this vacuum delivers a treatment media from the fluid containers (13) to the tip (2). Simultaneously, the same suction force also removes spent treatment media (i.e., waste) away from the working end/tip (2) portion through the waste passageways (15) and (25). *See, e.g.,* Figs. 6 and 8-11, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 2** | |
| 2. The system of claim 1, wherein the console comprises a display, | The console (22) comprises a display (23). The display comprising a user input device (23) to facilitate controlling a flow of treatment materials from the fluid containers (13) to the handpiece (1). *See* |

| wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the first fluid container or the at least a second fluid container to the handpiece assembly. | *also,* Fig. 14**,** the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 3** ||
| 3. The system of claim 2, wherein the user input device comprises a touch screen. | The user input device (23) includes a touch screen (23) and knobs. *See* Figures 1A-1C, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 4** ||
| 4. The system of claim 1, wherein the first fluid container or the at least a second fluid container is releasably coupled to the manifold. | The fluid containers (13) are releasably coupled to the manifold (21). *See* Figures 1A-C; the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). In addition, Defendant sells fluids to use in the fluid containers, confirming that the containers must be releasable in order to refill. *See* https://cartessastore.com/collections/skinwave (selling fluids for use in the Skinwave) (EDGE-CARTESSA_0011992-93).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production |

40

| | agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 5** | |
| 5. The system of claim 1, wherein the manifold is configured to be placed in fluid communication with at least four fluid containers. | The manifold (21) and (28) is configured to be placed in fluid communication with at least four fluid containers (13). *See* Figs. 1A-1C, 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 6** | |
| 6. The system of claim 1, wherein treatment materials from the first fluid container and at least the second fluid container are delivered to the supply conduit sequentially or simultaneously. | The treatment materials from the first and second fluid containers (13) can be delivered sequentially by selecting the treatment 1, 2, 3, or H2 on the user interface (23). *See* Fig. 14, below:<br><br><br><br>**Figure 14**<br>(EDGE-CARTESSA_ 0011977 & 0011981)<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its |

41

| | contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 7** | |
| 7. The system of claim 1, wherein the console is movable. | The console (22) is movable. For example, the Accused Product comes on wheels (24). Additionally, the console (22) is sized such that it can be picked up and moved. *See* Figure 13.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 8** | |
| 8. The system of claim 1, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject. | The tip (2) of the handpiece (1) is configured to exfoliate the skin tissue as the handpiece (1) is moved relative to a skin surface of a subject. *See* Figs. 3-4; *see also* EDGE-CARTESSA_0011965-11968 ("exfoliation by vacuum"); EDGE-CARTESSA_0011969-11972 ("cleanse & exfoliate"), the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

| Claim 9 | |
|---|---|
| 9. The system of claim 1, wherein each of the supply conduit and the waste conduit connects to a corresponding connector along a proximal end of the handpiece assembly. | The supply conduit (15) and (26) and the waste conduit (15) and (25) connect to a corresponding connector (15A) along a proximal end of the handpiece (1). *See also* Figs 2b, 2C, 7 and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 10** | |
| 10. The system of claim 1, wherein the manifold of the console is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold. | The manifold (21) and (28) is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold. As shown in the Hydra Touch Videos, there is a "Cleaning the Machine" function of the system. *See also* Fig. 14 (depicting a cleaning option).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 11** | |
| 11. A system for performing a skin treatment procedure, the system comprising: | The Accused Product is a system for treating the skin surface of a patient. For example, Defendant's website describes the Accused Product as: |

|  | The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
|---|---|
| a manifold in fluid communication with at least two fluid containers, each of the at least two fluid containers being configured to contain a treatment material, wherein the treatment material comprises a liquid; | The Accused Product includes a manifold (21) and (28) to which at least a first and second fluid container (13) are attached, placing them in fluid communication therewith. *See* Figs. 1A-C, 8-11. The Accused Product has a console (22) which controls the manifold, allowing users to select "Solution emission in 3 different levels," and control "4 different solution selection[s]." *See* EDGE-CARTESSA_0011965-11968. The first and second fluid containers are configured to contain a liquid treatment material for skin treatment procedures. *See, e.g.,* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a handpiece assembly comprising a tip, the tip being configured to contact a skin surface of a subject; | The Accused Product has a handpiece (1) with a tip (2) (e.g., the Aqua Scaling Tip) that contacts the skin during use. *See e.g.,* Figs. 2A-C, 5, 6, 17, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). |

44

| | |
|---|---|
| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a supply conduit placing the manifold in fluid communication with the handpiece assembly, wherein a distal end of the supply conduit is configured to secure to the handpiece assembly; | The Accused Product has a supply conduit (15) and (26), coupled to the handpiece (1), which connects the handpiece to the manifold (21) and (28), placing the two in fluid communication.  *See* Figs. 1A-C and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a vacuum source; and | The Accused Product has a vacuum source (9) locate inside the device casing.  *See* Figs. 6 and 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a waste conduit in fluid communication with the handpiece assembly to remove waste from a skin surface of a subject during a procedure, wherein the waste conduit is operatively | The Accused Product has a waste conduit (15) and (25) connected to the handpiece (1) and a vacuum source (9).  *See* Figs. 1A-1C and 8-11. When activated, the vaccum source (9) suctions used treatment media and abraded skin particles (waste) through the waste conduit (15) and (25) and deposits them in a waste receptacle (16) located on the back of the device. *Id*. *See* Figs. 6, 7, and 8-11. |

