**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

EDGE SYSTEMS LLC

       Plaintiff,

  vs.

CARTESSA AESTHETICS, LLC

       Defendant.

Case No. 2:20-cv-06082-GRB
Hon. Gary R. Brown

_____

**<u>DEFENDANT'S OPPOSITION TO EDGE'S MOTION FOR RULE 54(B)
CERTIFICATION ON SUMMARY JUDGMENT OF
NONINFRINGEMENT OF CLAIM 1 OF THE '052 PATENT</u>**

Plaintiff's request to enter a final judgment regarding U.S. Patent No. 9,550,052 (the "'052 Patent") pursuant to Federal Rule of Civil Procedure 54(b) is an attempt to avoid having to try a case with weak infringement and damage theories. Plaintiff's request is contrary to the federal policy against piecemeal appeals and may force Defendant to file multiple appeals involving the same products, same experts, and same witnesses. A careful analysis reveals that those matters weigh against certification of the '052 Patent summary judgment for early appeal.

Two equitable issues that weigh heavily against severance. First, Defendant would suffer significant prejudice as a result of severance. The Court found that the '052 Patent was not invalid, and an early noninfringement appeal would force Defendant to decide whether to appeal the adverse invalidity ruling *prior to Defendant having been found liable under that patent* because of the cross-appeal rule. Forcing Defendant to do so before it is clear that the issue will be relevant is an expensive and wasteful exercise.

Second, Plaintiff ignores that its sole basis for making the motion – that it cannot otherwise seek injunctive relief – is a problem entirely of its own making and one it could resolve at any moment. It elected not to pursue preliminary injunctive relief from the outset of this case and now decides that the Court should take the unusual step of Rule 54(b) certification three years later because of a sudden unexplained need for injunction. Further, Plaintiff fails to explain why it cannot simply dismiss the remaining patent claims (the "Shadduck patents") with prejudice to expedite its pursuit of injunctive relief, which its own expert contends add nothing to Plaintiff's damages beyond those attributable to the '052 Patent.

## I.   Applicable Law

### A.  Legal background

Plaintiff's motion is contrary to the "historic federal policy against piecemeal appeals." *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8, 100 S. Ct. 1460, 1465, 64 L. Ed. 2d 1 (1980).

While Plaintiff cites *Curtiss-Wright*, it fails to address the findings that a court must make to grant the relief Plaintiff seeks.

A court can certify a decision for appeal under Rule 54(b) "only if" it finds there is "no just reason for delay. FED. R. CIV. P. 54(b); *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 629 (2d Cir. 1991). A court must make an "express determination" on its reasons for severing, avoid formulaic language, and instead "offer a brief, reasoned explanation." *Id.*; *Carotek, Inc. v. Kobayashi Ventures, LLC*, 409 F. App'x 329, 331 (Fed. Cir. 2010) (vacating and remanding unexplained Rule 54(b) certification).

"[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments . . . a district court must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright*, 446 U.S. at 8-9. A court should consider "such factors as whether the claims under review were separable from the others remaining" and "whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were separable appeals." *Id.*

In general, a Rule 54(b) certification of the dismissal of fewer than all the claims in an action should not be granted if the same or closely related issues remain to be litigated. *Nat'l Bank of Wash. v. Dolgov*, 853 F.2d 57, 58 (2d Cir. 1988) (per curiam).

**B. Denial is common in multi-patent cases.**

Denial of Rule 54(b) certification is common in multi-patent cases where an order resolves claims with respect to fewer than all patents. In many cases, the court notes that the plaintiff "chose to bring [the] lawsuit alleging" multiple patents, "and, therefore, accepted the risk" that some of the patents may not be resolved in the Plaintiff's favor. *See, e.g., Maxell, Ltd. v. VIZIO, Inc.*, No. CV 21-6758-GW-DFMX, 2022 WL 2167459, at *3 (C.D. Cal. May 13, 2022). This is because in multi-patent suits over a single product, there is a "substantial risk of duplicative appellate review."

3

*Id*. Multiple courts have so held. *See, e.g.*, *Sonix Tech. Co. v. Yoshida*, No. 12CV380-CAB (DHB), 2015 WL 11199830, at *2 (S.D. Cal. Feb. 4, 2015) (improper to enter Rule 54(b) certification after summary judgment of non-infringement of fewer than all patents); *Ferring B.V. v. Actavis, Inc.*, No. 3:13-CV-00477-RCJ-VP, 2014 WL 5419055, at *4 (D. Nev. Oct. 23, 2014). The "strategic or other reasons" for appealing the ruling on a few patents is not sufficient to outweigh the policy against piecemeal litigation where the various patents involve "the same accused products" and "the same core . . . technology." *Sonix, id*.