45

| | |
|---|---|
| coupled to the vacuum source; | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the manifold is configured to control a flow of treatment material from each of the at least two fluid containers through the supply conduit; | The manifold (21) and (28) which is configured to control the flow of treatment material from the fluid containers (13) through the supply conduit (15) and (26). *See* Figs. 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the system is configured to permit a user to select the fluid container from which treatment material is delivered to the supply conduit. | The Accused Product delivers treatment media from fluid containers (13), through the supply conduit (15) and (26), to the handpiece (1), to the skin. *See* Figs. 1A-1C and 8-11.<br><br>The user can select fluids for delivery through the supply conduit. *Id.* For example Defendant's website explains:<br><br>Three nutrient-rich solutions optimize skin revitalization. Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid to address top skincare needs: exfoliating, oil control and moisturization. Dial-up the volume of one of these solutions to offer a more customizable treatment.<br><br>(EDGE-CARTESSA_0011989)<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet |

46

| | |
|---|---|
| | to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 12** | |
| 12. The system of claim 11, further comprising a user input device for selecting a treatment material to be passed through the supply conduit to the handpiece assembly. | The Accused Product includes a user input device (23) wherein a user can select a treatment material to be passed from the fluid containers (13) through the supply conduit (15) and (26) to the handpiece (1). *See* Figs. 1A-C and 14.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 13** | |
| 13. The system of claim 11, wherein the system comprises a display, wherein the display comprises a user input device to facilitate controlling a flow of treatment materials from the at least two fluid containers. | The Accused Product includes a display (23). The display comprising a user input device (23) to facilitate controlling a flow of treatment materials from the fluid containers (13) to the handpiece (1). *See* Fig. 14.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

| Claim 14 | |
| --- | --- |
| 14. The system of claim 13, wherein the user input device comprises a touch screen. | The user input device (23) comprises a touch screen (23). *See* Fig. 14.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 15** | |
| 15. The system of claim 11, wherein the at least two fluid containers is releasably coupled to the manifold. | The fluid containers (13) are releasably coupled to the manifold (21). *See* Figures 1A-C; the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos. In addition, Defendant sells fluids for use in the containers, confirming that the containers can be released from the manifold at least for refilling. *See* https://cartessastore.com/collections/skinwave (EDGE-CARTESSA_0011992-93).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 16** | |
| 16. The system of claim 11, wherein the tip of the handpiece assembly is configured to exfoliate skin tissue as the handpiece assembly is moved relative to a skin surface of a subject. | The tip (2) of the handpiece (1) is configured to exfoliate the skin tissue as the handpiece (1) is moved relative to a skin surface of a subject. *See* Figs. 3-4. *See also, e.g.,* EDGE-CARTESSA_0011965-11968 ("exfoliation by vacuum"); EDGE-CARTESSA_0011969-11972 ("cleanse & exfoliate"), the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). |

48

| | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 17** ||
| 17. The system of claim 11, wherein the manifold is configured to be placed in fluid communication with a container comprising an antimicrobial fluid or other disinfecting agent for periodic flushing of the manifold. | The manifold (21) is configured to be placed in fluid communication with a container comprising a disinfecting agent for periodic flushing of the manifold (21). *See e.g.* the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978); Fig. 14.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

# EXHIBIT E

## <u>Exhibit E - Infringement Chart for U.S. Patent No. 9,775,646</u>

| Claim Language | Accused Product |
|---|---|
| **Claim 1** ||
| 1. A handheld device for treating a skin surface, comprising: | The Accused Product is a system for treating the skin surface of a patient using a handheld device.  For example, Defendant's website describes the Accused Product as:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989) |
| a body comprising a housing; | The handpiece (1) comprises a body (3) and a housing (4).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a working end portion positioned along a first end of the body, the working end portion comprising a distal end configured to contact a skin surface, wherein the working end portion comprises a perimeter along the distal end | The first end of the body (3) of the handpiece (1) includes a working end portion (5) comprising a skin interface. As shown, for example, in Figures 3 and 4, the working end portion (5) includes a perimeter (11) along a distal end (6) that is configured to contact the patient's skin surface. The skin interface is positioned along the interior of the perimeter (11). As shown, for example, in Figure 6, the skin interface includes structures (7) configured to contact the patient's skin surface during use. *See e.g.,* Figs. 5, 6, 17, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). |