## II.  ARGUMENT

### A.  Judicial Economy Does Not Weigh in Favor of Rule 54(b) Certification

    1.    Here the Federal Circuit is likely to face multiple appeals on similar issues.

An appeal regarding the '052 Patent and a later appeal of a consolidated case would result in the disfavored process of two appeals involving the same products, the same sales, the same witnesses, the same experts, and largely the same documentary evidence, much of which the Federal Circuit would have to review each time. *See Carotek*, 409 F. App'x at 331 (Rule 54(b) certification improperly granted where factual and legal issues in common). The common factual and legal issues at issue on an appeal of the '052 Patent and subsequent trial would include, for instance, issues related to Plaintiff's expert, Mr. Richard Meyst: he opines on issues with respect to the '052 Patent and each of the Shadduck patents. As such, the Federal Circuit would likely need to consider in each appeal (a) the expert report of Mr. Meyst, (b) his qualifications, (c) the sufficiency of the report under Rule 26, (d) the correctness of his analysis including the state of the art, the knowledge of an ordinarily skilled artisan, and the application of a skilled artisan's knowledge to the accused device, and (e) a valuation of his objective comparison between the product and patent language. The same consideration likely would have to be given to the opposing

opinion offered by Defendant's expert, Dr. Jensen. The same SkinWave devices are at issue with respect to each patent claim, and as such, there will be common factual issues include all matters related to the Accused Device: its form, its operation, and its sale. *See Sonix Tech. Co. v. Yoshida*, 2015 WL 11199830, at *2 (Rule 54(b) certification denied after summary judgment of noninfringement where "same accused products" were at issue under each of the patents). When the "underlying theory of infringement applies equally to all four patents" that the defendant infringed by "making, using, selling and offering for sale [the same] allegedly infringing products," then the "the factual basis for the various claims is therefore identical." *Ferring*, 2014 WL 5419055, at *4. In that scenario, the appeals will "undoubtedly involve legal and factual questions that apply equally to all four patents." *Id.* (denying 54(b) certification).

The same is true here: the same sales of the same SkinWave device by the same entities supported by the same witnesses is at issue with respect to all claims. An overlap will "undoubtedly" occur. *See id.*

    2.    An Appeal of the Present Order Would Encourage Piecemeal Litigation.

Defendant contends that the SkinWave device does not infringe the '052 Patent for multiple reasons other than the "manifold" limitation that was the basis of the Court's summary judgment motion. Defendant moved for summary judgment on both the manifold limitation and the claim structure that makes the *user* of the device a direct infringer, if any. As briefed by Defendant, the '052 Patent claim limitation that "when the vacuum source is activated and the tip contacts the skin surface . . . a suction force is created . . . thereby removing waste . . . while drawing treatment material" makes Defendant only an indirect infringer at worst. *See* '052 Patent at Cl. 1. It is the end user of the device that puts the SkinWave in such configuration, if anyone. *See* Dkt. 92-1 at 17. Among the other issues presented that could lead to noninfringement are: (1) is the manifold in fluid communication with a plurality of containers; (2) does the manifold (if any) "control" fluid flow; (3) does a seller of the

5

accused device infringe a claim that requires a configuration that "removes waste" upon activation; (4) is Plaintiff's contention that Defendant "teaches users" to infringe a statement of no direct infringement. *See id*., generally. Those matters were not resolved by the Court and there is no order resolving those issues that could be certified under Rule 54(b), although a decision can be affirmed on appeal based on any issue raised to the District Court. *See Jennings v. Stephens*, 574 U.S. 271, 276 (2015). And, of course, (5) an appeal of the *Court's* view of the evidence of "manifold" would substantially overlap with an appeal of the sufficiency of a *jury's* view of the evidence if there was remand. Assuming a reversal by the Federal Circuit and a trial, a second appeal (no matter who wins the trial) may involve any or all of those issues and would amount to a second appeal of '052 Patent issues.