| | |
|---|---|
| configured to contact the skin surface, a skin interface positioned along the interior of the perimeter, wherein the skin interface is configured to contact the skin surface during use; | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a first aperture arrangement comprising at least one first port located along or near the working end portion, the at least one first port being in fluid communication with a vacuum source via at least one waste passageway extending through the housing; and | The handheld device has a first aperture arrangement (18) with eight ports (8) positioned near the perimeter (11) along the working end portion (5). *See* Fig. 3. These ports are in communication with a vacuum source via a waste passageway (25), which forms part of the closed vacuum loop. *See* Figs. 3-6, 8-11, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). <br><br> When activated, the vacuum (9) suctions used treatment media and abraded skin particles through the first ports (8) and deposits them in a debris receptacle (16) located on the back of the device. *See* Figs. 1A-1C, 8-11. Moreover, Edge has analyzed the Accused Product and confirmed that the vacuum source (9) is located inside the device casing, and that when the vacuum is activated, and a closed loop is formed, waste is suctioned away from the skin through a waste passageway by the vacuum suction. *See* Figs. 6, 7, and 8-11. <br><br> The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a second aperture arrangement comprising at least one second port located along or near the working end portion, the at least one second port being in fluid | The handheld device includes a second aperture arrangement (17) that delivers treatment media from a treatment media source (13) to the skin through a port (10) positioned in the center of the working end (5) (i.e. the port is "in fluid communication" with the treatment media source). *See* Figs. 4, 8-11, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978). |

| | |
|---|---|
| communication with a hydration treatment media source; | Edge has observed that, when in contact with a patient's skin, the Accused Product draws fluid from treatment media sources, through a passageway, to the working surface of the tip, for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein the vacuum source is configured to create a vacuum within the at least one waste passageway and the working end portion, and wherein the vacuum source is configured to simultaneously deliver a treatment media from the hydration treatment media source to the working end portion and remove spent treatment media away from the working end portion via the at least one waste passageway; | The vacuum source (9) is configured to create a vacuum within the waste passageway (15) and (25) and the working end portion (5). *See, e.g.*, Figures 1A-C, 6, and 8-11. In use, the vacuum source (9) forms a vacuum in the waste passageway, simultaneously delivering a treatment media from the hydration treatment media source (13) to the working end portion (5) and removing spent treatment media away from the working end portion (5) via the waste passageway (15) and (25). *See, e.g.*, Figs. 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein, when the vacuum source is activated and the working end portion of the device is positioned along a skin surface, hydration treatment | When the vacuum source (9) is activated and the working end portion (5) of the handpiece (1) is positioned along the patient's skin surface, hydration treatment media is delivered to the patient's skin surface through the passageway (15) and the second port (10) due to the vacuum generated along the working end portion (5) by the vacuum source (9). *See* Figs. 1A-C, 8-11. In addition, when the working end is not positioned against a surface to form a closed vacuum loop, fluid is not |

| | |
|---|---|
| media is delivered to the skin surface through the at least one passageway and the at least one second port due to the vacuum generated along the working end portion by the vacuum source, and spent treatment media is, at least partially, simultaneously aspirated away from the working end portion through the at least one first port by the same suction force generated by the vacuum source. | delivered to the working end.  Spent treatment media is, at least partially, simultaneously aspirated away from the working end portion (5) through the first port (8) by the same suction force generated by the vacuum source (9). *See* Figs. 8-11 (showing vacuum loop).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 2** | |
| 2. The device of claim 1, wherein the at least one passageway extends at least partially through an interior of the housing. | The passageway (15) extends at least partially through an interior of housing (4).  *See* Figs. 2A-C. The presence of an interior channel is confirmed by the presence of a tube entering the handheld at a first end, and holes in the distal end through which treatment fluid is provided and/or removed.  *See e.g.*, Figs. 1 and 6.  The presence of an interior channel is further confirmed by the vacuum loop that is formed with the handheld device is placed in contact with a surface. *See* Figs. 8-11 (showing vacuum loop).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 4** | |
| 4. The device of claim 1, wherein the working end portion is removably positioned | The supplied tip (2) forms the working end (5), which is removable from the distal end (6) of the housing (4) of the main body (3). *See* Fig. 7. |

| along a distal end of the housing. | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 5** ||
| 5. The device of claim 1, wherein the working end portion comprises plastic. | The handpiece (1) includes a working end (5) comprising a tip (2) which is made of plastic. *See* Figs. 1, 3 and 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 6** ||
| 6. The device of claim 1, wherein the working end portion is at least partially transparent. | The handpiece (1) includes a working end (5) comprising a tip (2) which is made of plastic and transparent. *See* Figures 1A-C, 3 and 4.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 7** ||

| 7. The device of claim 1, wherein, when in use, the vacuum source draws skin through an aperture defined by the perimeter of the working end portion to facilitate contact between the working end portion and the skin surface. | As shown, for example in Figure 6, when in use, the vacuum source (9) draws the patient's skin through an aperture (8) defined by the perimeter (11) of the working end portion (5) to facilitate contact between the working end portion (5) and the patient's skin surface. *See, e.g.,* Figs. 3-6. the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 8** | |
| 8. The device of claim 1, wherein the at least one passageway comprises a conduit that extends proximally from the housing of the device to the vacuum source. | As shown, for example, in Figures 1A-C and 6, the passageway (15) (including passageways 25 and 26) includes a conduit that extends proximally from the housing (4) of the handpiece (1) to the vacuum source (9). *See* Figs. 8-11. This is further confirmed by the creation of a closed vacuum loop when the working end contacts the skin surface. *See* Fig. 6, 8-11.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 11** | |
| 11. The device of claim 1, wherein the hydration treatment media source is separate from to the handheld device. | As shown, for example, in Figures 1A-1C, the hydration treatment media source (13) is separate and removed from the handheld device (1).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any |