Moreover, Defendant could prevail on Plaintiff's failure to properly mark its products or a motion *in limine* regarding the damages expert. *See* Dkt. 69. If the Court decides, for instance, that Plaintiff's failure to follow the marking statute by marking the manuals, failing to update its patenting website since 2016, and failing entirely to mark the Hydrafacial Elite and Allegro, amounts to failure to substantially comply with the marking requirement, such a finding would equally apply to the '052 Patent and the Shadduck patents. If the Court finds Plaintiff's damages expert unreliable, such finding would likewise be applicable to all patents. If so, inability to recover damages would affect the calculus of whether to appeal. But, following the piecemeal litigation Plaintiff seeks, such an appeal would have already happened.

**B.  The Balance of Equities Weighs Against and Rule 54(b) Certification.**

1.     A Rule 54(b) Certification Would Force Defendant to Cross Appeal

The Court should consider the equities involved in making *Defendant* appeal at this juncture, a decision that Defendant would have to make prior to knowing if it had any liability under the '052 Patent. The Court's order disposed of issues both for and against Defendant

6

regarding the '052 Patent: infringement and validity. *See* Dkt. 97 (granting motion for summary judgment of non-infringement and non-invalidity). Allowing Plaintiff to appeal the noninfringement order at this time would require Defendant to decide if it is interested in cross-appealing the order with respect to validity. FED. R. APP. P. 4(a)(3); *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1294 (Fed. Cir. 2013) (explaining the "cross-appeal" rule as applied to failing to appeal a ruling of no invalidity in conjunction with an appeal of ruling of noninfringement). Defendant would be denied the ability to evaluate the appeal in light of any liability finding. For instance, an award of nominal damages on the Shadduck Patents would counsel against spending the client's funds on an appeal of an unfavorable validity ruling given that Plaintiff's expert has concluded that the damages from purported infringement of the Shadduck Patents and the '052 Patent are the same for their overlapping period. Rule 54(b) certification would force Defendant prematurely to address a complex issue at the Federal Circuit that may not turn out to be significant.

### 2. Plaintiff's Own Strategic Decisions Have Put It In This Position

Plaintiff is in a position of its own making by choosing which patents to claim Defendant infringed. Plaintiff's choice was made for unknown reasons it has not revealed. In the initial demand letter, Plaintiff alleged Defendant infringed three *other* patents and *none* of the five asserted in this case. *See* Ex. A, Corresp. A. Razai to G. Lubin, Sept. 15, 2020 (claiming the "Skinwave system infringes each of . . . U.S. Patent Nos. 8,048,089, 10,357,642, and 10,357,641"). In November 2020, Plaintiff later transmitted a draft complaint alleging infringement of *eleven* patents, going so far as to accuse the straight features of Defendant's product to literally infringe patents that require "spiral-like" features. *See* Ex. B, Draft Compl. at *e.g.*, 7, 52. Plaintiff sued on five patents. *See* Dkt. 1. It now proceeds forward on four patents. Plaintiff's conduct reveals it concluded that it could bring an infringement suit on one, many, or all of its patents in its portfolio.

Yet it chose the patents that are before the Court today, and now claims that it is that specific blend of patents that prevents it from the relief it seeks. In such circumstances, courts have noted that the plaintiff "chose to bring [the] lawsuit alleging" multiple patents, "and, therefore, accepted the risk" that some may not be resolved in the Plaintiff's favor. *See, e.g., Maxell*, 2022 WL 2167459, at *3.

It is apparent that strategic factors are at play here. Plaintiff is attempting to avoid putting the Shadduck patents, which require "sharp" / "abrad[ing]" structures, before a jury alone. Plaintiff's only evidence that the rounded features of the SkinWave meet those limitations are the suspect conclusions of its longtime professional witness Dr. Duboys.



Ex. C, Exp. Dec. M. Jensen at 54. To prevail on the Shadduck Patents, Plaintiff must convince the jury that above rounded features are within the plain and ordinary meaning of the term 'sharp', which "anyone who has shaved with a razor, eaten with a knife, or trimmed a fingernail should readily understand." Dkt. 48 at 6 (Court's *Markman* order). Plaintiff's apparent strategic desire to delay the same is easily understood.