| | |
|---|---|
| | documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 12** | |
| 12. The device of claim 1, wherein the hydration treatment media source comprises a reservoir. | As shown, for example, in Figures 1A-1C, the hydration treatment media source (13) comprises a reservoir. <br><br> The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 13** | |
| 13. A system for treating a skin surface, comprising: | The Accused Product is a system for treating the skin surface of a patient using a handheld device.  For example, Defendant's website describes the Accused Product as: <br><br> The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone. <br><br> (EDGE-CARTESSA_0011989) |
| a hydration treatment media source; | The Accused Product includes a hydration treatment media source (13). |

56

|  | The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| a handheld device comprising: | The Accused Product includes a handheld device (1).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a body comprising a housing; | The handheld device (1) comprises a body (3) and a housing (4). *See* Figs. 2A-2C.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a working end portion positioned along a first end of the body, the working end portion comprising a distal end configured to contact the skin surface, wherein the working end portion comprises a perimeter along the distal end configured to contact the skin surface, a skin interface | The first end of the body of the handpiece (1) includes a working end portion (5). As shown, for example, in Figures 2A-C, 3 and 4, the working end portion (5) includes a perimeter (11) along the distal end (6) that is configured to contact the patient's skin surface. The working end (5) comprises a skin interface positioned along the interior of the perimeter (11). As shown, for example, in Figures 4, the skin interface includes structures (7) is configured to contact the patient's skin surface during use. *See e.g.*, Figs. 3-6, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information |

| | |
|---|---|
| positioned along the interior of the perimeter, wherein the skin interface is configured to contact the skin surface during use; | presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a first aperture arrangement comprising at least one first port located along or near the working end portion; and | The handpiece (1) includes a first aperture arrangement that has a first port (8) located at the working end portion (5).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a second aperture arrangement comprising at least one second port located along or near the working end portion, the at least one second port being in fluid communication with the treatment media source; and | The handpiece (1) includes a second aperture arrangement that has a second port (10) located at the working end portion (5). The second port (10) is in fluid communication with the treatment media source (13). As shown for example, in Figures 1A-C and 6, the second port (10) of the handpiece (1) connects to the treatment media source (13) via a treatment media passageway (15) and (26). *See* Figs. 8-11.<br><br>Edge has observed that, when in contact with a patient's skin, the Accused Product draws fluid from treatment media sources, through a passageway (15) and (26), to the working surface of the tip, for delivery to the skin. *See also* EDGE-CARTESSA_0011969-11972 ("This professional skincare machine incorporates solutions . . . using hydradermabrasion" and the Skinwave infuses deep into the skin Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA) and Hyaluronic Acid" and "Skinwave combines an aqua-delivery system, skin revitalizing solutions . . ."); EDGE-CARTESSA_0011965-11968.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge |

58

| | |
|---|---|
| | reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| a single vacuum source in fluid communication with the at least one first port via at least one passageway; | The Accused Product includes a single vacuum source (9) that is in fluid communication with the first port (8) via a passageway (15) and (25). *See, e.g.*, Figures 1A-C, 6, 8-11, the Skinwave Videos (EDGE-CARTESSA_0011962-11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| wherein, when the single vacuum source is activated and the working end portion of the device is positioned along a skin surface, a hydration treatment media is delivered to the skin surface through the at least one passageway and the at least one second port, and spent treatment media is simultaneously, at least partially, aspirated away from the working end portion through the at least one first port. | When the single vacuum source (9) is activated and the working end portion (5) of the handpiece (1) is positioned along the patient's skin surface, hydration treatment media is delivered to the patient's skin surface through the passageway (15) and (26) and the second port (10). *See* Figs. 2A-C, 6, 8-11.  Spent treatment media is simultaneously, at least partially, aspirated away from the working end portion (5) through the first port (8). *Id*.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 14** | |
| 14. The system of claim 13, wherein, when in use, the vacuum source draws skin through an aperture defined by the perimeter of the working end portion to | As shown, for example, in Figure 6, when in use, the vacuum source (9) draws the patient's skin through an aperture (8) defined by the perimeter (11) of the working end portion (5) to facilitate contact between the working end portion (4) and the patient's skin surface. *See* Fig. 5 (an imprint of the Aqua Scaling Tip (small) purchased from Cartessa), Fig. 6; *see, also, e.g.,* the Skinwave Videos (EDGE-CARTESSA_0011962- |