Plaintiff's complaints that it holds a "wasting asset" and that without a Rule 54(b) ruling, the Court "would force Plaintiff to endure a costly trial over the Shadduck Patents just to obtain the right to appeal the ruling on the '052 Patent" rings hollow. Dkt. 100-1 at 2. It is an odd complaint in any event from a plaintiff – it is only Plaintiff's own pleading that is "forc[ing]"

Plaintiff to go to trial. But here it is particularly odd, given Plaintiff's seemingly arbitrary choice of patents to include in its pleading, patents that were not even those Plaintiff originally alleged Defendant infringed in September 2020. The "wasting asset" would not be wasting if Plaintiff simply did not include the Shadduck Patents or if today it elected to dismiss them with prejudice.[1]

    3.    Plaintiff's Desire to Seek an Injunction Does Not Justify Certification.

Plaintiff's only proffered justification for certification is that it can seek injunctive relief for infringement of the '052 Patent but cannot for the Shadduck Patents. But injunctive relief (1) was never sought on a preliminary basis, (2) is still speculative, (3) is only delayed because of Plaintiff's strategic decisions, and (4) may nonetheless still be available in any event after the Shadduck Patent trial should Plaintiff prevail on its appeal of the '052 Patent.

First, Plaintiff complains that it is losing its potential ability to obtain an injunction, but it has voluntarily delayed any attempt to seek that sort of relief to date. Plaintiff did not rush to the courthouse upon alleged realization that its patent rights were being violated. It acknowledges that it contacted Defendant's supplier "at least as early as April 24, 2014 and February 1, 2017" regarding potentially infringing products, but then failed to pursue claims against them for six years. Dkt. 1 at ¶25. Plaintiff has never explained the reasons for its six-year delay. When Plaintiff finally sued Defendant, it did not seek a preliminary injunction although it pled that relief in its complaint. *See* Dkt. 1 at Part IX(D). Plaintiff does not explain this tactical move or why the Court should enter special relief to give it a second chance at the extraordinary remedy of an injunction.

Second, Plaintiff has not shown entitlement to injunctive relief *even if* it is successful both in its appeal and on a subsequent trial on remand. The Supreme Court in *eBay Inc. v.*

---

[1] Defendant would oppose a motion to dismiss the Shadduck Patent claims without prejudice given the thousands of dollars that Defendant has spent to date defending those claims and that a dismissal without prejudice would mean that Plaintiff could refile the claims later forcing Defendant to spend significant sums to come back up to speed on the claims.

*MercExchange, LLC* made clear that injunctions in patent cases are not automatic: the traditional injunction factors must still be met. 547 U.S. 388, 391 (2006). Of particular importance here are the elements related irreparable injury and inadequate remedy at law: Defendant contends it serves different client bases than Plaintiff. Plaintiff loses no sales (and made no effort to produce evidence of lost sales) because of Defendant's efforts because its clients typically receive the Accused Product as a promotional item at no cost or a relatively nominal price in connection with sales of hundred-thousand-dollar laser products. In any event, the four-factor test for injunctive relief has hardly been addressed by Plaintiff in this case, let alone established.

Finally, an injunction may still be available in any event. The only reason this is an issue is because of the Shadduck patents, but, as noted, Plaintiff can simply dismiss those claims with prejudice given the complete overlap of the damages claims between the '052 Patent and the Shadduck Patents. *See* Ex. D, Exp. Rpt. D. Hanson at 43 ("In the event that one or more of the Shadduck patents are found invalid or not infringed, my calculation of the total royalty through September 2021 would not change."). In addition, Plaintiff would not necessarily be denied the ability to seek injunctive relief. The '052 Patent expires March 2026, thirty months from now. *See* '052 Patent at 1:7-12; 35 U.S.C. §154(a)(2). The most recent Federal Court Management Statistics, the median time from notice of appeal to disposition is less than ten months.[2] An appeal following a trial of the Shadduck Patents should be possible within the thirty-month life of the '052 Patent.

## III.   CONCLUSION

It is respectfully requested that Plaintiff's request for extraordinary relief under Rule 54(b) be denied and the Court set a firm trial date for the Shadduck Patents infringement trial.

Respectfully submitted,

---

[2] https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_appprofile0331.2023.pdf

10

September 12, 2023                    PILLSBURY WINTHROP SHAW PITTMAN LLP
                                      By:


                                      /s/ Steven Tepera
                                      Steven Tepera (24053510)
                                      steven.tepera@pillsburylaw.com
                                      Aya Hatori (24129120)
                                      aya.hatori@pillsburylaw.com
                                      401 Congress Avenue, Suite 1700
                                      Austin, TX 78701-3797
                                      Tel.: 512.580.9651
                                      Fax: 512.580.9601


                                      David G. Keyko (New York Bar No. 1309814)
                                      david.keyko@pillsburylaw.com
                                      31 West 52nd Street
                                      New York, NY 10019-6131
                                      Tel.: 212-858-1604
                                      Fax: 212-858-1500

                                      *Attorneys for Defendant:*
                                      *Cartessa Aesthetics, LLC*