59

| | |
|---|---|
| facilitate contact between the working end portion and the skin surface. | 11964), the Hydra Touch Videos (EDGE-CARTESSA_0011977-11978).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 16** | |
| 16. The system of claim 13, wherein the hydration treatment media source is separate from to the handheld device. | As shown in Figures 1A-1C, the hydration treatment media source (13) is separate from the handheld device (1).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 17** | |
| 17. The system of claim 13, wherein the hydration treatment media source comprises a reservoir, and wherein the reservoir is separate from to the handheld device and is in fluid communication with the handheld device using at least one treatment media conduit. | The hydration treatment media source (13) includes a reservoir. *See, e.g.*, Figures 1A-1C (showing a reservoir in the form of a solution bottle). The reservoir is separate from the handpiece (1) and is in fluid communication with the handpiece (1) using a treatment media conduit (15).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

| | |
|---|---|
| | |
| **Claim 18** | |
| 18. The system of claim 13, wherein the hydration treatment media comprises at least one of the following: water, saline, a chemical agent and an acid. | The hydration treatment media can be one of water, saline, a chemical agent and an acid. For example, Defendant's website states:<br><br>The Skinwave combines an aqua-delivery system, skin revitalizing solutions and Hydrogen therapy for a multi-dimensional skincare treatment. Solutions rich in Alpha Hydroxy Acid (AHA), Beta Hydroxy Acid (BHA), Hyaluronic Acid and Hydrogen (H2) are infused deep into the skin, while gentle extraction removes impurities. It's the ultimate compliment to brighten skin, improve vitality and tone.<br><br>(EDGE-CARTESSA_0011989)<br><br>*See also* EDGE-CARTESSA_0011969-11972 ("utilizing water infused with hydrogen") & EDGE-CARTESSA_0011965-11968 ("nourish with hydrogen water").<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 21** | |
| 21. The device of claim 1, wherein the skin interface comprises ridge and valley elements. | As shown, for example, in Figures 3 and 4, the skin interface includes ridge elements (7) and valley elements (19).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. |

61

| | Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
|---|---|
| **Claim 22** | |
| 22. The device of claim 1, wherein the skin interface comprises an irregular or ridged surface structure. | As shown, for example, in Figures 3 and 4, the skin interface includes an irregular or ridged surface structure (7).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 24** | |
| 24. The device of claim 1, wherein the working end portion is transparent. | As shown, for example, in Figures 2A-C, 3, and 4, the working end (5) is transparent.<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 25** | |
| 25. The device of claim 13, wherein the skin interface comprises ridge and valley elements. | As shown, for example, in Figures 3 and 4, the skin interface includes ridge elements (7) and valley elements (19).<br><br>The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. |

62

| | |
|---|---|
| | Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 26** | |
| 26. The device of claim 13, wherein the skin interface comprises an irregular or ridged surface structure. | As shown, for example, in Figures 3 and 4, the skin interface includes an irregular or ridged surface structure (7). The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |
| **Claim 28** | |
| 28. The device of claim 13, wherein the working end portion is transparent. | As shown, for example, in Figures 2A-C, 3, and 4, the working end (5) is transparent. The parties are still in Phase I discovery, which limits the information available to Edge. Edge provides this chart based on the information presently known to Edge. Moreover, Defendant has yet to produce any documents pursuant to the parties' Phase I production agreements. Accordingly, Edge reserves the right to amend its contentions to reflect information produced after service of these contentions. In addition, the Court has not yet entered a claim construction order in this case. Edge reserves the right to amend this chart based on the Court's construction of any disputed claim terms. |

## CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On April 19, 2021, I served the foregoing **PLAINTIFF EDGE SYSTEMS LLC'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS** on counsel shown below via **EMAIL**:

David G. Keyko
david.keyko@pillsburylaw.com
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, NY 10019-6131
Tel.: 212-858-1604
Fax: 212-858-1500

*Attorneys for Defendant*
CARTESSA AESTHETICS, LLC

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 19, 2021, at Irvine, California.

Allison Rolenaitis

6

# Ex. T
# Under Seal

# Ex. U

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

EDGE SYSTEMS LLC,

                  Plaintiff,

          -against-

CARTESSA AESTHETICS, LLC,

                  Defendant.

-----------------------------------------------------------------X

**APPEARANCES:**

Sean Michael Murray
*Attorney for Plaintiff*
Knobbe Martens
2040 Main St., 14th Floor
Irvine, CA 92614

Steven P. Tepera
*Attorney for Defendant*
Pillsbury Winthrop Shaw Pittman LLP
401 Congress, Ste. 1700
Austin, TX 78701

David George Keyko
*Attorney for Defendant*
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019

**FILED**
**CLERK**

3:22 pm, Nov 29, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**MEMORANDUM AND ORDER**

20-CV-6082 (GRB)(ST)

**GARY R. BROWN, United States District Judge:**

In this action, plaintiff Edge Systems LLC ("Edge") seeks recovery for purported infringement of several U.S. Patents[1] against defendant Cartessa Aesthetics, LLC ("Cartessa"), all relating to claimed inventions and improvements in hydradermabrasion systems for treating skin. Both plaintiff and defendant produce and market skincare treatment machines. Upon request of

---

[1] At issue are U.S. Patent Nos. 6,641,591; 8,066,716; and 8,337,513 (collectively the "Asserted Patents"). The parties resolved construction disputes related to U.S. Patent Nos. 9,550,052 and 9,775,646 prior to the hearing.

the parties, the Court conducted an expedited *Markman* hearing to resolve claim construction issues as to certain disputed terms.  Additionally, the Court heard argument regarding a motion to strike Cartessa's affirmative defense of unclean hands.  This opinion follows.

*Procedural History*

Plaintiff commenced this action for patent infringement under 35 U.S.C. §§ 271, 284, and 285 against defendant via the filing of a complaint in December 2020.  Docket Entry ("DE") 1.  In February 2021, defendant filed its answer followed by an amended answer.  DE 17, 19.  In an oral decision on April 14, 2021, the Court granted a motion to strike the affirmative defense of unclean hands.  DE 25.  In response, defendant filed a second amended answer.  DE 29.  In so doing, the defendant supplemented its unclean hands defense, adding several pages of supporting facts.  *Id*.  Plaintiff then refiled the motion to strike.  DE 32.  While the motion to strike was outstanding, the parties filed a stipulation setting forth a joint disputed claims term chart, DE 35, and submitted claim construction briefs.  DE 38-42.  On October 19, 2021, the Court held a *Markman* claim construction hearing.  Neither side produced testimony.

*Claim Construction Standards*

Several years ago, then-district court Judge Joseph Bianco penned a cogent, thorough description of the applicable standard for a *Markman* hearing:

> Claim construction is "exclusively within the province of the court."  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996).  Such construction "begins and ends" with the claim language itself, *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998), but the court may consult extrinsic evidence "if needed to assist in determining the meaning or scope of technical terms in the claims," *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995); *see Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996) (explaining that the court may rely on extrinsic evidence, including expert and inventor testimony, dictionaries, and learned treaties).
>
> In construing the claim language, the court must begin with the principle that "the words of a claim 'are generally given their ordinary and customary meaning.'"

2

(*Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Vitronics,* 90 F.3d at 1582)). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. "In such circumstances general purpose dictionaries may be helpful." *Id.* In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." *Id.* In those cases, "the court looks to those sources available to the public that show what a person of skill in the art would have understood the disputed claim language to mean." *Id.* (internal quotation marks and citation omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.*

When the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, the inventor's lexicography governs. *Id.* at 1316. Nevertheless, it is improper to read limitations from the specification into the claim. *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("'[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.'" (alteration in original) (quoting *Phillips*, 415 F.3d at 1312)). Thus, the court "do[es] not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed.Cir.2005) (internal citations omitted).

*Easyweb Innovations, LLC v. Twitter, Inc.*, No. 11-CV-4550 (JFB), 2016 WL 1253674, at *5

(E.D.N.Y. Mar. 30, 2016), *aff'd*, 689 F. App'x 969 (Fed. Cir. 2017); *Soter Technologies, LLC, v.*

*IP Video Corp.*, No. 20 CV 2989 (GRB), 2021 WL 4553188, at *1-2 (E.D.N.Y. Oct. 5, 2021)

(same); *Seoul Semiconductor Co., Ltd. v. Satco Prods., Inc.*, No. 19-CV-4951 (GRB), 2021 WL 4810165, at *1-2 (E.D.N.Y Oct. 15, 2021) (same). The Federal Circuit has further held:

> Claim construction seeks to ascribe the meaning to claim terms as a person of ordinary skill in the art at the time of invention would have understood them. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–14 (Fed. Cir. 2005) (en banc) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). In an IPR proceeding, claims are given their broadest reasonable interpretation in light of the specification. *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279 (Fed. Cir. 2015), *cert. granted sub nom. Cuozzo Speed Techs., LLC v. Lee*, ⸺ U.S. ⸺, 136 S.Ct. 890, 193 L.Ed.2d 783 (2015). In construing terms, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1313. Indeed, the specification is "the single best guide to the meaning of a disputed term" and "[u]sually, it is dispositive." *Id.* Thus, "claims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc), aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)).

*SAS Inst., Inc. v. ComplementSoft, LLC.*, 825 F.3d 1341, 1347 (Fed. Cir. 2016), *rev'd and remanded on other grounds sub nom. SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018). With this standard in mind, the Court turns to the disputed claim terms.

*Discussion*

*1. Markman Hearing*

Before the hearing, counsel appropriately met and conferred, significantly reducing the number of disputed claim terms, resulting in conservation of judicial resources and substantial cost savings for the litigants. Counsel identified eleven disputes, but, in reality, these disputes revolved around three terms: abrade, sharp, and "sharp edge configured to abrade skin." As such, the Court will focus on the principal disputes. *See Interactive Wearables, LLC v. Polar Electro Oy*, 501 F. Supp. 3d 162, 171 (E.D.N.Y. 2020) ("Addressing every claim of a challenged patent individually is not necessary where multiple claims are substantially similar and linked to the same abstract idea. Thus, where the claims asserted in the patent contain only minor differences in terminology

[but] require performance of the same basic process, they should rise or fall together.") (citation omitted).[2]  These disputes are identified and defined by the parties as follows:

| Disputed Term | Edge's Proposed Construction | Cartessa's Proposed Construction |
|---|---|---|
| Abrade/abrading/abraded | remove a portion of the skin surface by friction. Note that "a portion" means more than a de minimis amount of skin | These terms are indefinite.<br><br>In the alternative, they should [be] construed to mean: scape/scraping/scaped |
| sharp | "edges sufficiently sharp to abrade skin, but not necessarily sharp enough to cut the skin" | edge[s] shaped for cutting |
| Sharp edge configured to abrade skin | The parties consent to the following construction:<br><br>"sharp edges that are positioned such that the sharp edge abrades tissue," *see infra* Section 1(B) | |

DE. 35, Ex. A.  The Court hereby construes the claims as follows:

### A.  "Abrade" and "Sharp."

The Federal Circuit has upheld *Markman* determinations that "declined to further construe [a] term because it was a 'straightforward term' that required no construction."  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).  Claim construction "is not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).  Two of the disputed terms – "abrade" and "sharp" – fall squarely in this category.  Despite etymological sparring by the parties, common meanings prove satisfactory at this juncture.

Such a holding is consistent with courts which have reviewed these terms in the same or similar patents.  One district judge reviewed these terms in each of the Asserted Patents and found:

> The Court finds the terms "abrade," "abrasive," "abrading," and their other variations as used in the Asserted Patents are easily understood in the surrounding

---

[2] Variations of the disputed terms abrade and sharp appear in each of the Asserted Patents – '591, '716, and '513 – in several claims.  For simplicity, the definitions articulated in this opinion apply to all claims involving these concepts.

context of the claim language and specification. The Court finds no construction necessary for the term "abrade" and its variations in the context of the Asserted Patents.

. . .

The Court declines to construe the overall claim phrases that include the terms "sharp edge[s]" and/or "sharp element[s]." Although the Court is not particularly persuaded that these claim phrases need construction at all, it adopts Plaintiffs' proposal and construes the smaller terms "sharp edge[s]" / "sharp element[s]" as "edge[s]/element[s] sufficiently sharp to abrade skin."

*Edge Sys. LLC v. Aesthetic Skin Sys. LLC*, No. 17-cv-4597 (PSG) (AFM), DE 79 at 12, 16 (C.D. Cal Jan. 8, 2019). Another district judge similarly reviewed these terms, and though settling upon negotiated definitions, noted:

In the end, the Court concludes that ordinary jurors will have little difficulty determining whether or not an "edge" is "sharp"—or, to be more precise, whether something does, or does not, constitute a "sharp edge."

*Edge Sys., LLC v. Venus Concept USA Inc.*, No. 18-cv-62588, 2019 WL 3936379, at \*6 (S.D. Fla. Aug. 20, 2019). "Abrade" is commonly understood in many contexts, including in relation to skin. As to "sharp," anyone who has shaved with a razor, eaten with a knife, or trimmed a fingernail should readily understand this term. The definitions urged by the parties fail to provide further enlightenment. Given the relative simplicity of the terms abrade and sharp, the Court declines to construe them and instead assigns the terms their plain and ordinary meanings. *Summit 6, LLC*, 802 F.3d at 1291 ("'straightforward term' . . . required no construction").

### B. Sharp edge configured to abrade skin.

During the hearing, the parties, working with the Court, came to a compromise on the meaning of the term "sharp edge configured to abrade skin." DE 47 at 56. This term shall, upon consent of the parties, be construed to mean "sharp edges that are positioned such that the sharp edge abrades tissue." *Id.* at 57-59. This stipulated construction helps clarify that the

6

"configuration" of the edge refers to its physical positioning rather than, for example, something inherent in its design.

### 2. Motion to Strike

Under Fed. R. Civ. P. 12(f), the Court may strike any "insufficient defense." A motion to strike an affirmative defense is not favored and will not be granted unless "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp*., 744 F.2d 935, 939 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986). "'If sufficiency of the defense depends on disputed issues of fact or questions of law, a motion to strike should not be granted.'" *Entergy Nuclear Fitzpatrick, LLC v. United States*, 93 Fed. Cl. 739, 742 (2010), *adhered to on denial of reconsideration*, 101 Fed. Cl. 464 (2011), *aff'd*, 711 F.3d 1382 (Fed. Cir. 2013) (quoting *System Fuels, Inc. v. United States*, 73 Fed.Cl. 206, 216 (2006)). The standard for striking an affirmative defense is three-pronged: (1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense. *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 97-99 (2d Cir. 2019) (clarifying the three-prong test established in *S.E.C. v. McCaskey*, 56 F. Supp. 2d 323, 326 (S.D.N.Y. 1999)). "[T]he plausibility standard of *Twombly* applies to determining the sufficiency of . . . an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the plausibility standard to any pleading is a 'context-specific' task." *Id.* at 98. "A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Id.*

The Second Circuit has held that "[a]ffirmative defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy." *Shechter v. Comptroller of New York*, 79 F.3d 265, 270 (2d Cir.1996) (quoting *Nat'l Acceptance Co. of Am. v. Regal Prods., Inc.*, 155 F.R.D. 631, 634 (E.D.Wis.1994) ("affirmative defenses are pleadings, and therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure")) (internal quotation marks and citations omitted).

Unclean hands may be found "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation," *i.e.*, "for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court." *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933). The unclean hands defense is an "ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). "Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor." *Id.* at 815. A defense of unclean hands may be based on fraudulent conduct, but it does not require such a showing. *See, e.g.*, *Gilead Sciences, Inc. v. Merck & Co*, 888 F.3d 1231, 1239 (Fed. Cir. 2018) (unclean hands premised on business and litigation misconduct); *see also Abbvie Inc. v. Boehringer Ingelhelm Int'l GmbH*, No. 17-CV-01065-MS, 2018 WL 2604825, at *1 (D. Del. June 4, 2018) (unclean hands does not require a showing of fraud); *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 2:15-CV-01366-JRG, 2021 WL 357495, at *6 (E.D. Tex. Feb. 2, 2021), *adopted by*, 2021 WL 2697610 (E.D. Tex. Feb. 13, 2021) ("unclean hands does not require a showing of fraud.").

8

To establish a defense of inequitable conduct, "the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO.  A finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  "[T]he inequitable conduct doctrine evolved from . . . unclean hands cases, [and] it came to embrace a broader scope of misconduct, including not only egregious affirmative acts of misconduct intended to deceive both the PTO and the courts but also the mere nondisclosure of information to the PTO." *Id.* at 1287.

Claims of unclean hands, absent allegations of fraud, are pled under the plausibility standard of Fed. R. Civ. P. 8.  By contrast, claims of inequitable conduct must be plead under the heightened Fed. R. Civ. P. 9(b) standard, which requires that "the circumstances constituting fraud or mistake . . . be stated with particularity." *Exergen Corp. v. Wal–Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009); *see also Ferguson Beauregard,/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003) (stating that "inequitable conduct, while a broader concept than fraud, must be pled with particularity" under Federal Rule of Civil Procedure 9(b)).

Cartessa's unclean hands defense encompasses three component parts: Edge allegedly acted with unclean hands by (1) "trying to create a public appearance that additional art had been considered by the USPTO when in fact it had not, by repeatedly filing letters referencing other applications and other prosecutions, where the examiner does not in fact review the documents referred to by reference;" (2) creating "mass patent assertions, . . . large draft pleadings, and . . . short windows in which to conduct a reasoned analysis . . . to shift the cost of legal analysis to the Defendant over the perfunctory analysis performed by Plaintiff, and to overwhelm Cartessa and

obscure the weakness and falsity of the individual allegation;" and (3) asserting positions in prosecution and litigation that "are inconsistent with [the] meanings of terms as expressed within the patent specification, inconsistent with their plain and ordinary meaning, and inconsistent with the meaning as understood by an ordinarily skilled artisan." DE 29 at 10, 13, 14 ("Second Amended Answer").

Plaintiff claims that given the Patent Office's role, Cartessa's defense is actually an "inequitable conduct" defense in disguise "that must comply with the Federal Circuit's heightened pleading standard." DE 32-1 at 12. The Federal Circuit has cautioned against "the potential for misuse" of the unclean hands doctrine, and the need to "ensure that [it] operates in harmony with, and does not override" inequitable conduct. [3] *Id.* at 16 (quoting *Gilead*, 888 F.3d at 1240 at n.3). But in *Gilead* the Federal Circuit affirmed a district court's finding that business and litigation misconduct other than fraud could establish a defense of unclean hands. *Id*. Cartessa disavows any claim of inequitable conduct, and explicitly disclaims any notion that Edge committed fraud on the USPTO. DE 32-2 at 12. Instead, defendant characterizes its defense as encompassing a pattern of aggressive and deceptive acts. *Id.* at 9.

On this motion, Edge has not established that the defense will fail, nor has it shown any material prejudice it will suffer as a result of its inclusion. On balance, drawing all reasonable inferences in favor of the non-movant, the Court finds the defense is sufficiently pled at this juncture.

*Conclusion*

Based on the foregoing, the Court declines to construe the terms "abrade" and "sharp" and

---

[3] The cases relied upon by plaintiff, DE 32-4 at 12, are not factually analogous to the position asserted here. Those cases all involved duplicative pleadings, which were struck in part on that ground. *See Saye v. Old Hill Partners, Inc.*, 478 F.Supp.2d 248, 278 (D. Conn. 2007); *Fonsell v. New York Dock Ry.*, 198 F. Supp. 332, 337 (E.D.N.Y. 1961); *Haggerty v. Burkey Mills, Inc.*, 211 F. Supp. 835, 837 (E.D.N.Y. 1962). No such allegation is made here.

10

instead assigns them their plain and ordinary meanings and adopts the agreed upon construction

of "sharp edge configured to abrade skin."  The Court further DENIES the motion to strike

defendant's affirmative defense of unclean hands.

**SO ORDERED.**


Dated:  November 29, 2021
        Central Islip, New York

                                        /s/ Gary R. Brown

                                        _____
                                        GARY R. BROWN
                                        UNITED STATES DISTRICT JUDGE

Ex.



Parker F series solenoid valve

Exhibit 7



Parker K series
solenoid valve



Parker Z series
solenoid valve



Parker G series solenoid valve